UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| MAGNOLIA ISLAND PLANTATION, L.L.C.; and BARBARA MARIE CAREY LOLLAR | CIVIL ACTION NO. _____ |
| | DISTRICT JUDGE_____ |
| V. | |
| | MAGISTRATE JUDGE_____ |
| LUCKY FAMILY, L.L.C.; W.A. LUCKY, III; BOSSIER PARISH SHERIFF JULIAN C. WHITTINGTON, in his official capacity. | JURY TRIAL DEMANDED |

**COMPLAINT TO ANNUL SHERIFF'S SALE AND FOR OTHER RELIEF**

NOW INTO COURT, through undersigned counsel, comes Petitioners, MAGNOLIA ISLAND PLANTATION, L.L.C., represented by its Manager, Ronald William Lollar, and BARBARA MARIE CAREY LOLLAR, who file this Complaint and in support thereof respectfully represents as follows:

**I.**

**ACTION**

1.

This is an action to annul a Sheriff's Sale conducted by the Bossier Parish Sheriff on October 24, 2018 on the grounds that the plaintiff, Magnolia Island Plantation, L.L.C., as the maker of the promissory note being sold at Sheriff's Sale, failed to receive proper notice of the Sheriff's Sale as required by Federal and State Constitutions and other applicable laws. See U.S. Const., Amend. XIV, Sec. 1; LA. Const., Art. 7, Sec. 25; and La. R.S. 13:3852, *Mennonite Board of*

*Missions v. Adams*, 462 U.S. 791 (1983).  This action to annual the Sheriff's Sale is also based upon the grounds that both plaintiffs have suffered damages due to the Sheriff's Appraiser's actions, as well as the Sheriff's actions, in appraising the property and conducting the sale.  See La. R.S. 13:4365; See also 42 U.S.C. §1983

## II.

## PARTIES

2.

Named as Plaintiffs herein are:

    a.    MAGNOLIA ISLAND PLANTATION, L.L.C., ("Magnolia") a Louisiana limited liability company, domiciled in the State of Louisiana, which is herein represented by its Manager, Ronald William Lollar;

    b.    BARBARA MARIE CAREY LOLLAR ("Lollar") is an individual resident of Bossier Parish, Louisiana.

3.

Named as Defendants herein are:

    a.    LUCKY FAMILY, L.L.C. (herein after "Lucky, LLC"), a Louisiana limited liability company; and

    b.    W.A. LUCKY, III, ("Lucky") a resident of Bossier Parish, Louisiana;

2

c.      JULIAN C. WHITTINGTON, in his official capacity as the Bossier Parish Sheriff
(hereinafter the "Sheriff"), a political subdivision of Bossier Parish under La. Rev.
Stat.§ 13:5102(B).

(hereinafter sometimes collectively "Defendants").

## III.

## JURISDICTION AND VENUE

### 4.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 as this action presents a federal question, as well as supplemental jurisdiction under 28 U.S.C. § 1336 as the claims presented which do not present a federal question are directly related to federal question claims in the action and form the same case or controversy.

### 5.

Venue is proper in this district and division pursuant to 28 U.S.C. § 1391 (b).

## IV.

## FACTUAL BACKGROUND

### 6.

This suit arises from a Sheriff's Sale conducted by the Sheriff on October 24, 2018 at the Bossier Parish Courthouse. Plaintiffs present this complaint to have the sale annulled for the following reasons:

7.

W.A. Lucky (hereinafter "Lucky") filed suit against Lollar in the 26th Judicial District Court on September 10, 2008. A three-day bench trial was held 9 years later beginning on August 28, 2017. On January 5, 2018, a monetary judgment was entered against Lollar in the amount of $1,799,450.52. (the "Judgment" a copy of which is attached as **Exhibit "A"**) An appeal of said Judgment is currently pending in the Louisiana Second Circuit Court of Appeal with oral argument having occurred on November 13, 2018.

8.

On November 2, 2017, a Promissory Note was made by Ronald William Lollar in favor of Lollar for the amount of $1,730,000.00, at the rate of 4% per annum, to be paid in 4 consecutive annual installments of $100,046.00 and a final balloon payment equal to the remaining principal and interest due thereunder. (hereinafter the "Note")   A copy of said Promissory Note is attached hereto as **Exhibit "B".**

9.

The Note was secured by a mortgage on the certain immovable property described and conveyed from Lollar to Ronald William Lollar in the *Credit Sale Deed with Vendor's Lien and Special Mortgage*, dated November 2, 2017 and filed for record at Instrument No. 1179265 of the conveyance records and mortgage records, all within Bossier Parish, Louisiana.  A copy of the *Credit Sale Deed with Vendor's Lien and Special Mortgage* is attached hereto as **Exhibit C**. (the immovable property described therein is referenced as the "Mortgaged Property");

10.

By way of an *Exchange Deed with Assumption of Mortgage*, dated November 2, 2017, and filed for record at Instrument No. 1179266 of the conveyance records and mortgage records of Bossier Parish, Ronald William Lollar conveyed the Mortgaged Property to Magnolia, wherein Magnolia assumed the obligations under the Note and the Mortgage. A copy of the *Exchange Deed with Assumption of Mortgage* is attached hereto as **Exhibit "D".**

11.

On December 11, 2017, Lucky filed, through his counsel, a *Notice of Lis Pendens* citing the Mortgaged Property in the conveyance records of Bossier Parish at Book C1764, Page 118, and in the Bossier Parish mortgage records at Book M 2701, Page 654 (the "2017 Lis Pendens" a copy is attached hereto as **Exhibit "E"**).  The 2017 Lis Pendens purports that it was filed based upon a pending action listed as W.A. Lucky, III vs. Barbara Marie Carey Carr, NO. 127,573, Section F (referenced as "Lucky I").

12.

The 2017 Lis Pendens was filed by Lucky prior to any judgment in Lucky I. Lucky knew, at the time the 2017 Lis Pendens was filed, that any judgment in Lucky I could not include the immovable property as his claims in that matter intentionally sought only monetary damages. Therefore, Lucky knowingly filed the 2017 Lis Pendens to cloud Magnolia's title in a malicious effort to frustrate Magnolia's ability to earn income from the property, as well as to frustrate Magnolia's ability to make payments on the Note.

13.

On February 20, 2018, Lucky filed, through counsel, a second *Notice of Lis Pendens* in the Bossier Parish records, at Instrument No. 1185201. (the "2018 Lis Pendens" a copy of which is attached hereto as **Exhibit "F"**) The 2018 Lis Pendens is purportedly based on Lucky's filing of a new law suit in the 26th Judicial District of Bossier Parish, Louisiana styled *W.A. Lucky, III v. Barbara Carr Lollar*, No. 155,382-A (referenced as Lucky II), which claims to affect the title to the Mortgaged Property, but only by way of a monetary judgment in Lucky I which does not cite or mention any immovable property.

14.

The 2017 and 2018 Lis Pendens were improperly filed, and as such, are each the subject of a pending reconventional demand by Lollar and Magnolia against Lucky in Lucky II.

15.

On May 31, 2018 Lucky filed an *Ex Parte Motion for Production of Property and Alternative Motion for Contempt,* seeking to Lollar deliver the Note to the Sheriff of Bossier Parish. The Court in Lucky I represented in its minutes that a Writ of Fieri Facias was issued to the Sheriff of Bossier Parish on June 8, 2018.

16.

At the conclusion of a July 5, 2018 hearing regarding the improper issuance of the Writ, Lollar was ordered to deliver the Note to the Bossier Parish Sheriff's office.

17.

On or about September 6, 2018 the Sheriff issued a Notice of Seizure to Lollar's counsel of record stating that the Note may be sold at Sheriff's Sale on the first Wednesday, 14 days after the date of the Notice of Seizure, but stated that you must contact the Sheriff for the "actual date" (see **Exhibit "G"** for copy of the Notice of Seizure to Lollar's counsel).

18.

Upon review of the notice records for the Sheriff's Sale held on file with the Bossier Parish Sheriff's office, it was found that the Bossier Parish Sheriff provided direct notice to only two individuals through their respective counsel of record:  Lucky and Lollar.

19.

The Notice of Seizure to Lollar's counsel also included a Notice to Appoint Appraiser stating that Lollar may appoint an appraiser to value the Note being sold. The Sheriff's office informed counsel for Lollar by phone that appraisals had to be submitted to the Sheriff no later than October 19, 2018 and that the Note was then scheduled to be sold at Sheriff sale on October 24, 2018.

20.

Lucky appointed Chad Garland as his appraiser in regards to the sale of the Note. Mr. Garland submitted an appraisal of one hundred seventy-three thousand and no/100ths ($173,000.00), being *ten percent (10%)* of the Note's face value.  No written appraisal was kept on file by the Sheriff for Mr. Garland's appraisal amount, and only the amount of Mr. Garland's appraisal was made available.  (See Garland Appraisement Sheet at **Exhibit "H"**).

21.

Lollar appointed John Dean as her appraiser for the Note.  Mr. Dean submitted an appraisal of one million four hundred seventy-eight thousand forty-eight and 68/100ths ($1,478,048.68). See Dean Appraisement Sheet at **Exhibit "I"**.

22.

The great discrepancy between the Dean and Garland appraisals required the Sheriff to appoint a third appraiser in accordance with La. R.S. 13:4365(B) which reads in pertinent part as follows:

> (B)      If the appraisers cannot agree, and (1) the difference in value between the two appraisals does not exceed two hundred and fifty thousand dollars, and (2) the value assigned by the lower of the two appraisers is at least ninety percent of the value assigned by the higher of the two appraisers, then the sheriff shall average the two figures and use the average as the appraised value for purposes of determining the opening bid.  In those cases where the two appraisers do not agree and the values are not within the averaging limits, then the sheriff shall appoint a third appraiser, who shall also be sworn, and whose decision shall be final.

23.

The Sheriff purported to have appointed Patrick Lacour as the third appraiser under his obligation to do so in accordance with La. R.S. 13:4365(B).  However, counsel for Lollar was informed by employees of the Sheriff's office that Mr. Lacour was actually chosen by Lucky's counsel and provided to the Sheriff.

24.

Mr. Lacour submitted an appraisal amount of of One hundred fifty-seven thousand nine and 22/100ths ($157,009.22) being *nine percent (9%)* of the Note's face value.  Only a one-page appraisal report with a one-page exhibit was provided by the Sheriff supporting Mr. Lacour's appraisal amount. (Mr. Lacour's appraisal report and appraisement sheet attached as **Exhibit "J"**)

25.

The timing and amount of the Garland and Lacour appraisals is strongly indicative of a scheme to submit both appraisals by Lucky and of collusion between the Defendants to use invalid appraisals to the detriment of the Plaintiffs. Additionally, upon information and belief, the Garland and Lacour appraisals rely upon the 2017 and 2018 Lis Pendens, which were placed of record by Lucky, as ostensible support for their erroneous appraised values.

26.

On October 24, 2018, the Note was offered at Sheriff sale for two-thirds (2/3rds) of the third appraisal and sold for a total of One hundred five thousand and no/00ths ($105,000.00) to Lucky, LLC, *being only six percent (6%) of the face value of the Note*.  (See copy of Sheriff's Return Proces Verbal of Sale, attached hereto as **Exhibit "K"**)  Lucky's appraisers ignored the fact that the Mortgaged Property serving as collateral for the Note has an appraised value submitted in evidence in Lucky I of even more than the Note's $1,730,000.00 face value.

27.

Lucky is a member and beneficiary of Lucky, LLC and its purchase of the Note at a 94% discount to its face value.

## V.

## COUNT ONE

### 28.

The allegations in the above paragraphs are incorporated herein by this reference.

### 29.

The monetary judgment which is purported to support the writ of Fieri Facias and the Sheriff's authority to sell the Note is the same judgment which Lucky has utilized to unlawfully cloud Magnolia's title to the Mortgaged Property.

### 30.

Setting aside whether the 2017 and 2018 Lis Pendens filed by Lucky regarding the Mortgaged Property are lawful or unlawful, which is the subject of a reconventional demand in Lucky II, Lucky's monetary judgment is being used as a means to adversely affect Magnolia's ability to earn income from the Mortgaged Property to pay the Note.

### 31.

Currently, Magnolia has sustained losses due to Lucky's 2017 and 2018 Lis Pendens including the suspension of royalty payments related attributable to the Mortgaged Property, loss of a lease bonus for an oil and gas lease on a portion of the Mortgaged Property, the loss of surface damage payments for proposed oil and gas development and the loss of marketability of the Mortgaged Property for various uses.  The foregoing are the current damages based upon Lucky's use of the monetary judgment to cloud Magnolia's title and are estimated to be in excess of $500,000.00. Lucky's judgment does not cover the property owned by Magnolia.

32.

The Note was seized and sold for the purpose of satisfying Lucky's monetary judgement. Even assuming Lucky's Lis Pendens are lawful, which is denied, the satisfaction of the Lucky's judgment is directly related to the restrictions Lucky has placed on Magnolia's title based on the judgment. Therefore, Magnolia has a direct and cognizable interest in ensuring that the Note sells for its proper and just value.

33.

At all times prior to the Sheriff's Sale, Magnolia was the owner of the Mortgaged Property and payor under the Note, and had a reasonably ascertainable interest in the Note.

34.

Magnolia was never provided direct notice of the Sheriff's Sale from the Bossier Parish Sheriff.

35.

The Sheriff's Sale substantially affects Magnolia's interest in the Mortgaged Property and therefore Magnolia is Constitutionally entitled to notice which is reasonably calculated to apprise it of the Sheriff's Sale and to afford Magnolia an opportunity to present any objections.

36.

The Sheriff's failure to provide proper Constitutional notice to Magnolia makes the October 24, 2018 Sheriff's Sale of the Note and absolute nullity.

## VI.

## COUNT TWO

### 37.

The allegations in the above paragraphs are incorporated herein by this reference.

### 38.

On their face, the appraisals submitted by the Lucky's appraiser (Garland) and the Sheriff's appraiser (Lacour) are not true and just appraisals, as required by La. R.S. 13:4365(A), and are otherwise in gross error, and therefore should be invalidated by this Honorable Court. Such severely low appraisals, and extreme departures from the face value of a secured note, cannot be supported by accepted valuation standards.

### 39.

Further, Under La. R.S. 13:4365 it is the duty of the Sheriff to appoint a third independent appraiser under the circumstances presented in that statute. However, The Sheriff failed to exercise this duty as Mr. Lacour was chosen by Lucky's counsel in this matter, and was apparently provided to the Sheriff by Lucky's counsel in advance.

### 40.

The Sheriff's actions in allowing a preferred party (Lucky) the benefit of selecting the third appraiser undermines the purpose of the statute's requirement of a third appraiser to address discrepancies between each party's own appraisals. The Lacour appraisal is therefore biased and tainted and cannot be just and true in accordance with La. R.S. 13:4365(A).

41.

The unjust and erroneous appraisals utilized by the Sheriff in selling the Note for just $105,000.00 have fouled the process and imposed an undue burden and harm upon Lollar and Magnolia, as there has only been a minimal and fraudulent off-set to the monetary Judgment for the sale of the Note.  The unjustly low valuation has prevented the sale process from realizing the full value of the asset seized.

42.

Likewise, Lucky, LLC as well as Lucky, have been unjustly enriched by the faulty process to sell the Note, an outcome Lucky has orchestrated beginning with the 2017 and 2018 Lis Pendens which sought to create an embargo on Magnolia's commerce concerning the Mortgaged Property, and ending with Lucky's manipulation of the Sheriff's Sale in order to obtain the Note at a greatly discounted value.

43.

The failure of the Sheriff, in collusion with Lucky, to conduct a proper and unbiased sale of the Promissory Note resulted in the absolute nullity of the Sheriff's Sale of the Promissory Note.

44.

Further, the failure of the Sheriff to conduct a proper and unbiased sale of the Promissory Note directly resulted in in the Promissory Note being sold for only a fraction of its face value (6%) and a smaller fraction of the value of collateral securing repayment of the Note.  In fact, the Sheriff's reconciliation of the Note sale shown attached hereto at Exhibit K represents that very little of the discounted sales price was even applied against the monetary Judgment after a number

of questionable expenses were applied by the Sheriff, including without limitation, a purported $25,358.62 applied by the Sheriff for "Recording Fees."  The actions by the Sheriff and Lucky have caused damage to Lollar who is prevented from having the full and just value of the Promissory Note applied against the amount of the monetary judgment against her, which is currently pending on appeal.

45.

For these reasons, the Sheriff's actions in conducting the Sheriff's Sale of the Promissory Note, and the third appraiser's actions on behalf of the Sheriff's office, are violations of Lollar's Constitutional rights under 42 U.S.C. §1983.

**VII.**

**REQUEST FOR SUSPENSION OF PAYMENTS DUE UNDER THE NOTE**

46.

Due to the potential for harm to Magnolia and Lollar should the sale of the Note be rescinded and declared a nullity, Petitioner moves this Honorable Court to enter an Order to (i) suspend payments due under the Note and (ii) suspend any effort by the purchaser of the Note at the tainted Sheriff's Sale to exercise the rights of a holder in due course of the Note, until the resolution of this matter. Upon information and belief, the first annual installment due under the Note on November 1, 2018 had been pre-paid to the original holder of the Note as provided for under the terms of the Note.

## VIII.

### JURY DEMAND

47.

Plaintiffs demand a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

WHEREFORE, PETITIONERS PRAY for judgment in her favor and against all Defendants named herein, and:

(A)     That the payments and any collection action under the Note be suspended during the pendency of this action;

(B)     That the October 24, 2018 Sheriff Sale of the Promissory Note be rescinded and annulled as unconstitutional;

(C)     That the Plaintiffs recover damages for losses suffered by Defendant's actions in amounts to be proven at trial;

(D)     For all other equitable to which the Plaintiffs may be entitled to.

PETITIONERS PRAY IN THE ALTERNATIVE, that should the Note Sale be upheld:

(E)     That the payments and any collection action under the Note be suspended during the pendency of this action;

(F)     For all other equitable relief to which the Plaintiff's may be entitled to.

Respectfully submitted by,

Randall S. Davidson, LSBA No. 4715,   TA
J. Davis Powell, LSBA No. 33631
Andrew D. Martin, LSBA No. 34947
Harold R. Bicknell, III, LSBA No.36801
DAVIDSON SUMMERS, APLC
330 Marshall Street, Suite 1114
Shreveport, Louisiana 71101
Ph: (318) 424-4342 | (318) 226-0168
E:      rsdav@davidsonsummers.com
        dpowell@davidsonsummers.com
        dmartin@davidsonsummers.com
        hbicknell@davidsonsummers.com

*Counsel for Petitioners*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

MAGNOLIA ISLAND PLANTATION,       CIVIL ACTION NO. _____
L.L.C.; and BARBARA MARIE CAREY
LOLLAR
                                 DISTRICT JUDGE_____

V.
                              MAGISTRATE JUDGE_____

LUCKY FAMILY, L.L.C.;
W.A. LUCKY, III;
BOSSIER PARISH SHERIFF JULIAN C.
WHITTINGTON, in his official capacity.

## VERIFICATION

STATE OF LOUISIANA

PARISH OF CADDO

        BEFORE ME, the undersigned authority, personally came and appeared Ronald William

Lollar, on behalf of Magnolia Island Plantation, L.L.C. ("Magnolia"), who, after being first duly

sworn, did depose and state that Magnolia is a Plaintiff in the foregoing *Complaint to Annul*

*Sheriff's Sale and For Other Relief,* and that the information contained therein is true and correct

to the best of his knowledge, information and belief

                              *Ronald William Lollar*
                              Ronald William Lollar

SWORN TO AND SUBSCRIBED BEFORE ME, on this 20th day of November, 2018.

_____
         NOTARY PUBLIC

J. DAVIS POWELL
Notary Public
State of Louisiana
Caddo Parish
Bar Roll # 33631
My Commission is for Life

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

MAGNOLIA ISLAND PLANTATION,                 CIVIL ACTION NO. _____
L.L.C.; and BARBARA MARIE CAREY
LOLLAR
                                            DISTRICT JUDGE_____

V.

                                            MAGISTRATE JUDGE_____

LUCKY FAMILY, L.L.C.;
W.A. LUCKY, III;
BOSSIER PARISH SHERIFF JULIAN C.
WHITTINGTON, in his official capacity.

---

**VERIFICATION**

---

STATE OF LOUISIANA

PARISH OF CADDO

BEFORE ME, the undersigned authority, personally came and appeared Barbara Marie

Carey Lollar who, after being first duly sworn, did depose and state that he is a Plaintiff in the

foregoing *Complaint to Annul Sheriff's Sale and For Other Relief,* and that the information

contained therein is true and correct to the best of her knowledge, information and belief

Barbara Marie Carey Lollar

SWORN TO AND SUBSCRIBED BEFORE ME, on this 20th day of November, 2018.

_____
NOTARY PUBLIC



J. DAVIS POWELL
Notary Public
State of Louisiana
Caddo Parish
Bar Roll # 33631
My Commission is for Life