Jill M. Sessions
Bossier Parish Clerk of Court
**1179265**
Recorded On: 11/03/2017 10:05 AM

STATE OF LOUISIANA
PARISH OF BOSSIER

## CREDIT SALE DEED WITH
## VENDOR'S LIEN AND SPECIAL MORTGAGE

BEFORE ME, the undersigned authority, came and appeared:

BARBARA MARIE CAREY CARR LOLLAR, formerly Barbara Marie Carey Carr, who is married to Ronald William Lollar but who is dealing herein with her separate property, whose address is 6225 Tributary Court, Bossier City, Louisiana 71112 ("Seller")

WHO DECLARED that Seller does by these presents GRANT, BARGAIN, SELL, CONVEY AND DELIVER, with full guarantee of title, and with complete transfer and subrogation of all rights and actions of warranty against all former proprietors of the Property herein conveyed, together with all rights of prescription, whether acquisitive or liberative, to which said Seller may be entitled, unto:

RONALD WILLIAM LOLLAR, who is married to Barbara Marie Carey Carr Lollar but who is acquiring the property set forth herein as his separate property, whose address 6225 Tributary Court, Bossier City, Louisiana 71112, ("Purchaser")

the immovable Property as more fully described on the property description attached hereto and made a part hereof as Exhibit "A" (the "Property").

TO HAVE AND TO HOLD the said described Property unto said Purchaser, Purchaser's successors and assigns, FOREVER.

The parties affirm and declare that the Property is in fact the separate property of Seller, having been acquired prior to marriage with her separate funds. The Note given in payment hereunder, being proceeds from the sale of Seller's separate property, shall likewise be and remain the separate property of Seller. The parties also affirm and declare the property is being acquired as the separate property of the Purchaser.

The parties further affirm and declare that the Purchaser is acquiring the property herein with his separate funds, and that the Property shall be held by Purchaser as his separate property.

This sale is made for and in consideration of the mutual obligations of the parties set forth herein, and the payment by Purchaser of the full sum of ONE MILLION EIGHT HUNDRED THOUSAND and No/100ths ($1,800,000.00), paid as follows:

(a) Cash in the amount of Seventy Thousand Dollars ($70,000.00), paid at Closing, the receipt of which is hereby acknowledged; and

(b) Delivery to Sellers of a promissory note from Purchaser to Sellers in the principal amount of One Million Seven Hundred Thirty Thousand and No/100ths Dollars ($1,730,000.00) plus interest thereon at the rate of four percent (4.0%) per annum until paid as provided for herein. This Note shall be due and payable in four (4) consecutive annual installments of $100,046.00, the first such installment being due and payable on November 1, 2018, and a final BALLOON PAYMENT equal to all remaining principal and interest then due hereunder, due and payable on November 1, 2022 (the "Note"). The Note may be prepaid by Purchaser without penalty.

The Note shall be secured by a vendor's lien and special mortgage, as follows.

State of Louisiana, Parish of Bossier
I hereby certify this to be a true and correct copy of an original instrument filed in my office on the date and hour and under the registry number stamped hereon
Conveyances - Volume _____ Page _____
to be recorded in
Mortgages Volume _____ Page _____
Given under my hand and seal of office on this the ___ day of _____ 20 __
_____
Deputy Clerk and Ex-Officio Deputy Recorder
Parish of Bossier, State of Louisiana

Exhibit C

## VENDOR'S LIEN AND SPECIAL MORTGAGE

In order to secure the full prompt and punctual payment of said Note, together with interest, attorney fees charges and costs, according to the stipulations herein written, in addition to the Vendor's lien and privilege granted by law which is specifically retained by the Seller, said Purchaser does by these presents SPECIALLY MORTGAGE AND HYPOTHECATE unto and in favor of the Seller, or any future holder or holders of said Note, the above described Property ("Seller's Mortgage").

The Purchaser binds and obligates itself, its successors, and assigns not to sell, alienate, deteriorate, or encumber said Property to the prejudice of this Seller's Mortgage. For so long as the Note is outstanding, Purchaser further agrees and covenants as follows:

### Insurance and Taxes

Purchaser agrees to keep any existing buildings on the Property insured for all hazards for their appraised value, with a loss payable clause in favor of Seller's and to purchase. Purchaser agrees that on default in payment of taxes or insurance premium at any time, any holder of the Note may pay said taxes or insurance premiums and charge same to Purchaser, and the amount so paid shall bear the same rate of interest as said Note and be enforceable as apart of the original obligation, including attorney fees. The Seller, or other holder of the Note, shall, however, be under no obligation to pay said taxes or insurance premiums; interest past due shall draw the same rate of interest as the principal obligation.

### Default:

An Event of Default shall be deemed in effect under this Seller's Mortgage upon the occurrence of any of the following events:

    A.    Failure to pay any sum due under the Note secured by this Seller's Mortgage within fifteen (15) days of receipt by Purchaser of a written notice of default.

    B.    A default under any provision of this Seller's Mortgage, other than a payment default, which is not cured by Purchaser within thirty (30) days of Mortgagor's receipt of a notice of default.

    C.    Any sale of the Property prior to payment of the Note, unless the Seller consents in writing to the assumption of the Note and the Seller's Mortgage by the proposed purchaser as described below.

Upon an Event of Default, provided such default is not cured, Seller may accelerate all sums due under the Note by written notice to Purchaser and demand for payment in full of the Note, and if such amount is not paid in full within fifteen (15) days of Seller's written notice of acceleration and demand for payment, Seller may proceed to seek judgment on the Note as therein provided, and foreclosure under this mortgage for satisfaction of any judgment.

### Assumption:

This Seller's Mortgage may not be assumed by any subsequent purchaser of the Property without the Seller's express written consent, which may be withheld for any reason. Seller may require proof of credit worthiness and good standing or other evidence that the subsequent purchaser is fully authorized to purchase the Property and assume the Seller's Mortgage.

### Appointment of Keeper:

Upon the occurrence of an Event of Default, Seller may cause a receiver or keeper to be appointed to take possession of the Property to manage, administer, operate and conserve the value thereof and collect the rents, issues, revenues, proceeds and profits thereof. The receiver or keeper may also take possession of, and for these purposes use any and all licenses, permits and movable property contained in or on the premises and used by Purchaser in the operation thereof or any part thereof, whether or not the same is covered by this Seller's Mortgage. After paying

Exhibit C

costs of collection and any other expenses incurred, the proceeds shall be applied to the payment of the indebtedness represented by the Note in such order as Seller shall elect, and Seller shall not be liable to account to Purchaser for any loss, damage or neglect suffered to or by the Property, or Purchaser as a consequence thereof, except such as are caused by the willful misconduct or gross negligence of Seller's own employees or agents. Seller may designate any firm, person or corporation to be the receiver or keeper of the Property as provided by La. R.S. 9:5132 and similar statutes.

**General Provisions:**

Purchaser specially waives the notice and delay provided under article 2331 of the Louisiana Code of Civil Procedure.

The certificate of mortgage is hereby waived by the parties.

All 2017 ad valorem or property taxes asserted against the property will be paid by Seller.

Purchaser and Seller each acknowledge that the undersigned Notaries have not been asked to examine title to the Property and has not given any opinion or assurance with regard thereto except as may be expressly set forth in writing in a separate instrument.

All of the rights and obligations set forth herein shall inure to the benefit of and be binding upon Purchaser and Seller and their heirs, successors and assigns, as their rights and obligations may appear.

This instrument may be signed in counterpart originals and each signed original, taken together, shall constitute one and the same Agreement.

THUS DONE AND SIGNED in the presence of me, Notary, and the two undersigned competent witnesses on this 2nd day of November, 2017.

WITNESSES:

Printed Name ( Nicholas O'Connor )

Printed Name ( Veronica M. Ogle )

SELLER:

Barbara Marie Carey Carr Lollar

NOTARY PUBLIC

IVY E. M. JOHNSON
Notary Public
State of Louisiana
Caddo Parish
Notary ID # 92070
My Commission is for Life

THUS DONE AND SIGNED in the presence of me, Notary, and the two undersigned competent witnesses on this 2nd day of November, 2017.

WITNESSES:

Printed Name ( Madelyn Bryan )

Printed Name ( Lori Wright )

PURCHASER:

Ronald William Lollar

NOTARY PUBLIC

J. DAVIS POWELL
Notary Public
State of Louisiana
Caddo Parish
Bar Roll # 33631
My Commission is for Life

3

Exhibit C

## PROPERTY DESCRIPTION

BEING DESCRIBED AS A 365.135 ACRE (MORE OR LESS) TRACT OF LAND IN SECTION 19, SECTION 20 AND SECTION 29, TOWNSHIP 17 NORTH, RANGE 12 WEST, BOSSIER PARISH, LOUISIANA AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

Commence at the south quarter corner of said Section 20 which is monumented with a concrete monument;

Thence proceed North 00° 09' 05" East along the east line of the southwest quarter of said Section 20 for a distance of 1464.33 feet to the Point of Beginning of the tract herein described which is monumented with a ¾" iron rod;

Thence proceed South 62° 29' 42" West for a distance of 428.94 feet;

Thence proceed South 61° 10' 42" West for a distance of 115.61 feet;

Thence proceed South 81° 54' 53" West for a distance of 471.62 feet;

Thence proceed South 04° 31' 33" East for a distance of 75.70 feet;

Thence proceed South 17° 34' 30" East for a distance of 95.15 feet;

Thence proceed South 48° 07' 35" West for a distance of 101.48 feet;

Thence proceed South 01° 42' 50" West for a distance of 702.23 feet;

Thence proceed South 28° 36' 24" West for a distance of 466.19 feet to the north right of way line of Sligo Road (LA Highway No. 612) and a ¾" iron rod;

Thence proceed North 87° 23' 53" West along said right of way line for a distance of 247.88 feet to the centerline of Flat River;

Thence proceed North 32° 36' 01" East along said centerline for a distance of 332.70 feet;

Thence proceed North 34° 57' 31" East along said centerline for a distance of 147.14 feet;

Thence proceed North 07° 04' 02" East along said centerline for a distance of 146.17 feet;

Thence proceed North 14° 57' 03" West along said centerline for a distance of 205.32 feet;

Thence proceed North 39° 53' 26" West along said centerline for a distance of 244.73 feet;

Thence proceed North 76° 26' 13" West along said centerline for a distance of 324.67 feet;

Thence proceed North 84° 31' 20" West along said centerline for a distance of 134.99 feet;

Thence proceed South 80° 14' 35" West along said centerline for a distance of 309.37 feet;

Thence proceed South 68° 49' 51" West along said centerline for a distance of 340.47 feet;

Thence proceed South 80° 47' 53" West along said centerline for a distance of 370.00 feet;

Thence proceed South 82° 51' 53" West along said centerline for a distance of 851.25 feet;

# EXHIBIT "A"

Thence proceed North 88° 00' 54" West along said centerline for a distance of 360.70 feet;

Thence proceed South 81° 45' 57" West along said centerline for a distance of 343.85 feet;

Thence proceed South 76° 15' 45" West along said centerline for a distance of 201.20 feet;

Thence proceed North 26° 16' 01" West for a distance of 2695.16 feet to the centerline of Flat River;

Thence proceed North 01° 14' 51" West along said centerline for a distance of 154.01 feet;

Thence proceed North 11° 50' 29" East along said centerline for a distance of 375.12 feet;

Thence proceed North 16° 49' 19" West along said centerline for a distance of 407.46 feet;

Thence proceed North 21° 35' 49" West along said centerline for a distance of 462.34 feet;

Thence proceed North 11° 40' 47" East along said centerline for a distance of 232.17 feet;

Thence proceed North 36° 28' 45" East along said centerline for a distance of 301.66 feet;

Thence proceed North 73° 51' 54" East along said centerline for a distance of 404.69 feet;

Thence proceed North 44° 46' 19" East along said centerline for a distance of 247.24 feet;

Thence proceed North 25° 01' 49" East along said centerline for a distance of 250.51 feet;

Thence proceed North 11° 44' 59" East along said centerline for a distance of 277.13 feet to the north line of said Section 19;

Thence proceed South 88° 47' 36" East along the north line of said Section 19 for a distance of 916.66 feet to a ½" iron rod;

Thence proceed South 48° 21' 57" East along said north line for a distance of 158.35 feet to a ½" iron rod;

Thence proceed South 89° 13' 15" East along said north line for a distance of 31.37 feet to the northwest corner of the northeast quarter of the northeast quarter of said Section 19 which is monumented with a ½" iron rod;

Thence proceed South 89° 24' 15" East along the south line of the northeast quarter of the northeast quarter of said Section 19 for a distance of 1320.00 feet to the east line of said Section 19 and a ½" iron rod;

Thence proceed South 00° 11' 53" West along the east line of said Section 19 for a distance of 1321.91 feet to the east quarter corner of said Section 19 which is monumented with a ½" iron rod;

Thence proceed South 89° 40' 10" East along the north line of the southwest quarter of said Section 20 for a distance of 2670.01 feet to the center quarter corner of said Section 20 which is monumented with a ½" iron rod;

Thence proceed South 00° 09' 05" West along the east line of the southwest quarter of said Section 20 for a distance of 1154.29 feet to the Point of Beginning of the tract herein described, containing 365.135 acres, more or less.

**LESS AND EXCEPT:**

A 9.990 acre tract (more or less) conveyed in Instrument No. 506056 and a 2.000 acre tract (more or less) conveyed in Instrument No. 497459 of the Conveyance Records of Bossier Parish, Louisiana.

Being the property described in that certain Credit Sale Deed by and between, Land Connection, Inc., as Seller, and Barbara Marie Carey Carr as Purchaser, dated April 14, 2003 and filed of record at Instrument No. 772311 of the Bossier Parish, Louisiana conveyance records.

2

Exhibit C

**LESS AND EXCEPT:**

BEING DESCRIBED AS AN 85.000 ACRE (MORE OR LESS) TRACT OF LAND IN SECTION 19, TOWNSHIP 17 NORTH, RANGE 12 WEST, BOSSIER PARISH, LOUISIANA AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

Commence at the northeast corner of said Section 19 which is monumented with a ½" iron rod;

Thence proceed South 00° 11' 53" West along the east line of said Section 19 for a distance of 1321.91 feet to the Point of Beginning of the tract herein described which is monumented with a ½" iron rod;

Thence proceed South 00° 11' 53" West along said east line for a distance of 1321.91 feet to the east quarter corner of said Section 19 which is monumented with a ½" iron rod;

Thence proceed South 00° 11' 53" West for a distance of 139.95 feet;

Thence proceed North 67° 22' 35" West for a distance of 191.20 feet to the point of curvature of a curve to the left;

Thence proceed along said curve (having a long chord bearing of North 77° 10' 53" West and a radius of 446.48 feet) for an arc distance of 152.81 feet;

Thence proceed North 86° 59' 11" West for a distance of 23.98 feet to the point of curvature of a curve to the right;

Thence proceed along said curve (having a long chord bearing of North 81° 34' 25" West and a radius of 3894.41 feet) for an arc distance of 735.82 feet to a point of compound curvature;

Thence proceed along said curve (having a long chord bearing of North 69° 37' 18" West and a radius of 500.00 feet) for an arc distance of 114.13 feet to a point of compound curvature;

Thence proceed along said curve (having a long chord bearing of North 60° 43' 41" West and a radius of 2373.43 feet) for an arc distance of 195.06 feet to a point of reverse curvature;

Thence proceed along said curve (having a long chord bearing of North 60° 00' 52" West and a radius of 500.00 feet) for an arc distance of 28.64 feet to a point of reverse curvature;

Thence proceed along said curve (having a long chord bearing of North 53° 31' 46" West and a radius of 1312.96 feet) for an arc distance of 372.41 feet to a point of compound curvature;

Thence proceed along said curve (having a long chord bearing of North 32° 48' 53" West and a radius of 250.00 feet) for an arc distance of 109.86 feet to a point of reverse curvature;

Thence proceed along said curve (having a long chord bearing of North 39° 19' 40" West and a radius of 1065.55 feet) for an arc distance of 710.49 feet to a point of reverse curvature;

Thence proceed along said curve (having a long chord bearing of North 54° 29' 06" West and a radius of 250.00 feet) for an arc distance of 34.42 feet to a point of reverse curvature;

Being the property described in that certain Cash Sale Deed by and between, Barbara Marie Carey Carr, as Seller, and Hummer and Son Honey Farm, L.L.C. as Purchaser, dated December 2, 2004 and filed of record at Instrument No. 821131 of the Bossier Parish, Louisiana conveyance records.

Said tract conveyed being further identified as Lot 2, Carr Subdivision on that certain Plat of Survey, prepared by French Engineering, Inc., dated January 27, 2005 and recorded in Conveyance Book 1207, Page 738, under Entry No. 834511 of the records of the office of the Clerk of Court for Bossier Parish, Louisiana.

Leaving a balance of 280.135 acres, more or less, being conveyed herein.

3

Exhibit C