UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

MAGNOLIA ISLAND PLANTATION,     CIVIL ACTION NO. 5:18-CV-1526
ET AL.

VERSUS     DISTRICT JUDGE:
     HON. S. MAURICE HICKS, JR.

LUCKY FAMILY, L.L.C., ET AL.     MAGISTRATE JUDGE:
     HON. KAREN L. HAYES

**STATEMENT OF UNDISPUTED FACTS IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.2, defendant, W.A. Lucky, III ("Mr. Lucky"), submits the following statement of uncontested facts in support of his motion for summary judgment:

1.     On September 10, 2008, Mr. Lucky had sued Barbara Marie Carey Lollar ("Mrs. Lollar") in State Court for a money judgment on account of the latter's breach of her fiduciary duties as agent. That lawsuit was "W. A. Lucky, III versus Barbara Marie Carey Carr," number 127,573 ("Lucky I") in the 26th Judicial District Court, Bossier Parish, Louisiana ("State Court").[1]

---

[1] Exhibit 1; Exhibit 2, p. 3 (Request for Admission Number 3); Exhibit 3, p. 2 (Response to Request for Admission Number 3); Exhibit 4, p. 3 (Request for Admission Number 3); Exhibit 5, p. 3 (Response to Request for Admission Number 3); Exhibit 6, pp. 6-7, ¶ 11.

**Note:** Mr. Lucky's requests for admissions to Mr. Lollar were served on him on July 16, 2019. However, Mr. Lollar did not serve a response until September 13, 2019, and there has been no motion to withdraw Mr. Lollar's admissions. Consequently, all of the requests for admissions served on Mr. Lollar have been admitted. Fed. Rule Civ. Proc. 36(a)(3) & (b).

2.      At the conclusion of the trial of Lucky I on August 30, 2017, the Judge set a schedule for the filing of post-trial briefs with the case to be deemed submitted for a decision on November 3, 2017. [2]

3.      On October 30, 2017, four days before Lucky I was to be deemed submitted for a decision, Mrs. Lollar's husband, Ronald Lollar ("Mr. Lollar"), signed papers prepared by Mrs. Lollar's attorney to form Magnolia Island Plantation, L.L.C. ("Magnolia").[3]

4.      Mrs. Lollar's lawyer, Mr. J. Davis Powell, in Lucky I and this action was named Magnolia's registered agent.[4]

5.       Magnolia's registered office address was the address of Mrs. Lollar's lawyer.[5]

6.      On November 2, 2017, the day before Lucky I was to be deemed submitted for a decision, Mrs. Lollar and Mr. Lollar signed documents to place the Land outside Mrs. Lollar's patrimony. The documents include the *Promissory Note*,[6] a *Credit Sale Deed with Vendor's Lien*

---

[2] Exhibit 3, pp. 2-3 (Responses to Requests for Admission Numbers 4 and 5); Exhibit 5, pp. 2-3 (Responses to Requests for Admission Numbers 4 and 5); Exhibit 7, pp. 1-2 (Minutes 8/30/17).

[3] Exhibit 8, pp. 1-4 (*Magnolia Articles; Magnolia Initial Report); * Exhibit 9, *Deposition of Ronald Lollar*, 10:18-25; 57:17 – 59:17; Exhibit 3, p. 4 (Response to Request for Admission Number 10); Exhibit 5, p. 4 (Response to Request for Admission Number 10).

[4] Exhibit 8, pp. 4-5 (*Magnolia Initial Report; Magnolia Registered Agent's Affidavit);* Exhibit 3, p. 5 (Response to Request for Admission Number 12); Exhibit 5, pp. 4-5 (Response to Request for Admission Number 12).

[5] Exhibit 8, p. 5 (*Magnolia Registered Agent's Affidavit);* Exhibit 3, p. 5 (Response to Request for Admission Number 13); Exhibit 5, pp. 5 (Response to Request for Admission Number 13).

[6] Exhibit 10.

*and Special Mortgage*,[7] an *Exchange Deed, with Assumption of Mortgage*, [8] and a *Declaration Regarding Reservation of Fruits and Revenues*. [9]

7.     The *Credit Sale Deed with Vendor's Lien and Special Mortgage*,[10] *Exchange Deed, with Assumption of Mortgage*,[11] and *Declaration Regarding Reservation of Fruits and Revenues*[12] were recorded in the public records of Bossier Parish on November 3, 2017, the day Lucky I was to be deemed submitted for a decision.

8.     Mrs. Lollar and Mr. Lollar had the used the same counsel in the transactions contained in the documents described in the preceding paragraph.[13]

9.     Mr. Lollar knew that the transactions contained in those documents were contemplated right after the trial and before the verdict in Lucky I.[14]

10.     On December 19, 2017, the State Court rendered its *Opinion* in Lucky I.[15]

11.     On January 5, 2018, the State Court signed a money *Judgment* on its *Opinion*.[16]

---

[7] Exhibit 11; Exhibit 3, pp. 6-7 (Responses to Requests for Admissions Numbers 17 and 18); Exhibit 5, p. 6 (Responses to Requests for Admissions Numbers 17 and 18).

[8] Exhibit 12; Exhibit 3, pp. 8-9 (Responses to Requests for Admissions Numbers 22 and 23); Exhibit 5, pp. 7-8 (Responses to Requests for Admissions Numbers 22 and 23).

[9] Exhibit 13; Exhibit 3, p. 10 (Responses to Requests for Admissions Numbers 27 and 28); Exhibit 5, p. 9 (Responses to Requests for Admissions Numbers 27 and 28).

[10] Exhibit 11; Exhibit 3, p. 8 (Response to Request for Admission Number 21); Exhibit 5, p. 7 (Response to Request for Admission Number 21).

[11] Exhibit 12; Exhibit 3, pp. 9-10 (Response to Request for Admission Number 26); Exhibit 5, pp. 8-9 (Response to Request for Admission Number 26).

[12] Exhibit 13; Exhibit 3, p. 11 (Response to Request for Admission Number 31); Exhibit 5, p. 10 (Response to Request for Admission Number 31).

[13] Exhibit 9, *Deposition of Ronald Lollar*, 64:8-22.

[14] Exhibit 9, *Deposition of Ronald Lollar*, 64:23-66:1.

[15] Exhibit 14.

12.    In the meantime, Mr. Lucky had discovered the Lollar's activities to place the Land outside of Mrs. Lollar's patrimony. Therefore, on December 11, 2017, Mr. Lucky filed a S*upplemental Petition* in Lucky I against the Lollars and Magnolia seeking a declaration that the transfers of the Land were subject to revocation, were simulations, or were fraudulent and therefore were null.[17] Along with that *supplemental petition*, Mr. Lucky filed a *Notice of Lis Pendens*.[18]

13.    After the State Court ruled that the *Supplemental Petition* could not be filed in Lucky I,[19] Mr. Lucky filed a petition in lawsuit number 155,382 ("Lucky II") seeking the same relief that had been sought by the *Supplemental Petition.*[20] Mr. Lucky also filed a *Notice of Lis Pendens* with respect to Lucky II.[21]

14.    Mrs. Lollar filed a *Motion for Devolutive Appeal of Final Judgment* on January 12, 2018.[22] Mrs. Lollar thereby took a devolutive appeal (and not a suspensive appeal) of the money *Judgment* that was signed in Lucky I.[23] Therefore, the *Judgment* in Lucky I was lawfully executory.[24]

---

[16] Exhibit 15.

[17] Exhibit 16.

[18] Exhibit 17.

[19] Exhibit 18.

[20] Exhibit 19.

[21] Exhibit 20.

[22] Exhibit 21.

[23] Exhibit 3, p. 19 (Response to Request for Admission Number 45); Exhibit 5, p. 17 (Response to Request for Admission Number 45).

[24] La. Code Civ. Proc. art. 2123(A).

15.     On May 31, 2018, Mr. Lucky filed a *Motion to Examine Judgment Debtor and for Discovery Concerning Judgment Debtor*,[25] and Mr. Lucky also requested the issuance of a writ of fieri facias in that motion, which was ordered.[26] The State Court signed the order on that motion, ordering that a writ of fieri facias be issued and setting a judgment debtor's examination.[27]

16.     On May 31, 2018, Mr. Lucky also filed an *Ex Parte Motion for Production of Property and Alternative Motion for Contempt*, as authorized under Louisiana Revised Statutes 13:3862.[28] In that motion, Mr. Lucky sought an order directing Mrs. Lollar to deliver the *Promissory Note* to the sheriff.[29] Mr. Lucky also again requested that a writ of fieri facias be issued.[30] Although Louisiana Revised Statutes 13:3862 specifically provides for an *ex parte* remedy, the State Court set the matter for a hearing on July 5, 2019.[31]

17.     Mr. Lucky also had Mrs. Lollar served through her counsel with a subpoena duces tecum for the July 5, 2019, hearing.[32] The subpoena duces tecum required Mrs. Lollar to bring the *Promissory Note* and related documents to the July 5th hearing.[33]

---

[25] Exhibit 6, p. 9, ¶ 21; Exhibit 22.

[26] Exhibit 6, p. 9, ¶ 21; Exhibit 22, p. 1 ¶ 3.

[27] Exhibit 6, p. 10, ¶ 22; Exhibit 22, *Order on Motion to Examine Judgment Debtor and for Discovery Concerning Judgment Debtor*; Exhibit 23 *Writ of Fieri Facias*.

[28] Exhibit 24.

[29] Exhibit 6, p. 9, ¶ 19; Exhibit 24, p. 3.

[30] Exhibit 24, p. 1 ¶ 5.

[31] Exhibit 6, p. 9, ¶ 20; Doc. 51-9 (*Order on Ex Parte Motion for Production of Property and Alternative Motion for Contempt*); Exhibit 24.

[32] Exhibit 6, p. 10, ¶ 23; Exhibit 25.

[33] *Id.*

18.     At the July 5, 2019, hearing the State Court ruled that the *Promissory Note* was subject to being seized in execution of the *Judgment*.[34]

19.     Mrs. Lollar was represented at the hearing by Mr. Powell (who was also Magnolia's registered agent at that time).[35]

20.     After the hearing, Mrs. Lollar's counsel, including Mr. Powell (who was also Magnolia's registered agent at that time), delivered the *Promissory Note* to the Sheriff.[36]

21.     Mrs. Lollar filed no appeal and sought no supervisory writ from the State Court's ruling that the *Promissory Note* was subject to being seized in execution.

22.     As required by Louisiana Revised Statutes 13:4363, the Sheriff served Mrs. Lollar with a *Notice of Seizure* of the *Promissory Note* through her attorney, Mr. Powell (who was also Magnolia's registered agent at that time).[37] The notice stated: "You should contact the Sheriffs Office at (318) 965-3404 for the actual sale date and any rescheduling."[38]

23.     Also as required Louisiana Revised Statutes 13:4363, the Sheriff served Mrs. Lollar with a *Notice to Appoint Appraiser* through her attorney, Mr. Powell (who was also Magnolia's registered agent at that time).[39]

---

[34] Exhibit 6, p. 10, ¶ 25; Exhibit 7, p. 1 (Minutes 7/5/18).

[35] Exhibit 7, p. 1 (Minutes 7/5/18); Exhibit 3, pp. 19-20 (Response to Request for Admission Number 48); Exhibit 5, p. 18 (Response to Request for Admission Number 48).

[36] Exhibit 6, p. 10, ¶ 25; Exhibit 7, p. 1 (Minutes 7/5/18); Exhibit 3, pp. 19-20 (Response to Request for Admission Number 48); Exhibit 5, p. 18 (Response to Request for Admission Number 48).

[37] Exhibit 26; Exhibit 3, pp. 19-20 (Response to Request for Admission Number 48); Exhibit 5, p. 18 (Response to Request for Admission Number 48).

[38] *Id.*

[39] Exhibit 27.

24.     In addition, Mrs. Lollar's attorney and Magnolia's registered agent were informed of the October 24, 2018, sheriff sale date by letters from the Sheriff's Office dated October 3, 2018, and October 15, 2018.[40]

25.     As the seizing creditor, Mr. Lucky appointed Mr. Chad Garland to appraise the Promissory Note.[41]

26.     Mr. Chad Garland took an oath to make a true and just appraisal of the Promissory Note.[42]

27.     Mr. Garland submitted an appraisal ($173,000) on October 5, 2018.[43]

28.     Mrs. Lollar's appraiser, Mr. John Dean, submitted an appraisal ($1,478,048.68) on October 18, 2018.[44]

29.     Because of the difference in the appraisals, the Sheriff was required to appoint a third appraiser.[45]

30.     Ms. Kim Flournoy of the Sheriff's Office anticipated that it might be necessary to appoint a third appraiser under Louisiana Revised Statutes 13:4365, and, on September 17, 2018, she sent Mr. Lucky's counsel an e-mail reading:[46]

---

[40] Exhibit 28.

[41] Exhibit 29.

[42] Exhibit 30.

[43] Exhibit 31.

[44] Exhibit 32.

[45] La. R.S. 13:4365(B); Exhibit 6, pp. 12-13, ¶ 33.

[46] Exhibit 33.

"Mr. Shelton it is my understanding the above referenced suit is with appraisal. In the event we have 2 appraisals that vary greatly and we have to get a third appraisal, do you have any recommendations as to whom appraises these types of notes? If possible could you give the names of at least two so we are not down to the wire trying to find one last minute. Thanks, Kim."

31.    The Sheriff's Office was asking for recommendations, which is not unusual, and

which the Sheriff's Office does in other instances.[47]

32.    The Sheriff's Office was free to accept or reject the recommendation.[48]

33.    On October 12, 2018, Mr. Lucky's counsel e-mailed Ms. Flournoy:[49]

In the event a third appraisal is needed, I have located a person (Mr. Patrick Lacour) who can appraise for the sheriff. He is an accountant who also [has] a CVA designation, which is a  Certified Valuation Analyst designation from NACVA (National Association of Certified Valuators and Analysts). That is the same designation that Mr. Garland has and that Mr. Dean, who I understand has been appointed for the defendant, has. Here is Mr. Lacour's contact information:

Mr. Patrick Lacour
Whitehall Advisors, LLC
3820A Bayou Rapides Rd.
Alexandria, LA 71303
Phone: (318) 769-9711
Fax: (318) 473-0075
E-mail: patrick@whitehalladvisors.net

I am also attaching a copy of Mr. Lacour's CV.

I have provided Mr. Lacour information about the note and he has told me that he is willing to be an appraiser for the Sheriff if he is appointed. Mr. Lacour understands that he would be appraising for the Sheriff and not for either party.

If I can identify other persons who might be added to the Sheriff's list of appraisers, I will let you know.

---

[47] Exhibit 34: *Deposition of David Lee Miller*, 59:20 – 61:1.

[48] Exhibit 34: *Deposition of David Lee Miller*, 61:2-7.

[49] Exhibit 35.

34.     On October 10, 2018, Mr. Lucky's counsel had e-mailed Mr. Lacour a letter with information and documents concerning the Promissory Note.[50] The letter specifically informed Mr. Lacour that, if he was appointed, he would not be acting for either the plaintiff or the defendant:

> If the sheriff elects to appoint you as a third appraiser, **you will not be acting for either the plaintiff or the defendant to appraise the promissory note.** If you are appointed, **you will be the Sheriff's appraiser.** In fact, **it will not matter whether the payment of your fees or expenses are paid by the plaintiff or the defendant.** In fact, when a judgment is enforced by a seizure of property and its sale, the Sheriff will require the plaintiff to advance funds to cover the costs incurred by the Sheriff in conducting the process. The law then provides the manner in which the plaintiff may recover those costs from the sale of the property by the Sheriff. **Regardless of any requirement that the plaintiff, in this case W. A. Lucky, III, advance funds to cover the costs incurred by the Sheriff, you will still be the Sheriff's appraiser.**

(Emphasis added).[51]

35.     The October 10, 2018, letter continued to inform Mr. Lacour of the identities of the persons appointed to appraise for the plaintiff and the defendant.[52]

36.     The October 10, 2018, letter continued to provide Mr. Lacour information so that he would be able to act timely if he was appointed in the two days before the sale:[53]

> While I am hopeful that the two appraisers will agree on the value of the promissory note, I recognize the possibility that they will not. Because the defendant's appraisal is could be required to be submitted as late as October 19, 2018, that could result in a third appraisal being needed by the following Monday or Tuesday, October 22, 2018, or October 23, 2018. Because of this possible time crunch, I thought I would provide you with relevant information in advance so that, **if you are appointed**, you will be able to meet the short time delay that you would have to appraise for the Sheriff.

---

[50] Exhibit 36.

[51] Exhibit 36, p. 2.

[52] Exhibit 36, p. 3.

[53] Exhibit 36, p. 3.

The letter also informed Mr. Lacour that he would need to execute an oath before a Notary and get the original to the sheriff by the appraisal deadline and that he would need to sign the appraisement sheet and provide it to the sheriff's office.

37.     The October 10, 2018, letter continued: "Here is some background that I think you will find to be helpful to this **potential** task." (Emphasis added).[54]

38.     Following the description of the background information, the letter continued and provided Mr. Lacour with prior appraisals of the immovable property and the mineral interests that ostensibly secured the Promissory Note:[55]

> I believe that you can evaluate the merits of the lawsuit filed as Lucky-Carr II when you look over the petition. The defendants have already tried to have the petition in Lucky-Carr II dismissed, and the Court has already ruled against them. I am sending a copy of that ruling, which was made by Judge Michael Craig. We are going to press forward with Lucky-Carr II to a trial and judgment. Mr. Lucky is resolute and unwavering, and he will pursue Lucky-Carr II to a conclusion.

> Although the property to be appraised and to be offered at the Sheriff's sale in Lucky-Carr I on October 24, 2018, is the promissory note, I am also sending an appraisal of the real property that Mrs. Lollar transferred by the Credit Sale Deed with Vendor's Lien and Special Mortgage. The appraisal indicates that the property has a value of $4,000 per acre. The property that Mrs. Lollar transferred was 280 acres, which would, therefore, have a value of $1,120,000.00. Nevertheless, what is relevant here is that the value of the promissory note must be determined based on the fact that a person who buys it will do so subject to the claims made against the property in Lucky-Carr II, which are protected by a lis pendens.

> Finally, I am sending a copy of the opinion of Coutret and Associates about the value of the mineral interest in the land. You will notice from Judge Self's ruling that he thought that it would be speculative to include an amount in his award for the value of the minerals to which Mr. McGowen testified. Like the land, it is not really the minerals that are to be appraised in this case, it is the promissory note. But, I wanted to include Coutret and Associates' opinion with this letter so that your information would be complete.

---

[54] Exhibit 36, p. 4.

[55] Exhibit 36, p. 7.

39.     An appraiser is free to obtain information from sources other than the Sheriff's Office with which to conduct an appraisal.[56]

40.     The Sheriff's Office did not understand that Mr. Lucky's counsel was appointing an appraiser for the Sheriff, and does not read the October 10, 2018, letter as doing so.[57]

41.     The Sheriff's Office did not understand that Mr. Lacour would act for either the plaintiff or the defendant.[58]

42.     Ms. Jean Horne also testified for the Sheriff's Office and agreed that the Sheriff provides the description of the property to be appraised but does not tell the appraisal what information to consider in doing the appraisal.[59]

43.     The appraiser is free to receive whatever information he may acquire or receive for the appraisal.[60]

44.     The Sheriff appointed Mr. Patrick Lacour as the third appraiser.[61]

45.     On Friday, October 18, 2018, Ms. Flournoy informed Mr. Lucky's counsel that she had spoken to Mr. Lacour, and that Mr. Lacour would be by the Sheriff's Office the following Monday to sign the form.[62]

---

[56] Exhibit 34: *Deposition of David Lee Miller*, 64:1 – 65:21.

[57] Exhibit 34: *Deposition of David Lee Miller*, 65:22 – 66:13.

[58] Exhibit 34: *Deposition of David Lee Miller*, 66:6 – 70:15.

[59] Exhibit 37: *Deposition of Jean Horne*, 34:11 – 35:1.

[60] Exhibit 37: *Deposition of Jean Horne*, 35:18-23.

[61] Exhibit 38.

[62] Exhibit 38, p. 2.

46.    On October 22, 2018, Mr. Lacour corresponded directly with Ms. Flournoy informing her that he would be driving up.[63]

47.    Mr. Lacour submitted his appraisal ($157,009.22) on October 22, 2018.[64]

48.    On October 22, 2018, Ms. Flournoy requested an invoice from Mr. Lacour.[65]

49.    Mr. Lacour submitted his invoice directly to Ms. Flournoy for his work to the Sheriff. [66]

50.    Mr. Lacour was paid by the Sheriff.[67]

51.    On October 22, 2018, at 3:44 p.m., Mrs. Lollar faxed a *Petition for Preliminary Injunctive Relief* to the Clerk of Court.[68]

52.    Mrs. Lollar's *Petition for Preliminary Injunctive Relief* was signed by Mr. Powell as Mrs. Lollar's attorney.[69] Mr. Powell is also the registered agent for Magnolia.[70]

53.    The *Petition for Preliminary Injunctive Relief* alleged that (a) Mr. Garland's appraisal was not true and just on its face and should be invalidated, (b) the third appraiser, Mr. Lacour, was chosen by Mr. Lucky's counsel, undermining the purpose of a third appraiser, and (c) the third appraisal was unjustly low.[71]

---

[63] Exhibit 38, p. 2.

[64] Exhibit 39.

[65] Exhibit 40.

[66] Exhibit 38 and Exhibit 41.

[67] Exhibit 42.

[68] Exhibit 43.

[69] *Id*.

[70] *See* note 4, *supra*.

[71] Exhibit 43.

54.     A proposed *ex parte* order was submitted with the *Petition for Preliminary Injunctive Relief* which read, in part: "IT IS HEREBY OEDERED [sic] that said Sheriff's Sale of the Promissory Note in this matter, currently scheduled for October 24, 2018 is hereby **stayed** pending resolution of the issue of the Note's value"[72]

55.     On October 25, 2018, the State Court denied Mrs. Lollar's proposed *ex parte* "stay" order, which could not have been lawfully granted, and did not set same for a hearing because it was moot as the sheriff's sale had been conducted.[73]

56.     None of Mrs. Lollar, Mr. Lollar, or Magnolia applied for a supervisory writ or attempted to appeal the State Court's denied of Mrs. Lollar's proposed *ex parte* "stay" order.

57.     Mr. Powell, who is Mrs. Lollar's attorney and Magnolia's registered agent, was present at the October 24, 2018, sheriff's sale.[74]

58.     Lucky Family, L.L.C. made a bid of $105,000 for the Promissory Note, and the note was adjudicated to Lucky Family, L.L.C.[75]

59.     Lucky Family, L.L.C. paid the bid and its bid was funded with its own money.[76]

60.     The Sheriff executed a Judicial Bill of Sale to Lucky Family, L.L.C.[77]

---

[72] Exhibit 43 (emphasis added).

[73] Exhibit 43.

[74] Exhibit 3, pp. 20 (Responses to Requests for Admissions Numbers 49 and 50); Exhibit 5, p. 18 (Responses to Requests for Admissions Numbers 49 and 50).

[75] Exhibit 44: Proces Verbal.

[76] Exhibit 45.

[77] Exhibit 46.

61.     On October 11, 2018, Mrs. Lollar, Mr. Lollar, and Magnolia answered Mr. Lucky's petition in Lucky II, and Mrs. Lollar included a reconventional demand claiming that the notices of *lis pendens* filed by Mr. Lucky were improper. [78]

62.     On January 16, 2019, the Louisiana Second Circuit Court of Appeal reversed the *Judgment* in Lucky I. *Lucky v. Carr*, 52,434 (La.App. 2 Cir. 1/16/19); 264 So. 3d 693 (2019).

63.     On April 8, 2019, the Louisiana Supreme Court denied Mr. Lucky's application for a writ of certiorari. *Lucky v. Carr*, 2019-0261 (La. 4/8/19); 267 So. 3d 616 (2019).

64.     Following the Louisiana Supreme Court's denial of writs, counsel for the Lollars and Magnolia made a demands by letter dated April 17, 2019, asserting that the notices of *lis pendens* must be cancelled, demanding that Mr. Lucky cancel the second notice of lis pendens, and demanding that Mr. Lucky to dismiss his claims in Lucky II by April 24, 2019.[79]

65.     On April 24, 2019, Mr. Lucky cancelled both of the notices of *lis pendens*.[80]

66.     On April 24, 2019, Mr. Lucky filed a Motion and Order to Dismiss to dismiss his claims in Lucky II, which the State Court signed on April 25, 2019.[81]

67.     On November 13, 2019, and November 26, 2019, Mrs. Lollar's counsel demanded that Mr. Lucky pay $8,365.00 as the amount she was awarded for the costs of the

---

[78] Exhibit 47.

[79] Exhibit 48.

[80] Exhibit 49.

[81] Exhibit 50.

appeal in Lucky I, and $97,593.50 as the proceeds from the Sheriff's Sale of the Promissory Note.[82]

68.     On December 3, 2019, Mr. Lucky's counsel sent two official checks payable to Mrs. Lollar's counsel in the amounts of $8,430.00 for the appeal costs and $97,593.50 as the proceeds from the Sheriff's Sale of the Promissory Note.[83]

69.     Mrs. Lollar accepted and negotiated both of these checks by negotiating same with her endorsements "Pay to the order of Davidson Summers," and the checks cleared Citizens Bank on December 5, 2019.[84]

**Lucky Family, LLC**

70.     Lucky Family, LLC was formed on April 9, 1998.[85]

71.     Lucky Family, LLC's initial report filed with the Louisiana Secretary of State listed Mr. Lucky and Ms. Vickie Lucky as its members.[86]

72.     Mr. Lucky and Ms. Lucky were Lucky Family, LLC's members as of April 9, 1998, and as of the April 13, 1998, filing of Lucky Family, LLC's formation documents.[87]

---

[82] Exhibit 51 and Exhibit 52.

[83] Exhibit 53.

[84] Exhibit 54. Mrs. Lollar accepted and negotiated both of these checks by negotiating same with her endorsements "Pay to the order of Davidson Summers," and the checks cleared Citizens Bank on December 5, 2019. *See* La. R.S. 10:3-203(a)&(c), 10:3-416, 10:4-207.

[85] Exhibit 55; Exhibit 56; Exhibit 57.

[86] Exhibit 56.

[87] Exhibit 55; Exhibit 56; Exhibit 57.

73.     Plaintiffs allege that, "[a]t the time of the Sheriff's Sale, Mr. Lucky was shown by the records of the Louisiana Secretary of State's office to be a member and beneficiary of Lucky Family, LLC."[88]

74.     Section 4.4. of Lucky Family, LLC's articles provided: "The Members may elect a Manager who may manage the business of the Company."[89] Lucky Family, LLC's original

---

[88] Exhibit 6: *Amended Complaint*, Doc. 51 ¶ 46.

Plaintiffs' statement that the Secretary of State's office's records showed Mr. Lucky to be a member of Lucky Family, LLC at the time of the Sheriff's Sale is misleading. The Secretary of State's office's online records only show what was last reported on an initial or annual report filed with the Secretary of State. Once a person is reported to be a member of a limited liability company, there is only a requirement to update a prior report of the members of the company *if management of the limited liability company is reserved to the members*. *See* La. R.S. 12:1305(E)(4)(initial report). Paragraph A of Louisiana Revised Statutes 12:1308.1 provides, in pertinent part, for annual reports:

A. On or before the anniversary date of organization of each limited liability company, a manager of the company, if its management is vested in one or more managers, or a member of the company, if its management is reserved to the members, shall file an annual report each year with the secretary of state, signed in the name of the limited liability company by the manager, member, or agent stating the following:

. . . .

(3) The name and municipal address, which shall not be a post office box only, of each manager, if management of the limited liability company is vested in one or more managers, or each member, *if management of the limited liability company is reserved to the members*.

(Emphasis added).

The purpose of listing members or managers in a limited liability company's initial report or annual report is to list persons who manage the company, not to serve as an official record of who owns the equity in the company where management is not reserved to the members. By law, a manager of a limited liability company need not be a member. La. R.S. 12: 1312 ¶A ("The articles of organization **may** provide that the business of the limited liability company shall be managed by or under the authority of one or more managers who **may, but need not, be** members.")(Emphasis added).

*Operating Agreement*, read: "If permitted to by the Articles of Organization, the Members may elect one or more Manager. A Manager need not be a Member."[90]

75.    Lucky Family, LLC exercised the option to appoint managers.[91]

76.    Lucky Family, LLC's articles and operating agreement did not reserve management of the company to its members.[92]

77.    Plaintiffs' statement that the Secretary of State's office's records showed Mr. Lucky to be a "beneficiary" of Lucky Family, LLC is absolutely false.

78.    The Secretary of State's office does not keep a record of a category of persons called a "beneficiary" of a limited liability company.

79.    Effective January 1, 1999, Mr. Lucky's and his wife Vickie Talley Lucky's membership interest in Lucky Family, LLC was reduced to 97% of the company's membership interest.[93]

80.    Effective November 22, 2000, Mr. Lucky's and his wife Vickie Talley Lucky's membership interest in Lucky Family, LLC was reduced to 96% of the company's membership interest.[94]

---

[89]    Exhibit 55. A limited liability company may, but is not required to, reserve management of the company exclusively to a manager. La. R.S. 12:1311 ("Except as otherwise provided in the articles of organization, the business of the limited liability company shall be managed by the members, subject to any provision in a written operating agreement restricting or enlarging the management rights and duties of any member or group or class of members."). However, it is not required to do so.

[90] Exhibit 58.

[91] Exhibit 59.

[92] Exhibit 55; Exhibit 58. Therefore, after Lucky Family, LLC was formed, there was no legal requirement that it file any document with the Secretary of State to list or update the listing of Lucky Family, LLC's members. *See* note 88, *supra*; La. R.S. 12:1308.1(A).

[93] Exhibit 60.

81.    Mr. Lucky's and his wife Vickie Talley Lucky's membership interest in Lucky Family, LLC was reduced to 96% as a result of their donating an additional 1/3 of 1% of the membership interest to each of their children as set forth in the donations that were notarized by Mrs. Lollar.[95]

82.    Ms. Lollar also notarized the *Certificate Pursuant to La R.S. 12:1317(C) and of Authorization to Act on Behalf of Company* which stated the members of Lucky Family, L.L.C. and excluded Mr. Lucky as a member.[96]

83.    Next on November 22, 2000, Mr. Lucky donated his remaining membership interest in Lucky Family, L.L.C. to his wife Vickie Talley Lucky as her separate property.[97]

84.    A *First Amendment to Operating Agreement Lucky Family, L.L.C.* was also executed and reflected that Vickie Talley Lucky's membership interest in Lucky Family, LLC was reduced to 96% of the company's membership interest, and each of the children's membership interest was 1 1/3 % of the company's membership interest.[98]

85.    A clerical error was made in the Act of Donation signed by Mr. Lucky on November 22, 2000, to give all of his remaining membership interest in Lucky Family, L.L.C. to

---

[94] Exhibit 61.

[95] Exhibit 62.

[96] Exhibit 63.

[97] Exhibit 64.

[98] Exhibit 65.

his wife.[99] The Notary Public who prepared the Act of Donation has executed an affidavit of correction under Louisiana Revised Statutes 35:2.1 to correct that clerical error.[100]

86.     Because Lucky Family, L.L.C. is a limited liability company which has elected to be taxed as a partnership, its tax returns are prepared on Form 1065 U.S. Return of Partnership Income.[101]

87.     Because Lucky Family, L.L.C. is a limited liability company which has elected to be taxed as a partnership, it issues a Schedule K-1, Form 1065, "Partner's Share of Income, Deductions, Credits, Etc." to each member of the limited liability company for each year.[102]

88.     Lucky Family, L.L.C. has not issued a Schedule K-1, Form 1065 to W.A. Lucky, III for any year after 2000.[103]

89.     For the years after 2000, Lucky Family, L.L.C. has issued a Schedule K-1, Form 1065 to its members Vickie Talley Lucky, Jennifer Joyce Lucky, William A. Lucky, IV, and Heidi Lucky Hamm.[104]

90.     For the years after 2000, the members of Lucky Family, L.L.C. have met from time to time and minutes have been maintained from those meetings.[105]

---

[99] Exhibit 66, *Declaration of W.A. Lucky, III*, ¶¶ 4-6; Exhibit 66, Exhibit B, *Affidavit of Act of Correction of Act of Donation*.

[100] Exhibit 66, Exhibit B, *Affidavit of Act of Correction of Act of Donation*.

[101] Exhibit 67, *Declaration of W. Lewis Demoss, Jr.*, ¶ 4.

[102] Exhibit 67, *Declaration of W. Lewis Demoss, Jr.*, ¶ 5.

[103] Exhibit 67, *Declaration of W. Lewis Demoss, Jr.*, ¶ 6.

[104] Exhibit 67, *Declaration of W. Lewis Demoss, Jr.*, ¶ 7; Exhibit 68; Schedules K-1, Form 1065.

[105] Exhibit 69.

91.     Mr. Lucky has not attending any of the meetings of the members of Lucky Family, L.L.C. as a member.[106]

92.     Mr. Lucky has attended some meetings of the members of Lucky Family, L.L.C. as a guest.[107]

93.     When Lucky Family, L.L.C. desired that Mr. Lucky be authorized to take specific action for the company, the actual members of the company signed a certificate of authority to that effect.[108]

AYRES, SHELTON, WILLIAMS, BENSON & PAINE, LLC


By: /s/ Curtis R. Shelton
        Curtis R. Shelton
La. Bar Roll No. 17137
333 Texas Street, Suite 1400 (71101)
P. O. Box 1764
Shreveport, LA 71166
Telephone: (318) 227-3500
Facsimile: (318) 227-3980
Email: curtisshelton@arklatexlaw.com

---

[106] Exhibit 69.

[107] Exhibit 69, p. 11, 12, 22.

[108] Exhibit 70.

WIENER, WEISS & MADISON
A Professional Corporation


By: /s/ R. Joseph Naus
    R. Joseph Naus, #17074
    Marjorie Frazier, #32991
330 Marshall Street, Suite 1000 (71101)
P. O. Box 21990
Shreveport, LA 71120-1990
Telephone: (318) 226-9100
Facsimile: (318) 424-5128
E-mail: rjnaus@wwmlaw.com
E-mail mfrazier@wwmlaw.com

ATTORNEYS FOR W. A. LUCKY, III