UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| MAGNOLIA ISLAND PLANTATION L.L.C. and BARBARA MARIE CAREY LOLLAR<br>    Plaintiffs | § § § § § | CIVIL ACTION NO: 5:18-cv-01526 |
| VS | § § | CHIEF JUDGE S. MAURICE HICKS, JR. |
| LUCKY FAMILY, L.L.C., W.A. LUCKY, III, and BOSSIER PARISH SHERIFF JULIAN C. WHITTINGTON<br>    Defendants | § § § § § § | MAGISTRATE JUDGE KAREN HAYES<br>Jury Trial Demanded |

## REPLY MEMORANDUM IN SUPPORT OF BARBARA LOLLAR'S MOTION TO COMPEL PRODUCTION OF COMMUNICATIONS BETWEEN W.A. LUCKY, III AND LUCKY FAMILY, L.L.C.

One of Mr. Lucky's defenses in this matter is that he was just seizing and selling Mrs. Lollar's property based on his judgment in Lucky I, and that he is not involved with his family L.L.C.'s coincidental purchase of that same property. Mr. Lucky has asserted that he has nothing to do with the L.L.C., and claims that he has no membership interest in it. Mrs. Lollar strongly disputes this feigned distance between Mr. Lucky and Lucky Family, L.L.C., as she has asserted that they coordinated on the purchase of her Note for a drastically reduced value caused by a lawsuit and lis pendens filed by Mr. Lucky. However, should we give credence to Mr. Lucky's assertions that he and the L.L.C. are like "oil and water"[1], then it narrows the application of law to the discovery dispute based on whether or not a qualifying common interest exists as to the communications. Even if Mr. Lucky believes the communications at issue were privileged (which

---

[1] Mr. Lucky testified during his deposition at "We're like oil and water" in reference to his relationship with Lucky Family, L.L.C.

we dispute, for the reasons set forth in our original memorandum in support of this motion), they were still disclosures between Mr. Lucky and his counsel on one hand and Lucky Family, L.L.C.'s counsel on the other.[2] Mr. Lucky's argument seeks for this Court to shield relevant communications under a very loose interpretation of shared interest.

The common interest doctrine is not a foregone conclusion in instances of disclosure of otherwise privileged information. *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710–13 (5th Cir. 2001). (A party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability.) Further, the common interest doctrine is not itself a privilege, but an extension of the attorney-client privilege which is to be narrowly construed because its application is an obstacle to truth seeking. *In re LTV Securities Litigation*, 89 F.R.D. 595, 604 (N.D. Texas 1981); See also *In re Santa Fe Int'l Corp.*, *supra*. There is no protection under the common interest doctrine if the product is transmitted to a party with an adverse interest. *Robinson v. Texas Auto. Dealers Ass'n*, 214 F.R.D. 432, 443–44 (E.D. Tex. 2003), *vacated in part sub nom. In re Texas Auto. Dealers Assn.*, No. 03-40860, 2003 WL 21911333 (5th Cir. July 25, 2003). See also *Mack Energy Co. v. Red Stick Energy, L.L.C.,* No. CV 16-1696, 2019 WL 4752110, at *6 (W.D. La. Sept. 27, 2019). Communications that are not in furtherance of legal advice or which are between the clients and not the attorneys are not privileged. *Id*. "The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial." *Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.,* 215 F.R.D. 466, 471 (S.D.N.Y. 2003).

---

[2] The communications at issue do not involve any of the alleged members of Lucky Family, L.L.C. despite the stated subject matter of certain communications purporting to be for Lucky Family, L.L.C. rather than Mr. Lucky. Instead, the communications include Mr. Lucky himself in certain instances, and his counsel in all instances.

2

As set forth below, the communications at issue are instances of disclosures between Mr. Lucky, or his counsel, and Lucky Family, L.L.C.'s counsel.  Mr. Lucky must satisfy the requirements of the common interest doctrine in order to shield those communications from Mrs. Lollar.  In addition, the subject matter must actually qualify as a type of communication which could be protected.  Communications regarding Lucky Family, L.L.C.'s decision to attempt to purchase the Note are commercial, as they concern a prospective economic transaction by Lucky Family, L.L.C.  Similarly, the communications regarding Lucky Family, L.L.C.'s collection of the Note should not concern Mr. Lucky if he is as separate and apart from the L.L.C. as he wants the court to believe.  More importantly, at the time of the communications Mr. Lucky was pursuing the contrary objective of nullifying the Note and taking away the ownership of the collateral property from the Note's payor (Magnolia).[3]  Just two weeks prior to the first communication at issue, Mr. Lucky's counsel characterized Mr. Lucky's mindset in regards to his contrary pursuit in the Lucky II litigation as follows:

> "We are going to press forward with [Lucky II] to a trial and judgment.  Mr. Lucky is resolute and unwavering, and he will pursue [Lucky II] to a conclusion."[4]

Therefore, if Mr. Lucky had been successful in his "unwavering" claims of Lucky II it would be fatal to Lucky Family, L.L.C.'s collection of the Note.

Mr. Lucky's response brief and the Declaration of Curtis R. Shelton [Rec. Doc. 78-1, hereinafter the "Declaration"], hope to dryly assert privilege along with a loose depiction of a shared interest.  However, simply not wanting Mrs. Lollar to succeed does not satisfy the

---

[3]     Mr. Lucky's response brief does not directly address the fact that he was pursuing an action contrary to Lucky Family, L.L.C.'s collection of the Note in Lucky II.

[4]     October 10, 2018 Letter from Curtis Shelton to Patrick Lacour, Rec. Doc. 51-13.

requirements of the common interest doctrine.[5] Mrs. Lollar's allegations call into question the notion that the purchase of the Note by Mr. Lucky's family L.L.C. was a mere coincidence.[6] Despite Mr. Lucky's argument to the contrary, Mrs. Lollar cannot otherwise obtain these communications of Mr. Lucky's coordination with Lucky Family, L.L.C. Further, the fact that Mr. Lucky has (now) disclosed in the Declaration general information on the type of attachments which were included with the communications, it still does not (a) specifically identify the attachments in each communication, or (b) allow review of the attachments in the context of the actual communication. Both of these elements of the communication are relevant to Mrs. Lollar's claims and the production of the emails would clearly be proportionate to the needs of the case.

We already know from the privilege log, and now the Declaration, that Lucky Family, L.L.C.'s counsel will hardly make a move without coordinating with Mr. Lucky or his counsel. This reinforces Mrs. Lollar's claim that Mr. Lucky's seizure and sale of her Note for only 6% of its value to Lucky Family, L.L.C. was manufactured in order to gain leverage against her during a pending appeal. This is the same objective evidenced in Mr. Lucky's own letter to Lollar just days after the Sheriff's sale, wherein his counsel claims that "the amounts owed by Ms. Lollar and Mr. Lollar total nearly $4.3 million."[7]

---

[5] Mr. Shelton's Declaration repeatedly cites to Mrs. Lollar not succeeding as the vague shared interest.

[6] It was only the L.L.C.'s second purchase at Sheriff's sale and the first time they purchased a promissory note as an asset of the L.L.C.

[7] See Rec. Doc. 80-4 to reference the October 29, 2018 letter from Mr. Shelton to Mrs. Lollar wherein Mr. Lucky aggregates the full acceleration of the Note (even though he claims in these proceedings he does not have an interest in it) along with the supposed deficiency he would pursue due to the fact that the Note did not sell for its full value. Of course, evidence presented in this matter shows the Note was devalued by the encumbrances Mr. Lucky had put in place prior to the Note sale.

**COMMUNICATIONS AT ISSUE:**

October 23, 2018 Emails:

Documents 1-4 (as referenced in the Declaration) are October 23, 2018 emails and attachments sent from Mr. Shelton to Mr. Touchstone. The Declaration states, at paragraph 8, that there is no textual content to the emails beyond a signature block, IRS Circular, and a Confidentiality Statement. The Declaration suggests Mr. Shelton was providing documents to Lucky Family, L.L.C. because they were interested in purchasing the Note at the Sheriff's sale; however, there is no indication as to what prompted his knowledge of Lucky Family, L.L.C.'s intentions or their need for Mr. Shelton's involvement. It is important to note that the Lucky Family, L.L.C. had no actual interest in the Note at this stage and there was no litigation regarding the Note. Therefore, Mr. Shelton's assertion of a common interest is based on the contingency that the LLC would be a successful bidder, on top of the contingency that there may eventually be a lawsuit. This begs the question: how could Lucky Family, L.L.C. be a potential co-defendant when, at the time of the communication, they had no interest in the subject matter of the purported anticipatory litigation? Such a complex hypothetical position is too far removed to apply the narrow privilege extension of the common interest doctrine. Further, if Lucky Family, L.L.C.'s interest in purchasing the Note is what prompted the transmission of the attachments, then the purpose is clearly commercial and therefore it is not protected by the common interest doctrine.

Despite the fact that Mr. Shelton agues that the documents attached to the October 23, 2018 communication were already provided in discovery, such assurance does mean the documents can be "obtained by counsel for the plaintiff through other means." The exact documents attached are not identified as being connected to these communications. A party is not required to guess at which documents produced in discovery were included in these particular communications.

5

October 24, 2018 Emails:

Mr. Shelton's Declaration states that the October 24, 2018 email, "Document No. 5", entitled "recommendations to Lucky Family, L.L.C." was received by Mr. Shelton; however, it was directed to Mr. Lucky, and Mr. Shelton was only copied. Document No. 5 was a communication received from a third party, David A. Touchstone. The information is said to contain recommendations from Mr. Touchstone to Lucky Family, L.L.C.; however, the communication does not include any purported members of Lucky Family, L.L.C. but was instead disclosed to Mr. Lucky and Mr. Shelton.

Lucky Family, L.L.C. claims to have purchased the Note at this point in time, and issued a letter on the same day in pursuit of the Note's installment payments.[8] Mr. Shelton's declaration states that Document No. 5 is protected by the common interest doctrine because "Mr. Lucky and Lucky Family, L.L.C. both shared the interest that the sheriff's sale was valid and that claims made by Ms. Lollar on other parties would not succeed." (Declaration, paragraph 24). This broad mantra of shared interest ignores the reality that Mr. Lucky was pursuing litigation contrary to Lucky Family, L.L.C.'s interest and which would nullify the Note transactions. Mr. Shelton avers that disclosure of Document No. 5 will reveal Mr. Touchstone's "mental impressions, conclusions, opinions and/or legal theories", but Mr. Touchstone already did that when he emailed Mr. Lucky.

Document Numbers 6 - 8 are October 24, 2018 communications regarding a letter to Ronald Lollar from David M. Touchstone. This is a post-sale communication sent from counsel for Lucky Family, L.L.C., to Mr. Lucky and his counsel Mr. Shelton. Based on the October 24,

---

[8] See Rec. Doc. 71-13 for October 24, 2018 letter from David Touchstone to Magnolia regarding payment of the Note.

2018 letter at rec. Doc. 71-13, the subject matter of the letter is for the purpose of Lucky Family, L.L.C.'s collection of Note payments. It is unclear why Mr. Lucky and Mr. Shelton are involved with efforts to collect the Note despite Mr. Lucky now claiming he has no interest in the Note or the L.L.C. Mr. Lucky must rely upon the common interest doctrine, as the communication would not otherwise qualify for privilege due to its disclosure. However, Mr. Lucky was pursuing Lucky II at the time which could only thwart Lucky Family's collection efforts. If we are to give credence to Mr. Lucky's assertions that he was simply a judgment creditor seizing and selling property in satisfaction of a judgment, then he has no interest in Lucky Family, L.L.C.'s collection of the Note. This is not a communication regarding shared interest in litigation (litigation that does not exist at this point) but rather evidence of the coordination between Mr. Lucky and Lucky Family, L.L.C. in regards to acquiring the Note cheaply then collecting the Note's full value.

The November 2, 2018, January 17, 2019 and February 7, 2019 Emails:

Document Numbers 9-11 are November 2, 2018 email communications regarding drafts of a default letter in regards to the Note. The letters were apparently being prepared to send to the Note payor based on the assertions in the Declaration. For the same reasons stated above regarding the October 24, 2018 communications, the subject matter of Documents 9-11 is for the purpose of collection of the Note. Mr. Lucky purports he has nothing to do with the Note or the L.L.C. and otherwise is overtly pursuing a contrary goal through his Lucky II litigation. Therefore, the communications do not qualify for an extension of privilege to shield them from discovery.

Document Numbers 12 and 13 are January 17, 2019 emails which include further default letters for the Note. At this point in time the only thing that has changed is (a) the Notice that the

7

Lucky I Judgment had been reversed had just been issued on January 16, 2019[9], and (b) that the present litigation had been filed where Mr. Lucky and Lucky Family, L.L.C. were both named defendants. Having the status of co-defendants does not immediately equate to having a common interest which qualifies for the extension of privilege. The communication must still satisfy a mutual course as to the litigation in which both parties would share an interest. Mr. Lucky claims he does not share an interest in the Note or in Lucky Family, L.L.C., and at this time, he has no rights in regards to Mrs. Lollar after the Lucky I judgment was reversed. However, Mr. Lucky is still holding on to his claims in Lucky II and therefore he continues to pursue a contrary goal than Lucky Family, L.L.C. Document No. 13 is also said to contain "draft pleading" assumingly for this current matter. The fact that counsel for Lucky Family, L.L.C. and counsel for Mr. Lucky felt comfortable exchanging their pleadings does not alone make it privileged. It is still a disclosure which must rely upon the common interest doctrine but which does not qualify for such protections due to Mr. Lucky's contrary objectives at this point.

Document Numbers 14 and 15 are February 7, 2019 emails where Mr. Touchstone and Mr. Shelton exchange a February 7, 2019 letter which had been sent to Mr. Touchstone from undersigned counsel. The subject matter of undersigned counsel's February 7, 2019 letter was a response to prior letters regarding default notices by Lucky Family, L.L.C. to the Note's payor. The subject matter is once again collection of the Note. For the same reasons repeated above, such disclosures cannot be shielded by sweeping assertions of common interest under the facts and circumstances at the time this communication occurred.

---

[9] See Rec. Doc. 51-5 for Notice of Judgment reversing Mr. Lucky's only judgment against Mrs. Lollar in its entirety.

8

## **CONCLUSION:**

The adverse interests between Mr. Lucky and Lucky Family, L.L.C. were not theoretical at the time of the subject communications but were overtly evidence by Mr. Lucky's own separate litigation in Lucky II. This being the same litigation cited by Mr. Lucky's counsel when providing directives to appraisers involved in the Note sale and the same litigation upon which we now know the appraisers, including the claimed third appraiser, devalued the Note prior to the Sheriff's sale. The subject matter of each communication is either in furtherance of Lucky Family, L.L.C.'s attempt to purchase the Note (commercial) or Lucky Family, L.L.C.'s collection of the Note. The "primary motivating purpose" behind these communications is not anticipatory litigation and neither are protected under the common interest doctrine under the circumstances.

Mr. Lucky continues to try and have it both ways: he wants the court to see his family L.L.C. as separate and not controlled by him, but then he wants to shield their apparent coordination on issues regarding the Note sale and collection. Simply reading the privilege log entries already indicates that Mr. Lucky was to be in control of the Note's fate even after the Sheriff's sale. The coordination between these parties is certainly relevant towards answering how $1.7 million dollars' worth of property can be sold during an appeal for **6% of its value**, to the benefit of the judgment creditor and his family L.L.C.

For the reasons set forth herein, Mrs. Lollar requests that this Court order Mr. Lucky to produce the communications at issue.

Respectfully submitted by,

_/s/ J. Davis Powell_____
Randall S. Davidson, LSBA No. 4715, TA
J. Davis Powell, LSBA 33631
Andrew D. Martin, LSBA 34947
Harold R. Bicknell III, LSBA 36801
DAVIDSON SUMMERS, APLC
330 Marshall Street, Suite 1114
Shreveport, Louisiana 71101
Ph: (318) 424-4342 | (318) 226-0168
E:    rsdav@davidsonsummers.com
       dpowell@davidsonsummers.com
       dmartin@davidsonsummers.com
       hbicknell@davidsonsummers.com
***Counsel for Barbara Marie Carey Lollar***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the above and foregoing was filed electronically with the Clerk of Court using the CM/ECF filing system, and notice of the same will be sent to counsel of record by operation of the court's electronic noticing system.

Shreveport, Louisiana, on this 25th day of December, 2019.

_s/ J. Davis Powell_____
OF COUNSEL