UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| MAGNOLIA ISLAND PLANTATION, L.L.C. and BARBARA MARIE CAREY LOLLAR | § § § | CIVIL ACTION NO: 5:18-cv-01526 |
| Plaintiffs | § § | |
| VS. | § § | DISTRICT JUDGE MAURICE HICKS |
| LUCKY FAMILY, L.L.C., W.A. LUCKY, III, And BOSSIER PARISH SHERIFF JULIAN C. WHITTINGTON, in his official capacity | § § § § | MAGISTRATE JUDGE KAREN HAYES |
| Defendants | § | |

# AMENDED AND CORRECTED
# MEMORANDUM IN SUPPORT OF
# BOSSIER PARISH SHERIFF JULIAN WHITTINGTON'S
# MOTION FOR SUMMARY JUDGMENT

Respectfully submitted by:

LANGLEY, PARKS & MAXWELL, LLC

By:   S / Julianna P. Parks
       Glenn L. Langley, Bar Roll No. 8019
       Julianna P. Parks, Bar Roll No. 30658
401 Market Street, Suite 1100
Shreveport, Louisiana 71101
(318) 383-6422 Telephone

***Attorney for Julian C. Whittington,
Sheriff of Bossier Parish***

## **TABLE OF CONTENTS**

Table of Contents ...................................................................................................ii

Table of Authorities ............................................................................................... iii

Memorandum in Support of Motion for Summary Judgment ....................................... 4

    I.      Introduction ............................................................................................... 4

    II.     Undisputed Facts ........................................................................................ 5

    III.    Claims Against Sheriff Whittington ................................................................ 8

    IV.    Law and Analysis ...................................................................................... 10

           A.  Sheriff Whittington is entitled to qualified immunity with respect to both of Plaintiffs' claims against him. .................................... 10

                1.  Sheriff Whittington's actions complied with Louisiana law requiring appointment of third appraiser..................................... 11

                2.  Sheriff Whittington provided all notice required by clearly established law ................................................................................. 14

    V.     Conclusion ................................................................................................ 15

# **TABLE OF AUTHORITIES**

**Cases**

Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) ................................................................ 10

Malley v. Briggs, 475 U.S. 335 (1986) ............................................................................ 10

Morgan v. Swanson, 659 F.3d 359, 371 (5th Cir. 2011) ................................................. 10

Morgan v. Swanson, 659 F.3d at 372 .............................................................................. 15

White v. Pauly, 137 S.Ct. 548, 551 (2017) (citation omitted) ......................................... 10

**Statutes**

La. R.S. 13:4341, et seq. .................................................................................................. 11

La. R.S. 13:4365 .............................................................................................................. 13

La. R.S. 13:4365(B) ................................................................................................... 11, 13

MAY IT PLEASE THE COURT:

NOW INTO COURT, through undersigned counsel, comes Defendant, Bossier Parish Sheriff Julian C. Whittington, in his official capacity (hereinafter "Sheriff Whittington"), who respectfully moves for summary judgment against Magnolia Island Plantation, L.L.C. (hereinafter "Magnolia"), and Barbara Marie Carie Lollar (hereinafter "Lollar"; collectively "Plaintiffs").

## I. Introduction.

This suit is the latest in an ongoing legal dispute between Plaintiff Lollar and Defendant W.A. Lucky, III (hereinafter "Lucky") that began with the first suit being filed in 2008.[1] In that suit, Lucky sued Lollar alleging that she was acting as his agent when she purchased a 350-acre tract of land in Bossier Parish that neighbored Lucky's property (hereinafter the "Property") and seeking damages for her failure to transfer the Property to him as he alleged was agreed. See Rec. Doc. 51-5. Trial was held on August 28-30, 2017. See Exhibit 2. After trial, Judge Self took the matter under advisement and issued a briefing schedule, stating that after the briefing deadlines had passed, the matter would be deemed submitted on November 3, 2017. Id.

The day before the matter was deemed submitted, on November 2, 2017, Lollar transferred the Property to her husband in exchange for a note (hereinafter the "Note"). Rec. Doc. 51-2. Her husband then transferred the property to Magnolia on the same date. Rec. Doc. 51-3. Davis Powell, Lollar's attorney in both this proceeding and the previous proceedings, and his assistant Ivy Johnson, served as notaries for these transfers. See

---

[1] W.A. Lucky, III v. Barbara Marie Carey Carr Lollar, No. 127,573, 26th Judicial District Court, Bossier Parish, Louisiana (hereinafter "the Original Suit").

id. Lucky alleges that Lollar moved the property to prevent it from being seized in the suit should the Court issue a ruling in Lucky's favor. On December 19, 2017, Judge Self issued a written opinion in favor of Lucky and against Lollar in the amount of $1,799,450.52. Rec. Doc. 51-4. Lollar filed a devolutive appeal which allowed Lucky to begin seizing property to satisfy the judgment while the appeal was pending. Rec. Doc. 51, paragraph 19.

## II.     Undisputed Facts.

The facts as relative to the claims against Sheriff Whittington in this matter began on June 8, 2018, when Sheriff Whittington was served with a Writ of Fieri Facias (hereinafter "the Writ of Fifa") by Jill M. Sessions, Clerk of Court for the Parish of Bossier, State of Louisiana, ordering him to seize and sell the property of Lollar to satisfy a judgment rendered against her in favor of Lucky. See Exhibit 1. On July 5, 2018, the trial court in the Original Suit, ordered counsel for Plaintiffs to deliver the Note to Sheriff Whittington's office (hereinafter the "BSO"). See Exhibit 2.  Also on July 5, 2018, Kimberly Flournoy, working in the Civil Division of the BSO (hereinafter "Flournoy"), issued a letter to Lucky, as debtor listed in the Writ of Fifa, through counsel Curtis Shelton (hereinafter "Shelton"), advising that the Writ of Fifa and the Note were received, and stating that a $1,500.00 deposit would be required before proceeding. See Exhibit 3.

On September 5, 2018, two months later, Flournoy received a letter from Shelton enclosing a check for the $1,500.00 deposit and asking that the sale of the Note pursuant to the Writ of Fifa be set for October 24, 2018, or alternatively, October 17, 2018. See Exhibit 4. The letter provided that the notice of seizure and to appoint appraiser could be served through judgment debtor Lollar's counsel and provided the address. See id. As

was typical procedure with all sheriff's sales conducted by BSO, Flournoy corresponded with Shelton, as the judgment creditor's attorney, to obtain the information necessary to proceed with the seizure and sale of the note, including the seized property description and service information for the required notices. See Exhibits 5 and 6, pp. 12 & 65.

A Notice of Seizure and Notice to Appoint Appraiser were served upon counsel for Lollar, the judgment debtor, on September 12, 2018. Exhibit 7. A Notice to Appoint Appraiser was also served upon Shelton as the seizing creditor's counsel. Exhibit 8. In preparing for the sale, Flournoy knew that if the appraisals varied greatly BSO would be required to appoint a third appraiser to appraise the Note and that she would need to locate a third appraiser ahead of time due to the very short time frame in which this would need to be done. See Exhibit 9. In attempting to line up a third appraiser to appraise the Note in the event a third appraisal was needed, Flournoy consulted with her supervisor in the Civil Department of BSO, Jean Horne, and they both consulted with legal counsel for the BSO Civil Department, James Southerland. See Exhibit 6, pp. 17-18. Neither Horne nor Southerland had previously handled the seizure and sale of a note and they did not know any appraisers who would be able to perform a third appraisal of the note should it become necessary. See Exhibit 6. Because Flournoy was unable to locate an appraiser qualified to perform the third appraisal, Flournoy emailed Shelton on September 17, 2018 to request a recommendation for an appraiser with the experience and qualification necessary to appraise the Note. Exhibit 9. On October 12, 2018, Shelton emailed Flournoy to provide the name, contact information and a curriculum vitae for an appraiser named Patrick LaCour (hereinafter "LaCour") whom he had located who had the same

6

credentials as both the creditor's and the debtor's appraiser and would be willing to perform the appraisal. Exhibit 10.

Notice of the October 24, 2018 sale date was published in the Bossier Press-Tribune on September 26, 2018, in accordance with the statutory requirements. Rec. Doc. 51-15. Lollar's counsel appointed John Dean to appraise the note and he valued it at $1,478,048.68. Rec. Doc. 51-12. Lucky's counsel appointed Chad Garland who appraised the note at $173,000.00. Rec. Doc. 51-11. Due to the difference in the appraisal values, Sheriff Whittington was then required under La. R.S. 13:4365 to appoint a third appraiser whose decision would be final. LaCour was appointed by Sheriff Whittington and LaCour provided a letter to him on October 22, 2018 appraising the note for $157,009.22. Rec. Doc. 51-14.[2] The Sheriff's Sale took place on October 24, 2018 and the property was sold to the highest bidder, Lucky Family, LLC, for $105,00.00. Rec. Doc. 51-15.

### III.     Claims Against Sheriff Whittington.

On November 21, 2018, Plaintiffs filed this proceeding naming Sheriff Whittington as a Defendant and alleging that he colluded with the other Defendants to deprive Plaintiffs of their property. Rec. Doc. 1.

On September 23, 2019, Plaintiffs filed the First Amended and Restated Complaint ("the Complaint") to Annul Sheriff's Sale And For Other Relief, alleging that Sheriff

---

[2] Plaintiffs dispute that Sheriff Whittington appointed Patrick LaCour, stating instead that he was chosen by Curtis Shelton and that this precludes a finding that he was appointed by the Sheriff. This, however, is a matter of legal argument as to the definition of the words "appoint" and "choose", as factually it is undisputed that LaCour was appointed by Sheriff Whittington under the statute and all statutory requirements for appointment of the third appraiser were met.

Whittington failed to properly notice the maker of the note, Plaintiff Magnolia, in violation of Federal and State Constitutions and other applicable law. Rec. Doc. 51.

The Complaint also alleges impropriety by Sheriff Whittington by allowing Lucky to "manipulate the appraisal process" by selecting and improperly influencing the third appraiser and by violating La. R.S. 13:4365. Plaintiffs allege that rather than appointing the third appraiser, Sheriff Whittington allowed Lucky's counsel to choose the third appraiser, and that Sheriff Whittington and the BSO "falsely represented that LaCour was the Sheriff's appointed appraiser on LaCour's Appraisement Sheet despite the reality that the Sheriff, or his office, allowed Lucky to appoint LaCour to fulfill the sheriff's role." Rec. Doc. 51, paragraph 40. Plaintiffs further state that the "timing, amount and circumstances of the Garland and LaCour appraisals is strongly indicative of a scheme to subvert the statutory appraisal process and cause both appraisals to artificially diminish the sale price of the Note to the detriment of the Plaintiffs." Plaintiffs go on to allege that "such scheme" was aided and abetted by Sheriff Whittington and his staff. Rec. Doc. 51, paragraph 41.

Plaintiffs also allege that Sheriff Whittington ignored his duty to properly seize, appraise and sell the Note and instead abdicated his duty to allow Lucky to manipulate the seizure, appraisal and sale of the Note. They emphasize a letter Shelton provided to LaCour providing information to be considered in the appraisal. Rec. Doc. 51-13. However, considerations of propriety aside, there is no evidence that Sheriff Whittington or BSO was aware of the communication.

Ultimately, although several legal arguments are made from the facts, the only factual allegations made by the Plaintiff in attempting to support the claims against Sheriff Whittington are:

1) Lucky chose the third appraiser.

2) Magnolia did not receive notice of the sale.

Discovery in this case is now complete and the expert deposition deadline has passed. Rec. Doc. 77. There is no evidence to support the claims made by Plaintiffs. In fact, the evidence points to the contrary – that Sheriff Whittington appointed LaCour to serve as the third appraiser and complied with all statutory requirements in doing so, and that even though notice to Magnolia was not required, Magnolia's agent for service of process and counsel received actual notice of the seizure and sale. There is no evidence that LaCour's appraisal was improper in any way, or that he was ever working for anyone other than Sheriff Whittington. The evidence further shows that Sheriff Whittington notified all parties of the sale of the Note who were required to be notified by the statutes governing seizures and sales – the judgment debtor and the judgment creditor. Additionally, it is undisputed that Magnolia had *actual notice* of the seizure and sale, and that Magnolia's registered agent for service of process was present at the sale. Ultimately, as Sheriff Whittington's actions in this matter were policymaking or discretionary acts, and did not violate clearly established law, Sheriff Whittington is entitled to qualified immunity and should be dismissed from this proceeding.

## IV. Law and Analysis.

### A. Sheriff Whittington is entitled to Qualified Immunity with respect to both of Plaintiffs' claims against him.

Qualified immunity is appropriate when an official's conduct does not violate constitutional or statutory rights of which a reasonable person would have been aware. See White v. Pauly, 137 S.Ct. 548, 551 (2017) (citation omitted). Thus, there are two inquiries for purposes of the qualified immunity analysis: (1) whether a violation of federal

law occurred at all and (2) whether the law violated or allegedly violated was clearly established at the time of violation. Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011). The court may conduct the analysis in any order it wishes. Id. With respect to the clearly established prong, while the Supreme Court does not require a case directly on point, the pertinent legal question must have been beyond debate at the time of the alleged constitutional violation. Id. at 741. It is also settled that qualified immunity protects all but the plainly incompetent or those that knowingly violate the law. Malley v. Briggs, 475 U.S. 335 (1986).

The basic steps of the Fifth Circuit's qualified-immunity inquiry are well-known: a plaintiff seeking to defeat qualified immunity must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Morgan v. Swanson, 659 F.3d 359, 371 (5th Cir. 2011). When considering a defendant's entitlement to qualified immunity, a court must ask whether the law so clearly and unambiguously prohibited his conduct that "every 'reasonable official would understand that what he is doing violates [the law].'" Id. To answer that question in the affirmative, a court must be able to point to controlling authority or a "robust consensus of persuasive authority that defines the contours of the right in question with a high degree of particularity." Id. at 371-372. Where no controlling authority specifically prohibits a defendant's conduct, and when the federal circuit courts are split on the issue, the law cannot be said to be clearly established. Id. at 372. Government officials cannot fairly be subject to money damages where judges disagree on a constitutional question. Id. Further, clearly established law cannot be applied at a high level of generality. Id. The right to due process is clearly established but if clearly established law is applied at that

level of generality, it would bear no relationship to the "object legal reasonableness that is the touchstone" of qualified immunity. Id.  In order to be clearly established it must provide fair warning. Id. Courts must ask whether the right "has been defined with sufficient clarity to enable a reasonable official to assess the lawfulness of his conduct." Id.

In this case it is clear that Sheriff Whittington did not violate any clearly established law and he is therefore entitled to qualified immunity and dismissal from this proceeding.

### 1. Sheriff Whittington's actions complied with Louisiana law requiring appointment of third appraiser.

Louisiana Revised Statutes section 13:4341, et seq. governs judicial sales in Louisiana. These statues provide for the location of the sale, requirements for the act of sale, and the records to be maintained, among other provisions. The first provision at issue in this proceeding, La. R.S. 13:4365 (B), provides, in pertinent:

> B. . . . In those cases where the two appraisers do not agree and the values are not within the averaging limits, then the sheriff shall appoint a third appraiser, who shall also be sworn, and whose decision shall be final.

It is undisputed that Lollar's appraiser and Lucky's appraiser did not agree and that the values were not within averaging limits. Therefore, Sheriff Whittington was required by this statute to appoint a third appraiser who would be sworn and whose decision would be final. That is exactly what Sheriff Whittington did in this case. He appointed LaCour, a qualified appraiser to perform the third appraisal. Although Plaintiffs disagree with the value reached, Plaintiffs cannot point to any flaw with LaCour's qualifications or education, or even the process or procedure used by LaCour.

Plaintiffs' theory of the case is that Sheriff Whittington or BSO failed to "appoint" an appraiser and instead allowed Lucky to "choose" the appraiser, and somehow colluded

11

with the co-defendants in doing so. There is simply no evidence to support this. LaCour was told in every communication that he was appointed by the Sheriff and was acting for the Sheriff in performing his appraisal. Rec. Doc. 51-13; Exhibit 11. Plaintiffs can present no evidence that LaCour was ever acting for anyone other than the Sheriff. In fact, in his deposition testimony LaCour confirmed that he, at all times, was acting for Sheriff Whittington and BSO. Exhibit 11. His appraisal letter itself confirms this where it is addressed to Sheriff Whittington and thanks him for the opportunity to serve him. Rec. Doc. 51-14. Plaintiffs can present no evidence to contrary, only conclusory allegations that are insufficient to defeat this motion for summary judgment.

It is true, and Sheriff Whittington has never disputed, that appraising a Note was something new for BSO and they did not have a usual appraiser that they used that could be called in this instance. Exhibit 6, pp. 16-18.  After consulting with her supervisor and legal counsel, Flournoy did, upon their advice, ask Shelton for recommendations of a qualified appraiser.  Id.; Exhibit 9. In response, Shelton provided a curriculum vitae and contact information for LaCour to Flournoy. Exhibit 10.  However, at all times it was Sheriff Whittington and BSO who reviewed the qualifications and made the decision to appoint LaCour for the appraisal and who made the appointment. Exhibit 5, p.61, lines 2-7; Exhibit 11. In fact, no one else but Sheriff Whittington even had the power to appoint someone for this purpose. La. R.S. 13:4365(B). Plaintiffs attempt to skirt the clear wording by stating that Sheriff Whittington did not "appoint" LaCour but instead allowed Lucky to "choose" him. However, ONLY Sheriff Whittington had the power to appoint him and that is exactly what Sheriff Whittington did. Plaintiffs' arguments to the contrary are unsupported.

Plaintiffs will argue that Shelton's recommendation of LaCour and the fact that he provided information to LaCour to be used for the evaluation was in violation of the law. However, Plaintiffs cannot point to any clearly established law that was violated. There is no statute that says a sheriff cannot seek a recommendation for an appraiser from counsel involved in the proceeding. Sheriff Whittington consulted with his own legal counsel who recommended this action. <u>See</u> Exhibit 6. Plaintiffs argue that this should not be done, without any legal support for this position. If Plaintiffs cannot find any law to support this assertion, and show that the law was undisputed among courts, they cannot prove the law is clearly established. Sheriff Whittington is therefore entitled to Qualified Immunity as to these claims regarding the appointment of LaCour to serve as the third-party appraiser under La. R.S. 13:4365.

Plaintiffs have also alleged that Sheriff Whittington "allowed" Lucky to manipulate the process and influence the appraiser by sending him the October 10, 2018 letter (hereinafter the "Letter"). Rec. Doc. 51-13. Plaintiffs have presented no legal support for their claim that the Letter was improper or in violation of clearly established law. However, even if they could, Plaintiffs can present no evidence that anyone at Sheriff Whittington's office was aware that Lucky's counsel had provided the Letter to LaCour. BSO Chief David Miller, Assistant Chief over support services, which encompasses civil matters, testified in his deposition that he did not recall seeing "Exhibit 9" to his deposition, which is the Letter. Rec. Doc. 51-13.[3] It is unnecessary to reach the question of whether this

---

[3] We note, however, that on page 82-83 of this deposition, Chief Miller is clearly confused regarding what document Powell was questioning him about and testifies that he did see the October 10, 2018 letter in the file when he reviewed it prior to his deposition. Mr. Powell did not show Chief Miller Exhibit 9 again to clarify. This was clearly caused by confusion regarding what letter Powell was referencing and not conflicting testimony as to this point, and Powell did not clarify the testimony by showing the deponent Exhibit 9. Therefore, this testimony should be disregarded as unclear.

13

was proper in order to determine if Sheriff Whittington violated clearly established law if no one at his office was even aware the communication had taken place. Plaintiffs can present no evidence that Sheriff Whittington or BSO had any involvement in this whatsoever, or that failing to prevent the communication violated clearly established law.

### 2. Sheriff Whittington provided all notice required by clearly established law.

The only other claim that could reasonably be construed to involve Sheriff Whittington is Plaintiffs' claim that Magnolia should have received notice of the seizure and sale of the Note, as maker and obligor of the Note. Plaintiffs argue that due process requires that Magnolia be served with such notice and that failure to provide this notice resulted in violation of Magnolia's due process rights.

It is undisputed that Magnolia received actual notice of the sale. Magnolia's attorney and registered agent for service of process, Davis Powell, was served with the notice for Lollar and was actually present at the sale. See Exhibits 7 & 13. Plaintiffs' argument that some technicality applies to result in inadequate notice and to warrant an award of damages to Magnolia from Sheriff Whittington even though Magnolia's agent and counsel was present at the sale is frankly absurd and should be rejected. Sheriff Whittington followed the clear letter of the law in seizing and selling the Note. The only legal sale statute addressing service requires notice only to the parties to the suit. La. R.S. 13:4348. The only Plaintiff in this proceeding who was a party to the suit, Lollar, was notified. Exhibit 7. Further, Louisiana Code of Civil Procedure article 1237 provides that service on an individual in one capacity is sufficient to constitute service on that individual

in all capacities. Davis Powell was served as attorney for Lollar and this service was sufficient to constitute service on him as agent for Magnolia as well. Id.

Therefore, no constitutional rights were violated as all parties with an interest received notice. Furthermore, even if Magnolia had not received notice, there is no clearly established law requiring that the maker or obligor on a note receive notice of a judicial sale of the Note. Notes are sold every day in the country without prior notice to the obligor. The right to due process is clearly established, but it cannot be applied at that level of generality and must provide fair warning to be clearly established. Morgan v. Swanson, 659 F.3d at 372.

Plaintiffs can present no evidence that Sheriff Whittington violated any clearly established law, and he is therefore entitled to dismissal on the basis of qualified immunity as to the notice claims as well.

## V.     Conclusion

For these reasons, Sheriff Whittington is entitled to the defense of qualified immunity as to all claims Plaintiffs have made against him. He should be dismissed from this proceeding. Plaintiffs will be unable to meet their burden of proof at trial as to their claims against Sheriff Whittington, and this motion for summary judgment should be granted and Sheriff Whittington dismissed from this suit.

Respectfully submitted by:

LANGLEY, PARKS & MAXWELL, LLC


By: __S / Julianna P. Parks_____
    Glenn L. Langley, Bar Roll No. 8019
    Julianna P. Parks, Bar Roll No. 30658

401 Market Street, Suite 1100
Shreveport, Louisiana 71101
(318) 383-6422 Telephone
(318) 383-6405 Telefax

***Attorney for Julian C. Whittington,
Sheriff of Bossier Parish***