DAVID LEE MILLER

EXHIBIT

5

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION


| | | |
|---|---|---|
| MAGNOLIA ISLAND PLANTATION, | : | CIVIL ACTION |
| L.L.C., BARBARA MARIE | : | NO. 5:18-cv-01526 |
| CAREY LOLLAR | : | |
| | : | |
| VERSUS | : | DISTRICT JUDGE |
| | : | ELIZABETH FOOTE |
| LUCKY FAMILY, L.L.C., | : | |
| W.A. LUCKY, III, AND | : | |
| BOSSIER SHERIFF JULIAN | : | |
| C. WHITTINGTON, IN HIS | : | MAGISTRATE JUDGE |
| OFFICIAL CAPACITY | : | KAREN HAYES |


DEPOSITION OF DAVID LEE MILLER

October 21, 2019


Reported By:
Jayne M. Reeves, CCR

DAVID LEE MILLER                                    10/21/2019

5

1                    E X H I B I T S

2    NUMBER     DESCRIPTION                          PAGE

3    Ex. 1      Notice of Deposition                  18

4    Ex. 2      Writ of Fieri Facias                  19
                BSO 001
5
     Ex. 3      Note regarding phone call             21
6               dated 6/12/18
                BSO 002
7
     Ex. 4      Promissory Note                       23
8               BSO 003

9    Ex. 5      E-mail from Kim Flournoy              28
                to Curtis Shelton dated 9/6/18
10              BSO 013-014

11   Ex. 6      E-mail from Kim Flournoy              30
                to Curtis Shelton dated 9/17/18
12              BSO 025

13   Ex. 7      Letter from Kim Flournoy to           32
                J. Davis Powell dated 10/15/18
14              Magnolia Lollar 0477

15   Ex. 8      E-mail from Curtis R. Shelton         33
                to Kim Flournoy dated 10/12/18
16              W.A. Lucky, III 43

17   Ex. 9      Letter from Curtis R. Shelton         34
                to Patrick Lacour dated 10/10/18
18              Lacour 016-021

19   Ex. 10     Appraisement Sheet                    38
                Magnolia Lollar 0126
20
     Ex. 11     Appraisement Sheet                    39
21              Magnolia Lollar 0128-0129

22   Ex. 12     Letter from Patrick Lacour to         40
                Julian C. Whittington dated
23              10/22/18
                Magnolia Lollar 0132-0136
24

25

DAVID LEE MILLER                          10/21/2019

7

1                    DAVID LEE MILLER,

2     the witness, having been duly sworn, testified as

3     follows, to wit:

4                       EXAMINATION

5     BY MR. POWELL:

6          Q.    Chief Miller, my name is Davis Powell.

7     I'm with the law firm of Davidson Summers here in

8     Shreveport.  I represent Ms. Barbara Lollar and

9     Magnolia Island Plantation in this matter.

10              Would you like me to refer to you as

11    Chief Miller?  Would that be okay?

12         A.    That's fine.

13         Q.    Okay.  If you would, for the record, go

14    ahead and give me your full name.

15         A.    It's David L. Miller.

16         Q.    And the L?

17         A.    Lee.

18         Q.    Your address?

19         A.    149 Lakewood Point Drive, Bossier City,

20    71111.

21         Q.    And please identify your employer.

22         A.    The Bossier Sheriff's Office.

23         Q.    And what is your position with the

24    Bossier Sheriff's Office?

25         A.    I'm assistant chief over Support

DAVID LEE MILLER                         10/21/2019

8

1    Services.

2        Q.    Okay.  Describe your position for me.

3        A.    Support Services entails everything

4    that is not criminal or corrections.

5        Q.    Would that encompass civil matters?

6        A.    Yes.

7        Q.    How long have you held this position?

8        A.    Assistant chief for three years.

9        Q.    And prior to that, what was your

10   position?

11       A.    Major.

12       Q.    With the Bossier Parish Sheriff?

13       A.    With the same.  Yes.

14       Q.    And how long did you hold that

15   position?

16       A.    For three years.  For three years.

17       Q.    Okay.  How long have you been with the

18   Bossier Parish Sheriff's Department?

19       A.    20 years.

20       Q.    20 years.  How many different sheriffs?

21       A.    This is my second one.

22       Q.    During that time, was it generally over

23   civil matters or did it change -- did your

24   responsibilities change?

25       A.    It was over civil.

DAVID LEE MILLER                                    10/21/2019

12

1    your next step?

2         A.    Next step is to prepare the notice of

3    seizures, perfect service.

4         Q.    What's the purpose of a notice of

5    seizure?

6         A.    It's to give notice to all the parties.

7         Q.    And when you say parties, what do you

8    mean?

9         A.    It's whoever the foreclosing -- or the

10   attorney for the plaintiff, whoever they instruct

11   us to have served.

12        Q.    So the sheriff's office doesn't make an

13   independent determination of who they should

14   provide notice to?

15        A.    No.

16        Q.    After you prepare the notice of seizure

17   and provide notice to the parties, as you stated,

18   what's the next step?

19        A.    If we get service on all those parties,

20   then the next step is to set it for sale.

21        Q.    When you say set it for sale, what --

22        A.    Actually create a sale date in the

23   future.

24        Q.    How do you choose the sale date?

25        A.    They're predetermined.  They're on

34

1          Q.    (BY MR. POWELL)  This is Exhibit 8.

2   This is an October 12th e-mail from Mr. Curtis

3   Shelton to Ms. Flournoy.  It is providing

4   information for Mr. Patrick Lacour, that

5   Mr. Shelton says that he is located.

6          Do you see that?

7          A.    Yes.

8          Q.    Did the sheriff's office contact

9   Mr. Lacour after receiving this e-mail?

10          A.    I do not know.

11          Q.    And who would know that?

12          A.    Ms. Flournoy.

13          Q.    Did anything in the file you reviewed

14   indicate that your office contacted Mr. Lacour at

15   this time?

16          A.    I don't know.

17          Q.    I'm saying in your review of the file,

18   do you recall anything indicating that you

19   contacted Mr. Lacour after receiving this

20   information here?

21          A.    I don't recall any documentation in the

22   file.

23                    (Miller Deposition Ex. 9 was

24   marked for identification.)

25          Q.    (BY MR. POWELL)  This is Exhibit 9.

DAVID LEE MILLER                          10/21/2019

35

1   It's an October 10th letter from Mr. Shelton to
2   Mr. Lacour.  Have you ever seen this letter?
3        A.   I don't recall seeing it.  No.
4        Q.   So you didn't see it in the sheriff's
5   office file anywhere?
6        A.   Not that I recall.
7        Q.   This is a 6-page letter to Mr. Lacour
8   describing Mr. Lacour's undertaking of the third
9   appraisal.  Did the sheriff's office instruct
10  Mr. Shelton to send this letter?
11       A.   Not that I know of.
12       Q.   Is it normal procedure for the judgment
13  creditor to provide this type of letter to the
14  third appraiser?
15            MS. PARKS:  Objection to form.
16  You can answer it if you can.
17       A.   I don't know.
18       Q.   (BY MR. POWELL)  Who would know the
19  procedures for the sheriff's office in regards to
20  the third appraiser?
21       A.   I don't understand the question.
22       Q.   Exhibit 1 is a Notice of Deposition
23  that contains an Exhibit A to it.  It's the
24  categories of topics that I'm going to discuss
25  with you that you had reviewed.  And then you

```
 1        A.   She was working in the civil office.
 2        Q.   Was it a learning experience for the
 3   sheriff's office?  This suit?
 4        A.   Yes.
 5        Q.   And why is that?
 6        A.   Because it was the first negotiable
 7   instrument that we could remember having.
 8                  (Miller Deposition Ex. 14 was
 9   marked for identification.)
10        Q.   (BY MR. POWELL)  This is Exhibit 14.
11   This is an Ex Parte Motion to Fix Appraisers'
12   Fees.  Have you seen this document before?
13        A.   Yes.
14        Q.   And where did you see it?
15        A.   I believe I received it from
16   Mr. Shelton for signature by the sheriff.
17        Q.   So at the time, it was submitted to you
18   in the sheriff's office for signature of the
19   sheriff?
20        A.   I'm sorry?
21        Q.   In October of 2018, it was submitted to
22   you for the Sheriff's signature?
23        A.   It may have come into the civil office,
24   and then they brought it to me; or maybe a runner
25   brought it to me.  I'm not sure.
```

DAVID LEE MILLER                    10/21/2019

60

1    or the plaintiff to name the appraiser or to
2    simply give your office recommendations?
3         A.    Recommendations.
4         Q.    Okay.  And she said, If possible, could
5    you give the names of at least two so we are not
6    down to the wire trying to find one last minute.
7    Thanks, Kim.
8              She was asking for whatever help she
9    could get from the plaintiff as far as you're
10   concerned.  Right?
11        A.    Right.
12        Q.    Is it unusual for the sheriff's
13   office -- whether it's this note, which might be
14   unusual, you know, atypical.  But is it unusual
15   for the sheriff's office when it runs across
16   property, say oil and gas property or other
17   things that are unique, to ask the plaintiff's
18   lawyer, Do you know some appraisers that we might
19   consider?
20        A.    No.
21        Q.    Okay.  So the sheriff's office does ask
22   for recommendations in other instances?
23        A.    That's correct.
24        Q.    And this sale is not unique in that
25   regard?

DAVID LEE MILLER                                    10/21/2019

61

1      A.    No.

2      Q.    And when Ms. Flournoy received the

3  suggestion that Mr. Lacour, you know, might be

4  able to appraise this property, she was free to

5  either accept that person or to reject that

6  person; is that right?

7      A.    That's correct.

8      Q.    Okay.  Exhibit 7 that Mr. Powell showed

9  you was a letter to him from Ms. Flournoy.

10          And it said, Please be advised that the

11  above referenced suit is set for sale 10/24/2018.

12          Okay.  And she wrote that letter on

13  October 15th, nine days before.  Okay?  And I

14  think Mr. Powell's question to you was focused on

15  the fact that she said in order to avoid any

16  delays, we need this appraisal ASAP.  Do you

17  remember him asking you about that?

18      A.    Yes, sir.

19      Q.    Okay.  Now, I'm going to tell you that

20  Revised Statute 13:4363 -- and it's quoted in

21  Exhibit 9 here -- reads:  Not less than seven

22  days, exclusive of holidays, before the sale of

23  seized property, the sheriff shall serve written

24  notice on the debtor and on the seizing creditor,

25  in the manner provided for the service of a

DAVID LEE MILLER                    10/21/2019

65

1   property is worth?

2        A.    That's up to them.

3        Q.    That's up to them?

4        A.    That's up to them.

5        Q.    That's why you have them?

6        A.    That's why -- yeah.

7        Q.    Otherwise, you would do it yourself?

8        A.    Right.

9        Q.    Okay.  But you have them do it for that

10  purpose?

11       A.    Uh-huh.

12       Q.    And they can obtain that information

13  from any number of sources.  Right?

14       A.    Correct.

15       Q.    They can obtain information -- just

16  like y'all's office calls the plaintiff's lawyer,

17  they're free to talk to the plaintiff's lawyer

18  and find out any facts from the plaintiff -- or

19  the plaintiff's counsel that they want to know

20  that they might deem relevant; is that correct?

21       A.    That's correct.

22       Q.    Okay.  Now, Exhibit 9, the letter that

23  I wrote to Mr. Lacour dated October 10th, 2018.

24  All right.  I'm going to read you some passages

25  from that.  Okay?

DAVID LEE MILLER                                10/21/2019

82

1    earlier -- okay.  I'll move along.

2         Q.   (BY MR. POWELL)  You did say earlier

3    that the appraisers should do their job.  Right?

4         A.   That's right.

5         Q.   That's what they're for, is you provide

6    them with certain information, but then they do

7    their job?

8         A.   That's correct.

9         Q.   Okay.  Would it be -- would the

10   sheriff's office provide the appraiser -- would

11   it be the sheriff's office role to provide the

12   appraiser with other appraisals on the property?

13        A.   No, sir.

14        Q.    Okay.  Would it be the sheriff's office

15   role to provide the appraiser with any opinion

16   the sheriff's office has about the value of the

17   property?

18        A.   To the appraiser?

19        Q.   Yes.

20        A.   No.

21        Q.   Okay.  Would it be the sheriff's office

22   role to tell the appraiser what he should and

23   shouldn't consider in doing his appraisal?

24        A.   No.

25        Q.   Okay.  And Mr. Shelton went through the

```
 1    October 10th, 2018, letter.  He read some

 2    passages from it.  He would read the passage, and

 3    he would say essentially do you agree with that

 4    or do you disagree with that?  And you would

 5    answer.  But I'm just solidifying your earlier

 6    testimony.  You never saw the letter until I

 7    showed it to you with the exhibit.  Correct?

 8                 MS. PARKS:  Objection to form.

 9    That's not what he testified about.

10         Q.   (BY MR. POWELL)  Okay.  Had you seen

11    that letter --

12                 MS. PARKS:  What he testified to,

13    I mean.  I'm sorry.

14         Q.   (BY MR. POWELL)  Had you seen that

15    letter before?

16         A.   During the review of the file.  Yes.

17         Q.   You did see it during the review of the

18    file?

19         A.   Yes.

20         Q.   When did you review the file?

21         A.   When I got this suit.  This request.

22         Q.   Within the last couple weeks?

23         A.   Yeah.

24                 MR. POWELL:  All right.  That's

25    all I have.
```