**EXHIBIT 6**

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

MAGNOLIA ISLAND PLANTATION,  CIVIL ACTION NO.
LLC, AND BARBARA MARIE       5:18-CV-1526
CAREY LOLLAR

VERSUS                       DISTRICT JUDGE:
                             S. MAURICE HICKS, JR.

LUCKY FAMILY, LLC, ET AL.    MAGISTRATE JUDGE:
                             KAREN L. HAYES

DEPOSITION OF JEAN HORNE
November 20, 2019

Reported By:
Donna B. Crenshaw, CCR, CSR

1    A.    She is in the records department.
2    Q.    And that's currently; right?
3    A.    Yes.
4    Q.    Where was she at the time the writ was
5    received in June of 2018?
6    A.    In the civil department.
7    Q.    Okay. Was Kim Flournoy the representative of
8    the sheriff's office managing this file?
9    A.    Yes.
10   Q.    That would be accurate to say that?
11   A.    That would be accurate.
12   Q.    Okay. Were you assisting Kim in the
13   management of this file?
14   A.    Yes.
15   Q.    Okay. So was Kim asking you questions about
16   it?
17   A.    Yes.
18   Q.    Okay. In June, was there a question about
19   what property was to be seized?
20   A.    Yes.
21   Q.    Kim had asked you?
22   A.    I do not recall her asking.
23   Q.    Okay. What other questions would Kim ask
24   you?
25   A.    In this?

1  Q.  In regards to this file.
2  A.  If the judgment was attached to it, referring
3  to the promissory note, then we would review it. And
4  if we had questions from that point, we would ask
5  Mr. Sutherland.
6  Q.  Okay. Who is Mr. Sutherland?
7  A.  James Sutherland.
8  Q.  Okay. And what is his relationship to the
9  sheriff's office?
10 A.  He is counsel for the civil department.
11 Q.  Okay. How long has Mr. Sutherland been
12 counsel for the civil department?
13 A.  I do not know.
14 Q.  You said if you had questions, you would ask
15 Mr. Sutherland. Did you have questions that you asked
16 Mr. Sutherland?
17 A.  Yes, there were questions.
18 Q.  Okay. When did those questions take place?
19 A.  I don't know the specific date of when they
20 would have taken place.
21 Q.  Understood. Did you seek out
22 Mr. Sutherland's counsel in June of 2018?
23 A.  I will say yes.
24 Q.  Okay. Did you do it by phone, by e-mail?
25 What was the method?

1   A.   Person.
2   Q.   In person?
3   A.   Uh-huh.
4   Q.   Is his office in this building?
5   A.   No, sir.
6   Q.   Okay. Was he called in in person?
7   A.   He comes in two or three times a day on a
8   regular basis.
9   Q.   Okay. So it was one of those visits that
10  these discussions occurred; correct?
11  A.   Yes.
12  Q.   All right. Now, I'm going to go back to the
13  question I asked previously. You said that Ms.
14  Flournoy would come to you with questions regarding
15  this. If I'm mischaracterizing it at all, you can
16  correct me, but Ms. Flournoy would ask you questions
17  regarding the file.
18       Can you recall any of those questions?
19  A.   No, I cannot.
20  Q.   Okay. Ms. Flournoy has written an e-mail to
21  Mr. Curtis Shelton who is the judgment creditor's
22  counsel in this matter. Strike that. Let me start
23  over.
24       Are you aware who the judgment creditor's
25  counsel was in this matter?

1    A.   Yes.
2    Q.   And who is that?
3    A.   Mr. Shelton.
4    Q.   Okay. So Mr. Curtis Shelton?
5    A.   Yes.
6    Q.   Okay. And Ms. Flournoy wrote an e-mail to
7  Mr. Shelton stating this was a learning experience.
8         Have you reviewed any of those
9  correspondences?
10   A.   I have.
11   Q.   Okay. So you're aware that it was her
12 opinion that this process with the note was a learning
13 experience for the sheriff's office?
14   A.   Yes.
15   Q.   Would you characterize it that same way?
16   A.   Yes.
17   Q.   And why was it a learning experience?
18   A.   First time.
19   Q.   Okay. And when you say "first time," you
20 mean the first time you've had to sell this type of --
21   A.   Yes.
22   Q.   -- this type of asset?
23   A.   That's correct.
24   Q.   Okay. So since it was a learning experience,
25 where did the sheriff's office seek counsel? I know

1   you discussed Mr. Sutherland. Did they seek counsel
2   anywhere else?
3        A.   No, sir.
4        Q.   Okay. And when I say "counsel," I'm not
5   limiting it to attorneys. Did they seek advice
6   anywhere else?
7        A.   No, sir, not that I'm aware of.
8        Q.   Okay. There's a great deal of correspondence
9   between Ms. Flournoy and Mr. Shelton that is in the
10  record in this matter. You're aware of that; correct?
11       A.   Yes.
12       Q.   And you've reviewed that correspondence;
13  correct?
14       A.   Yes.
15       Q.   Okay. Was it your advisement to Ms. Flournoy
16  to reach out to Mr. Shelton for assistance?
17       A.   From Mr. Sutherland's advice to us, that is
18  what he instructed her to do.
19       Q.   And Ms. Flournoy reached out to Mr. Shelton
20  in regards to appraisal assistance. Is that correct?
21       A.   Yes. And I believe that is part of the
22  record.
23       Q.   Right. And what was the outcome of the
24  communications with Mr. Shelton in regards to
25  appraisal?

1   A.   I believe that's part of the record.
2   Q.   Okay. Well, I'm just asking your knowledge
3   right now, just general knowledge. What was the
4   outcome in regards to the appraisal?
5        MS. PARKS: Objection to form.
6        MR. POWELL: Understood. Let me rephrase
7   that.
8   BY MR. POWELL:
9   Q.   Ms. Flournoy reached out to Mr. Shelton
10  because the sheriff's office did not have anybody for
11  appraisal. Is that correct?
12  A.   In this case, yes.
13  Q.   Who did the sheriff's office contact before
14  reaching out to Mr. Shelton?
15  A.   We talked with Mr. Sutherland.
16  Q.   Okay. Any other appraisers you talked to?
17  A.   I do not know.
18  Q.   Who would know?
19  A.   Kim. However, I did ask her, and she does
20  not recall.
21  Q.   Just so I can clear the record up, you asked
22  her if she contacted any other appraisers, and she
23  stated to you that she could not recall doing so. Is
24  that correct?
25  A.   That's correct.

1    Q.   Okay.  This is Exhibit 9 from Chief Miller's
2    deposition.  It was a letter on October 10, 2018 from
3    Mr. Shelton to Mr. Lacour.  This is providing
4    Mr. Lacour documents and information for the purpose
5    of making his appraisal.
6         Did the sheriff's office request that
7    Mr. Shelton send this letter?
8    A.   I do not know.
9    Q.   Is it normal procedure for the judgment
10   creditor's counsel to provide all the information to
11   the third appraiser?
12   A.   I do not know.
13   Q.   Well, in normal procedure in your office,
14   sheriff's office?
15   A.   Ask that again.
16   Q.   Let me go back to -- I'm going to ask that
17   again, but let me ask when you talk about obtaining a
18   third appraisal for land sale or a house that's been
19   foreclosed on, does the sheriff's office provide the
20   information to the third appraiser so that he can --
21   so that the third appraiser may make the appraisal?
22   A.   They would get a copy of the writ.
23   Q.   Okay.
24   A.   Which gives the description of the property.
25   Q.   Okay.  And if the appraiser had any questions