UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| MAGNOLIA ISLAND PLANTATION, ET AL. | CIVIL ACTION NO. 5:18-CV-1526 |
| VERSUS | DISTRICT JUDGE: HON. S. MAURICE HICKS, JR. |
| LUCKY FAMILY, L.L.C., ET AL. | MAGISTRATE JUDGE: HON. KAREN L. HAYES |

**MEMORANDUM IN OPPOSITION TO BARBARA MARIE CAREY LOLLAR'S PARTIAL MOTION FOR SUMMARY JUDGMENT**

AYRES, SHELTON, WILLIAMS,
BENSON & PAINE, LLC
Curtis R. Shelton
La. Bar Roll No. 17137
333 Texas Street, Suite 1400 (71101)
P. O. Box 1764
Shreveport, LA 71166
Telephone: (318) 227-3500
Facsimile: (318) 227-3980
Email: curtisshelton@arklatexlaw.com

WIENER, WEISS & MADISON
A Professional Corporation
R. Joseph Naus, #17074
Marjorie Frazier, #32991
330 Marshall Street, Suite 1000 (71101)
P. O. Box 21990
Shreveport, LA 71120-1990
Telephone: (318) 226-9100
Facsimile: (318) 424-5128
E-mail: rjnaus@wwmlaw.com
E-mail mfrazier@wwmlaw.com

ATTORNEYS FOR W. A. LUCKY, III

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ..... iii

**INTRODUCTION** ..... 1

**OBJECTION TO CONSIDERATION OF SETTLEMENT OFFER** ..... 1

**FACTS** ..... 2

I. The Sheriff appointed the third appraiser ..... 2

II. Mrs. Lollar also incorrectly claims that Mr. Shelton was the only party who communicated with Mr. Lacour prior to the completion of his appraisal ..... 3

III. Mrs. Lollar's argument that Mr. Shelton provided information to Mr. Lacour is misleading and irrelevant ..... 4

**LAW AND ARGUMENT** ..... 6

I. Introduction ..... 6

II. Louisiana law provides no cause of action to Mrs. Lollar to annul the sheriff's sale ..... 6

A. Mrs. Lollar cites cases dismissing a plaintiff-judgment debtor's action to annul a judicial sale ..... 7

B. Louisiana's Deficiency Judgment Act does not apply to, or set appraisal rules for, a sale under a writ of fieri facias ..... 9

C. The language relied on by Mrs. Lollar from *Oak Cliff Bank & Trust Co. v. Kittle* is glaring *dicta* ..... 9

D. The older cases cited by Mrs. Lollar have been expressly overruled. Mrs. Lollar's argument to the contrary is just wrong ..... 10

III. Mrs. Lollar's contentions about Mr. Lacour's appointment and his receipt of information are not material and could not support an action to annul the sheriff's sale even if the law recognized such an action ..... 13

A. The Sheriff's Duty and the Appointment of Mr. Lacour ..... 13

B. Mr. Lacour's receipt of communication and information is not material ..... 15

IV. Mrs. Lollar's Claim for "Restitution" upon Reversal of the Judgment .....17

A. There is no Louisiana law claim for "equitable restitution" .....17

B. Louisiana law recognizes unjust enrichment. However, Mrs. Lollar cannot have an unjust enrichment claim.....18

V. Mrs. Lollar's claim upon reversal of the judgment was for payment of a thing not due.....20

VI. Mrs. Lollar's claim for payment of a thing not due has been satisfied.....20

VII. Mrs. Lollar's Community Property Regime Argument.....21

**CONCLUSION** .....25

## TABLE OF AUTHORITIES

**Statutes and Rules:**

**Federal Rules**

Fed. Rule Civ. Proc. 56(c)(2) ........ 1

Fed. Rule of Ev. 408(a) ........ 1 n.3

**Local Rules**

Local Rule 56.1. ........ 1-2 n.4, 15 n.48

**State Statutes**

La. R.S. 13:4363-:4365 ........ 14

La. R.S. 13:4365(B) ........ 14

La. R.S. 13:4365(A) & (D) ........ 14

La. R.S. 13:4366 ........ 3

La. Civ. Code art. 24 ........ 23 n.80

La. Civ. Code art. 2298 ........ 13, 19, 21

La. Civ. Code art. 2299 ........ 13, 20, 21, 23

La. Civ. Code art. 2343 ........ 24 n.81

La. Code Civ. Proc. art. 2298 ........ 8

**Cases:**

*Arkadelphia Milling Co. v. St. Louis Southwestern Ry. Co.*, 249 U.S. 134, 146, 39 S.Ct. 237, 242, 63 L.Ed. 517 (1919) ........ 18

*Associates Commercial Corp. v. Vick's Sand Pit & Dredging Company, Inc.*, 522 So.2d 663, 663-64 (La. App. 5th Cir.), *writ denied*, 525 So. 2d 1056 (La. 1988) ........ 7-9

*Bank of U.S. v. Bank of Washington*, 31 U.S. 8, 8 L.Ed. 299 (1832) ........ 18

*Baumann v. Fields,* 332 So.2d 885 (La. App. 2d Cir. 1976) ........ 7

*Brown v. Coleman Investments, Inc.*, 993 F.Supp. 416, 431 (M.D. La. 1998) .............................18

*Citizens Bank of Ville Platte v. Am. Druggists Ins. Co.*,
471 So. 2d 1119, 1122 (La. App. 3d Cir. 1985) .................................................................14

*Erickson v. Boothe*, 127 Cal.App.2d 644, 274 P.2d 460 (1954) ..................................................18

*Fush v. Egan*, 48 La.Ann. 60, 19 So. 108 (1895) ...............................................................10, 11

*Gootee Const., Inc. v. Amwest Sur. Ins. Co.*,
2003-0144 (La. 10/10/03); 856 So.2d 1203 (2003) ..............................................................20, 21

*Graham v. Eagan*, 15 La.Ann. 97 (1860) ..........................................................................10, 12

*Guaranty Bank of Mamou v. Community Rice Mill, Inc.*, 502 So.2d 1067 (La. 1987) .......9, 9 n.34

*Harp v. Town of Lake Providence*, 338 So.2d 169, 171 (La. App. 2d Cir. 1976) .........................13

*Holland v. Bryan*, 148 La. 999, 88 So. 246 (1921) ............................................ 11-12, 18, 22 n.69

*Mathis v. DCR Mortg. III Sub, I, LLC*, 952 F.Supp.2d 828 (W.D. Tex. 2013) ............................18

*Medve Energy Ventures LLC v. Warhorse Oil & Gas LLC*,
2018 WL 4089456, p. 4 (W.D. La. 8/27/18) .......................................................................23 n.80

*Minyard v. Curtis Products, Inc.*,
251 La. 624, 205 So.2d 422 (La.1967), *reh. denied*, (La.1968) ...................................................19

*Nunez v. Pinnacle Homes, L.L.C.*,
2015-0087, p. 5 (La. 10/14/15); 180 So.3d 285, 289 ..........................................................23 n.80

*Oak Cliff Bank & Trust Co. v. Kittle*,
309 So.2d 742,742-43 (La. App. 4th Cir. 1975) ........................................................ 9-10, 10 n.39

*Palacios v. Cupples*, 2019 WL 1965855, p. 1 (W.D. La. 04/29/2019) ....................................1 n.2

*Pasley v. McConnell*, 38 La.Ann. 470 (1886) ....................................................................10, 11

*Pel-State Bulk Plant, LLC v. Unifirst Holdings, Inc.*,
2015 WL 631282, p. 5 n. 2 (M.D. La. 2/12/15) .................................................................22 n.73

*Plauche-Locke Securities, Inc. v. Johnson*, 187 So.2d 178 (La. App. 3d Cir. 1966) ...........17 n.58

*PSM Holding Corp. v. National Farm Financial Corp.*,
743 F.Supp.2d 1136 (2010), *aff'd in part*, 884 F.3d 812 (9th Cir. 2018) .....................................18

*Security Homestead Ass'n v. W.R. Grace & Co.*,
743 F.Supp. 456, 462 (E.D. La. 1990) ........................................................................ 18-19

*Underwater Technologies USA Inc. v. Eni U.S. Operating Co.*,
671 F.3d 512, 515 (5th Cir. 2012) ........................................................................................1 n.2

*Walters v. MedSouth Record Mgmt., LLC*,
2010-0351, p. 2 (La. 6/4/10); 38 So.3d 245, 246............................................................................19

## INTRODUCTION

Mrs. Lollar has moved for summary judgment (a) determining that the Sheriff failed his duty to appoint a third appraiser and therefore annulling the October 24, 2018, sheriff's sale of the Note; and (b) for "restitution" of the Note. Mrs. Lollar's argument that the Sheriff failed to appoint a third appraiser is contrary to the evidence and in any event, she has no claim to annul the Sheriff's sale under Louisiana law. Mrs. Lollar's argument that she is entitled to "restitution" of the Note is also contrary to the law.

## OBJECTION TO CONSIDERATION OF SETTLEMENT OFFER

Exhibit C[1] to the *Memorandum in Support of Barbara Lollar's Motion for Partial Summary Judgment* (hereinafter "*Lollar Memorandum*") is an October 29, 2018, letter from Mr. Shelton to Mrs. Lollar's counsel. Mr. Lucky objects to this letter being considered.[2]

A party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. Fed. Rule Civ. Proc. 56(c)(2). The October 29, 2018, letter is clearly an offer of settlement. Under Federal Rule of Evidence 408(a),[3] it is not admissible in evidence. Because the substance of the letter prohibits its use under Rule 408(a), it cannot be presented in a form that would be admissible in evidence. It cannot be considered.[4]

---

[1] Rec. Doc. 80-4 (*Exhibit C*).

[2] An objection, and not a separate motion to strike, is the proper means to challenge proffered summary judgment evidence. *Underwater Technologies USA Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 515 (5th Cir. 2012); *Palacios v. Cupples*, 2019 WL 1965855, p. 1 (W.D. La. 04/29/2019).

[3] Federal Rule of Evidence 408(a) provides that evidence of offering or offering to accept a valuable consideration in compromising or attempting to compromise the claim and conduct or a statement made during compromise negotiations about the claim is not admissible.

[4] The letter is also not even mentioned in *Plaintiff's Statement of Material Facts as to Which There Is No Genuine Issue to Be Tried* (hereinafter "*Plaintiff's Statement of Material Facts*") and, for that reason, should not be considered as presenting any material fact. Local Rule

## FACTS

**NOTE:** Citations herein to the pages of previously filed Record Documents are to the page numbers imprinted by ECF at the top of the filed documents.

### I. The Sheriff appointed the third appraiser.

Mrs. Lollar writes: "The Sheriff never appointed a third appraiser in this case. Instead, Mr. Lucky's attorney selected an additional appraiser . . . ."[5] However, numerous facts establish that the Sheriff appointed Mr. Lacour as the third appraiser.

1. The Sheriff made the appointment after consulting with his independent legal counsel, Mr. Sutherland.[6]

2. the Sheriff's personnel knew that they were free to reject any appraiser recommendation made by Mr. Shelton.[7]

3. The *Appraisement Sheet* signed by Deputy Flournoy for the Sheriff and by Mr. Lacour began "We, the undersigned, **having been appointed** to appraise the property advertised for sale by the Sheriff,"[8] and was signed by Mr. Lacour in two places on a line over "3. Third (sheriff) Appraiser."[9]

4. Mr. Lacour wrote the Sheriff a letter on October 22, 2018, reading: "I appreciate this opportunity **to serve you**. . . . **Should you have any questions with respect to the issues we have discussed**, we encourage you to call me."[10]

---

LR56.1 reads: "Every motion for summary judgment shall be accompanied by a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried."

[5] *Lollar Memorandum*, Rec. Doc. 80-1, p. 11 of 26.

[6] Exhibit 71: *Deposition of David Lee Miller*, 32:1-8; 52:14-53:1; Exhibit 72: *Deposition of Jeane Horne,* 14:2-15:11; 17:15-18:25; 46:9-47:7.

[7] Exhibit 34: *Deposition of David Lee Miller*, 61:2-7; Rec. Doc. 84-11, p. 28 of 36.

[8] Exhibit 39, *Appraisement Sheet*, Rec. Doc. 84-16, pp. 18-19 of 32 (emphasis added).

[9] *Id*.

[10] Exhibit 73 (emphasis added).

5. The Sheriff signed an *Ex Parte Motion to Fix Appraiser's Fees*[11] filed on October 19, 2018, which affirmatively stated: "**The Sheriff will appoint a third appraiser" and "The Sheriff intends that any appraiser he appoint** [sic] be a person who is qualified by education, skill or experience to appraise the Promissory Note." By that motion, the Sheriff took action under Louisiana Revised Statutes 13:4366 to enable him to pay his appraiser in excess of $50.[12]

6. After the Sheriff signed the *Ex Parte Motion to Fix Appraiser's Fees*, the State Court signed the order on it reading:

> IT IS HEREBY ORDERED THAT, in accordance with Louisiana Revised Statutes 13:4366 ¶A(2), the Sheriff be and is hereby authorized to pay a fee calculated on an hourly rate basis of up to $225.00 per hour to any appraiser ***appointed by the Sheriff*** herein . . . .

*Order*.[13] There is no evidence that Mrs. Lollar made a writ application or appealed this *Order*.

7. Mr. Lacour addressed the invoice for his services directly to the Sheriff.[14]

8. Mr. Lacour's invoice for his services was paid directly by the Sheriff.[15]

## II. Mrs. Lollar also incorrectly claims that Mr. Shelton was the only party who communicated with Mr. Lacour prior to the completion of his appraisal.

Mrs. Lollar argues:

> The available evidence reflects that Mr. Lacour could not be working for the Sheriff in conducting his appraisal. Mr. Shelton was the only party who communicated with Mr. Lacour regarding appraising the Note prior to the completion of that appraisal. . . . The Sheriff played no role in contacting, or communicating with Mr. Lacour regarding his appraisal. . . .

*Lollar Memorandum*, Rec. Doc. 80-1, p. 12 of 16. However, the evidence shows:

---

[11] Exhibit 74; pp. 2-3 ¶¶ 7&8 (emphasis added).

[12] Because the seizing creditor would be required to advance the costs of any appraiser appointed by the Sheriff, the seizing creditor joined in the motion. Exhibit 74; p. 4, ¶ 13.

[13] Exhibit 74, p. 6 (emphasis added).

[14] Exhibit 38, Rec. Doc. 84-16, p. 15 of 32; Exhibit 41, Rec. Doc. 84-16, p. 22 of 32.

[15] Exhibit 42, Rec. Doc. 84-16, pp. 23-24 of 32.

1. The appraisal was not completed until Mr. Lacour signed the *Appraisement Sheet*. Assistant Chief David Lee Miller, testified that the *Appraisement Sheet*[16] signed by Mr. Lacour on October 22, 2018, was the appraisal.[17]

2. Mr. Lacour has testified that he had communication with the Sheriff's office during the week ending October 19th, and was provided an oath for the appraisement by the Sheriff's office.[18]

3. Exhibits 38 and 39 establish that the Sheriff's Office, through Deputy Flournoy, had direct communications with Mr. Lacour before, on the date of, and at the time that he signed the *Appraisement Sheet*, Exhibit 39, on October 22, 2018.[19]

4. Mr. Lacour wrote the October 22, 2018, letter to the Sheriff. Considering that Mr. Lacour went to the Sheriff's office on that date to make the appraisal, the letter had to have been written before Mr. Lacour signed the *Appraisement Sheet*, Exhibit 39.

5. Mr. Lacour wrote an October 22, 2018, letter reads: "Should you have any questions **with respect to the issues we have discussed,** we encourage you to call me."[20] The October 22, 2018, letter says that issues had been discussed by Mr. Lacour with the Sheriff's office.

## III. Mrs. Lollar's argument that Mr. Shelton provided information to Mr. Lacour is misleading and irrelevant.

Mrs. Lollar argues: "Mr. Shelton is the only party who selected the information to provide to Mr. Lacour."[21] On October 10, 2018, Mr. Shelton wrote Mr. Lacour a letter containing information and documents concerning the Note, and included attachments selected by Mr. Shelton.[22] However:

---

[16] Exhibit 39, Rec. Doc. 84-16, pp. 18-19 of 32.

[17] Exhibit 71, *Deposition of David Lee Miller*, pp. 40-41 (with Deposition Exhibit 12).

[18] Exhibit 75, *Deposition of Patrick Henry Lacour*, 55:10-21; 56: 9-14; 77:17-78:15.

[19] Exhibit 38, Rec. Doc. 84-16, pp. 15-17 of 32; Exhibit 39, Rec. Doc. 84-16, pp. 18-19 of 32; *See, also,* Exhibit 75, *Deposition of Patrick Henry Lacour*, 55:10-21; 56:9-14; 77:17-78:15.

[20] Exhibit 73 (emphasis added).

[21] *Lollar Memorandum*, Rec. Doc. 80-1, p. 12 of 26.

[22] Exhibit 36, Rec. Docs. 84-12 through 84-15.

1.      Mr. Shelton's providing information to Mr. Lacour does not change the fact that Mr. Lacour was appointed by the Sheriff as explained above; and

2.      Mr. Lacour was free to exercise his independent professional judgment in evaluating that information and/or to obtain other information.

The October 10, 2018, letter from Mr. Shelton to Mr. Lacour:

1.      explained that, if the sheriff elected to appoint Mr. Lacour as a third appraiser, he would not be acting for either the plaintiff or the defendant and would be the Sheriff's appraiser;[23]

2.      informed Mr. Lacour of the identities of the persons appointed to appraise for the plaintiff and the defendant;[24] and

3.      provided Mr. Lacour with information that Mr. Shelton thought to be relevant so that Mr. Lacour would be able to act timely if he was appointed.[25]

Nothing in the October 10, 2018, letter restricted Mr. Lacour from obtaining additional information, and he was even provided with the identities of the other appointed appraisers. Mr. Lacour was free to obtain any other information that he deemed appropriate.[26] Moreover, in making his appraisement, Mr. Lacour considered information that he knew independently[27] and applied his professional judgment.[28] Mr. Lacour knew that the Sheriff was his client.[29]

---

[23] Exhibit 36, Rec. Doc. 84-12, p. 2 of 50.

[24] Exhibit 36, Rec. Doc. 84-12, p. 3 of 50.

[25] Exhibit 36, Rec. Doc. 84-12, pp. 3 & 4 of 50.

[26] Exhibit 34: *Deposition of David Lee Miller*, 64:1 – 65:21, Rec. Doc. 84-11, pp. 29-30 of 36.

[27] Exhibit 75: *Deposition of Patrick Henry Lacour*, 15:4 – 16:6 (Base Yield: U.S. Prime Rate).

[28] *See, e.g.*, Exhibit 75:  *Deposition of Patrick Henry Lacour*, 21:5-20 (adjustment for lack of liquidity); 21:21 – 22:5 & 23:19 – 24:2 (adjustment for lack of marketability); 27:8-13 (adjustment for quality of borrower); 32:7-12 (adjustment for quality of collateral).

[29] Exhibit 75; *Deposition of Patrick Henry Lacour*, 103:19-104:25; 127:13-128:5.

## LAW AND ARGUMENT

### I.    Introduction

Mrs. Lollar's arguments:

1.     suggest that Mr. Lacour's appraisal was flawed or too low by questioning: (A) whether Mr. Lacour was appointed by the Sheriff, and (B) who communicated with Mr. Lacour and what information Mr. Lacour received;

2.     suggest that the Sheriff's sale may be annulled by this Court applying state law even though Louisiana law provides no such cause of action; and

3.     urge the Court to apply a theory of equitable "restitution," which is not recognized in Louisiana law; and

4.     enter the realm of the metaphysical by attempting to apply Louisiana community property law.

### II.    Louisiana law provides no cause of action to Mrs. Lollar to annul the sheriff's sale.

Mrs. Lollar's attack on the Sheriff's sale relies solely on state law. Mr. Lucky has already once addressed Mrs. Lollar's state law claims, including Mrs. Lollar's claims concerning appraisal of the Note, in his *Memorandum in Support of Motion for Summary Judgment*[30] filed in support of his own motion for summary judgment. Those arguments are incorporated herein.

The cases cited by Mrs. Lollar are cases that (A) actually dismissed a plaintiff-judgment debtor's action to annul a judicial sale; (B) refute Mrs. Lollar's argument that Louisiana's Deficiency Judgment Act applies to sales under a writ of fieri facias, (C) contain glaring *dicta*; or (D) have been expressly overruled despite Mrs. Lollar's statement to the contrary.

---

[30] *Memorandum in Support of Motion for Summary Judgment,* Rec. Doc 84-22,  Part V.B. pp. 17-22 of 31; Part VIII pp. 25-26 of 31; Part IX, pp. 26-30 of 31.

### A. Mrs. Lollar cites cases dismissing a judgment debtor's action to annul a judicial sale.

Mrs. Lollar cites *Baumann v. Fields*,[31] and *Associates Commercial Corp. v. Vick's Sand Pit & Dredging Company, Inc.*[32]

In *Baumann*, the court of appeal affirmed a summary judgment that dismissed the plaintiff-judgment debtor's lawsuit to annul the judicial sale of his property under a writ of fieri facias. The plaintiff-judgment debtor argued that the sale should be invalidated because the third appraiser was appointed prior to any disagreement between the parties, and his appointment and therefore his appraisal, were invalid. 332 So. 2d at 888. However, the court ruled that since plaintiff's and defendants' appraisers did ultimately disagree, it was necessary for the sheriff to appoint the third appraiser and the fact that he was appointed prior to any disagreement between the parties did not invalidate his appraisal. *Id*. **The court also found no merit in the judgment debtor's contention that the appraisal did not accurately reflect the valuation of the property.** *Id*. The court wrote: "**We know of no law which requires that property be sold for its true value.** Plaintiff did not attack the qualifications of the appraisers nor allege any fraud in their appraisal of the property." *Id*. (emphasis added).

In *Associates Commercial Corp.,* defendants "Vick's" and "Phillip" appealed the judgment that denied their request for injunctive relief against further execution of a money judgment by plaintiff "Associates" and the sheriff. Injunctive relief was sought on the grounds that property previously sold under a writ of fi. fa. to satisfy a money judgment was improperly appraised. 522 So. 2d at 663. The Sheriff seized the defendant's truck under a writ of fi.fa. and advertised a judicial sale. *Id*. at 664. Neither party appointed an appraiser, and the sheriff

[31] 332 So.2d 885 (La. App. 2d Cir. 1976).

[32] 522 So.2d 663, 663-64 (La. App. 5th Cir.), *writ denied*, 525 So. 2d 1056 (La. 1988).

appointed an appraiser for each. *Id*. The property was appraised at $34,000.00 for the defendant $36,000.00 for the plaintiff. *Id*. The sheriff did not appoint a third appraiser to resolve the conflict as then required by Louisiana Revised Statutes 13:4365.[33] *Id*. Associates purchased the truck for two-thirds of the lower appraised value, i.e., $23,800.00. *Id*.

Having learned of the defect in the appraisal process, Associates sought to vacate and "reconduct" the sheriff's Sale. *Id*. Vick's and Phillip's sought an injunction prohibiting Associates and/or the Sheriff of Jefferson Parish from "reconducting" the sale and from executing on the balance due under the money judgment. *Id*. The stated grounds for Vick's and Phillip's seeking an injunction were that the appraisers were incompetent, the appraisals were "shockingly low," and a third appraiser had not been appointed as required by law. *Id*.

The trial court denied the requested injunction and dismissed as moot the motion to "reconduct" the sheriff's sale. *Id.* at 664-65. Vick's and Phillip's claim that the appraisals were "shockingly low" did not matter. In other words, the amounts of the appraisals do not affect the validity of a sheriff's sale. The court wrote: "As none of the grounds listed under La.C.C.P. Article 2298 were urged by Vick's and Phillip in their petition to enjoin execution against the bank accounts and real property seized by the sheriff, the trial court correctly denied the request for injunctive relief." *Id.* at 665.

Louisiana Code of Civil Procedure article 2298 covers injunctive relief prohibiting the sheriff from proceeding with the sale of property seized under a writ of fieri facias. It includes among its grounds: "When the sheriff is proceeding with the execution contrary to law." La. Code Civ. Proc. art. 2298. The court in *Associates Commercial Corp.* did not regard Vick's and Phillip's claim that the appraisals were "shockingly low" as stating grounds that the sheriff was

[33] At that time the statute did not provide for averaging the appraisals.

proceeding contrary to law. Likewise, Mrs. Lollar has not shown that she can meet her burden of proving that the judicial sale of the Note was not conducted in accordance with law.

**B. Louisiana's Deficiency Judgment Act does not apply to, or set appraisal rules for, a sale under a writ of fieri facias.**

Mrs. Lollar cites *Guaranty Bank of Mamou v. Community Rice Mill, Inc.*, 502 So.2d 1067 (La. 1987), which expressly recognize that the Deficiency Judgment Act is not applicable to a sale under a writ of fieri facias.[34] Nevertheless, directly contradicting these cases, Mrs. Lollar argues: "Though the appraisal requirement for sales pursuant to a fifa writ is in the Civil Code, the procedure for such appraisals is contained in the Deficiency Judgment Act (the 'DJA') portion of the Revised Statutes: La. R.S. 13:4106, *et seq*."[35] The Deficiency Judgment Act only applies to sales under writs of seizure and sale issued in executory proceedings and it does not set forth the procedure for appraisals. Mrs. Lollar is just plain wrong.

**C. The language relied on by Mrs. Lollar from *Oak Cliff Bank & Trust Co. v. Kittle is* glaring *dicta*.**

Arguing that "a debtor might raise a faulty appraisal process in other contexts," such as a suit to annul the sale,[36] Mrs. Lollar cites the Louisiana fourth circuit's 1975 decision in *Oak Cliff Bank & Trust Co. v. Kittle*.[37] Mrs. Lollar argues that the Fourth Circuit recognized that the *Oak Cliff* and *Guar. Bank of Mamou* "limitation" only applies to deficiency judgments and does not diminish a debtor's ability to challenge the appraisal process for any other purpose.[38]

---

[34] "We must next consider whether the Deficiency Judgment Act is ever applicable to a situation where the property sold pursuant to a writ of fi.fa. is insufficient to satisfy a judgment. . . ." *Guaranty Bank*, 502 So. 2d at 1069. The court answered that it was not. *Id*. at 1071.

[35] *Lollar Memorandum*, Rec. Doc. 80-1, p. 9 of 26.

[36] *Lollar Memorandum*, Rec. Doc. 80-1, p. 10 of 26.

[37] 309 So.2d 742,742-43 (La. App. 4th Cir. 1975).

[38] *Lollar Memorandum*, Rec. Doc. 80-1, p. 10 of 26.

In *Oak Cliff,* the plaintiff had already obtained a money judgment and then sought a deficiency judgment after a sale under a writ of fieri facias.[39] The court explained that "[s]ince the automobile was not sold under executory proceedings . . . [the] plaintiff was not entitled to a deficiency judgment . . . and its suit was properly dismissed by the trial judge."[40] The court also explained: "Since plaintiff already had a judgment for the full amount of the debt originally sued upon, a deficiency judgment would be superfluous."[41]

Having fully disposed of the appeal by this ruling, the court threw in the following *dicta*:

> Both parties have addressed themselves exclusively to the question of whether the appraisers complied with LSA-R.S. 13:4365 requiring them 'to make a true and just appraisement of the property, 'prior to the sale and have related this issue to plaintiff's right to a deficiency judgment. While the issue might be raised in other proceedings such as a suit to annul the sale or a suit to enjoin further execution of the original judgment, **it is not properly before us**, as a defense to a deficiency judgment action which is unauthorized in any event.

*Id.* at 743 (emphasis added). Having expressly recognized that the issue "it is not properly before us," the fourth circuit's statement can have no effect as law.

**D. The older cases cited by Mrs. Lollar in support of her restitution argument have been expressly overruled. Mrs. Lollar's argument to the contrary is just wrong.**

Mrs. Lollar cites and discusses the 1800's cases of *Graham v. Eagan*, 15 La.Ann. 97 (1860), *Pasley v. McConnell*, 38 La.Ann. 470 (1886), and *Fush v. Egan*, 48 La.Ann. 60, 19 So. 108 (1895), arguing: "Although *Palsey* distinguishes *Graham* based on its specific judgment being overruled, it did not overrule it."[42] Mrs. Lollar is wrong about *Graham.* Additionally, none of these cases support a cause of action to annul a sheriff's sale or for "restitution" of the

---

[39] *Oak Cliff,* 309 So. 2d at 742.

[40] *Id.*

[41] *Id.*

[42] *Lollar Memorandum*, Rec. Doc. 80-1, p. 20 of 26.

Note.

The later 1921 Louisiana Supreme Court case of *Holland v. Bryan*, 148 La. 999, 88 So. 246 (1921), shows Mrs. Lollar is wrong, and that Mrs. Lollar had one remedy after reversal of the Lucky I judgment. The court explained that *Graham v. Eagan* had been expressly overruled in *Pasley* and that *Fush* must be considered as having been overruled by later decisions:

> In the meantime, the judgment against Holland having become executory, Bryan obtained a writ of fieri facias, under which the property of Holland, both real and personal, was seized and sold by the sheriff. Some of the real estate was bid in by Bryan and the price was credited on his half of the judgment against Holland. The balance of the real estate and all personal property seized was bid in by outsiders, at prices amounting to $640.75.
>
> When the decree of the Supreme Court, annulling the judgment against Holland, had become final, the latter instituted the present suit against the partnership of Bryan and Reynolds, and against the members thereof, in solido, for $9,346 damages, on the theory that the annulment of the judgment on appeal, after it had been executed, had the effect of declaring null ab initio the seizure and sale that had been made in execution of the judgment. The district court gave judgment against Bryan and Reynolds and in favor of Holland for $640.75, for the value of the property that had been adjudicated to outsiders. The defendants were held liable, not in solido, but each for half of the amount stated. The court also ordered both Bryan and Reynolds to return to Holland, within 30 days, title to the lands that had been adjudicated to Bryan, and declared that, in the event of their failure to return the property within the 30 days, Holland should be decreed the owner of it.
>
> Reynolds alone has appealed from the judgment. We are therefore not concerned with the judgment against Bryan.
>
> **The judgment appealed from is contrary to many decisions, maintaining that the only remedy of a defendant against whom a judgment has been executed, which has been subsequently reversed on a devolutive appeal, is to recover whatever sum of money the seizing plaintiff has received or retained out of the proceeds of the property seized and sold.** We refer to the following decisions, and perhaps others could be cited, viz.: *Baillio v. Wilson*, 5 Mart. (N. S.) 214; *Poultney's Heirs v. Cecil's Executors*, 8 La. 424; *Brosnaham v. Turner*, 16 La. 440; *Williams v. Gallien*, 1 Rob. 94; *Farrar v. Stacy*, 2 La. Ann. 210; *Adle v. Anty*, 5 La. Ann. 633; *Yale v. Howard*, 24 La. Ann. 459; *Taylor v. Lauer*, 26 La. Ann. 307; *Factors' & Traders' Insurance Co. v. New Harbor Protection Co.*, 37 La. Ann. 234; *Pasley v. McConnell*, 38 La. Ann. 470; *State National Bank v. Lanaux*, 46 La. Ann. 469, 15 South. 59; *Louisiana Land & Immigration Co. v. Murff*, 139 La. Ann. 808, 72 South. 284; *Citizens' Bank of*

> *Columbia v. Bellamy Lumber Co.*, 140 La. 497, 73 South. 308.
>
> . . . .
>
> **Holland's attorney, in this case, cites and relies upon the decision in *Graham v. Eagan*, 15 La. Ann. 97.** In that case, Eagan was ordered to return to Graham property which Eagan had bought at a sheriff's sale made in execution of a judgment in his favor against Graham, which judgment had been subsequently reversed on a devolutive appeal. **The decision is not consistent with any other of the cases cited above, and it was expressly overruled in *Pasley v. McConnell*, 38 La. Ann. 474**, where it was said, of the decision in *Graham v. Eagan*:
>
> > 'This decision is in direct conflict with that in *Farrar v. Stacy*, 2 Ann. 210, which is not referred to.'
>
> **It is true, the decision in *Graham v. Eagan* was cited, as if with approval, by Mr. Justice Miller, in *Fush v. Egan*, 48 La. Ann. 60, 19 South. 108; but the learned justice must have overlooked the fact that the decision in *Graham v. Eagan* had been overruled, for he cited, also with approval, the decision in *Pasley v. McConnell*, expressly overruling *Graham v. Eagan*. The doctrine of the decision in *Fush v. Egan* is that the reversal of a judgment on a devolutive appeal has the same effect as if the appeal had stayed execution of the original judgment. That doctrine has never been affirmed and is in direct conflict with several decisions rendered since the decision in *Fush v. Egan*.** The author of the opinion in *Fush v. Egan* cited only three decisions in support of his ruling, viz.: *Mooney v. Corcoran*, 15 La. 46; *Graham v. Eagan, supra*; and *Pasley v. McConnell, supra*. The decision in *Mooney v. Corcoran* was not at all appropriate to the question presented in *Fush v. Egan* and was evidently cited through error; and, as we have said, the decision in *Graham v. Eagan* had been expressly overruled in *Pasley v. McConnell*, which latter decision was in direct conflict with the decision in support of which it was cited, in *Fush v. Egan*. **The doctrine announced in the latter case, therefore, has nothing to rest upon, and must be considered as having been overruled by the subsequent decisions to the contrary, viz.: *Louisiana Land & Immigration Co. v. Murff*, 139 La. 808, 72 South. 284; and *Citizens' Bank v. Bellamy Lumber Co.*, 140 La. 497, 73 South. 308.**

*Holland*, 148 La. at 1001-03, 88 So. at 247-48 (emphasis added). In *Holland*, the court explained that "the taking of a devolutive appeal implies and concedes that the judgment appealed from may be executed pending the appeal, and that **the only remedy of the appellant, in case the judgment should be reversed on appeal, is to pursue the proceeds of the sale made in execution of the judgment.**" *Holland*, 148 La. at 1006-07, 88 So. at 249 (emphasis added).

Mrs. Lollar **is correct that the early jurisprudence she has cited was never specifically codified in current Louisiana law.** That is because that **e**arly jurisprudence had been expressly overruled. Moreover, Mrs. Lollar is flat out wrong in her broadly stated argument:

> . . . However, the *Gootee* court's recent reliance on art. 2299 unjust enrichment provides direction in our current matter. *Graham*, *Gootee*, and Civil Code article 2299 provide that restitution of the property itself is available to the aggrieved party whose property was sold by a judgment creditor during the pendency of the appeal. This approach is also congruent with other jurisdictions and general principles of restitution at law. . . .

*Lollar Memorandum*, Rec. Doc. 80-1, p. 16 (footnote omitted).

First, as explained at pages 18-20, *infra*, Civil Code article 2299 does not create the concept of "unjust enrichment." (Civil Code article 2298 does.) Second, *Graham* was expressly overruled. Third, we have found only one reported Louisiana case which appears to refer to the Restatement of Restitution: *Harp v. Town of Lake Providence*, 338 So.2d 169, 171 (La. App. 2d Cir. 1976). It only cited the Restatement of Restitution for its definition of what constitutes a "benefit." *Id*. There, the court was simply applying Louisiana's doctrine of unjust enrichment as it then existed under former Civil Code Art. 1965. The court was not recognizing that the Restatement of Restitution is law in Louisiana.

Mrs. Lollar has just not shown that she has a remedy for annulment of the sheriff's sale.

## III. Mrs. Lollar's contentions about Mr. Lacour's appointment and his receipt of information are not material and could not support an action to annul the sheriff's sale even if the law recognized such an action.

### A. The Sheriff's Duty and the Appointment of Mr. Lacour.

Mrs. Lollar writes: "The **legal ground** for an annulment in this motion is the Sheriff's refusal to do his statutory duty, **rather than** the flaws in the appraisal or the information

considered by Lacour. However, there were problems with both of these aspects of the Lacour 'appraisal'."[43] Mrs. Lollar argues: "The relevant statute requires affirmative action by the Sheriff or his office: 'the sheriff *shall* appoint a third appraiser.' La. R.S. 13:4365(B)."[44] The Sheriff's duty in in Lucky I was to appoint "a qualified and competent appraiser." *Citizens Bank of Ville Platte v. Am. Druggists Ins. Co.*, 471 So. 2d 1119, 1122 (La. App. 3d Cir. 1985).

Mrs. Lollar only cites Louisiana Revised Statutes 13:4365(B) and *Citizens Bank of Ville Platte* as support. Neither that statute nor that case specifies the form or manner in which the sheriff is to appoint a third appraiser. There is nothing requiring that the Sheriff's appointment of an appraiser be in writing. *See* La. R.S. 13:4363-:4365. The only form requirements are that the appraisers take an oath to make a true and just appraisal of the property, and each appraiser reduce his appraisal to writing, sign it, and deliver it to the sheriff. La. R.S. 13:4365(A) & (D). The evidence shows that Mr. Lacour did this. That Mr. Lacour was appointed by the Sheriff is demonstrated by the facts detailed above.[45] Mrs. Lollar's argument that the Sheriff did not appoint Mr. Lacour is simply not supported by, and is in fact contradicted by, the evidence. Mrs. Lollar has submitted no evidence challenging Mr. Lacour's qualifications or competence. Therefore, by her own argument, Mrs. Lollar has not provided evidence to support her claimed legal ground for an annulment. Mrs. Lollar's contention is not material.

---

[43] *Lollar Memorandum*, Rec. Doc. 80-1, p. 13 of 26 (emphasis added).

[44] *Lollar Memorandum*, Rec. Doc. 80-1, p. 12 of 26.

[45] *See text at pages 2-3*, *supra*.

**B. Mr. Lacour's receipt of communication and information is not material.**

Although Mrs. Lollar's stated **legal ground** for her claim is "the Sheriff's refusal to do his statutory duty,"[46] Mrs. Lollar still argues what she views as problems with Mr. Lacour's appraisal.[47] Mrs. Lollar is arguing facts that are not material.

First, the facts referenced in the *Lollar Memorandum* about the mineral value of the property and Mrs. Lacour's research are not presented as being material facts in *Plaintiff's Statement of Material Facts*.[48]

Second, Mrs. Lollar offers no evidence that Mr. Lacour's appraisal would be any different if he had seen a copy of the Note, performed what she calls independent research, or considered the collateral for the Note in a different manner. (In fact, Mr. Lacour testified to his consideration of the appraisal of the property that secured the Note).[49] All of the relevant terms

---

[46] *Lollar Memorandum*, Rec. Doc. 80-1, p. 13 of 26.

[47] Mrs. Lollar complains:

> . . . Mr. Lacour never saw a copy of the Note, never performed independent research beyond the Shelton Letter, and completely failed to factor in the actual value of the collateral for the Note, while also excluding the substantial mineral value of the property securing the Note.[18] These flaws would provide sufficient grounds for the Lacour appraisal to be thrown out on their own, but for the purpose of this motion they emphasize why the Sheriff, rather than the judgment creditor, is tasked with appointing a definitive third appraisal.
>
> > [18.] . . . See also . . . Mr. Lacour's deposition wherein he admits he chose to disregard the mineral value of the collateral property (pgs. 34-35), and that he performed no research beyond the Shelton Letter (p. 53).

*Lollar Memorandum*, Rec. Doc. 80-1, p. 13 of 26.

[48] *See* Rec. Doc. 80-7; Local Rule LR 56.1, note 4, *supra*. Mrs. Lollar refers to excerpts from Mr. Lacour's deposition filed as Rec. Doc. 71-5 and attaches pages from Mr. Lacour's deposition filed to the *Lollar Memorandum* as Rec. Doc. 80-2 that are not addressed in *Plaintiff's Statement of Material Facts.*

[49] Exhibit 75: *Deposition of Patrick Henry Lacour*, 33:9-34:1; 71:14-72:12.

of the Note--the principal amount of the Note, the interest rate, and the payment schedule--were known to Mr. Lacour. Mr. Lacour has testified that the form of the Oath of appraiser included in Exhibit 3 to his deposition fairly gave all the essential terms that he would need from the fact of a promissory to appraise it.[50] Those terms were also recited on the Appraisement Sheet that he signed.[51] Mr. Lacour also considered information that he knew independently[52] and applied his professional judgment.[53]

Third, without evidence that it was necessary for Mr. Lacour to see a copy of the Note, or to do anything that he did not do, in order to appraise the Note. Mrs. Lollar baldly asserts: "These flaws would provide sufficient grounds for the Lacour appraisal to be thrown out on their own . . . ."[54] This is Mrs. Lollar's unsupported conjecture, and provides no legal basis to conclude that Mr. Lacour's appraisal was invalid.

Fourth, Mrs. Lollar complains about various statements contained in Mr. Shelton's October 10, 2018, letter.[55] Mrs. Lollar argues that the statements "compromised the neutrality of the process" and that Mr. Lacour "only reached his absurdly-low valuation of the Note by giving undue weight to the problems Mr. Lucky manufactured through Lucky II and the lis pendens

---

[50] Exhibit 75: *Deposition of Patrick Henry Lacour*, 101:17-103:9; (Deposition Exhibit 3).

[51] Exhibit 39, Rec. Doc. 84-16, pp. 18-19 of 32.

[52] Exhibit 75: *Deposition of Patrick Henry Lacour*, 15:4 – 16:6 (Base Yield: U.S. Prime Rate).

[53] *See, e.g.*, Exhibit 75: *Deposition of Patrick Henry Lacour*, 21:5-20 (adjustment for lack of liquidity); 21:21 – 22:5 & 23:19 – 24:2 (adjustment for lack of marketability); 27:8-13 (adjustment for quality of borrower); 32:7-12 (adjustment for quality of collateral).

[54] *Lollar Memorandum*, Rec. Doc. 80-1, p. 13 of 26.

[55] *Lollar Memorandum*, Doc. 80-1, pp. 13-14 of 26.

against the Note's collateral."[56] This is unsupported conjecture about Mr. Lacour's appraisal. There is no testimony from Mr. Lacour or other evidence that the statements in the October 10, 2018, letter about which Mrs. Lollar complains affected Mr. Lacour's appraisal or that his appraisal would have been any different in their absence. Mr. Lacour reviewed and considered the actual documents that were provided. In fact, as noted by Mrs. Lollar, the letter stated to Mr. Lacour: "I believe that you can evaluate the merits of the lawsuit filed as Lucky-Carr II when you look over the petition."[57] The statements are not material to the issue whether the Sheriff appointed "a qualified and competent appraiser."[58] The same is true of Mrs. Lollar's arguments that Mr. Lucky "manipulated the process"[59] to allow "his family LLC the opportunity" to buy the Note on the cheap.[60]

In Mrs. Lollar's words, none of this is "legal ground for an annulment."

## IV.    Mrs. Lollar's Claim for "Restitution" upon Reversal of the Judgment

### A.    There is no Louisiana law claim for "equitable restitution."

Citing common law cases and the Restatement (Third) of Restitution and Unjust Enrichment,[61] Mrs. Lollar characterizes her claim as being for "restitution." Mrs. Lollar cites:[62]

---

[56] *Lollar Memorandum*, Doc. 80-1, pp. 14-15 of 26.

[57] Exhibit 36, Rec. Doc. 84-12, p. 7 of 50.

[58] Mr. Lucky has already explained that Louisiana law does not even require that appraisers be disinterested. *Memorandum in Support of Motion for Summary Judgment*, Rec. Doc. 84-22, pp. 12-13 of 31 (*citing Plauche-Locke Securities, Inc. v. Johnson*, 187 So.2d 178 (La. App. 3d Cir. 1966)).

[59] There was no manipulation. Mr. Lucky filed the notices of lis pendens to protect himself against Mrs. Lollar's efforts pre-emptively to remove her property from her patrimony immediately before Lucky I was submitted for a decision.

[60] *Lollar Memorandum*, Doc. 80-1, p. 15 of 26.

[61] *Lollar Memorandum*, Rec. Doc. 80-1, p. 18 of 26; p. 17 of 26; p. 17 n.30.

A. *Bank of U.S. v. Bank of Washington*, 31 U.S. 8, 8 L.Ed. 299 (1832), an 1832 Supreme Court case for a "a writ of restitution;"

B. *Arkadelphia Milling Co. v. St. Louis Southwestern Ry. Co.*, 249 U.S. 134, 146, 39 S.Ct. 237, 242, 63 L.Ed. 517 (1919), which discussed common law principles of equity and the common law remedy of a writ of restitution;

C. *Mathis v. DCR Mortg. III Sub, I, LLC*, 952 F.Supp.2d 828 (W.D. Tex. 2013), a diversity case applying Texas state law;

D. *PSM Holding Corp. v. National Farm Financial Corp.*, 743 F.Supp.2d 1136 (2010), *aff'd in part*, 884 F.3d 812 (9th Cir. 2018), a diversity case applying California state law; and

E. *Erickson v. Boothe*, 127 Cal.App.2d 644, 274 P.2d 460 (1954), a California state law case.

None of these cases are helpful on Louisiana law. The Restatement (Third) of Restitution and Unjust Enrichment does not help either. Louisiana law just does not have a claim for "equitable restitution." *Brown v. Coleman Investments, Inc.*, 993 F.Supp. 416, 431 (M.D. La. 1998)("Since there is no cause of action under Louisiana law for 'equitable restitution,' the Court must assume that Brown is attempting to state a claim for 'unjust enrichment.'") *Holland v. Bryan*, 88 So. 246, 249 (1921), is clear that the only remedy of a judgment debtor whose property has been seized and sold at sheriff's sale in execution of a judgment, when the judgment is reversed on appeal, is to pursue the proceeds of the sale made in execution of the judgment.

**B. Louisiana law recognizes unjust enrichment. However, Mrs. Lollar cannot have an unjust enrichment claim.**

What is sometimes loosely characterized as a claim for "restitution" is actually a claim under Louisiana law for enrichment without a cause or "unjust enrichment." *See Security Homestead Ass'n v. W.R. Grace & Co.*, 743 F.Supp. 456, 462 (E.D. La. 1990)("Restitution is an equitable remedy employed in Louisiana for the indemnification of a party in situations where

[62] *Id.*

there has been an unjust enrichment to one party at the detriment of another, and where there appears no remedy at law available to such a plaintiff for reimbursement. *Minyard v. Curtis Products, Inc.,* 251 La. 624, 205 So.2d 422 (La.1967), *reh. denied*, (La.1968).")

Louisiana Civil Code article 2298 creates the claim for unjust enrichment. It reads:

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. ***The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.***
>
> The amount of compensation due is measured by the extent to which one has been enriched or the other has been impoverished, whichever is less.
>
> The extent of the enrichment or impoverishment is measured as of the time the suit is brought or, according to the circumstances, as of the time the judgment is rendered.

La. Civ. Code art. 2298 (emphasis added).

This remedy specifically is not available "if the law provides another remedy for the impoverishment." La. Civ. Code art. 2298. Where a plaintiff pleads entitlement to another action, an equitable action for unjust enrichment is precluded, and the mere fact that a plaintiff does not successfully pursue another remedy does not give the plaintiff the right to recover under the theory of unjust enrichment. *Walters v. MedSouth Record Mgmt., LLC*, 2010-0351, p. 2 (La. 6/4/10); 38 So.3d 245, 246.

Mrs. Lollar has pleaded that she has: (a) an action under 42 U.S.C. § 1983, (b) what she calls a claim for "restitution" of the Note, and (c) a claim for abuse of process under La. Civil Code article 2315.[63] Perhaps by "restitution," Mrs. Lollar is actually attempting to plead a claim under Louisiana law for unjust enrichment. Still, Mrs. Lollar has attempted to plead claims under

[63] *First Amended and Restated Complaint to Annul Sheriff's Sale and for Other Relief*, Rec. Doc. 51, pp. 1-2, ¶ 1.

42 U.S.C. § 1983 and for abuse of process. Further, Mrs. Lollar had a claim for "payment of a thing not due." Mrs. Lollar simply cannot have a claim for enrichment without a cause.

## V. Mrs. Lollar's claim upon reversal of the judgment was for payment of a thing not due.

Mrs. Lollar relies on *Gootee Const., Inc. v. Amwest Sur. Ins. Co.*, 2003-0144 (La. 10/10/03); 856 So.2d 1203 (2003), which held that a judgment creditor who is paid on a judgment has to repay to the judgment debtor the funds that he received when the judgment is reversed on appeal. While Mrs. Lollar refers to this case as supporting a claim for "restitution" (or unjust enrichment), **the actual legal basis of the *Gootee* decision is Louisiana Civil Code article 2299**. *Gootee*, 2003-0144, pp. 3-4; 856 So.2d at 1205-06. Article 2299 creates a different claim, *i.e.*, a claim for the payment of a thing not due. Article 2299 reads: "A person who has received a payment or a thing not owed to him is bound to restore it to the person from whom he received it." A claim for unjust enrichment does not arise under Louisiana Civil Code article 2299. It is this claim, not a claim for "restitution" (or unjust enrichment), that was addressed by *Goote*.

## VI. Mrs. Lollar's claim for payment of a thing not due has been satisfied.

Mr. Lucky, who was formerly Mrs. Lollar's judgment creditor, does not dispute that *Gootee* was applicable to this case. Mr. Lucky did not dispute that he, as a judgment creditor, had to restore to Mrs. Lollar the payment that he received from the sheriff's sale. Likewise, Mrs. Lollar cannot dispute this because she demanded that Mr. Lucky pay her the money that he received from the sheriff's sale.[64]

[64] Exhibits 51-54, Rec. Doc. 84-18, pp. 1-17 of 23.

Mr. Lucky in fact restored to Mrs. Lollar the full sum that she demanded and that he received from the sheriff's sale.[65] Mrs. Lollar accepted the payment.[66] Therefore, Mrs. Lollar received all of the relief to which she was entitled under Louisiana Civil Code article 2299 and *Gootee*. **Mrs. Lollar's only viable claim was fully satisfied in accordance with her demand.**

Since Mrs. Lollar had a Civil Code article 2299 claim for payment of a thing not due, she could not have a Civil Code article 2298 unjust enrichment claim. Further, even if Mrs. Lollar had an article 2298 unjust enrichment claim, she could not possibly recover anything further from Mr. Lucky. Civil Code article 2298 reads: "The amount of compensation due is measured by **the extent to which one has been enriched or** the other has been impoverished, **whichever is less**." (Emphasis added). Mr. Lucky has paid Mrs. Lollar the amount that he received from the sheriff's sale, which would be the full amount by which, if Mrs. Lollar had an unjust enrichment claim, Mr. Lucky had been "enriched." Mrs. Lollar could claim nothing more.

**VII. Mrs. Lollar's Louisiana Community Property Regime Argument**

Although Mrs. Vickie Lucky is not a defendant in this action, Mrs. Lollar attempts to create metaphysical doubt with a community property argument. Mrs. Lollar argues that (1) at the time of the sheriff's sale, Mr. Lucky was listed as a member of Lucky Family, L.L.C. in the Secretary of State's records; (2) Mr. Lucky's role as Manager of Lucky Family, L.L.C. had not been changed or otherwise revoked;[67] and (3) Lucky Family, L.L.C. is "Mr. Lucky's family L.L.C." and is owned in part by his wife, Vickie Lucky."[68] Mrs. Lollar's factual statements are demonstrably false.

---

[65] *Id.*

[66] *Id.*

[67] *Lollar Memorandum*, Rec. Doc. 80-1, p. 23 of 26.

[68] *Lollar Memorandum*, Rec. Doc. 80-1, p. 24 of 26.

Mrs. Lollar argues that Mr. Lucky lack of ownership in Lucky Family, L.L.C. is a "paper-thin front."[69] In reality, Mr. Lucky has owned no interest in Lucky Family, L.L.C. since 2001, as documented by nearly two decades of tax documents,[70] company meeting minutes,[71] and documents notarized by Mrs. Lollar.[72] Mrs. Lollar also provides no legal authority for the supposition that the Secretary of State's records are determinative.[73]

Mrs. Lollar argues that Mr. Lucky was using Lucky Family, L.L.C. "as his own bank for land purchases".[74] Mrs. Lollar cites Exhibit E[75] to her memorandum (which is not presented as a material fact in her *Statement of Material Facts*).

Exhibit E is simply a group of immaterial documents including a mortgage from Coyote Land Company, LLC to Lucky Family, L.L.C. reflecting the latter's financing of nine tracts of property owned by the former, and the later contribution by Coyote Land Company, LLC to Lucky Real Estate Holding, LLC of two of the nine tracts. Mrs. Lollar attempts to conjure all sorts of inferences from these documents. Without evidence, Mrs. Lollar concludes: "Mr. Lucky's demonstration that (on paper) he has no ownership in Lucky Family, L.L.C. is contrary to the undisputable control and management he exerts in its regard."[76]

---

[69] *Id.* This is false and, in any event, is immaterial because, under *Holland, supra*.

[70] Exhibit 67, *Declaration of W. Lewis Demoss, Jr.*, ¶ 6; Rec. Doc. 84-19, p. 34 of 35.

[71] Exhibit 69, Rec. Doc. 84-21, pp. 1-24 of 25.

[72] *See, e.g.,* Exhibit 63, *Certificate Pursuant to La R.S. 12:1317(C) and of Authorization to Act on Behalf of Company*, Rec. Doc. 84-19, pp. 24-25 of 35.

[73] *Compare Pel-State Bulk Plant, LLC v. Unifirst Holdings, Inc.*, 2015 WL 631282, p. 5 n. 2 (M.D. La. 2/12/15).

[74] *Lollar Memorandum*, Rec. Doc. 80-1, p. 24 of 26.

[75] Rec. Doc. 80-6.

[76] *Lollar Memorandum*, Rec. Doc. 80-1, p. 24 of 26.

Exhibit E to the *Lollar Memorandum* simply does not show that Mr. Lucky exercises control over Lucky Family, L.L.C. There is not a single document in Exhibit E to the *Lollar Memorandum* that is signed by Mr. Lucky for Lucky Family, L.L.C. The Exhibit E documents simply do not present material facts.

Mrs. Lollar argues that "In addition, to the extent Mr. Lucky had anything from his erstwhile Lucky I judgment, it was community property."[77] What Mr. Lucky had were proceeds from the sheriff's sale in the amount of $97,593.50.[78] Mr. Lucky restored that full amount to Mrs. Lollar.[79] If Mr. Lucky's obligation under Civil Code article 2299 was a community obligation, it has been fully paid.

In reality, Mrs. Lollar wants to ignore the difference between Mrs. Lucky and Lucky Family, L.L.C. and to ignore that Lucky Family, L.L.C, not Mrs. Lucky, was the purchaser of the Note. Lucky Family, L.L.C. is a limited liability which exists separate and apart from its members and managers.[80] It is a separate person from Mrs. Lucky, Mr. Lucky, Coyote Land Company, LLC, and Lucky Real Estate Holding, LLC. Neither Mr. Lucky nor Mrs. Lucky own

---

[77] *Id.*

[78] Exhibits 51 through 54, Rec. Doc. 84-18, pp. 1-17 of 23.

[79] *Id.*

[80] "[T]he personalities of an L.L.C. and its members are wholly separate by law. *See also* La. Civ.Code art. 24; La.Rev.Stat. 12:1301." *Nunez v. Pinnacle Homes, L.L.C.*, 2015-0087, p. 5 (La. 10/14/15); 180 So.3d 285, 289. Louisiana Civil Code article 24 provides:

> There are two kinds of persons: natural persons and juridical persons.
>
> A natural person is a human being. A juridical person is an entity to which the law attributes personality, such as a corporation or a partnership. The personality of a juridical person is distinct from that of its members.

*See, also, Medve Energy Ventures LLC v. Warhorse Oil & Gas LLC*, 2018 WL 4089456, p. 4 (W.D. La. 8/27/18)("Louisiana law considers a limited liability company and its members as being wholly separate persons.")(citations omitted).

Lucky Family, L.L.C.'s property. Additionally, Mrs. Lucky's membership interest in Lucky Family, L.L.C. is her separate property.[81]

Mrs. Lollar cites no evidence to support for her supposition Lucky Family, L.L.C. was not a third party purchaser at the sheriff's sale. Mrs. Lollar only offers her bare assertions that: "To rule otherwise would permit the circumvention of Louisiana's restitution law. Further, it would allow the unjust enrichment of the party with no judgment at the expense of the successful appellant."[82] There is no "Louisiana restitution law," and, as explained above, Mrs. Lollar cannot have a claim for unjust enrichment.

Finally, Mrs. Lollar also argues that Mr. Lucky claimed the Note "was a nullity in Lucky II" and that he "has now moved away from these claims, as they would hinder his family's attempt at a windfall."[83] Mr. Lucky did not claim the Note was a nullity. His claims were that the

---

[81] On November 22, 2000, Mr. Lucky donated his remaining membership interest in Lucky Family, L.L.C. to his wife Vickie Talley Lucky as her separate property. Exhibit 64, Rec. Doc. 84-19, p. 26 of 35; Exhibit 66, *Declaration of W.A. Lucky, III*, ¶¶ 4-6; Exhibit 66, Exhibit B, *Affidavit of Act of Correction of Act of Donation*, Rec. Doc. 84-19, pp. 29-33 of 35. The *Act of Donation,* Exhibit 64, provided, in pertinent part: "**[T]his gift is made in accordance with Louisiana Civil Code Article 2343 such that the interest donated herein by Donor and the interest owned by Donee in said property is transformed into the separate property of Donee.** (Emphasis added). Louisiana Civil Code article 2343 provides:

> The donation by a spouse to the other spouse of his undivided interest in a thing forming part of the community transforms that interest into separate property of the donee. Unless otherwise provided in the act of donation, an equal interest of the donee is also transformed into separate property and the natural and civil fruits of the thing, and minerals produced from or attributed to the property given as well as bonuses, delay rentals, royalties, and shut-in payments arising from mineral leases, form part of the donee's separate property.

The evidence presented in this case affirmatively establishes that the membership interest in Lucky Family, L.L.C. formerly owned by Mr. Lucky has been owned by Mrs. Lucky as her separate property since November 22, 2000.

[82] *Lollar Memorandum*, Rec. Doc. 80-1, p. 25 of 26.

[83] *Id.*

transfers by which Mrs. Lollar placed her property outside of her patrimony were simulations, subject to revocation, or nullities."[84] Once the judgment in Lucky I had been reversed, Mr. Lucky lacked standing to maintain those claims and, upon Mrs. Lollar's demand, he dismissed same.[85] These facts are not material to the validity of the Sheriff's sale of the Note.

Finally, Mrs. Lollar concludes her argument thus:

> Further, should the Note be restored, it is not Mrs. Lollar's intention to prevent Lucky Family, L.L.C. from receiving any portion of the $105,000 paid for the Note which it may be due under the law. . . .

*Lollar Memorandum*, Rec. Doc. 80-1, p. 21. Here it is appropriate to observe again that Mrs. Lollar demanded to be paid and was paid the $97,593.50 that Mr. Lucky had received as proceeds from the Sheriff's sale. Meanwhile, Magnolia and Mr. Lollar have failed to pay and resisted payment on the Note[86] even after plaintiffs' "Motion to Suspend Payments Due Under Promissory Note or, in the Alternative, to Deposit with the Court" was denied.[87]

## CONCLUSION

It is respectfully submitted that Mrs. Lollar's motion for partial summary judgment should be denied.

---

[84] Exhibit 18, Rec. Doc. 84-8, pp. 38-59 of 95.

[85] Exhibits 48-50; Rec. Doc. 84-17, pp. 25-35 of 35.

[86] Mr. Lollar has testified that he made the payment that was due on November 1, 2019, to his attorneys; Exhibit 76, *Deposition of Ronald Lollar*, 41:13-42:14; 76:12-77:9.

[87] *See Orde*r, Rec. Doc. 64.

Respectfully submitted,

AYRES, SHELTON, WILLIAMS,
BENSON & PAINE, LLC

By: /s/ Curtis R. Shelton
Curtis R. Shelton
La. Bar Roll No. 17137
333 Texas Street, Suite 1400 (71101)
P. O. Box 1764
Shreveport, LA 71166
Telephone: (318) 227-3500
Facsimile: (318) 227-3980
Email: curtisshelton@arklatexlaw.com

WIENER, WEISS & MADISON
A Professional Corporation

By: /s/ R. Joseph Naus
R. Joseph Naus, #17074
Marjorie Frazier, #32991
330 Marshall Street, Suite 1000 (71101)
P. O. Box 21990
Shreveport, LA 71120-1990
Telephone: (318) 226-9100
Facsimile: (318) 424-5128
E-mail: rjnaus@wwmlaw.com
E-mail mfrazier@wwmlaw.com

ATTORNEYS FOR W. A. LUCKY, III