STATE OF LOUISIANA

PARISH OF CADDO PARISH

### AFFIDAVIT OF RANDALL STEPHEN DAVIDSON

BEFORE ME, the undersigned Notary Public, personally came and appeared **RANDALL STEPHEN DAVIDSON**, an individual of lawful age, to me known, who upon being duly sworn, declared as follow:

1.

I am a member of the law firm of Davidson Summers, APLC, and in that capacity I have provided legal services and advice, along with other members of my firm, to Barbara Lollar ("Lollar" herein) and Magnolia Island Plantation, LLC ("Magnolia" herein). Lollar and Magnolia are currently involved in Litigation styled *Magnolia Island Plantation, LLC and Barbara Marie Carey Lollar v. Lucky Family, LLC, W.A. Lucky, III, and Bossier Parish Sheriff Julian C. Whittington*, Case Number 5:18-cv-01526 in the United States District Court in the Western District of Louisiana, Shreveport Division (the "Litigation"). Lollar and Magnolia are sometimes collectively referred to as "Plaintiffs" herein.

2.

In the Litigation Plaintiffs have filed a Motion for Summary Judgment and certain of the defendants have filed cross-motions for Summary Judgment. This affidavit is submitted for use in the Plaintiffs' motion and also in rebuttal to the Defendants' motions.

3.

In 2017, Lollar and Ronald Lollar, in his capacity as the owner of the membership interest in Magnolia, desired to transfer from Lollar to Ronald Lollar and then by him to Magnolia, certain immovable property located in Bossier Parish, Louisiana. This occurred in the period of approximately August through October of 2017. I will refer to this transaction as the "Magnolia Acquisition" hereafter.

4.

At the time of the Magnolia Acquisition, Lollar was involved in litigation with Buddy Lucky which is referred to as the "Lucky I" Litigation in the motions to which this affidavit will be attached. In Lucky I, Mr. Lucky sought money judgment for damages against Lollar based upon a theory that Lollar acquired the property transferred to Magnolia not for herself but for Lucky under an oral agreement of agency. Lollar disputed that she was ever an agent for Lucky and asserted she had acquired the property for her own account.

EXHIBIT 6
Opposition to W.A. Lucky III's Rule 56 Motion

5.

At the time of the Magnolia Acquisition, the Lucky I matter had been tried but no decision by the trial court had been reached. It is my recollection that the trial court did not issue its opinion until January of 2018. As a result, the Magnolia Acquisition was considered, negotiated and closed several months before there was a judgment rendered in Lucky I. The deed from Lollar to Ronald Lollar was recorded in the public records and Magnolia filed its Articles and Initial Report with the Louisiana Secretary of State.

6.

While the judgment entered in Lucky I was in favor of Lucky and against Lollar, it granted no rights in the property previously owned by Lollar which was transferred by her to Magnolia in 2017. The judgment rendered was solely a money judgment against her.

7.

It is of fundamental importance to understanding the Magnolia Acquisition that Lollar always believed that she would prevail in the Lucky I litigation because the nature of the agency on which Lucky relied had to be in writing and was not. Lollar believed that the trial court should grant a judgment in her favor based on the writing requirement and also believed that if the trial court did not, the Court of Appeal or Supreme Court would.

8.

In the Magnolia Acquisition Lollar received a cash down payment and a promissory note for the balance of the sale price. The note to Lollar was secured by a mortgage covering all of the property so that the value of collateral security for the note was equal to or greater than the principal amount of the note. Lollar also had a vendor's lien to secure the credit portion of the sale. Since the note was for a sum equal to the fair value of the property at that time and was secured by a mortgage on the property, the transaction could not be a fraudulent conveyance within the meaning of Louisiana's Revocatory Action, notwithstanding Lucky's frequent assertions to the contrary in his briefs in this Litigation.

9.

After the trial court judgment in Lucky I was issued, the question of an appeal arose. Lollar did not have sufficient resources to pay the premium due for a suspensive appeal bond and therefor was unable to pursue a suspensive appeal of the judgment. The judgment with interest was in excess of $1,800,000.00 and though Lollar disputed this amount the bond premium for a suspensive appeal would have been 10 to 15 percent of that amount annually, or an expense in excess of $180,000.00 for each year until the appellate process was concluded. As a result, Lollar had two choices: file a devolutive appeal or file bankruptcy. She did not wish to file bankruptcy.

10.

During the pendency of the appeal, Lucky chose to seize the promissory note itself at his own risk. We argued to the trial court that the appropriate method of collecting on the note was a garnishment of the maker's payments due under the note, but the trial court did not agree, rejected our argument and ordered the Sheriff to seize the note. Sometime after that seizure, the Sheriff scheduled a Sheriff's Sale at the request of Lucky. Prior to the dates set for the Sheriff's Sale, my firm filed on behalf of Lollar a petition for a preliminary injunction to prevent the sale until our concerns regarding the appraisals delivered in connection of the sale could be heard. The trial court held our petition for injunctive relief without action until the defective Sheriff's Sale was concluded and then dismissed our petition with a notation "moot."

11.

All all times material in connection with the Magnolia Acquisition the Lollars and Magnolia acted in a manner in which they had a legal right to act. The transaction was neither a simulation or fraudulent conveyance. Lollar's net worth on her balance sheet on the day after the transaction, was the same as her net worth the day before the transaction because the secured promissory note was substituted on that balance sheet for the value of the real estate and the face amount of the note was equal to the value of the real estate at that time and secured by a mortgage on the property.

12.

Subsequent to the sale of the note, the Louisiana Second Circuit Court of Appeal reversed the trial court's judgment and entered judgment for Lollar in all respects, finding that the agency as described by Lucky in the Lucky I preceding had to be in writing and was not. The opinion also criticized the trial court for admitting extrinsic evidence and making findings based on the extrinsic evidence adduced by Lucky at the trial in Lucky I. The decision by the Second Circuit was appealed by Lucky by an application for writ of certiorari to the Louisiana Supreme Court which in due course was denied. The Second Circuit judgment then became final.

[SIGNATURE ON NEXT PAGE]

Further Affiant sayeth naught.

_____
Randall Stephen Davidson

SWORN TO AND SUBSCRIBED before me, Notary Public, on this 21st day of January, 2020.

_____
NOTARY PUBLIC
In and for _____, _____
My commission expires: _____
Printed name of Notary: _____
Notary No.: _____

JULIA E. BLEWER
BAR ROLL # 20110
STATE OF LOUISIANA
PARISH OF CADDO