UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| MAGNOLIA ISLAND PLANTATION, L.L.C.; AND BARBARA MARIE CAREY LOLLAR | CIVIL ACTION NO. 5:18-CV-1526 |
| | DISTRICT JUDGE: S. MAURICE HICKS, JR. |
| VERSUS | MAGISTRATE JUDGE: KAREN L. HAYES |
| LUCKY FAMILY, L.L.C., ET AL. | JURY TRIAL DEMANDED |

**MEMORANDUM OF AUTHORITIES BY
LUCKY FAMILY, L.L.C. IN REPLY TO MEMORANDUM FILED AT 105 BY
BARBARA MARIE CAREY LOLLAR AND MAGNOLIA ISLAND PLANTATION,
L.L.C. IN OPPOSITION OF LUCKY FAMILY, LLC'S RULE 56 MOTION FOR
DISMISSAL OF PLAINTIFFS' CLAIMS**

OF COUNSEL:

David M. Touchstone
The Touchstone Law Firm
Louisiana Bar Number 12874
2708 Village Lane
Bossier City, Louisiana 71112
Phone: (318) 752-8080
Facsimile: (318) 752-8426
Email: dmtouchstone@firstcommercetitle.com

COUNSEL FOR LUCKY FAMILY, L.L.C.

i

MAY IT PLEASE THE COURT:

## OVERVIEW

Lucky Family, L.L.C. (hereinafter "Lucky Family") previously filed a Rule 56 Motion to have the Court dismiss all of the claims filed by plaintiffs in this action [see Document 83]. Lucky Family filed a memorandum in support of its Rule 56 Motion [see Document 83-1]. Thereafter, Barbara Marie Lollar (hereafter "Mrs. Lollar) and Magnolia Island Plantation, L.L.C. (hereafter "Magnolia") filed a memorandum [see Document 105] in an attempt to refute the arguments made by Lucky Family in 83-1. Now, Lucky Family will proceed to debunk the arguments of Mrs. Lollar and Magnolia in 105.

### A. *LAW AND ARGUMENT*
### 1.   Mrs. Lollar's Due Process Claim(s)

While Mrs. Lollar in her 105 memorandum seemed to accept, after a certain amount of equivocating, that Lucky Family in 83-1 had correctly identified her due process claims as pertaining to: (a) issuance of the Writ fieri facias, (b) seizure of the Note, and (c) the appraisement process, she briefed the Court only on the appraisement process.  Of course, arguments not briefed are considered as abandoned issues.

### 2.   Post-Judgment vs. Pre-Judgment Due Process

As Mrs. Lollar observed, Lucky Family invoked *Endicott Johnson Corp. v. Encyclopedia Press, Inc.* in support of its position that "post-judgment deprivation claims are not favored in the Fifth Circuit". *Endicott*, as noted by us in 83-1, (Page 4) held that ". . . in the absence of a statutory requirement, it is not essential . . ." that the judgment debtor ". . . be given notice before the issuance of execution . . ." Mrs. Lollar argues that *Endicott* is no longer good law. However, she did not and could not point to any Supreme Court case overruling *Endicott*. In point of fact, the Supreme Court, during its greatest phase of activism, twice passed on

1

opportunities to overrule *Endicott*. In *Hanner v. DeMarcus,* 390 U.S. 736(1968), the high court had granted writs because the Arizona Supreme Court had held as constitutionally sufficient a state procedure that provided for notice of the underlying debt, but no additional notice of intent to execute. Ultimately, the Supreme Court dismissed the writ of certiorari as improvidently granted, with Justices Warren, Douglas, Brennan, and Black dissenting as to the dismissal of the writ. Essentially the same thing happened in *Moya v. DeBaca,* 395 U.S. 825 (1969) when the Supreme Court had granted a writ of certiorari as to the holding of a New Mexico United States District Court. The *Moya* Supreme Court, in a per curiam, Harlan and Brennan dissenting, dismissed the appeal, once again passing on the opportunity to reconsider *Endicott*. Thus *Endicott* survives.

It is true that some federal courts have ruled in cases regarding post-judgment due process issues, claiming to act "predictively", that *Endicott* is no longer good law[1]. The United States Fifth Circuit has not joined in this "predictive repudiation" of *Endicott*. In point of fact, despite Mrs. Lollar's quibbling on its meaning, the Fifth Circuit in *Brown v. Liberty Loan Corp.,* 539 F.2d 1355 (USCA 5, 1976), explicitly declined to view *Endicott* as implicitly overruled by later Supreme Court cases such as *Griffin v. Griffin*. The *Brown* Court stated:

> Brown also contends that the precedential value of Endicott-Johnson is negligible in view of the holding of *Griffin v. Griffin*, 1946, 327 U.S. 220, 66 S.Ct. 556, 90 L.Ed. 635, and the procedural due process analysis adopted by the Supreme Court in later cases.
>
> ***We do not share the appellee's evaluation of the effect of Griffin upon Endicott-Johnson.*** In *Endicott-Johnson* the Supreme Court rejected the contention that due process requires notice and an opportunity for a hearing before a creditor obtains a writ of garnishment issued after judgment to reach the wages of the judgment debtor. The Court stated that:

---

[1] See, e.g., *Duranceau v. Wallace*, 743 F.2d 709 (9th Cir. 1984); *Augustine v. McDonald*, 770 F.2d 1442 (9th Cir. 1985); *Adkins v. Rumsfield*, 464 F.3d 456 (4th Cir. 2006); *Morrell v. Mock*, 270 F.3d 1090 (7th Cir. 2001); *McCahey v.L.P. Investors*, 744 F.2d 543 (2d Cir. 1985).

2

> The established rules of our system of jurisprudence do not require that a defendant who has been granted an opportunity to be heard and has had his day in court, should, after a judgment has been rendered against him, have a further notice and hearing before supplemental proceedings are taken to reach his property in satisfaction of the judgment. (emphasis ours)

The Fifth Circuit has not taken up the issue of post judgment due process deprivation since *Brown* and, thus, in this Circuit the *Endicott* and *Brown* rules are controlling.

### 3. The Appraisal Process and Due Process

In this section, covered at Pages 6 and 7 of Mrs. Lollar's memorandum, at 105, she regales this Court by reciting multiple legal platitudes on the meaning of "property" in the Fourteenth Amendment. After gussying up her brief with a lot of high flown maxims, she then proceeds without the bridge of *any authority,* nor even logical analysis, to the quite remarkable claim that "Mrs. Lollar had a property interest *in the value* attributable to the Note". Poppycock! What Mrs. Lollar had was an item of property, i.e., the Note. Her property, the deprivation of which was guarded by the Fourteenth Amendment, was the Note itself, not the "value of the Note". The Fourteenth Amendment did not protect the *value* of the Note; it protected her from being deprived, without due process, of the Note itself. That protection consisted in requiring that she be provided notice and an opportunity to be heard. She was, both before judgment and after judgment, provided plenty of notice and plenty of opportunity to be heard. As such, she received notice of the seizure (which took place in open court) and notice of her right to appoint an appraiser (a right which she exercised).

In 83-1, we provided this Court with ample authority that due process itself does not require appraisal of an item subject to seizure and sale. But, as Mrs. Lollar would say here, pivoting once again, as she did at Page 8 of 105, her primary claim is about an absence of process, not a claim about a specific sort of process.

3

So, now, she has implicitly acknowledged that she was not entitled by the Constitution to have the Note appraised before the sale, but she never defines what Constitutionally required process was denied to her in the appraisement process. And, after all, isn't this the very heart of her claim? Shouldn't she at least have delineated which Constitutionally protected rule was violated?

But even if she could have articulated a rule that sheltered her, that wouldn't have been the end of the analysis. There are two other considerations.

First, the Fourteenth Amendment requires that before a party comes to federal court attacking state action occurring in a state court, that complainant must prove that he has exhausted the remedies that were available under state law to address his grievance.

> Under federal law, a litigant asserting a deprivation of procedural due process must exhaust state remedies before such an allegation states a claim under §1983.[2]

Second, the Fourteenth Amendment does not give rise to a 1983 action simply because a particular party did not receive all the process that was due. There must be more. His Fourteenth Amendment claim under 1983 does not become choate unless the State which deprived him failed to build into its legal system any remedies to act as safeguards against deprivations. So said the U.S. Supreme Court in *Zinermon v. Burch,* 494 U.S. 113, 1105 Ct. 975, 108 L. Ed 2d 100 (1990), to wit:

> In procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest ***without due process of law*** . . . . . . . The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a

---

[2] *Wax's Works v. City of St. Paul*, 213 F.3d 1016 (USCA 8, 2000); See also, *Raymond v. Bd. of Regents of the Univ. of Minn.*, 847 F.3df 585 (USCA 8, 2017); *Flint Electric Membership Corp. v. Whitworth*, 68 F.3d 1313 (11th Cir. 1995) (per curiam), 77 F.3d 1321 (11th Cir. 1996) (per curiam); *Perez-Ruiz v. Crespo-Guillen*, 25 D.3d 40, 43 (1st Cir. 1994); *New Burnham Prairie Homes Inc. v. Village of Burnham*, 910 F.2d 1474, 1480 (7th Cir. 1990); and *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1998).

4

constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. ***This inquiry would examine*** the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and ***any remedies for erroneous deprivations provided by statute or tort law***. *Id. 125-126* (emphasis ours)

We have already discussed at length in 83-1 the procedural safeguards provided by Louisiana law to address a judgment debtor's claim of an abusive appraisement process. See our discussion in 83-1, at Pages 18-22, specifically the rights that were available to Mrs. Lollar under Louisiana Code of Civil Procedure Articles 2298, 3601, 3602 and 3603. Louisiana supplied Mrs. Lollar with a remedy, had there been an abuse of the appraisement process, which is denied. Mrs. Lollar did not properly avail herself of the remedy afforded her by Louisiana law and, thus, did not exhaust her state law remedies. Further, Code of Civil Procedure Articles 2298 and 3601-3603 provide exactly the type of "remedies" contemplated in *Zinermon*. Her due process claim is not entitled to credence.

### 4. Magnolia's Due Process Claim

As we previously pointed out, in our memorandum filed at 83-1, at Pages 7-10, Magnolia's only legal connection to the thing which was sold at the sheriff sale, i.e., the Note, was that it assumed the indebtedness described in the Note and that property owned by Magnolia secured the indebtedness due under the Note.

As to Magnolia, the only thing sold at the sheriff sale, the Note, had no economic value. The sale of the Note in no way changed Magnolia's economic position. Magnolia owed the same amount one day after the sale (plus two days' interest) as it owed one day before the sale. The U.S. Supreme Court held in its most recent effort to define Fourteenth Amendment "property," in *Town of Castle Rock v. Gonzales,* 545 U.S. 748, 125 S. Ct. 2796, 162 L.Ed. 2d 658 (2005), that the plaintiff's claim against the Town of Castle Rock for damages failed as a due process

5

claim because her claim was founded on a right that was not "property" within the scope of the Fourteenth Amendment. Mrs. Gonzales, in this case, had a restraining order against her estranged husband.  Her husband kidnapped her children and murdered them. After they were kidnapped and apparently before they were murdered, Mrs. Gonzales sought assistance from the Castle Rock police department to enforce the restraining order . The police refused to assist her. She claimed in her action against the Town that the restraining order constituted "property" and that when the town's police refused to assist her that amounted to a deprivation of her "property" right under the restraining order. The Supreme Court responded to this assertion at Page 767 of its opinion as follows:

> ". . . . . the right to have a restraining order enforced does not "have some ascertainable monetary value," as even our "Roth-type property-as-entitlement" cases have implicitly required."

For Magnolia, being only an obligation to pay, the Note had no "ascertainable monetary value" and, thus, is not "property".

Magnolia has failed to explain in its memorandum how it had a property interest in the Note and how the Note had an ascertainable monetary value for Magnolia. Further, Magnolia did not recite a single legal authority in this portion of its brief.

Finally, as we detailed in 83-1, Magnolia did, in fact, receive notice of the sheriff sale.

The Court should reject this specious claim out of hand.

### B. PLAINTIFF'S "RESTITUTION" CLAIM AND ANNULMENT OF SALE

Here, Mrs. Lollar reprises her argument (which she made in 80-1, at Pages 12-18) and which Lucky Family definitively refuted in 97-1, at Pages 11-15, that Lucky Family is duty bound under *Gootee Construction, Inc. v. Amwest Surety Insurance Co.* to return the Note as having received it as a thing not due. But as we explained in 97-1, Lucky Family paid for the

Note, and Mrs. Lollar demanded from Mr. Lucky that payment and has received it. Thus, in effect, Mrs. Lollar has claimed the price Lucky Family paid for the thing, i.e., the Note. Mrs. Lollar cannot have both the price and the thing. Further, as we explained in 97-1, the holding in *Gootee*, the duty to restore as payment of a thing not due imposed on a judgment creditor who receives voluntary payment from a judgment debtor on a money judgment which is subsequently reversed on a devolutive appeal is *not* equivalent to a case in which a judgment creditor seizes the debtor's property, causes it to be sold by execution, and then has his judgment overturned on devolutive appeal. The *Gootee* Court specifically noted this at Page 1207 of their opinion wherein they stated that their ruling was consistent with Louisiana Code of Civil Procedure 2252, comment (d), and with *Bomarito v. Max Barnett Furniture Co.* Of course, these latter authorities evidence the profoundly well-established rule that property sold at a public sale or judicial sale in execution of a judgment, subsequently reversed pursuant to devolutive appeal, is beyond the reach of the judgment debtor; such a sale cannot be annulled unless the court which authorized it was without jurisdiction. Further, such is the rule which is applicable even when the judgment creditor is the person who purchases the property at the sale[3].

Mrs. Lollar, in subparts b and c under Section 1 of her memorandum launches into an excursus of Louisiana community property law and another ad nauseum piercing the veil argument. We are addressing the particulars of these arguments in our memorandum responding to the memorandum of Mr. Lollar and Magnolia in Document 107.

## 2. Mrs. Lollar's Claim that Louisiana Law Otherwise Supports Annulment of the Sheriff Sale

---

[3] In the following cases, *the purchaser at the sheriff sale was the judgment creditor* and the courts, nonetheless, refused to annul the sale or order restitution of the thing sold at the sale: *Holland v. Bryan*, 88 So. 246 (La. 1921); *Jefferson v. Gamm*, 90 So. 682 (La. 1921); *Mountz v. Dyer*, 104 So. 123 (La. 1925): These cases establish the *Erie* rule that a sheriff sale based on a money judgment, subsequently reversed on devolutive appeal, cannot be annulled, even when the purchaser is the judgment creditor.

7

In this section, Mrs. Lollar rehashed her arguments in an attempt to wriggle out of the legal clamp placed on her spurious claims by Louisiana law. Louisiana law is replete with case law, both from its highest court, and the intermediate courts since at least 1921, as stated by the Louisiana Supreme Court in *Jefferson v. Gamm*, 90 So. 682 (1921):

> " . . . . founded upon the doctrine, which is now well settled, that the ***reversal*** of a judgment on a ***devolutive*** appeal does not affect the validity of a sale that was made in execution of the judgment after it had become executory; the only right or remedy of the party aggrieved in such case being to claim the proceeds of the sale.

This Court itself, wearing its *Erie* hat in *Smith v. Landis,* 106 F. Supp. 264 (USDC WD 1952) explicitly and emphatically recognized the validity of the rule above stated in *Jefferson v. Gamm*, that once the property has been sold at an execution sale the only remedy available to a judgment debtor, after the judgment is reversed on devolutive appeal, is to claim the proceeds of the sale from the judgment creditor. Hear this Court's own words in *Smith v. Landis*:

> The devolutive appeal taken from the executory judgment rendered in Suit No. 4686 did not and could not suspend the execution of that judgment. Cf. *Rathborne Lumber & Supply Co. v. Harding,* La.App., 56 So.2d 164; *Gouaux v. Lockport Central Sugar Refining Co*., 156 La. 889, 101 So. 255; and cases cited supra.
>
> The sale made under the executory judgment rendered in Suit No. 4686 was not and could not be invalidated by the reversal of that judgment on devolutive appeal. *Jefferson v. Gamm*, 150 La. 372, 90 So. 682, and cases there cited; *Hollingsworth v. Caldwell*, 195 La. 30, 196 So. 10; *Pettingill v. Hills, Inc.,* 199 La. 557, 6 So.2d 660; *State v. Mutual Inv. Co.,* 214 La. 356, 37 So.2d 817.
>
> x x x x x x x
>
> The jurisprudence of Louisiana indicates that plaintiff's only right or remedy now, if any he had or has, is to claim the proceeds of the sale under attack from Wilson; *Jefferson v. Gamm,* 150 La. 372, 90 So. 682, and cases there cited; . . . . .[4]

From the bountiful citations recited in *Jefferson v. Gamm* and *Smith v. Landis*, the rule is etched in stone under Louisiana law that once property is sold at an execution sale the only

---

[4] We note that this Court examined this rule in *Smith v. Landis* in even more depth, but space does not permit further recitation.

8

remedy available to the judgment debtor is to claim the proceeds of the sale from the judgment creditor. Further, once the judgment debtor claims and receives the proceeds, he is prevented, whether under theories of estoppel, judicial confession, or ratification, from attacking the sale. See *Womack v. McCook Bros. Funeral Home, Inc.,* 193 So. 652 (La. 1940) and the copious authorities recited therein, as demonstrated in our memorandum in 83-1, at Page 17.

Further, when Mrs. Lollar demanded and was paid the proceeds received by Mr. Lucky from the sale, that also terminated her due process attack on the sale. She cannot have her cake and eat it too; she cannot both accept the price of the sale and demand return of the thing sold at the sale.

Additionally, Mrs. Lollar's reliance on *Gootee* to loosen the law's clamp is misplaced, for as we thoroughly demonstrated in our memorandum at 97-1, the Louisiana Supreme Court in *Gootee* explicitly recognized the continuing validity of the rule stated in *Jefferson v. Gamm* by stating at page 1207 of its opinion that under *Bomarito v. Max Barnett Furniture Co.* that "when property sold is under a writ of fieri facias and the judgment is subsequently reversed on appeal, the party's remedy is to sue the original judgment creditor for the price."

### 3. Mrs. Lollar's Claim that Plaintiffs are not Prohibited from Addressing the Appraisal Process in These Proceedings

We will not linger on this section of Mrs. Lollar's memorandum. We simply note here that Mrs. Lollar failed to recite even one authority which disputed those brought forth in Lucky Family's memoranda in 83-1, Pages 18-22, and 97-1, Pages 3-11. But even were Mrs. Lollar to make a cogent argument here, based on sufficient authority, she would nonetheless be unable to sustain her attack, for she took the price money. Taking the money put an end to all of her claims regardless of the sources of those claims.

### 4. Mrs. Lollar's Argument that she has not Ratified the Sheriff Sale

9

Here, Mrs. Lollar makes a distinction without a difference argument. Whether she made her demand in court pleadings or in a letter, she made a demand for the one and only remedy which Louisiana law provides to a judgment debtor after an execution sale – to recover the price of the sale. Mrs. Lollar *has* recovered the price of the sale. CASE CLOSED.

## CONCLUSION

As set forth above all of 42 U.S.C. § 1983 claims made my Mrs. Lollar and Magnolia, and all of the state law claims made by them lack merit. For that reason, this Court should grant a summary judgment in favor of Lucky Family and against Magnolia and Mrs. Lollar dismissing their action as to Lucky Family.

Respectfully submitted,
**The Touchstone Law Firm**

By: /s/ David M. Touchstone
David M. Touchstone
Louisiana Bar Number 12874
2708 Village Lane
Bossier City, Louisiana 71112
Phone: (318) 752-8080
Facsimile: (318) 752-8426
Email: dmtouchstone@firstcommercetitle.com

COUNSEL FOR LUCKY FAMILY, L.L.C.

## CERTIFICATE

I HEREBY CERTIFY that, on January 27, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants by operation of the Court's electronic filing system.

/s/ David M. Touchstone
OF COUNSEL