UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| MAGNOLIA ISLAND PLANTATION, L.L.C.; AND BARBARA MARIE CAREY LOLLAR | CIVIL ACTION NO. 5:18-CV-1526 |
| | DISTRICT JUDGE: S. MAURICE HICKS, JR. |
| VERSUS | MAGISTRATE JUDGE: KAREN L. HAYES |
| LUCKY FAMILY, L.L.C., ET AL. | JURY TRIAL DEMANDED |

**LUCKY FAMILY, L.L.C.'S MEMORANDUM OF AUTHORITIES
IN RESPONSE TO THE
MEMORANDUM FILED BY RONALD LOLLAR AND MAGNOLIA
ISLAND PLANTATION [Document No. 107]
IN OPPOSITION TO LUCKY FAMILY, L.L.C.'S
RULE 56 MOTION FOR SUMMARY JUDGMENT
ON PROMISSORY NOTE**

OF COUNSEL:

David M. Touchstone
The Touchstone Law Firm
Louisiana Bar Number 12874
2708 Village Lane
Bossier City, Louisiana 71112
Phone: (318) 752-8080
Facsimile: (318) 752-8426
Email: dmtouchstone@firstcommercetitle.com

COUNSEL FOR LUCKY FAMILY, L.L.C.

MAY IT PLEASE THE COURT:

NOW INTO COURT, through undersigned counsel, comes LUCKY FAMILY, L.L.C. (hereafter "Lucky Family), which files this memorandum in response to the *Opposition to Rule 56 Motion Filed by Lucky Family, L.L.C. Against Ronald Lollar and Magnolia Island Plantation, L.L.C. For Summary Judgment on Promissory Note* (Doc. No. 107).

## I. INTRODUCTION

In the *Opposition Memo*, Counterclaim Defendants attempt to plant seeds of doubt regarding Lucky Family's entitlement to judgment on the Note through various obfuscatory tactics: masquerading questions of law and conclusory allegations as disputed factual issues, mischaracterizing Lucky Family's arguments, and presenting the Court with absurd interpretations of case and statutory law, and the Note's language.

## II. REFUTATION OF THE COUNTERCLAIM DEFENDANTS' ALLEGED "LIST OF GENUINE ISSUES OF FACT FOR TRIAL"

The *Opposition Memo* sets forth a summation of its "factual disputes."[1] These will be briefly addressed in corresponding order below:

A. This section contains both legal argument and conclusory allegations.[2] None of the material facts regarding the appraisal and sale are in dispute, as the actions of the Sheriff and the third appraiser are a matter of record. The letter from counsel for W.A. Lucky, III to the third appraiser, Patrick Lacour, is a matter of record, as is any correspondence between the Sheriff and Patrick Lacour. The questions of the validity of the sheriff's sale,

---

[1] *See* Doc. No. 107, at pages 2-3.
[2] E.g. "The Sheriff failed in his duty to properly conduct the appraisal and sale of the Note [...] The Sheriff failed to appoint a third appraiser [...] The Lacour appraisal was fraught with errors."

and whether the Sheriff fulfilled his duty under La. R.S. 13:4365, are properly before the Court to decide on summary judgment and will not serve to bar judgment on the Note.[3]

B.  The dispute over whether "Lucky Family is a true third-party purchaser of the Note" is likewise, a question of law. The documentary evidence regarding membership interest in Lucky Family is extensive, and both Vickie Lucky and William A. Lucky, III have given depositions as to their involvement and knowledge of the affairs of Lucky Family. Again, the *Opposition Memo* presents baked-in legal argument and advertises it as "factual dispute."[4] Lucky Family has briefed this Court extensively as to why it was irrelevant whether Lucky Family was a third-party purchaser at the sheriff's sale.[5] Again, these are purely questions of law, properly before the Court on summary judgment.

C.  The *Opposition Memo* references the prepayment of the 2018 installment on the Note alleged as a defense by Mr. Lollar and Magnolia. This is another purely legal question.[6]

D.  Here, Mr. Lollar and Magnolia initially present their argument as to why Lucky Family is not entitled to Holder in Due Course ("HIDC") status. This legal argument will be addressed later in this memorandum.

### III. LAW AND ARGUMENT

#### 1. The *Opposition Memo* Misapplies *Saxena*

---

[3] Further, Mr. Lollar and Magnolia bear the burden of showing that the sheriff's sale was invalid. *See* Doc. No. 97-1 at pages 4-8 for further argument and authority on this matter.

[4] E.g. "Mr. and Mrs. Lucky were equally a judgment creditor as the Lucky I judgment **was subject to the community property regime** under Louisiana law [...] **Louisiana prohibits one from utilizing an L.L.C. to avoid obligations** they would otherwise owe." (Doc. No. 107, p. 2) (emphasis added).

[5] *See* Doc. No. 83-1 at pages 13-14; *See* Doc. No. 97-1 at pages 11-18.

[6] Bafflingly, this section of the *Opposition Memo* presents a factual "[...] dispute of whether Magnolia received Constitutional notice of the seizure and sale of the Note." It is a **FACT** that Magnolia received actual notice of the seizure and sale through its registered agent, J. Davis Powell.

2

The *Opposition Memo* misstates the position Lucky Family has taken regarding *American Bank v. Saxena*, 553 So. 2d 836 (La. 1989). Lucky Family did not argue that it is entitled to summary judgment on the Note merely by production of the instrument and proof of its signatures. Lucky Family presented *Saxena* and its progeny as authorities on burden of proof and presumption. Mr. Lollar and Magnolia have alleged payment as a defense. The line of cases presented by Lucky Family in Document No. 84-1 demonstrate, irrefutably, that under Louisiana law, once Lucky Family proved the validity of the Note's signatures, the burden to prove any defense, including payment, shifted to Mr. Lollar and Magnolia.[7] The burden is on Mr. Lollar and Magnolia to prove the existence of an issue of triable fact. *Nat'l Collegiate Student Loan Trust 2003-1 v. Thomas*, 129 So. 3d 1231, 1232, (La. App. 2nd Cir. 2013). They have not done so.

### 2. The "Nullity" of the Sheriff's Sale is Not an Issue of Triable Fact

Here the Counterclaim Defendants merely re-argue their claims that the sheriff's sale should be annulled. We have discussed this so much elsewhere that it serves no purpose to do so again. But this whole tack is wrong. The question of annulment is about who owns the Note. Ownership of the Note is irrelevant as to the failure to pay it under its terms. Magnolia paid neither Mrs. Lollar, nor Lucky Family the installments as they came due. The Note is in default.

### 3. Mrs. Lollar's Claim for "Restitution" Has Been Satisfied

We have previously addressed this argument, in Document No. 83-1, at Pages 13-17, and in Document No. 97-1, at pages 11-21. Mrs. Lollar's claim for "restitution" of the Note is not a

---

[7] See, *Pannagl v. Kelly*, 142 So. 3d 70, 74 (La. 5th Cir. 2014):

> In *American Bank v. Saxena*, 553 So.2d 836 (La.1989), the Louisiana Supreme Court held that summary judgment is the appropriate procedural device to enforce a negotiable instrument when the defendant establishes no defense against enforcement. ***Once the plaintiff, the holder of a promissory note, proves the maker's signature, or the maker admits it, the holder has made out his case by mere production of the note and is entitled to recover in the absence of any further evidence.*** *Once the plaintiff has met his burden of proof, the burden shifts to the defendant to prove the existence of a triable issue of fact.* (citations omitted) (emphasis ours).

3

remedy permitted by Louisiana law and, further, Mrs. Lollar has surrendered this claim by demanding and receiving the proceeds of the sheriff's sale.

### 4.   Lucky Family Was Not Used to "Circumvent" an Obligation

Both memoranda filed by opposing counsel in response to Lucky Family (Doc. No. 105 and Doc. No. 107) contain legal argument pertaining to a category of cases in the "veil-piercing" realm. These arguments are refuted herein.

Mrs. Lollar, Mr. Lollar, and Magnolia attempt to convince the Court to disregard the juridical personality of Lucky Family in order to retroactively show that the Note was not purchased by a third party at the Sheriff's sale and should be restored to Mrs. Lollar based on the reversal of Lucky-Carr I. We have addressed on several occasions that the law specifically and emphatically denies this relief, and it is thus irrelevant whether or not Lucky Family was a third party.  All of the cases cited by Mr. Lollar and Magnolia can be distinguished from the present case. In *Keller v. Haas*, 202 La. 486, (La. 1943), a co-owner attempted to circumvent his obligation of allowing a fellow co-owner to redeem a tax sale interest by transferring the interest he purchased to a corporation in which he was the sole shareholder. The right to redeem an interest lost at tax sale was not codified at the time,[8] but is now a statutorily protected right. The Louisiana Supreme Court disallowed the corporation's ownership interest, and stated that:

> It is well settled that where an individual forms a corporation of which he is the sole and only stockholder or owns such control of the stock that the act of the corporation is his own, then he may not use the screen of corporate entity to absolve himself from responsibility.

*Id.* at 492.

---

[8] *Keller*, 202 La. 486, at 491:

> These other co-owners have a right to require their co-owner to make them title in the proportion of their former co-ownership; but this **right is not founded upon any codal provision, but on mere equitable considerations**, and, such being the case, must be exercised within a reasonable time or it will be lost. (emphasis ours)

4

In *Glazer v. Comm'n on Ethics for Pub. Employees*, 431 So. 2d 752 (La. 1983), a public employee was statutorily prohibited from engaging in certain business activity, but attempted to circumvent that prohibition by using a wholly-owned corporation. The Louisiana Supreme Court held that the corporate form could not be used to used to circumvent the employee's ethical and legal obligations, and stated:

> If any general rule can be laid down in the present state of authority, it is that a corporation will be looked upon as a legal entity as a general rule and until sufficient reason to the contrary appears, but when the notion of legal entity is **used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law will regard the corporation as an association of persons.**

*Id*. at 758. (emphasis ours)

The Louisiana Second Circuit addressed another of these "circumvention" cases in *Tealwood Props., LLC v. Succ'n of Graves*, 64 So.3d 397 (La. App. 2nd Cir. 2011). The court analyzed *Keller, Glazer*, and other commentary, and ruled that vendors could not escape a cause of action for breach of their contractual obligations under a warranty deed in which they had knowledge that their wholly-owned corporation held a mineral servitude on the subject property. Citing Glenn G. Morris, *Piercing the Corporate Veil in Louisiana*, 52 La. L. Rev. 271 (1991), the *Tealwood* Court stated:

> [...] in the circumvention type of case the court is being asked to disregard the separate existence of a corporation in order to prevent the shareholder of the corporation from getting around some restriction on his own freedom of action.

*Tealwood*, 64 So. 3d 397, 406.

All of the cases cited by Mr. Lollar and Magnolia share a common thread— natural persons intentionally using a corporate entity to circumvent a pre-existing obligation or restriction (whether arising from contract, statutory law, or equitable principles) to "get around some restriction of his own freedom of action."

Where was the restriction on Vickie Lucky's freedom of action? What obligation was she under when she (via Lucky Family) purchased the Note at Sheriff's sale? There was no contract or statute in place which would restrict her from personally taking the very same action. She purchased a Note at sheriff's sale using an entity which had long since been formed to facilitate commercial transactions. She did not, as the *Glazer* Court phrased it, use Lucky Family to "[...] defeat public convenience, justify wrong, protect fraud, or defend crime [...]" *Glazer*, 431 So. 2d 752, 758. She did not "[...] use the screen of corporate entity to absolve [her]self from responsibility." *Keller*, 202 La. 486, 492. At the time of the sheriff's sale, October 24, 2018, the Louisiana Second Circuit Court of Appeals had not even ruled. No Lucky Family member had the slightest idea that the judgment supporting the sheriff's sale would be overturned. How then could there be a public policy violation by Vickie Lucky or Lucky Family?

Further, Lucky Family cannot be an alter ego of Vickie Lucky; Lucky Family has four members. Any of those four members would be within his or her rights if they had purchased the Note at the sheriff's sale— this fact pattern clearly does not resemble a "circumvention case" and this Court should continue to treat Lucky Family as a juridical person distinct from Vickie Lucky and third-party purchaser. By no stretch is Lucky Family assimilable to William A. Lucky, III.

    5.    **Magnolia Remains in Default**

        a.    **Lucky Family is entitled to rights of a Holder in Due Course**

The portion of the *Opposition Memo* which addresses the laws on commercial paper contains more straw men than Lucky Family has space here to address, on top of twisting and mischaracterizing Lucky Family's arguments until they're unrecognizable. The simplicity of Lucky Family's argument by comparison gives some indication of whose side the law is on. There are two links in Lucky Family's chain of reasoning: (1) Mrs. Lollar was a HIDC of the

Note when she received it from Mr. Lollar, and (2) Lucky Family obtained the rights of its predecessor in interest at the sheriff's sale pursuant to La. R.S. § 10:3-302(c).[9] The *Opposition Memo* goes to great lengths to break the first link, even completely misstating the law in some instances. For instance, the *Opposition Memo* cites *Courtesy Fin. Servs., Inc. v. Hughes*, 424 So. 2d 1172 (La. App. 1st Cir. 1982) to stand for the proposition that "Mrs. Lollar's status as original payee means she cannot acquire HIDC status absent acquisition of the note through an intermediary (i.e., a "remitter"), which did not occur here."[10] This is incorrect; *Hughes* explicitly states that a **payee may be a HIDC if it otherwise meets the requirements** for HIDC status, but is not automatically entitled to HIDC status.[11]

The *Opposition Memo* further argues that Mrs. Lollar "obviously cannot be an HIDC with respect to her own claim for restitution or Magnolia's defenses."[12] Learning of a defense after one has already taken an instrument for value, in good faith, and without knowledge does not strip one of HIDC status; that would entirely defeat the purpose of the law! Absent extraordinary proficiency with a crystal ball, Mrs. Lollar could not have had knowledge of the future claims against her when she took the instrument from Mr. Lollar. The Counterclaim

---

[9] La. R.S. § 10:3-302(c) states: "Except to the extent a transferor or predecessor in interest has rights as a holder in due course, a person does not acquire rights of a holder in due course of an instrument taken (i) by legal process or by purchase in an execution, bankruptcy, or creditor's sale or similar proceeding, [...]"

See also § 10:3-302 Comment 5 which states: "Subsection (c) is based on former Section 3-302(3). Like former Section 3-302(3), subsection (c) is intended to state existing case law. It covers a few situations in which the purchaser takes an instrument under unusual circumstances. The purchaser is treated as a successor in interest to the prior holder and can acquire no better rights. **But if the prior holder was a holder in due course, the purchaser obtains rights of a holder in due course.** (emphasis ours)

[10] *See* Doc. No. 107, P. 15.

[11] "In order for a payee to be a holder in due course, all of the basic requirements must be met. A holder in due course is a holder who takes the instrument (1) for value, (2) in good faith, and (3) without notice that the instrument is overdue or has been dishonored or of any defense or claim affecting the instrument. La. R.S. 10:3-302. Thus, a payee who is an immediate party to the transaction is not automatically entitled to holder in due course status."

[12] *See* Doc. No. 107, P. 16.

7

Defendants also argue that Lucky Family cannot become a holder without indorsement; this is nonsense. La. R.S. § 10:3-201 explicitly defines "negotiation" as a transfer of possession, whether voluntary *or involuntary*, of an instrument by a person other than the issuer to a person who thereby becomes its holder. If all negotiations required indorsement, then the "involuntary" part of 10:3-201 would not exist, nor would 10:3-302(c).

Further, the *Opposition Memo* suggests that Lucky Family is asserting rights as a HIDC to shield itself from claims of Mrs. Lollar.[13] Lucky Family has never asserted HIDC status as a defense to any claim of Mrs. Lollar; Lucky Family asserted, and maintains that it is entitled to the HIDC status under R.S. § 10:3-302(c), and thus is not subject to the defense of discharge offered by Mr. Lollar and Magnolia since it took the instrument without knowledge of the eight prepayments. This brings us to the issue of the legal effects of the prepayments.[14]

### b. Counterclaim Defendants Have Misinterpreted the Note's Prepayment Provision

The Note's prepayment provision states as follows:

> Maker may prepay all or any portion of the principal due under this Note without penalty. If the note is prepaid in part, the prepayment amount will be applied to the installments due under the note in inverse order of maturity.

The *Opposition Memo* bends over backwards to find ANY possible interpretation which would allow the series of checks at Doc. No. 107-2 to satisfy the 2018 installment; there is none. The *Opposition Memo* states: "There is no indication that Magnolia was pre-paying principal under the Note." The prepayment provision clearly allows prepayment of principal ONLY, thus the

---

[13] *See* Doc. No. 107, P. 15: "Any HIDC status held by Mrs. Lollar could not be bootstrapped into giving Lucky Family HIDC against Mrs. Lollar's own claims for restitution or rescission of her forced transfer to Lucky Family, which arose after Mrs. Lollar could have been a HIDC."

[14] Throughout these proceedings, Magnolia has claimed entitlement to "equitable restitution." It seems if they were truly concerned with equitable considerations, Magnolia, having knowledge that they had allegedly already made payments on the Note, and being represented at the sheriff's sale through its registered agent and legal counsel, J. Davis Powell, would have announced prior to the sheriff's sale for the benefit of any potential bidders that a prepayment had already been made to the Note's previous holder.

eight prepayments cannot be imputed to satisfy the interest due on the November 2, 2018 payment. Further, the provision explicitly declares that prepayments are to be applied to installments in "inverse order of maturity." The Counterclaim Defendants never even ***attempt*** an explanation as to the meaning of the words "inverse order of maturity." The only reasonable interpretation of this provision is that prepayments are to be entirely applied to reduce the principal on the final balloon payment, due on November 2, 2022.

### c. The Letter from Lucky Family's Counsel is Legally Irrelevant

Counterclaim Defendants have attached as Exhibit 6 to the *Opposition Memo* a letter from undersigned counsel for Lucky Family regarding Magnolia's alleged tender of the 2019 installment payment under the heading "Lucky Family Refused Unconditional Tender Of The 2019 Payment." A more accurate statement would be that Lucky Family ***required*** unconditional payment. It is and has been the position of Lucky Family throughout these proceedings that the Note is in default, and the entirety of the balance accelerated. The letter merely informed Magnolia that this was still our position, and we would accept payment in whatever amount Magnolia wished, but this would not serve to "cure" its default on the Note.

### 6. Lucky Family is Entitled to Attorneys' Fees

A provision for attorneys' fees is included in the Note. It reads:

> Upon such Event of Default, this Note may be placed in the hands of an attorney for collection, and if suit is filed hereon, Maker agrees and is to pay, to Payee or any holder, a reasonable attorneys' or collection fee not to exceed five percent (5%) of the principal amount of the Note.

Accordingly, Lucky Family is owed reasonable attorneys' fees in the amount of five percent (5%) of the principal amount of the Note.

### III. CONCLUSION

This Court should grant judgment in favor of Lucky Family, L.L.C. and against Ronald W. Lollar and Magnolia Island Plantation, L.L.C., a Louisiana limited liability company, in solido, in the principal amount of $1,730,000, with interest at the rate of four percent (4%) per annum thereon from November 1, 2017, until paid, and five percent (5%) on said principal and interest as attorney fees, plus all costs of court.

Respectfully submitted,
**The Touchstone Law Firm**

By: /s/ David M. Touchstone
David M. Touchstone
Louisiana Bar Number 12874
2708 Village Lane
Bossier City, Louisiana 71112
Phone: (318) 752-8080
Facsimile: (318) 752-8426
Email: dmtouchstone@firstcommercetitle.com

COUNSEL FOR LUCKY FAMILY, L.L.C.

### **CERTIFICATE**

I HEREBY CERTIFY that, on January 27, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants by operation of the Court's electronic filing system.

/s/ David M. Touchstone
OF COUNSEL