UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| MAGNOLIA ISLAND PLANTATION, ET AL. | CIVIL ACTION NO. 5:18-CV-1526 |
| VERSUS | DISTRICT JUDGE: HON. S. MAURICE HICKS, JR. |
| LUCKY FAMILY, L.L.C., ET AL. | MAGISTRATE JUDGE: HON. KAREN L. HAYES |

**REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

AYRES, SHELTON, WILLIAMS,
BENSON & PAINE, LLC
   Curtis R. Shelton
La. Bar Roll No. 17137
333 Texas Street, Suite 1400 (71101)
P. O. Box 1764
Shreveport, LA 71166
Telephone: (318) 227-3500
Facsimile: (318) 227-3980
Email: curtisshelton@arklatexlaw.com

WIENER, WEISS & MADISON
A Professional Corporation
   R. Joseph Naus, #17074
   Marjorie Frazier, #32991
330 Marshall Street, Suite 1000 (71101)
P. O. Box 21990
Shreveport, LA 71120-1990
Telephone: (318) 226-9100
Facsimile: (318) 424-5128
E-mail: rjnaus@wwmlaw.com
E-mail mfrazier@wwmlaw.com

ATTORNEYS FOR W. A. LUCKY, III

# TABLE OF CONTENTS

**LAW AND ARGUMENT**........................................................................................................1

Part I. Local Rule 56.2 ..................................................................................................1

Part II. Inaccurate Statements of Facts ........................................................................1

Part III. Defendants' Argument about Sheriff's Fulfillment of Duty ................................3

Part IV. Mrs. Lollar's argument about notice or an opportunity to be heard in regards to the final appraisal ....................................................................................................3

Part V. Plaintiffs do not cite cases that support a civil rights claim ...............................4

Part VI. The holder in due course rules do not create a constitutional claim ................5

Part VII. Abuse of Process.............................................................................................6

Part VIII. There was no stifling of bidding at the sheriff's sale .......................................7

Part IX. Mrs. Lollar has no remaining claim ..................................................................8

Part X.  Mrs. Lollar's arguments that "the Luckys owe an obligation to Restore the Note." ..............................................................................8

Part XI.  Mrs. Lollar's arguments confusing Mr. Lucky with Lucky Family, L.L.C. ....................9

**CONCLUSION** ........................................................................................................................1

## TABLE OF AUTHORITIES

**Statutes and Rules:**

**Federal**

Local Rule 56.2 .................................................................................................................1

**Cases:**

*Armstrong v. Manzo*, 380 U.S. 545, 85 S.Ct. 118, 714 L.Ed.2d 62 (1965) .....................5

*Bailey v. Metro Fed. Sav. & Loan Ass'n of Lake Charles*, 642 F. Supp. 616 (W.D. La. 1986) ......7

*Coleman v. Burgundy Oaks, L.L.C.*, 46,314 (La. App. 2 Cir. 6/8/11), 71 So. 3d 352, 356 ...........10

*Glazer v. Comm'n on Ethics for Pub. Employees*, 431 So. 2d 752, 758 (La. 1983) ......................10

*Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) .......................5

*Hardy v. Gissendaner*, 508 F.2d 1207, 1209 (5th Cir. 1975) ........................................ 5-6

*Hollowell v. Orleans Regional Hosp. LLC*, 217 F.3d 379 (5th Cir. 2000) ......................9

*Keller v. Haas*, 202 La. 486, 490–93, 12 So. 2d 238, 240 (1943) .................................10

*Lambert v. People of State of Ca.*, 355 U.S. 225, 78 S. Ct. 240 (1957) .........................4

*Marshall v. Jerrico*, 446 U.S. 238, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980) .................5

*McCahey v. L.P. Inv'rs*, 774 F.2d 543, 5553 (2d Cir. 1985) ............................................4

*Schweiker v. McClure*, 456 U.S. 188, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982) .................5

*Spillman v. Gasco, Inc.*, 47,085, p. 15 (La. App. 2 Cir. 5/16/12), 110 So. 3d 150, 159, *writ denied*, 2012-1662 (La. 10/26/12), 99 So. 3d 652 ....................................................10

*Strickland v. Alexander*, 153 F. Supp. 3d 1397, (N.D.Ga.), *amended*, 154 F. Supp. 3d 1347 (N.D. Ga. 2015), *and amende*d, 162 F. Supp. 3d 1302 (N.D. Ga. 2015)176 L.Ed.2d 158, ___ (2010) .......................................5

*Tealwood Props., LLC v. Succ'n of Graves*, 64 So. 3d 397 (La. App. 2d Cir. 2011) ...................10

## LAW AND ARGUMENT

**I.     Local Rule 56.2.** Plaintiffs' responses under Local Rule 56.2 to Mr. Lucky' Rule 56.1 statements of facts are (a) that the fact is not disputed; (b) that the fact is "immaterial to the issues before the Court;" (c) an incomplete statement that the fact is not disputed; or (d) argument about the facts.[1] Mrs. Lollar responds to all or some of the facts stating that same are "not disputed" in paragraphs 1-8, 10-25, 27-30, 32-38, 45-54, 56-76, 78-85, and 90-92 (72 of the 93 statements of fact). Rec. Doc. 110-3. Plaintiffs argue that stated facts are "immaterial to the issues before the Court" in response to the facts stated in paragraphs 1-4, 7-10, 19, 20, 22, 23, 52, 57, 76, and 81. Rec. Doc. 110-3. Plaintiffs make a limited statement that facts are "not disputed" or present argument in response to the facts stated in paragraphs 1, 3, 4, 9, 12, 13, 26, 32-45, 47, 52, 53, 55, 56, 59, 76, 77, 79-81, 83, 84, 91 and 93. Rec. Doc. 110-3. In addition, plaintiffs' responses to the facts stated in paragraphs 86, 87, 88, and 90 do not state whether the fact is or is not disputed. Rec. Doc. 110-3.

**II.     Inaccurate Statements of Facts.** Plaintiffs inaccurately state or distort the facts in several instances. Still there are no material facts that are genuinely in dispute.

---

[1] For example, Mr. Lucky's stated fact number 3 was: "On October 30, 2017, four days before Lucky I was to be deemed submitted for a decision, Mrs. Lollar's husband, Ronald Lollar ('Mr. Lollar'), signed papers prepared by Mrs. Lollar's attorney to form Magnolia Island Plantation, L.L.C. ('Magnolia')." Rec. Doc. 84-1, p. 2 of 21 ¶ 3. Plaintiffs' response was: "The timing of when Magnolia was formed is immaterial to the issues before the Court in this matter. It is not disputed that Magnolia was formed by Ronald Lollar." Rec. Doc. 110-3, p. 2 of 20 ¶ 3. Consequently, plaintiffs have not disputed that Magnolia was formed on October 30, 2017, four days before Lucky I was to be deemed submitted for a decision or that the papers that Mr. Lollar signed were prepared by Mrs. Lollar's attorney." This is one of the many instances where plaintiffs do not make a statement that whether the facts asserted by Mr. Lucky as material are in dispute. In all such instances, Mr. Lucky believes that Local Rule 56.2 results in the facts not being disputed by plaintiffs. Whether the asserted facts are material or not is a question addressed to the Court in applying the law.

1

First, in their opposition memorandum,[2] plaintiffs assert: "The property sold serves as collateral to secure the payment of the Note to Mrs. Lollar. At the time of the Sheriff's sale, the value of the collateral had increased beyond the value of the Note . . . ." There is no evidence to support this. Plaintiffs have not provided any expert report concerning the "value of the collateral" at any time.

Second, plaintiffs argue that the Sheriff's office "have described some of the actions by Mr. Lucky and his counsel as 'not normal.'"[3] Plaintiffs cite the deposition testimony of Ms. Jeane Horne. Ms. Horne was being questioned about the October 10, 2018, letter from Mr. Shelton to Mr. Lacour, which was Exhibit 9 to her deposition.[4] Ms. Horne actually testified that she did not know if it was normal procedure for the judgment creditor's counsel to provide information to the third appraiser. *Id.* After saying that, Ms. Horne testified: "This is not normal . . . in our procedure" in response to the question whether it was normal for the judgment creditor's counsel to provide information to this third appraiser.[5] Ms. Horne was talking about the procedures within the Sheriff's office. Ms. Horne also testified that a letter like the October 10, 2018, letter could be sent in every case, and she would not know if it was normal or not.[6]

Plaintiffs argue that Mr. Garland, who appraised for Mr. Lucky, "chose to take the collateral 'out of play' completely based on the clouds on title which Garland admits were

---

[2] *Memorandum Filed by Barbara Marie Lollar and magnolia Island Plantation in Opposition of Lucky Family, L.l.C.'s Rule 56 Motion for Dismissal of Plaintiffs' Claims* (hereinafter "*Plaintiffs' Opposition Memorandum*"), Rec. Doc. 110-2, p. 6 of 31, n. 4.

[3] *Plaintiffs' Opposition Memorandum*, Rec. Doc. 110-2, p. 11-12 of 31.

[4] *Deposition of Jean Horne*, Rec. Doc. 80-3, p. 2 of 6 (24:1-12).

[5] *Deposition of Jean Horne*, Rec. Doc. 80-3, p. 4 of 6 (26:1-10).

[6] *Deposition of Jean Horne*, Rec. Doc. 80-3, pp. 5-6 of 6 (53:22 – 54:8).

2

created by Mr. Lucky."[7] However, Mr. Garland did not testify that he chose to take the collateral "out of play." He simply testified that the collateral was out of play for his appraisal because the notice of lis pendens had been filed.[8] In any event, Mr. Garland's appraisal was not controlling. Any facts concerning Mr. Garland's appraisal cannot result in a genuine dispute.

      **III.    Defendants' Argument about Sheriff's Fulfillment of Duty.** Plaintiffs argue that the Sheriff "did not perform his duty."[9] Mr. Lucky has has addressed this in his *Memorandum in Opposition to Barbara Marie Carey Lollar's Partial Motion for Summary Judgment ("Mr. Lucky's Opposition Memorandum")*.[10]

      **IV.    Mrs. Lollar's argument about notice or an opportunity to be heard in regards to the final appraisal.** Plaintiffs argue: "Mrs. Lollar claims she has been deprived of her property without due process based on the fact that she was not provided notice or an opportunity to be heard in regards to the final appraisal."[11] Mrs. Lollar's argument fails for multiple reasons. First, Mrs. Lollar did not properly avail herself of the procedure to obtain a temporary restraining order against the sale. Mr. Lucky covered this at pages 20-22 of his *Memorandum in Support of Motion for Summary Judgment*.[12] Second, Mrs. Lollar failed to file a proper application for a temporary restraining order, and she failed to seek relief from the state court of appeal when her filing failed. Third, if the Sheriff owed a "constitutional duty" with

---

[7] *Plaintiffs' Opposition Memorandum*, Rec. Doc. 110-2, p. 15 of 31.

[8] *See* <u>Exhibit 1</u> *Deposition of Chad Garland*, Rec. Doc, 110-4, pp. 9-10 of 10; p. 40:19 – 41:9.

[9] Rec. Doc. 110-2, p. 8 of 31.

[10] Rec. Doc. 102, pp. 8-9 of 32; pp. 13-14 of 32.

[11] *Plaintiffs' Opposition Memorandum*, Rec. Doc. 110-2, p. 10 of 31.

[12] Rec. Doc. 84-22, pp. 20-22 of 31.

respect to the sheriff's sale, it was to serve Lollar with a notice to appoint and appraiser. The Sheriff did serve Mrs. Lollar. Mrs. Lollar and Magnolia's lawyer and agent were in attendance at the sale. In addition, Mrs. Lollar's attorney and Magnolia's registered agent were informed of the October 24, 2018, sheriff sale date by letters from the Sheriff's Office dated October 3, 2018, and October 15, 2018.[13]

Plaintiffs have cited no case that says that the sheriff owes a "constitutional duty" with respect to the appointment of the third appraiser. Plaintiffs have cited no authority for a requirement of a "trial of the appraisals." Such is neither required by state law or the constitution. Any "trial" of the appraisals would be by bidding at the sheriff's sale.

V. **Plaintiffs do not cite cases that support a civil rights claim.** Plaintiffs cite several cases for broad principles of law.[14] However, those cases have no specific application to a claim that a complaint about the appraisal process for a sheriff's sale can give rise to a constitutional Due Process or civil rights claim.

*McCahey v. L.P. Inv'rs*,[15] was a case in which the court recognized that due process requires that a judgment debtor be afforded an opportunity for a hearing on an exemption claim. In that case, the court ruled that New York's postjudgment remedies satisfied due process. *Lambert v. People of State of Ca*,[16] was a case where the defendant was convicted of violating the Los Angeles felon registration ordinance. That has nothing to do with appraisement for a

---

[13] Exhibit 28, Rec. Doc. 84-11, pp. 13-15 of 36.

[14] *Plaintiffs' Opposition Memorandum*, Rec. Doc. 110-2, p. 8 of 31, nn. 23-28.

[15] 774 F.2d 543, 5553 (2d Cir. 1985).

[16] 355 U.S. 225, 78 S. Ct. 240 (1957).

sheriff's sale. *Strickland v. Alexander*,[17] concerned the ability to assert exemptions in post judgment garnishment proceedings. *Armstrong v. Manzo*,[18] was an attack on the validity of an adoption. *Marshall v. Jerrico*,[19] was a Fair Labor Standards Act case. *Schweiker v. McClure*,[20] was a lawsuit challenging the constitutionality of hearing procedures available under Part B of the Medicare program, covering "supplementary" medical costs. In *Goldberg v. Kelly*,[21] New York City residents receiving financial aid under federally-assisted program of Aid to Families with Dependent Children or under New York State's general Home Relief program brought suit challenging adequacy of procedures for notice and hearing in connection with termination of such aid. None of these cases are apropos to the validity of the sheriff's sale.

**VI.     The holder in due course rules do not create a constitutional claim.** In arguing a Due Process claim for Magnolia, plaintiffs suggest that the holder in due course doctrine gives Magnolia a due process claim.[22] Plaintiffs cite no authority for this. The holder in due course rule simply does not create a Due Process issue. Consider *Hardy v. Gissendaner*,[23] in which the court explained:

> As the district court noted in its opinion, the rights of such a holder are enforced only after suit is filed and due notice is given to the maker. Thus, contrary to plaintiffs' contentions, such rights do not deprive the maker of a hearing but contemplate invocation only after opportunity is offered the maker for

---

[17] 153 F. Supp. 3d 1397, (N.D.Ga.), *amended*, 154 F. Supp. 3d 1347 (N.D. Ga. 2015), *and amende*d, 162 F. Supp. 3d 1302 (N.D. Ga. 2015).

[18] 380 U.S. 545, 85 S.Ct. 118, 714 L.Ed.2d 62 (1965).

[19] 446 U.S. 238, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980).

[20] 456 U.S. 188, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982).

[21] 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

[22] *Plaintiffs' Opposition Memorandum*, Rec. Doc. 110-2, p. 14 of 31.

[23] 508 F.2d 1207, 1209 (5th Cir. 1975).

> a hearing, thus providing ample due process. . . .

The court also explained:

> There has been no showing of interference by the State with appellants' property rights which would constitute state action and justify a Fourteenth Amendment claim. Appellants contend that the enactment of the state statute coupled with the necessity of state judicial action for its enforcement amount to state action. They cite in support of their contention the case of *Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), in which the Supreme Court held that enforcement by state courts of certain private agreements constituted state action. The important distinction between this case and *Shelley*, which concerned an attempt to apply restrictive property covenants against members of the Negro race, is the complete lack of discrimination in the Alabama holder-in-due-course law, applying as it does without distinction to race, creed, sex or financial status of the individual. In *James v. Pinnix*, 5 Cir., 1974, 495 F.2d 206, we upheld the constitutionality of a self-help automobile repossession statute which afforded no pre-seizure notice or hearing, concluding that the mere existence of a permissive state statute was insufficient to constitute state action. A fortiori, where notice and hearing is implicit in the statute, there is no proper basis for a Fourteenth Amendment claim.

*Id*. at 1210-11. Magnolia simply has no Due Process (civil rights) claim.

**VII.    Abuse of Process** Mr. Lucky has already addressed Mrs. Lollar's abuse of process claim.[24] Mrs. Lollar cites no case that suggests that the elements of an abuse of process claim are met in this case. Mr. Lucky filed actions in Lucky I and Lucky II based on Mrs. Lollar's conduct in trying to shed herself of her property immediately before a judgment was rendered against her. Lucky II was filed after the judgment had been rendered. When Mr. Lucky could no longer pursue those claims because the judgment in his favor in Lucky I was reversed, he dismissed those claims and cancelled the notices of lis pendens as requested.

Plaintiffs argue that "Magnolia's oil and gas royalty income was suspended until the lis pendens was removed and it lost a lease offer for the same reason."[25] However, Plaintiffs do not

---

[24] *Memorandum in Support of Motion for Summary Judgment*, Rec. Doc. 84-22, pp. 24-25 of 31.

[25] *Plaintiffs' Opposition Memorandum*, Rec. Doc. 110-2, p. 18 of 31.

6

show that Magnolia did not receive the oil and gas royalty income after the notices of lis pendens were cancelled. Further, Magnolia still owns whatever mineral rights it had. Plaintiffs, who have provided no expert report concerning leasing prospects or a lack thereof, cannot demonstrate that Magnolia has lost anything. Plaintiffs' argument that Mr. Lucky "sought to choke Magnolia's ability to pay the Note to increase a chance for default"[26] is wholly unsupported. Finally, Magnolia has demonstrated that it does not intend voluntarily to pay the Note.

**VIII. There was no stifling of bidding at the sheriff's sale.** Plaintiffs cite cases that hold that a sheriff's sale may be set aside where there is stifling of the bidding at the sale.[27] For example, in *Bailey v. Metro Fed. Sav. & Loan Ass'n of Lake Charles*,[28] the court nullified the judicial sale ordered by it because the receiver's agents advised the public that it would bid certain amount and that it had binding contract to sell properties at issue. The court explained:

> From the numerous depositions and affidavits on file, it is clear that the retained broker for the FSLIC, Daniel Flavin, told a number of potential bidders that the FSLIC was going to bid the property up to $2.2 million in order to obtain it for sale to Mr. Fortune in order to support its binding purchase-sale agreement with him and in order to protect its mortgage interests.
>
> After a close and careful review of the affidavits and deposition testimony on file, this Court has no difficulty in finding that, as a matter of fact, the conduct of Daniel Flavin, as retained broker for the FSLIC, had the effect of deterring and discouraging potential purchasers from placing bids at the public Marshal's sale held on February 27, 1985. . . .

*Id*. at 619. The court continued:

> . . . The established laws of Louisiana and other jurisdictions clearly set forth that "any misinformation purposely or mistakenly given by which bidders are kept from attending or bidding, or any conduct on the part of those actively engaged in the selling or bidding that tends to prevent a fair, free, open sale, or

---

[26] *Id.*

[27] *Plaintiffs' Opposition Memorandum*, Rec. Doc. 110-2, p. 19 of 31.

[28] 642 F. Supp. 616 (W.D. La. 1986).

stifle or suppress free competition among bidders, vitiates the sale and constitutes ground for setting it aside on the complaint of the injured person." . . .

*Id*. at 621. As distinguished from *Bailey*, there is nothing in this case to indicate that Mr. Lucky made any communication to prospective bidders to stifle bidding. *Bailey* and the cases on which it relies are simply not applicable.

      **IX.**    **Mrs. Lollar has no remaining claim.** Mrs. Lollar argues that she did not ratify the sheriff's sale.[29] Mrs. Lolllar argues that the letter sent for her demanding payment of the net proceeds of the sheriff's sale was "not a claim that was made judicially, in the sense required by the jurisprudence . . . ."[30] In fact, the letter sent on Mrs. Lollar's behalf specifically referenced Lucky I.[31] Mrs. Lollar was asserting the one claim that she did have, her claim for the return of a payment of a thing not due, as explained by Mr. Lucky in *Mr. Lucky's Opposition Memorandum*.[32] Whether on account of ratification or the satisfaction of Mrs. Lollar's claim for the return of a payment of a thing not due, Mrs. Lollar simply has no claim.

      **X.**    **Mrs. Lollar's arguments that "the Luckys owe an obligation to Restore the Note."** These arguments are addressed in *Mr. Lucky's Opposition Memorandum*. There is no claim for "restitution of the note."[33] There is no claim for unjust enrichment.[34] There can only have been a claim for payment of a thing not due, i.e. the net proceeds from the sheriff's sale.

---

[29] *Plaintiffs' Opposition Memorandum*, Rec. Doc. 110-2, pp. 19-21 of 31.

[30] *Plaintiffs' Opposition Memorandum*, Rec. Doc. 110-2, p. 20 of 31.

[31] Exhibit 51, Rec. Doc. 84-18.

[32] *Mr. Lucky's Opposition Memorandum*, Rec. Doc. 102, pp. 20-21 of 32.

[33] *Mr. Lucky's Opposition Memorandum*, Rec. Doc. 102, pp. 23-24 of 32.

[34] *Mr. Lucky's Opposition Memorandum*, Rec. Doc. 102, pp. 24-26 of 32.

**XI. Mrs. Lollar's arguments confusing Mr. Lucky with Lucky Family, L.L.C.**

Mrs. Lollar fights the facts which clearly demonstrate that Lucky Family, L.L.C. is a separate legal entity. At footnote 53, Mrs. Lollar cites the fact that Mr. Lucky was a manager of Lucky Family, L.L.C. in 1998. Mrs. Lollar ignores the fact that the evidence shows that Mr. Lucky was not a manager of Lucky Family, L.L.C. from when he ceased to be a member as documented by Exhibit 63.[35]

Mrs. Lollar also argues in footnotes 54 and 55 that Mr. Lucky acted as agent for Lucky Family, L.L.C. at a sheriff's sale, was appointed as an agent in 2012,[36] and signed bank documents to be an authorized signer on a bank account.[37] Acting as an agent for Lucky Family, L.L.C. on those occasions does not make Mr. Lucky its manager or give him control of the company. These documents are signed by Mrs. Lucky, the company's manager, and its other members to authorize Mr. Lucky to act in specific matters. Futher, it matters not that Lucky Family, L.L.C. loaned money to Coyote Land Co., a separate legal entity.

Mrs. Lollar has not shown that "veil piercing" is appropriate in this case. Plaintiffs cite *Hollowell v. Orleans Regional Hosp. LLC*,[38] a case where the court upheld a jury verdict. However, in that case, the court explained that the jury was presented with ample evidence in which to find that the individual defendants exercised dominion and control over the company, held themselves out as the owners and directors, controlled decisions of the enterprise; profited from the enterprise at the expense of their employees; and received distributions. *Id*. at 387. The

---

[35] Exhibit 63, Rec. Doc. 84-19, pp. 24-25 of 35.

[36] Exhibit 70, Rec. Doc. 84-21, p. 25 of 25.

[37] Exhibit 5, Rec. Doc. 110-8.

[38] 217 F.3d 379 (5th Cir. 2000).

9

court noted the owners' ability to receive a $1.5 million distribution on the eve of ORH's shutdown. *Id*. Further, the owners charged for the purchase and maintenance of an airplane which was solely for their personal use. *Id*. at 388.

This case is also not like *Keller v. Haas*.[39] In that corporate case, the court disregarded the corporate entity between the corporation and its sole shareholder. Mr. Lucky is not a member of Lucky Family, L.L.C., and is certainly not shown to be its sole member. *Glazer v. Comm'n on Ethics for Pub. Employees*,[40] was also a wholly owned and controlled corporation.

*Tealwood Props., LLC v. Succ'n of Graves*,[41] was a case where the Graves, in their personal capacities, warranted a sale of the a tract of lands unencumbered by any existing mineral servitude, and then asserted that they simultaneously retained full ownership of the right to explore for minerals by virtue of their corporation's mineral servitude. There are no such facts in this case. Further, *Tealwood* appears to be limited to its facts as illustrated by *Spillman v. Gasco, Inc.*[42] The same thing is true of *Coleman v. Burgundy Oaks, L.L.C.*,[43] in which the plaintiffs had alleged that two entities were controlled by the same person, operated out of the same office, shared common managers and directors, shared a common administration, and had a centralized accounting system. Facts like those are simply not present here.

**CONCLUSION.** Mr. Lucky should have summary judgment in his favor.

---

[39] 202 La. 486, 490–93, 12 So. 2d 238, 240 (1943).

[40] 431 So. 2d 752, 758 (La. 1983).

[41] 64 So. 3d 397 (La. App. 2d Cir. 2011).

[42] 47,085, p. 15 (La. App. 2 Cir. 5/16/12), 110 So. 3d 150, 159, *writ denied*, 2012-1662 (La. 10/26/12), 99 So. 3d 652 ("*Tealwood Properties, supra*, is factually inapposite, and the case presents none of the normal grounds for piercing the corporate veil. Glenn G. Morris, Piercing the Corporate Veil in Louisiana, 52 La. L.Rev. 271 (1991).").

[43] 46,314 (La. App. 2 Cir. 6/8/11), 71 So. 3d 352, 356.

Respectfully submitted,

AYRES, SHELTON, WILLIAMS,
BENSON & PAINE, LLC


By: /s/ Curtis R. Shelton
         Curtis R. Shelton
La. Bar Roll No. 17137
333 Texas Street, Suite 1400 (71101)
P. O. Box 1764
Shreveport, LA 71166
Telephone: (318) 227-3500
Facsimile: (318) 227-3980
Email: curtisshelton@arklatexlaw.com

WIENER, WEISS & MADISON
A Professional Corporation


By: /s/ R. Joseph Naus
     R. Joseph Naus, #17074
     Marjorie Frazier, #32991
330 Marshall Street, Suite 1000 (71101)
P. O. Box 21990
Shreveport, LA 71120-1990
Telephone: (318) 226-9100
Facsimile: (318) 424-5128
E-mail: rjnaus@wwmlaw.com
E-mail mfrazier@wwmlaw.com

ATTORNEYS FOR W. A. LUCKY, III