UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| MAGNOLIA ISLAND PLANTATION | § | CIVIL ACTION NO: 5:18-cv-01526 |
| L.L.C. and BARBARA MARIE CAREY | § | |
| LOLLAR | § | |
|       Plaintiffs | § | |
| | § | |
| VS | § | CHIEF JUDGE S. MAURICE HICKS, JR. |
| | § | |
| LUCKY FAMILY, L.L.C., W.A. LUCKY, | § | |
| III, and BOSSIER PARISH SHERIFF | § | |
| JULIAN C. WHITTINGTON | § | |
| | § | MAGISTRATE JUDGE KAREN HAYES |
|       Defendants | § | Jury Trial Demanded |

**BARBARA MARIE LOLLAR'S REPLY MEMORANDUM TO
LUCKY FAMILY, L.L.C.'s *OPPOSITION TO BARBARA MARIE CAREY LOLLAR'S
MOTION FOR PARTIAL SUMMARY JUDGMENT***

RESPECTFULLY SUBMITTED by:


/s/ J. Davis Powell
**DAVIDSON SUMMERS, APLC**
Randall S. Davidson, LSBA No. 4715, T.A.
J. Davis Powell, LSBA 33631
Andrew D. Martin, LSBA No. 34947
Harold R. Bicknell III, LSBA 36801
330 Marshall Street, Suite 1114
Shreveport, Louisiana 71101
Ph: (318) 424-4342; Fax: (318) 226-0168
Email: rsdav@davidsonsummers.com
      dpowell@davisonsommers.com
      dmartin@davidsonsummers.com
      hbicknell@davidsonsummers.com

*Counsel for Barbara Marie Lollar*

1

Lucky Family's *Opposition to Barbara Marie Carey Lollar's Motion for Partial Summary Judgment* (the "Opposition")[1] attempts to mix Mrs. Lollar's claim for annulment of the Sheriff's sale with her claim for restitution.  Mrs. Lollar's motion delineated two separate grounds for summary judgment: first, that the sheriff's sale was not executed in accordance with statutory requirements, requiring an annulment of the sale,[2] and, second, that Mrs. Lollar is entitled to restitution of the promissory note (the "Note") seized under the reversed judgment in Lucky I.[3]

Before beginning our reply on each topic we will address Lucky Family's odd suggestion that the absence of summary judgment motions on all remaining allegations by the plaintiffs is indicative of abandonment of those claims.[4]  This is an absurd argument that parties must litter the court's docket with dispositive motions regardless of whether summary judgment is appropriate.[5] Summary judgment motion is not a mandatory stop for all issues prior to trial.  In fact, the granting of summary judgment is the exception rather than the rule where there is no genuine dispute as to any material fact *and* the movant is entitled to judgment as a matter of law.[6]  Lucky Family's awkward suggestion that plaintiffs must be "stealing away in the night and folding their tents"[7] is a desperate jab at the serious allegations presented in plaintiffs' *Amended and Restated Complaint*.[8]  Lucky Family was the sole bidder ($105,000) for the Note because of the machinations of Mr. Lucky and his counsel in chilling the sale and improperly manipulating the

---

[1]      **Rec. Doc. 97.**

[2]      **Rec. Doc. 80**, p. 2-3.

[3]      **Rec. Doc. 80**, p.3-4.  In addition to grounds for annulment set forth in Mrs. Lollar's motion, other grounds for annulment have been alleged and are supported such as "chilling" the sale as well as fraud and ill-practices by the Judgment Creditor.

[4]      **Rec. Doc. 97-1** at p. 1-2.

[5]      Lucky Family filed 2 Rule 56 motions on its own (**Rec. Doc. 83 and 84**), collectively attempting to address a wide swath of issues regardless of apparent factual disputes which plaintiffs pointed out in their responsive briefs (**Rec. Docs. 105** and **107**, respectively).

[6]      See *Lovable Co. v. Honeywell, Inc*., 431 F.2d 668, 670 (5th Cir. 1970) ("the granting of a motion for summary judgment is the exception rather than the rule.")

[7]      **Rec. Doc. 97-1** at p. 2.

[8]      **Rec. Doc. 51**.

2

appraisal process.  Lucky Family is now trying to enforce Mrs. Lollar's Note for $1.7 million

dollars to turn a ***1600% profit***.  Mr. and Mrs. Lucky lost their lawsuit against Mrs. Lollar, and now

seek the Note as a secondary avenue to get relief the court summarily denied.  It is no surprise

Lucky Family must deflect from its attempted enrichment with such unjustified arguments.

I.     **Annulment of the Sheriff's Sale Due to Lack of Third Appraisal:**

Judicial sales may be set aside and declared null as set forth in La. R.S. 9:3169.[9] A sheriff's

sale can be annulled in cases where there is an improper appraisal, or a complete lack of appraisal.

*Tucker v. New Orleans Laundries, Inc*., 145 So. 2d 365, 372 (La. App. 4 Cir. 1962); *Jones v.*

*Alford*, 172 So. 213; *Stockton v. Stanbrough*, 3 La. Ann. 390, 390–91 (1848); *Phoenix Bldg. &*

*Homestead Ass'n v. Meraux*, 189 La. 819, 824 (La. 1938).  Lucky Family argues against a right to

annulment by first citing to La. R.S. 9:3170 and La. CCP 2371 as support of the "legislative

intentionality of finality."[10]  Neither authority speaks to the finality of a sale by execution, nor do

they suggest a legislative intent of such.  Lucky Family proceeds to cite cases which address attacks

on execution sales however none support a prohibition on annulment.  The cases of *Tuttle*[11] and

*Stockman*[12] cited by Lucky Family discuss the presumption of validity for execution sales, but only

when such sales are valid on their face, only then will the burden shift to the party claiming

invalidity.[13]  These cases do not prohibit an attack of the validity of an execution sale and even

suggests how the burden of proof for such an issue may shift.  Lucky Family next presents *Sellers*

case which also assumes the potential to overturn an execution sale.[14]  Lucky Family incorrectly

---

[9] See also *Progressive Bank & Tr. Co. v. Vernon A. Guidry Contractors, Inc*., 504 So. 2d 997, 999 (La.
App. 1 Cir. 1987).
[10] **Rec. Doc. 97-1** at p. 4-5.
[11] 430 So. 2d 269 (La. App. 5 Cir. 1983).
[12] 277 So. 2d 504 (La. App. 1 Cir. 1973).
[13] *Id.* at p. 5-6.
[14] 660 So. 2d 499 (La. App. 3 Cir. 1995).

argues that, similar to Mr. Sellers, Mrs. Lollar was served with "all of the notices."[15]  It is true that Mrs. Lollar was provided a notice of seizure and a notice to appoint her appraiser.   However, Mrs. Lollar was locked out of the process beyond this point when the Sheriff allowed Mr. Lucky's counsel to handle all aspects of selecting and informing the required "third appraiser".   The purported third appraisal was a determinative event as to the sale of Mrs. Lollar's property.[16]  The event is a statutorily required duty of the Sheriff, but such duty was not undertaken by him as set forth in Mrs. Lollar's original memorandum in support of this motion.[17]  Mrs. Lollar was not given the notice or opportunity to be heard regarding the third appraisal as that was exclusively granted to Mr. Lucky.   In turn Mr. Lucky's counsel provided the "third appraiser" with selective information, a letter filled with derogatory commentary about Mrs. Lollar and instructions on what the appraiser should (and should not) consider.[18]  Lucky Family's excerpts from *First Federal Savings & Loan Assoc*.[19] as well as *Bank of New Roads*[20] highlight this exclusion of Mrs. Lollar from the process.  The Court in *First Federal* noted that the appellants attacking an execution sale in that matter "were notified of e*ach and every step* in the seizure and sale proceeding."[21]  *Bank of New Roads* used similar language regarding "each and every step." In contrast here, where either the Sheriff failed to take the required steps at all, or Mrs. Lollar was excluded from the process which Mr. Lucky controlled exclusively.  In either instance, the sale is subject to annulment.

---

[15] **Rec. Doc. 97-1** at p. 8.
[16] See **Rec. Doc. 105,** plaintiffs' response memorandum to Lucky Family's Rule 56 motion at pages 5-11 and 24-25.
[17] **Rec. Doc. 80-1** at p. 6-12.
[18] See Rec. **Doc. 51-13** for copy of the October 13, 2018 letter from Curtis Shelton to Patrick Lacour.
[19] *First Federal Savings & Loan Association v. Morrow*, 469 So. 2d 424 (La. App. 3 Cir. 1985), cited by Lucky Family at p. 8 of **Rec. Doc. 97-1**.
[20] *Bank of New Roads v. Livonia Smith, Inc.* 527 So. 2d 1132 (La. App. 1 Cir. 1988).
[21] *First Federal Savings & Loan Association, supra* (Emphasis ours).

4

Lucky Family also likens the presence of the debtor at the sale in *Sellers* to the presence of Mrs. Lollar's counsel at the Note's sale stating "Mr. Powell raised no protest or objection at the sale."[22]  However, only a few lines up from this argument Lucky Family recognized that counsel for Mrs. Lollar filed paperwork just prior to the sale to enjoin the sale so that certain issues could be addressed.  The state court failed to address the issues presented by Mrs. Lollar at all, save for writing the word "moot" on a proposed order the day after the sale.[23]  Under these facts Mrs. Lollar is forced to address the annulment of the October 24, 2018 Sheriff's sale in the current matter and has a right to do so under the law.

Lucky Family's "Erie rules" for this Court[24] are not singularly determinative of whether a sale may be annulled or upheld, but are a limited survey of factors which courts in this State have considered when addressing the validity of execution sales.  There is no question that the right to have a Sheriff's sale annulled exists and it is inaccurate for Lucky Family to state that "no Louisiana court has ever ruled that defects in the appraisement process, even fundamental defects, will support an action to annul the judicial sale."[25]  For one, many cases have held that appraisal defects have the potential to annul a judicial sale. For example, See *Stockton, Tucker and Phoenix Bldg., supra.* Additionally, Mrs. Lollar previously discussed *Oak Cliff Bank & Tr. Co. v. Kittle*, 309 So. 2d 742, 743 (La. Ct. App. 1975) in her original brief as recognizing the ability of a debtor to seek nullity of a judicial sale due to defects in the appraisal process.[26]  Louisiana courts have certainly annulled a judicial sale based on appraisal defects.  For example, in the case of *Ford Motor Credit Co. v. Blackwell*, 295 So. 2d 522 (La. Ct. App. 1974) the appellant presented issues

---

[22] Rec. Doc. 97-1 at p. 8.
[23] See **Rec. Doc. 84-16 at Exhibit 43** for a copy of the Proposed Order with "moot" written on it.
[24] Rec. Doc. 97-1 at p.9.
[25] *Id*. at p. 10.
[26] See discussion of *Oak Cliff* at Rec. Doc. 80-1 at p. 6.

with the judicial sale of his vehicle citing deficiencies in the appraisal process including the fact that the appraisers never saw the vehicle[27] and otherwise a true and just appraisal was not made in accordance with La. R.S. 13:4365.[28]   The Court in *Ford Motor Credit Co.* held the sale of appellant's vehicle was invalid for these reasons. *Id.*

Lucky Family criticizes Mrs. Lollar's citation to *Baumann v. Fields*[29] in her original brief in support of this motion as not supporting an actual annulment of a Sheriff's sale.  For one, whether the annulment was successful does not erode the availability of annulment as a remedy. Otherwise, Lucky Family misreads Lollar's citation to *Baumann* as it was included as authority supportive of the fact that property sold at a judicial sale under a writ of fieri facias must be appraised according to law prior to the sale.[30]

The ability for a debtor to nullify a judicial sale has been established.  The burden was on Lucky Family to provide contrary authority which expressly prohibits such relief or to argue that facts supportive of annulment are disputed. This has not been done. Lucky Family's Opposition also did not develop any argument that the statutory requirements were followed by the Sheriff.

Beyond issues with the appraisal, Sheriff's sales can also be annulled for fraud or ill practices. *Ellerd v. Williams*, 364 So. 2d 648, 650 (La. App. 2 Cir. 1978), or in instances where the sale has been chilled. *Swain v. Kirkpatrick Lumber Co.*, 143 La. 30, 38, 78 So. 140, 143 (La. 1918).  Facts supportive of each of these grounds for annulment are present in this matter as set forth more fully in plaintiffs' *Opposition to W.A. Lucky, III's Motion for Summary Judgment.*[31]

---

[27] Compare to the fact that the purported third appraiser in this matter, Patrick Lacour, also never saw the Note which he claims to have appraised and instead relied upon information from Mr. Lucky's counsel. (See **Rec. Doc. 71-5, Exhibit 4, at p. 77** of Deposition of Patrick Lacour)
[28] *Id.* at 524.
[29] *Baumann v. Fields*, 332 So. 2d 885, 888 (La. Ct. App. 1976)
[30] **Rec. Doc. 80-1** at p. 5.
[31] **Rec. Doc. 106**, with a pending correction to the title of that document found at **Rec. Doc. 110**.

## II.  Mrs. Lollar's Claim For Restitution Of The Note.

It cannot be disputed that a claim of restitution exists by virtue of the judgment from Lucky I being reversed in its entirety.[32]  The issues disputed by Lucky Family appear to be (a) the mode of restitution which is available to Mrs. Lollar and (b) whether Lucky Family, L.L.C. as an entity owes a restitution obligation versus if Mr. and Mrs. Lucky purchased the Note themselves.

### A.  Mode Of Restitution:

Lucky Family takes issue with Mrs. Lollar's reliance on the ruling in *Gootee Const. v. Amwest Sur. Ins. Co*.[33] to support restitution of the physical Note itself. Lucky Family attempts to narrow *Gootee's* reliance upon Civil Code Article 2299 to situations involving receipt of a "payment", and then more narrowly to a "voluntary" payment.[34]  However, it is only through a strained interpretation of the word "delivery" and  the supposition of "counsel's mind" that Lucky Family supports its argument.[35]  Article 2299, and the restitution jurisprudence is not limited to voluntary transfers.[36] The case of *Lissi Realty*, also cited by Lucky Family, ordered restitution where a judgment creditor eagerly seized a debtor's bank account, and also removed funds, during the pendency of a devolutive appeal.  The creditor in *Lissi* took the risk during appeal that he may owe restitution for the amounts taken if his judgment is overturned.  The judgment creditors in our matter similarly rushed to seize and sell Mrs. Lollar's Note, and accepted the same obligation to

---

[32] *Gootee Construction, Inc. v. Amwest Surety Ins. Co.,* 856 So. 2d 1203, 1206 (La. 2003); *Henry Waters Truck & Tractor Co., Inc. v. Relan*, 277 So 2d 463, 467 (La. App. 1st Cir. 1973).  "[A] defendant who has suffered seizure under an invalid judgment has a right to recover that which was wrongfully seized." *Coleman Oldsmobile, Inc. v. Cobb*, 366 So. 2d 994, 996 (La. App. 1st Cir. 1978); *Lisi Realty, Inc. v. Plaisance,* 306 So. 2d 920, 921 (La. Ct. App. 1974), *writ denied,* 310 So. 2d 640 (La. 1975). See also *Classic Syndicate, Inc. v. Bethard*, 139 F.3d 899 (5th Cir. 1998)

[33] 856 So. 2d 1203 (La. 2003)

[34] See **Rec. Doc. 97-1** at p. 12.

[35] *Id*. at p. 12.  "Now, to counsel's mind, the word "delivery" presupposes a voluntary rendition, or voluntary handing over of the things or money."  Thus, Lucky Family's argument that Article 2299 is limited to "voluntary handing over" finds its basis in its counsel's own interpretations of the language.

7

restore upon the reversal of the Lucky I judgment. *Gootee* applies the principles set forth in Civil Code Article 2299 while also citing to the holding in *Lissi*.[37]   Lucky Family argues that *Gootee's* citation to Civil Code of Procedure art. 2252, comment (d), and the comment's mention of *Bomarito v. Barnett Furniture Co*., limits Mrs. Lollar's restitution to only proceeds from the sale itself.  However, *Gootee's* reliance upon article 2299 evidences the breadth of restitution modes available to restore property which is taken by a judgment creditor.[38] Lucky Family's opposition also takes issue with whether or not the Louisiana Supreme Court case of *Graham v. Eagan* has been overruled.  Mrs. Lollar has argued that *Graham* was not overturned by *Pasley v. McConnell*, as *Pasley* only distinguished *Graham's* allowance for restitution of property sold in instances of partial judgment reversal.[39]   *Pasley* did not overrule *Graham's* holding in regards to instances of a complete reversal.[40]   *Gootee's* later reliance upon article 2299 supports restitution against a creditor which received a payment *or a thing* not owed to them, similar to the holding in *Graham*. Lucky Family cites to intermediate cases occurring long before *Gootee* which failed to follow *Graham*.  We do not dispute occurrence of those cases, but would argue that a debtor's ability to have property restored upon reversal of a judgment is ultimately supported by *Gootee*.

One of the intermediate cases relied upon by Lucky Family is *Wetherbee v. Lodwick*.[41] *Lodwick* was decided long before *Gootee, supra,* under prior versions of various statues and code articles relating to judicial sale, and addressed the sale of immovable property.  The judicial sale of immovable property is distinguishable from that of a promissory note.  Stability of title as to

---

[37] *Gootee* at 1206.
[38] Restitution of the Note to Mrs. Lollar is a central issue within Mrs. Lollar's *Memorandum in Support of Motion for Partial Summary Judgment* at **Rec. Doc. 80-1**, as well as her opposition at **Rec. Doc. 105** to Lucky Family's Rule 56 motion. Mrs. Lollar incorporates those arguments herein by reference.
[39] **Rec. Doc. 80-1** at p. 14-16.
[40] *Id*.
[41] 193 La. 671 So. 671 (1940)

immovable property is an important public policy in Louisiana. See *Gulf Oil Corp. v. State Mineral Bd.,* 317 So. 2d 576, 597 (La. 1974).  While the sale of an immovable is in exchange for money in the hands of the creditor, the Note is "an unconditional promise or order to pay a fixed amount of money. ..."  La. R.S. 10:3-104.  Even under the limitations on the modes of restitution argued by Lucky Family, which we deny, *Gootee* would still support restoration of any money received in the hands of the seizing creditor by virtue of holding the Note. (When a judgment creditor obtains money in execution on a judgment under devolutive appeal, such creditor is subject to an action for the return of the funds received upon judgment reversal.[42])  Therefore, Lucky Family has purported to acquire a right to receive ***payment of over $1.7 million dollars*** and any money Lucky Family receives as payment on the Note is, by definition, money obtained through execution of judgment.  Allowing retention of the Note by Lucky Family, and the receipt of $1.7 million dollars, would ignore the Supreme Court's later holding in *Gootee* and the purpose of restitution to address such issues after a judgment is later reversed or voided.

Should Mrs. Lollar's claim for restitution of the Note itself or payments under the Note be denied, she has made an alternative claim in her complaint for restitution of the proper value of the Note.[43]  The argument that Mrs. Lollar's receipt of any partial funds from Mr. Lucky would satisfy her claims is specifically denied.  Restitution of the proper value Mrs. Lollar's property (an amount which may be proven at trial if necessary and for which Mrs. Lollar has retained John Dean as an expert to address) is owed by the judgment creditor.  The Luckys cannot characterize any lesser sum paid as satisfaction of the full restitution sought.

**B.  Lucky Family Is Subject To Mrs. Lollar's Restitution Claim:**

---

[42] *Gootee* at 1206 (quoting *Lisi Realty, Inc.,* 306 So.2d at 921).

[43] **Rec. Doc. 51**, Plaintiffs' Amended and Restated Complaint at paragraph 57.

The voided judgment from Lucky I was community property of Mr. Lucky and Vickie Lucky. La. C.C. art. 2334, 2338, 2340.  Such does not appear in dispute by Lucky Family.[44]  This means that Vickie Lucky had an undivided interest under the voided judgment (La. C.C. art. 2336) and when it was reversed, the obligation to restore the money or property received is a community obligation.  La. C.C. art. 2360, 2361. Lucky Family asks this Court to look past its purported ownership (Vickie Lucky), its management (which still includes Mr. Lucky) and its role in the abuses of process in this matter to find that *Lucky* Family is just a separate juridical person that happened to present the sole bid of $105,000 for Mrs. Lollar's Note.  However, Louisiana law expressly denies use of an entity in order to circumvent an obligation or restriction.  For example, in *Keller v. Haas*, 202 La. 486, 490–93, 12 So. 2d 238, 240 (1943), the Louisiana Supreme Court addressed use of a subsidiary corporation to evade obligations to co-owners of property.  In *Keller*, the Louisiana Supreme Court reasoned that an individual may not "use the screen of corporate entity to absolve himself from responsibility" 202 La. 486 at 490–93, 12 So. 2d at 240; See also *Glazer v. Comm'n on Ethics for Pub. Employees*, 431 So. 2d 752, 758 (La. 1983).  *Keller* was more recently applied in *Tealwood Props., LLC v. Succ'n of Graves*, 64 So. 3d 397 (La. App. 2nd Cir. 2011).  The court explained: "in the circumvention type of case the court is being asked to disregard the separate existence of a corporation in order to prevent the shareholder of the corporation from getting around some restriction on his own freedom of action. *Tealwood*, 64 So. 3d at 406.

If Mr. and Mrs. Lucky, as judgment creditors, had individually acquired the Note at sheriff's sale, they are subject to a restitution obligation when the Lucky I judgment was voided. The only additional fact is that the Luckys simply had their family L.L.C. purchase it.  Is this all

---

[44] **Rec. Doc. 97-1** at p. 23, "The fact that one of [Lucky Family's] members shares a community property interest in the judgment upon which a judicial sale is held in does not prevent an LLC from being a third party at that sale."  Lucky Family is expressly asking this Court to sanction circumvention.

that is necessary to circumvent restitution?  Of course not, *Tealwood* solves the potential inequity ($1.7 million dollar windfall to the Luckys) and absurdity which would result if such side steps around obligations were ignored.  The basic facts of a restitution obligation and Lucky Family as purchaser is enough under *Tealwood* to prevent circumvention.  However, the need to prevent circumvention is even greater here, where Mr. Lucky overtly filed encumbrances[45] against the Note and its collateral before covertly manipulating the appraisal process[46] of the Note based on his filings.  How else do you get to an appraisal at 6% of the face amount of a note backed by collateral?  Even Lucky's first appraiser, Chad Garland, admitted in his deposition that absent Mr. Lucky's encumbrances, the Note could have possibly been valued at $1.2 million dollars.[47]  This amount being similar to the appraised value presented by John Dean on behalf of Mrs. Lollar ($1,478,048.68).[48]

### III.  Conclusion.

Mr. and Mrs. Lucky have no judgment against Mrs. Lollar, yet Mrs. Lollar's Note entitling her to over $1.7 million dollars in payments was seized and sold by Mr. Lucky and purchased by Lucky Family, L.L.C. for only $105,000.  Lucky Family unabashedly argues that the Note is worth whatever it brought at sale while also seeking enforcement of the Note for an immediate 1600% return.  This is the holding Lucky Family seeks from this Court: That, despite judgment reversal, Mrs. Lollar is limited to $105,000 of her property's value, while Lucky Family should be allowed to enforce the ***same property*** for over $1.7 million dollars.  The law does not support this outcome.  Mrs. Lollar is entitled to summary judgment in her favor.

---

[45] **Rec. Doc. 71-2**, Exhibit 1, Petition in Lucky II claiming the Note transactions were null.  See also **Rec. Doc. 51-7 and 51-8** for Lis Pendens filed encumbering the property serving as the collateral for the Note.
[46] **Rec. Doc. 51-13**, October 10, 2018 letter from Curtis Shelton to Patrick Lacour.
[47] **Rec. Doc. 105-2**, Exhibit 1 at p. 34-35 of deposition of Chad Garland.
[48] **Rec. Doc. 51-12**, Exhibit J, Appraisal of the Note by John Dean, CPA, ABV

11

Respectfully submitted by,

_____ /s/ J. Davis Powell _____
Randall S. Davidson, LSBA No. 4715, TA
J. Davis Powell, LSBA 33631
Andrew D. Martin, LSBA 34947
Harold R. Bicknell III, LSBA 36801
DAVIDSON SUMMERS, APLC
330 Marshall Street, Suite 1114
Shreveport, Louisiana 71101
Ph: (318) 424-4342 | (318) 226-0168
E:      rsdav@davidsonsummers.com
        dpowell@davidsonsummers.com
        dmartin@davidsonsummers.com
        hbicknell@davidsonsummers.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing was filed electronically with the Clerk of Court using the CM/ECF filing system, and notice of the same will be sent to counsel of record by operation of the court's electronic noticing system.

Shreveport, Louisiana, on this 27th day of January, 2020.

_____ *s/ J. Davis Powell* _____
                OF COUNSEL