UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| MAGNOLIA ISLAND PLANTATION L.L.C. and BARBARA MARIE CAREY LOLLAR<br>　　　　Plaintiffs<br><br>VS<br><br>LUCKY FAMILY, L.L.C., W.A. LUCKY, III, and BOSSIER PARISH SHERIFF JULIAN C. WHITTINGTON<br>　　　　Defendants | § § § § § § § § § § § § | CIVIL ACTION NO: 5:18-cv-01526<br><br><br>CHIEF JUDGE S. MAURICE HICKS, JR.<br><br><br><br>MAGISTRATE JUDGE KAREN HAYES<br>Jury Trial Demanded |

# BARBARA MARIE CAREY LOLLAR AND MAGNOLIA ISLAND PLANTATION, L.L.C.'S AMENDED RESPONSE TO W.A. LUCKY, III'S STATEMENT OF UNDISPUTED FACTS

Pursuant to LR 56.2, Barbara Marie Carey Lollar ("Mrs. Lollar") and Magnolia Island Plantation, L.L.C. ("Magnolia") submit the following statement of material facts in response to W.A. Lucky, III's ("Mr. Lucky") *Statement of Undisputed Facts* (the "Statement" at rec. Doc. 84-1). The numbered paragraphs herein directly correspond to the presentation of facts in the numbered paragraphs of Mr. Lucky's statement.

1.　　It is not disputed that Mr. Lucky sued Mrs. Lollar in the state court suit at Suit No. 127,573.  Mrs. Lollar opposed Mr. Lucky's allegations in that suit and strongly disputed the existence of any obligation or duty to Mr. Lucky.  Mr. Lucky's characterization of the allegations in that suit in paragraph 1 would be immaterial to the issues before the Court in this matter.  What is a material fact is that Mrs.

1

        Lollar prevailed in Lucky I on appeal to the Louisiana Second Circuit Court of Appeal as shown at Rec. Doc. 51-5. Mr. Lucky's footnote assertion that all requests for admission made to Mr. Lollar are admitted is denied. Mr. Lollar responded to Mr. Lucky's discovery requests with an objection by letter dated August 15, 2019 stating that the discovery requests were premature pending the resolution of Mr. Lollar's 12b6 motion and otherwise objecting to the requests. Counsel for both parties later exchanged emails on the topic and in accordance with that correspondence Mr. Lollar submitted responses on September 13, 2019.

2. The information in paragraph 2 is immaterial to the issues before the Court in this matter. Otherwise, paragraph 2 is not disputed.

3. The timing of when Magnolia was formed is immaterial to the issues before the Court in this matter. It is not disputed that Magnolia was formed by Ronald Lollar.

4. It is immaterial to the present matter that Mr. Powell was one of the attorneys representing Mrs. Lollar in Lucky I in addition to other attorneys with Davidson Summers, APLC. It is not disputed that Mr. Powell is the registered agent for Magnolia.

5. It is not disputed that Magnolia's registered agent's address is the same as Davidson Summers, APLC's firm address since the registered agent works as an attorney with Davidson Summers, APLC.

6. Mr. Lucky's characterization that the sales referenced were in order "to place the Land outside Mrs. Lollar's patrimony" is disputed and Mr. Lucky offers no evidence in support of such characterization. It is not disputed that the documents

cited were signed by Mrs. Lollar and Mr. Lollar as indicated in the respective documents.

7. It is immaterial to the issues before the Court in this matter that the documents cited in paragraph 7 were recorded "the day Lucky I was to be deemed submitted for a decision". It is not disputed that the documents cited were recorded in the public records of Bossier Parish, Louisiana.

8. It is immaterial to the issues before the Court in this matter whether Mr. and Mrs. Lollar used the same firm in the referenced transactions. Otherwise, it is not disputed that attorneys at Davidson Summers, APLC served as counsel to Mrs. Lollar, and also to Mr. Lollar, in regards to the documents cited.

9. The statement submitted by Mr. Lucky at paragraph 9 is immaterial to the issues before the Court in this matter. Further, it is disputed that the deposition testimony cited for paragraph 9 actually supports the statement made.

10. The fact cited at paragraph 10 is immaterial to the issues before the Court in this matter. Otherwise paragraph 10 is not disputed.

11. It is not disputed that the state Court signed the monetary judgment in Lucky I on January 5, 2018.

12. The first sentence of paragraph 12 is disputed as there is no support provided as to Mr. Lucky's characterization of the activities in that sentence. It is not disputed that Mr. Lucky filed the referenced Supplemental Petition, which the State court denied, Mr. Lucky also filed a notice of lis pendens. It is disputed whether Mr. Lucky took these actions lawfully or for a lawful purpose as the lis pendens was filed against Magnolia's property before any judgment was issued (compare date

      of Supplemental Petition and Lis pendens and that of the judgment cited at paragraph 11). The Lis Pendens was filed against specific immovable property (as shown therein) which was owned by Magnolia at the time (see Exchange Deed at Rec. Doc. 51-3) although Mr. Lucky had no basis for the filing as there was no judgment at that time. Even when the judgment was issued it was a monetary judgment against Mrs. Lollar (not Magnolia) and did not provide for the recovery of any specific asset or piece of property (See monetary Judgment cited by Mr. Lucky in support of paragraph 11).

13. It is not disputed that Mr. Lucky filed Lucky II and a second lis pendens which purports to be based upon the filing of Lucky II.

14. It is not disputed that Mrs. Lollar took a devolutive appeal of the Lucky I judgment.

15. It is not disputed that Mr. Lucky filed the motion cited at paragraph 15 and that the court in that matter signed the order cited by Mr. Lucky in support of this paragraph.

16. It is not disputed that Mr. Lucky filed the motion cited at paragraph 16 and that the court set the matter for hearing on July 5, 2018.

17. It is not disputed that Mrs. Lollar's counsel was served with a subpoena duces tecum referenced.

18. It is not disputed that the court at the July 5, 2018 hearing ruled that Mrs. Lollar's Note was to be seized and for Mrs. Lollar's counsel to deliver the Note to the Sheriff's office.

19. The statement at paragraph 19 is partially incorrect. Randall Davidson made the argument on behalf of Mrs. Lollar at the July 5, 2018 hearing. However, it is not disputed that Andrew Martin and J. Davis Powell were present in the courtroom on

behalf of Mrs. Lollar. It is immaterial whether Mr. Powell was Magnolia's registered agent at the time as Magnolia was not a party to the matter in which the July 5, 2018 hearing was being held.

20. The statement at paragraph 20 is not disputed although Mr. Powell's role as registered agent in regards to Magnolia, who was not a party to the matter before the court on July 5, 2018, is immaterial to the issues before the Court in this matter.

21. Paragraph 21 is not disputed.

22. It is not disputed that Mrs. Lollar was served with the document referenced, although the fact that Mr. Powell received the cited notice on behalf of Mrs. Lollar while Mr. Powell served as registered agent for Magnolia (or any other L.L.C.) is immaterial to the issues before the Court in this matter.

23. It is not disputed that Mrs. Lollar was served with the document referenced, although the fact that Mr. Powell received the cited notice on behalf of Mrs. Lollar while Mr. Powell served as registered agent for Magnolia (or any other L.L.C.) is immaterial to the issues before the Court in this matter.

24. It is disputed that any information was directed to Magnolia by the Sheriff's office on the dates cited and there is no support offered by Mr. Lucky that would evidence the Sheriff providing information to Magnolia during this time. It is not disputed that the Sheriff's office corresponded with J. Davis Powell as counsel for Mrs. Lollar through the communications Mr. Lucky attached in support of paragraph 24.

25. It is not disputed that Mr. Lucky appointed Mr. Garland as his appraiser.

26. It is disputed that Mr. Garland's appraisal would qualify as a "true and just" appraisal of the Note. Mr. Garland has testified that he purposely ignored the

Note's collateral when conducting his appraisal.[1] The reason Garland testified that he did not consider the collateral was (a) because of the monetary judgment in Lucky I (Garland erroneously believed the Lucky I monetary judgment against Mrs. Lollar would directly encumber the immovable property which was owned by Magnolia – this is not correct. If such was true, Mr. Lucky would not have seized and sold the Note, which was an asset that could be subject to the monetary judgment) and (b) because of the lis pendens filed by Mr. Lucky which he acknowledges was an issue that was created by Mr. Lucky.[2] Mr. Garland acknowledged in his deposition testimony that if the collateral had been considered then an appraisal would have reflected almost the full value of the Note.[3] It is inconceivable that Garland's appraisal can be true in just when he put blinders on and unilaterally (and incorrectly) excised the collateral from the equation.

27. Paragraph 27 is not disputed, subject to the understanding that plaintiff's dispute that Mr. Garland's appraisal was true, just or accurate as supported in response to paragraph 26.

28. It is not disputed that Mr. Dean served as Mrs. Lollar's appraiser and that he submitted an appraisal in the amount referenced in this paragraph.

29. Paragraph 29 is not disputed.

30. The occurrence of the email cited at paragraph 30 is not disputed, however the basis for Mr. Lucky's characterization of what Sheriff employee Kim Flournoy did or did not anticipate is not supported by the email cited. The email cited evidences

---

[1] See Exhibit 1 attached hereto for excerpts from the deposition of Chad Garland, CPA at p. 19 - p.23. Mr. Garland states that the collateral was "out of play."
[2] *Id*. at p. 40: 19-25 through p. 41: 1-9.
[3] *Id*. at p. 34:7-25 through 35:1-3

6

one of the Sheriff's communications with Mr. Curtis Shelton, counsel for the judgment creditor and which regarded the third appraisal. There was no notice or similar request or communications with Mrs. Lollar or her counsel for input and no evidence of such.

31. It is disputed as to whether the Sheriff's conduct in the appraisal process was "unusual" or not. In fact, the evidence and testimony reflect that the Sheriff's office had never conducted a sale of a promissory note[4], found it to be a learning experience[5], and also found the level of Mr. Lucky's counsel's involvement to be "not normal."[6] It is also disputed as to whether the Sheriff's office was merely asking for recommendations as the Sheriff's office only contacted Curtis Shelton, Mr. Lucky's counsel, and allowed Mr. Shelton to select an additional appraiser, Mr. Lacour.

32. It is not disputed that the Sheriff's office was free to actually undertake its duty in regards to the appraisal process, but failed to do so as its only action in that regard was to contact the judgment creditor's counsel and allow him to select an additional appraiser.

33. The occurrence of the email cited at paragraph 33 is not disputed. As set forth in plaintiffs' opposition memorandum to which this attached, Mr. Shelton served as Mr. Lacour's sole contact and sole source of information while conducting his appraisal. This information included erroneous and biased information which

---

[4] See Exhibit 2 attached hereto for excerpt from Deposition of Jean Horne at P. 49 23-25 through 50:1-6;
[5] See Rec. Doc. 71-6 for an October 23, 2018 email from Kim Flornoy to Curtis Shelton as Ms. Flournoy describes that process with Mrs. Lollar's Note as a "learning experience"; See also exhibit 2 at p. 48:6-9 where Jean Horne agreed in her testimony on behalf of the Sheriff's office that "it is not normal for the sheriff's office to seize a promissory note."
[6] See Rec. Doc. 80-3 for excerpt from Deposition of Jean Horne at P. 26:5-10.

Lacour relied upon in making his appraisal. It is disputed that the Sheriff appointed Mr. Lacour as a third appraiser at all and also that the Lacour appraisal was true and just.

34. The occurrence of the October 10, 2018 correspondence from Mr. Lucky's counsel, Curtis Shelton, to Mr. Lacour is not disputed. Although the October 10, 2018 letter contains the excerpt selected by Mr. Lucky in paragraph 34, it also contains numerous incorrect factual and legal claims, as well as heavily-biased phrasing:

- We caught onto Ms. Lollar's scam…
- It is obvious that she knew that Judge Self was going to rule against her in Lucky-Carr I.
- She was not truthful in her testimony.
- …Ms. Lollar, aided and abetted by her lawyers who had unsuccessfully defended Lucky-Carr I…
- The appraisal indicates that the [Property] has a value of $4,000 per acre. The property that Ms. Lollar transferred was 280 acres, which would, therefore, have a value of $1,120,000.00. Nevertheless, what is relevant here is that the value of the [Note] must be determined based on the fact that a person who buys it will do so subject to the claims made against the property in Lucky-Carr II, which are protected by a lis pendens.

The letter goes on to use language whereby Mr. Shelton is the party requesting the work from Mr. Lacour, "I will need you to do two things" (p.3 of Rec. Doc. 51-13), and to suggest that Mr. Lacour, a CPA, could evaluate the legal claims in Lucky II just by reviewing the petition from Lucky II (p.6 of Rec. Doc. 51-13).

35. The occurrence of the October 10, 2018 correspondence from Mr. Lucky's counsel, Curtis Shelton, to Mr. Lacour is not disputed. As stated in the response to paragraph 34 above, the information was purposefully selective and biased against Mrs. Lollar as well as the viability of the Note and its collateral.

36. The occurrence of the October 10, 2018 correspondence from Mr. Lucky's counsel, Curtis Shelton, to Mr. Lacour is not disputed. Please reference the facts presented in response to paragraphs 34 above in relation to the October 10, 2018 letter from Curtis Shelton to Mr. Lacour in support of the fact that the letter served to improperly influence Mr. Lacour in relation to his additional appraisal of the Note.

37. The occurrence of the October 10, 2018 correspondence from Mr. Lucky's counsel, Curtis Shelton, to Mr. Lacour is not disputed. However, it is disputed that the letter's purpose was to provide "background" and instead evidences the improper influence of Mr. Lacour in making an additional appraisal as set forth in the response to paragraph 34 above.

38. The occurrence of the October 10, 2018 correspondence from Mr. Lucky's counsel, Curtis Shelton, to Mr. Lacour is not disputed. In fact, the excerpts cited by Mr. Lucky in paragraph 38 are supportive of Mrs. Lollar's claim that the letter served to improperly influence Mr. Lacour as the passages evidence that Mr. Shelton provided Mr. Lacour with selective court filings, told Mr. Lacour he could evaluate the merits of a lawsuit (Lucky II) based on its petition, and suggested that consideration of the collateral in the appraisal was not relevant.

39. It is disputed that Mr. Lacour was appointed by the Sheriff's office, therefore the statement by Mr. Lucky at paragraph 39 is disputed as it assumes the Sheriff's office actually appointed Mr. Lacour and that it even provided him with any information regarding the Note. There is no evidence that shows the Sheriff's office provided any information regarding the Note to Mr. Lacour for the purpose of making his appraisal, nor is any offered by Mr. Lucky in support of such.

9

        Further, even if Mr. Lacour would normally be free to obtain information from other sources, Lacour admits that he sought out no information independent of the information which was delivered to him from Mr. Lucky's counsel, Curtis Shelton in the October 10, 2018 correspondence, as well as from later phone calls with Mr. Shelton about the appraisal.[7]

40. It is disputed that the Sheriff's office appointed Mr. Lacour as the third appraiser. The Sheriff's office did not contact Lacour and did not provide Lacour with any information on which to base his appraisal – all of which came from Curtis Shelton, Mr. Lucky's counsel. The Sheriff's office read the October 10, 2018 letter as "not normal", and was unaware of the letter or its contents as Mr. Shelton did not provide the letter to anyone but Mr. Lacour and the other parties in this matter were only made aware of it once Mr. Lacour produced the letter in response to a discovery request.[8]

41. It is disputed as to what the Sheriff's office understood or did not understand as the Sheriff's office failed to ever contact Lacour prior to completing his appraisal or to provide him with any information on which to conduct his appraisal. There is a lack of evidence that the Mr. Lacour was ever appointed by the Sheriff as a third appraiser as required under the law.

42. There is no evidence presented that the Sheriff's office ever provided even a description to Mr. Lacour for the Note at issue. It is disputed that the judgment creditor and his counsel are the proper parties to tell the third appraiser what information to consider as was done in this case (see Rec. Doc. 51-13).

---

[7] See Rec. Doc. 80-2 for excerpt from deposition transcript of Patrick Lacour.
[8] See Rec. Doc. 80-3 for excerpt from deposition transcript of Sheriff employee Jean Horne at 53:22-24.

43. Paragraph 43 appears to be duplicative of paragraph 39 and therefore we reference the disputed facts presented in response to paragraph 39.

44. It is disputed that the Sheriff appointed Mr. Lacour as the third appraiser.

   - The Sheriff only contacted the Judgment Creditor's counsel, Curtis Shelton, in regards to an additional appraisal.

   - Mr. Shelton chose Mr. Lacour, a CPA who was already working with Mr. Shelton in another matter.[9]

   - There is no evidence that Mr. Lacour received any information to perform the appraisal of the Note from the Sheriff.

   - The only action taken by the Sheriff in regards to the third appraisal was to allow the judgment creditor's counsel to obtain an additional appraisal from someone of the judgment creditor's choosing.[10]

   It is also disputed whether the appraisal itself is true and just as required by law. The Lacour appraisal relied upon the information provided by Mr. Lucky's counsel which included only partial legal filings[11] attached to a letter outlining what Lacour should consider.[12]  Mr. Lacour never saw the promissory note[13], never independently reviewed public records and obtained no information on the credit worthiness of the Note's payor.[14]  It was even suggested of Mr. Lacour in Mr. Shelton's letter to him that he was capable of using his own judgment as to the

---

[9] See Rec. Doc. 71-4 for excerpt from deposition transcript of Patrick Lacour at p. 59:1-10.
[10] Please reference the supportive facts cited above in response to paragraphs 9-17.
[11] See Rec. Doc. 71-5, excerpt of deposition transcript of Patrick Lacour at p. 63:2-19.
[12] See Rec. Doc. 80-2, excerpt of deposition transcript of Patrick Lacour at p. 53:15-19.
[13] See Rec. Doc. 71-5, excerpt of deposition transcript of Patrick Lacour at p. 77:6-11.
[14] See Rec. Doc. 71-5, excerpt of deposition transcript of Patrick Lacour at p. 24.

merits of Mr. Lucky's second lawsuit ("Lucky II") which alleges the Note transactions were null in valuing the Note.[15]

45. The occurrence of the email cited in support of paragraph 45 is not disputed. However, there is no evidence presented that would support that the Sheriff's office did anything more than allow Mr. Lacour to submit the additional appraisal. It is disputed whether or not the Sheriff's actions would constitute appointing a third appraiser as required by state law.

46. The occurrence of the communication by Mr. Lacour on the day he drove to the Bossier Parish Sheriff's office from Alexandria is not disputed.

47. It is not disputed that Mr. Lacour submitted an appraisal for $157,009.22 on October 22, 2018. It is disputed that this submission of his appraisal, and even his contact with the Sheriff's office about "driving up" would ameliorate the fact that the Sheriff did not appoint Lacour and that the appraisal itself was based on biased and erroneous information as presented in response to preceding paragraphs.

48. It is not disputed that Mr. Lacour submitted an invoice for his work on the appraisal after Mr. Lucky's counsel requested he do so.[16]

49. The statement at paragraph 49 is not disputed. Mr. Lacour provided an invoice to Mrs. Flournoy as instructed by Mr. Shelton (see footnote to paragraph 48).

50. Paragraph 50 is not disputed.

51. Paragraph 51 is not disputed.

52. Paragraph 52 is not disputed. However, the fact that Mr. Powell was concurrently the registered agent for Magnolia, who was not a party in the case which the Petition

---

[15] Rec. Doc. 51-13 at p. 6.
[16] See Exhibit 3 attached hereto for October 23, 2018 email from Sheriff's office to Curtis Shelton.

for Preliminary Injunctive Relief was filed, is immaterial to the resolution of issues before the Court in this matter.

53. The filing of the *Petition for Preliminary Injunctive Relief* is not disputed. The recitation of the allegations of this filing are disputed only to the extent they do not reflect the allegations in the document itself which Mr. Lucky attached at Exhibit 43 to his Statement.

54. It is not disputed that Mrs. Lollar included a proposed order with the referenced filing and that the partial quotation by Mr. Lucky in this paragraph was included in the proposed order.

55. It is disputed that the state court "denied" as there was no hearing or other disposition regarding the *Petition for Preliminary Injunctive Relief* beyond the judge simply writing "moot" on the proposed order the day after the sale had occurred as shown on the copy attached at Rec. Doc. 84-16, Exhibit 43. It is also disputed that the filing by Mrs. Lollar could not have been lawfully granted as there is was no determination by the court that it could not be lawfully granted. The judge simply wrote "moot" on the proposed order.

56. It is not disputed that a supervisory writ in regards to the *Petition for Preliminary Injunctive Relief* was not taken, however there was no hearing or determination by the Court on the Petition as set forth in para. 55.

57. It is not disputed that Mr. Powell is one of the attorneys with Davidson Summers, APLC that works on Mrs. Lollar's behalf and that he has also served as registered agent for Magnolia. It is not disputed that Mr. Powell attended the October 24, 2018 Sheriff's sale of the Note. It is disputed that Mr. Powell's role as registered

13

agent for Magnolia in relation to the other two facts is immaterial to the issues before the Court in this matter.

58. It is not disputed that the sole bid for the promissory note was $105,000 and that the Proces Verbal references Lucky Family, L.L.C. as the entity purchasing the Note at the October 24, 2018 Sheriff's Sale.

59. It is not disputed that Lucky Family, L.L.C. provided the cashiers check from Business First Bank shown at Rec. Doc. 84-17, Exhibit 45, p.1 for $105,000 to the Sheriff in relation to the October 24, 2018 Sheriff's sale.  It is not disputed that Lucky Family issued a check shown at Rec. Doc. 84-17, Exhibit 45, p.2 to Business First Bank.  There is insufficient support offered by Mr. Lucky that the bid was "funded with its own money" beyond the issuance of the Lucky Family check referenced above.

60. The occurrence of the Judicial Bill of Sale shown at Rec. Doc. 84-17, Exhibit 46 is not disputed.

61. It is not disputed that Mrs. Lollar answered the Lucky II petition and included a reconventional demand.  The assertion regarding Mr. Lollar and Magnolia answering the Lucky II petition was not supported by the document cited by Mr. Lucky in that paragraph.

62. Paragraph 62 is not disputed.

63. Paragraph 63 is not disputed.

64. It is not disputed that counsel sent the letter dated April 17, 2019 as referenced.

65. Paragraph 65 is not disputed.

66. Paragraph 66 is not disputed

67. The letters cited at Paragraph 67 are not disputed.

68. It is not disputed that the referenced checks were sent to Mrs. Lollar's counsel.

69. Paragraph 69 is disputed insofar as the use of "Mrs. Lollar accepted [the checks]" implies that Mrs. Lollar ratified the sale (as argued in Rec. Doc. 84-22, p. 5), but is not disputed regarding Mrs. Lollar's negotiations of these checks.

70. Paragraph 70 is not disputed.

71. Paragraph 71 is not disputed.

72. Paragraph 72 is not disputed.

73. Paragraph 73 is not disputed, however Mr. Lucky has included his argument regarding the content of this paragraph in its footnote. This argument is disputed by plaintiffs and is addressed more fully in the accompanying memorandum in opposition when addressing the actual fact that Mr. Lucky was listed as a member by the La. Secretary of State at the time of the Sheriff's sale.

74. Paragraph 74 is not disputed.

75. It is not disputed that Mr. Lucky was appointed as a manager of Lucky Family, L.L.C.

76. It is not disputed that Mr. Lucky was appointed as a manager of Lucky Family, L.L.C., however Mr. Lucky has included his argument regarding the content of this paragraph in its footnote. Whether Lucky Family is required to update the listing of its members is disputed, but it is also immaterial because the fact is that Lucky Family, L.L.C. chose to publicly represent that Mr. Lucky was a member.

77. Plaintiff's statement that Mr. Lucky is not a beneficiary of Lucky Family, L.L.C. is disputed as such is evidenced not only by virtue of the Secretary of State's

15

indication that he was a member, but is also otherwise supported by the fact that his status as Mr. Lucky's status as Manager of Lucky Family, L.L.C. has never been changed;[17] Mr. Lucky continues to represent Lucky Family, L.L.C;[18] Mr. Lucky has used Lucky Family, L.L.C. to fund his projects.[19]

78. Paragraph 78 is not disputed, however plaintiffs would reference their response and the disputed nature of the Mr. Lucky's statement in paragraph 77 in the response to that paragraph above.

79. It is not disputed that the Unanimous Consent attached at Rec. Doc. 84-19 at Exhibit 60 makes a representation about the company's membership interest, however plaintiffs would point out that the unanimous consent is not a document which serves to reduce or transfer membership interest.

80. It is not disputed that the First Amendment to Operating Agreement attached at Rec. Doc. 84-19 at Exhibit 61 makes a representation about the company's membership interest, however plaintiffs would point out that the First Amendment to Operating Agreement is not a document which serves to reduce or transfer membership interest.

---

[17] See Rec. Doc. 84-19 at Exhibit 59 for Unanimous Consent of Members electing Mr. Lucky as Manager; See also See Rec. Doc.84-19 Exhibit 61 for Lucky Family's Operating Agreement and First Amended Operating Agreement, at no point has the L.L.C. taken steps to remove or change Mr. Lucky's status as Manager in accordance with the terms of the Operating Agreement or otherwise.

[18] See Exhibit 4 attached hereto for a Sheriff's sale purchase of land wherein Mr. Lucky represented Lucky Family, L.L.C. ; See also Rec. Doc. 84-21 at Exhibit 70 for *Certificate* confirming Mr. Lucky's authority on behalf of the L.L.C.; See also Exhibit 5 attached hereto for documents signed by Mr. Lucky with Vickie Lucky to open a commercial account for Lucky Family, L.L.C. with the Bank of Jackson Hole in Wyoming.

[19] See Rec. Doc. 80-6 for transactions by which Coyote Land Co., owned by Mr. Lucky, received a one-million-dollar loan (not personally guaranteed) from Lucky Family in order to purchase property which it later transferred into an LLC jointly owned by Mr. and Mrs. Lucky before re-payment of the loan.

16

81. It is not disputed that Mr. Lucky and Vickie Talley Lucky purport to have reduced their membership interests in the Donations cited. Whether or not Mrs. Lollar notarized the documents where Mr. Lucky purports to have donated a portion (not all in these documents) of his membership interest is immaterial to the actual issues before the court regarding Lucky Family, L.L.C., including regarding whether Mrs. Lollar is entitled to restitution of her Note from Lucky Family, L.L.C.

82. It is not disputed that Mrs. Lollar notarized the Certificate referenced, however it is disputed that her act in notarizing a document would be material to the issues before the Court in this matter.

83. It is not disputed that Mr. Lucky purports in the Act of Donation cited to donate a one-half interest in 96% of the membership in an L.L.C. entitled Lucky Company, L.L.C. rather than Lucky Family, L.L.C. 19 years later, Lucky Family, L.L.C. has presented new documents which were created and signed after the filing of this suit which purport that Mr. Lucky meant for the referenced Donation to be his membership interest in Lucky Family, L.L.C. (see below at paragraph 85).

84. It is not disputed that the First Amendment to Operating Agreement attached at Rec. Doc. 84-19 at Exhibit 65 makes a representation about the company's membership interest, however plaintiffs would point out that the First Amendment to Operating Agreement is not a document which serves to reduce or transfer membership interest.

85. It is not disputed that Mr. Lucky and the notary public have submitted the documents referenced purporting to correct that the Donation referenced at paragraph 83.

86. Mr. Lucky has not provided copies of the tax returns referenced.

87. Mr. Lucky has not provided the documents referenced.

88. Mr. Lucky has not provided the documents referenced.
89. The characterization that the individuals listed are all of the members of Lucky Family, L.L.C. is disputed.

90. It is not disputed that Mr. Lucky alleges that the documents referenced in paragraph 90 evidence Lucky Family, L.L.C. meetings limited to the dates shown.

91. Paragraph 91 is disputed due to the fact that Rec. Doc. 84-21 at Exhibit 69 show that Mr. Lucky attended certain meetings (as set forth in paragraph 92) during time periods in which the Secretary of State shows he was listed as a member. Further, even if Mr. Lucky was not effectively a member after 2000, this is not dispositive of Mr. Lucky's status within Lucky Family, L.L.C. and his relationship with Lucky Family, L.L.C. The facts regarding Mr. Lucky's connection with Lucky Family, L.L.C. are material in this matter because Mrs. Lollar has alleged that she is owed restitution of the Note itself from Lucky Family due to the reversal of the underlying judgment. This restitution is the proper relief when the judgment creditor, or someone acting on behalf of the judgment creditor, is also the purchaser of the property which was caused to be sold under the reversed judgment. Vickie Lucky and Mr. Lucky are husband and wife and are subject to the community property regime under Louisiana law. The judgment from the Lucky I matter (pre-reversal) was just as much an asset of Vickie Lucky as it was of Mr. Lucky. Lucky Family admits that Vickie Lucky is the owner of the majority of membership interest of Lucky Family and serves as one of its managers. Therefore, even without getting into Mr. Lucky's connection to Lucky Family, the facts show that

the L.L.C. of the judgment creditor was used to purchase Mrs. Lollar's property at Sheriff's sale. Next, even if Mr. Lucky has effectively transferred his membership interest in Lucky Family, L.L.C., his status as Manager has never been changed. And Mr. Lucky has also represented Lucky Family in transactions on its behalf as referenced in paragraph 77 above.

92. It is not disputed that Mr. Lucky attended meetings of Lucky Family, L.L.C. His status as a guest is disputed due to the facts presented at paragraph 77 above).

93. The Certificate of Authority attached at Exhibit 70 of Rec. Doc. 84-21 would be reflective of Lucky Family, L.L.C. certifying Mr. Lucky's authority, which in the instance of Exhibit 70 appears to be generally authority regarding banks and government insured lenders. However, it is disputed that the attached Certificate at Exhibit 70 is supportive of the statement at paragraph 93 as Mr. Lucky's status as Manager has never been changed.

Respectfully submitted by,

    /s/ J. Davis Powell
Randall S. Davidson, LSBA No. 4715, TA
Andrew D. Martin, LSBA No. 34947
J. Davis Powell, LSBA No. 33631
DAVIDSON SUMMERS, APLC
330 Marshall Street, Suite 1114
Shreveport, Louisiana 71101
Ph: (318) 424-4342 | Fax: (318) 226-0168
Email: rsdav@davidsonsummers.com
       dmartin@davidsonsummers.com
       dpowell@davidsonsummers.com

***Counsel for Plaintiffs***

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on January 25, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System. Notice of this filing will be sent to counsel of record by operation of the court's electronic filing system.

                                                  */s/ J. Davis Powell*
                                                  OF COUNSEL