CHAD M. GARLAND, CPA     12/19/2019

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| MAGNOLIA ISLAND PLANTATION, L.L.C., AND BARBARA MARIE CAREY LOLLAR | : : : | CIVIL ACTION NO. 5:18-cv-01526 |
| VERSUS | : : : | CHIEF JUDGE MAURICE HICKS, JR. |
| LUCKY FAMILY, L.L.C., W.A. LUCKY, III, AND BOSSIER SHERIFF JULIAN C. WHITTINGTON | : : : : | MAGISTRATE JUDGE KAREN HAYES |

DEPOSITION OF CHAD M. GARLAND, CPA

December 19, 2019

Reported By:
Jayne M. Reeves, CCR

CHAD M. GARLAND, CPA                                      12/19/2019

19

1   27, 2019, report -- and that's Exhibit 1 in this
2   deposition -- you discuss that the collateral was
3   out of play, which affected the value you came up
4   with.
5        A.   Yes, sir.  That's my understanding.
6        Q.   Okay.  And you base that -- and I'm
7   reading from the third page of Exhibit 1.  You
8   said, This Notice of Lis Pendens effectively took
9   the collateral "out of play" in the appraisal of
10  the promissory note.
11            And this is the second paragraph,
12  second sentence.  Do you see that?
13       A.   Yes, sir.
14       Q.   Okay.  So you based -- excuse me.
15  Strike that.
16            You took the collateral out of
17  consideration based on the lis pendens?
18       A.   Yes.  And Judge Self had rendered an
19  opinion or judgment against Ms. Lollar for
20  approximately $1.8 million.  It's my
21  understanding -- I'm not a lawyer.  But my
22  understanding is that that takes -- pretty well
23  takes the collateral out of play.
24       Q.   Did you review that judgment at the
25  time?

318.424.1707            KAREN TYLER REPORTING, LLC            318.424.1744 - Fax
            3000 Fairfield Avenue, Suite A - Shreveport, LA 71104

EXHIBIT 1
Opposition to W.A. Lucky III's Rule 56 Motion

CHAD M. GARLAND, CPA     12/19/2019

20

```
 1      A.   I read what the -- the judge's opinion,
 2  I mean, when he did the opinion.  I can't
 3  remember the date of it.  Well, I can -- December
 4  19, 2017, Judge Self rendered the judgment.  I
 5  don't know when the judgment was signed.  But, I
 6  mean, the document that I read was dated December
 7  19, 2017.
 8      Q.   If I was to tell you that I reviewed
 9  the documents that you provided when you provided
10  documents to us and all the e-mails from
11  Mr. Shelton to you and each of their attachments
12  and I did not see the judgment from that case,
13  which we reference in this case as Lucky 1 in
14  those documents, would that be accurate?
15      A.   I would say that's not accurate.
16      Q.   Okay.
17      A.   I would think not.
18      Q.   Okay.
19      A.   I mean, when I --
20      Q.   You believe --
21      A.   We may be confusing terms.  What I'm
22  referring to is his opinion --
23      Q.   Right.
24      A.   -- in the case that was tried earlier.
25      Q.   Opinion and judgment will be two
```

CHAD M. GARLAND, CPA                                12/19/2019

21

1  different things for the purpose of the
2  questioning, because they are two different
3  instances, two different documents.
4       A.   Okay.  I read the opinion.
5       Q.   Okay.  Thank you.  You said the opinion
6  and the lis pendens took the collateral out of
7  play.  How did the opinion support taking the
8  collateral out of play?
9       A.   Because he ruled -- he provided a
10 judgment -- this was my understanding, that he
11 made a ruling that gave a judgment against
12 Ms. Lollar for $1.8 million.
13      Q.   A monetary judgment?
14      A.   A monetary judgment.
15      Q.   Correct.  It doesn't describe any
16 immovable property in it.
17      A.   Okay.
18      Q.   Is it your -- do you believe that the
19 judgment affects immovable property?
20      A.   No.
21      Q.   Okay.
22      A.   It was a monetary --
23      Q.   Monetary judgment?
24      A.   -- claim.
25      Q.   Okay.  So the judgment or the opinion,

318.424.1707     KAREN TYLER REPORTING, LLC     318.424.1744 - Fax
3000 Fairfield Avenue, Suite A - Shreveport, LA 71104

EXHIBIT 1
Opposition to W.A. Lucky III's Rule 56 Motion

CHAD M. GARLAND, CPA                                    12/19/2019

22

1  whatever you're relying upon here, does not cite
2  the immovable property that was the collateral
3  for the note?
4       A.   No.
5       Q.   Okay.
6       A.   But at that point in time, it all plays
7  into -- okay.  That's -- anyway, my understanding
8  is that it did take the collateral out of play.
9  But if it did or didn't -- but that's my
10 understanding of what happened at the time.
11      Q.   Okay.  I just want to dryly walk you
12 through that this is -- you would agree it's a
13 monetary judgment?
14      A.   Yes.
15      Q.   You understand --
16      A.   Because I reread it yesterday.
17      Q.   You understand that whether it's the
18 opinion of the judgment, it's a money judgment?
19      A.   Okay.
20      Q.   Is that correct as your understanding?
21      A.   That is my understanding as I sit here
22 today.
23      Q.   The collateral is immovable property
24 for the note.  Correct?
25      A.   Yes.

CHAD M. GARLAND, CPA                    12/19/2019

23

1   Q.   That's your understanding from your
2   review of the documents?
3   A.   Yes.
4   Q.   Okay. So you said the opinion and the
5   lis pendens take the collateral out of play. So
6   if the opinion doesn't take the collateral out of
7   play on its own, are you relying solely on the
8   lis pendens for that?
9   A.   Yes. I'd have to be. I mean, that's
10  my understanding. When I did my promise -- did
11  my valuation of this note, that the collateral
12  was not -- the note was not backed by the
13  collateral.
14  Q.   Not backed by the collateral?
15  A.   Yes, because of the judgment from the
16  judge. That's my understanding.
17  Q.   Okay. At the time of your valuation of
18  the note, who owns the collateral?
19  A.   Well, Ms. Lollar originally bought it.
20  And then she sold it to her husband under -- to
21  Magnolia Plantation, I think was the name of the
22  company that was owned by her husband.
23  Q.   Is it correct that at the time of your
24  valuation of the note in 2018, the collateral was
25  owned by Magnolia Island Plantation, LLC?

CHAD M. GARLAND, CPA     12/19/2019

34

1   out of play?
2       A.   I think we're just -- if the
3   collateral -- regardless of the value of the
4   collateral, if the collateral is taken out of
5   play in the note, all you have is basically an
6   uncollateralized note.
7       Q.   I'm not asking about after you take it
8   out of play. I'm asking about taking it --
9   actually taking it out of play. How do you
10   take -- in my hypothetical, how do you take
11   collateral that's worth more than whatever
12   judgment you're basing this decision to take it
13   out of play on, how do you take the rest of the
14   collateral out when the judgment is only for 1.8
15   million?
16       A.   Okay. I'll try to answer it this way.
17   Let's assume that there is no lawsuit and we've
18   got a $1.7 million note with $4 million worth of
19   collateral. Then the value of the note is
20   completely different. More like you almost have
21   the full value of the note. You have to present
22   value all the payments of the note to get to what
23   the value of the note is today. And whatever
24   that number is, it may be $1.2 million or
25   something like that, then that would be the value

1 for that note. But that's a completely different
2 situation than what I was looking at at the time
3 I valued this note.
4     Q. Okay. So let's -- thank you for that.
5 Let's bring in your situation. Adding to what
6 you just said, now bring in the judgment or the
7 opinion, whatever you want to rely upon, that
8 would affect the note, but you still have 4
9 million in collateral. How do you take all of
10 the collateral, 100 percent of the 4 million, out
11 of play because of a $1.7 million judgment?
12     A. If it's in a legal battle and the
13 collateral is in jeopardy, then it's out of play.
14     Q. How is the collateral in jeopardy for
15 more than the value of the judgment?
16     A. It wouldn't be.
17     Q. Okay. So there would still be
18 collateral left over?
19     A. In your theoretical situation, yes.
20     Q. Okay. So wouldn't the value of the
21 collateral be important to understand in valuing
22 the note?
23     A. I had a valuation. If you're talking
24 about this particular case, there was an
25 appraisal on that property back -- I'm not sure

CHAD M. GARLAND, CPA                    12/19/2019

40

1    A.   That's correct.
2    Q.   Okay.  And if I was to file a lis
3 pendens saying that I owned your home, would that
4 essentially devalue your note to the same degree
5 as this note as far as your mortgage?
6    A.   It would make my mortgage less
7 valuable.  That's a fact.
8    Q.   Just filing the lis pendens against
9 your house?
10    A.   Yes.  Just the fact that it's in
11 litigation makes everything less valuable.
12    Q.   Do I own your house after I file the
13 lis pendens?
14    A.   No.
15    Q.   Okay.
16    A.   But it's in jeopardy.
17    Q.   Because I filed a piece of paper?
18    A.   Yes.  Everything is about paper.
19    Q.   Everything is about paper.  So
20 Mr. Lucky filed the lis pendens in this matter.
21 You understand that.  Correct?
22    A.   Yes.
23    Q.   Okay.  Actually, it was filed by
24 Mr. Shelton, who provided you with the lis
25 pendens; is that correct?

318.424.1707        KAREN TYLER REPORTING, LLC        318.424.1744 - Fax
              3000 Fairfield Avenue, Suite A - Shreveport, LA 71104

EXHIBIT 1
Opposition to W.A. Lucky III's Rule 56 Motion

CHAD M. GARLAND, CPA					12/19/2019

41

```
 1        A.    Yes.
 2        Q.    Okay.  So Mr. Lucky created that issue,
 3   to your understanding?
 4        A.    Yes.  That's my understanding.
 5        Q.    Okay.  Is that issue -- that's the
 6   issue that takes the collateral out of play.
 7   Correct?
 8        A.    That's -- yes, sir.  That's what I
 9   based my opinion on.
10        Q.    And to what degree does that devalue
11   the note?  I'm going to look at your calculations
12   here.  But can you give me a percentage?
13        A.    There's other things other than that.
14   I outlined how I got to the percentage that I got
15   in that piece of paper that you're looking at.
16        Q.    Okay.  So one of the items is the lack
17   of marketability?
18        A.    Yes.
19        Q.    And you put 25 percent on that?
20        A.    Yes.
21        Q.    And how did you come up with 25
22   percent?
23        A.    That's my judgment as an appraiser.
24        Q.    Okay.  Did you --
25        A.    Lack of marketability can range
```