WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| MAGNOLIA ISLAND PLANTATION L.L.C. and BARBARA MARIE CAREY LOLLAR<br>   Plaintiffs<br><br>VS<br><br>LUCKY FAMILY, L.L.C., W.A. LUCKY, III, and BOSSIER PARISH SHERIFF JULIAN C. WHITTINGTON<br>   Defendants | § § § § § § § § § § § § § | CIVIL ACTION NO: 5:18-cv-01526<br><br><br><br>CHIEF JUDGE S. MAURICE HICKS, JR.<br><br><br><br>MAGISTRATE JUDGE KAREN HAYES<br>Jury Trial Demanded |

**CORRECTIVE DOCUMENT (SUPPLEMENTAL REPLY MEMORANDUM IN SUPPORT OF BARBARA LOLLAR'S
MOTION FOR PARTIAL SUMMARY JUDGMENT)**

                RESPECTFULLY SUBMITTED by:

                /s/ Andrew D. Martin
                **DAVIDSON SUMMERS, APLC**
                Randall S. Davidson, LSBA No. 4715, T.A.
                J. Davis Powell, LSBA 33631
                Andrew D. Martin, LSBA No. 34947
                Harold R. Bicknell III, LSBA 36801
                330 Marshall Street, Suite 1114
                Shreveport, Louisiana 71101
                Ph: (318) 424-4342; Fax: (318) 226-0168
                Email: rsdav@davidsonsummers.com
                    dpowell@davisonsommers.com
                    dmartin@davidsonsummers.com
                    hbicknell@davidsonsummers.com

                *Counsel for Plaintiffs*

# I. INTRODUCTION

W.A. Lucky III's *Memorandum in Opposition to Barbara Marie Carey Lollar's Partial Motion for Summary Judgment* (the "Lucky Opposition")[1] does not establish any genuine dispute as to the material fact claims in Mrs. Lollar's motion for partial summary judgment (the "Lollar Motion").[2] The Lollar Motion delineated two separate grounds for summary judgment: first, that the sheriff's sale at issue in this case was not executed in accordance with statutory requirements, requiring an annulment of the sale,[3] and, second, that Mrs. Lollar is entitled to restitution of the promissory note (the "Note") seized under the now-reversed judgment in Lucky I.[4] On the first point, the Lucky Opposition fails to point to any evidence that the Sheriff appointed a third appraiser, as he was required to do by law. On the second point, both sides agree that the Note was seized under a judgment that was soon reversed by a unanimous appellate panel in *Lucky v. Carr*, 264 So.3d 693 (La. App. 2 Cir. 2019). This Court is therefore faced with a legal question: does Louisiana law require restitution of a promissory note when the judgment under which it was seized is reversed on devolutive appeal? For the reasons set forth in Section III, below, the answer is yes. Summary judgment in Mrs. Lollar's favor is appropriate on either issue.

# II. ANNULMENT

## A. Louisiana Law Allows for Annulment

Like all other sales, judicial sales may be set aside for fraud and may be declared null in cases of nullity. La. R.S. 9:3169; *Progressive Bank & Tr. Co. v. Vernon A. Guidry Contractors,*

---

[1] **Rec. Doc. 102**
[2] The supporting memorandum for the Lollar Motion is the "Lollar Memorandum."
[3] **Rec. Doc. 80**, p. 2-3
[4] **Rec. Doc. 80**, p.3-4

1

*Inc.*, 504 So. 2d 997, 999 (La. App. 1 Cir. 1987). Louisiana courts have annulled sheriff's sales. *Id.*; *Causeway Mortg. Co. v. Howard*, 247 So. 2d 277, 279 (La. App. 4 Cir. 1971). A sheriff's sale can be annulled in cases where there is an improper appraisal, or a complete lack of appraisal. *Tucker v. New Orleans Laundries, Inc.*, 145 So. 2d 365, 372 (La. App. 4 Cir. 1962); *Jones v. Alford*, 172 So. 213; *Stockton v. Stanbrough,* 3 La. Ann. 390, 390–91 (1848); *Phoenix Bldg. & Homestead Ass'n v. Meraux*, 189 La. 819, 824 (La. 1938). The *Tucker* court was faced with a claim for nullity of a sheriff's sale due to a lack of appraisal. The court recognized that nullity was the appropriate remedy for a failure to appraise but ruled that the plaintiff's claim had prescribed, stating: "**An improper, or in fact, a complete lack of an appraisal of the property creates a …relative nullity** [cured by prescription]." *Tucker*, supra, at 372. Relatedly, sheriff's sales can be annulled for fraud or ill practices. *Ellerd v. Williams*, 364 So. 2d 648, 650 (La. App. 2 Cir. 1978). Lastly, sheriff's sales can be annulled when any act of an auctioneer or third party stifles or chills the sale. *Swain v. Kirkpatrick Lumber Co.*, 143 La. 30, 38, 78 So. 140, 143 (La. 1918). The Lucky Opposition is thus mistaken in claiming that Louisiana law does not allow for an annulment of a sheriff's sale. That remedy is available to Mrs. Lollar.

Mr. Lucky misunderstands the citations to *Baumann v. Fields*, 332 So. 2d 885, 887 (La. App. 2 Cir. 1976) and *Assocs. Commercial Corp. v. Vick's Sand Pit & Dredging Co.*, 522 So. 2d 663, 664–65 (La. App. 5 Cir.), *writ denied*, 525 So. 2d 1056 (La. 1988).[5] Both were referenced in the Lollar Memorandum only as support for the claim that "property sold at a judicial sale under a writ of fieri facias must be appraised according to law prior to the sale." Both cases do support that proposition. The Lucky Opposition is also mistaken in implying that Mrs. Lollar's allegations in this suit are analogous to the claims in the *Vick's* case. The defendant in that suit pursued *injunctive*

---

[5] **Rec. Doc. 102**, p. 7-9.

2

relief on the grounds that the appraisal was "shockingly low." In contrast, Mrs. Lollar is not seeking injunctive relief, nor is her argument primarily based on the specific amount of a valid appraisal. Instead, the claims are: (1) that there was no authorized third appraisal, and thus no appraisal, as referenced in the *Tucker v. New Orleans Laundries, Inc*., matter; (2) that the sale process was tainted by fraud and ill practices, as referenced in the *Ellerd v. William*s matter, and (3) that the conduct of the Sheriff and the Luckys impermissibly chilled the sale, as referenced in the *Swain v. Kirkpatrick Lumber Co* matter. Though the facts support all three grounds, the focus of the Lollar Memorandum is the lack of an appraisal.

**B. The Sheriff Did Not Appoint a Third Appraiser[6]**

Mr. Lucky has not presented any evidence that the Sheriff appointed Mr. LaCour as a third appraiser; none of the documents he relies on for support even bear on that claim. These documents are addressed under eight bullet-pointed arguments.[7] The first is that the "Sheriff made the appointment after consulting with his independent legal counsel, Mr. Sutherland," putatively supported by the depositions of David Lee Miller and Jean Horne. Using "the sheriff made the appointment" as a premise supporting the argument that the "sheriff made the appointment" is circular reasoning. Further, the fact that the Sheriff's office sought legal guidance on some aspects of the appraisal process does not indicate that the legal guidance was directed to how to appoint a third appraiser, or, more importantly, on whether such guidance was followed. The cited deposition excerpts imply only that Mr. Sutherland advised the Sheriff's office to reach out to Mr.

---

[6] The Lucky Opposition points out that La. R.S. 13:4365 is not contained within the Deficiency Judgment Act, correcting a mistake in the Lollar Memorandum**. Rec. Doc. 102, p.9.** However, nothing flows from this, as it is undisputed that La.R.S. 13:4365 governs the appraisal process.

[7] **Rec. Doc. 102, p. 2-3** (eight-point list under "The Sheriff appointed the third appraiser.")

3

Shelton for a recommendation on a third appraiser. This advice has no bearing on who would appoint such an appraiser, or how such an appointment would be made.

The second bullet point is "the Sheriff's personnel knew that they were free to reject any appraiser recommendation made by Mr. Shelton." Knowledge that the Sheriff had the *ability* to appoint someone other than Mr. Shelton's recommendation is irrelevant to the question of whether the Sheriff *actually appointed* anyone.

The presence of a line in the Appraisement Sheet that the undersigned "having been appointed" does not show that the appointment occurred. The Appraisement Sheet is a document signed *after* an appraiser has performed his valuation. Mr. LaCour's letter of October 22, 2018 thanking the Sheriff for "this opportunity to serve you" was likewise written after Mr. LaCour performed his valuation and on the same date he signed the appraisal sheet – it does not suggest that the Sheriff took any action constitutive of an appointment prior to that day. Further, Mr. LaCour's beliefs about who he was serving are irrelevant to whether the Sheriff actually appointed him.

The Sheriff's *Ex Parte Motion to Fix Appraiser's Fee* of October 19, 2018, noting that the Sheriff *will* appoint a third appraiser, does not demonstrate that the Sheriff did appoint one. In fact, this only indicates that the Sheriff had *not yet* appointed an appraiser. Similarly, the Bossier Court's order on that motion, directing the Sheriff to pay $225.00 an hour to "any appraiser appointed by the Sheriff" indicates that no appraiser had yet been selected.

The seventh and eighth bullet points both involve Mr. LaCour's invoice to the Sheriff for his valuation. The fact that the Sheriff paid Mr. LaCour *after* the appraisal does not support the claim that the Sheriff appointed Mr. LaCour *before* the appraisal. It is consistent with Mrs. Lollar's claim that the Sheriff simply accepted Mr. Shelton's designation after-the-fact.

4

Mr. Lucky's discussion of the limited communications between Mr. LaCour and the Sheriff's office is likewise unavailing.[8] No party has claimed that the Sheriff's office informed Mr. LaCour in any pre-appraisal communication that he had been appointed as a third appraiser, and there is no evidence to that effect. If anything, the upshot of these limited communications appears to be that Mr. LaCour *already* believed he was the third appraiser when he spoke with the Sheriff's office for the first time, on October 19, 2018.[9] This belief could only have arisen from communications with Mr. Lucky's counsel.

Mr. Lucky is unable to point to any factual event constituting an appointment of Mr. LaCour by the Sheriff. In fact, Mr. Lucky does not even attempt to do so. The evidence suggests that, to the contrary, the only action the Sheriff took on the matter prior to October 22, 2018 was requesting a *recommendation* from Mr. Shelton. That request came before the appointment of a third appraiser was even allowed. The Lollar Motion asserted that there is no genuine factual dispute that the Sheriff failed to appoint a third appraiser. It properly supported that position by showing that the Defendants cannot produce admissible evidence to the contrary - that there is no evidence indicating that the Sheriff actually appointed a third appraiser, rather than acceding after the fact to a selection made by the creditor. FRCP 56(c)(1)(B). When a nonmovant is faced with a motion for summary judgment "made and supported" as provided by Rule 56, the nonmovant cannot survive the motion by resting on the mere allegations of its pleadings. FRCP 56; *Isquith for & on Behalf of Isquith v. Middle S. Utilities, Inc.*, 847 F.2d 186, 199 (5th Cir. 1988). Instead, the

---

[8] **Rec. Doc. 102, p.3-4**

[9] The Lucky Opposition implies that the Sheriff's office provided the Appraisement Sheet to Mr. LaCour. But while the cited deposition excerpts show that Mr. LaCour believed that to be the case, he was unable to provide any evidence of it. Discovery in this matter has not revealed any transmission of that form to Mr. LaCour from the Sheriff's office; instead, the only email containing the form came from Mr. Shelton. **Rec. Doc. 84-12** (PageID 2183 and 2190).

5

nonmovant must point to specific evidence, of the sort listed in Rule 56(c)(1)(a), demonstrating the existence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, (1986). Since none of the evidence cited by Mr. Lucky bears on the assertion that the Sheriff actually appointed a third appraiser – and, instead, suggests merely that the Sheriff acquiesced to Mr. Lucky's designation after the appraisal – he has failed to demonstrate the existence of a genuine dispute of material fact. The Court may therefore consider this fact undisputed. FRCP 56(e).

### III. RESTITUTION

**A. Restitution is Permitted and Required**

The Lucky Opposition argues that Louisiana does not allow for "restitution." It further argues that the *Gootee* decision is not based on unjust enrichment principles (under Article 2298) but on "payment of a thing not due" (under Article 2299). But both articles are contained within a Civil Code chapter entitled "enrichment without cause." The sort of recovery available under Article 2299 is, indeed, distinct from that in Article 2298; both, however, are remedies based on "enrichment without cause." Black's Law Dictionary explains "[restitution is] a body of substantive law in which liability is based not on tort or contract but on the defendant's unjust enrichment."[10] To the extent there is some question of whether there is a distinction between "unjust enrichment" and "enrichment without cause," it is a merely terminological dispute. The Lollar Memorandum cited to article 2299, not Article 2298, in discussing the rule of *Gootee*.[11]

Mr. Lucky further argues that Mrs. Lollar does not have a claim for restitution because she allegedly has "another remedy for the impoverishment:" her abuse of process and 42 USC § 1983

---

[10] Black's Law Dictionary (11th Ed.), at "restitution."
[11] **Rec. Doc. 80-1,** p.13

6

claims. But the remedy available under Article 2299 is not a subsidiary one; as the Comment makes clear, "this remedy is available even if other remedies are also available." Civ. Code art. 2299, Comment.

Further, the claims have different factual and legal bases, and also distinct remedies. The 1983 claim is based on the Sheriff's improper seizure, appraisal, and sale of the Note.[12] The Plaintiffs seek all monetary damages attributable to the Sheriff's misconduct in this regard, as well as an annulment of the Sheriff's sale.[13] Similarly, the remedy Plaintiffs seek under the abuse of process claim is the monetary damages caused by the Lucky Defendants' improper *Lucky II* and lis pendens filings.[14] On the other hand, the restitution claim is based on the Lucky Defendants' unjust enrichment: they currently possess the Note only because of their short-lived judgment in *Lucky I*. The Court *could* find the Sheriff and the Luckys free of fault on the 1983 and abuse of process claims and still determine that Mrs. Lollar is entitled to restitution of the Note.

The Lucky Opposition concedes that Mrs. Lollar is entitled to restitution of *something* under the legal principles underlying the *Gootee Const. v. Amwest Sur. Ins. Co.*, 2003-0144 (La. 2003) decision.[15] The only remaining question is therefore whether she is entitled to restitution of the Note itself, or only to the amounts paid for the Note at the Sheriff's sale. For the reasons that follow, the former is correct.

**B. The Luckys Cannot Circumvent Their Restitution Obligation**

Under the principles underlying the line of cases culminating in *Gootee*, after a reversal on devolutive appeal, a judgment creditor must restore to the judgment debtor everything he received

---

[12] **Rec. Doc. 51**, p. 2, 4, and 19.
[13] *Id.*, p. 24
[14] *Id.*, p. 24-25
[15] **Rec. Doc. 102**, p. 20

7

by virtue of the reversed judgment. Both Mr. Lucky and Vickie Lucky are judgment creditors under Lucky I, as that judgment was community property.[16] Both have benefitted by Lucky Family, LLC's ostensible possession of the Note, and both bear a restitution obligation to Mrs. Lollar. The two cannot circumvent this obligation simply by use of a business entity. The Court should therefore disregard the separate existence of the company. *Keller v. Haas*, 202 La. 486, 490–93, 12 So. 2d 238, 240 (La. 1943); *Tealwood Props., LLC v. Succ'n of Graves*, 64 So. 3d 397 (La. App. 2nd Cir. 2011). Though the Note nominally belongs to Lucky Family, LLC, the obligation to restore it accrues to the parties attempting to use the entity as a screen to absolve themselves of responsibility. *Id.*

Further, there is evidence that Lucky Family, LLC is the alter ego of Mr. Lucky and/or Mrs. Lucky. At worst, there is a fact dispute as to whether it is truly a separate entity. To the extent such a fact dispute exists, summary judgment in favor of Mr. Lucky or Lucky Family, LLC is inappropriate.

## C. Mrs. Lollar is Entitled to Restitution of the Note Itself

Civil Code article 2299 is unambiguous: "A person who has received a payment **or a thing** not owed to him is bound to restore **it** to the person from whom he received it."[17] The Luckys, as judgment creditors, have been enriched by possession of a Note under a reversed judgement. The Note is "a thing" that has enriched the judgment creditor; under Article 2299 and the *Gootee* decision, the company is bound to restore *it* to Mrs. Lollar. This Court would need to ignore the plain text of the Civil Code to accept Mr. Lucky's argument.

---

[16] See, **Rec. Doc. 80-1**, p. 18-21 and **Rec. Doc. 110-2**, p. 16-18.
[17] Emphasis added

8

The Lucky Opposition glosses over the specific directive of Article 2299 by conflating the collective obligation of the judgment creditors to restore the Note with Mr. Lucky's obligation to pay the sheriff's sale proceeds to Mrs. Lollar after the reversal of Lucky I. By holding those funds after the reversal, Mr. Lucky was unjustly enriched by the amount of those proceeds. His payment did not restore to Mrs. Lollar the "thing" that the Luckys received (through their family company) at the sheriff's sale. That thing is the Note, and the obligation to restore it arises from the undue possession of it. If and when this Court rules that the sheriff's sale is a nullity, Mrs. Lollar does not dispute that she will no longer be entitled to the sheriff's sale proceeds. She will be happy to pay those funds back at that point. But the Court has not *yet* declared the sale a nullity, and so Mrs. Lollar is at least provisionally entitled to the minor benefits that accrue to her under an effective sheriff's sale.

**D. Even if the Note Itself is Not Restored, Mrs. Lollar is Entitled to Restitution of the Payments or Value Thereunder**

If the Note itself is not returned to her, Mrs. Lollar is entitled to restitution all payments, or rights to payment, under it. In addition to supporting restoration of property itself upon the reversal of a judgment on devolutive appeal, *Gootee* also supports restoration of any money received from the sale of property in the hands of the seizing creditor in the same scenario. Any money the purported judgment creditor receives as payment on a promissory note seized from the former judgment debtor is, by definition, money obtained through execution of judgment. The Luckys owe a restitution obligation for the full extent of this money. What Lucky Family LLC purportedly obtained through the sheriff's sale was a negotiable instrument, which is "an unconditional promise or order to pay a fixed amount of money. ..." La. R.S. 10:3-104. The Luckys' company therefore putatively holds the right to receive payment of over $1.7 million

9

dollars in cash, in return for the purchase price of only $105,000. The Luckys are enriched by all payments actually received (now or hereafter) pursuant to the Note, or by the right to receive such payments. They thus have an obligation to restore to Mrs. Lollar all payments paid under the Note and/or the right to receive those payments.[18]

Alternatively, the Luckys have been enriched to the extent of the value of the Note. If the Court believes the value of the Note could be something other than its face value, then there is a genuine issue of material fact that precludes a summary judgment in favor of Mr. Lucky or Lucky Family, LLC.[19]

## IV. RESPONSE TO OBJECTION

The Lucky Opposition objects to the Lollar Motion's use of an October 29, 2018 letter from Mr. Shelton, claiming that this communication is barred by Federal Rule of Evidence 408.[20] But the cited portion of the letter at issue does not contain any "furnishing, promising, or offering" of a settlement offer. Instead, it is part of Mr. Shelton's description of the "the current situation" facing both parties. The letter then transitions to section containing a settlement offer. Rule 408 does not render entire letters inadmissible; the limitation merely bars parties from using particular offers – *within* a given letter or other communication - for the purpose of proving the validity of any claim at issue in the offer. The cited portion of the letter was offered for the purpose of establishing that Mr. Lucky was attempting to achieve a double recovery – not for the purpose of proving the validity of anything in Mr. Lucky's subsequent settlement proposal.

---

[18] Further, the Lucky Defendants cannot use the shelter of Holder in Due Course protections. **Rec. Doc. 110-2**, p.24-25.
[19] Under **Rec. Doc. 82, 83, or 84.**
[20] Rec. **Doc. 98-2**, and **Rec Doc. 102**, p. 1.

10

Case 5:18-cv-01526-SMH-KLH Document 121-2 Filed 02/03/20 Page 12 of 12 PageID #: 3698