```
              UNITED STATES DISTRICT COURT

             WESTERN DISTRICT OF LOUISIANA

                  SHREVEPORT DIVISION


MAGNOLIA ISLAND PLANTATION, :   CIVIL ACTION
L.L.C., BARBARA MARIE       :   NO. 5:18-cv-01526
CAREY LOLLAR                :
                            :
VERSUS                      :   DISTRICT JUDGE
                            :   ELIZABETH FOOTE
LUCKY FAMILY, L.L.C.,       :
W.A. LUCKY, III, AND        :
BOSSIER SHERIFF JULIAN      :
C. WHITTINGTON, IN HIS      :   MAGISTRATE JUDGE
OFFICIAL CAPACITY           :   KAREN HAYES




            DEPOSITION OF DAVID LEE MILLER
                  October 21, 2019










Reported By:
Jayne M. Reeves, CCR
```

318.424.1707         KAREN TYLER REPORTING, LLC         318.424.1744 - Fax
          3000 Fairfield Avenue, Suite A - Shreveport, LA 71104

EXHIBIT 1

1   affects the date you choose other than service
2   and publication?
3        A.   There could be a number of things.
4   There may be a bankruptcy filing.  And in that
5   case, we would contact the plaintiff's attorney,
6   let them know that we had received it.  Sometimes
7   we'll get a call from the plaintiff's attorney
8   putting the suit on hold for whatever reason.
9        Q.   What role do appraisals have in this
10  process?
11       A.   Appraisals, if it's -- if those writs
12  are received and they're with benefit of
13  appraisement, then when we serve a notice of
14  seizure.  We also serve a notice of appraiser.
15  Appoint an appraiser.  And then the plaintiff and
16  the defendant both get an opportunity to provide
17  us with appraisers' names.
18       Q.   So you'll receive an appraisal -- or
19  you provide the opportunity -- excuse me.  Strike
20  that.
21            You provide the opportunity for both
22  the plaintiff and the other party to submit
23  appraisals?
24       A.   That's right.
25       Q.   And if both parties submit those, what

1   happens next?
2      A.   If they both submit and there's a
3   greater difference than 10 percent between the
4   two appraisals, then a referee appraisal has to
5   be gotten.
6      Q.   Define referee appraisal.
7      A.   Well, it's the third appraisal that we
8   would use to create the beginning bid.
9      Q.   Why is it referred to as a referee
10  appraisal?
11     A.   No particular reason.  A third
12  appraisal is what it's called sometimes.
13     Q.   You said that this third appraisal or
14  referee appraisal comes into play when there is a
15  more than 10 percent difference between the first
16  two appraisals.  Correct?
17     A.   Correct.
18     Q.   What is the purpose of the third
19  appraisal?
20     A.   The third appraisal takes the place of
21  the average between the other two.
22     Q.   I understand what it does.  I guess I'm
23  asking what its purpose is.
24     A.   Well, you take -- well, there's the
25  average appraisal between the first two or the

```
 1  This is an e-mail dated September 17, 2018, also
 2  from Kim to Mr. Shelton.  If you would take a
 3  look at that real quick.
 4       A.   Okay.
 5       Q.   Okay.  Kim is asking Mr. Shelton for a
 6  third appraiser; is that correct?
 7       A.   Yes.
 8       Q.   Earlier you said it was the sheriff's
 9  office that chooses the third appraiser.
10       A.   Yes.
11       Q.   But this is the judgment creditor's
12  attorney being asked to choose.  Correct?
13       A.   Yes.
14       Q.   What was the reason for that deviation
15  in this suit?
16       A.   Because of the highly technical
17  appraiser that we needed.
18       Q.   Explain that to me a little more so
19  that we can discuss it.
20       A.   Well, an appraiser that would appraise
21  an instrument like this is not -- they have to
22  have certain credentials to be able to do that.
23       Q.   And you're referring to the promissory
24  note.  Correct?
25       A.   Yes.
```

1      Q.   Mr. Curtis Shelton.
2      A.   And that's also who I call the
3   plaintiffs' attorney?
4      Q.   That's correct, I believe.
5      A.   There's going to be a great deal of
6   communications in there with the plaintiffs'
7   attorney.
8      Q.   Okay.  And so did the sheriff's office
9   provide any background information to Mr. Lacour
10  for him to make his appraisal?
11     A.   I don't know.
12     Q.   Who would know that?
13     A.   Ms. Flournoy.
14     Q.   Did you see any indication in the file
15  that you reviewed that the sheriff's office
16  provided any information to Mr. Lacour for the
17  purpose of his appraisal?
18     A.   Not that I recall.
19     Q.   Did the sheriff's office hire
20  Mr. Lacour?
21     A.   Can you rephrase the question?  I don't
22  understand the question.  Did we hire him?
23     Q.   Did you retain Mr. Lacour?
24     A.   Define retain.  I mean, was there a
25  contract between us?  Not that I know of.

1  Q. Was there any correspondence between
2  the sheriff's office and Mr. Lacour requesting
3  that he serve as the sheriff's appraiser?
4  A. I'm not sure. I don't know.
5  Q. Did you see any correspondence in the
6  files that you reviewed between the sheriff's
7  office and Mr. Lacour requesting that he serve as
8  the sheriff's third appraiser?
9  A. Not that I recall.
10          (Miller Deposition Ex. 10 was
11  marked for identification.)
12  Q. (BY MR. POWELL) This is Exhibit 10.
13  This is entitled Appraisement Sheet signed by
14  Mr. Chad Garland. Are you familiar with this
15  document?
16  A. This form. Yes.
17  Q. You're familiar with the form. Are you
18  familiar with who Mr. Garland is in this matter?
19  A. He is the appraiser for the plaintiff.
20  Q. That's correct. That's what it says
21  there. Have you reviewed this document before?
22  A. I believe I reviewed it in the file.
23  Q. Does this appear to be a correct copy
24  of that document?
25  A. It appears.

DAVID LEE MILLER                                     10/21/2019

82

1  earlier -- okay.  I'll move along.
2       Q.   (BY MR. POWELL)  You did say earlier
3  that the appraisers should do their job.  Right?
4       A.   That's right.
5       Q.   That's what they're for, is you provide
6  them with certain information, but then they do
7  their job?
8       A.   That's correct.
9       Q.   Okay.  Would it be -- would the
10 sheriff's office provide the appraiser -- would
11 it be the sheriff's office role to provide the
12 appraiser with other appraisals on the property?
13      A.   No, sir.
14      Q.   Okay.  Would it be the sheriff's office
15 role to provide the appraiser with any opinion
16 the sheriff's office has about the value of the
17 property?
18      A.   To the appraiser?
19      Q.   Yes.
20      A.   No.
21      Q.   Okay.  Would it be the sheriff's office
22 role to tell the appraiser what he should and
23 shouldn't consider in doing his appraisal?
24      A.   No.
25      Q.   Okay.  And Mr. Shelton went through the