UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| MAGNOLIA ISLAND PLANTATION, L.L.C. | § | CIVIL ACTION NO: 5:18-cv-01526 |
| and BARBARA MARIE CAREY LOLLAR | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| VS. | § | CHIEF JUDGE MAURICE HICKS |
| | § | |
| LUCKY FAMILY, L.L.C., W.A. LUCKY, III, | § | |
| And BOSSIER PARISH SHERIFF JULIAN | § | |
| C. WHITTINGTON, in his official capacity | § | |
| | § | MAGISTRATE JUDGE KAREN HAYES |
| Defendants | § | |

**REPLY TO MEMORANDUM IN OPPOSITION TO
SHERIFF'S MOTION FOR SUMMARY JUDGMENT**

Respectfully submitted by:

LANGLEY PARKS, LLC

By:___ S / Julianna P. Parks_____
     Glenn L. Langley, Bar Roll No. 8019
     Julianna P. Parks, Bar Roll No. 30658

401 Market Street, Suite 1100
Shreveport, Louisiana 71101
(318) 383-6422 Telephone
(318) 383-6405 Telefax

***Attorneys for Sheriff Julian C. Whittington***

Defendant Bossier Parish Sheriff Julian C. Whittington (hereinafter "the Sheriff") files this Reply Memorandum in Support of his Motion for Summary Judgment (hereinafter "the Sheriff's Motion")(Rec. Doc. 96) in response to the Memorandum in Opposition  (Rec. Doc. 103) filed by the Plaintiffs in this matter.  For the reasons set forth in the Sheriff's Motion and in this Reply, there is no issue of material fact as to the claims made against the Sheriff and the Sheriff's Motion for Summary Judgment should therefore be granted.

I.      **None of the claims made by Plaintiffs in their Amended Complaint (Doc. 51) state a claim against the Sheriff in his official capacity.**

Plaintiffs state in their opposition that the Sheriff's Motion's sole claim is that all claims should be dismissed under qualified immunity, but that the Sheriff is not entitled to qualified immunity as to the claims made against the Sheriff in his official capacity.  However, a review of Plaintiffs First Amended and Restated Complaint (hereinafter "the Complaint") (Rec. Doc. 51), shows that although Plaintiffs state in their opening paragraph that they are asserting a claim against the Sheriff in his official capacity, none of the factual claims made in the Complaint assert a cause of action against the sheriff in his official capacity. Therefore, if all other claims are dismissed there will be no claims remaining against the Sheriff in his official capacity.  The Sheriff does not need to argue for the dismissal of the claims against him in his official capacity where none have been asserted.

The distinction between official-capacity suits and personal-capacity suits is more than "a mere pleading device." Hafer v. Melo, 502 U.S. 21, 27 (1991); citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 63 (1989).  On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. Kentucky v. Graham, 473 U.S. 159, 166 (1985). More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity

itself is a "moving force" behind the deprivation. Id.; citing Polk County v. Dodson, 454 U.S. 312, 326 (1981). Thus, in an official-capacity suit the entity's "policy or custom" must have played a part in the violation of federal law. Id.  The mere use of the words "in his official capacity" does not transform a suit into an "official-capacity" suit. Tickle v. Ballay, 2018-0408 (La. App. 4 Cir. 11/14/18), 259 So. 3d 435, 442; citing Kentucky v. Graham, 473 U.S. 159, 166 (1985). Because the real party in interest in an 'official capacity' suit is the governmental entity, and not the named official, the entity's policy or custom must have played a part in the violation of federal law. Id.

Plaintiffs argue in their opposition that the Sheriff did not address these claims in the Sheriff's Motion. Again, there were simply no claims in the Amended Complaint of any policy or custom that played a part in a violation of the alleged constitutional rights of Plaintiffs for the Sheriff to address. The claims of the Amended Complaint are only that the Sheriff failed to appoint an appraiser and did not give proper notice. There is no allegation of a policy or custom that led to either of these allegations.

Despite making no allegations regarding any policy or custom in their Amended Complaint, Plaintiffs nevertheless allege in their Opposition (Rec. Doc. 103) that a genuine issue of material fact exists regarding whether "allowing a creditor's attorney to take over the Sheriff's statutory role was acting in accordance with a policy or custom." (Rec. Doc. 103, p. 17 of 25). First, Plaintiffs have presented no evidence that the creditor's attorney "(took) over Sheriff's statutory role." All of the evidence presented in this case (as discussed thoroughly hereinbelow) shows that the Sheriff's office followed its statutory duty to appoint a third appraiser. Plaintiffs have presented no evidence to support their unsubstantiated, albeit passionate, argument that the Sheriff failed to appoint an appraiser. In support of this and the claim it was the result of a policy or custom, which

Plaintiffs allege for the first time in their Opposition, the only evidence Plaintiffs cite is the

deposition testimony of David Miller:

> Q. Is it unusual for the sheriff's office -- whether it's this note, which
> might be unusual, you know, atypical. But is it unusual for the
> sheriff's office when it runs across property, say oil and gas property
> or other things that are unique, to ask the plaintiff's lawyer, Do you
> know some appraisers that we might consider?
> A. No.

Rec. Doc. 84-11, at Ex. 34, page 60, line 12-20 (as cited in Rec. Doc. 103, p. 17 of 25, footnotes

32 and 33).

> Q. Okay. So if the sheriff's office asked the plaintiff to give them
> some ideas and they appoint somebody, you expect that person will
> be the sheriff's appraiser. Right?
> A. That's right.

Id. at page 68, line 14-18. (as cited in Rec. Doc. 103, p. 17 of 25, footnotes 32 and 33).

In this, Plaintiffs are equating asking an attorney who represents a party in the suit for a

recommendation of a specialized appraiser that is needed, with the Sheriff's office having "a

custom of refusing to appoint a third appraiser, and instead allowing plaintiffs' lawyers to perform

its function" and a custom of "outsourcing (the Sheriff's) own official duties." Rec. Doc. 103, p.

17 of 25.  Providing a name or recommendation for the Sheriff to consider in appointing a third

appraiser does not equal allowing a party to appoint the appraiser. This falls far short of being

evidence of a policy or custom of "outsourcing official duties."

Additionally, this argument ignores the fact that the testimony regards asking an *attorney*

for a recommendation, who is an officer of the court, not an actual party to the proceeding. This

distinction is important as it is reasonable for the Sheriff to seek a suggestion from an attorney

who has certain ethical duties and obligations as an officer of the court. Further, this policy is not

what led to the Sheriff's office seeking a recommendation from Curtis Shelton in this case.  As is

evidenced by the affidavits attached hereto, the only custom or policy of the Sheriff's office that

was followed herein, that may have contributed to Sheriff's office employees asking an attorney

for a recommendation of a third appraiser, was the custom or policy to consult with supervisors

and the Sheriff's office legal counsel when seeking guidance. See Exhibits A and B. This custom

or policy does not violate any constitutional protections, but rather works to ensure the constitution

is followed. Therefore, the claims against the Sheriff in his official capacity, (which were made

for the first time in Plaintiff's Opposition), should be rejected.

II.     **The Sheriff is not vicariously liable for conduct of the employees of the BSO.**

None of the claims involve any action alleged to have been actually taken by the Sheriff.

Plaintiffs have made no allegation that the Sheriff personally took any actions in this matter, much

less any that would constitute violation of clearly established law. Therefore, since there is no

evidence of any custom or policy, the only claim can be that the Sheriff is personally responsible

for the actions of his employees, as none of his individual employees have been named in this suit

in their individual capacities. However, the Fifth Circuit has ruled that a sheriff cannot be held

personally liable in vicarious responsibility for the torts of his employee or deputy, Burge v. Par.

of St. Tammany, 187 F.3d 452, 470 (5th Cir. 1999). Because Plaintiffs have presented no evidence

of the Sheriff taking any action in this case, much less any that could be considered a violation of

state or federal law, the claims against the Sheriff in his personal capacity must be dismissed.

III.     **Even if the Sheriff were responsible, personally, for the actions taken by his employees, he is still entitled to qualified immunity as Plaintiffs have failed to show where any clearly established law existed that prohibited the actions taken by Sheriff's office employees.**

A.  **The Sheriff's employees consulted with an attorney as to all actions taken.**

The Sheriff's employees not only followed all law of which they were aware, they also

consulted with an attorney with over forty years of experience in sheriff's sales, to ensure that their

actions complied with clearly established law. Plaintiffs have presented no law that was clearly

established at the time of the incidents at issue in this lawsuit that prohibited any of the actions

taken by the Sheriff in appointing the appraiser or making the required service. As discussed

extensively in the Sheriff's Motion, with respect to the clearly established prong, while the

Supreme Court does not require a case directly on point, the pertinent legal question must have

been *beyond debate* at the time of the alleged constitutional violation. Ashcroft v. al-Kidd, 563

U.S. 731, 741 (2011). It is also settled that qualified immunity protects all but the plainly

incompetent or those that knowingly violate the law. Malley v. Briggs, 475 U.S. 335 (1986).  There

was no law that existed at the time of these actions that stated it was against the law for the Sheriff's

office employees to request a recommendation for a specialized appraiser from an attorney

representing a party involved in the sheriff's sale. The only law Plaintiffs can point to is the

Louisiana Statue requiring that the Sheriff "appoint" a third appraiser. The logical leap that the

Sheriff's office employees should have taken that statute and known that it prohibited obtaining a

recommendation is not "beyond debate." Therefore, the Sheriff is entitled to qualified immunity

for the actions of his employees IF he is held liable personally for their actions.

### B. All evidence supports a finding that the Sheriff's employees appointed Patrick LaCour to serve as the third appraiser of the subject promissory note.

The Plaintiffs repeatedly allege throughout their Opposition that the Sheriff did not appoint

the third appraiser. However, the following evidence establishes that the Sheriff appointed Mr.

Lacour as the appraiser, and Plaintiffs have not presented evidence that disputes these facts.

1. The Sheriff's employees consulted with independent legal counsel, James Southerland, in locating a third appraiser.[1]

2. The Sheriff's employees knew that they were free to reject any appraiser recommendation made by Curtis Shelton.[2]

---

[1] Exhibit A; see also Rec. Doc. 102, Exhibit 71: *Deposition of David Lee Miller,* 32:1-8; 52: 14-53:1; Exhibit 72: *Deposition of Jeane Horne,* 14:2-15:11; 17:15-18:25; 46:9-47:7.
[2] Rec. Doc. 102, Exhibit 34: *Deposition of David Lee Miller*, 61:2-7; Rec. Doc. 84-11, p.28 of 36.

3. The Appraisement Sheet signed by Kim Flournoy for the Sheriff and by Patrick Lacour began "We, the undersigned, having been appointed to appraise the property advertised for sale by the Sheriff," and was signed by Patrick Lacour in two places on a line over "3. Third (sheriff) Appraiser."[3]

4. Patrick Lacour wrote the sheriff a letter on October 22, 2018 reading: "I appreciate this opportunity to serve you . . . Should you have any questions with respect to the issues we have discussed, we encourage you to call me."[4]

5. The Sheriff signed an *Ex Parte Motion to Fix Appraiser's Fees*[5] filed on October 19, 2018, which affirmatively stated: "The Sheriff will appoint a third appraiser" and "The Sheriff intends that any appraiser he appoint [sic] be a person who is qualified by education, skill or experience to appraise the Promissory Note." By that motion, the Sheriff took action under Louisiana Revised Statutes 13:4366 to enable him to pay his appraiser in excess of $50.

6. After the Sheriff signed the Ex Parte Motion to Fix Appraiser's Fees, the State Court signed the order on it reading:

> IT IS HEREBY ORDERED THAT, in accordance with Louisiana Revised Statutes 13:4366 Paragraph A(2), the Sheriff be and is hereby authorized to pay a fee calculated on an hourly rate basis of up to $225.00 per hour to any appraiser appointed by the Sheriff herein . . .

Order.[6]

7. Mr. Lacour addressed the invoice for his services directly to the Sheriff.[7]

8. Mr. Lacour's invoice for his services was paid directly to the Sheriff.[8]

### C. Plaintiffs have presented no evidence that Lacour's appraisal was incorrect or invalid.

The Sheriff cannot be held liable for an alleged violation of Plaintiffs' constitutional rights

in appointing a certain appraiser when there is no evidence that the appraiser was unqualified, did

not follow the standards of his profession or that his appraisal was in any way incorrect. Without

---

[3] Exhibit B, attachment "Exhibit A", *Appraisement Sheet*;  Rec. Doc. 84-16, pp. 18-19 of 32.
[4] Exhibit B, attachment "Exhibit A", October 22, 2018 letter ;   Rec. Doc. 102, Exhibit 73.
[5] Rec. Doc. 102, Exhibit 74; pp. 2-3 paragraphs 7 & 8.
[6] Rec. Doc. 102, Exhibit 74, p. 6 (emphasis added).
[7] Rec. Doc. 102, Exhibit 38, Rec. Doc. 84-16, p. 15 of 32; Exhibit 41, Rec. Doc. 84-16, p. 22 of 32.
[8] Rec. Doc. 102, Exhibit 42, Rec. Doc. 84-16, pp. 23-24 of 32.

this there would be no violation of any right. It would be a mistake without damages. There is absolutely no evidence to support Plaintiffs claim that Lacour's appraisal was improper in any way, only Plaintiffs' accusations of collusion.

Furthermore, even if the appraisal were improper, that alone would not support a claim against the Sheriff as Plaintiffs have presented no law to support any finding that the Sheriff has a duty to evaluate the third appraisal to determine if the appraisal was done correctly. The Sheriff is not tasked with having this skill or accreditation to evaluate the work of a qualified professional. Another qualified appraiser, Chad Garland, came to the similar value.  Rec. Doc. 51-11. Further, the Sheriff is not tasked with telling the appraiser what information he is required to consider in appraising the property. He is only required to appoint, and that is what he did. There is no special procedure, process or piece of paper he is required to complete. No special appointing ceremony is required. It is up to the expert himself, the appraiser, to know what information is necessary and to obtain such information to perform a just and accurate appraisal in accordance with the industry's standards.

### D. Plaintiffs have presented no evidence to support any Louisiana State law claims against the Sheriff and, even if they did, Louisiana offers qualified immunity from state law claims.

The only claim Plaintiffs have made against the Sheriff that he violated state law is that he did not "appoint" the appraiser as required by La. R.S. 13:4365 (B). Regardless, Plaintiffs have presented no evidence that any state laws were violated, as thoroughly discussed above, as the evidence shows that the Sheriff did in fact appoint the third appraiser.  In the Opposition, Plaintiffs also suggest that a state law abuse of process claim was made against the Sheriff, however a review of Plaintiffs' Amended Complaint (Rec. Doc. 51, paragraphs 58 and 69) shows that no abuse of process claim was asserted against the Sheriff, only against the other defendants.

Further, Louisiana Revised Statues 9:2798.1 provides: "Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties." In Mercer v. Lowe, the Louisiana Second Circuit found that the detective's decision to close an abuse case was the type of discretionary decision entitled to immunity under this statute, in the absence of gross negligence. 51,333 (La. App. 2 Cir. 4/5/17), 217 So. 3d 1235, 1240.  In analyzing whether the immunity applied, a court must determine whether discretion is involved, and the court must then determine whether that discretion "is the kind which is shielded by the exception, that is, one grounded in social, economic or political policy." Id. at 1238. The decision of how to locate an appraiser was a discretionary act taken by the Sheriff's office employee and it was grounded in social, economic, or political policy. There is no evidence that the Sheriff's office employees committed gross negligence in seeking a recommendation for the appraiser and the Sheriff is therefore entitled to immunity as to this decision under this statute.

### E.  Qualified Immunity is Immunity from Suit.

Plaintiffs suggest throughout their Opposition that Plaintiffs should be allowed to go to trial to see if any evidence to support their claims can be developed therein. They make this claim despite having conducted extensive discovery in this case and still being unable to present evidence of any wrongdoing by the Sheriff that would entitle Plaintiff to recovery under their various claims. However, qualified immunity is designed to be immunity from suit rather than a mere defense to liability. Pearson v. Callahan, 555 U.S. 223, 231 (2009). The U.S. Supreme Court has stated that qualified immunity is effectively lost if a case is erroneously permitted to go trial. Id.  The purpose of qualified immunity is to ensure that "insubstantial claims" against government offices are

resolved prior to discovery this was the driving force behind the creation of the qualified immunity doctrine. Id. The Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation. Id. at 232.

Plaintiffs have already deprived the Sheriff of the ability to be relieved from this suit at the pleading stage by making allegations that the Sheriff "colluded" with W.A. Lucky, III (hereinafter "Lucky") (Rec. Doc. 1, paragraph 25). After all of the discovery the Sheriff has been subjected to, there is absolutely no evidence of any "collusion" or "scheme." Plaintiffs can only point to the fact that the Sheriff sought a recommendation for an appraiser from an attorney in the proceeding, which was done upon the suggestion of the Sheriff's counsel. Exhibit A. Nevertheless, Plaintiffs continue to allege a collaboration between the Sheriff's office and Lucky and claim that the evidence "smack(s) of a scheme." Allowing the case to proceed to trial in the hope that Plaintiffs will maybe discovery some evidence to support their claims would result in loss of the purpose of qualified immunity.  Id. at 231. The Sheriff prays that this Court will put an end to these baseless and unsupported allegations by the Plaintiffs and grant the Sheriff the qualified immunity to which he is entitled under the law.

### IV.      The Sheriff has denied the claims contained in Plaintiffs' Amended Complaint.

Plaintiffs' assertion that the Sheriff has admitted all claims contained in their Amended Complaint (Rec. Doc. 51) should be rejected. The Sheriff filed an Answer prior to the Plaintiffs seeking a default against the Sheriff and Plaintiffs have suffered no inconvenience due to the delay.[9] (Rec. Doc. 109). Furthermore, Sheriff denied essentially the same claims in his original answer (Rec. Doc. 5). Plaintiffs alleged in their original Complaint that the Sheriff allowed W.A. Lucky, III to appoint the third appraiser (Rec. Doc. 1, paragraph 23), and the Sheriff denied this

---

[9] Counsel will be happy to provide further briefing on this matter should an issue be raised by Plaintiffs or the Court. However, the Sheriff will not address these arguments herein since no objection has been raised.

allegation (Rec. Doc. 5, paragraph 23). Plaintiffs also alleged in their original Complaint that the Sheriff failed to provide notice of the Sheriffs' sale to Plaintiff Magnolia (Rec. Doc. 1, paragraph 34), and the Sheriff denied this claim (Rec. Doc. 5, paragraph 34). Thus, the same claims made in the Amended Complaint were made in the original complaint and denied by the Sheriff. The Plaintiffs filing the Amended Complaint does not somehow revoke the Sheriff's prior denial of these same claims.

V.      **The Sheriff offers additional evidence and documents in support of his Motion For Summary Judgment and in Reply to Plaintiff's Opposition to Same.**

The Sheriff attaches hereto the affidavits of the James Southerland and Kim Flournoy offered in further support of the Sheriff's Motion for Summary Judgment. Additionally, the Sheriff offers an updated Statement of Undisputed Facts in Support of the Sheriff's Motion for Summary Judgment to include the facts from the affidavits and respond to Plaintiffs Statement of Contested Facts. (Rec. Doc. 103-1)