UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

MAGNOLIA ISLAND PLANTATION,  CIVIL ACTION NO. 5:18-CV-1526
ET AL.

VERSUS                       DISTRICT JUDGE:
                             HON. S. MAURICE HICKS, JR.

LUCKY FAMILY, L.L.C., ET AL.  MAGISTRATE JUDGE:
                             HON. KAREN L. HAYES

**MEMORANDUM IN SUPPORT OF
DAUBERT MOTION TO EXCLUDE
OPINIONS OF JOHN W. DEAN**

AYRES, SHELTON, WILLIAMS,
BENSON & PAINE, LLC
    Curtis R. Shelton
La. Bar Roll No. 17137
333 Texas Street, Suite 1400 (71101)
P. O. Box 1764
Shreveport, LA 71166
Telephone: (318) 227-3500
Facsimile: (318) 227-3980
Email: curtisshelton@arklatexlaw.com

WIENER, WEISS & MADISON
A Professional Corporation
    R. Joseph Naus, #17074
    Marjorie Frazier, #32991
330 Marshall Street, Suite 1000 (71101)
P. O. Box 21990
Shreveport, LA 71120-1990
Telephone: (318) 226-9100
Facsimile: (318) 424-5128
E-mail: rjnaus@wwmlaw.com
E-mail mfrazier@wwmlaw.com

ATTORNEYS FOR W. A. LUCKY, III

# TABLE OF CONTENTS

**INTRODUCTION**................................................................................................................1

**FACTS** ................................................................................................................................1

**LAW AND ARGUMENT**....................................................................................................4

Part I. Applicable legal standards .........................................................................................4

Part II. The plaintiffs' claims...............................................................................................5

Part III. Mr. Dean's opinions ...............................................................................................7

Part IV. Mr. Dean's opinion is not relevant to plaintiffs' claims that the seizure and
Sale of the *Promissory Note* was violative of Louisiana state court
procedures for such ....................................................................................................7

**CONCLUSION** ...................................................................................................................12

# TABLE OF AUTHORITIES

**Statutes and Rules:**

**Federal**

Fed. R. Evid. 702 ...............................................................................................4, 5

Fed. R. Evid. 702(d)...............................................................................................5

**State**

La. R.S. 13:4365 ...............................................................................................8, 11

La. R.S. 13:4365(B) ...............................................................................................8

La. Code Civ. Proc. art. 2298...............................................................................10

**Cases:**

*Associates Commercial Corp. v. Vick's Sand Pit & Dredging Company, Inc.*, 522 So.2d 663, 663-64 (La. App. 5th Cir.), *writ denied*, 525 So. 2d 1056 (La. 1988) .............. 9-10

*Baumann v. Fields*, 332 So.2d 885 (La. App. 2d Cir. 1976) ........................................9

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993) ............................4, 5

*E.E.O.C. v. S & B Indus., Inc.*, No. 3:15-CV-641-D, 2017 WL 345641, at *2 (N.D. Tex. Jan, 24, 2017) ...............................................................................................4

*Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012)........................................5

*Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) ........................5

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) ..........................................4

*Lucky v. Carr*, 52,434 (La.App. 2 Cir. 1/16/19); 264 So.3d 693 (2019) ........................3

*Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir. 2002) ....................................5

*Reed v. General Motors Corp.*, 773 F.2d 660, 663 (5th Cir. 1985)................................4

*United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010) ......................................5

**INTRODUCTION**

This motion concerns the expert testimony of plaintiff's expert witness, John W. Dean. Mr. Dean is a certified public accountant and appraiser.  Mr. Dean seeks to provide an opinion concerning the appraisal made by defendant W. A. Lucky, III's appointed appraiser, Mr. Chad Garland.  Mr. Dean also seeks to provide an opinion that he appraisal made by the Sheriff's appointed appraiser, Mr. Patrick Lacour, and that his appraisal was "outside the bounds of reasonableness."[1]

Such opinions are wholly irrelevant to any issues presented in this case, for several reasons.  First, Louisiana law does not support any attack upon an appraisal based on the charge that the appraisal does not accurately reflect the valuation of the property.  Second, Louisiana's statutory scheme for appraisals such as this is expressly designed to prevent subsequent collateral attacks the accuracy of appraisals.  Third, Mr. Dean, who agrees that Mr. Lacour used the appropriate general methodology in performing the appraisal, does not opine that the Mr. Lacour's appraisal was not "true and just," which is the statutory requirement.

This memorandum will address these issues with respect to Mr. Dean's criticism of Mr. Lacour's appraisal. However, the same reasoning applies to Mr. Dean's criticism of Garland's appraisal. In addition, Mr. Garland's appraisal did not determine the minimum bid at the sheriff's sale.

**FACTS**

Beginning in 2008, Mr. Lucky had sued Barbara Marie Carey Lollar ("Mrs. Lollar") in State Court for a money judgment on account of the latter's breach of her fiduciary duties as agent. That lawsuit was "W. A. Lucky, III versus Barbara Marie Carey Carr," number 127,573

---

[1] Dean report, pg. 5 (Exhibit A).

("Lucky I") in the 26th Judicial District Court, Bossier Parish, Louisiana ("State Court"). Following the trial of Lucky I and immediately before the case was to be deemed submitted for a decision, Mrs. Lollar, along with her husband, Ronald Lollar ("Mr. Lollar"), acted to place immovable property that she owned outside of her patrimony. Mrs. Lollar had purchased the property in 2003. Not until fourteen years later and in the few days immediately before Lucky I was deemed submitted for a decision did Mrs. Lollar take such action.

With the assistance of her attorney in Lucky I and obviously to avoid the anticipated judgment, Mrs. Lollar and Mr. Lollar did the following:

1. Mr. Lollar formed Magnolia Island Plantation, L.L.C. ("Magnolia");

2. Mrs. Lollar executed and recorded a *Credit Sale Deed with Vendor's Lien and Special Mortgage* to convey her property to Mr. Lollar;

3. Mr. Lollar made a *Promissory Note* payable to Mrs. Lollar for $1,730,000.00 plus interest as the consideration for, and secured by, the credit sale deed

4. Mr. Lollar then executed an *Exchange Deed, with Assumption of Mortgage* to convey the property to Magnolia in exchange for the issuance of the membership interest in Magnolia to himself and Magnolia's assumption of the *Promissory Note.*

The Lollars obviously thought that this would prevent Mr. Lucky from successfully collecting on the judgment that would be rendered in Lucky I. However, their scheme did not work. The Lollars had overlooked the fact that a promissory note is property under Louisiana law that could be seized and sold in execution of a judgment.

When the State Court rendered and signed a *Judgment* in Lucky I, Mrs. Lollar only took a devolutive appeal. Mr. Lucky obtained a writ of fieri facias, and, **after a hearing following notice at which Mrs. Lollar was represented by her counsel**, the State Court ruled that the *Promissory Note* was property subject to seizure and sale under a writ of fieri facias. That State Court's ruling was not appealed by Mrs. Lollar.

2

The *Promissory Note* was seized and sold. Lucky Family, L.L.C. was the purchaser at the October 24, 2018, sheriff's sale. Mrs. Lollar filed a *Petition for Preliminary Injunctive Relief* making an obviously deficient effort to obtain injunctive relief, by which she sought a "stay" of the sheriff's sale. However, the State Court did not grant the "stay." Mrs. Lollar did not appeal the State Court's denial of the *"stay"* that she had sought.

On November 18, 2018, Mrs. Lollar filed her original *Complaint to Annul Sheriff's Sale and Other Relief*, Doc. 1, in this action claiming a violation of her civil and constitutional rights and questioning the appraisal process in the sheriff's sale.

Thereafter, on January 16, 2019, the Louisiana Second Circuit Court of Appeal reversed the *Judgment* in Lucky I.[2] However, because the sheriff's sale was already complete, that could not help Mrs. Lollar.

**Most recently, Mrs. Lollar has demanded to be paid, and has actually been paid, the proceeds from the sheriff's sale which she attacks.**

To summarize, the situation is this: Mrs. Lollar tried to evade the State Court'a authority by placing her property into the Mr. Lollar's name and ultimately a limited liability company to be owned by him. Mrs. Lollar's plan did not work because the *Promissory Note* that she received in her scheme was lawfully seized and sold to Lucky Family, L.L.C. when she did not take a suspensive appeal. Mrs. Lollar has taken no appeal from the State Court's rulings that the *Promissory Note* could be seized and sold and denying the *ex parte "stay"* order that she sought against the sheriff's sale. Mrs. Lollar wants this Court to rescue her from the consequences of her misdeeds even though she has demanded to be paid, and has actually been paid, the proceeds from the sheriff's sale which she attacks.

---

[2] *Lucky v. Carr*, 52,434 (La.App. 2 Cir. 1/16/19); 264 So.3d 693 (2019).

3

## LAW AND ARGUMENT

**Part I.        Applicable legal standards.**

In a diversity case, the admissibility of evidence is a procedural issue governed by federal law. *See Reed v. General Motors Corp.*, 773 F.2d 660, 663 (5th Cir. 1985).  Federal Rule of Evidence 702 governs the admissibility of expert testimony and provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

*Id.*

The trial court acts as a "gatekeeper" to ensure that "any and all scientific evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). "*Daubert*'s general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge" that is non-scientific in nature.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).  In its gatekeeping role, the court determines the admissibility of expert testimony based on Rule 702 and *Daubert* and its progeny.

"The court may admit proffered expert testimony only if the proponent ... demonstrates that (1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable." *E.E.O.C. v. S & B Indus., Inc.*, No. 3:15-CV-641-D, 2017 WL 345641, at *2 (N.D. Tex. Jan, 24, 2017) (citing *Kumho Tire Co.*, 526 U.S. at 147) (internal quotation marks omitted).

4

The burden is on the proponent of the expert testimony to establish its admissibility by a preponderance of the evidence. *See Daubert*, 509 U.S. at 592 n.10; *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012). The court's inquiry is flexible in that "[t]he relevance and reliability of expert testimony turn[ ] upon its nature and the purpose for which its proponent offers it." *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010) (citation omitted). To be relevant, "expert testimony [must] 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir. 2002) (quoting *Daubert*, 509 U.S. at 591). "Relevance depends upon 'whether [the expert's] reasoning or methodology properly can be applied to the facts in issue.'" *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 593); *see also* Fed. R. Evid. 702(d) (requiring that an "expert has reliably applied the principles and methods to the facts of the case").

**Part II.        The Plaintiffs' Claims**

Mrs. Lollar's and Magnolia's complaint appears to allege that:

1.        Magnolia failed to receive proper notice of the sheriff's sale and was deprived of due process.[3]

2.        Mrs. Lollar and Magnolia summarily claim that they have been deprived of due process, and that the sheriff's sale should be declared to be an absolute nullity.[4]

3.        Mrs. Lollar and Magnolia claim that the *Promissory Note* was improperly seized, improperly appraised, and improperly sold. Mrs. Lollar claims that Mr. Lucky was allowed to select and improperly influence the third appraiser.[5]

---

[3] *First Amended and Restated Complaint to Annul Sheriff's Sale and for Other Relief*, Doc. 51, ¶¶ 1, 56 & 61, 64-67.

[4] *First Amended and Restated Complaint to Annul Sheriff's Sale and for Other Relief*, Doc. 51, ¶¶ 1, 56, 57 & 68.

[5] *First Amended and Restated Complaint to Annul Sheriff's Sale and for Other Relief*, Doc. 51, ¶¶ 1, 6, & 51-54.

4.     Magnolia claims that Lucky Family, L.L.C. is Mr. Lucky's "own limited liability company."[6] Based on this claim, Mrs. Lollar asserts that Lucky Family, L.L.C. is not a "good faith third party purchaser."[7]

5.     Mrs. Lollar and Magnolia claim that Mr. Lucky committed an abuse of process.[8]

6.     Magnolia claims Mr. Lucky and Lucky Family, L.L.C. have been unjustly enriched.[9]

7.     Mrs. Lollar claims that she is entitled to restitution of the *Promissory Note* or the value thereof.[10]

It is difficult to discern from the complaint which of these allegations are intended to constitute substantive legal claims as distinguished from relief sought by plaintiffs. However, it seems most likely that the substantive legal claims attempted to be made are that (a) there was a violation of due process; (b) there was a violation of Louisiana state law procedures for the seizure and sale of the *Promissory Note*; (c) Lucky Family, L.L.C. is, under state law, an alter ego of Mr. Lucky so that the reversal of the *Judgment* in Lucky I would entitle Mrs. Lollar to recover ownership of the *Promissory Note*; and (d) there was an unjust enrichment.

It appears that Mr. Dean's testimony would only be even theoretically applicable to plaintiffs' claims that there was a violation of Louisiana state court procedures for the seizure and sale of the *Promissory Note*.  However, Mr. Dean's testimony is not even relevant to that issue.

---

[6] *First Amended and Restated Complaint to Annul Sheriff's Sale and for Other Relief,* Doc. 51, ¶ 55.

[7] *First Amended and Restated Complaint to Annul Sheriff's Sale and for Other Relief,* Doc. 51, ¶ 6.

[8] *First Amended and Restated Complaint to Annul Sheriff's Sale and for Other Relief,* Doc. 51, ¶¶ 1, 6, 58, 63 & 69.

[9] *First Amended and Restated Complaint to Annul Sheriff's Sale and for Other Relief,* Doc. 51, ¶ 59.

[10] *First Amended and Restated Complaint to Annul Sheriff's Sale and for Other Relief,* Doc. 51, ¶¶ 1 & 57.

**Part III. Mr. Dean's opinions.**

On August 29, 2019, Mr. Dean provided a Rule 26 expert report in this case.  In his Rule 26 report, Mr. Dean purports to "provide any comments or observations I had concerning the opinions, methodology, and conclusions of value expressed" in the appraisals performed by Patrick Lacour (the third appraiser appointed by the sheriff) and Chad Garland (Mr. Lucky's appraiser).[11]  Mr. Dean's Rule 26 report contains the following sections: (1) Introduction, (2) Background, (3) Valuation Principles, (4) Empirical Evidence for Discounts/Yield, (5) Update of John Dan Letter Dated October 16, 2018, (6) Conclusion. (7) Patrick Lacour Letter Dated October 22, 2018, (8) Chad M. Garland, CPA, LLC Letter Dated October 5, 2018, and (9) Conclusion.

In his Rule 26 Report, Mr. Dean opines that his current valuation of the *Promissory Note* is $1,378,439.33. But the heart of Mr. Dean's Rule 26 report addresses his criticisms of the methodology used by Mr. Lacour in conducting his appraisal of the *Promissory Note*.  To that end, the "Conclusion" of Mr. Dean's Rule 26 report reads, in its entirety:

> I believe an appropriate valuation of the Magnolia Note in [sic] October 16, 2018 is $1,378,439.33. In addition, while I freely admit that different valuation analysts can arrive at different numbers given the assumptions and empirical evidence they observe, I believe a required yield calculation of 95% is clearly outside the bounds of reasonableness.

**Part IV. Mr. Dean's opinion is not relevant to plaintiffs' claims that the seizure and sale of the *Promissory Note* was violative of Louisiana state court procedures for such.**

Mr. Dean's opinion that the appraisal performed by Mr. Lacour, the third appraiser appointed by the sheriff was "outside the bounds of reasonableness" is wholly irrelevant to all of

---

[11] Because, as explained below, Mr. Lacour's appraisal was the "final" appraisal under the Louisiana state law statutory scheme, any discussion, analysis, criticism, or disagreement with Mr. Garland's appraisal is immaterial.

plaintiffs' claims.  Likewise, it is wholly irrelevant to plaintiffs' claims that the seizure and sale

of the *Promissory Note* were violative of Louisiana state court procedures.

Louisiana Revised Statute 13:4365, titled "Oaths of appraisers; sheriff appoints third

appraiser if two cannot agree; minute, written appraisal; delivery" provides:

> A.  The appraisers shall take an oath to make a true and just appraisal of the property.
>
> B.  If the appraisers cannot agree, and (1) the difference in value between the two appraisals does not exceed two hundred and fifty thousand dollars, and (2) the value assigned by the lower of the two appraisers is at least ninety percent of the value assigned by the higher of the two appraisers, then the sheriff shall average the two figures and use the average as the appraised value for purposes of determining the opening bid.  In those cases where the two appraisers do not agree and the values are not within the averaging limits, then the sheriff shall appoint a third appraiser, who shall also be sworn, ***and whose decision shall be final***.
>
> C.  The property seized must be appraised with such minuteness that it can be sold together or separately.
>
> D.  The appraisers shall reduce their appraisal to writing, sign it, and deliver it to the sheriff.
>
> E.  The appraisal of any appraiser appointed by the sheriff shall be made and delivered to the sheriff at a time prior to the sale.

(Emphasis added.)

After Mr. Lucky and Mrs. Lollar's appointed appraisers submitted appraisals of the

*Promissory Note*, the sheriff appointed Mr. Lacour to appraise for the sheriff. This was because

Louisiana Revised Statutes 13:4365(B) required that the sheriff appoint a third appraiser. Mr.

Lacour submitted his appraisal ($157,009.22) on October 22, 2018.

Mr. Dean's opinion regarding the purported unreasonableness of Mr. Lacour's appraisal

is irrelevant for several reasons. First, Louisiana law does not support any attack upon an

appraisal based on the charge that the appraisal does not accurately reflect the valuation of the

property. In *Baumann v. Fields*,[12] the court of appeal affirmed a summary judgment that dismissed the plaintiff-judgment debtor's lawsuit to annul the judicial sale of his property under a writ of fieri facias. The plaintiff-judgment debtor argued that the sale should be invalidated because the third appraiser was appointed prior to any disagreement between the parties, and his appointment and therefore his appraisal, were invalid. 332 So. 2d at 888. However, the court ruled that since plaintiff's and defendants' appraisers did ultimately disagree, it was necessary for the sheriff to appoint the third appraiser and the fact that he was appointed prior to any disagreement between the parties did not invalidate his appraisal. *Id*. **The court also found no merit in the judgment debtor's contention that the appraisal did not accurately reflect the valuation of the property.** *Id*. The court wrote: "**We know of no law which requires that property be sold for its true value.** Plaintiff did not attack the qualifications of the appraisers nor allege any fraud in their appraisal of the property." *Id*. (emphasis added).

Likewise, in *Associates Commercial Corp. v. Vick's Sand Pit & Dredging Company, Inc.*,[13] defendants "Vick's" and "Phillip" appealed the judgment that denied their request for injunctive relief against further execution of a money judgment by plaintiff "Associates" and the sheriff. Injunctive relief was sought on the grounds that property previously sold under a writ of fi. fa. to satisfy a money judgment was improperly appraised. 522 So. 2d at 663. The sheriff seized the defendant's truck under a writ of fi.fa. and advertised a judicial sale. *Id*. at 664. Neither party appointed an appraiser, and the sheriff appointed an appraiser for each. *Id*. The property was appraised at $34,000.00 for the defendant $36,000.00 for the plaintiff. *Id*. The sheriff did not appoint a third appraiser to resolve the conflict as then required by Louisiana

---

[12] 332 So.2d 885 (La. App. 2d Cir. 1976).

[13] 522 So.2d 663, 663-64 (La. App. 5th Cir.), *writ denied*, 525 So. 2d 1056 (La. 1988).

Revised Statutes 13:4365.[14] *Id.* Associates purchased the truck for two-thirds of the lower appraised value, i.e., $23,800.00. *Id.*

Having learned of the defect in the appraisal process, Associates sought to vacate and "reconduct" the sheriff's Sale. *Id.* Vick's and Phillip's sought an injunction prohibiting Associates and/or the Sheriff of Jefferson Parish from "reconducting" the sale and from executing on the balance due under the money judgment. *Id.* The stated grounds for Vick's and Phillip's seeking an injunction were that the appraisers were incompetent, the appraisals were "shockingly low," and a third appraiser had not been appointed as required by law. *Id.*

The trial court denied the requested injunction and dismissed as moot the motion to "reconduct" the sheriff's sale. *Id.* at 664-65. Vick's and Phillip's claim that the appraisals were "shockingly low" did not matter. In other words, the amounts of the appraisals do not affect the validity of a sheriff's sale. The court wrote: "As none of the grounds listed under La.C.C.P. Article 2298 were urged by Vick's and Phillip in their petition to enjoin execution against the bank accounts and real property seized by the sheriff, the trial court correctly denied the request for injunctive relief." *Id.* at 665.

Louisiana Code of Civil Procedure Article 2298 covers injunctive relief prohibiting the sheriff from proceeding with the sale of property seized under a writ of fieri facias. It includes among its grounds: "When the sheriff is proceeding with the execution contrary to law." La. Code Civ. Proc. art. 2298. The court in *Associates Commercial Corp.* did not regard Vick's and Phillip's claim that the appraisals were "shockingly low" as stating grounds that the sheriff was proceeding contrary to law. Likewise, Mrs. Lollar cannot show that she can meet her burden of proving that the judicial sale of the Note was not conducted in accordance with law.

---

[14] At that time the statute did not provide for averaging the appraisals.

Thus, Mr. Dean's opinion that the Mr. Lacour's appraisal fails to arrive at the "true value" of the property is wholly irrelevant to any issue presented in this case.

Second, Louisiana's statutory scheme for appraisals such as this is expressly designed to prevent subsequent collateral attacks the accuracy of appraisals. Louisiana Revised Statute 13:4365 provides a mechanism for the appointment of an independent appraiser by the sheriff if the parties' appraisers reach substantially different valuations. The Louisiana legislature has deemed the appraisal by the third appraiser to be "final." Given the fact that Mr. Dean endorses the general methodology used by Mr. Lacour, and Mr. Dean offers no opinions regarding fraud or ill practices on the part of Mr. Lacour, R.S. 13:4365 precludes a collateral attack on Mr. Lacour's appraisal. Mr. Lacour's appraisal was and is "final" as a matter of law.

Third, Mr. Dean does not opine that the Mr. Lacour's appraisal was not "true and just," which is the statutory requirement.  Instead, Mr. Dean simply opines that Mr. Lacour's appraisal was "unreasonable" based on an allegedly improper determination of the yield calculation. *Importantly, Mr. Dean does not dispute that Mr. Lacour used the proper general methodology in performing his appraisal* ("While I agree with Mr. Lacour's general methodology . . ."[15]). Instead, Mr. Dean quibbles with minutia within the application of methodology. After plowing through this minutia, Mr. Dean states: "A 'common sense' examination of his calculated required yield in the amount of 95% does not pass the 'smell test.'"[16] Expert witnesses do not apply a "smell test." A collateral attack on a final appraisal, in which the appraiser applied the proper general methodology, should not be countenanced at all.

However, even if such a collateral attack was proper, an opinion that an appraisal belies "common sense" and "does not pass the smell test" is both irrelevant and misleading to the jury.

---

[15] Dean report, pg. 4.
[16] Dean report, pg. 5.

11

To lay people, there is little – if anything – involving "common sense" when it comes to calculating a required yield on a financial instrument.

Simply put, a disagreement between appraisers regarding the application of a proper general methodology is irrelevant in determining whether an appraisal is "true and just" as required by Louisiana law.  Instead, such an opinion constitutes an improper collateral attack on an appraisal that is deemed to be final under Louisiana law.

To undersigned counsel's knowledge, no Louisiana court, either state or federal, has ever endorsed (or even allowed) a post-execution collateral attack on an appraisal based on differing opinions regarding valuation of the seized and sold property.  That is exactly what plaintiffs are attempting to do, through the opinions of Mr. Dean.  Defendants respectfully contend that this Court should not be the first to do so.

## CONCLUSION

For the reasons set forth above, Mr. Dean's opinion should be excluded on the grounds of relevance.

Respectfully submitted,

AYRES, SHELTON, WILLIAMS, BENSON & PAINE, LLC

By: /s/ Curtis R. Shelton
        Curtis R. Shelton
La. Bar Roll No. 17137
333 Texas Street, Suite 1400 (71101)
P. O. Box 1764
Shreveport, LA 71166
Telephone: (318) 227-3500
Facsimile: (318) 227-3980
Email: curtisshelton@arklatexlaw.com

WIENER, WEISS & MADISON
A Professional Corporation
   R. Joseph Naus, #17074
   Marjorie Frazier, #32991
330 Marshall Street, Suite 1000 (71101)
P. O. Box 21990
Shreveport, LA 71120-1990
Telephone: (318) 226-9100
Facsimile: (318) 424-5128
E-mail: rjnaus@wwmlaw.com
E-mail mfrazier@wwmlaw.com

ATTORNEYS FOR W. A. LUCKY, III