UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| MAGNOLIA ISLAND PLANTATION L.L.C. and BARBARA MARIE CAREY LOLLAR<br>　　　　Plaintiffs<br><br>VS<br><br>LUCKY FAMILY, L.L.C., W.A. LUCKY, III, and BOSSIER PARISH SHERIFF JULIAN C. WHITTINGTON<br>　　　　Defendants | § § § § § § § § § § § § | CIVIL ACTION NO: 5:18-cv-01526<br><br><br><br><br>CHIEF JUDGE S. MAURICE HICKS, JR.<br><br><br><br>MAGISTRATE JUDGE KAREN HAYES<br>Jury Trial Demanded |

## OPPOSITION TO DAUBERT MOTIONS

Respectfully submitted by,

　　*/s/ Andrew D. Martin*
Randall S. Davidson, LSBA No. 4715, TA
J. Davis Powell, LSBA 33631
Andrew D. Martin, LSBA 34947
Harold R. Bicknell III, LSBA 36801
DAVIDSON SUMMERS, APLC
330 Marshall Street, Suite 1114
Shreveport, Louisiana 71101
Ph: (318) 424-4342 | (318) 226-0168
E:　　rsdav@davidsonsummers.com
　　　dpowell@davidsonsummers.com
　　　dmartin@davidsonsummers.com
　　　hbicknell@davidsonsummers.com

***Counsel for Barbara Marie Carey Lollar***

## TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS ............................................................................................... ii

TABLE OF AUTHORITIES ..................................................................................... iii-iv

I. INTRODUCTION ............................................................................................1

II. LAW ................................................................................................................1

III. ARGUMENT ...................................................................................................2

    A. Procedural Due Process ......................................................................3

    B. Abuse of Process .................................................................................5

    C. Damages ..............................................................................................7

    D. Fraud or Ill Practices ...........................................................................7

    E. Chilling of Sale ...................................................................................9

    F. Improper Appraisal .............................................................................9

    G. The Dean Report Does Not Approve of Lacour's Methodology .......11

IV. CONCLUSION ..............................................................................................12

CERTIFICATE OF SERVICE ......................................................................................15

## TABLE OF AUTHORITIES

**PAGES**

**STATUTES:**

LA Const Art 1, §4 .............................................................................................................. 4

Fourteenth Amendment ..................................................................................................... 3

Federal Rule of Evidence 401 ........................................................................................... 2

Federal Rule of Evidence 702 ........................................................................................ 1,2

Civil Code Article 2315 .................................................................................................... 5

**CASES:**

*Associates Commercial Corp. v. Vick's Sand Pit & Dredging Company, Inc.*
522 So.2d 663 (La. App. 5th Cir.), *writ denied*, 525 So.2d 1056 (La. 1988) ......... 2, 3, 9, 10, 13

*Baumann v. Fields*, 332 So.2d 885 (La. App. 2 Cir. 1976) ................................ 10, 11, 13

*Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581 (5th Cir. 2003) ....................................... 2

*Cleveland Bd. of Educ. V. Loudermill*, 470 U.S. 532 (1985) ............................................ 4

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) ..................................... 1-4, 14

*Delcambre v. Mancuso*, 2018-833 (La. App. 3 Cir. 4/10/19), 268 So.3d 325,
*reh'g denied* (May 29, 2019) ............................................................................................. 5

*Ellerd v. Williams*, 364 So.2d 648 (La. App. 2 Cir. 1978) ................................................ 7

*Guar. Bank of Mamou v. Cmty. Rice Mill, Inc.*, 502 So.2d 1067 ..................................... 10

*Louisiana Nat. Bank v. Victor*, 425 So.2d 999 (La. App.3 Cir. 1983) ............................... 4

*Matthews v. Allstate Ins. Co.*, 731 F.Supp. 2d 552 (E.D. La. 2010) ................................. 1

*Mini-Togs, Inc. v. Young*, 354 So.2d 1389 (La. App. 2 Cir.1978) .................................... 5

*Oak Cliff Bank & Tr. Co. v. Kittle*, 309 So.2d 742 (La. App. 4 Cir. 1975) ................ 10, 11

*Stockman v. Money, Inc.*, 277 So.2d 504 (La. Ct. App. 1973) .......................................... 7

*Swain v. Kirkpatrick Lumber Co.*, 143 La. 30, 78 So. 140 (La. 1918) ............................. 9

*Tauzier v. Dodge*, No. CIV. A. 97-2444, 1998 WL 227170 (E.D. La. May 5, 1998) ....... 1

*Thibodaux v. Barrow*, 129 La. 395, 56 So.339……………………………………………………3

*Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748 (2005) ....................................................3

*Tucker v. New Orleans Laundries, Inc.*, 145 So.2d 365 (La. App. 4 Cir. 1962)…………….3,9,11

*United States v. Valencia*, 600 F.3d 389 (5th Cir. 2010) ................................................................2

## OPPOSITION TO DAUBERT MOTIONS

### I. INTRODUCTION

W.A. Lucky, III filed a *Daubert Motion to Exclude Opinions of John W. Dean*, with a supporting memorandum, on March 20, 2020. Later that day, Lucky Family, LLC filed an identically-titled motion and adopted by reference the contents of Mr. Lucky's memorandum. Collectively, these two motions are referred to herein as the "Daubert Motions" and the movants are the "Lucky Defendants." The Daubert Motions do not attack Mr. Dean's qualifications or the reliability of his methodology, but instead argue only that his opinions, as described in his August 29, 2019 expert report (the "Dean Report[1]"), are irrelevant. This is incorrect. For the reasons that follow, Mr. Dean's opinions should not be excluded.

### II. LAW

Federal Rule of Evidence 702 allows for expert testimony if it has a reliable methodological and factual basis, and if it will help the trier of fact to understand the evidence or to determine a fact in issue.  The purpose of an expert report is to notify opposing parties of the scope and content of an expert's proposed trial testimony. *Tauzier v. Dodge*, No. CIV. A. 97-2444, 1998 WL 227170, at *4 (E.D. La. May 5, 1998).

The Supreme Court in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) provided a two-prong test for determining the admissibility of expert testimony under Rule 702. The first prong focuses on whether the expert testimony is based on a reliable methodology. *Id*., at 589.

---

[1] The Dean Report was attached to Mr. Lucky's Daubert motion, at **Rec. Doc. 143-2.**

1

*Matthews v. Allstate Ins. Co*., 731 F. Supp. 2d 552, 556 (E.D. La. 2010). The second prong, i.e., whether the proposed testimony will assist the trier of fact to understand or determine a fact in issue, goes primarily to the issue of relevancy. *Daubert*, at 591. Relevancy is generally governed by Federal Rule of Evidence 401, which defines relevant evidence as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." As applied to a court's gatekeeping function under Rule 702, "relevance" means that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue. *Bocanegra v. Vicmar Servs., Inc*., 320 F.3d 581, 584 (5th Cir. 2003). However, the basic standard of relevance remains a liberal one in a *Daubert* inquiry. *Daubert*, at 587. Whether a particular opinion is relevant is closely tied to the law and facts at issue in a given case. *United States v. Valencia,* 600 F.3d 389, 425 (5th Cir. 2010). An expert's opinion may "fit" as relevant for one purpose even if it does not for other, unrelated purposes. *Daubert*, at 591.

### III. ARGUMENT

The Daubert Motions rest on mischaracterizations of the number and nature of the Plaintiffs' claims and the relation of Mr. Dean's opinions to those claims. Plaintiffs are not attempting to have the sheriff's sale annulled because of a "shockingly low" appraisal, which is the grounds on which the losing parties in *Associates Commercial Corp. v. Vick's Sand Pit & Dredging Company, Inc*. 522 So.2d 663 (La. App. 5th Cir.), *writ denied*, 525 So. 2d 1056 (La. 1988) sought injunctive relief. The primary ground for annulment of the sheriff sale is that there was *no* statutorily-authorized third appraisal. An alternative basis for annulment is that the Lacour valuation, if it counts as an appraisal at all, was improperly performed at a fundamental level, as

2

referenced in *Tucker v. New Orleans Laundries, Inc.,* 145 So. 2d 365, 372 (La. App. 4 Cir. 1962).[2] There are additional independent grounds for nullifying the sale, all of which are far outside of the reach of the *Associates* decision, such as fraud and/or ill practices and the chilling of the sale. Mr. Dean's opinions are relevant to proving all of these claims.

Further, the Plaintiffs have asserted a variety of claims that do not seek annulment. For instance, the Amended Complaint alleges that the Sheriff denied Plaintiffs procedural due process, that the Lucky Defendants abused legal processes, and seeks damages related to these wrongs. Mr. Dean's testimony bears on each of these.

Notably, the Daubert Motions do not implicate the first prong of the *Daubert* analysis, as they do not attack the reliability of Mr. Dean's work. It appears that the Lucky Defendants therefore concede that his methodology was fundamentally proper and that Mr. Dean is qualified. Therefore, the only question before the court is whether this admittedly-reliable evidence is relevant to *any* issue in the case for *any* purpose. For the reasons that follow, Mr. Dean's testimony is relevant to several of Plaintiffs' claims.

**A. Procedural Due Process**

Plaintiffs have alleged that the Sheriff denied them procedural due process by his actions and inactions regarding the sheriff's sale. The Fourteenth Amendment extends procedural protection to guard against unfair deprivation by government officials of substantive state-law property rights or entitlements. *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 771 (2005). The federal process protects the property interests created by state law. *Id*. To prove this claim,

---

[2] The *Tucker* court, relying on *Thibodaux v. Barrow*, 129 La. 395, 56 So. 339 stated:
> An improper, or in fact, a complete lack of an appraisal of the property creates a mere relative nullity which is cured by the prescription of five (now two) years.

3

Plaintiffs need to show that they (1) possessed a substantive right (2) of which they were deprived (3) by a less than generous state procedure. *Id*.; *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).[3] Mrs. Lollar had a substantive interest in the Note and the value thereof, which right persisted during and through the judicial sale of that property. LA CONST Art. 1, § 4. *Louisiana Nat. Bank v. Victor*, 425 So. 2d 999, 1000 (La. App. 3 Cir. 1983). The sheriff's sale, a state procedure, deprived her of this interest without the baseline level of required process. Mr. Dean's analysis is relevant to proving the second part of the test; it helps to demonstrate that Mrs. Lollar was deprived of her interest in the value of the Note. Consistent with *Daubert*, it will aid the trier of fact on the existence of this deprivation.[4]

The Dean Report shows that the value of the Note as of October 16, 2018 was $1,378,439.33. It then analyzes the numerous methodological errors of Mr. Garland and Mr. Lacour that resulted in their significantly lower valuations. The latter's flawed valuation was used to fix the opening bid at the sheriff's sale, directly resulting in Mrs. Lollar's property being sold for over a million dollars *less* than its value. The discrepancy between the true value of the Note and the sales price is so great that it counts as a deprivation of Mrs. Lollar's state-law created interest in the value of the Note. Mr. Dean's opinion attests to the existence of this discrepancy. It thus speaks directly to one of the necessary components of Plaintiffs' procedural due process claim.

---

[3] This aspect of the due process claim is more completely explained in Plaintiffs' *Memorandum in Opposition to Sheriff's Motion for Summary Judgment*, **Rec. Doc. 103**, page 13-19.

[4] Importantly, even though Plaintiffs seek damages from the Sheriff for the due process violation, Mr. Dean's testimony is relevant even if the Sheriff is immune from monetary damages, as it shows that a violation occurred and thus bears on other forms of relief.

In her *Motion for Summary Judgment*, Mrs. Lollar argued that this deprivation is evident simply from the face of the Note and the undisputed facts of the sale. However, she recognizes that the Court may not agree that a lay analysis is a sufficient basis for accepting the existence of a discrepancy between the true value of the Note and the sale price under the unique facts of this case. If the Court thinks there are open fact questions about whether a deprivation occurred, Mr. Dean's testimony is certainly relevant to the second part of the procedural due process inquiry.

**B. Abuse of Process**

Mr. Dean's testimony also bears on Plaintiffs' abuse of process claims. Louisiana courts recognize abuse of process as a compensable tort under Civil Code article 2315. *Delcambre v. Mancuso*, 2018-833 (La. App. 3 Cir. 4/10/19), 268 So. 3d 325, 331, *reh'g denied* (May 29, 2019). The elements of an abuse of process cause of action are: "(1) the existence of an ulterior purpose; and (2) a willful act in the use of the process not in the regular prosecution of the proceeding." *Id*. Louisiana's Second Circuit has stated that "[u]nder this cause of action plaintiffs must allege irregularity in the process itself[.]" *Mini-Togs, Inc. v. Young*, 354 So.2d 1389, 1391 (La.App. 2 Cir. 1978). Plaintiffs have alleged that the Lucky Defendants abused various legal processes by improperly filing the lawsuit referred to herein as Lucky II, along with related lis pendens notices.[5] The Dean Report helps to show the effects of these improper actions.

According to the Dean Report, one serious flaw in Mr. Lacour's analysis discounts the Note significantly due to 'cloudy title.'[6] The Dean Report explains that quantifying "the risk associated with the outcome of a legal dispute probably should be done by an attorney or a judge,

---

[5] *First Amended and Restated Complaint to Annul Sheriff's Sale and Other Relief*, **Rec. Doc. 41-2**, page 20-24.

[6] Dean Report, **Rec. Doc. 143-2,** page 5 (in Paragraph 4).

not a valuation analyst." According to Lacour, the title to the property serving as collateral for the Note was cloudy because of the filings by Mr. Lucky: Lucky II and the lis pendens. Mr. Lacour's decision to factor in this putatively "cloudy title" is traceable to the unambiguous instruction he received from Mr. Lucky's attorney:

> The property that Ms. Lollar transferred was 280 acres, which would, therefore, have a value of $1,120,000.00. Nevertheless, what is relevant here is that the value of the promissory note must be determined based on the fact that a person who buys it will do so subject to the claims made against the property in Lucky-Carr II, which are protected by a lis pendens.[7]

Mr. Garland received the same information and instructions from Mr. Lucky and similarly discounted the Note because of the alleged cloud to title. However at deposition Mr. Garland admitted he would have reached a similar valuation as Mr. Dean absent Lucky II and the two lis pendens.[8]

The lis pendens and Lucky II were baseless and improper filings and, unsurprisingly, were withdrawn after the Lacour valuation was performed and its purpose achieved. Mr. Lucky's family company then obtained the Note at the Sheriff's sale for 6% of its face value. What Mr. Dean's testimony shows is how Lucky's abuses of process affected the ultimate valuation, and the degree to which they contributed to a significant and improper reduction in value to the Note's sales price.

---

[7] Shelton Letter, **Rec. Doc. 51-13**, page 6. Even the $1,120,000.00 figure is misleading, as it omits the value of the mineral rights; the referenced appraisal is for surface only.

[8] Excerpt from *Deposition of Chad Garland* **Rec. Doc. 110-4**, pages 34-35:
> Let's assume there was no lawsuit and we've got a $1.7 million note with $4 million worth of collateral. Then the value of the note is completely different. More like you almost have the full value of the note. You have to present value all the payments of the note to get what the value of the note is today. And whatever that number is, it may be $1.2 million or something like that, then that would be the value of the note.

## C. Damages

Plaintiffs seek monetary damages for the Sheriff's denial of due process and for the abuse of process committed by the Lucky Defendants. Mr. Dean's testimony is essential for proving the quantum of damages. For instance, one measure of the damage caused by the Sheriff's due process violation is the difference between the true value of the Note and the amount at which the Note was improperly sold at the sheriff's sale. Similarly, the abuses of process by the Lucky Defendants injured Plaintiffs by at least an amount equal to the discrepancy between the fair market value of the Note and the amount for which it was sold to Mr. Lucky's family L.L.C. Mr. Dean's opinions will assist the trier in understanding the extent of damages by revealing the scope of this discrepancy. The amount of damages is certainly a fact at issue in this case, so expert testimony on the measure thereof is clearly relevant and appropriate.

## D. Fraud or Ill Practices

Related to the abuse of process claim, Plaintiffs have alleged that Lucky interfered with the sheriff's sale process by way of fraud or other ill practices. Sheriff's sales can be annulled for such practices. *Ellerd v. Williams*, 364 So. 2d 648, 650 (La. App. 2 Cir. 1978). By instructing the appraisers how to conduct their valuation, and doing so incorrectly and knowingly, Lucky compromised the sale process. The Dean Report shows that the methodology dictated by Lucky was incorrect, leading to a "significantly flawed" valuation. Dean's testimony therefore will help to prove that Lucky manipulated the process by specifically requesting that Mr. Lacour and Mr. Garland employ improper methods of valuing the Note. Louisiana courts have already held that a party can (and must) produce evidence of bad faith or fraud in attempting to set aside a sheriff's sale on those grounds. *Stockman v. Money, Inc.*, 277 So. 2d 504, 508 (La. Ct. App. 1973). The

Lucky Defendants offer no reason why expert testimony is not an acceptable form of such evidence, when necessary.

One example of the existence and effect of the manipulation is the improper consideration of the soon-to-be-dismissed Lucky II lawsuit filed by Mr. Lucky and its lis pendens, mentioned above. Another is Lucky's direction that Mr. Lacour disregard the value of the mineral rights associated with the property securing the Note. Though Lucky provided an appraisal of the mineral rights with his letter to Mr. Lacour, he advised the appraiser to ignore it:

> You will notice from Judge Self's ruling that he thought that it would be speculative to include an amount in his award for the value of the minerals…Like the land, it is not really the minerals that are to be appraised in this case, it is the promissory note.[9]

Mr. Lacour complied and disregarded all value of the collateral property's mineral rights. This was plainly improper. The Dean Report explains: "The omission of this significant piece of collateral [the mineral rights] which greatly reduces risk is inappropriate based on my understanding of the facts."[10]

One might naturally ask why an attorney for a seizing creditor, one who has no accounting background, was providing deeply flawed appraisal guidelines to the "Sheriff's" appraiser, without any input from the Sheriff or his legal department? Any mystery disappears on the recognition that Lucky had an interest in artificially lowering the value of the Note, chilling the sale, and having his family LLC purchase the Note for a fraction of its true value. Revealingly, Lucky was attempting to obtain a mineral lease on the collateral property – which he did not own - at the same time he was instructing the appraisers to disregard the value of those minerals.[11] Lucky's actions

---

[9] **Rec. Doc. 51-13**, page 6
[10] **Rec. Doc. 143-2**, page 5 (at Paragraph 6)
[11] See **Exhibit B**, a proposed lease from GEP Haynesville, LLC and W.A. Lucky, III, produced by GEP under subpoena in this case, dated November 2018.

8

were fraudulent. Mr. Dean's testimony helps to demonstrate the existence and effect of Lucky's wrongdoing by cataloguing the various methodological flaws in the Garland and Lacour appraisals. Many of these flaws are directly traceable to instructions from Lucky.

### E. Chilling of Sale

Sheriff's sales can be annulled when any act of an auctioneer or third party stifles or chills the sale. *Swain v. Kirkpatrick Lumber Co.*, 143 La. 30, 38, 78 So. 140, 143 (La. 1918). The Dean Report helps to prove that the actions of the Lucky Defendants chilled the sale, by explicating the erroneous factors used by Lacour and Garland to discount their appraisals. These improper discounts reflected the fictional lack of marketability of the Note caused entirely by Lucky's own actions. Some of these are described above. These adjustments would not have occurred but for Lucky's contrary filings against the Note and his later improper influence on the ostensibly government-run "third" appraisal. Mr. Dean's testimony therefore shows how Lucky's efforts, and the Sheriff's complicity in those efforts, resulted in a chilled sale.

### F. Improper Appraisal

A sheriff's sale can be annulled in cases where there is an improper appraisal, or a complete lack of appraisal. *Tucker v. New Orleans Laundries, Inc., supra*. Plaintiffs' primary argument for annulment is, again, that there was a complete lack of appraisal because the Sheriff never appointed a third appraiser. However, an additional reason the sale should be annulled is that the putative third appraisal was performed improperly. The Dean Report reveals the methodological flaws at the heart of the Lacour and Garland appraisals which render those valuations improper. Indeed,

9

the Lacour valuation employed a methodology that was "clearly outside the bounds of reasonableness."[12]

As noted above, Plaintiffs' argument regarding the impropriety of the appraisals is different from claims made in *Associates Commercial Corp. v. Vick's Sand Pit & Dredging Company, Inc*. 522 So.2d 663 or *Baumann v. Fields*, 332 So. 2d 885, 887 (La. App. 2 Cir. 1976). Unlike the defendants in *Associates Commercial*, the Plaintiffs in this case are not seeking to enjoin the ongoing sale of property. To the extent that *Associates Commercial* is controlling jurisprudence, it is only controlling as to what was actually decided: that injunctive relief, specifically, is unavailable to a debtor alleging flaws in the appraisal process as a defense to further execution.[13] Annulment, however, is a different remedy entirely and is not implicated by the holding in *Associates*. Another Louisiana court, applying the same rationale as *Associates* to reach the same conclusion, nonetheless recognized that appraisal irregularities "might be raised in other proceedings, such as a suit to annul the sale…" *Oak Cliff Bank & Tr. Co. v. Kittle*, 309 So. 2d 742, 742–43 (La. App. 4 Cir. 1975). The Lucky Defendants have previously argued that this language from *Oak Cliff* is dicta. While Plaintiffs disagree, the important point is that the Fourth Circuit's recognition tracks the clear conceptual distinction between injunctive relief as a defense and annulment as an after-the-fact affirmative claim. For obvious reasons, the Lucky Defendants conflate these distinct types of relief. The Court should not.

*Baumann v. Fields*, 332 So. 2d 885 (La. App. 2nd Cir. 1976) features a unique set of facts that make it distinguishable from this dispute. Of note is that a third appraiser *was* appointed in that case, though the plaintiffs contended that his appraisal incorrectly came before their own

---

[12] **Rec. Doc. 143-2**, Page 5
[13] See also, *Guar. Bank of Mamou v. Cmty. Rice Mill, Inc.*, 502 So. 2d 1067, 1071.

appraisal was performed. However, the timing problem was purely the fault of the plaintiffs, who initially refused to appoint any appraiser before ultimately submitting an appraisal less than twenty-four hours before the sheriff's sale. Additionally, the appellate court noted that "Plaintiff did not …allege any fraud in their appraisal of the property." In contrast, Plaintiffs in our case *have* alleged fraud and/or ill practices in the appraisal of the Note. Further, the irregularities and improprieties in the appraisal and sale process did not arise because of anything done by Plaintiffs. Instead, Lucky intentionally manipulated the process for his own ends. Most importantly, the *Baumann* court did not agree with the Lucky Defendants that impropriety in the appraisal can never require annulment of a sheriff's sale. Instead, they found that the procedural anomalies at issue under those facts were not the sort "which would cause [the sale] to be null." That *those particular irregularities* were not the sort demanding annulment is consistent with the *Tucker* and *Oak Cliff* courts' statements that improprieties in the sale process *can* be used to annul a sale.

**G. The Dean Report Does Not Approve of Lacour's Methodology**

The Daubert Motions claim that the Dean Report "agrees that Mr. Lacour used the appropriate general methodology in performing the appraisal." The context of the Dean Report makes clear that this is a blatant mischaracterization; it actually states:

> While I agree with Mr. Lacour's general methodology, I believe his application of that methodology is significantly flawed…I can see no reasonable basis for the conclusions expressed in Mr. Lacour's worksheet…A "common sense" examination of his calculated required yield in the amount of 95% simply does not pass the "smell test.".. I believe a required yield calculation of 95% is clearly outside the bounds of reasonableness. [14]

This hardly constitutes a blessing of Mr. Lacour's work. Mr. Dean himself has submitted an affidavit, attached hereto as **Exhibit A**, to clarify that his mention of agreeing with "general

---

[14] **Rec. Doc. 143-2**, page 5.

methodology" was merely a nod toward the basic worksheet format Lacour presented to address base yield. However, Mr. Dean otherwise believed the methodology was "significantly flawed."

Additionally, the Lucky Defendants argue that the Dean Report "does not opine that the Mr. Lacour's appraisal was not 'true and just,' which is the statutory requirement."[15] Mr. Dean is not being offered as an expert on the statutory language. An expert need not invoke magic words to present a relevant opinion on a fact issue in a case. It is up to the jury in this matter to determine if the Garland and Lacour appraisals satisfied all statutory requirements. Mr. Dean's testimony is certainly relevant to assist the jury in that regard.

## IV. CONCLUSION

A bird's eye view is helpful in understanding the particulars of this issue in the litigation. For a decade, Mr. Lucky prosecuted a meritless lawsuit against Mrs. Lollar. The state trial court eventually ruled in his favor, but the reasons for judgment completely failed to address the central legal issue in the case: the writing requirement for transactions related to transfers of immovable property. The Second Circuit swiftly and unanimously recognized this elementary mistake and reversed.[16] But, in the interim, Lucky prepared to mitigate the inevitable reversal. He took two contrary courses of action: (a) he filed a second lawsuit seeking judgment on the Note transactions as being completely "null and void" and filing a lis pendens in the public record against the Note's

---

[15] **Rec. Doc. 143**, page 2.

[16] The Second Circuit opinion notes:
> However, the trial court completely failed to address the unsatisfied form requirements clearly set forth in Louisiana Civil Code articles 1839 and 2993.

*Lucky v. Carr*, 52,434 (La. App. 2 Cir. 1/16/19), 264 So. 3d 693, 697 *writ denied*, 2019-0261 (La. 4/8/19), 267 So. 3d 616. Mr. Lucky then applied for writ of certiorari to the Louisiana Supreme Court, which was unanimously denied.

collateral property, and then (b) specifically seized only the Note for the purported purpose of selling it to satisfy the monetary judgment, which was then moving through the appeal process.[17]

Once the Note was seized, Mr. Lucky took control of the appraisal and sale process. His attorney selected an additional, "third" appraiser and sent the appraiser a letter containing guidelines for appraisal, despite having no background in appraisals or accounting. Unsurprisingly, these guidelines, and consequently the appraiser's work, contained basic methodological flaws that severely impacted the ultimate valuation. Additionally, this letter concealed essential factual and procedural information (the writing requirement issue; the fact that the matter was pending on appeal; etc.).[18] These maneuvers had their intended effect and Mrs. Lollar's property was substantially undervalued. Now, Mr. Lucky is arguing that there can be no professional or judicial scrutiny of anything occurring within the appraisal process.

Mr. Lucky gamed the process from the beginning. The Daubert Motions are another part of this gaming. If the Court sanctions this ploy, the statutory framework is meaningless. Parties will have an incentive to focus their efforts on behind-the-scenes machinations to manipulate the appraisal process. Partisan lawyers, rather than credentialed appraisers, will be the captains of putatively-objective government appraisals. If fundamental flaws in the appraisal process are simply never relevant to any suit concerning a sheriff's sale, then parties have an interest in encouraging improper methodologies to help achieve their desired ends. If anything goes during the pendency of a devolutive appeal, then parties who erroneously prevail at the trial level can engineer significant "wins" that survive appellate losses.

---

[17] No other property of Mrs. Lollar was ever seized by Mr. Lucky at any time beyond the Note.

[18] It also contained empty threats, such as the claim that a "resolute and unwavering" Mr. Lucky will "press forward with Lucky-Carr II to a trial and judgment." Notably, Lucky-Carr II was voluntarily dismissed by Mr. Lucky within months of the Shelton Letter.

This is not the law. Neither *Associates* nor *Baumann* render evidence of flaws in an appraisal irrelevant when the relief sought is annulment, rather than injunction. The problems with the Garland and Lacour valuations are directly relevant to one ground for annulment asserted by Plaintiffs: fatal flaws in an improperly-performed appraisal process. But this is not the only ground for annulment, nor is it even the primary ground. The absence of a third appraisal, the fraud and ill practices that compromised the process, and the chilling of the sale are all independent reasons the sale should be nullified. For the reasons set forth above, Mr. Dean's opinion is important in proving material facts related to each of these independent bases for annulment.

Further, annulment is not the only claim in the suit. Instead, the Plaintiffs have asserted that the Sheriff violated their due process rights, that the Lucky Defendants abused legal processes, and that those defendants have been unjustly enriched. Further, Plaintiffs have requested damages for all of these claims. Mr. Dean's testimony is essential to proving the existence and extent of these claims. As the *Daubert* court made clear, expert testimony can be relevant for some purposes even if irrelevant for other purposes. To exclude Mr. Dean's opinions would require the Court to rule that his testimony is independently irrelevant on each and every claim by Plaintiffs. It is plainly not irrelevant as to every purpose, and he should therefore not be excluded.

Respectfully submitted by,

\_\_\_\_/s/ Andrew D. Martin_____
Randall S. Davidson, LSBA No. 4715, TA
J. Davis Powell, LSBA 33631
Andrew D. Martin, LSBA 34947
Harold R. Bicknell III, LSBA 36801
DAVIDSON SUMMERS, APLC
330 Marshall Street, Suite 1114

Shreveport, Louisiana 71101  
Ph: (318) 424-4342 | (318) 226-0168  
E:   rsdav@davidsonsummers.com  
dpowell@davidsonsummers.com  
dmartin@davidsonsummers.com  
hbicknell@davidsonsummers.com  
**Counsel for Barbara Marie Carey Lollar.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing was filed electronically with the Clerk of Court using the CM/ECF filing system, and notice of the same will be sent to all counsel of record by operation of the court's electronic noticing system.

Shreveport, Louisiana, on this 6th day of April, 2020.

*s/ Andrew D. Martin*  
OF COUNSEL
