UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| MAGNOLIA ISLAND PLANTATION, ET AL. | CIVIL ACTION NO. 5:18-CV-1526 |
| VERSUS | DISTRICT JUDGE: HON. S. MAURICE HICKS, JR. |
| LUCKY FAMILY, L.L.C., ET AL. | MAGISTRATE JUDGE: HON. KAREN L. HAYES |

**REPLY MEMORANDUM
IN SUPPORT OF *DAUBERT* MOTION
TO EXCLUDE OPINIONS OF JOHN W. DEAN**

AYRES, SHELTON, WILLIAMS,
BENSON & PAINE, LLC
   Curtis R. Shelton
La. Bar Roll No. 17137
333 Texas Street, Suite 1400 (71101)
P. O. Box 1764
Shreveport, LA 71166
Telephone: (318) 227-3500
Facsimile: (318) 227-3980
Email: curtisshelton@arklatexlaw.com

WIENER, WEISS & MADISON
A Professional Corporation
   R. Joseph Naus, #17074
   Marjorie Frazier, #32991
330 Marshall Street, Suite 1000 (71101)
P. O. Box 21990
Shreveport, LA 71120-1990
Telephone: (318) 226-9100
Facsimile: (318) 424-5128
E-mail: rjnaus@wwmlaw.com
E-mail mfrazier@wwmlaw.com

ATTORNEYS FOR W. A. LUCKY, III

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| **I.** | Introduction | 1 |
| **II.** | Mr. Dean's opinions are not relevant to plaintiffs' procedural due process claims | 2 |
| **III.** | Mr. Dean's opinions are not relevant to plaintiffs' abuse of process claims | 3 |
| **IV.** | Mr. Dean's opinions are not relevant to damages | 5 |
| **V.** | Mr. Dean's opinions are not relevant to plaintiffs' fraud or ill practices claim | 6 |
| **VI.** | Mr. Dean's opinions do not relate to any "chilling of the sale" | 8 |
| **VII.** | Improper Appraisal | 8 |
| **VIII.** | Conclusion | 10 |

## TABLE OF AUTHORITIES

**Statutes and Rules:**

La. R.S. 13:4365 ................................................................................................................1

**Cases:**

*Associates Commercial Corp. v. Vick's Sand Pit & Dredging Company, Inc.*,
522 So.2d 663, 663-64 (La. App. 5th Cir.), *writ denied*, 525 So. 2d 1056 (La. 1988) ..............3 n.4

*Baumann v. Fields*, 332 So.2d 885 (La. App. 2d Cir. 1976) ......................................................3 n.4

*Citizens Bank of Ville Platte v. Am. Druggists Ins. Co.*,
471 So. 2d 1119, 1122 (La.App. 3 Cir. 1985) ...............................................................................5

*Duboue v. City of New Orleans*, 909 F.2d 129, 132 (5th Cir. 1990) ..............................................4

*Louisiana Nat. Bank v. Victor,* 425 So. 2d 999, 1000 (La.App. 3 Cir. 1983) .................................5

*Thibodaux v. Barrow*, 129 La. 395, 56 So. 339 (1911) ..............................................................9 n.7

*Tucker v. New Orleans Laundries, Inc.*, 145 So.2d 365 (La. App. 4th Cir. 1962) ....................8 n.7

I.      **Introduction.**

The pending motion is to exclude the testimony of plaintiff's expert witness, John W. Dean. Patrick Lacour was appointed by the Sheriff pursuant to La. R.S. 13:4365 to appraise the promissory note that was sold in this case. Plaintiffs' seek to offer opinions from Mr. Dean that Mr. Lacour's appraisal was "outside the bounds of reasonableness."[1] Mr. Lucky[2] seeks to exclude Mr. Dean's opinion testimony as irrelevant under *Daubert*.

Plaintiffs' arguments are that Mr. Dean's opinions:

1.  are relevant to Mrs. Lollar's procedural due process claims because they help to demonstrate that Mrs. Lollar was deprived of a substantive right, *i.e.*, her interest in the note;

2.  are relevant to plaintiffs' abuse of process claims because they "[help] to show the effects of . . . improper actions," Opposition to Daubert Motions ("*Daubert Opposition*"), Rec. Doc. 149, p. 5;

3.  are relevant to plaintiffs' damages;

4.  are relevant to plaintiffs' fraud or ill practices claim because "they will help to prove that Lucky manipulated the process by specifically requesting that Mr. Lacour and Mr. Garland employ improper methods of valuing the note," *Daubert Opposition*, Rec. Doc. 149, p. 7;

5.  "[help] to prove that [defendants] chilled the sale, by explicating the erroneous factors used by Lacour and Garland to discount their appraisals," *Daubert Opposition*, Rec. Doc. 149, p. 9; and

6.  they show that the appraisal was performed improperly.

These arguments are simply a backdoor attempt by plaintiffs to improperly collaterally attack the

---

[1] *Rule 26 report of John W. Dean*, Rec. Doc. 143-2, p. 5.

[2] Plaintiffs refer to Mr. Lucky and Lucky Family, L.L.C. as the "Lucky Defendants" in order to speak of both Mr. Lucky and the separate entity of Lucky Family, L.L.C. as if they are one and the same. Plaintiffs also refer to Lucky Family, L.L.C. as "Mr. Lucky's family company" or "Mr. Lucky's family L.L.C." *Daubert Opposition*, Rec. Doc. 149, pp. 6 & 7. This is a transparent attempt to confuse the issues. There is no evidence that Mr. Lucky is a member of the company, and there is a mountain of evidence to the contrary. *See Memorandum in Support of Motion for Summary Judgment*. Rec. Doc. 84-22, pp. 17-19.

value established by the Sheriff's appointed appraiser, which is not allowed under Louisiana law.

It is important to note two things before delving into the specifics of plaintiffs' opposition brief. First, the *Promissory Note* was made by Mrs. Lollar in an illegitimate attempt to avoid payment on any potential judgment.[3] Second, after the trial court's judgment was reversed, plaintiffs demanded to be paid, ***and were paid***, the entirety of the proceeds of the sheriff's sale. In other words, the plaintiffs' problems are of their own making, and, in addition, Mrs. Lollar has demanded and received payment of the proceeds of the sheriff's sale.

**II.     Mr. Dean's opinions are not relevant to plaintiffs' procedural due process claims.**

Plaintiffs argue that Mr. Dean's opinions are relevant to establish an element of Mrs. Lollar's procedural due process claim, namely that she was deprived of her interest in the *Promissory Note*. First, as set forth in the defendants' motions for summary judgment, Mrs. Lollar does not possess a valid procedural due process claim. For that reason, Mr. Dean's opinions are not relevant.

Second, if Mrs. Lollar has a procedural due process claim, proof of the value of the *Promissory Note* is not an element of such a claim. Assuming *arguendo* that Mrs. Lollar possesses a valid procedural due process claim (which she does not), she must prove as an element of her case that she was deprived of a substantive right which she possessed. That substantive right would be a property interest right in the note. There is no dispute that Mrs. Lollar no longer owns the note. Accordingly, Mr. Dean's opinions are not relevant to prove any element of any procedural due process claim that Mrs. Lollar could have.

---

[3] In a display of *chutzpah*, plaintiffs complain that Mr. Lucky "gamed the process" with "behind the scenes machinations." *Daubert Opposition*, Rec. Doc. 149, p. 13. However, Mrs. Lollar made the *Promissory Note* as an attempt to game the process with behind the scene machinations trying to insulate herself from the effects of a judgment to be rendered against her.

2

Third, as it relates to the procedural due process claim, plaintiffs continue to argue that Mr. Dean's analysis is relevant to demonstrating that Mrs. Lollar was deprived of her interest in the value of the Note because it was sold for less than Mr. Dean's opinion of its value. *Daubert Opposition*, Rec. Doc. 149, p. 4. However, the Sheriff's duty was to appoint a qualified and competent appraiser, not to supervise the appraiser's work. Further, the law does not require that property be sold for its true value at a sheriff's sale.[4]

### III. Mr. Dean's opinions are not relevant to plaintiffs' abuse of process claims.

Plaintiffs cite the elements of an abuse of process claim as (1) the existence of an ulterior purpose, and (2) a willful act in the use of process not in the regular prosecution of the proceeding. Plaintiffs contend that Mr. Lucky abused process by filing the state court lawsuit and filing certain *lis pendens* notices. Of course, Mr. Dean cannot and does not offer any opinion that any of those acts were an abuse of process.

As it relates to whether Mr. Lucky's lawsuit in which judgment was rendered in his favor was itself an abuse of process, it is difficult to fathom how that could be the case. Mr. Lucky prevailed in the trial court and obtained a judgment against Mrs. Lollar in that case. Moreover, even though that judgment was reversed by the court of appeal, it was reversed on a legal issue, not fraud or ill practices (or anything else even remotely related to fraud or ill practices). It is beyond doubt that Mr. Lucky had a good faith basis to file the lawsuit. It is beyond doubt that

---

[4] *See Baumann v. Fields*, 332 So.2d 885, 888 (La. App. 2d Cir. 1976)("We know of no law which requires that property be sold for its true value."); *Associates Commercial Corp. v. Vick's Sand Pit & Dredging Company, Inc.*, 522 So.2d 663, 663-65 (La. App. 5th Cir.), *writ denied*, 525 So. 2d 1056 (La. 1988)(Stated grounds for Vick's and Phillip's seeking an injunction were that the appraisers were incompetent, the appraisals were "shockingly low," and a third appraiser had not been appointed as required by law. The trial court denied the requested injunction and dismissed as moot the motion to "reconduct" the sheriff's sale because the amounts of the appraisals do not affect the validity of a sheriff's sale.)

Mr. Lucky had a good faith basis to protect himself from Mrs. Lollar's behind the scene machinations in an effort to insulate herself from the effects of the judgment to be rendered (and rendered) against her.

Mr. Lucky has already addressed plaintiffs' abuse of process claim that are based on the *lis pendens* notices. *See Memorandum in Support of Motion for Summary Judgment*. Rec. Doc. 84-22, pp. 19-20. Briefly restated: First, the facts stated in each of the notices of *lis pendens* were correct. Second, the notices of *lis pendens* were obviously filed in an effort to protect Mr. Lucky's legitimate rights to enforce the judgment that was expected to be and, as of the filing of the second notice of *lis pendens*, was in fact rendered by the state court. Mr. Lucky's actions cannot be characterized as malicious considering that Mrs. Lollar was working to remove her property from her patrimony and evade the state court's judgment. Third, after the state court's judgment in his favor was reversed, Mr. Lucky cancelled the notices of *lis pendens* upon his receipt of Mrs. Lollar's demand that he do so.[5] A claim for abuse of process requires that there be a "malicious use of a legal process after the process has been instituted." *Duboue v. City of New Orleans*, 909 F.2d 129, 132 (5th Cir. 1990)(citations omitted). Fourth and finally, Magnolia still owns the property, and it may still be leased. Plaintiffs have submitted no expert report from a witness in this case who is qualified to give any opinion about the value of any mineral rights in the property. Mr. Dean is not such a witness, cannot offer any such opinion, and does not offer any such opinion.

---

[5] *See Exhibit 48* and *Exhibit 49*, Rec. Doc. 84-17, pp. 25-34 of 35. Plaintiffs argue that the *lis pendens* "surprisingly, were withdrawn after the Lacour valuation was performed and its purpose achieved." *Daubert Opposition*, Rec. Doc. 149, p. 6. The facts are that Mr. Lucky cancelled the notices of *lis pendens* when demand was made for him to do so after the state court's judgment in his favor was reversed. *See Exhibit 48* and *Exhibit 49*, Rec. Doc. 84-17, pp. 25-34 of 35. It was the reversal of the state court's judgment in his favor that led to the cancellation of the notices of *lis pendens*.

4

### IV. Mr. Dean's opinions are not relevant to damages.

Plaintiffs argue that Mr. Dean's opinions are relevant to damages arising from the alleged due process violation by the Sheriff and the alleged abuse of process by Mr. Lucky. Referring to the procedural due process claim, plaintiffs argue that "one measure of the damage caused by **the Sheriff's due process violation** is the difference between the true value of the Note and the amount at which the Note was improperly sold at the sheriff's sale." *Daubert Opposition*, Rec. Doc. 149, p. 7 (emphasis added). However, no authority is cited for the idea that, contrary to *Citizens Bank of Ville Platte v. Am. Druggists Ins. Co.*, 471 So. 2d 1119, 1122 (La.App. 3 Cir. 1985), the Sheriff's duty goes beyond appointing a qualified and competent appraiser and includes supervising the appraiser.

Plaintiffs cite *Louisiana Nat. Bank v. Victor,* 425 So. 2d 999, 1000 (La.App. 3 Cir. 1983). There, Louisiana National Bank (LNB), appealed from a deficiency judgment which it was awarded. The bank had foreclosed by executory process to enforce the principal balance of $10,477.62, plus other amounts owed by defendant Victor on his mobile home loan. *Id*. The mobile home was sold at judicial sale to LNB for $5,666.66. *Id*. LNB subsequently resold the mobile home for $11,800. *Id*.

LNB sued for a deficiency judgment against Victor in the amount of $10,477.62 plus interest, etc., minus a credit in the amount of the judicial sale $5,666.66. *Id*. In determining the deficiency judgment amount, the trial court subtracted the profit made by LNB on the resale of the mobile home. *Id*.

The appeal court stated: "The only issue for decision on appeal is whether the trial court erred in allowing Victor a credit beyond the amount of the sheriff's sale." *Id*. The court reversed the trial court, writing:

> "When there is foreclosure against mortgaged property, the amount to be applied to the debt secured by the mortgage is limited to the proceeds of the judicial sale. The fact that purchaser, even though it be mortgagee, afterwards sells the property for more or less than the amount realized cannot affect the sum to be applied to the debt.... The debt is reduced or extinguished only to the extent of the amount obtained at the judicial sale, assuming no defect in the procedure." *First Nat. Bank of Lafayette v. Doni Homes*, 338 So.2d 1202, 1204, (La.App. 3d Cir.1976).
>
> The application of the profit made by LNB in the resale against what was owed by Victor to LNB is clearly contrary to established principles of law in Louisiana.

*Id.*

*Victor* does not support the plaintiffs' argument that "Mrs. Lollar had a substantive interest in the Note and the value thereof, which right persisted during and through the judicial sale of that property." *Daubert Opposition*, Rec. Doc. 149, p. 8. In fact, *Victor* establishes that Mrs. Lollar's position that she has some right after the sale concerning the value of the Note is clearly contrary to established principles of law in Louisiana. For the same reason, Mrs. Lollar's argument that "one measure of the damage caused by the Sheriff's due process violation is the difference between the true value of the Note and the amount at which the note was improperly sold at the sheriff's sale"[6] is clearly contrary to established Louisiana law.

Plaintiffs argue that their alleged abuse of process claim results from the filing of the state court lawsuit and the notices of *lis pendens*. Mr. Dean cannot and does not offer an opinion that the filing of the state court lawsuit or the notices of *lis pendens* were improper. Therefore, Mr. Dean's opinion could not be offered to prove a claimed abuse of process.

**V.  Mr. Dean's opinions are not relevant to plaintiffs' fraud or ill practices claim.**

Plaintiffs falsely argue that Mr. Lucky "manipulated the process by specifically requesting that Mr. Lacour and Mr. Garland employ improper methods of valuing the Note."

---

[6] *Daubert Opposition*, Rec. Doc. 149, p. 11.

6

*Daubert Opposition*, Rec. Doc. 149, p. 7. However, the October 10, 2018, letter from Mr. Lucky's counsel to Mr. Lacour specifically informed Mr. Lacour that, if he was appointed, he would not be acting for either the plaintiff or the defendant: "If the sheriff elects to appoint you as a third appraiser, y**ou will not be acting for either the plaintiff or the defendant to appraise the promissory note.** If you are appointed, **you will be the Sheriff's appraiser.**" *Exhibit 36*, Rec. Doc. 84-12, p. 2 of 50 (emphasis added). Rather than specifically requesting that Mr. Lacour employ improper methods, Mr. Lucky made it clear that Mr. Lacour would act independently as the Sheriff's appraiser.

Mr. Lucky also did not "advise" Mr. Lacour to ignore the appraisal of the minerals as argued by plaintiffs. The October 10, 2018, letter from Mr. Lucky's counsel to Mr. Lacour simply truthfully stated that Judge Self's ruling indicated that the Judge had thought it would be speculative to include an amount in his award for the value of the minerals. It cannot be fraud or an ill practice for Mr. Lacour to be informed that Judge Self had thought it would be speculative to include an amount in his award for the value of the minerals.

Further, Mr. Lucky's counsel did not provide "deeply flawed appraisal guidelines." Counsel's letter to Mr. Lacour stated up front that Mr. Lacour would be the Sheriff's appraiser. The letter quoted Louisiana Revised Statutes 13:4365's requirement that the appraiser make a just and true appraisal of the property. The letter then provided background: "Here is some background that I think you will find to be helpful to this potential task." *Exhibit 36*, Rec. Doc. 84-12, p. 4 of 50. Plaintiffs have no authority that shows how it could be fraud or an ill practice for Mr. Lacour to be provided background information for his consideration.

Plaintiffs argue: "Revealingly, Lucky was attempting to obtain a mineral lease on the collateral property – which he did not own - at the same time he was instructing the appraisers to

disregard the value of those minerals." *Exhibit 36*, Rec. Doc. 84-12, p. 4 of 50. For this, plaintiffs cite: "See **Exhibit B**, a proposed lease from GEP Haynesville, LLC and W.A. Lucky, III, produced by GEP under subpoena in this case, dated November 2018." *Daubert Opposition*, Rec. Doc. 149, p. 8, note 11. There is nothing that shows that Mr. Lucky created this unsigned lease form that plaintiffs falsely state was "proposed lease from GEP Haynesville, LLC **and** W.A. Lucky, III." (Emphasis added). The unsigned lease form was produced by GEP Haynesville, LLC. GEP Haynesville, LLC's creation of a document cannot constitute fraud or ill practice by Mr. Lucky.

### VI. Mr. Dean's opinions do not relate to any "chilling of the sale."

Plaintiffs argue: "Mr. Dean's testimony therefore shows how Lucky's efforts, and the Sheriff's complicity in those efforts, resulted in a chilled sale." *Daubert Opposition*, Rec. Doc. 149, p. 9. However, Mr. Dean's report does not contain any opinion that Mr. Lacour's appraisal "resulted in a chilled sale."

### VII. Improper appraisal.

Plaintiffs argue that the sheriff's sale can be annulled if Mr. Lacour's appraisal was done improperly. Mr. Dean's opinions are that he and Mr. Lacour used the same approach and different valuation analysts can arrive at different numbers, but that Mr. Lacour's application of the methodology to the Magnolia Note was flawed. Mr. Lucky has previously explained that an improper appraisal is not a basis to annul the sheriff's sale to Lucky Family, L.L.C. *See Memorandum in Opposition to Barbara Marie Carey Lollar's Partial Motion for Summary Judgment*, Rec. Doc. 102, pp. 12-19 of 32.[7]

---

[7] Plaintiffs also cite *Tucker v. New Orleans Laundries, Inc.*, 145 So.2d 365 (La. App. 4th Cir. 1962), which was a failed derivative shareholders action in which the plaintiff had not even made a claim to annul the sheriff's sale about which they complained. The plaintiffs in that case

8

Plaintiffs take issue with the statement in Mr. Lucky's memorandum in support that Mr. Dean "agrees that Mr. Lacour used the appropriate general methodology in performing the appraisal." However, that is exactly what Mr. Dean said in his report: that he agreed with Mr. Lacour's general methodology, but disagreed with Mr. Lacour's application of that methodology. Now, faced with Mr. Dean's own statement, plaintiffs attempt to have Mr. Dean change his statement, under the guise of a clarification. And yet, even still, Mr. Dean does not dispute Mr. Lacour's general methodology in his "clarification."

Instead, Mr. Dean seeks to "clarify" his own statement by saying: "This affidavit is submitted to clarify that my Expert Report's agreement as to a basic methodology used by Lacour was limited to his use of a worksheet format to apply discounts to a base yield. This was certainly not approval of how Mr. Lacour utilized this format or the inputs he employed." *Affidavit of John W. Dean*. Rec. Doc. 149-1, ¶ 3. This is not a clarification at all, but instead a restatement of Mr. Dean's earlier statement that he agrees with the general methodology used by Mr. Lacour, but disagrees with Mr. Lacour's application of that methodology. Given that Mr. Dean freely admits that different valuation analysts can arrive at different numbers given the assumptions and empirical evidence they observe, this shows that Mr. Dean does not believe that

---

argued that the court should "treat the Sheriff's sale as an absolute nullity and sue for the recovery of the stock without praying that the sale be annulled." *Id*. at 370. The *Tucker* plaintiffs' complaints about the sale included that the sale was part of a fraudulent conspiracy, was made for less than one-half of the value of the assets, and no appraisal, or at least no proper appraisal, was had. *Id*. at 371. The court stated: "Each of the charged causes for the nullity of the Sheriff's sale represent, **at most**, a relative nullity, and although they may have constituted causes for annulling and setting aside the sale, none would constitute an absolute nullity, nor afford the plaintiffs the right to ignore or circumvent it." *Id*. (emphasis added). In other words, the court did not opine even by *dicta* that the sheriff's sale would even be a relative nullity. The court's statement quoted by plaintiffs that "[a]n improper, or in fact, a complete lack of an appraisal of the property creates a mere relative nullity which is cured by the prescription of five (now two) years"[7] was pure *dicta*. *Thibodaux v. Barrow,* 129 La. 395, 56 So. 339 (1911), which affirmed the trial court's judgment that denied the plaintiffs' claims to dismiss a succession sale on account of claimed irregularities, does not help plaintiffs either.

9

Mr. Lacour used an improper methodology. Instead Mr. Dean simply disagrees with the assumptions employed by Mr. Lacour based on the empirical evidence. This takes us right back to where we started: Plaintiffs want to use Mr. Dean's opinions to collaterally attack the valuation set forth in the Lacour appraisal, which is not allowed under Louisiana law.

Put another way, Mr. Dean's opinions do not support even an argument that there was an "improper appraisal." Instead, Mr. Dean simply disagrees with the conclusion of the Lacour appraisal. If this lawsuit were about which appraisal was more accurate, Mr. Dean's opinions might be relevant. However, because this lawsuit is about whether the Sheriff properly followed the procedure to appoint his appraiser, the fact that Mr. Dean only disagrees with the conclusion reached by Lacour is of no moment.

## IX. Conclusion

For the reasons set forth above and in Mr. Lucky's original memorandum, Mr. Dean's opinion should be excluded on the grounds of relevance.

Respectfully submitted,

AYRES, SHELTON, WILLIAMS,
BENSON & PAINE, LLC


By: /s/ Curtis R. Shelton
    Curtis R. Shelton
La. Bar Roll No. 17137
333 Texas Street, Suite 1400 (71101)
P. O. Box 1764
Shreveport, LA 71166
Telephone: (318) 227-3500
Facsimile: (318) 227-3980
Email: curtisshelton@arklatexlaw.com

WIENER, WEISS & MADISON
A Professional Corporation
   R. Joseph Naus, #17074
   Marjorie Frazier, #32991
330 Marshall Street, Suite 1000 (71101)
P. O. Box 21990
Shreveport, LA 71120-1990
Telephone: (318) 226-9100
Facsimile: (318) 424-5128
E-mail: rjnaus@wwmlaw.com
E-mail mfrazier@wwmlaw.com

ATTORNEYS FOR W. A. LUCKY, III