UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| MAGNOLIA ISLAND PLANTATION | § | CIVIL ACTION NO: 5:18-cv-01526 |
| L.L.C. and BARBARA MARIE CAREY | § | |
| LOLLAR | § | |
|       Plaintiffs | § | |
| | § | |
| VS | § | CHIEF JUDGE S. MAURICE HICKS, JR. |
| | § | |
| LUCKY FAMILY, L.L.C., W.A. LUCKY, | § | |
| III, and BOSSIER PARISH SHERIFF | § | |
| JULIAN C. WHITTINGTON | § | |
| | § | MAGISTRATE JUDGE KAREN HAYES |
|       Defendants | § | Jury Trial Demanded |

**PLAINTIFFS' SUPPLEMENTAL STATEMENT OF CONTESTED FACTS IN
OPPOSITION TO SHERIFF'S MOTION**

Pursuant to Local Rule 56.1, plaintiffs Barbara Marie Carey Lollar and Magnolia Island Plantation,

LLC submit the following statement of contested facts, which establishes issues of fact precluding

summary judgment, in response to the Sheriff's *Revised Statement of Undisputed Facts*.[1]

**Claims 1-7 and 9-10**:

      Plaintiffs reiterate the same objections to these claims first raised in their earlier Statement

of Contested Facts in Opposition to Sheriff's Motion.[2]

**Claim 8**:

      The Sheriff's eighth numbered paragraph contains many independent fact claims, each

addressed herein. It is undisputed as to Ms. Lollar's appointment of John Dean and the content of

his appraisal. It is undisputed as to the claim that Louisiana law required the Sheriff to appoint a

---

[1] **Rec. Doc**. 123-4
[2] **Rec. Doc**. 103-1

third appraiser. It is disputed as to the claim that the Sheriff ever appointed Mr. Lacour – Rec. Doc. 51-14 does not support that fact claim in any way. Instead, that document simply contains a valuation and a cover letter addressed to the Sheriff; it does not contain any information about any factual event or communication that could conceivably qualify as an appointment.   The numbered claims within Claim 8 of the Revised Statement are addressed as follows:

1. It is uncontested that the Sheriff's employees had communications with Mr. Southerland. It is contested to the extent that none of the cited documents indicate that Mr. Southerland provided the Sheriff's office guidance on any material issue in this case. The fact that the Sheriff's office sought legal guidance on some aspects of the appraisal process does not indicate that the legal guidance was directed to how to appoint a third appraiser, or, more importantly, on whether such guidance was followed.  The cited deposition excerpts imply only that Mr. Sutherland advised the Sheriff's office to reach out to Mr. Shelton for a recommendation on a third appraiser. This advice has no bearing on who would appoint such an appraiser, or how such an appointment would be made.

2. This claim is contested. The cited document does not support the notion that all of the Sheriff's employees "knew that they were free to reject any appraiser recommendation made by Curtis Shelton." Instead, the cited passage is from a single employee's deposition, that of Mr. David Lee Miller. In it, he asserts that Ms. Flournoy was free to accept or reject a recommendation; not that he, nor Ms. Flournoy, nor anyone else, *knew* of that alleged freedom. Further, knowledge that the Sheriff had the *ability* to appoint someone other than Mr. Shelton's recommendation is irrelevant to the question of whether the Sheriff *actually appointed* anyone.

2

3. The contents of the appraisment sheet are not contested. However, the presence of the "having been appointed" line in that sheet does not show that the appointment occurred. The Appraisement Sheet is a document signed *after* an appraiser has performed his valuation.

4. The contents of Mr. LaCour's letter of  October 22, 201,8 thanking the Sheriff for "this opportunity to serve you," are not contested. However, this letter was written after Mr. LaCour performed his valuation and on the same date he signed the appraisal sheet – it does not suggest that the Sheriff took any action constitutive of an appointment prior to that day. Further, Mr. LaCour's beliefs about who he was serving are irrelevant to whether the Sheriff actually appointed him.

5. The contents of the *Ex Parte Motion to Fix Appraiser's Fee* of October 19, 2018 are not contested. However, that motion notes that the Sheriff *will* appoint a third appraiser, and does not demonstrate that the Sheriff did appoint one. In fact, this only indicates that the Sheriff had *not yet* appointed an appraiser.

6. The contents of the Bossier Parish court's order are not contested. However, that order, directing the Sheriff to pay $225.00 an hour to "any appraiser appointed by the Sheriff," indicates that no appraiser had yet been selected.

7. It is not contested that Mr. Lacour addressed his invoice to the Sheriff. However, this does not bear on the claim that the Sheriff ever appointed Mr. LaCour prior to the appraisal.

8. It is not contested that the Sheriff paid Mr. Lacour *after* the appraisal; that fact does not support the claim that the Sheriff appointed Mr. LaCour *before* the appraisal. It is consistent with Mrs. Lollar's claim that the Sheriff simply accepted Mr. Shelton's designation after-the-fact.

Further, the evidence in this case affirmatively demonstrates that the Sheriff failed to take any action with respect to a third appraiser, and effectively ceded his statutorily-mandated function to a private litigant:

- Ms. Flournoy only asked Mr. Shelton for a *recommendation* of a potential third appraiser, and only before one was actually needed; she did not indicate that his recommendation(s) would thereafter automatically be recognized as the third appraiser in the event one was eventually required.[3]

- Mr. Shelton responded to Ms. Flournoy's request with a recommendation: Mr. LaCour. But Mr. Shelton understood that his recommendation was not automatically appointed as a third appraiser: it acknowledged that no third appraiser could yet be selected, and mentioned Mr. LaCour as only one possible suggestion, with perhaps more to come.[4]

- The only written communications between Sheriff's office employees and Mr. LaCour are (1) an email from Mr. LaCour to Ms. Flournoy on October 22, 2018, after he performed his valuation, stating that Mr. LaCour would be driving to the Sheriff's office[5], and (2) an email chain between Mr. LaCour and Ms. Flournoy regarding an invoice for his valuation, after he turned that valuation in to the Sheriff.[6]

---

[3] **Rec. Doc**. 96-11 (Exhibit 9)
[4] **Rec. Doc**. 96-12 (Exhibit 10)
[5] **Rec. Doc**. 84-11, at Exhibit 38
[6] *Id.*

4

- There is no evidence of any oral communication between the Sheriff's office and Mr. LaCour in which the Sheriff's office appointed Mr. LaCour, or requested that he accept an appointment. A single email suggests that Ms. Flournoy spoke with Mr. LaCour on the phone on Friday, October 19 to "sign the form;" presumably, this was the appraisal sheet.[7] Nothing in the email suggests that Ms. Flournoy told Mr. LaCour in that purported phone call that the Sheriff had appointed him. In fact, the Sheriff has not even alleged that Ms. Flournoy communicated anything at all to Mr. LaCour in this purported phone call, much less that she informed him of an appointment.[8] This confirms that the Sheriff's office allowed Mr. Shelton to perform its function, and simply accepted Mr. Shelton's appointment after the fact.

- Mr. Shelton provided Mr. LaCour with a lengthy letter regarding the possibility of an appraisal and providing Mr. LaCour with a number of incorrect and factual and legal claims (the "Shelton Letter").[9] This document additionally accused the Lollars and their attorneys of criminal wrongdoing.[10] The Shelton Letter was transmitted before a third appraiser was required, as Mr. Dean's appraisal had not yet been submitted.[11] It makes clear that the Sheriff had not appointed Mr. LaCour: the letter discusses the *possible* need for a third appraisal *if* the first two exceed the averaging limits, and further makes clear that Mr.

---

[7] *Id.*

[8] See, **Rec. Doc**. 96-1 (Sheriff's memorandum) and 96-1 (Sheriff's statement of fact), neither of which mention this purported phone call, much less describe any communication in it constitutive of an appointment.

[9] **Rec. Doc**. 51-13

[10] *Id.*, claiming that Mrs. Lollar committed perjury (page 5: "She was not truthful in her testimony" in court) and that she and her husband conducted an illegal "scheme", "scam," "misdeeds," and/or an "illicit" "conspiracy" (pages 4-6), "aided and abetted" by her attorneys (page 5).

[11] *Id.*, dated October 10, 2018. Mr. Dean did not submit his appraisal until October 18, 2018. **Rec Doc**. 51-12.

5

LaCour would only be that third appraiser "[if] the Sheriff elects to appoint [Mr. LaCour] as a third appraiser."[12] Thus, it is clear that the Sheriff had not done so by October 10, 2018; indeed, it would be legally impossible for the Sheriff to appoint a third appraiser before one was required.

- Because Mr. Dean's appraisal was submitted on October 18, 2018 and Mr. LaCour's putative appraisal was submitted on October 22, 2018, there is only a four-day window within which the Sheriff could have lawfully appointed a third appraiser. As detailed above, there is no evidence that the Sheriff's Office took any action which would constitute an appraisal in this span.

It is undisputed as to the claim that Mr. LaCour provided a letter to the Sheriff, but disputed as to the claim that the letter was actually provided on October 22, 2018; there is no information on that document indicating the actual date of receipt.[13]

Respectfully submitted by,

    /s/ Andrew D. Martin       
Randall S. Davidson, LSBA No. 4715, TA
J. Davis Powell, LSBA 33631
Andrew D. Martin, LSBA 34947
Harold R. Bicknell III, LSBA 36801
DAVIDSON SUMMERS, APLC
330 Marshall Street, Suite 1114
Shreveport, Louisiana 71101
Ph: (318) 424-4342 | (318) 226-0168
E:    rsdav@davidsonsummers.com
      dpowell@davidsonsummers.com
      dmartin@davidsonsummers.com
      hbicknell@davidsonsummers.com
***Counsel for Barbara Marie Carey Lollar.***

---

[12] **Rec. Doc. 51-13**, page 1.
[13] **Rec. Doc. 51-14**.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the above and foregoing was filed electronically with the Clerk of Court using the CM/ECF filing system, and notice of the same will be sent to all counsel of record by operation of the court's electronic noticing system.

Shreveport, Louisiana, on this 17th day of February, 2020.

*s/ Andrew D. Martin*
OF COUNSEL
