**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

MAGNOLIA ISLAND                          CIVIL ACTION NO. 18-1526
PLANTATION, LLC, ET AL.

VERSUS                                   JUDGE S. MAURICE HICKS, JR.

LUCKY FAMILY, LLC, ET AL.                MAGISTRATE JUDGE KAREN HAYES

**MEMORANDUM RULING**

Before the Court are several Motions for Summary Judgment. Plaintiffs—Magnolia

Island Plantation, LLC ("Magnolia") and Barbara Marie Carey Lollar ("Mrs. Lollar")—have

filed one Motion for Partial Summary Judgment. See Record Document 80. Defendants—

Sheriff Julian Whittington ("Sheriff Whittington"), W.A. Lucky, III ("Mr. Lucky"), and Lucky

Family, LLC ("Lucky Family")—have filed four Motions for Summary Judgment. See

Record Documents 82, 83, 84 & 96. For the reasons set forth below, Mrs. Lollar's Partial

Motion for Summary Judgment (Record Document 80) is **DENIED**; Lucky Family's Motion

for Summary Judgment on all of Plaintiff's Claims (Record Document 83) and Mr. Lucky's

Motion for Summary Judgment (Record Document 84) are **DENIED IN PART** and

**GRANTED IN PART**; Sheriff Whittington's Motion for Summary Judgment (Record

Document 96) is similarly **DENIED IN PART** and **GRANTED IN PART**; and finally, Lucky

Family's Motion for Summary Judgment on its Counterclaims (Record Document 82) is

**DENIED**.

## I.  BACKGROUND

### A. The Original Lawsuit (Lucky I)

In 2008, Mr. Lucky filed suit against Mrs. Lollar in Bossier Parish state court, alleging that while acting as his agent, Mrs. Lollar purchased a neighboring 350-acre property (hereinafter the "Property") with the promise to transfer the land to Mr. Lucky, but never did so.[1] See Record Document 51-5. A trial on the issue of breach of fiduciary duties was held in August 2017, and at its conclusion, the presiding Judge took the matter under advisement and stated the matter would be deemed submitted on November 3, 2017. See Record Document 96-4. On November 2, 2017, Mrs. Lollar transferred the Property to her husband in exchange for a promissory note (hereinafter the "Note"). See Record Document 51-2. The amount due on the Note was to be paid in four consecutive installments of $100,046.00, with a fifth and final balloon payment equal to the remaining amount due thereafter. See id. Mr. Lollar then immediately transferred the Property to Magnolia, a limited liability company of which he is listed as the authorized manager. See Record Document 51-3. On December 19, 2017, a written opinion in Lucky I was issued in favor of Mr. Lucky, awarding $1,799,450.52 in damages. See Record Document 51-4. Mrs. Lollar filed a devolutive appeal under Louisiana law of this judgment, which allowed Mr. Lucky to begin seizure of the Property while the appeal was pending. See Record Document 51 at ¶19.

Prior to the ruling in Lucky I, Mr. Lucky filed a Notice of Lis Pendens on the Property in the conveyance records of Bossier Parish on December 11, 2017. See id. at

---

[1] W.A. Lucky, III v. Barbara Marie Carey Carr Lollar, No. 127,573, 26th Judicial District Court, Bossier Parish, Louisiana (hereinafter "Lucky I").

¶13. After the judgment in Lucky I, Mr. Lucky filed a new lawsuit against Mrs. Lollar, alleging the Note and the sale of the Property to Magnolia were null as simulations.[2]  See Record Document 51 at ¶15. Mr. Lucky also filed a second Notice of Lis Pendens on the Property. See id. at ¶16. On May 31, 2018, Mr. Lucky filed two motions in Lucky I: first, seeking a writ of fieri facias to issue for purposes of enforcing the judgment in Lucky I and an order directing Mrs. Lollar to deliver the Note to the Sheriff of Bossier Parish; and second, to examine judgment debtor via discovery and for another writ of fieri facias. See id. at ¶¶19-21. The second of these motions was granted immediately without a hearing. See id. at ¶22. At the conclusion of the hearing on the first motion, held on July 5, 2019, the Court ordered the Note to be seized and directed counsel for Mrs. Lollar to deliver the Note to the Bossier Parish Sheriff's office. See id. at ¶25. Delivery took place that day. See id. at ¶27.

The decision in Lucky I was reversed and judgment was entered for Mrs. Lollar by the Louisiana Second Circuit Court of Appeal on January 16, 2019. See Record Document 51-5. Mr. Lucky's writ application to the Louisiana Supreme Court was denied on April 8, 2019. See Record Document 51-6.

### B. Appraisal Process

Sheriff Whittington's office first received the writ of fieri facias on June 8, 2018. See Record Document 96-1 at 5. Upon receiving the Note itself on July 5, 2018, Deputy Kimberly Flournoy ("Deputy Flournoy") in the Civil Division of the Sheriff's office issued a letter to Mr. Lucky's counsel Curtis Shelton ("Shelton") requesting a $1,500.00 deposit

---

[2] W.A. Lucky, III v. Barbara Carr Lollar, No. 155,382-A (hereinafter "Lucky II").

prior to proceeding. See id. Deputy Flournoy received the check from Shelton two months later on September 5, 2018, along with a letter requesting the sale of the Note to be held the following month. See id. The next day, on September 6, 2018, Deputy Flournoy served a Notice of Seizure and Notice to Appoint Appraiser upon counsel for Mrs. Lollar. See Record Document 51-10. This document stated the Sheriff's Sale of the Note was tentatively scheduled for "the first Wednesday, fourteen days from the date of the notice of seizure; however, you should contact the Sheriff's Office… for the actual sale date and any rescheduling." Id. The document also stated that counsel for Mrs. Lollar was to name an appraiser to value the property and to notify the Sheriff of said appointment within 10 days of service. See id. Over the phone, the Sheriff's office informed counsel for Mrs. Lollar that appraisals had to be submitted by October 19, 2018, and the sale was scheduled for October 24, 2018. See Record Document 51 at ¶30.

In anticipation of a wide discrepancy in the parties' appraisals, which would require the Sheriff's office to appoint a third appraiser under La. R.S. 13:4365(B), Deputy Flournoy met with her supervisor, Jean Horne ("Horne"), and legal counsel for the Civil Department, James Southerland ("Southerland"), to discuss possible next steps. See Record Document 96-1 at 6. Both Horne and Southerland had never encountered a similar situation before and did not know of any appraisers the Sheriff's office could appoint. See id.  Recognizing a potential third appraiser would have very little turnaround time to valuate the Note prior to the scheduled sale, Deputy Flournoy emailed Shelton on September 17, 2018 to request a recommendation for an appraiser. See id.

Mr. Lucky appointed Chad Garland ("Garland") as his appraiser, while Mrs. Lollar appointed John Dean ("Dean"). See Document 51 at ¶¶31-32. Garland valued the Note

at $173,000, whereas Dean submitted an appraisal of $1,478,048.68. <u>See id.</u> Garland's appraisal sheet was signed on October 5, 2018, and Dean's on October 18, 2018. <u>See</u> Record Documents 51-11 & 51-12.

On October 12, 2018, Shelton emailed Deputy Flournoy the name, contact information, and curriculum vitae for an appraiser named Patrick Lacour ("Lacour"), who was working with Shelton on another matter at the time. <u>See</u> Record Document 96-1 at 6-7; Record Document 71-4. However, in a lengthy letter dated October 10, 2018, Shelton notified Lacour that he would be providing his information to the Sheriff's office. <u>See</u> Record Document 51-13. This letter also set forth the statutory requirements and procedure for appointing a third appraiser, as well as background information on the matter Shelton believed would be helpful to the task with a decidedly slanted perspective in favor of his client. <u>See id.</u> In addition to referring to the transfer of the Note as a "scam," the letter emphasized the pending lawsuit in Lucky II and the two lis pendens encumbering the Property. <u>See id.</u>

The statutory requirement for a third appraisal was triggered following Dean's valuation on October 18, and Lacour rendered a valuation of the Note at $157,009.22 on October 22, 2018. <u>See</u> Record Document 96-1 at 7; Record Document 51-14. In reaching his valuation, Lacour admittedly did not conduct any independent research and did not review the Note itself prior to submitting his report. <u>See</u> Record Document 71-5.

## C. Sheriff's Sale of the Note

Mrs. Lollar filed a Petition for Preliminary Injunctive Relief on October 22, 2018, requesting a "stay" of the Sheriff's sale due to the alleged improper appraisal process and

the artificially deflated Note value. <u>See</u> Record Document 51 at ¶44. However, the Lucky I Court did not address the Petition until the day after the sale had taken place, denying the order as moot. <u>Id.</u> The Sheriff's sale of the Note took place on October 24, 2018 and was sold to the highest bidder at a price of $105,000.00. <u>See</u> Record Document 51-15. The purchaser of the Note was Lucky Family, represented by counsel David Touchstone, who paid cash. <u>See id;</u> Record Document 51-13 at Ex. M. At the time of sale, Mr. Lucky was shown by the records of the Louisiana Secretary of State's office to be a member and beneficiary of this organization, however, Defendants state the records had not been updated and that Mr. Lucky ceased to own a membership interest in Lucky Family after 2000. <u>See</u> Record Document 70.

### D.  Post-Sale Developments

On November 1, 2018, the first installment payment of $100,046.00 became due on the Note and neither Mr. Lollar nor Magnolia tendered payment. <u>See</u> Record Document 26 at ¶6. Lucky Family demanded payment within fifteen days and instituted an Event of Default when that did not occur. <u>See id.</u> at ¶8. According to the terms of the Note, the Event of Default resulted in the entire balance of the Note being due, including principal and interest, as well as attorney's fees. <u>See id.</u> The Event of Default also entitled Lucky Family to enforce its rights under the Credit Sale Deed, Vendor's Lien, and Special Mortgage. <u>See id.</u> at ¶9. Magnolia claims to have made a prepayment on the first installment payment to Mrs. Lollar prior to Lucky Family's acquisition of the Note. <u>See</u> Record Document 30 at ¶6.

As previously stated, the decision in Lucky I was reversed and judgment was entered for Mrs. Lollar by the Louisiana Second Circuit Court of Appeal on January 16,

2019. <u>See</u> Record Document 51-5. Mr. Lucky's writ application to the Louisiana Supreme Court was denied on April 8, 2019. <u>See</u> Record Document 51-6. Plaintiffs then filed a Motion to Suspend Payments Due Under Promissory Note in this Court, which was denied. <u>See</u> Record Document 67. On November 13, 2019, counsel for Plaintiffs demanded the return of the proceeds of the sale in a letter to Defendants' counsel and received two checks for this amount. <u>See</u> Record Document 83-10 at Ex. 45-48.

### E.  Plaintiffs' Claims and Defendants' Counterclaims

The instant lawsuit arising from these complex events was filed in late November 2018. After much parsing of Plaintiffs' First Amended and Restated Complaint, the Court finds Plaintiffs seek (1) annulment of the Sheriff's sale and restitution of the Note, and (2) damages. <u>See</u> Record Document 51. Plaintiffs claim annulment and return of the Note is warranted due to: (a) violation of La. R.S. § 4365 by Defendant Sheriff Whittington (¶¶51-54); (b) deprivation of Mrs. Lollar's property without due process of law (¶56); (c) deprivation of Magnolia's property without constitutional notice (¶¶61, 66-68); and (d) the reversal of the judgment in Lucky I (¶55). <u>See id.</u> Plaintiffs claim they are entitled to damages as a result of the improper seizure, appraisal, and sale of the Note (¶57), as well as under state law unjust enrichment principles (¶59) and for abuse of process (¶¶58, 69) against both Lucky Family and Mr. Lucky himself. <u>See id.</u> Lucky Family's counterclaims against Magnolia and Mr. Lollar seek recovery of the balance due on the promissory Note. <u>See</u> Record Document 26.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). When reviewing a motion for summary judgment, the court must view "all facts and inferences in the light most favorable to the non-moving party." Romero v. City of Grapevine, Texas, 888 F.3d 170, 175 (5th Cir. 2018). But the non-moving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a 'scintilla of evidence.'" Hathaway v. Bazanay, 507 F.3d 312, 319 (5th Cir. 2007).

Because the pending motions for summary judgment address different parties and claims, the Court will examine each of these motions separately and in turn. However, the Court recognizes that some motions consist of overlapping claims. For that reason, the Court will first address Mrs. Lollar's Partial Motion for Summary Judgment (Record Document 80) and Lucky Family's Motion for Summary Judgment (Record Document 83), as they are the most comprehensive of the outstanding motions.

## III.     MRS. LOLLAR'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Mrs. Lollar seeks summary judgment on two of her claims against Defendants. See Record Document 80. First, she argues entitlement to judgment as a matter of law on her claim that Sheriff Whittington failed to appoint a third appraiser under La. R.S. 13:4365. See Record Document 80-1 at 1. Second, she argues for restitution of the Note

due to the complete reversal of the judgment in Lucky I. See id. Lucky Family has filed an opposition, arguing that Louisiana law provides no cause of action for annulment of the Sheriff's sale and that Mrs. Lollar is not entitled to the return of the Note following her successful devolutive appeal. See Record Document 102. Sheriff Whittington's opposition adopts the arguments made by Lucky Family. See Record Document 104. Mrs. Lollar has filed reply briefs to both opposition briefs. See Record Document 116 & 122. Mrs. Lollar also expands upon her arguments in her Supplemental Reply Memorandum. See Record Document 126.

## A.  Sheriff's Alleged Violation of Section 4365

Mrs. Lollar's motion argues no genuine dispute of material fact exists as to whether Sheriff Whittington failed to appoint a third appraiser, as required by statute, and thus she is entitled to annulment of the sale of the Note. See Record Document 80-1 at 5. Lucky Family's opposition argues Louisiana law provides no cause of action for the annulment of the Sheriff's sale, and regardless, Mrs. Lollar offers no material facts to create a genuine dispute of this issue. See Record Document 102 at 1.

As an initial matter, the Court agrees with Mrs. Lollar that annulments of sheriff's sales are recognized as a legal remedy under Louisiana law in many contexts, including improper or outright lack of appraisal. See Tucker v. New Orleans Laundries, Inc., 145 So.2d 365, 373 (La. App. 4th Cir. 1962).  The Deficiency Judgment Act serves as the statutory basis for nullifying sales made with appraisement defects, but Defendants correctly state that the Act does not apply to sales pursuant to writs of fieri facias. See La. Stat. Ann. § 13:4106; Guaranty Bank of Mamou v. Community Rice Mill, Inc., 502 So.2d 1067, 1071 (La. 1987); Associates Commercial Corp. v. Vick's Sand Put & Dredging Co.,

Inc., 522 So.2d 663, 665 (La. App. 5th Cir. 1988). Nevertheless, annulment actions pertaining to sales following writs of fieri facias have never been expressly disavowed by Louisiana courts. To the contrary, the possibility of challenging a sheriff's sale, conducted pursuant to a writ of fieri facias under § 4365 has been contemplated, albeit not directly addressed. See Oak Cliff Bank & Trust Co v. Kittle, 309 So.2d 742, 743 (La. App. 4th Cir. 1975) ("While the issue might be raised in other proceedings such as a suit to annul the sale or a suit to enjoin further execution of the original judgment, it is not properly before us.").[3] Further, Louisiana courts have held a violation of § 4365 is a proper vehicle to annul an execution sale.  See Ford Motor Credit Co. v. Blackwell, 295 So.2d 522, 524 (La. App. 4th Cir. 1974). Thus, the Court finds Plaintiffs can pursue an annulment of the Sheriff's sale due to an alleged violation of § 4365.

Having established the existence of a cause of action, the Court next turns to the merits of Mrs. Lollar's claim regarding Sheriff Whittington's alleged failure to appoint a third appraiser. Sheriff Whittington's statutory command in § 4365 details the process he must take when the discrepancy between two parties' appraisals is exorbitantly wide. It provides:

> If the appraisers cannot agree, and (1) the difference in value between the two appraisals does not exceed two hundred and fifty thousand dollars, and (2) the value assigned by the lower of the two appraisers is at least ninety percent of the value assigned by the higher of the two appraisers, then the sheriff shall average the two figures and use the average as the appraised value for purposes of determining the opening bid. In those cases where the two appraisers do not agree and the values are not within the averaging limits, then the sheriff shall appoint a third appraiser, who shall also be sworn, and whose decision shall be final.

---

[3] The Court acknowledges Defendants' objection to Plaintiffs' use of this language as mere dicta. However, coupled with the use of § 4365 as grounds for annulment in other non-writ instances, the Court finds Oak Cliff to be persuasive.

La. R.S. 13:4365

Although no case law exists describing precisely what duties are imposed upon a sheriff under this appointment clause, Louisiana courts have held a sheriff's insurance provider liable when the sheriff was negligent in appointing an unqualified appraiser. See Citizens Bank of Ville Platte v. American Druggists Ins. Co., 471 So.2d 1119, 1122-23 (La. App. 3 Cir. 1985). This necessarily implies that a sheriff must perform some active duties with respect to appointment and cannot passively fulfill his obligations.

The parties have produced material evidence on both sides of the issue of whether Sheriff Whittington properly appointed Lacour to serve as the third appraiser. Plaintiffs highlight the lack of direct communication between the Sheriff's office and Lacour and Shelton's role as an intermediary in support of their claim of abdication. See Record Document 80-1 at 7-12. They support their assertions with emails from Deputy Flournoy to Shelton requesting recommendation of an appraiser before the need for one arose (Record Document 71-3) and discussing when the Sheriff's office would receive Lacour's invoice (Record Document 71-6). Plaintiffs also find support in Lacour's deposition, in which he seemingly admits to using only the information provided by Shelton in reaching his appraisal amount. See Record Document 71-5. This fact is particularly significant given the one-sided nature of the letter provided to Lacour by Shelton purporting to provide "helpful background information" on the matter. See Record Document 51-13. Finally, Plaintiffs argue that no evidence exists as to any direct communication between Lacour and the Sheriff's office until he signed and submitted his appraisal on October 22, 2018. See Record Document 80-1 at 7.

Defendants counter with the depositions of Sheriff's office employees stating they consulted with legal counsel prior to any action and knew they were free to reject Shelton's recommendation of Lacour. See Record Document 84-11. They also point towards Lacour's acknowledgement that he was serving the Sheriff, not either of the parties, in his signed appraisement sheet and his attached letter addressed to the Sheriff. See Record Document 84-16. Defendants also have produced evidence of invoices addressed to the Sheriff from Lacour and paid by the Sheriff to Lacour. See Record Document 84-16. Finally, they dispute Plaintiffs' claims that their office had no direct communication with Lacour by producing emails from Deputy Flournoy to Lacour (Record Document 84-16) and testimony from Lacour of a telephone conversation during the week prior to his submission (Record Document 84, Ex. 75).

Based on the evidence submitted by both parties, a genuine dispute of material fact exists as to the issue of appointment of Lacour. A rational trier of fact could find for either party on this issue. Therefore, Mrs. Lollar's Motion for Summary Judgment on this issue is **DENIED**.

## B. Entitlement to Restitution Because of Lucky I Reversal

Mrs. Lollar next argues that due to the complete reversal of Lucky I, she is entitled to have her Note restored to her under Louisiana law. See Record Document 80-1 at 12. Defendants argue that because Mrs. Lollar took a devolutive appeal, the only remedy available to her in the State of Louisiana upon reversal is to receive the proceeds from the sale, not annulment of the Note itself. See Record Document 102 at 11-13. The Court agrees with Defendants. The longstanding law in Louisiana is that an individual who

subsequently wins her devolutive appeal only has one available remedy—the proceeds of the sale of her property.

Mrs. Lollar's argument for the return of her Note due to the reversal in Lucky I is grounded in modern restitution principles. In addition to citing to two state statutes generally describing restitution, she explores one of the Louisiana Supreme Court's most recent forays into this area of the law. See generally Gootee Const., Inc. v. Amwest Sur. Ins. Co., 2003-0144 (La. 10/10/03), 856 So.2d 1203. In Gootee, the Court held that Article 2299 of the Louisiana Civil Code demanded the return of funds paid in satisfaction of a judgment that was subsequently reversed. See id. at 1206; Orgeron v. Sec. Indus. Funeral Homes, Inc., 96-2127 (La. App. 4 Cir. 2/26/97), 690 So.2d 243. At issue in Gootee was the refunding of a cash payment made during the pendency of a devolutive appeal. See id. at 1204.

Defendants cite to numerous Louisiana opinions dating back over a century for the proposition that property sold at a public or judicial sale in execution of a judgment that is subsequently reversed on devolutive appeal is beyond the reach of the judgment creditor, and the sale cannot be annulled unless the court authorizing the sale lacked jurisdiction. See e.g., Holland v. Bryan, 148 La. 999 (1921); Wetherbee v. Lodwick Lumber Co., 193 So. 671 (La. 1940); Citizens' Bank of Columbia v. Bellamy Lumber Co., 140 La. 497 (1916); Fayard v. Celestan, 227 So.2d 795 (La. App. 4 Cir. 1969). This principle has held firm even when the purchaser at the sale was the judgment creditor. See Mountz v. Dyer, 104 So. 123, 124 (La. 1925); Jefferson v. Gamm, 90 So. 682, 684 (La. 1921); see also Holland, 148 La. at 1003.

Although the modern-day law of restitution would apply to most situations involving successful appeals, the longstanding case law specifically dealing with the sale of property while a devolutive appeal remains pending is dispositive of the issue. The situation in Holland v. Bryan mirrors that of the present situation.[4] See 148 La. 999. After Bryan won judgment, Holland immediately filed a devolutive appeal. See id. at 1001. Bryan obtained a writ of fieri facias on Holland's property, which was seized and sold by the sheriff for $640.75. See id. The judgment against Holland for $5,423.61 was subsequently reversed, and Holland sought an annulment of the sale and the return of his property. See id. The Louisiana Supreme Court rejected Holland's request, stating that annulment of sale and return of property was:

> "contrary to many decisions, maintaining that the only remedy of a defendant against whom a judgment had been executed, which has been subsequently reversed on a devolutive appeal, is to recover whatever sum of money the seizing plaintiff has received or retained out of the proceeds of the property seized and sold."

See id. at 1001-02. The Court proceeded to list a litany of earlier cases standing for the same general principle. See id.

The longstanding law of Louisiana makes clear that Mrs. Lollar, as a successful devolutive appellant, cannot obtain annulment of the Sheriff's sale and return of her Note. As such, she is not entitled to summary judgment on this argument and her motion is hereby **DENIED**.

---

[4] The Court is aware of Plaintiffs' objections to this case as incorrect precedent. It will address and resolve the objection in its discussion of Lucky Family's Motion for Summary Judgment. (Record Document 83).

### IV.   LUCKY FAMILY'S MOTION FOR SUMMARY JUDGMENT DISMISSING ALL PLAINTIFFS' CLAIMS

Lucky Family argues for judgment as a matter of law on all of Plaintiffs' claims against it; specifically that Plaintiffs are not entitled to annulment of the Sheriff's Sale, nor is Lucky Family liable on Plaintiffs' state law claims for damages for abuse of process and unjust enrichment. See Record Document 83-1. Each of these arguments is examined in turn.

### A.  Annulment of Sheriff's Sale

Lucky Family offers several reasons as to why Plaintiffs are not entitled to annulment of the Sheriff's sale on each of Plaintiffs' legal theories. See Record Document 83-1. First, Lucky Family argues that neither Mrs. Lollar nor Magnolia have had their Due Process rights violated. See id. at 2. They argue that Mrs. Lollar's claimed violation is a post-judgment deprivation which is afforded less protection than pre-adjudication violations or process violations. See id. at 3. They also argue that Magnolia was not entitled to notice prior to the sale, but nevertheless did receive actual notice through its registered agent. See id. at 7. Second, Lucky Family argues Louisiana state law prevents annulment of the Sheriff's sale. See id. at 10. They argue Louisiana law prohibits annulment in execution of a judgment which is subsequently reversed on devolutive appeal. See id. at 13. Lucky Family also asserts that Mrs. Lollar's acceptance of the proceeds of the sale following her appeal constitutes ratification of its validity. See id. at 14. Finally, they argue that Mrs. Lollar is prohibited from collaterally attacking the appraisal process when she should have made use of available procedural vehicles to stop the sale before it took place. See id. at 22.

In their opposition, Plaintiffs counter each of Lucky Family's assertions. <u>See</u> Record Document 105-1. They argue that Lucky Family misstates the law surrounding deprivation of property rights, and Mrs. Lollar was entitled to Due Process prior to the Sheriff's sale. <u>See id.</u> at 8. Plaintiffs similarly assert Magnolia was entitled to notice of the sale. <u>See id.</u> at 11. Finally, they contest each of the state law grounds upon which Lucky Family argues annulment is improper. <u>See id.</u> at 18.

The Court recognizes that Lucky Family's motion reads as if the unavailability of annulment on one of Plaintiffs' grounds precludes annulment as a remedy whatsoever. However, the Court disagrees and will analyze each of the stated grounds for annulment independently.

> ### i.    Mrs. Lollar's Due Process Claim

As an initial matter, the parties disagree as to the proper framework to evaluate Mrs. Lollar's Due Process Claim. While Lucky Family argues for the tri-partite <u>Endicott</u> regime,[5] Plaintiffs desire the <u>Mathews</u> balancing test. Although Lucky Family is correct that the Fifth Circuit has never expressly disavowed <u>Endicott</u>, the Court finds that it has been antiquated in favor of <u>Mathews</u> balancing. Lucky Family has located the singular instance in which the Fifth Circuit has cited to <u>Endicott</u>;[6] however, that same year the Supreme Court enacted the <u>Mathews</u> balancing test, which has since dominated the procedural due process landscape in this circuit and nationwide. <u>See Mathews v. Eldridge</u>, 424 U.S. 319, 335, 96 S. Ct. 893, 903 (1976).

---

[5] <u>See Endicott-Johnson Corp. v. Encyclopedia Press</u>, 266 U.S. 285, 45 S. Ct. 61 (1924) (affording greater constitutional protections to pre-judgment alleged deprivations than those that occur during or after a claimant has had their day in court).

[6] <u>See Brown v. Liberty Loan Corp. of Duval</u>, 539 F.2d 1355 (5th Cir. 1976).

Under Mathews, courts consider three factors in determining whether an individual is entitled to due process protections: (1) the private interest affected by the official action; (2) the risk of erroneous deprivation of such interest through the procedures used; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedures would entail. See id. The Due Process Clause extends procedural protection against deprivation of state substantive law property rights and entitlements. See Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 771, 125 S. Ct. 2796, 2812 (2005). However, procedure alone cannot be the basis for a property interest. See id. at 766 (holding that respondent did not have a property interest in police enforcement of a restraining order). Rather, to have a property interest in a benefit, a person must have a legitimate claim of entitlement to it. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709 (1972).

Plaintiffs argue their property interest in the Note was deprived without due process of law because the alleged missteps of the Sheriff's office in following statutory procedure pertaining to a third appraisal had the effect of affording them no meaningful process whatsoever.  The Court finds that Lucky Family cannot meet its burden at the summary judgment stage. As Plaintiffs have reiterated numerous times, they believe they were denied procedural due process by the Sheriff's failure to appoint a third appraiser. See Record Document 105-1 at 3. They argue Sheriff Whittington allowed Shelton the proverbial "second bite at the apple" by asking him for a recommendation as to the third appraiser and accepting the valuation of Lacour. See id. Plaintiffs offer significant evidence in the form of letters and emails from Deputy Flournoy to Shelton and Shelton

to Lacour that demonstrate a genuine dispute as to whether the Sheriff's office failed in its duty. Taking this evidence in the light most favorable to Plaintiffs, a deprivation of property without due process of law may have occurred with respect to Mrs. Lollar. Thus, Lucky Family's Motion for Summary Judgment as to this argument for annulment is hereby **DENIED**.

        ii.     **Magnolia's Notice Claim**

The parties dispute the status of Magnolia and what it means with respect to whether notice of the sale was required. Lucky Family asserts that Louisiana law classifies Magnolia as an obligor of the Note, and therefore has no property interest to protect. See Record Document 83-1 at 7. Plaintiffs argue that because Magnolia had made an initial installation payment on the Note to Mrs. Lollar, and now is being subject to default proceedings brought by Lucky Family, it is entitled to constitutional notice. See Record Document 105-1 at 11. Irrespective of the proper classification for Magnolia, the Court finds that Magnolia received actual notice of the sale through its registered agent, and therefore, its due process claim cannot survive summary judgment.

The Supreme Court has held the adequacy of notice to be a reasonableness inquiry asking whether, under all the circumstances, interested parties have been apprised of the action and afforded an opportunity to present their objections. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S. Ct. 652, 657 (1950); see also Rainey v. Citigroup, Inc., 779 Fed. App'x 258, 259 (5th Cir. 2019). "The notice must be of such nature as reasonably to convey the required information… But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied." Id. at 314-15. Louisiana law

echoes this sentiment that reasonable notice is sufficient notice, providing that notice to a person in one capacity is notice to him in all capacities. <u>See</u> La. Code Civ. Proc. Ann. art. 1237.

J. Davis Powell ("Powell") is the registered agent for Magnolia and the legal counsel of record for Mrs. Lollar. <u>See</u> Record Document 83-4 at Ex. 8. In his capacity as counsel for Mrs. Lollar, Powell was served with notice of seizure (Record Document 83-4 at Ex. 11) and was sent, with acknowledged receipt, a letter from the Sheriff's office informing him of the sale date of the Note (Record Document 83-5 at Ex. 12). Finally, Powell was indeed present for at least part of the sale on October 24, 2018. <u>See</u> Record Document 83-11 at Ex. 55. Thus, irrespective of whether Magnolia was entitled to notice of the sale, it received constitutionally sufficient notice through Powell. As such, this claim cannot persist, and Lucky Family's Motion is hereby **GRANTED** on this issue.

### iii.   Proper Remedy for Successful Devolutive Appeal

Lucky Family also moves for summary judgment on Plaintiffs' claims for annulment of the Sheriff's sale as a result of the successful devolutive appeal in Lucky I. <u>See</u> Record Document 83-1 at 13. In its review of Mrs. Lollar's motion, the Court established that centuries of Louisiana law prohibit the annulment of the sale of property due to a successful devolutive appeal. As stated above, the Court finds the ruling in <u>Holland v. Bryan</u>, and other similar cases to be dispositive. <u>See id.</u>

Plaintiffs cite to <u>Graham v. Eagan</u> in arguing the possibility for return of the Note rather than its proceeds has not been foreclosed. <u>See</u> Record Document 105 at 13; 15 La. Ann. 97 (1860). <u>Graham</u> was reaffirmed in <u>Fush v. Egan</u>, which allowed for the return

of property sold following a reversal on devolutive appeal. <u>See</u> 19 So. 108, 109 (La. 1895). Between these two decisions, the Louisiana Supreme Court decided <u>Pasley v. McConnell</u>, which the <u>Holland</u> court relied upon in stating <u>Graham</u> had been overruled. <u>See</u> 38 La. Ann. 470 (1886). Thus, Plaintiffs argue <u>Graham</u> remains good law. <u>See</u> Record Document 105 at 13.

Despite Plaintiffs' timeline argument, <u>Graham</u> (and <u>Fush</u>) cannot withstand the avalanche of case law since its ruling that has held to the contrary. <u>See e.g.</u>, <u>Jefferson</u>, 90 So. at 684 ("The decision was not consistent with the rulings in other cases cited.").[7] Additionally, the same principle has been upheld in more modern times. <u>See</u> <u>Fayard v. Celestan</u>, 227 So.2d 795 (La. App. 4 Cir. 1969). Although the law of restitution Plaintiffs cite would apply in most circumstances, the longstanding law specifically dealing with the sale of property while a devolutive appeal remains pending is controlling.

As a result, Plaintiffs cannot annul the Sheriff's sale on these grounds. Lucky Family's Motion for Summary Judgment on this issue is **GRANTED**.

### iv.   Acceptance of Proceeds

Lucky Family next argues Plaintiffs have accepted the proceeds from the Sheriff's sale, and therefore cannot seek annulment. <u>See</u> Record Document 83-1 at 14. Unlike prior arguments, if proven, acceptance of the proceeds would prohibit a remedy of annulment in its entirety. Lucky Family argues that Mrs. Lollar's acceptance of the proceeds constitutes a judicial confession, and thus, she has surrendered her action to

---

[7] Despite the Court's reluctance to speak ill of the deceased, history has almost unanimously held Justice Miller's opinion in <u>Fush v. Egan</u> citing favorably to <u>Graham</u>, to be the result of jurisprudential error. <u>See</u> 29 A.L.R. 1071 (originally published in 1924).

annul the sale. <u>See id.</u> at 15. Plaintiffs oppose this idea of a judicial confession, arguing that the language used in the letter itself reveals that counsel was not acquiescing to the validity of the sale. <u>See</u> Record Document 105 at 22.

Following Mrs. Lollar's successful devolutive appeal, counsel Andrew D. Martin ("Martin") and Randall S. Davidson wrote demand letters to Shelton requesting the payment of appeal costs and proceeds of the Sheriff's sale within 14 days. <u>See</u> Record Document 83-10 at Ex. 45 & 46. On December 3, 2019, Shelton responded to the letters with two checks, payable to Mrs. Lollar for the amount requested, and the checks have cleared. <u>See id.</u> at Ex. 47 & 48.

Lucky Family relies heavily on nineteenth century case law to support its claim that Mrs. Lollar cannot ***judicially*** demand and claim the proceeds of the sale, and afterwards attack the sale as a nullity. <u>See</u> <u>Factors' & Traders' Ins. Co. v. DeBlanc</u>, 31 La. Ann. 100, 103-104 (1877) (emphasis added). They cite to numerous Louisiana Supreme Court cases expounding the rule in Louisiana that a judicial demand for proceeds precludes a subsequent attack on the validity of sale. <u>See</u> <u>Mather v. Knox,</u> 34 La. Ann. 410, 411 (1882); <u>Campbell v. Woolfork</u>, 37 La. Ann. 320, 323 (1885); <u>see also</u> <u>Womack v. McCook Bros. Funeral Home, Inc.</u>, 193 So. 652, 654 (La. 1940). Plaintiffs argue the language used in these citations undermines Lucky Family's arguments, as their demands for the sale proceeds were not judicially claimed, but rather were the product of counsel-to-counsel communications. <u>See</u> Record Document 105 at 22. In their reply, Lucky Family calls this a distinction without a difference. <u>See</u> Record Document 112 at 10.

The Court agrees with Plaintiffs that this language is significant. In each of the historical cases cited to by Lucky Family, the demand for proceeds was made in court

documents or in open court. Further, modern-day Louisiana law pertaining to judicial confessions and confirmations evinces a strong preference for clear intent to admit before items in dispute are deemed confessed. See La. Civ. Code Ann. arts. 1842 & 1853. Article 1842 states, "An express act of confirmation must contain or identify the substance of the obligation and evidence the intention to cure its relative nullity." Id. Only after these requirements are met may ratification occur. Article 1853 and its definition of judicial confessions has been interpreted by Louisiana courts as "a party's explicit admission of an adverse factual element and has the effect of waiving evidence as to the subject of the admission—of withdrawing the subject matter of the confession from issue." Cichirillo v. Avondale Indus., Inc., 2004-2894 (La. 11/29/05), 917 So.2d 424, 429. It reasonably follows that courts would be more willing to hold parties to admissions made before them, rather than those made outside the judicial process.

In the instant matter, the demands for repayment following the reversal of Lucky I occurred outside of the judicial process. Plaintiffs' counsel thus did not judicially demand and claim the proceeds of the sale. The language used by Martin, reserving his client's rights and contemplating the range of possible outcomes in the instant suit, demonstrates that it was not his intent to withdraw Plaintiffs' arguments for annulment and ratify the validity of the sale. See Record Document 83-10 at Ex. 45. Analyzing in favor of the non-movant, the Court finds that summary judgment as to the claim for annulment on the grounds of ratification is inappropriate.

### v.    Collateral Attack

Lucky Family's final argument against annulment as a possible remedy for Mrs. Lollar is she failed to avail herself of potential relief prior to the sale, and therefore is

prohibited from collaterally attacking its validity. See Record Document 83-1 at 18; Bank of New Roads v. Livonia South, Inc., 527 So.2d 1132, 1135 (La. App. 1 Cir. 1988) ("If he wished to question the procedure, it was incumbent on him to challenge the process *before* the sale was made rather than sit back and save his attack only if he was not pleased with the result of the sale.") (Emphasis in original). While acknowledging that Plaintiffs did file a Petition for Preliminary Injunctive Relief (Record Document 83-4 at Ex. 3) to stop the sale from occurring, they argue Plaintiffs' counsel failed to follow the proper procedure to obtain injunctive relief set forth in Louisiana Code of Civil Procedure Articles 3601-3613, and thus failed to truly seek pre-sale relief. See id. at 20-21. The heart of Plaintiffs' opposition is that the relief they now seek is different from the relief sought prior to the sale, and therefore cannot be considered a "collateral attack." See Record Document 105 at 20.

The rule in Bank of New Roads has been held factually distinguishable to allow for challenges to the appraisal process after the sale has taken place. See Bank of Commerce and Trust Co. v. Landry, 610 So.2d 927, 930 (La. App. 1 Cir. 1992). Further, Bank of New Roads involved an action pursuant to the Deficiency Judgment Act, which, as the Court has previously discussed in Mrs. Lollar's motion, does not apply to sales under a writ of fieri facias. Thus, Lucky Family's reliance on this case is improper. Notwithstanding this distinction, the Court agrees with Plaintiffs' arguments as to the difference between the relief sought pre-sale and currently. See Record Document 105 at 20. Although most of the factual allegations remain the same, a significant distinction exists between the remedies of a preliminary injunction and an annulment, preventing

Plaintiffs' claims from being "collateral." Consequently, this argument precluding the availability of annulment is rejected.

## B.  State Law Claims — Abuse of Process and Unjust Enrichment

Lucky Family argues that Plaintiffs cannot proceed against it on the state law claims of abuse of process and unjust enrichment. See Record Document 83-1 at 22-24. In regards to both claims, they argue the LLC itself "had nothing to do with the sale of the Note other than to appear at the Sheriff's Sale and bid." Id. at 22-23. As such, Lucky Family believes neither claim against it can stand because other parties and forces led to the ultimate result. Plaintiffs stress that Mr. Lucky manipulated the sale process by filing two lis pendens and the Lucky II lawsuit in order to achieve a windfall in excess of $1 million for the benefit of Lucky Family, and derivatively, himself. See Record Document 105 at 24. They argue Lucky Family's role in this process is not that of an innocent bystander, as Vickie Lucky—majority member of the LLC and Mr. Lucky's wife—was aware of the actions taken by Mr. Lucky and stood to benefit from them in both capacities. See id. Plaintiffs assert Lucky Family should not be able to circumvent liability from these claims under the shield of its LLC status. See id. at 14. They argue potential liability should attach to Lucky Family because of the community property interest shared between Mr. Lucky and his wife, or alternatively, through piercing of the corporate veil. See id. at 15-16.

### i.        Circumvention Through Lucky Family LLC

Plaintiffs' claims of abuse of process and unjust enrichment are dependent upon a link between Mr. Lucky and the LLC bearing his family name, as his actions are alleged

to be what allowed Lucky Family to acquire the Note at a significantly depressed value. Consequently, the Court must first analyze this relationship.

Lucky Family has provided evidence that Mr. Lucky ceased to be a member of the LLC after donating his entire interest to his wife in 2000. See Record Document 83-6. In fact, one of these documents describing Vickie Lucky as the sole manager of the LLC was notarized by Mrs. Lollar. See id. at Ex. 28. Further, Lucky Family's Schedule K-1 tax forms dating back to 2001 show that only Vickie Lucky and her three children—not Mr. Lucky himself—have received income from the LLC over the last two decades. See Record Document 83-7. On the other hand, Plaintiffs have also produced evidence showing Mr. Lucky's involvement with the LLC is more commingled than these documents would imply.[8] See Record Document 105 at 15. They produced evidence showing Mr. Lucky representing the LLC as its agent at a sheriff's sale in 2011 and purchasing the property on its behalf. See Record Document 105-5. Mr. Lucky also served as a signed representative of the LLC in opening a bank account in Jackson Hole, Wyoming in 2014. See Record Document 105-6. Finally, in February 2018 Mr. Lucky borrowed over $982,000 from Lucky Family LLC to purchase property as agent of another LLC. See Record Document 80-6.

Examining this competing evidence in the light most favorable to the non-movant, and for the limited purpose of resolving the instant motions, the Court must proceed to analyze the abuse of process and unjust enrichment claims under the impression that Mr. Lucky remains involved in Lucky Family's business affairs. At trial, Lucky Family may be

---

[8] Plaintiffs' evidence supporting Mr. Lucky's continued involvement in Lucky Family LLC would indicate that he is the true "power behind the throne." See e.g., Jean-Vincent Blanchard, Éminence: Cardinal Richelieu and the Rise of France (2013).

able to prove Mr. Lucky's independence from the LLC's operations, subsequently defeating these claims against them. However, at this stage of the litigation process, Plaintiffs have produced sufficient evidence for the Court to proceed to analyze each claim.

### ii.    Abuse of Process

Louisiana courts have held the common law tort of abuse of process actionable under the provisions of Louisiana Civil Code Article 2315. See Succession of Cutrer v. Curtis, 341 So.2d 1209, 1213 (La. App. 1 Cir. 1976) (citing Gonsouland v. Rosomano, 176 F. 481, 487 (5th Cir. 1910)). The essential elements of an abuse of process claim include: (1) the existence of an ulterior purpose and (2) a willful act in the use of the process not proper in the regular prosecution of the proceeding. See Duboue v. City of New Orleans, 909 F.2d 129, 132 (5th Cir. 1990); Waguespack, Seago, and Carmichael (A PLC) v. Lincoln, 1999-2016 (La. App. 4 Cir. 2/26/97), 768 So.2d 287, 290-91. The tort of abuse of process involves "the malicious use of a legal process *after* the process has been instituted." Duboue, 909 F.2d at 132 (emphasis in original); see also Goldstein v. Serio, 496 So.2d 412, 415 (La. App. 4 Cir. 1986) ("Abuse of process involves the misuse of process already legally issued whereby a party attempts to obtain a result not proper under the law.").

Plaintiffs' abuse of process claim includes "the entirety of Mr. Lucky and Lucky Family's actions," and points to Lucky II's attempts to invalidate the transfer of the Note to Magnolia and the encumbrance of the Note with two lis pendens resulting in the sale of the Note for 6% of its face value. Record Document 105 at 24. Although Mr. Lucky's court filings pertained to the original judgment in Lucky I, in which Lucky Family was not

involved, Vickie Lucky was aware of the legal steps taken by her husband in that matter and their effect on the Note's value. <u>See</u> Record Document 105-5 at Ex. 4. Nevertheless, she proceeded with Lucky Family's purchase of the property for $105,000, and the LLC itself sought to collect on the first of the Note's installment payments almost immediately after acquisition. <u>See</u> Record Document 26. In aid of its collection efforts, Lucky has filed a counterclaim in this suit seeking payment. <u>See id.</u>

Reviewing this evidence in the light most favorable to Plaintiffs, the abuse of process claim against Lucky Family withstands summary judgment. Vickie Lucky had knowledge the Note was worth more than its purchase price and was aware of her husband's filings that resulted in the driving down of that price. Lucky Family instituted process via its counterclaim against Mr. Lollar and Magnolia, and this occurred after the commencement of the instant lawsuit. Lucky Family now seeks to recover the balance of the Note, which is worth nearly $1.6 million more than it was sold for. Based on these facts and subject to Plaintiffs proving at trial that Mr. Lucky remains involved in Lucky Family's affairs, a triable issue on Plaintiffs' abuse of process claim against Lucky Family remains. As such, summary judgment on this claim is **DENIED**.

### iii.    Unjust Enrichment

Louisiana law on unjust enrichment is codified at Louisiana Civil Code Article 2298. It provides:

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.

La. Civ. Code Ann. art. 2298. In order for a cause of action under unjust enrichment to exist, the plaintiff must prove five elements: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the impoverishment, (4) an absence of justification or cause for the enrichment and the impoverishment, and (5) an absence of other remedies at law available to the plaintiff. See Zaveri v. Condor Petroleum Corp., 27 F. Supp.3d 695, 699 (W.D. La. 2014) (citing Baker v. Maclay Properties Co., 94-1529 (La. 1/17/95), 648 So.2d 888, 897). The remedy of unjust enrichment is subsidiary in nature, in that it is only available to fill a gap in the law where no other express remedy is provided. See Walters v. MedSouth Record Management, LLC, 2010- 0353 (La. 6/4/10), 38 So.3d 243, 244.

In addition to arguing its role was merely that of a bidder at the Sheriff's sale, Lucky Family stresses that its acquisition of the Note was the result of a "valid juridical act," thus precluding a claim for unjust enrichment. See Record Document 83-1 at 23. However, as the Court has repeatedly stated, the validity of the Sheriff's sale remains a triable issue due to the factual disputes remaining on Plaintiffs' annulment grounds of a due process violation and appraiser appointment defects. Thus, this argument against an unjust enrichment claim cannot be the rationale for its dismissal.

The Court does, however, recognize potential difficulty satisfying the fifth and final element required for an unjust enrichment claim—the absence of availability of other remedies. This element is specifically attacked in Mr. Lucky's Motion for Summary Judgment, which the Court will next consider.

## V.      MR. LUCKY'S MOTION FOR SUMMARY JUDGMENT

Mr. Lucky has also filed a Motion for Summary Judgment on all of Plaintiffs' claims. See Record Document 84. Mr. Lucky's motion closely tracks that of Lucky Family's, also arguing annulment is an improper remedy for the same reasons stated above and the state law claims are inapplicable. See Record Document 84-22. Because Mr. Lucky's position with respect to the abuse of process and unjust enrichment claims differs from that of Lucky Family, the Court will address these arguments. However, given the prior discussion of each of the grounds for annulment raised, the Court will not address that portion of Mr. Lucky's motion.

### A.  Abuse of Process

Mr. Lucky argues Plaintiffs' abuse of process claim is invalid against him because (1) the facts stated in the lis pendens are correct, (2) the lis pendens were filed to protect his legitimate rights won in Lucky I, (3) he canceled the lis pendens following the reversal on appeal, and (4) no damages were caused by the lis pendens. See Record Document 84-22 at 20. Plaintiffs stress Mr. Lucky's actions served to chill the sale of the Note and had the effect of enabling Lucky Family to acquire the Note for a "wildly" discounted value. Record Document 119. Mr. Lucky's reply reiterates the legality of his actions. See Record Document 114 at 6.

Mr. Lucky's filings of two lis pendens on the property and the Lucky II lawsuit by themselves likely would not satisfy the dual requirements of an abuse of process tort under Louisiana law. However, the Court cannot examine these actions in a vacuum. These three encumbrances played a significant role in depressing the appraisal of the

Note, and the attention of Lacour was drawn to their existence by Mr. Lucky's counsel Curtis Shelton. Mr. Lucky has acknowledged his actions caused problems for the Note and led some potential bidders to refrain from pursuing its purchase. See Record Document 119-8. He further stated that he would "chase a deficiency against that woman sitting right there [Mrs. Lollar]. The rest of her life, if I get it." See Record Document 119-8. With respect to losses caused to Magnolia, Plaintiffs have produced emails showing their ability to collect oil and gas royalty income was suspended due to the pending legal dispute surrounding the property. See Record Document 119-9. Mr. Lucky may be able to prove his actions were validly taken without any wrongful intent, but at the summary judgment stage, a genuine dispute still exists on this issue.

### B. Unjust Enrichment

Mr. Lucky's argument for summary judgment on the claim of unjust enrichment attacks the fifth element requiring no other remedies be available to the plaintiff. See Record Document 84-22 at 20-21. Mr. Lucky argues Plaintiffs failed to properly pursue the available preliminary injunctive relief to halt the sale, thereby precluding an unjust enrichment claim. See id. Plaintiffs do not respond to this argument in their opposition brief.

Several remedies at law other than unjust enrichment exist for Plaintiffs to recover, irrespective of whether Plaintiffs sufficiently sought preliminary injunctive relief.  These include the annulment of the sale and the abuse of process tort claim Plaintiffs seek in the instant suit. In Louisiana, it is well-established that recovery under unjust enrichment principles may only occur where no other remedy is available. See Hall v. James, 43,263 (La. App. 2 Cir. 6/4/08), 986 So.2d 817, 820 ("Unjust enrichment is a remedy of last resort,

available only when no other remedy is available."); see also Wiggins v. Chesapeake Energy Corp., 2012 WL 3597131 at *2 (W.D. La. Aug. 20, 2012) (citing Walters, 38 So.3d at 246). "It is not the success or failure of other causes of action, but rather the existence of other causes of action, that determine whether unjust enrichment can be applied." Wiggins, 2012 WL 3597131 at *2; Zaveri, 27 F. Supp.3d at 701 (holding that an unjust enrichment claim could not proceed alongside other claims against defendants for breach of contract and breach of fiduciary duty).

Like the plaintiffs in Zaveri, Mrs. Lollar and Magnolia have pled and established several causes of action against the Defendants. Therefore, they cannot recover under a theory of unjust enrichment because other remedies are available to them that would, if proven, afford them the complete relief they seek. Consequently, the unjust enrichment claims against both Lucky Family and Mr. Lucky cannot survive summary judgment, and both motions are **GRANTED** on this issue.

## VI.    SHERIFF WHITTINGTON'S MOTION FOR SUMMARY JUDGMENT

Sheriff Whittington's Motion for Summary Judgment argues he is entitled to judgment as a matter of law on Mrs. Lollar's § 4365 claim, as well as on Magnolia's claim of inadequate notice. See Record Document 96-1.[9] Because the Court has already ruled Magnolia's notice claim cannot survive summary judgment, it need not consider the Sheriff's argument on this issue. The Sheriff asserts he followed statutory procedure and properly appointed Lacour as the third appraiser of the Note. See id. at 11. He further argues that he is entitled to protection from liability under qualified immunity. See id. at

---

[9] Sheriff Whittington's Motion for Summary Judgment was first docketed at Record Document 79. It has since been amended several times, with the final version existing as Record Document 96.

10. Plaintiffs' opposition argues the Sheriff's failure to file a responsive pleading to Plaintiffs' First Amended and Restated Complaint constitutes an admission of all the allegations against him. See Record Document 103 at 3. They further assert that questions of material fact exist as to the appointment provision claim. See id. at 8. Finally, Plaintiffs point to several flaws in the Sheriff's use of qualified immunity as a defense— namely that qualified immunity does not apply to state law claims nor claims made against the Sheriff in his official capacity—and alternatively, that the Sheriff violated a clearly established constitutional right and therefore cannot satisfy the qualified immunity defense. See id. at 11. In his reply, the Sheriff reiterates many of its arguments, but also attempts to clarify several of its qualified immunity shortcomings. See Record Document 123.

### A. Failure to File a Responsive Pleading

Plaintiffs' Memorandum in Opposition to Sheriff's Motion for Summary Judgment alerts the Court to Sheriff Whittington's failure to file a responsive pleading to Plaintiff's First Amended and Restated Complaint. See id. at 4. This omission has since been remedied by Sheriff Whittington. See Record Document 109. No objection or motion for default as to this delayed pleading has been raised by Plaintiffs since its docketing. As such, the Court will not deem the allegations made in this amended Complaint admitted under Rule 8(b)(6).

### B. Section 4365 Appointment Provision Claim

As the Court had already discussed at great length, a genuine dispute of material fact exists as to whether Sheriff Whittington properly appointed a third appraiser in

satisfaction of his statutory mandate. Notwithstanding this finding, summary judgment would be appropriate if Sheriff Whittington were to establish that he is entitled to protection from suit under qualified immunity. However, as Plaintiffs point out in their opposition, federal qualified immunity does not apply to state law claims such as a violation of § 4365. See Brown v. Miller, 519 F.3d 231, 239 (5th Cir. 2008). Significantly, the Sheriff's Motion only cites to federal qualified immunity jurisprudence. See Record Document 96-1. Although in his reply brief he seeks to argue Louisiana state law qualified immunity protection should apply, it is well-settled that new legal arguments may not be raised in a reply brief.[10] See United States v. Transocean Deepwater Drilling, Inc., 767 F.3d 485, 492 (5th Cir. 2014); DePree v. Saunders, 588 F.3d 282, 290 (5th Cir. 2009). As a result, Sheriff Whittington cannot utilize qualified immunity to win summary judgment on Plaintiffs' claims.

As a result, Sheriff Whittington's Motion for Summary Judgment on the issue of the appointment statute is hereby **DENIED**.

## VII.   LUCKY FAMILY'S MOTION FOR SUMMARY JUDGMENT SEEKING MONEY JUDGMENT ON PROMISSORY NOTE

Finally, Lucky Family seeks judgment as a matter of law on its counterclaims against Magnolia and Mr. Lollar seeking payment in full on the promissory Note. See Record Document 82. Lucky Family argues they are entitled to payment of the full $1.7 million balance on the Note, plus interest and attorney's fees and costs. See id. at 6.  They

---

[10] In his reply brief, Sheriff Whittington also argues for the first time that he is not vicariously liable for the conduct of employees within the Sheriff's office. Although the Court need not consider this argument either, it notes that the case law cited by the Sheriff for this proposition holds that sheriffs may still be liable for the torts of their deputies in his or her official capacity. See Burge v. Par. Of St. Tammany, 187 F.3d 452, 470 (5th Cir. 1999). Qualified immunity would not be a defense to such an official capacity suit, as well.

assert their burden of proof has been met by producing the Note itself and proving the signature of Mr. Lollar on it, thus shifting the burden to Magnolia and Mr. Lollar to provide affirmative defenses as to why they should not be forced to pay the full balance shown on the face of the Note. See Record Document 82-1 at 16. Lucky Family argues that each of Plaintiffs' defenses are inadequate, particularly that: (1) their acceleration of the balance due was proper; (2) any prepayments on the Note went towards the final balloon payment, not the first installment due; (3) Mr. Lollar was not released from his obligations under the Note via his assignment to Magnolia; and (4) as a holder in due course without notice of any prepayments, Lucky Family is entitled to collect on the Note. See id.

Plaintiffs filed an opposition to this motion. See Record Document 107. They assert that because the validity of Lucky's acquisition of the Note remains in dispute, via their claims for annulment and restitution, Lucky Family cannot summarily dispose of Plaintiffs' defenses to payment on the Note. See id. at 5. Additionally, Plaintiffs contest Lucky Family's arguments regarding prepayment and subsequent acceleration, as well as whether Lucky Family is in fact a holder in due course. See id. at 9-14. Finally, Plaintiffs argue that because no default has occurred, attorney's fees are not warranted. See id. at 20. Lucky Family's reply to Plaintiffs' opposition addresses and disputes each of the arguments raised. See Record Document 113.

## A. Louisiana Revised Statutes 10:3-308

Louisiana Revised Statutes 10:3-308 provides in pertinent part:

(b) If the validity of signatures is admitted or proved and there is compliance with Subsection (a), a plaintiff producing the instrument is entitled to payment if the plaintiff proves entitlement to enforce the instrument under R.S. 10:3-301, unless the defendant proves a defense or claim in

recoupment. If a defense or claim in recoupment is proved, the right to payment of the plaintiff is subject to the defense or claim, except to the extent the plaintiff proves that the plaintiff has rights of a holder in due course which are not subject to the defense or claim.

La. R.S. 10:3-308. In American Bank v. Saxena, the Louisiana Supreme Court held that summary judgment is the appropriate procedural device to enforce a negotiable instrument when a viable defense against enforcement has not been established. See 553 So.2d 836, 842 (La. 1989). Lucky Family cites to Saxena in arguing that Plaintiffs' defenses as to the payment of the Note are not viable, and thus summary judgment is appropriate. See Record Document 82-1 at 16. Plaintiffs argue Defendants misstate Saxena, and their outstanding claims regarding whether Lucky Family's acquisition and possession of the Note is lawful preclude summary judgment. See Record Document 107 at 4.

The Court agrees with Plaintiffs. In Saxena, the bank seeking to recover on the promissory notes was the original lender. See 553 So.2d at 837. Thus, the debtor's defenses did not include an argument that the bank had no overarching right to the notes it was seeking to enforce. Louisiana state and federal courts have considered defenses as to the validity of the holder's right to enforcement, and found that in such instances, summary judgment is inappropriate. See KeyBank Nat. Ass'n v. Perkins Rowe Associates, LLC, 2010 WL 2133954 at *2 (M.D. La. May 26, 2010) (citing Ouachita Nat. Bank in Monroe v. Gulf States Land & Dev., Inc., 579 So.2d 1115 (La. App. 2 Cir. 5/8/91)). The court in KeyBank, recognizing debtor's arguments that the plaintiff bank had breached the larger loan agreement and thus was precluded from seeking enforcement of its promissory notes, held that an analysis of the larger breach claims needed to occur before summary judgment on the issue of enforcement could be granted. See id.

As in <u>KeyBank</u>, Plaintiffs' attacks on the rightful acquisition and possession of the Note must be decided prior to any ruling regarding enforcement and recovery of the amount due. Having found that Plaintiffs have produced enough evidence to defeat motions for summary judgment regarding potential annulment of the sale, its defenses to payment should also not be summarily disposed. The Court need not delve into each of Plaintiffs' defenses against enforcement to reach this conclusion.

### B.  Louisiana Revised Statutes 10:3-302

When defenses are proven under §3-308, the holder may still be able to recover if he can show he is a holder in due course ("HIDC").   An individual is entitled to classification as an HIDC if:

(1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and

(2) the holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in <u>R.S. 10:3-306</u>, and (vi) without notice that any party has a defense or claim in recoupment described in <u>R.S. 10:3-305(a)</u>.

La. R.S. 10:3-302(a). An important limitation on the ability to qualify as an HIDC appears in subsection (c) of this statute, which provides:

(c) Except to the extent a transferor or predecessor in interest has rights as a holder in due course, a person does not acquire rights of a holder in due course of an instrument taken (i) by legal process or by purchase in an execution, bankruptcy, or creditor's sale or similar proceeding, (ii) by purchase as part of a bulk transaction not in ordinary course of business of the transferor, or (iii) as the successor in interest to an estate or other organization.

La. R.S. 10:3-302(c). As the acquirer of the Note via an execution sale, Lucky Family falls under the guidance of subsection (c). Thus, if Lucky Family can establish itself as the successor in interest of an HIDC, it may seek enforcement of the Note irrespective of Plaintiffs' outstanding defenses.

The parties disagree as to whether Defendants are entitled to rights as an HIDC with respect to the Note. Lucky Family asserts that comment 5 to subsection (c) provides them HIDC status because their predecessor in interest (Mrs. Lollar) was an HIDC.[11] See Record Document 82-1 at 22. Plaintiffs counter that Lucky Family fails to prove HIDC status on several fronts. See Record Document 107 at 16-19. First, Plaintiffs argue that comment 5's "Shelter Rule" does not apply because Mrs. Lollar was an original payee, and thus she cannot acquire HIDC status without the acquisition of the Note through an intermediary. See id. Next, they assert that even if Lucky Family can prove satisfaction of subsection (c), it had notice of adverse claims on the Note and failed to obtain the Note in good faith. See id. Lucky Family's reply memorandum disputes these claims and reiterates those previously made on this issue. See Record Document 113.

The burden of proving HIDC status rests with the party claiming such status. See Courtesy Fin. Servs., Inc. v. Hughes, 424 So.2d 1172, 1174 (La. App. 1st Cir. 1982). The Court agrees with Lucky Family that the so-called "Shelter Rule" could apply despite Mrs. Lollar being an original payee of the Note. See id. at 1175 (reasoning that HIDC status could still be proven if the requisite elements of purchase for value, good faith, and lack

---

[11] Comment 5 to subsection (c) states in relevant part: "The purchaser is treated as a successor in interest to the prior holder and can acquire no better rights. But if the prior holder was a holder in due course, the purchaser obtains rights of a holder in due course."

of notice have been met). However, Plaintiffs have introduced sufficient evidence to preclude a grant of summary judgment on these overarching factors required for HIDC status. As to the element requiring a lack of notice of claims to the instrument, Vickie Lucky has stated in her sworn deposition that she was aware of the legal battles surrounding the Note, including the Lucky II suit and the Notice of Lis Pendens, prior to the Sheriff's sale of the Note at which Lucky Family became its holder. See Record Document 107-5. Further, as the Court has discussed throughout this memorandum, Plaintiffs have introduced evidence of potential bad faith on the part of Lucky Family to obtain the Note at a reduced price through alleged manipulation of the Sheriff's sale. With both necessary elements unmet to the degree necessary to satisfy the summary judgment standard, Lucky Family cannot qualify for HIDC status at this time.

Because Plaintiffs' defenses to enforcement of the Note have not been vitiated, and Lucky Family cannot prove HIDC status at this time, Defendants are unable to obtain summary judgment with regards to their enforcement efforts on the Note. Defendants' Motion for Summary Judgment (Record Document 82) is **DENIED**.

## VIII.   CONCLUSION

In sum, Mrs. Lollar's Partial Motion for Summary Judgment (Record Document 80) is **DENIED**. Lucky Family's Motion for Summary Judgment on all of Plaintiff's Claims (Record Document 83) and Mr. Lucky's Motion for Summary Judgment (Record Document 84) are **DENIED IN PART** and **GRANTED IN PART**. Sheriff Whittington's Motion for Summary Judgment (Record Document 96) is similarly **DENIED IN PART** and **GRANTED IN PART**. Finally, Lucky Family's Motion for Summary Judgment on its Counterclaims (Record Document 82) is **DENIED**.

Based on these ruling, Plaintiffs' claims for annulment of the sale under a violation of § 4365's appointment provision and due to the deprivation of Mrs. Lollar's property without due process of law remain. Plaintiffs' claims for damages based on the improper seizure, appraisal, and sale of the note, along with their claims for abuse of process remain. Defendants' counterclaims for enforcement of the Note are likewise triable issues.

An order corresponding with the instant memorandum will issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 20th day of November, 2020.


S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT