UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

MAGNOLIA ISLAND PLANTATION,
ET AL.

CIVIL ACTION NO. 5:18-CV-1526

VERSUS

DISTRICT JUDGE:
HON. S. MAURICE HICKS, JR.

LUCKY FAMILY, L.L.C., ET AL

MAGISTRATE JUDGE:
HON. KAYLA D. MCCLUSKY

**DEFENDANT W. A. LUCKY, III'S MEMORANDUM
IN OPPOSITION TO PLAINTIFFS' MOTION FOR
LEAVE TO FILE SECOND AMENDED COMPLAINT**

AYRES, SHELTON, WILLIAMS,
BENSON & PAINE, LLC
  Curtis R. Shelton
La. Bar Roll No. 17137
333 Texas Street, Suite 1400 (71101)
P. O. Box 1764
Shreveport, LA 71166
Telephone: (318) 227-3500
Facsimile: (318) 227-3806
Email: curtisshelton@arklatexlaw.com

WIENER, WEISS & MADISON
A Professional Corporation
  R. Joseph Naus, #17074
  Marjorie Frazier, #32991
330 Marshall Street, Suite 1000 (71101)
P. O. Box 21990
Shreveport, LA 71120-1990
Telephone: (318) 226-9100
Facsimile: (318) 424-5128
E-mail: rjnaus@wwmlaw.com
E-mail mfrazier@wwmlaw.com

ATTORNEYS FOR W. A. LUCKY, III

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

I.    FACTS............................................................................................................1

     A.    Plaintiffs' Original Complaint to Annul Sheriff's Sale and for Other Relief;
         First Amendment ...............................................................................1

     B.    Discovery ..........................................................................................2

     C.    Dispositive Motions ..........................................................................2

     D.    Appeal to the Fifth Circuit ................................................................5

     E.    No Facts Pleaded to Support and Official Capacity Claim ...............7

     F.    Procedural Posture ............................................................................9

     G.    Plaintiffs' Delay with Knowledge of the Facts ...............................10

II.   LEGAL STANDARD ...................................................................................14

     A.    Undue Delay, Repeated Failure to Cure Deficiencies and Undue
         Prejudice to Defendants ..................................................................15

     B.    The Futility of the Proposed Second Amended Complaint...............17

III.  CONCLUSION .............................................................................................18

i

# TABLE OF AUTHORITIES

**STATUTES AND RULES**                                                        **PAGE(S):**

Fed. Rule Civ. Proc. 15(a)(2) ........................................................................................14

**CASES**

*Adams v. City of Shreveport*,
269 F.Supp.3d 743, 760–61; (W.D. La.2017) ........................................................... 7-8

*Addington v. Farmer's Elevator Mut. Ins. Co*,
65 F.2d 663 (5th Cir. 1981) ...........................................................................................16

*Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.*,
933 F.2d 314, 321 (5th Cir. 1991) ................................................................................15

*Everhome Mortg. Co. v. Lewis*,
16-323, p. 5 (La.App. 5 Cir. 12/07/16); 207 So. 3d 646, 651 .....................................18

*Foman v. Davis*,
371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)............................................14

*Grigsby & Associates, Inc. v. City of Shreveport*,
294 F.Supp.3d 529, 538; 2018 WL 894766 (W.D. La. 2018) ................................. 17-18

*Jackson v. Bank of Haw.*,
902 F.2d 1385, 1387 (9th Cir. 1990) .............................................................................14

*Jones v. Robinson Prop. Group, L.P.*,
427 F.3d 987, 994 (5th Cir. 2005) .......................................................................... 14-15

*Layfield v. Bill  Heard Chevrolet, Company*,
607 F.2d 1097, 1099 (5th Cir. 1879), *cert. denied*, 446 U.S. 939,
100 S.Ct. 21, 64 L. Ed. 2d 792 (1980)...........................................................................14

*Magnolia Island Plantation, L.L.C. v. Whittington*,
29 F.4th 246, 248 (5th Cir. 2022) ......................................................................... 5-7, 17

*Mayeux, v. La. Health Serv & Indem. Co.*,
376 F.3d 420 (5th Cir. 2004) .........................................................................................16

*NL Industrial Inc. v GHR Energy Corp.*,
940 F2d. 957 (1991).......................................................................................................16

*Stripling v. Jordan Prod. Co., LLC,*
234 F.3d 863, 872-73 (5th Cir. 2000) ........................................................................................17

Defendant W. A. Lucky, III ("Mr. Lucky"), opposes the *Motion for Leave to File a Second Amended Complaint* ("Plaintiffs' Motion"), Rec. Doc. 174, and respectfully represents:

## I.   FACTS

### A.   Plaintiffs' Original *Complaint to Annul Sheriff's Sale and for Other Relief; First Amendment*

On  November 21, 2018, nearly four years ago, plaintiffs Magnolia Island Plantation LLC ("Magnolia") and Barbara Marie Carey Lollar ("Ms. Lollar") (Magnolia and Lollar being collectively referred to herein as "Plaintiffs") filed their original *Complaint to Annul Sheriff's Sale and for Other Relief*.[1]

On September 23, 2019, Plaintiffs filed their *First Amended and Restated Complaint to Annul Sheriff's Sale and for Other Relief* ("*First Amended and Restated Complaint*").[2] Plaintiffs' *First Amended and Restated Complaint* was allowed after a limited opposition by Mr. Lucky. In the Plaintiffs' motion seeking leave to file the *First Amended and Restated Complaint*, they represented that the purposes of the proposed *Amended and Restated Complaint* was to **clarify** the Plaintiffs' prior allegations and to **supplement** the Plaintiffs' existing claims.[3] The Plaintiffs' motion for leave was tendered for filing after the May 17, 2019, deadline for amendment of pleadings.[4]

Mr. Lucky filed a pleading titled "*Partial Opposition to Motion for Leave to File Amended and Restated Complaint and Partial Opposition to Plaintiffs' Motion to Continue Trial and Vacate Scheduling Order.*"[5] In that partial opposition, Mr. Lucky stated that he did not believe that the

---

[1] Rec. Doc. 1.

[2] Rec. Doc. 51.

[3] Rec. Doc. 41, ¶ 1.

[4] Rec. Doc. 22 (*Scheduling Order*).

[5] Rec. Doc. 49.

*First Amended and Restated Complaint* was necessary for the purposes for which leave was sought. However, Mr. Lucky stated that he would not oppose the allowance of the *First Amended and Restated Complaint* if it was recognized that the amendment was only allowed for the Plaintiffs to **clarify** their claims and for Ms. Lollar to **supplement** her existing alternative claim for restitution. As summarized by the Court in its *Minutes* filed on September 13, 2019:

> The Court asked Mr. Shelton to summarize the arguments set forth in his Partial Opposition to Plaintiffs' Motion to Amend the Complaint [Record Document 49]. He stated that he was agreeable to allowing Plaintiffs to clarify the arguments contained in their complaint but opposed to the introduction of any new causes of action. He stated that the proposed amended complaint did not contain any new causes of action as he read it and that the new legal arguments it contained were fairly covered under the requirements of notice pleading.

*Minutes*.[6]  The late-filed *First Amended and Restated Complaint* was allowed and filed.

**B.    Discovery**

Discovery proceeded, which included the depositions of the parties, the parties' principals, and others. Depositions have been taken of David Lee Miller of the Bossier Sheriff's office (October 21, 2019), Patrick Lacour, the Sheriff's appraiser (October 22, 2019), Ronald Lollar (November 13, 2019), Barbara Lollar (November 13, 2019), Vickie Lucky (November 14, 2019), W. A. Lucky, III (November 20, 2019), and Jean Horne of the Bossier Sheriff's Office (November 20, 2019).

**C.    Dispositive Motions**

Written discovery and depositions were followed by extensive dispositive motion practice. The following dispositive motions were filed:

---

[6] <u>Rec. Doc.</u> 50.

A.     Plaintiff *Barbara Lollar's Motion for Partial Summary Judgment* was filed and opposed by Lucky Family, L.L.C., Mr. Lucky, and the Sheriff;[7]

B.     Lucky Family, L.L.C.'s *Rule 56 Motion Filed by Lucky Family, L.L.C. Against Ronald Lollar and Magnolia Island Plantation, L.L.C. for Summary Judgment on Promissory Note*, opposed by Ronald William Lollar and Magnolia;[8]

C.     Lucky Family, L.L.C.'s *Rule 56 Motion Filed by Lucky Family, L.L.C. Against Barbara Lollar and Magnolia Island Plantation, L.L.C. for Dismissal of Plaintiffs' Claims*, opposed by Ms. Lollar and Magnolia;[9]

D.     Mr. Lucky's *Motion for Summary Judgment*, opposed by Barbara Marie Lollar and Magnolia;[10] and

E.     The Sheriff's *Amended and Corrected Motion for Summary Judgment*, opposed by Ms. Lollar, Ronald William Lollar, and Magnolia.[11]

On November 20, 2020, the Court rendered its *Memorandum Ruling*, Rec. Doc. 158, on the then-pending motions for summary judgment. The Court ruled on the motions for summary judgment as follows:

A.     The Court denied Ms. Lollar's motion for partial summary judgment;[12]

B.     The Court denied Lucky Family, L.L.C.'s motion for partial summary judgment on its counter claim on the promissory note;[13]

---

[7] Rec. Docs. 80 - 80-7; Rec. Docs. 97 - 97.2; Rec. Docs. 98, 98-1, 98-2, 98-4 - 98-11 & 102; Rec. Docs. 104 & 108; Rec. Doc. 116; Rec. Docs. 122; and Rec. Doc. 126.

[8] Rec. Docs. 82 - 82-11; Rec. Docs. 107 - 107-7; and Rec. Doc. 113.

[9] Rec. Docs. 83 - 83-11; Rec. Docs. 105 - 105-8; and Rec. Doc. 112.

[10] Rec. Docs. 84 - 84-22; Rec. Docs. 119 - 119-11; and Rec. Doc. 114.

[11] Rec. Docs. 96 - 96-15; Rec. Docs. 103 – 103-2; Rec. Doc. 123; Rec. Doc. 141.

[12] Rec. Doc. 158 (*Memorandum Ruling*), pp. 1, 12, 14 & 38.

[13] Rec. Doc. 158 (*Memorandum Ruling*), pp. 1 & 38.

C.     The Court denied in part and granted in part Lucky Family, L.L.C.'s motion for partial summary judgment on the Plaintiffs' claims;[14]

D.     The Court denied in part and granted in part Mr. Lucky's motion for summary judgment on the Plaintiffs' claims;[15] and

E.     The Court denied in part and granted in part the Sheriff's motion for summary judgment on  the Plaintiffs' claims.[16]

In its rulings, the Court:

A.     found that Magnolia had received actual notice of the sale through its registered agent, and therefore, its due process claim could not survive summary judgment.[17]

B.     considered the Plaintiffs' argument that the successful appeal of the judgment on which the sheriff's sale was based required that the sheriff's sale be annulled.[18] The Court ruled that Lucky Family, L.L.C.'s motion for summary judgment was granted on that issue.[19]

C.     ruled that the Plaintiffs' unjust enrichment claim could not survive either Mr. Lucky or Lucky Family, L.L.C.'s motion for summary judgment.[20]

Considering the Sheriff's motion for summary judgment, the Court recognized that it had ruled that Magnolia's claim of lack of notice had been addressed, and that the Sheriff was entitled to summary judgment on the Plaintiffs' notice claims.[21]

---

[14] <u>Rec. Doc.</u> 158 (*Memorandum Ruling*), pp. 1, 18, 18-20, 27 & 38.

[15] <u>Rec. Doc.</u> 158 (*Memorandum Ruling*), pp. 1, 22, 29-31 & 38

[16] <u>Rec. Doc.</u> 158 (*Memorandum Ruling*), pp. 1, 33 & 38.

[17] <u>Rec. Doc.</u> 158 (*Memorandum Ruling*), p. 18.

[18] <u>Rec. Doc.</u> 158 (*Memorandum Ruling*), p. 20.

[19] *Id.*

[20] <u>Rec. Doc.</u> 158 (*Memorandum Ruling*), pp. 30-31.

[21] <u>Rec. Doc.</u> 158 (*Memorandum Ruling*), pp. 19 & 31.

The Court next addressed the Sheriff's claim of qualified immunity. On the Sheriff's claim of qualified immunity, the Court stated "federal qualified immunity does not apply to **state law claims** such as a violation of § 4365."[22]

### D.     Appeal to the Fifth Circuit

On appeal to the Fifth Circuit, the Sheriff argued that his claim of qualified immunity applied to the federal law and constitutional claims against him. The Fifth Circuit held that the Sheriff is entitled to qualified immunity as to Ms. Lollar's claim under 42 U.S.C. § 1983, as she had failed to allege any personal involvement of the Sheriff in the purported wrongdoing.[23]

The Fifth Circuit first examined Ms. Lollar's federal cause of action under 42 U.S.C. § 1983, against which the Sheriff argued he was entitled to qualified immunity.[24] The Fifth Circuit wrote:[25]

> A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Although factual inferences are always drawn in favor of the non-moving party, once the qualified immunity defense is asserted, "the burden ... shifts" to the opponent of immunity. *Id*. That party—in this case, Lollar—must then show that (1) the "official's conduct violated a constitutional right" of the opponent of immunity, and (2) "the right was clearly established at the time of the violation." *Id*. We may address these two prongs of the qualified immunity question in either order or may resolve the case using only a single prong. *Cunningham v. Castloo*, 983 F.3d 185, 191 (5th Cir. 2020). Here, we need not examine the "clearly established" prong, because Lollar has failed to meet her burden of showing a constitutional violation.

---

[22] <u>Rec. Doc.</u> 158, p. 33 (emphasis added).

[23] *Magnolia Island Plantation, L.L.C. v. Whittington*, 29 F.4th 246, 248 (5th Cir.2022)("[W]e hold that the Sheriff is entitled to qualified immunity as to Lollar's claim under 42 U.S.C. § 1983, as Lollar failed to allege any personal involvement of the Sheriff in the purported wrongdoing.").

[24] *Id.* at 250.

[25] *Id.*

The Fifth Circuit recognized that Ms. Lollar was suing the Sheriff in his individual capacity.[26] The court explained that "[a]n official cannot be held liable in his individual capacity merely because a subordinate committed some constitutional violation; '[s]ection 1983 does not impose vicarious or respondeat-superior liability.'"[27] The Fifth Circuit stated: "Instead, a defendant must either be 'personally involved in the constitutional violation' or commit 'acts [that] are causally connected to the constitutional violation alleged.'"[28] The Fifth Circuit continued: "Lollar, therefore, was obligated to show some personal involvement of Sheriff Whittington in the alleged due process violation."[29]

Continuing, the Fifth Circuit explained:[30]

> This Lollar has failed to do. Both before the district court and on appeal, Lollar has not pointed to any competent summary judgment evidence indicating that the Sheriff himself was involved personally in the disputed sale. Indeed, when repeatedly pressed at oral argument, Lollar's counsel could not cite any instance where Lollar had made assertions about the Sheriff's personal involvement. Therefore, Lollar has not pointed to any evidence creating a dispute of material fact as to whether Sheriff Whittington personally violated her rights.

Likewise, the Fifth Circuit held that Ms. Lollar's claims against the Sheriff individually under the Louisiana constitution also could not survive summary judgment, writing:[31]

> Lollar also makes due process arguments under the Louisiana constitution. We have recognized that federal qualified immunity principles may be applied to claims under the Louisiana constitution "[i]nasmuch as [they] parallel entirely the § 1983 allegations." *Roberts v. City of Shreveport*, 397 F.3d 287, 296 (5th Cir. 2005). Lollar's state constitutional claim parallels—and indeed, is indistinguishable from—her arguments under the Federal Constitution and § 1983. The foregoing federal qualified immunity analysis is therefore applicable to Lollar's claim under

---

[26] *Id.* at 250-51 (footnote omitted).

[27] *Id.* at 251 (*citing Bigford v. Taylor*, 834 F.2d 1213, 1220 (5th Cir. 1988)).

[28] *Id. citing Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999)).

[29] *Id.*

[30] *Id.* (footnote omitted).

[31] *Id.*

the state constitution as well, and the district court's refusal to grant immunity as to said claim is reversed.

The result of the Fifth Circuit's ruling and mandate is that all claims against the Sheriff individually were dismissed. Further, this Court has previously granted summary judgment dismissing Magnolia's claim of lack of notice and recognizing that the Sheriff was entitled to summary judgment on the Plaintiffs' notice claims.[32]

## E.    No Facts Pleaded to Support an Official Capacity Claim

The Plaintiffs' *First Amended and Restated Complaint* named the Sheriff as a defendant "in his personal capacity, and in his official capacity."[33] However, the Plaintiffs' *First Amended and Restated Complaint* included no allegations that would state an official capacity claim for relief. As explained by this Court, in *Adams v. City of Shreveport*, 269 F.Supp.3d 743, 760–61; (W.D. La.2017):

> In *Monell v. Dept. of Social Serv.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that municipalities and local government agencies cannot be held liable for constitutional torts under § 1983 under a theory of respondeat superior, *id.*, 436 U.S. at 691, 98 S.Ct. 2018, but they can be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.*, 436 U.S. at 694, 98 S.Ct. 2018. In other words, merely establishing a constitutional violation by an employee of a local government entity is not enough to impose liability upon that entity under § 1983.
>
> Rather, to succeed on a *Monell* claim against a local government entity, the plaintiff must establish (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *McGregory v. City of Jackson*, 335 Fed.Appx. 446, 448 (5th Cir. 2009), *citing Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247–49 (5th Cir. 2003). Locating an official "policy" or "custom" ensures that a local government entity will be held liable only for violations of constitutional rights that resulted from the decisions of those officials

---

[32] <u>Rec. Doc.</u> 158 (*Memorandum Ruling*), pp. 19 & 31.

[33] <u>Rec. Doc.</u> 51, p. 3 ¶ 3.

whose acts may fairly be said to be those of the government entity itself. *Bryan Cty. Comm'rs v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

> An "official policy" may be established in one of three ways: (1) "when the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy," *Id.*, 520 U.S. at 417, 117 S.Ct. 1382 (Souter, J., dissenting); (2) "where no rule has been announced as 'policy' but federal law has been violated by an act of the policymaker itself," *Id.*, 520 U.S. at 417–18, 117 S.Ct. 1382 (Souter, J., dissenting); and (3) "even where the policymaker has failed to act affirmatively at all, so long as the need to take some action to control the agents of the government 'is so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymaker ... can reasonably be said to have been deliberately indifferent to the need.' " *Id.* 520 U.S. at 419, 117 S.Ct. 1382 (Souter, J., dissenting) (*quoting City of Canton v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

The summary judgment evidence previously considered by this Court includes the deposition testimony of Jeane Horne.[34] Ms. Horne testified that Ms. Flournoy and she both considered this sheriff's sale to be a learning experience for the sheriff's office because it was the first time that they had sold this type of asset (a note).[35] The Court recognized this in its *Memorandum Ruling* on the motions for summary judgment. The Court wrote:[36]

> In anticipation of a wide discrepancy in the parties' appraisals, which would require the Sheriff's office to appoint a third appraiser under La. R.S. 13:4365(B), Deputy Flournoy met with her supervisor, Jean Horne ("Horne"), and legal counsel for the Civil Department, James Southerland ("Southerland"), to discuss possible next steps. *See* Record Document 96-1 at 6. **Both Horne and Southerland had never encountered a similar situation before** and did not know of any appraisers the Sheriff's office could appoint. *See id.* . . .

In other words, the summary judgment evidence contradicted any notion of that the Sheriff had any official policy or custom or had promulgated any generally applicable statement of policy.

---

[34] Rec. Doc. 96-08.

[35] Rec. Doc. 96-08, pp. 5-6 of 8.

[36] Rec. Doc. 158 (*Memorandum Ruling*), p. 4 (emphasis added).

F.      **Procedural Posture**

It is against this background that the Plaintiffs now seek to amend their complaint. Plaintiffs' counsel has graciously provided a red-lined copy of the now proposed *Second Amended and Restated Complaint to Annul Sheriff's Sale and for Other Relief* (*"Second Amended and Restated Complaint"*).[37] The motion for leave asserts that consent for the filing was sought but not obtained.[38] This proposed *Second Amended and Restated Complaint:*

A.      reiterates the claims made against the Sheriff individually, although they have been dismissed;

B.      would add Ms. Kimberly Flournoy, a deputy, as a new defendant;

C.      includes allegations the nature of which have already been disposed of by this Court;[39]

D.      contains vague allegations implicating unnamed individuals who have not been named as parties in this action;[40]

E.      attempts to revive the dismissed personal capacity federal law claims;[41] and

F.      attempts, by the most conclusory of allegations, to plead an official capacity claim.[42]

---

[37] *See* Exhibit A.

[38] Rec. Doc. 174, ¶ 6. Consent was requested by email on June 9, 2022, the day before the deadline for amendment.

[39] *See* Exhibit A, p. 13 ¶ 28 ("Ms. Flournoy's Notice of Seizure was addressed only to Lollar's counsel. . . ."). This Court has already ruled against Plaintiffs on the sufficiency of the notice.

[40] *See, e.g.,* Exhibit A, p. 18 ¶ 46 ("Such scheme was aided and abetted by the Sheriff, Ms. Flournoy and other members of the Sheriff's staff.")

[41] *See* Exhibit A, pp. 27-28 ¶¶ 77-86.

[42] *See* Exhibit A, pp. 28-29 ¶¶ 87-88.

A status conference was held on May 10, 2022, and trial of this matter was set for a fourth time for March 13, 2023.[43]  This case was set for a jury trial on three prior dates: September 13, 2019, April 23, 2020, an April 26, 2021.[44]

### G.      Plaintiffs' Delay with Knowledge of the Facts

Now, nearly four years after the filing of the original complaint, and nine months before trial of this  matter, Plaintiffs seek to file a *Second Amended and Restated Complaint* that purports to add a new party and new claims, reiterate already dismissed claims, and significantly change the claims to be tried. This Court should not allow the proposed amendment, and defendant Mr. Lucky opposes same.

Notably, depositions were taken in this action in October and November, 2019. Written discovery had long since been concluded. Plaintiffs have long been aware of the facts which they now seek to allege. Significantly, Plaintiffs seek to add a new party, Ms. Flournoy, whose name is featured prominently in many of the Plaintiffs' new allegations. Ms. Flournoy's involvement in this matter has long been known to Plaintiffs.

Plaintiffs' counsel, Davis Powell, was served on September 12, 2018, with the *Notice of Seizure* and the *Notice to Appoint Appraiser* signed by Ms. Flournoy for the Sheriff.[45] Mr. Powell was provided copies of the documents in the Sheriff's file for the foreclosure on August 19, 2019, and September 18, 2019.[46] In answer to Plaintiffs' interrogatory 9, the Sheriff answered:

---

[43] Rec. Doc. 172. During the Status Conference all Defendants objected to the setting of an amendment of pleadings deadline, and Magistrate Judge McClusky said that she would submit the proposed Scheduling Order to the District Judge who entered the Scheduling Order currently in place on May 10, 2022. See Rec. Docs. 172 & 173.

[44] Rec. Docs. 41, 50 & 154

[45] *See* Exhibit B (BSO 005 and 006).

[46] *See* Exhibit C (Excerpts from *Responses to Requests for Admission, Interrogatories and Requests for Production of Documents* (August 19, 2019)); Exhibit D (Excerpts from *Second*

**Kim Flournoy** first contacted an appraiser BSO regularly used, possibly Mark or Chris Grisham, and was advised that the appraisers used for property appraisals were not typically qualified to appraise a note. BSO then contacted counsel who investigated the matter to determine what type of appraiser was needed. Specifically counsel contacted the president of First National Bank in Benton to ask what type of appraiser would be qualified to appraise the note. BSO was unable to find an appraiser qualified and willing to appraise the note. On September 17, 2018, BSO contacted Curtis Shelton via email inquiring as to whether or not he could recommend any qualified appraisers who could act as a third party appraiser in the event that a third party appraiser was needed, a copy of which is attached hereto as Bates Number 025. The Sheriff's office was contacted by Curtis Shelton via email on October 12, 2018 stating that he had located an appraiser by the name of Patrick Lacour See Bates Numbers 026-027. Along with the email, Mr. Shelton attached a list of Mr. Lacour's credentials and certifications. Mr. Shelton also stated that he would provide Mr. Lacour with the information pertaining to the note and that he did not know of any other appraisers at that time.

Exhibit D (Excerpt from *Second Amended Responses to Requests for Admission, Interrogatories and Requests for Production of Documents* (September 18, 2019)), p. 11 (emphasis added).

On September 16, 2019, Mr. Lucky answered discovery served by the Plaintiffs. This included Plaintiffs' interrogatory number 2, which read:

**Interrogatory No. 2:**

Identify and describe any communications between you, including your representatives or legal counsel, or any one of them, and the Sheriff, including his representatives, staff or legal counsel, or any one of them, which occurred after November 3, 2017, and which relate, refer, or pertain to Lucky I, Lucky II, the Note, the Sheriff Sale, and/or the Property, including the identification of when, and with whom such communications occurred, as well as identifying any documents reflecting such communications.

This interrogatory was answered in detail by Mr. Lucky as follows:

**Answer to Interrogatory No. 2:**

October 22, 2018, **Kimberly Flournoy** sent Curtis R. Shelton an e-mail reading: "Thank you so much for your help in everything. I apologize for being so needy, this suit has been a learning experience for me. Have a great day!"

---

*Amended Responses to Requests for Admission, Interrogatories and Requests for Production of Documents* (September 18, 2019)).

October 22, 2018, **Kimberly Flournoy** sent Curtis R. Shelton an e-mail reading: "Mr. Shelton, would you please ask Mr. Lacour to get me an invoice ASAP so I can build it into my suit cost? Thank and have a great day!"

October 22, 2018, Curtis R. Shelton sent **Kimberly Flournoy** an e-mail reading: "Kim, He said he will send an invoice tomorrow."

October 16, 2018, **Kimberly Flournoy** sent Curtis R. Shelton an e-mail reading: "Mr. Shelton, the Sheriff has signed your paperwork for the above referenced suit. Please advise when you would like to come by and pick up. Thanks, Kim."

October 16, 2018, **Kimberly Flournoy** sent Curtis R. Shelton an e-mail reading: "Mr. Shelton, we will have to have either s UCC or a mortgage certificate run for the above referenced suit, please advise which name(s) you would like this run in. Thank you!"

October 16, 2018, Curtis R. Shelton sent **Kimberly Flournoy** an e-mail reading: "I would run a UCC certificate in the names of Barbara Carr and Barbara Lollar."

Curtis R. Shelton had a telephone conference from a person in the Sheriff's office (possibly **Ms. Kimberly D. Flournoy**) in which the Sheriff's office indicated that it might need for a third appraiser candidate to be identified.

October 12, 2018, Curtis R. Shelton sent **Kimberly Flournoy** an e-mail reading:

> Dear Kim,
>
> I am attaching three things to this message. The first two are a letter that I am mailing today with a Motion for Order Authorizing Reduced Sheriff's Commission. If the Sheriff will negotiate the commission that will be appreciated. I have prepared this in the same way that I usually prepare these for sheriff's sales. If something different needs to be done, please just let me know.
>
> The third things [sic] is an "Ex Parte Motion to Fix Appraisers' Fees." As we have discussed, it will likely not be possible to find someone to do the appraisal of the promissory note for the amount the Sheriff usually pays or even the $50 that the statute authorizes without court approval. So, I have prepared this motion so that approval could be obtained for up to $225 per hour. That is the amount the seizing creditor's appraiser charged, and I have no real doubt that Mr. Dean, appointed by the debtor, will

charge that amount or more. (Mr. Dean is a senior partner in Heard, McElroy and Vestal.)

If the Ex Parte Motion to Fix Appraisers' Fees looks acceptable, I will sign it, mail a copy to the lawyers for the debtor, and have the original delivered to you. That will enable you to process it through and get the Court to sign the order before we run up toward the last minute.

Thank you very much for your time and diligence.

Letter dated October 12, 2018, from Curtis R. Shelton to **Ms. Kimberly D. Flournoy**

Letter dated October 12, 2018, from Curtis R. Shelton to **Ms. Kimberly D. Flournoy** with Oath of Appraiser and Appraisal Sheet.

E-mail dated October 12, 2018, from Curtis R. Shelton to **Ms. Kimberly D. Flournoy**

October 10, 2018, Curtis R. Shelton had a telephone conference from a person in the Sheriff's office (possibly **Ms. Kimberly D. Flournoy**) in which the Sheriff's office indicated that it might need for a third appraiser candidate to be identified.

Letter dated October 3, 2018, from **Ms. Kimberly D. Flournoy** to Curtis R. Shelton

Letter dated September 21, 2018, from Curtis R. Shelton to **Ms. Kimberly D. Flournoy** with Notice to Appoint Appraiser.

Letter dated September 21, 2018, from Curtis R. Shelton to **Ms. Kimberly D. Flournoy** with  approval of advertisement.

E-mail dated September 17, 2018, from **Ms. Kimberly D. Flournoy** to Curtis R. Shelton.

E-mails dated September 14, 2018, from **Ms. Kimberly D. Flournoy** to Curtis R. Shelton.

Facsimile dated September 14, 2018, from **Ms. Kimberly D. Flournoy** to Curtis R. Shelton.

E-mail dated September 6, 2018, from Curtis R. Shelton to **Ms. Kimberly D. Flournoy**.

13

E-mail dated September 6, 2018, from **Ms. Kimberly D. Flournoy** to Curtis R. Shelton.

Letter dated September 5, 2018, from Curtis R. Shelton to **Ms. Kimberly D. Flournoy** with costs deposit check.

Letter dated July 5, 2018, from **Ms. Kimberly D. Flournoy** to Curtis R. Shelton.

Telephone conference on June 12, 2018, with sheriff's office re seizure of note.

Information concerning when and with whom such communications occurred, as well as identifying any documents reflecting such communications, is contained in the documents produced herein by the Sheriff as BSO 001 through BSO 057. Any e-mails not contained in BSO 001 through BSO 057 will be produced.

<u>Exhibit E</u> (Excerpt from *W.A. Lucky, III's Answers to Plaintiffs' Interrogatories and Responses to Plaintiff's  Requests for Production* (September 16, 2019))(emphasis added), pp. 4-7.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) governs a party's request for leave to amend a pleading. Under this provision, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).  The underlying purpose of Rule 15 is to facilitate decisions on the merits rather than on the pleadings or technicalities. Notwithstanding a strong policy permitting amendment, leave to amend "is not to be granted automatically." *Layfield v. Bill  Heard Chevrolet, Company,* 607 F.2d 1097, 1099 (5th Cir. 1879), *cert. denied*, 446 U.S. 939, 100 S.Ct. 21, 64 L. Ed. 2d 792 (1980); *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990). Ultimately, "the grant or denial of an opportunity to amend is within the discretion of the District Court[.]" *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962). Courts in the Fifth Circuit consider five factors in deciding a motion for leave to amend:  undue delay, bad faith or dilatory motive, repeated failures to cure deficiencies by amendments previously allowed undue prejudice

to the opposing party, and futility of the amendment.  *Jones v. Robinson Prop. Group, L.P.,* 427 F.3d 987, 994 (5th Cir. 2005); *Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.,* 933 F.2d 314, 321 (5th Cir. 1991).  Mr. Lucky submits that all factors weigh in favor of denial of the Plaintiffs' motion.

A.     **Undue Delay, Repeated Failure to Cure Deficiencies and Undue Prejudice to Defendants**

As noted above, this case was initiated in November 2018.[47] Plaintiffs were obviously aware of the potential claims and the underlying facts when the original complaint was drafted. Additionally,  Plaintiffs have already been  allowed one "out of time"  amendment to the complaint on August 27, 2019.[48]  Moreover, prior to the current *Scheduling Order*,  there have been three Scheduling Orders, with the May 17, 2019, deadline for amending pleadings being closed.[49] Plaintiffs were provided ample opportunity to develop their case and to amend (and even being granted one amendment to the original complaint outside of the original deadline set by this Court). The Court diligently considered multiple motions for summary judgment. This case has been to the Fifth Circuit. Plaintiffs attempt, more than three years after the closing of the deadline for amendment of pleadings and after the Fifth Circuit's decision, to put the "toothpaste back into the tube" is extremely late. Plaintiffs seek to amend the complaint to add new theories and a new defendant. In doing so, Plaintiffs rely once again, on the allegations toward the sheriff and his deputies in an effort to plead a claim against the Sheriff or one of his deputies.

---

[47] Rec. Doc. 1.

[48] Rec. Doc. 41. The original deadline to amend pleadings was May 17, 2019. See, R. 22, It was never amended pre-appeal. *See* Rec. Docs. 52& 137 for scheduling orders which did not reopen the deadline to amend pleadings.

[49] *Id.*

These are the exact types of undue delay, dilatory conduct, and prior failures to cure pleading deficiencies that are contemplated by the Fifth Circuit when denying motions to amend. This long delay in now raising new matters after this Court's and the Fifth Circuit's rulings most certainly causes undue prejudice to the defendants, who will be required to evaluate and perhaps conduct further discovery to address newly made allegations.

Courts are clear that where a plaintiff seeks to amend complaint (1) years after it first brought a defendant into litigation, (2) after defendant has requested summary judgment and (3) where the plaintiff has provided no good reason for its failure to act sooner, justice does not allow amendment, and the Court would not abuse its discretion in denying the Plaintiff's Motion. *NL Industrial Inc. v GHR Energy Corp.*, 940 F2d. 957 (1991). Here the Plaintiffs have offered no justification for seeking to amend the Complaint to add a new defendant or to assert entirely new theories of liability. If the Court allows the same, Mr. Lucky will be prejudiced. Among other things, Mr. Lucky will have to endure discovery to be conducted by a newly added defendant.

This case is very similar to the facts presented in the case of *Mayeux, v. La. Health Serv & Indem. Co.,* 376 F.3d 420 (5th Cir. 2004) where, even though the motion to amend was filed within the scheduling deadline, an "examination of the procedural history" led the Fifth Circuit to "a definite and firm conviction that [defendants' would have suffered undue prejudice" had the amendment been allowed. *See also*, *Addington v. Farmer's Elevator Mut. Ins. Co,* 65 F.2d 663 (5th Cir. 1981) (affirming the denial of an amendment which was filed one year after commencement of suit, after discovery had been terminated, and after the defendant's motion for summary judgment because "the motion to amend, if granted, would in all likelihood, have caused prejudice to the defendant.").  Clearly, for identical reasons, the Plaintiffs' Motion should be denied.

**B.      The Futility of the Proposed Second Amended Complaint**

The Plaintiffs' Motion should also be denied because of the futility of the amendment. The definition of futility adopted by the Fifth Circuit includes circumstances in which a proposed amendment to assert a claim would fail to state a claim upon which relief could be granted under Rule 12(b)(6)." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000).

In their proposed *Second Amended and Restated Complaint*, Plaintiffs seek to modify their requests by addition of a new defendant and to modify claims in light of the Fifth Circuit's ruling holding that Ms. Lollar was required to point to evidence showing that Sheriff Whittington – as opposed to his subordinates – violated Plaintiff Lollar's constitutional rights.  *Magnolia Island Plantation, L.L.C. v. Whittington*, 29 F.4th 246, 248 (5th Cir. 2022). Years later, and only after the Fifth Circuit's decision, do Plaintiffs attempt to amend their pleadings to cure this failure on their part.[50] Further, the Plaintiffs' effort is to revive claims that have already been dismissed by this Court and the Fifth Circuit. Nothing could be more futile.

In addition, any claim against the proposed defendant Ms. Flournoy is clearly prescribed. In *Grigsby & Associates, Inc. v. City of Shreveport*, 294 F.Supp.3d 529, 538; 2018 WL 894766 (W.D. La. 2018), this Court explained:

> "The statute of limitations for a suit brought under 42 U.S.C. §§ 1981, 1983, and 1985 is determined by the general statute of limitations governing personal injuries in the forum state." *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001); *see Johnson v. Crown Enters., Inc.*, 398 F.3d 339, 341 (5th Cir. 2005) (noting that courts traditionally apply a state's personal injury limitations period in a § 1981 action); *see Helton v. Clements*, 832 F.2d 332, 334 (5th Cir. 1987) (noting that a state law limitations period applies to a § 1985 claim). The forum state is Louisiana; thus, Louisiana law will govern. In Louisiana, a lawsuit for personal injury (delictual action) is subject to a one-year liberative prescription period,

---

[50] As evidence that the Plaintiffs have indeed been dilatory in adding the new Defendant, one need only look to this Court's ruling on March 20, 2021, wherein the Court noted that Plaintiffs asserted that Ms. Flournoy was involved, but that they had not named her as a defendant. *See* Rec. Doc. 158. Any such claim asserted against Ms. Flournoy now should be prescribed.

following the accident. *Palmer v. Hamp's Constr., L.L.C.*, 2016-0381 (La. App. 4 Cir. 11/30/16), 204 So.3d 1124, 1133; *see* La. Civ. Code art. 3492. . . .[51]

*See Everhome Mortg. Co. v. Lewis*, 16-323, p. 5 (La.App. 5 Cir. 12/07/16); 207 So. 3d 646, 651 (Actions pursuant to 42 U.S.C. Section 1983 are subject to the same one year prescriptive period contained in La. C.C. art. 3492, unless plaintiff shows an exception established by legislation.) No such exception has been shown here. Indeed, the proposed amendment is the exact type of futile amendment that Courts are directed to deny.

Last, but certainly not least, the Court should consider the unfairness and prejudice that will result to the proposed new defendant, Ms. Flournoy. Ms. Flournoy is a deputy sheriff. Plaintiffs have known of her involvement in the sheriff's sale since September 12, 2018, when the *Notice of Seizure* and the *Notice to Appoint Appraiser* signed by Ms. Flournoy for the Sheriff were served.[52] Considering that the proposed amended complaint does not even allege any claim against Mr. Flournoy that would not be prescribed, why should she be tortured by its being allowed?

### III.    CONCLUSION

After nearly four years of litigation, much delay, and their prior failure to cure any pleading deficiencies, the Plaintiffs should not be allowed to file this futile pleading. For all of the foregoing reasons, the *Plaintiffs' Motion for Leave to file a Second Amended Complaint* should be denied.

---

[51] *Grigsby & Associates, Inc.* involved a claim that was subject to a four-year statute of limitations. However, such a claim is not presented in this case.

[52] *See* <u>Exhibit B</u> (BSO 005 and 006).

Respectfully submitted,

AYRES, SHELTON, WILLIAMS,
BENSON & PAINE, LLC


By: /s/ Curtis R. Shelton
        Curtis R. Shelton
La. Bar Roll No. 17137
333 Texas Street, Suite 1400 (71101)
P. O. Box 1764
Shreveport, LA 71166
Telephone: (318) 227-3500
Facsimile: (318) 227-3806
Email: curtisshelton@arklatexlaw.com

WIENER, WEISS & MADISON
A Professional Corporation
   R. Joseph Naus, #17074
   Marjorie Frazier, #32991
330 Marshall Street, Suite 1000 (71101)
P. O. Box 21990
Shreveport, LA 71120-1990
Telephone: (318) 226-9100
Facsimile: (318) 424-5128
E-mail: rjnaus@wwmlaw.com
E-mail mfrazier@wwmlaw.com

ATTORNEYS FOR W. A. LUCKY, III

19

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

MAGNOLIA ISLAND PLANTATION,
L.L.C.; and BARBARA MARIE CAREY
LOLLAR

V.

LUCKY FAMILY, L.L.C.;
W.A. LUCKY, III;
BOSSIER PARISH SHERIFF JULIAN C.
WHITTINGTON, ~~in his official capacity.~~ET
AL

CIVIL ACTION NO. 5:18-cv-1526

~~DISTRICT~~CHIEF JUDGE ~~ELIZABETH
FOOTE~~S. MAURICE HICKS, JR

MAGISTRATE JUDGE ~~KAREN
HAYES~~KAYLA D. McCLUSKY

JURY TRIAL DEMANDED

**~~FIRST~~SECONDED AMENDED AND RESTATED COMPLAINT
TO ANNUL SHERIFF'S SALE AND FOR OTHER RELIEF**

NOW INTO COURT, through undersigned counsel, ~~comes~~come Petitioners, MAGNOLIA

ISLAND PLANTATION, L.L.C., represented by its Manager, Ronald William Lollar, and

BARBARA MARIE CAREY LOLLAR, who file this Complaint and in support thereof

respectfully represents as follows:

**I.**

**ACTION**

1.

This is an action to ~~annul a Sheriff's Sale conducted by the Bossier Parish Sheriff on

October 24, 2018 on the grounds that the plaintiff, Magnolia Island Plantation, L.L.C., as the

successor to the maker of the promissory note being sold at Sheriff's Sale, failed to receive proper

notice of the Sheriff's Sale as required by Federal and State Constitutions and other applicable

laws.~~ annual a Sheriff's Sale conducted by the Bossier Parish Sheriff on October 24, 2018, on~~See~~



~~U.S. Const., Amend. XIV, Sec. 1; LA. Const., Art. 7, Sec. 25; and La. R.S. 13:3852, *Mennonite Board of Missions v. Adams*, 462 U.S. 791 (1983).  This action to annul the Sheriff's Sale is also based upon~~ the grounds that Barbara Marie Lollar has been deprived of her Constitutional due process rights in her property under the Fourteenth Amendment of the Federal Constitution due to the improper seizure, appraisal and sale of her promissory note by the Sheriff ~~and~~, his office~~.~~, Ms. Kimberly Flournoy, and those acting on behalf of the Sheriff.  Mrs. Lollar has suffered damages due to the improper seizure, appraisal, and sale of her promissory note by the Sheriff ~~and~~, members of his office. ~~See La. R.S. 13:4365; See also~~, Ms. Kimberly Flournoy and those acting on behalf of the Sheriff.  42 U.S.C. §1983.  Mrs. Lollar is also entitled under Louisiana state law to restitution of her promissory note, or alternatively, the true value thereof, due to violations of Louisiana law regarding the seizure and sale of property, violations of her due process rights under the State Constitution, as well as the reversal of the underlying judgment used to seize and sell her property. Mrs. Lollar and Magnolia Island Plantation, L.L.C~~.~~., have also suffered damages under Louisiana state law based on actions taken by W.A. Lucky, III and Lucky Family, L.L.C. which constitute abuses of process under La. Civil Code article 2315.  This is also an action to annul the Sheriff's Sale on the grounds that plaintiff, Magnolia Island Plantation, L.L.C., as the successor to the maker of the promissory note being sold, failed to receive proper notice of the Sheriff's Sale as required by Federal and State Constitutions and other applicable laws. See U.S. Const., Amend. XIV, Sec. 1; LA. Const., Art. 7, Sec. 25; and La. R.S. 13:3852, *Mennonite Board of Missions v. Adams*, 462 U.S. 791 (1983).  ~~abuse of process under La. Civil Code article 2315.~~

**II.**

**PARTIES**

2

2.

Named as Plaintiffs herein are:

a.    MAGNOLIA ISLAND PLANTATION, L.L.C., ("Magnolia") a Louisiana limited

liability company, domiciled in the State of Louisiana, which is herein represented

by its Manager, Ronald William Lollar; and

b.    BARBARA MARIE CAREY LOLLAR ("Mrs. Lollar") is an individual resident

of ~~Bossier Parish, Louisiana~~Fayette County, Tennessee.

3.

Named as Defendants herein are:

a.    LUCKY  FAMILY, L.L.C~~. (hereinafter "Lucky, LLC");~~.,  a Louisiana limited

liability company; ~~and~~

b.    W.A. LUCKY, III, ("Lucky~~")~~"), a resident of Bossier Parish, Louisiana; ~~and~~

c.    JULIAN C. WHITTINGTON, in his personal capacity, and in his official capacity

as the Bossier Parish Sheriff a political subdivision of Bossier Parish under La.

Rev. Stat.§ 13:5102(B~~).~~), (hereinafter the "Sheriff"); and

d.    Kimberly Flournoy, ("Ms. Flournoy") in her personal capacity, as an employee of

the Bossier Parish Sheriff's office, a political subdivision of Bossier Parish under

La. Rev. Stat.§ 13:5102(B).

(hereinafter sometimes collectively "Defendants").

**III.**

**JURISDICTION AND VENUE**

3

4.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 as this action presents a federal question, as well as supplemental jurisdiction under 28 U.S.C. § 1336 as the claims presented which do not present a federal question are directly related to federal question claims in the action and form the same case or controversy.

5.

Venue is proper in this district and division pursuant to 28 U.S.C. § 1391 (b).

## IV.

## PRELIMINARY STATEMENT

6.

This suit arises from the improper seizure, appraisal and Sheriff's Sale of a promissory note (the "Note" as defined further below in Section V) owned by Mrs. Lollar.  The sale of Mrs. Lollar's promissory note Note was conducted by the Sheriff's Sheriff and his office on October 24, 2018, at the Bossier Parish Courthouse. The seizure and sale of Mrs. Lollar's promissory note Note was purported to be based upon a state court monetary judgment obtained by Lucky in a lawsuit filed against Mrs. Lollar which was had no legal basis and also complained of Lollar's failure to undertake an unlawful action.  Lucky's monetary judgment was completely reversed by the Second Circuit Court of Appeal (as soon after the Note sale.  A writ application to the Louisiana Supreme Court by Lucky was subsequently denied) soon after the Sheriff's Sale. .

4

Additionally, the sale of the ~~promissory note~~Note was tainted ~~by~~with impropriety ~~both~~by the Sheriff, his office ~~and~~, Ms. Flournoy, as well as the other ~~defendants~~Defendants named herein. Prior to requesting seizure of just ~~the promissory note~~Mrs. Lollar's Note, Mr. Lucky filed multiple lis pendens against the immovable property owned by Magnolia and which secured the ~~note, and~~Note. Mr. Lucky then also filed suit against Mrs. Lollar and Magnolia asserting that the ~~note~~Note itself, and sale of the property creating the ~~promissory note~~Note, were all nullities. Mr. Lucky maintained these improper filings through the time the Note was sold.

Upon seizure of ~~the note, Mr.~~Note, Lucky ~~then~~was ~~allowed by the Sheriff and his office~~also able to manipulate the appraisal process. The Sheriff, his office and Ms. Flournoy allowed Mr. Lucky, through his counsel, ~~Mr. Lucky was allowed~~ to select and improperly influence the purported third appraiser whose appraisal of the property would be final under state law. ~~Mr. Mr. Lucky ensured~~Lucky, through his counsel, controlled every aspect of the directions and information the appraiser received to perform a valuation. Mr. Lucky, through counsel, also corresponded with the purported third appraiser to provide a biased background regarding Mrs. Lollar and her Note and to ensure that the clouds on title he placed on the note's collateral, and his lawsuit calling the note and the sale of property nullities, were utilized ~~by the third appraiser~~ to de-value the final appraisal. The result was the sale of Mrs. Lollar's promissory note for just *6% of its face value* to the only bidder at the sale: ~~the judgment creditor's~~Lucky's own family company, Lucky Family, L.L.C.

Plaintiffs present this complaint to have the Sheriff's Sale annulled based on violations of Mrs. Lollar's due process rights under the Fourteenth Amendment of the Federal Constitution, to have the promissory note restored to Mrs. Lollar and for other applicable damages for such

violations under 42 U.S.C. §1983.  Further Magnolia, as the promissory note's payor, asserts violations under the Constitution for inadequate notice of the seizure, appraisal and sale of the promissory note.

Finally, Mrs. Lollar seeks rescission of the Sheriff's Sale of her ~~note~~Note and to have the ~~note~~Note restored to her based on the Sheriff's ~~violation~~violations of state law regarding the seizure and sale of property, due process violations under ~~La. R.S. 13:4365~~state law and the fact that the purported buyer, Lucky Family, L.L.C., is not a good faith third party purchaser of the note and thus is bound by the reversal of the judgment on which the seizure and sale of the ~~note~~Note were based.

Alternatively, in the event it is found that the ~~promissory note~~Note would not be returned to Mrs. Lollar for any reason, then Mrs. Lollar asserts the same Fourteenth Amendment violations for deprivation of property as she is entitled to restitution of proceeds equal to the full and proper value of the promissory note and damages now that the underlying trial court judgment against her has been reversed.  Mrs. Lollar and Magnolia also seek damages under state tort law for the abuse of process actions by W. A. Lucky, III and Lucky Family, ~~LLC.~~L.L.C and state law due process violations.  Plaintiffs respectfully represent the following:

## V.

## FACTUAL BACKGROUND

**The Promissory Note:**

7.

On November 2, 2017, a promissory note was made by Ronald William Lollar in favor of Mrs. Lollar for the amount of $1,730,000.00, at the rate of 4% per annum, to be paid in 4 consecutive annual installments of $100,046.00 and a fifth and final balloon payment equal to the remaining principal and interest due thereunder (~~hereinafter~~herein the "Note").  A copy of the Note is attached hereto as **Exhibit "A".**

8.

The Note was secured by a mortgage on certain immovable property described and conveyed from Mrs. Lollar to Ronald William Lollar in the *Credit Sale Deed with Vendor's Lien and Special Mortgage*, dated November 2, 2017, and filed for record at Instrument No. 1179265 of the conveyance records and mortgage records, all within Bossier Parish, Louisiana.  A copy of the *Credit Sale Deed with Vendor's Lien and Special Mortgage* is attached hereto as **Exhibit "B".** (the immovable property described therein is referenced as the "Mortgaged Property").

9.

The value of the Mortgaged Property ~~far~~ exceeded the amount it secured in the Note at the time of the Sheriff's Sale discussed below.

10.

By way of an *Exchange Deed with Assumption of Mortgage*, dated November 2, 2017, and filed for record at Instrument No. 1179266 of the conveyance records and mortgage records of Bossier Parish, Ronald William Lollar conveyed the Mortgaged Property to Magnolia, wherein Magnolia assumed the obligations under the Note and the Mortgage. A copy of the *Exchange Deed with Assumption of Mortgage* is attached hereto as **Exhibit "C".**

7

**Lucky I:**

11.

W.A. Lucky (hereinafter "Lucky")"), a real estate broker, filed suit against Mrs. Lollar in the 26th Judicial District Court on September 10, 2008, for monetary damages in regards to based on an alleged oral agreement to transfer immovable property and a breach of fiduciary duty ("Lucky I"). A three-day bench trial was held 9 years later beginning on August 28, 2017. On January 5, 2018, a monetary judgment was entered against Mrs. Lollar in the amount of $1,799,450.52. (the "Lucky I Judgment" a copy of which is attached as **Exhibit "D"**). The Due to the lack of legal basis for Lucky's claims, the Lucky I Judgment was completely reversed and judgment was entered for Mrs. Lollar by the Louisiana Second Circuit Court of Appeal on January 16, 2019, (the "2nd Circuit Reversal" a copy of which is attached as **Exhibit "D-2"**) with the Louisiana Supreme Court denying Lucky's writ application on April 8, 2019 (A, (a copy of the writ denial is attached as **Exhibit "D-3"**).

12.

Although Lucky only sought monetary damages, he made clear in Lucky I that he desired and thereafter that his ultimate objective was to obtain the Mortgaged Property for his own.

13.

On December 11, 2017, prior to any issuance of the trial court's Lucky I Judgment or a ruling in that matter, Lucky filed, through his counsel, a *Notice of Lis Pendens* citing the Mortgaged Property in the conveyance records of Bossier Parish at Book C1764, Page 118, and in

the Bossier Parish mortgage records at Book M 2701, Page 654 (the "2017 Lis Pendens" a copy is attached hereto as **Exhibit "E"**).  The 2017 Lis Pendens purports that it was filed based upon Lucky I, although no Ruling or Judgment had been rendered in that matter yet and Magnolia, the owner of the property, was not even a party to Lucky I.

14.

The 2017 Lis Pendens was filed by Lucky prior to any judgment in Lucky I.  Lucky knew, at the time the 2017 Lis Pendens was filed, that any judgment in Lucky I could not include the transfer to him of the immovable property, as his claims in that matter were intentionally limited by him to only monetary damages.  Therefore, Lucky knowingly filed the 2017 Lis Pendens solely to create a cloud on Magnolia's title in a malicious effort to prevent payment to Magnolia of mineral royalty and oil and gas lease bonuses from the property, which Lucky knew would frustrate Magnolia's ability to make payments on the Note.

**Lucky II:**

15.

After the Lucky I Judgment was issued in Lucky I, Lucky filed a new lawsuit styled *W.A. Lucky, III v. Barbara Carr Lollar*, No. 155,382-A on February 20, 2018 (referenced herein as "Lucky II").  Lucky II was filed against Mrs. Lollar and Magnolia and alleged that the Note and the sale and other transactions involving the Mortgaged Property were all nullities.  Lucky purported to have standing to make these claims as a judgment creditor based upon the now-reversed monetary judgment in Lucky I Judgment.

16.

Citing ~~his second lawsuit,~~ Lucky II, Lucky <u>also</u> filed, through counsel, a second *Notice of Lis Pendens* in the Bossier Parish records, at Instrument No. 1185201 On February 20, 2018. (the "2018 Lis Pendens" a copy of which is attached hereto as **Exhibit "F"**).  The 2018 Lis Pendens purported to be applicable to the Mortgaged Property securing repayment of the Note.

17.

As discussed below, Lucky later abandoned Lucky II after the Sheriff's Sale of the Note was complete and after Lucky I was completely reversed.

18.

The 2017 Lis Pendens, Lucky II and the 2018 Lis Pendens were all intentionally and improperly filed by Lucky in order to adversely affect title to the Mortgaged Property and manufacture doubt as to marketability and value of the Note leading to the harm sustained by Plaintiffs as asserted herein, as well as ~~preventing~~<u>to prevent</u> payment of oil and gas royalties and lease bonuses which would have been sufficient to pay the Note.

**The Note Seizure:**

19.

On May 31, 2018, as Mrs. Lollar's devolutive appeal in Lucky I was pending, Lucky filed an *Ex Parte Motion for Production of Property and Alternative Motion for Contempt* in Lucky I (the "May 31st Motion") in which Lucky asked for a writ of fieri facias to issue for the purposes of enforcing the Lucky I Judgment ~~and.~~ <u>Lucky</u> also prayed for an order directing Mrs. Lollar to deliver the promissory note to the Sheriff of Bossier Parish.

20.

Mrs. Lollar opposed Lucky's right to seek ex parte relief.  In response the Judge entered a modified order setting the May 31st Motion for a show cause hearing on July 5, 2018.  The Rule directed Mrs. Lollar to show cause why she should not be ordered to immediately deliver the promissory note to the Sheriff. (see Show Cause Order, attached as **Exhibit "G")").**

21.

Separate from the May 31st Motion, Lucky also filed a Motion to Examine Judgment Debtor and for Discovery Concerning Judgment Debtor on the same day (the "Second May 31st Motion").  The Second May 31st Motion simultaneously sought the issuance of a writ of fieri facias in conjunction with seeking the production of certain documents listed therein for discovery purposes such as "examination and copying".

22.

The court in Lucky I signed an order on May 31, 2018 that the Second May 31st Motion be granted without contradictory hearing, including authorizingand also authorized the issuance of the writ of fieri facias.

23.

Thereafter, Lucky requested that a subpoena duces tecum be issued by the Bossier Clerk of Court on June 12, 2018 commanding Mrs. Lollar, pursuant to La. Civil Code of Procedure article 1354, to produce the original Note in open court on July 5, 20192018.  This subpoena was issued despite the fact that the issue of whether she must deliver the Note to the Sheriff was still pending until the hearing on July 5, 2018.  The subpoena duces tecum was served on Mrs. Lollar's counsel on June 14, 2018.

24.

11

No notice that any writ had been issued was ever communicated to Mrs. Lollar or her counsel until the day of the July 5, 2018 hearing, in which the ~~Court~~court in Lucky I simply represented in its minutes that a Writ of Fieri Facias was issued to the Sheriff of Bossier Parish on June 8, 2018.

25.

Counsel for Mrs. Lollar brought the original of the Note to the July 5, 2018 hearing in compliance with the subpoena duces tecum.  Over the objection of Mrs. Lollar's counsel that seizure and sale of the Note was premature, the court ordered the Note to be seized at the conclusion of the hearing, directing counsel for Mrs. Lollar to deliver the Note to the Bossier Parish Sheriff's office.

26.

Under Louisiana law, a subpoena duces tecum is an evidentiary tool for ordinary proceedings to serve as an adjunct to witness testimony.  However, Lucky utilized this subpoena procedure in order to facilitate seizure of the Note on the day upon which a hearing was to be held to first determine whether Mrs. Lollar would even be subject to seizure of the Note by the Sheriff.

27.

From the time of the issuance of the June 8, 2018, writ of fieri facias until September 6, 2018, the Sheriff and his office took no action to execute on the writ beyond passively accepting the original Note which Mrs. Lollar's counsel brought to their office after the July 5, ~~2019~~2018 hearing.

28.

12

On or about September 6, 2018 ~~the Sheriff~~Ms. Flournoy issued a Notice of Seizure to Mrs. Lollar after receiving directives from Lucky's counsel on selling the Note as movable property. Ms. Flournoy's Notice of Seizure was addressed only to Lollar's counsel ~~.~~, stating that the Note may be sold at Sheriff's Sale on the first Wednesday, 14 days after the date of the Notice of Seizure, but advised that "you must contact the Sheriff for the "actual date" (see **Exhibit "H"** for copy of the Notice of Seizure to Mrs. Lollar's counsel).

29.

Upon review of the notice records for the Sheriff's Sale held on file with the Bossier Parish Sheriff's office, it was found that the Bossier Parish Sheriff provided direct notice to only two individuals and only through their respective counsel of record:  Lucky and Mrs. Lollar.

**The Appraisal and Sale of the Note:**

30.

The Notice of Seizure to Mrs. Lollar's counsel also included a Notice to Appoint Appraiser, signed by Kim Flournoy with the Sheriff's Office, stating that Mrs. Lollar may appoint an appraiser to value the Note being sold. The Sheriff's office informed counsel for Mrs. Lollar by phone that appraisals had to be submitted to the Sheriff no later than October 19, 2018, and that the Note was then scheduled to be sold at Sheriff sale on October 24, 2018.

31.

13

Lucky appointed Chad Garland as his appraiser in regards to the sale of the Note. Mr. Garland submitted an appraisal of one hundred seventy-three thousand and no/100ths ($173,000.00), being *ten percent (10%)* of the Note's face value.  No written appraisal was kept on file by the Sheriff for Mr. Garland's appraisal amount, and only the amount of Mr. Garland's appraisal was made available to Mrs. ~~Lollar's counsel.~~Lollar.  (See Garland Appraisement Sheet at **Exhibit "I"**).

32.

Mrs. Lollar appointed John Dean as her appraiser for the Note.  Mr. Dean submitted an appraisal of one million four hundred seventy-eight thousand forty-eight and 68/100ths ($1,478,048.68).  See Dean Appraisement Sheet at **Exhibit "J"**.

33.

The great discrepancy between the Dean and Garland appraisals required ***the Sheriff*** to appoint a third appraiser in accordance with La. R.S. 13:4365(B) which reads in pertinent part as follows:

> (B)     If the appraisers cannot agree, and (1) the difference in value between the two appraisals does not exceed two hundred and fifty thousand dollars, and (2) the value assigned by the lower of the two appraisers is at least ninety percent of the value assigned by the higher of the two appraisers, then the sheriff shall average the two figures and use the average as the appraised value for purposes of determining the opening bid.  In those cases where the two appraisers do not agree and the values are not within the averaging limits, then the sheriff shall appoint a third appraiser, who shall also be sworn, and whose decision shall be final.

34.

The Sheriff purported ~~to appoint~~that he appointed Patrick Lacour as the third independent appraiser for the Sheriff's Sale of the Note.  However, counsel for Mrs. Lollar was informed by

14

employees of the Sheriff's office just days before the sale was to take place that Mr. Lacour was actually chosen by Lucky's counsel. Subsequent documents produced in discovery have confirmed this.

35.

Lucky's counsel, Curtis Shelton, had in fact already communicated with and written a lengthy letter to Mr. Lacour on October 10, 2018, (the "Shelton Letter"), nine days before itanyone would have even been known whether a third appraiser would be necessary. (October 10, 2018 letter, Shelton Letter to Lacour attached as **Exhibit "K"**).

36.

The October 10th letter from Lucky's counselShelton Letter is said to provide Lacour with "background" to help with an appraisal of the Note.  WithinHowever, the letter, Shelton Letter insteadMr. Lucky's counsel outlines his client'sLucky's claims against the Note and Mortgaged Property in Lucky II in detail and referred to the Note transactions as "Mrs. Lollar's scam" and "misdeeds."  Lucky's counsel went on to call Mrs. Lollar "not truthful" and even went as far to suggest Mrs. Lollar's attorneys (undersigned counsel) "aided and abetted" Mrs. Lollar's "scams."

37.

The October 10th letter from Lucky's counselShelton Letter advised that Mr. Lacour, as a CPA, could "…evaluate the merits of the [Lucky II] lawsuit…", adding that "Mr. Lucky is resolute and unwavering, and he will pursue [Lucky II] to a conclusion."  Lucky's counsel then overtly

informed Mr. Lacour that a person who buys the Note at Sheriff's Sale "will do so subject to the claims made against the property in [Lucky II], which are protected by a lis pendens."

38.

Mr. Lucky's counsel did not inform Mr. Lacour that the Lucky I Judgment granted no rights to Lucky in the Mortgaged Property or that the 2017 and 2018 Lis Pendens filed were both nullities.

39.

The Shelton Letter was drafted on behalf of Lucky and/or Lucky Family, L.L.C.

40.

Neither the Sheriff, the Sheriff's office, nor Ms. Flournoy provided Mr. Lacour any information regarding the Note, the Mortgaged Property, or undertook any statutory duties relating to the required third appraisal of the Note prior to the date Mr. Lacour performed his valuation of the Note.

41.

In appraising the Note, Mr. Lacour did not receive or even look at the Note itself. Further, Mr. Lacour did not perform any independent evaluation of the circumstances surrounding the Note, did not perform an independent investigation of the Mortgaged Property, did not independently review the merits of Lucky I or Lucky II, and, instead, relied entirely on the Shelton Letter in valuing the Note.

42.

16

Thus, Mr. Lacour's sole support for his appraisal of the Note was the Shelton Letter, a document drafted on behalf of Mr. Lucky and/or Lucky Family, L.L.C.

43.

Neither the Sheriff, the Sheriff's office, nor Ms. Flournoy notified Mr. Lacour that he was the designated third appraiser and these parties never took action which constitutes an appointment of a third appraiser in this matter.

44.

Mr. Lacour did in fact submit an appraisal amount of One hundred fifty-seven thousand nineHundred Fifty-Seven Thousand Nine and 22/100ths ($157,009.22)), being *nine percent (9%)* of the Note's face value.  Only a one-page appraisal report with a one-page exhibit was provided by the Sheriff's office supporting Mr. Lacour's appraisal amount. (Mr. Lacour's appraisal report and appraisement sheet attached as **Exhibit "L"**).

45.

Ms. Flournoy, acting as "Deputy40.

The Sheriff and his office", falsely represented that Lacour was the Sheriff's appointed appraiserappointment on Lacour'sthe Appraisement Sheet despite the reality that the Sheriff, or his office, allowed Lucky toand Ms. Flournoy did not appoint Lacour and fulfill the Sheriff's roleenabled and allowed Lucky and his counsel to select Lacour.

4146.

The timing, amount and circumstances of the Garland and Lacour appraisals is strongly indicative of a scheme by Lucky and Lucky Family, L.L.C. to subvert the statutory appraisal

17

process ~~and cause both appraisals~~in order to artificially diminish the sale price of the Note to the detriment of the Plaintiffs.  Such scheme was aided and abetted by the Sheriff, Ms. Flournoy and other members of ~~his~~the Sheriff's staff.

4247.

Additionally, the Garland and Lacour appraisals relied upon the improperly filed 2017 and 2018 Lis Pendens and the Lucky II suit, as ostensible support for their erroneous appraised values. Both Lis Pendens were invalid at their outset, but both appraisers were instructed by Lucky to give them effect. Furthermore, each Lis Pendens was predicated on the now-reversed Lucky I Judgment, and the Lucky II suit.  Lucky has since dismissed Lucky II and cancelled both Lis Pendens.

4348.

The selection of and communications with the third appraiser ~~by~~on behalf of Lucky occurred long before it was even known a third appraiser would be required.  Such communications clearly indicate that Lucky sought to artificially deflate the value of the Note and improperly influence the third appraisal with knowingly false ~~or~~and inaccurate statements about Mrs. Lollar and the value of the collateral securing repayment of the Note.

4449.

Mrs. Lollar fax filed a Petition for Preliminary Injunctive Relief on October 22, ~~2019~~2018, requesting a stay of the Sheriff's Sale due to the improper appraisal process and artificially deflated Note value. Counsel for Mrs. Lollar served Mr. Lucky's counsel with this filing on the same day. However, the ~~Judge in Lucky I waited until the~~ day after the Sheriff's Sale ~~to scratch~~the trial judge

18

scratched through the proposed order with the October 22, ~~2019~~2018, Petition by writing "Moot". The sale of the Note took place without regard to Mrs. Lollar's right to be heard on this issue.

~~45~~50.

On October 24, 2018, the Sheriff proceeded to sell the Note for two-thirds (2/3rds) of the third appraisal value for a total of One ~~hundred five thousand~~Hundred Five Thousand and no/00ths ($105,000.00) to Lucky, ~~LLC,~~L.L.C., being only six percent (6%) of the face value of the Note. (See copy of Sheriff's Return Proces Verbal of Sale, attached hereto as **Exhibit "M"**). ~~Lucky's appraisers ignored the fact that the Mortgaged Property serving as collateral for the Note had a value far in excess of Note amount.~~

~~46~~51.

At the time of the Sheriff's Sale, Lucky was shown by the records of the Louisiana Secretary of State's office to be a member and beneficiary of Lucky Family, ~~LLC~~L.L.C. On information and belief Plaintiffs aver that Lucky Family, L.L.C. was controlled by Lucky at all times material and used by him as a subterfuge to ~~create a~~manufacture an ostensible third-party purchaser for the Note.

~~47~~

52.

The Sheriff, ~~and~~ his office and Ms. Flournoy, ignored their duties to properly seize, appraise and sell the Note which was a Constitutionally protected property interest of Mrs. Lollar. Instead, the Sheriff and his office abdicated their duty in favor of allowing ~~W.A.~~Lucky~~, III~~ and Lucky Family, L.L.C. to manipulate the seizure, appraisal and sale of Mrs. Lollar's Note.  Lucky,

a party in the matter, was allowed to serve as his own judge in the valuation of Mrs. Lollar's property.  The foreseeable result of these hidden actions was that Lucky and the Lucky, LLC attempted to maximize theirLucky Family, L.L.C., would realize a gain tofrom the detriment of the Plaintiffs.

4853.

Despite the reversal of Lucky I, and despite his post-Sheriff's SaleLucky's abandonment of claims that the Note is a nullity in Lucky II, and the content of his own appraisals, Lucky and the Lucky, LLC Family, L.L.C., currently maintain that Lucky, LLC isthey are entitled to enforce the Note at its face value of $1,730,000.00, including any rights to.  Despite the fact that Lucky directed the Sheriff to sell the Note as a movable, Lucky and Lucky Family, L.L.C. appear to maintain that they may also enforce the mortgage and seize the Mortgaged Property along with penalties and attorney's fees.  All of which is denied.

4954.

Lucky Family, L.L.C., is not entitled to the status of a good faith third party purchaser and is thus bound by the reversal of the underlying judgment (Lucky I) which was used to seize and sell Mrs. Lollar's Note, Mrs. Lollar has a right to restitution of the Note itself, and alternatively, to the proceeds equal to the full and proper value of the Note had the Sheriff's Sale not been fouled and subverted by the improprieties alleged above.  Under either scenario, Mrs. Lollar has a right to a property interest protected under the Fourteenth Amendment of the Federal Constitution.

**VI.**

**CLAIMS**

**Mrs. Lollar's Claims:**

~~50~~55.

The allegations in the above paragraphs are incorporated herein by this reference.

~~51~~**State Law**:

*Violation of Louisiana Law Governing the Seizure and Sale of Property*

56.

Under La. R.S. 13:4365 it is the duty of the Sheriff to appoint a third independent appraiser under the circumstances presented in that statute.

57.

The Sheriff did not appoint an appraiser in this case, despite the statutory requirement being triggered by the discrepancy between the parties' first two appraisals.

58.

~~However, the Sheriff and his office~~Instead, the Sheriff, his office, and Ms. Flournoy allowed their role to be fulfilled by Mr. Lucky, who was allowed to choose the third appraiser and to coach the appraiser in advance regarding what factors Lucky would like considered for his appraisal of the Note.

~~52~~59.

The ~~Sheriff's~~ actions of the Sheriff, his office, and Ms. Flournoy in allowing a preferred party (Lucky) the benefit of selecting the third appraiser and influencing the third appraisal undermines the purpose of the statute's requirement of a third appraiser to address discrepancies

between each party's appraisals. The Lacour appraisal is biased and tainted and therefore cannot be a just and true basis for a sale of the Note in accordance with La. R.S. 13:4365.

5360.

Further, the appraisals submitted by Lucky's appraiser (Garland) and the third appraiser (Lacour) are otherwise not true and just appraisals, as required by La. R.S. 13:4365, and are otherwise in gross error.  Such severely low appraisals, and extreme departures from the face value of a secured note, cannot be supported by accepted valuation standards. Both appraisals are clearly based upon false and misleading information provided by Lucky which neither appraiser independently checked or verified.

5461.

The unjust and erroneous appraisals utilizedused by the Sheriff and his office in selling the Note for just $105,000.00 have fouled the legal process and imposed an undue burden and harm upon Lollar by depriving her of her property for a minimal and fraudulently obtained value just prior to the judgment in Lucky I being reversed.

62.

The actions of the Sheriff, his Office, and Ms. Flournoy which violated La. R.S. 13:4365 and other Louisiana law governing the seizure and sale of property were the result of decisions made on the operational level.

63.

A Sheriff and/or his office are not vested with discretion as to whether to comply with La. R.S. 13:4365. Further, and to the extent that there is any room for discretion in the application of La. R.S. 13:436555.

22

~~The Note was purchased at the Sheriff's Sale by Lucky's own limited liability company, Lucky Family, L.L.C. Lucky utilized the now reversed Lucky I Judgment to purchase Mrs. Lollar's Note for himself through his family L.L.C. By doing so, Lucky and the Lucky Family, L.L.C. have attempted to fraudulently place themselves in a better position than would be possible due to the Judgment's reversal. In such a situation, state and federal law both afford Lollar a remedy by judgment divesting Lucky Family, L.L.C. of the Note and restoring it to Lollar.~~

~~56.~~

and other Louisiana law governing the seizure and sale of property, the conduct of the Sheriff, his Office, and/or Mrs. Flournoy was not grounded in any permissible social, economic, or political policy.

64.

The conduct of the Sheriff, his Office, and Mrs. ~~Lollar has been deprived of her property without due process of law under the Fourteenth Amendment of the Federal Constitution.  Mrs. Lollar was also deprived of her property under state~~Flournoy in failing to comply with La. R.S. 13:4365 and other Louisiana law ~~by the actions of Defendants in violation of the statutes~~ governing the seizure and sale of ~~the Note. Therefore, Mrs. Lollar asks this Court to declare~~property was either intentional or grossly negligent.

65.

Mrs. Lollar has been damaged by the violations of Louisiana law governing the seizure and sale of property, including La. R.S. 13:4365 and related law, and is therefore entitled to monetary relief from the Sheriff, his Office, and/or Mrs. Flournoy.

66.

23

Further, Mrs. Lollar is entitled to a judgment declaring the Sheriff's Sale of the Note to be an absolute nullity and ~~for~~an order returning the Note ~~to be restored~~ to her possession. ~~Mrs. Lollar has suffered damages due to the improper seizure, appraisal and sale of her promissory note by the Sheriff and his office. See La. R.S. 13:4365; See also 42 U.S.C. §1983.~~

~~57~~67.

In the ~~Alternative~~alternative, should Lucky Family, L.L.C~~.~~.. be permitted to retain the Note, which is denied, ~~then Mrs. Lollar maintains for the same reasons stated above that she has been deprived of her property without due process of law under the Fourteenth Amendment of the Federal Constitution.  Under this scenario, Mrs. Lollar has an interest in~~the Court should order restitution in an amount equal to the proceeds received from the Sheriff's Sale of the Note, as well as the difference between the Sheriff's Sale amount and the full and proper value of the Note. ~~Mrs. Lollar is also entitled to damages due to the improper seizure, appraisal and sale of her promissory note by the Sheriff and his office.~~

*Abuse of Process*:

68.

~~58.~~

~~In addition to the federal and state claims stated above,~~ Mrs. Lollar ~~presents~~also asserts a state law claim against W.A. Lucky, III and Lucky Family, ~~LLC~~L.L.C., for abuse of process under La. C.C. art. 2315. Lucky and his counsel repeatedly and improperly undermined and manipulated legal process to his advantage and to the detriment of Ms. Lollar and Magnolia.

59.

Lucky Family, LLC as well as Lucky,69.

The Note was purchased at the Sheriff's Sale by Lucky Family, L.L.C., Lucky's family limited liability company. By doing so, Lucky and Lucky Family, L.L.C., have attempted to fraudulently place themselves in a better position than would be possible due to the Judgment's reversal.

70.

Lucky Family, L.L.C., and Lucky have been unjustly enriched by their actions and the abuse of process to sell the Note for an absurdly reduced value.  Lucky orchestrated this outcome by filing two false Lis Pendens and the Lucky II proceedings, both of which harmed Magnolia's commerce concerning the Mortgaged Property and falsely created doubt over the validity of the collateral securing repayment of Mrs. Lollar's Note.  Such actions continued simultaneously with Lucky's campaign to seize and sell the same Note he alleged was a nullity in Lucky II in order to satisfy the (now invalid) Lucky I Judgment in his favor.  Such contrary actions reflect Lucky's motive to manipulate the Sheriff's Sale process in order to obtain the Note through a family LLCL.L.C. at a greatly discounted value.

71.

Mrs. Lollar has been damaged by Lucky and Lucky Family, L.L.C.'s abuses of legal process and is therefore entitled to monetary damages.

72.

Further, the Court should divest the Lucky Family, L.L.C. of the Note and restore it to Mrs. Lollar.

*State Law Due Process Violations*:

<u>73.</u>

The Defendants unlawfully deprived Mrs. Lollar in the Note and/or the value thereof without due process of law, in violation of the Louisiana Constitution.

<u>74.</u>

In depriving Mrs. Lollar of her property without due process, Lucky and Lucky Family L.L.C., acted intentionally and in bad faith. In doing so, Lucky and Lucky Family, LLC acted under color of state law.

<u>75.</u>

Because the Defendants unlawfully deprived her of her property without due process, Mrs. Lollar asks this Court to declare the Sheriff's Sale of the Note an absolute nullity and for the Note to be restored to her possession.

<u>76.</u>

Further, Mrs. Lollar has suffered damages due to the unlawful taking of her Note by the Defendants in an amount to be proven at trial.

**Federal Law**:

*Due process – personal capacity*:

77.

By allowing Lucky and/or Lucky Family L.L.C., to de facto select a third appraiser whose valuation would be decisive for the purposes of the Sheriff's Sale, the Sheriff and/or Ms. Flournoy delegated to Lucky and/or Lucky Family L.L.C., a function traditionally exclusively reserved to the State: the administration of a sheriff's sale.

78.

In exercising a function traditionally exclusively reserved to the State, Lucky and/or Lucky Family L.L.C., acted under color of state law.

79.

The Sheriff, his office, Ms. Flournoy, Lucky, and/or Lucky Family, L.L.C., have deprived Mrs. Lollar of her property without due process of law in violation of the Fourteenth Amendment of the Federal Constitution.

80.

In depriving Mrs. Lollar of her property without due process, Lucky and Lucky Family L.L.C., acted intentionally and in bad faith.

81.

The Sheriff, his Office, and Mrs. Flournoy actively facilitated Lucky and Lucky Family, LLC's intentional and bad faith deprivation of Mrs. Lollar's property by knowingly and intentionally delegating the administration of the sale disposing of Mrs. Lollar's seized property to Lucky and Lucky Family, LLC. Relatedly, the Sheriff, his Office, and Mrs. Flournoy failed to

provide Mrs. Lollar any governmental process upon handing the administration of the Sheriff's Sale to Lucky and Lucky Family, LLC.

82.

The intentional and bad-faith conduct of Lucky and Lucky Family, LLC is imputable to the Sheriff, his Office, and Mrs. Flournoy.

83.

Further, the conduct of the Sheriff, the Sheriff's Office, and Mrs. Flournoy was, at best, plainly incompetent.

84.

Mrs. Lollar has suffered damages as result of the unlawful deprivation of her property.

85.

Pursuant to 42 U.S.C. §1983, the Sheriff, Ms. Flournoy, Lucky, and Lucky Family, L.L.C., are individually liable for the damages suffered by Mrs. Lollar

86.

The Court should declare the Sheriff's Sale of the Note to be an absolute nullity and for the Note to be restored to her possession.

*Due process – official capacity:*

87.

The deprivation of Mrs. Lollar's property without due process of law is at least partially the result of the Sheriff's personal failure to act while showing a deliberate indifference to the need to act and/or to create a policy or practice of the Sheriff's Office to avoid a constitutional violation.

88.

The Sheriff's Office is liable for the damages suffered by Mrs. Lollar. Further, the Sheriff

Office's violation of Mrs. Lollar's due process rights should result in the annulment of the sale and

the restoration of the Note to Mrs. Lollar.


**Magnolia's Claims:**

6089.

The allegations in the above paragraphs are incorporated herein by this reference.




6190.

Magnolia, as the owner of the Mortgaged Property and payor under the Note, was deprived

of its Due Process rights based on the Sheriff's failure to provide constitutionally sufficient notice

that the Note would be sold at Sheriff's Sale.

6291.

Lucky utilizedused the now reversed Lucky I Judgment as a means to adversely affect

Magnolia's ability to earn income from the Mortgaged Property to pay the Note in a further effort

to devalue the Note at its eventual seizure and sale as well as trigger a default in payment of the

first installment due under the Note.

6392.

Currently, Magnolia has sustained losses due to Lucky's actions in abuse of process for the improper filing of Lucky II, and the 2017 and 2018 Lis Pendens.  Magnolia's damages include the past suspension of royalty payments attributable to the Mortgaged Property, loss of a lease bonus for an oil and gas lease on an unleased portion of the Mortgaged Property, the loss of surface damage payments for proposed oil and gas development and the loss of marketability of the Mortgaged Property for various uses.  The foregoing are the current damages based upon Lucky's use of the monetary judgment to cloud Magnolia's title and are estimated to be in excess of $500,000.00. The Judgment in Lucky I never included any rights the Mortgaged Property owned by Magnolia, and is now otherwise reversed.

6493.

The Note was seized and sold for the purpose of satisfying the Judgment in Lucky I.  Even assuming Lucky's Lis Pendens arewere lawful, which is denied, or assuming the Judgment was not reversed, which it was, the attempted satisfaction of Lucky's Judgment by Sheriff's Sale of the Note was directly and adversely affected by the clouds on title Lucky deliberately placed on Magnolia's title.  At all times, Magnolia had a direct and cognizable interest in ensuring that the Note would be negotiated for its proper and just value.

6594.

At all times prior to the Sheriff's Sale, Magnolia was the owner of the Mortgaged Property and payor under the Note, and had a reasonably ascertainable interest in any sale of the Note.

6695.

Magnolia was never provided direct notice of the Sheriff's Sale from the Bossier Parish Sheriff.

30

6796.

Magnolia was Constitutionally entitled to notice of the Sheriff's Sale which is reasonably calculated to apprise it of the Sheriff's Sale and to afford Magnolia an opportunity to present any objections. See U.S. Const., Amend. XIV, Sec. 1; LA. Const., Art. 7, Sec. 25; and La. R.S. 13:3852, *Mennonite Board of Missions v. Adams*, 462 U.S. 791 (1983).

6897.

The Sheriff's failure to provide proper Constitutional notice to Magnolia also makes the October 24, 2018, Sheriff's Sale of the Note an absolute nullity.

6998.

In addition to Magnolia's federal claim stated directly above, Magnolia presents a state law claim against W.A. Lucky, III and Lucky Family, LLCL.L.C., for abuse of process under La. C.C. art. 2315, due to the harms suffered by Magnolia on account of the improper 2017 and 2018 Lis Pendens and filings in Lucky II which have adversely affected title to the Mortgaged Property owned by Magnolia.

**VII.**

**REQUEST FOR SUSPENSION OF PAYMENTS DUE UNDER THE NOTE**

7099.

Due to the potential for harm to Magnolia and Lollar should the sale of the Note be rescinded and declared a nullity, Petitioner moves this Honorable Court to enter an Order to (i) suspend payments to Lucky Family, L.L.C., due under the Note and (ii) suspend any effort by the purchaser of the Note at the tainted Sheriff's Sale to exercise the rights of a holder in due course

of the Note, until the resolution of this matter. Upon information and belief, the first annual installment due under the Note on November 1, 2018, had been pre-paid to the original holder of the Note as provided for under the terms of the Note, but a second installment will be due in November 2019.

## VIII.

## JURY DEMAND

71100.

Plaintiffs demand a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

WHEREFORE, PETITIONERS PRAY for judgment in their favor and against all Defendants named herein, decreeing that:

(A)     The payments and any collection action under the Note be suspended during the pendency of this action;

(B)     The October 24, 2018, Sheriff's Sale of the Promissory Note be annulled as unconstitutionaland rescinded and that Lollar be restored her Note from Lucky Family, L.L.C.;

(C)     In the alternative to (B), that the October 24, 2018 Sheriff Sale of the Promissory Note be rescinded and annulled as an abuse of process and that Lollar be restored her Note from Lucky Family, L.L.C.;

(D)     The sale of the Note be rescinded because Lucky Family, L.L.C. is not a good faith third party purchaser and is bound by the reversal of the Lucky I Judgment on which the sale was based;

(E)(C)  The Plaintiffs, Barbara Marie Lollar and Magnolia Island Plantation, L.L.C., recover damages for losses suffered by Defendants' actions in amounts to be proven at trial;

(D)      The actions of Defendants violated Plaintiffs' rights under Louisiana and federal law;

(E)      Lucky Family, L.L.C. was not a good faith third-party purchaser;

(F)      Lucky Family, L.L.C. is bound by the reversal of the Lucky I Judgment on which the Sheriff's Sale was based; and

(F)(G)  For all other legal or equitable relief to which the Plaintiffs may be entitled to.

PETITIONERS PRAY IN THE ALTERNATIVE, that should Lucky Family, L.L.C., be permitted to retain the Note from the Sheriff's Sale:

(G)(H)  The payments and any collection action under the Note be suspended during the pendency of this action;

(H)(I)   There be Judgment in favor of Lollar finding that Lollar is now due restitution for the full and proper value of the Note on account of its sale based upon a now reversed Judgment; and

(I)(J)   The Plaintiffs, Barbara Marie Lollar and Magnolia Island Plantation, L.L.C., recover damages for losses suffered by Defendants' actions in amounts to be proven at trial.

PLAINTIFFS FURTHER PRAY for recovery from Defendants of all costs of this proceeding, including expert witness fees and the cost of depositions, and attorneys' fees; and for all other legal and equitable relief to which the Plaintiffs' may be entitled to.

Respectfully submitted by,

33

Powell

_____/s/_____J._____Davis

Randall S. Davidson, LSBA No. 4715
J. Davis Powell, LSBA No. 33631
Andrew D. Martin, LSBA No. 34947
~~Harold R. Bicknell, III, LSBA No.36801~~
DAVIDSON SUMMERS, APLC
330 Marshall Street, Suite 1114
Shreveport, Louisiana 71101
Ph: (318) 424-4342 | (318) 226-0168
E:      rsdav@davidsonsummers.com
        dpowell@davidsonsummers.com
        dmartin@davidsonsummers.com
        ~~hbicknell@davidsonsummers.com~~
*Counsel for Petitioners*

## N O T I C E TO APPOINT APPRAISER
### SHERIFF'S OFFICE

Suit No: (08) 127573      Serial #: 62

Date:    Thursday, September 6, 2018

W. A. LUCKY, III
VS
BARBARA MARIE CAREY CARR

JULIAN C. WHITTINGTON, SHERIFF
P.O.Box 850
BENTON, LA 71006

**Parish of Bossier**
26th Judicial District Court
State of Louisiana

TO:   LOLLAR, BARBARA MARIE CAREY CARR F/K/A BARBARA MARIE CAREY THROUGH
MR. J. DAVIS POWELL
330 MARSHALL STREET, SUITE 1114
SHREVEPORT, LA  71101

Please be advised that property named in the above captioned suit is being seized.

You are advised to name an appraiser to value the property, and to notify the sheriff of said appointment **WITHIN 10 DAYS FROM DATE OF SERVICE.**

If you should fail to appoint an appraiser or to notify the sheriff within the time designated, the sheriff shall appoint an appraiser for you.

JULIAN C. WHITTINGTON-SHERIFF &
EX-OFFICIO TAX COLLECTOR
BOSSIER PARISH

BY: _Kim Flournay_
KIM FLOURNOY

I HEREBY APPOINT _____AS APPRAISER.

_____

| SHERIFF'S RETURN |
| --- |
| DATE: |
| SERVED: |
| PERSONAL:( ) |
| DOMICILIARY:( ) |
| UNABLE TO LOCATE:( ) |
| MOVED( ) |
| NO SUCH ADDRESS( ) |
| OTHER REASON: |
| DEPUTY: |

BPSO-CIV-202-0402

BPSO-CIV-203-0402

**EXHIBIT B**

RETURN

Return Copy

**BSO 006**

# N O T I C E TO APPOINT APPRAISER
## SHERIFF'S OFFICE

**Suit No:** (08) 127573-   **Serial #:** 52

**Date:**   Thursday, September 6, 2018

W. A. LUCKY, III
VS
BARBARA MARIE CAREY CARR

**JULIAN C. WHITTINGTON, SHERIFF**
P.O.Box 850
BENTON, LA 71006

**Parish of Bossier**
26th Judicial District Court
State of Louisiana

TO:   **LUCKY, III W.A. THROUGH ATTORNEYS OF RECORD CURTIS R. SHELTON**
**333 TEXAS STREET, 1400 REGIONS TOWER**
**SHREVEPORT, LA  71101**

Please be advised that property named in the above captioned suit is being seized.

You are advised to name an appraiser to value the property, and to notify the sheriff of said appointment **WITHIN 10 DAYS FROM DATE OF SERVICE.**

If you should fail to appoint an appraiser or to notify the sheriff within the time designated, the sheriff shall appoint an appraiser for you.

JULIAN C. WHITTINGTON-SHERIFF &
EX-OFFICIO TAX COLLECTOR
BOSSIER PARISH

BY: _Kim Flournoy_

KIM  FLOURNOY

I HEREBY APPOINT _____ AS APPRAISER.

_____

SHERIFF'S RETURN
DATE: 9-7-18 1980
SERVED: Curtis Shelton 10:50"
PERSONAL:( )
DOMICILIARY:( )
UNABLE TO LOCATE:( )
MOVED( )
NO SUCH ADDRESS( )
OTHER REASON:

DEPUTY: _____ 385

# RETURN

**Return Copy**

**BSO 007**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| MAGNOLIA ISLAND PLANTATION, L.L.C. § | CIVIL ACTION NO: 5:18-cv-01526 |
| and BARBARA MARIE CAREY LOLLAR § | |
| § | |
| *Plaintiffs* § | |
| § | |
| VS. § | DISTRICT JUDGE ELIZABETH FOOTE |
| § | |
| LUCKY FAMILY, L.L.C., W.A. LUCKY, III, § | |
| And BOSSIER PARISH SHERIFF JULIAN § | |
| C. WHITTINGTON, in his official capacity § | |
| § | MAGISTRATE JUDGE KAREN HAYES |
| *Defendants* § | |

## RESPONSES TO REQUESTS FOR ADMISSION, INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

NOW INTO COURT, through undersigned counsel, comes JULIAN C. WHITTINGON, Sheriff of Bossier Parish (hereinafter "BSO") who, for the purpose of responding to the Requests for Admissions of Fact, Interrogatories and Requests for Production of Documents propounded by BARBARA MARIE CAREY LOLLAR (hereinafter "Barbara Lollar"), avers as follows:

## GENERAL OBJECTIONS

BSO generally objects to the Requests for Admission to the extent that these discovery requests seek the disclosure of matters protected by the attorney/client privilege, the work product doctrine, or any other applicable privileges or exemptions from discovery. To the extent that the discovery requests can be construed to seek such privileged or exempt information or materials, BSO objects and will limit these responses to non-privileged, non-exempt information that is in BSO's custody, possession and control.


EXHIBIT C

**Response to Interrogatory No. 5:**

Barbara Marie Carey Carr Lollar was served through her attorney, J. Davis Powell, with a Notice of Seizure and a Notice to Appoint Appraiser on September 12, 2018, a copy of which is attached hereto as **Bates Numbers 004-007**.

**Interrogatory No. 6:**

Prior to the Note coming into your possession, please identify any documents provided by you to Lollar notifying Lollar of your intent to seize any of her property.

**Response to Interrogatory No. 6:**

None.

**Interrogatory No. 7:**

Identify your purpose for the delay of time between your receipt of the Note and your issuance of the Notice of Seizure and Sale of the Note.

**Response to Interrogatory No. 7:**

On July 5, 2018, the Sheriff's office informed Curtis Shelton, via fax, that we received the Writ of Fieri Facias, as well as the promissory note, but we required a deposit of $1,500.00 in order to proceed with service work and advertising, a copy of which is attached hereto as **Bates Numbers 008-009**. Check number 24838 in the amount of $1,500.00 was hand delivered to our office on September 5, 2018, along with other instructions from Curtis Shelton, which are attached hereto as **Bates Numbers 010-012**. On September 6, 2018, the Sheriff's office contacted Mr. Shelton via email requesting that he review the language and verbiage of the legal description for the promissory note before proceeding with sending out service work. Mr. Shelton reviewed the information and gave his approval on the same day, a copy of which is attached hereto as **Bates Numbers 013-015**. The Notice of Seizure and Notices of Appoint Appraiser, dated September 6, 2018, were sent out for

**Interrogatory No. 21:**

Identify all persons whom you intend to call as witnesses at the trial or any hearing in this matter, and for each please provide a summary of the facts to which the witness is expected to testify, whether the witness will be called as an expert, and the source of the person's knowledge.

**Response to Interrogatory No. 21:**

At this time, BSO has not determined who it will call as witnesses at trial or any hearing. BSO will provide a witness list in accordance with the Court's scheduling order.

**Interrogatory No. 22:**

If you denied any of the requests for admission of facts which were served with these interrogatories and requests for production of documents, describe every fact upon which your denial was based.

**Response to Interrogatory No. 22:**

See previous responses to interrogatories.

## REQUESTS FOR PRODUCTION

**Request for Production No. 1:**

Produce all documents evidencing your receipt of the Writ of Fieri Facias.

**Response to Request for Production No. 1:**

See attached.

**Request for Production No. 2:**

Produce all documents identified in your response to Interrogatory No. 2 or which reflect the processes, steps and/or actions taken by you from the time you received the Writ of Fieri Facias until your receipt of the Note.

**Response to Request for Production No. 2**

See attached.

**Request for Production No. 3:**

Produce all documents identified in your response to Interrogatory No. 3 or which evidence notice provided by you in relation to the Writ of Fieri Facias.

**Response to Request for Production No. 3:**

See attached.

**Request for Production No. 4:**

Produce all documents identified in your response to Interrogatory No. 7.

**Response to Request for Production No. 4:**

See attached.

**Request for Production No. 5:**

Produce all documents which represent notices from you to any person which you provided in relation to the Notice of Seizure and Sale.

**Response to Request for Production No. 5:**

See attached.

**Request for Production No. 6:**

Produce all documents related to any notice you provided to any person listing the date of the Sale of the Note.

**Response to Request for Production No. 6:**

See attached.

**Request for Production No. 7:**

Produce all documents that relate, refer or pertain to any communications between you and Patrick Lacour, or his representative or legal counsel, which relate, refer or pertain to Lucky I, the Note and/or the Sale.

**Response to Request for Production No. 7:**

None.

**Request for Production No. 8:**

Produce all documents identified in Interrogatory No. 11 pertaining to all appraisals performed by Patrick Lacour for any other Sheriff Sale conducted by you.

**Response to Request for Production No. 8:**

None.

**Request for Production No. 9:**

Produce all documents pertaining to all Sheriff Sales conducted by you in which the item sold was a promissory note and/or a negotiable instrument.

**Response to Request for Production No. 9:**

None.

**Request for Production No. 10:**

Produce all documents that relate, refer or pertain to any communication between you and W. A. Lucky, III, or his representative or legal counsel, which relate, refer or pertain to Lucky I, the Note, the Sale and/or appraisals of the Note.

**Response to Request for Production No. 10:**

See attached.

**Request for Production No. 11:**

Produce all documents that relate, refer or pertain to any communication between you and Lucky Family, L.L.C, or their representatives, members or legal counsel, which relate, refer or pertain to Lucky I, the Note, the Sale and/or appraisals of the Note.

**Response to Request for Production No. 11:**

See attached.

**Request for Production No. 12:**

Produce all documents that relate, refer or pertain to the *Motion for Order Authorizing Reduced Sheriff's Commission* and its *Negotiated Agreement for Reduced Sheriff's Commission* attached thereto.

**Response to Request for Production No. 12:**

None.

**Request for Production No. 13:**

Produce all documents that relate, refer or pertain to the *Ex Parte Motion to Fix Appraiser's Fees*, a full, true and correct copy of which is attached hereto as Exhibit 1.

**Response to Request for Production No. 13:**

None.

**Request for Production No. 14:**

Produce a copy of your records which you are required to keep under La. R.S. 13:4357 for time period during your time in office.

**Response to Request for Production No. 14:**

See attached.

**Request for Production No. 15:**

Produce all documents which support the calculations presented on your *Sheriff's Return*,

a full, true and correct copy of which is attached hereto as Exhibit 3.

**Response to Request for Production No. 15:**

See attached **Bates Numbers 042-057**.

**Request for Production No. 16:**

Produce all documents which you intend to offer as evidence in this lawsuit and/or intend

to utilize in questioning any person in relation to this lawsuit.

**Response to Request for Production No. 16:**

BSO may offer or use any document produced herewith and any document produced by

another party in this proceeding or discovered in this matter as discovery proceeds. This

determination has not been made at this early stage of litigation. BSO will comply with the

Court's scheduling order regarding the exchange of exhibits.

Respectfully submitted by:

LANGLEY, PARKS & MAXWELL, LLC

By:____/s/ Julianna P. Parks_____
    Glenn L. Langley, Bar Roll No. 8019
    Julianna P. Parks, Bar Roll No. 30658

401 Market Street, Suite 1100
Shreveport, Louisiana 71101
(318) 383-6422 Telephone
(318) 383-6405 Telefax

***Attorney for Julian C. Whittington,
Sheriff of Bossier Parish***

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing Responses to Requests for Admission of Fact, Interrogatories and Requests for production of Documents have been served on each counsel of record via email as follows:

Harold Ryan Bicknell, III
Randall Stephen Davidson
Andrew David Martin
James Davis Powell
DAVIDSON SUMMERS
330 Marshall Street, Suite 1114
Shreveport, Louisiana 71101
hbicknell@davidsonsummers.com
rsdav@davidsonsummers.com
dmartin@davidsonsummers.com
dpowell@davidsonsummers.com
***Counsel for Magnolia Island Plantation, LLC, Barbara
Marie Carey Lollar, and Ronald William Lollar***

Curtis R. Shelton
AYRES, SHELTON, WILLIAMS, BENSON & PAINE, LLC
333 Texas Street, 14th Floor
Shreveport, Louisiana 71101
curtisshelton@arklatexlaw.com
***Counsel for W. A. Lucky, III***

David M. Touchstone
TOUCHSTONE LAW FIRM
2708 Village Lane
Bossier City, Louisiana 71112
dmtouchstone@firstcommercetitle.com
***Counsel for Lucky Family, LLC***

on this 19th day of August, 2019 at Shreveport, Louisiana.

_/s/ Julianna P. Parks_
OF COUNSEL

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| MAGNOLIA ISLAND PLANTATION, L.L.C. | § | CIVIL ACTION NO: 5:18-cv-01526 |
| and BARBARA MARIE CAREY LOLLAR | § | |
| | § | |
| *Plaintiffs* | § | |
| | § | |
| VS. | § | DISTRICT JUDGE ELIZABETH FOOTE |
| | § | |
| LUCKY FAMILY, L.L.C., W.A. LUCKY, III, | § | |
| And BOSSIER PARISH SHERIFF JULIAN | § | |
| C. WHITTINGTON, in his official capacity | § | |
| | § | MAGISTRATE JUDGE KAREN HAYES |
| *Defendants* | § | |

**SECOND AMENDED RESPONSES TO REQUESTS FOR ADMISSION,
INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS**

NOW INTO COURT, through undersigned counsel, comes JULIAN C. WHITTINGTON, Sheriff of Bossier Parish (hereinafter "BSO") who, for the purpose of responding to the Requests for Admissions of Fact, Interrogatories and Requests for Production of Documents propounded by BARBARA MARIE CAREY LOLLAR (hereinafter "Barbara Lollar"), avers as follows:

**GENERAL OBJECTIONS**

BSO generally objects to the Requests for Admission to the extent that these discovery requests seek the disclosure of matters protected by the attorney/client privilege, the work product doctrine, or any other applicable privileges or exemptions from discovery. To the extent that the discovery requests can be construed to seek such privileged or exempt information or materials, BSO objects and will limit these responses to non-privileged, non-exempt information that is in BSO's custody, possession and control.

EXHIBIT D

**Response to Request for Admission No. 16:**

BSO is unable to admit or deny this statement as the word "requirement" is vague and undefined.

**Request for Admission No. 17:**

Please admit that the seizing creditor's appraiser, Chad Garland, did not appear in the Sheriff's Office on October 5, 2019 in order to sign his *Appraisement Sheet* related to the Sale of the Note.

**Response to Request for Admission No. 17:**

It is admitted that there is no record that Chad Garland appeared in the Sheriff's Office on October 5, 2019 to sign the referenced *Appraisement Sheet* but that the record reveals that he signed the referenced document before a notary on that date. To the extent this response differs from Request for Admission No. 17 it is denied, as BSO does not possess the information necessary in order to admit or deny the request.

## INTERROGATORIES

**Interrogatory No. 1:**

Identify the Court order directing that the Writ of Fieri Facias be issued.

**Response to Interrogatory No. 1:**

We received no court order or letter directing that a Writ of Fieri Facias was to be issued in this matter. If any, they were issued to the Clerk of Court. We received only the Writ of Fieri Facias, a copy of which is attached hereto as **Bates Number 001**.

**Interrogatory No. 2:**

After your receipt of the Writ of Fieri Facias, describe any and all processes, steps and/or actions taken by you, and the dates of such, in relation to the Writ of Fieri Facias until the date upon which you received the Note.

7

**Response to Interrogatory No. 2:**

The Writ of Fieri Facias was received from the Clerk of Court on June 8, 2018. On June 12, 2018 at 11:05am, the Sheriff's office contacted Curtis Shelton via telephone in regards to the Writ. Mr. Shelton instructed the Sheriff's office to "hold off" on the Writ because he had a subpoena issued to Barbara Carr to produce the $1,730,000.00 promissory note in open court on July 5, 2018. Mr. Shelton also stated that he may want the Sheriff's office to seize the note and that he would be in contact again before the July 5 court date. Notes from that telephone conversation are attached hereto as **Bates Number 002**. To our knowledge, Mr. Shelton did not contact us again before July 5, 2018. On July 5, 2018, the Note was delivered to the Sheriff's civil office in Benton, Louisiana by counsel of one of the parties.

**Interrogatory No. 3:**

Describe how the Note came into your possession, including any action taken by you in an effort to obtain possession of the Note.

**Response to Interrogatory No. 3:**

The Note was hand delivered to the civil office by counsel of one of the parties on July 5, 2018. The date and time stamp on the Note, which is hereto attached as **Bates Number 003,** do not indicate who brought the Note in, and BSO has no other record of this information.

**Interrogatory No. 4:**

Please identify any order by the Court in Lucky I which provides for the Note to be seized by you.

8

**Response to Interrogatory No. 4:**

See the Writ of Fieri Facias attached hereto as Bates 001. Any orders issued in the lawsuit can be found in the Clerk of Court's office and are as equally available to the requester as to BSO.

**Interrogatory No. 5:**

Identify all notices to any person, including the date and service method of each, which you provided in relation to the Writ of Fieri Facias.

**Response to Interrogatory No. 5:**

Barbara Marie Carey Carr Lollar was served through her attorney, J. Davis Powell, with a Notice of Seizure and a Notice to Appoint Appraiser on September 12, 2018, as evidenced by the documents attached hereto as **Bates Numbers 004-007**.

**Interrogatory No. 6:**

Prior to the Note coming into your possession, please identify any documents provided by you to Lollar notifying Lollar of your intent to seize any of her property.

**Response to Interrogatory No. 6:**

None.

**Interrogatory No. 7:**

Identify your purpose for the delay of time between your receipt of the Note and your issuance of the Notice of Seizure and Sale of the Note.

**Response to Interrogatory No. 7:**

On July 5, 2018, the Sheriff's office informed Curtis Shelton, via fax, that it received the Writ of Fieri Facias, as well as the promissory note, but that BSO required a deposit of $1,500.00 in order to proceed with service work and advertising. A copy of the letter is attached hereto as **Bates Numbers 008-009**. Check number 24838 in the amount of

$1,500.00 was not hand delivered to BSO until September 5, 2018, along with other instructions from Curtis Shelton, which are attached hereto as **Bates Numbers 010-012**. On September 6, 2018, the Sheriff's office contacted Mr. Shelton via email requesting that he review the language and verbiage of the legal description for the promissory note before proceeding with sending out service work. See **Bates Numbers 013-014**. Mr. Shelton gave his approval on the same day, a copy of which is attached hereto as **Bates Numbers 015**. The Notice of Seizure and Notices of Appoint Appraiser, dated September 6, 2018, were sent out for service to Caddo Parish. Once the service had been completed and the service returns were received by our office, BSO proceeded with the ad approval process. See service information that has already been attached in Response to Interrogatory No. 5.

**Interrogatory No. 8:**

Describe any and all processes, steps and/or actions taken in order to select the date of the Sale of the Note.

**Response to Interrogatory No. 8:**

Once service returns were received, a file audit was done to ensure that all necessary documentation was in place, a copy of which is attached hereto as **Bates Numbers 023-024**. An ad approval was then sent to Curtis Shelton on September 14, 2018 in order to ensure the property would be properly advertised, as well as to note any necessary changes that were needed to be made, a copy of which is attached hereto as **Bates Numbers 016-018**. The ad approval was signed and returned on September 14, 2018, a copy of which is attached hereto as **Bates Numbers 019-021**. The sale date of October 24, 2018 was set according to pre-prepared sales calendar, which also indicates the date(s) that the property will be advertised in the Bossier Press Tribune. Mr. Shelton was

given a sales notice on September 14, 2018 via email, which listed the sale date of October 24, 2018 and the advertisement date of September 26, 2018, a copy of which is attached hereto as **Bates Number 022**.

**<u>Interrogatory No. 9:</u>**

Describe all processes, steps and/or actions taken by you to appoint a third appraiser in relation to the Sale of the Note under La. R.S. 13:4365, including how you selected the third appraiser.

**<u>Amended Response to Interrogatory No. 9:</u>**

Kim Flournoy first contacted an appraiser BSO regularly used, possibly Mark or Chris Grisham, and was advised that the appraisers used for property appraisals were not typically qualified to appraise a note. BSO then contacted counsel who investigated the matter to determine what type of appraiser was needed. Specifically counsel contacted the president of First National Bank in Benton to ask what type of appraiser would be qualified to appraise the note. BSO was unable to find an appraiser qualified and willing to appraise the note. On September 17, 2018, BSO contacted Curtis Shelton via email inquiring as to whether or not he could recommend any qualified appraisers who could act as a third party appraiser in the event that a third party appraiser was needed, a copy of which is attached hereto as **Bates Number 025**. The Sheriff's office was contacted by Curtis Shelton via email on October 12, 2018 stating that he had located an appraiser by the name of Patrick Lacour See **Bates Numbers 026-027**. Along with the email, Mr. Shelton attached a list of Mr. Lacour's credentials and certifications. Mr. Shelton also stated that he would provide Mr. Lacour with the information pertaining to the note and that he did not know of any other appraisers at that time.

that "informed" you that the seizing creditor's appraiser was charging $225.00 per hour regarding any services he provided in relation to the Sale of the Note, as alleged in Paragraph 10.

**Response to Interrogatory No. 16:**

The *Motion for Order Authorizing Reduced Sheriff's Commission* and the *Negotiated Agreement for Reduced Sheriff's Commission* was prepared by Curtis Shelton. After review, the motion was signed by Sheriff Whittington. The seizing creditor's appraiser was Chad Garland. We do not know what he charged for his hourly rate because a bill was never received by the Sheriff's office. The question in regards to the $225.00 per hour fee seems to pertain to the third appraiser that was appointed by the Sheriff, Patrick Lacour. Patrick Lacour was not the creditor's appraiser. There are no documents to support $225.00 per hour, nor is there a written agreement in regard to fees, other than what was approved by the court. A copy of Patrick Lacour's invoice is attached hereto as **Bates Number 030**.

**Interrogatory No. 17:**

Describe any and all process, steps and/or actions taken by you in order to reach the *Negotiated Agreement* with W. A. Lucky, III referenced in the preceding interrogatory.

**Amended Response to Interrogatory No. 17:**

Normal protocol in regard to reducing Sheriff's commission was followed.

- A request to reduce was made by the plaintiff's attorney.

- The request was forwarded to Sheriff Whittington with a motion for the Sheriff to review and sign.

- Once the motion was reviewed and signed by both the negotiating party and the Sheriff, the matter was submitted to the Court for approval.

15

**Interrogatory No. 18:**

Describe any and all processes, steps and/or actions taken by you in order to provide for the payment of costs to Patrick Lacour regarding any services he provided in relation to the Sale of the Note, including the date and method any such payment was made.

**Response to Interrogatory No. 18:**

Payment for Patrick Lacour was added into the suit costs as a service and he was paid from the proceeds of the sale in the amount of $1,682.50 by check number 22948, dated November 2, 2018. See attached hereto as **Bates Numbers 031-033**.

**Interrogatory No. 19:**

Please describe how you calculated the following amounts listed in your Sheriff's Return, a full, true and correct copy of which is attached hereto as Exhibit 3, including the identification of any documents, items or services or other costs which support such amounts:

- "Recording Fees" for $25,358.62;
- "Other" for $72,234.88.

**Response to Interrogatory No. 19:**

"Recording Fees" of $25,368.52 were taken from an invoice that was issued from the Clerk of Court's office, which is attached hereto as **Bates Number 034**. "Other" in the amount of $72,234.88 was the leftover dollar amount after all expenses of the suit were paid. These excess funds were paid to the plaintiff. Check number 22931 dated October 31, 2018 was made payable to "Ayers, Shelton, Williams, Benton & Payne, LLC and W. M. Lucky, III", and is attached hereto as **Bates Numbers 035-036**.

16

**Interrogatory No. 20:**

Please identify the payor and recipient of the following amounts, including the date and method of payment, as such amounts are listed in your Sheriff's Return, a full, true and correct copy of which is attached hereto as Exhibit 3:

- "AMOUNT PAID CK#" for $106,500.00
- "LESS DEPOSIT CK#" for $1,500.00

**Response to Interrogatory No. 20:**

The entry for $106,500.00 on the Proces Verbal stands for the following:

1) The bid of $105,000.00 received from Lucky Family, L.L.C. attached in Response to Interrogatory No. 14.

2) $1,500.00 initial deposit received from Curtis Shelton attached in Response to Interrogatory No. 7.

The $1,500.00 entry: Refund made payable to Curtis Shelton because the property was sold to a third party buyer and the filing attorney was refunded any advanced deposits that were paid, a copy of which is attached hereto as **Bates Numbers 037-038**. A copy of the Proces Verbal is also attached as **Bates Numbers 039-041**.

**Interrogatory No. 21:**

Identify all persons whom you intend to call as witnesses at the trial or any hearing in this matter, and for each please provide a summary of the facts to which the witness is expected to testify, whether the witness will be called as an expert, and the source of the person's knowledge.

**Response to Interrogatory No. 21:**

At this time, BSO has not determined who it will call as witnesses at trial or any hearing. BSO will provide a witness list in accordance with the Court's scheduling order.

**Interrogatory No. 22:**

If you denied any of the requests for admission of facts which were served with these interrogatories and requests for production of documents, describe every fact upon which your denial was based.

**Response to Interrogatory No. 22:**

See responses to Requests for Admissions.

## REQUESTS FOR PRODUCTION

**Request for Production No. 1:**

Produce all documents evidencing your receipt of the Writ of Fieri Facias.

**Response to Request for Production No. 1:**

See attached **Bates Number 001.**

**Request for Production No. 2:**

Produce all documents identified in your response to Interrogatory No. 2 or which reflect the processes, steps and/or actions taken by you from the time you received the Writ of Fieri Facias until your receipt of the Note.

**Response to Request for Production No. 2**

See attached **Bates Number 002.**

**Request for Production No. 3:**

Produce all documents identified in your response to Interrogatory No. 3 or which evidence notice provided by you in relation to the Writ of Fieri Facias.

**Response to Request for Production No. 3:**

See attached **Bates Number 003.**

**Request for Production No. 4:**

Produce all documents identified in your response to Interrogatory No. 7.

18

**Response to Request for Production No. 4:**

See attached **Bates Numbers 008-015.**

**Request for Production No. 5:**

Produce all documents which represent notices from you to any person which you provided in relation to the Notice of Seizure and Sale.

**Response to Request for Production No. 5:**

See response to Request for Production No. 4.

**Request for Production No. 6:**

Produce all documents related to any notice you provided to any person listing the date of the Sale of the Note.

**Response to Request for Production No. 6:**

See attached **Bates Numbers 016-027.**

**Request for Production No. 7:**

Produce all documents that relate, refer or pertain to any communications between you and Patrick Lacour, or his representative or legal counsel, which relate, refer or pertain to Lucky I, the Note and/or the Sale.

**Response to Request for Production No. 7:**

None.

**Request for Production No. 8:**

Produce all documents identified in Interrogatory No. 11 pertaining to all appraisals performed by Patrick Lacour for any other Sheriff Sale conducted by you.

**Response to Request for Production No. 8:**

None.

**Request for Production No. 9:**

Produce all documents pertaining to all Sheriff Sales conducted by you in which the item sold was a promissory note and/or a negotiable instrument.

**Response to Request for Production No. 9:**

None.

**Request for Production No. 10:**

Produce all documents that relate, refer or pertain to any communication between you and W. A. Lucky, III, or his representative or legal counsel, which relate, refer or pertain to Lucky I, the Note, the Sale and/or appraisals of the Note.

**Response to Request for Production No. 10:**

See **Bates Numbers 002, 007-011, 013-022, 025-027, 036 and 038.**

**Request for Production No. 11:**

Produce all documents that relate, refer or pertain to any communication between you and Lucky Family, L.L.C, or their representatives, members or legal counsel, which relate, refer or pertain to Lucky I, the Note, the Sale and/or appraisals of the Note.

**Response to Request for Production No. 11:**

See attached **Bates Numbers 028-029.**

**Request for Production No. 12:**

Produce all documents that relate, refer or pertain to the *Motion for Order Authorizing Reduced Sheriff's Commission* and its *Negotiated Agreement for Reduced Sheriff's Commission* attached thereto.

**Response to Request for Production No. 12:**

None.

20

**Request for Production No. 13:**

Produce all documents that relate, refer or pertain to the *Ex Parte Motion to Fix Appraiser's Fees*, a full, true and correct copy of which is attached hereto as Exhibit 1.

**Response to Request for Production No. 13:**

None.

**Request for Production No. 14:**

Produce a copy of your records which you are required to keep under La. R.S. 13:4357 for time period during your time in office.

**Response to Request for Production No. 14:**

See attached **Bates 001-057**.

**Request for Production No. 15:**

Produce all documents which support the calculations presented on your *Sheriff's Return*, a full, true and correct copy of which is attached hereto as Exhibit 3.

**Response to Request for Production No. 15:**

See attached **Bates Numbers 042-057**.

**Request for Production No. 16:**

Produce all documents which you intend to offer as evidence in this lawsuit and/or intend to utilize in questioning any person in relation to this lawsuit.

**Response to Request for Production No. 16:**

BSO may offer or use any document produced herewith and any document produced by another party in this proceeding or discovered in this matter as discovery proceeds. This determination has not been made at this early stage of litigation. BSO will comply with the Court's scheduling order regarding the exchange of exhibits.

Respectfully submitted by:

LANGLEY, PARKS & MAXWELL, LLC

By:＿＿/s/ Julianna P. Parks＿＿＿＿＿＿＿＿＿＿
     Glenn L. Langley, Bar Roll No. 8019
     Julianna P. Parks, Bar Roll No. 30658

401 Market Street, Suite 1100
Shreveport, Louisiana 71101
(318) 383-6422 Telephone
(318) 383-6405 Telefax

**Attorney for Julian C. Whittington,
Sheriff of Bossier Parish**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Second Amended Responses to Requests for Admission of Fact, Interrogatories and Requests for production of Documents have been served on each counsel of record via email as follows:

Harold Ryan Bicknell, III
Randall Stephen Davidson
Andrew David Martin
James Davis Powell
DAVIDSON SUMMERS
330 Marshall Street, Suite 1114
Shreveport, Louisiana 71101
hbicknell@davidsonsummers.com
rsdav@davidsonsummers.com
dmartin@davidsonsummers.com
dpowell@davidsonsummers.com
*Counsel for Magnolia Island Plantation, LLC, Barbara Marie Carey Lollar, and Ronald William Lollar*

Curtis R. Shelton
AYRES, SHELTON, WILLIAMS, BENSON & PAINE, LLC
333 Texas Street, 14th Floor
Shreveport, Louisiana 71101
curtisshelton@arklatexlaw.com
*Counsel for W. A. Lucky, III*

David M. Touchstone
TOUCHSTONE LAW FIRM
2708 Village Lane
Bossier City, Louisiana 71112
dmtouchstone@firstcommercetitle.com
*Counsel for Lucky Family, LLC*

on this 18th day of September, 2019 at Shreveport, Louisiana.

                                       /s/ Julianna P. Parks
                                 OF COUNSEL

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

MAGNOLIA ISLAND PLANTATION,
L.L.C.; AND BARBARA MARIE CAREY
LOLLAR

CIVIL ACTION NO. 5:18-CV-1526

DISTRICT JUDGE: ELIZABETH E. FOOTE

V.

MAGISTRATE JUDGE: KAREN L. HAYES

LUCKY FAMILY, L.L.C., ET AL.

JURY TRIAL DEMANDED

**W.A. LUCKY, III'S ANSWERS TO PLAINTIFFS' INTERROGATORIES
AND RESPONSES TO PLAINTIFF'S  REQUESTS FOR PRODUCTION**

NOW COMES, through undersigned counsel, W.A. Lucky, III who responds to the requests for admission propounded by Barbara Marie Carey Lollar (Mrs. Lollar"), as follows:

**Interrogatory No. 1:**

Identify and describe all communications between you, including your representatives or legal counsel, or any one of them, and Lucky Family, including its manager, other members, representatives, or legal counsel, or any one of them, which occurred after November 3, 2017, and which relate, refer, or pertain to Lucky I, Lucky II, the Note, the Sheriff Sale, and/or the Property, including the identification of when, and with whom such communications occurred, as well as identifying any documents reflecting such communications.

**Answer to Interrogatory No. 1:**

W.A. Lucky, III objects to this interrogatory as follows:

Communications between W.A. Lucky, III, representatives or legal counsel, on the one hand, and Lucky Family, L.L.C., including its manager, other members, representatives, or legal counsel, on the other hand which occurred after November 3, 2017, and which

(2)  Between the lawyer and a representative of the lawyer.

(3)  By the client or his lawyer, or a representative of either, to a lawyer, or representative of a lawyer, w*ho represents another party concerning a matter of common interest.*

(4)  Between representatives of the client or between the client and a representative of the client.

(5)  Among lawyers and their representatives representing the same client.

(6)  Between representatives of the client's lawyer.

Communications that are not subject to the foregoing privileges are contained in the documents that are produced herewith and which are designated in answer to this interrogatory.

**Interrogatory No. 2:**

Identify and describe any communications between you, including your representatives or legal counsel, or any one of them, and the Sheriff, including his representatives, staff or legal counsel, or any one of them, which occurred after November 3, 2017, and which relate, refer, or pertain to Lucky I, Lucky II, the Note, the Sheriff Sale, and/or the Property, including the identification of when, and with whom such communications occurred, as well as identifying any documents reflecting such communications.

**Answer to Interrogatory No. 2:**

October 22, 2018, Kimberly Flournoy sent Curtis R. Shelton an e-mail reading: "Thank you so much for your help in everything. I apologize for being so needy, this suit has been a learning experience for me. Have a great day!"

October 22, 2018, Kimberly Flournoy sent Curtis R. Shelton an e-mail reading: "Mr. Shelton, would you please ask Mr. Lacour to get me an invoice ASAP so I can build it into my suit cost? Thank and have a great day!"

October 22, 2018, Curtis R. Shelton sent Kimberly Flournoy an e-mail reading: "Kim, He said he will send an invoice tomorrow."

October 16, 2018, Kimberly Flournoy sent Curtis R. Shelton an e-mail reading: "Mr. Shelton, the Sheriff has signed your paperwork for the above referenced suit. Please advise when you would like to come by and pick up. Thanks, Kim."

October 16, 2018, Kimberly Flournoy sent Curtis R. Shelton an e-mail reading: "Mr. Shelton, we will have to have either s UCC or a mortgage certificate run for the above referenced suit, please advise which name(s) you would like this run in. Thank you!"

October 16, 2018, Curtis R. Shelton sent Kimberly Flournoy an e-mail reading: "I would run a UCC certificate in the names of Barbara Carr and Barbara Lollar."

Curtis R. Shelton had a telephone conference from a person in the Sheriff's office (possibly Ms. Kimberly D. Flournoy) in which the Sheriff's office indicated that it might need for a third appraiser candidate to be identified.

October 12, 2018, Curtis R. Shelton sent Kimberly Flournoy an e-mail reading:

> Dear Kim,
>
> I am attaching three things to this message. The first two are a letter that I am mailing today with a Motion for Order Authorizing Reduced Sheriff's Commission. If the Sheriff will negotiate the commission that will be appreciated. I have prepared this in the same way that I usually prepare these for sheriff's sales. If something different needs to be done, please just let me know.
>
> The third things [sic] is an "Ex Parte Motion to Fix Appraisers' Fees." As we have discussed, it will likely not be possible to find someone to do the appraisal of the promissory note for the amount the Sheriff usually pays or even the $50 that the statute authorizes without court approval. So, I have

5

prepared this motion so that approval could be obtained for up to $225 per hour. That is the amount the seizing creditor's appraiser charged, and I have no real doubt that Mr. Dean, appointed by the debtor, will charge that amount or more. (Mr. Dean is a senior partner in Heard, McElroy and Vestal.)

If the Ex Parte Motion to Fix Appraisers' Fees looks acceptable, I will sign it, mail a copy to the lawyers for the debtor, and have the original delivered to you. That will enable you to process it through and get the Court to sign the order before we run up toward the last minute.

Thank you very much for your time and diligence.

Letter dated October 12, 2018, from Curtis R. Shelton to Ms. Kimberly D. Flournoy

Letter dated October 12, 2018, from Curtis R. Shelton to Ms. Kimberly D. Flournoy with Oath of Appraiser and Appraisal Sheet.

E-mail dated October 12, 2018, from Curtis R. Shelton to Ms. Kimberly D. Flournoy

October 10, 2018, Curtis R. Shelton had a telephone conference from a person in the Sheriff's office (possibly Ms. Kimberly D. Flournoy) in which the Sheriff's office indicated that it might need for a third appraiser candidate to be identified.

Letter dated October 3, 2018, from Ms. Kimberly D. Flournoy to Curtis R. Shelton

Letter dated September 21, 2018, from Curtis R. Shelton to Ms. Kimberly D. Flournoy with Notice to Appoint Appraiser.

Letter dated September 21, 2018, from Curtis R. Shelton to Ms. Kimberly D. Flournoy with  approval of advertisement.

E-mail dated September 17, 2018, from Ms. Kimberly D. Flournoy to Curtis R. Shelton.

E-mails dated September 14, 2018, from Ms. Kimberly D. Flournoy to Curtis R. Shelton.

Facsimile dated September 14, 2018, from Ms. Kimberly D. Flournoy to Curtis R. Shelton.

E-mail dated September 6, 2018, from Curtis R. Shelton to Ms. Kimberly D. Flournoy.

E-mail dated September 6, 2018, from Ms. Kimberly D. Flournoy to Curtis R. Shelton.

Letter dated September 5, 2018, from Curtis R. Shelton to Ms. Kimberly D. Flournoy with costs deposit check.

Letter dated July 5, 2018, from Ms. Kimberly D. Flournoy to Curtis R. Shelton.

Telephone conference on June 12, 2018, with sheriff's office re seizure of note.

Information concerning when and with whom such communications occurred, as well as identifying any documents reflecting such communications, is contained in the documents produced herein by the Sheriff as BSO 001 through BSO 057. Any e-mails not contained in BSO 001 through BSO 057 will be produced.

**Interrogatory No. 3:**

Identify and describe any communications between you, including your representatives or legal counsel, or any one of them, and Chad Garland, including his representatives or staff, which relate, refer, or pertain to Lucky I, Lucky II, the Note, the Sheriff Sale, and/or the Property, including the identification of when, and with whom such communications occurred, as well as identifying any documents reflecting such communications.

**Answer to Interrogatory No. 3:**

Such communications are contained in the documents produced by Chad M. Garland and labeled as Garland 001 through Garland 216. Those documents are designated in answer to this interrogatory.

WHEREFORE, W.A. LUCKY, III PRAYS that the foregoing be deemed sufficient.

AYRES, SHELTON, WILLIAMS,
BENSON & PAINE, LLC


By: /s/ Curtis R. Shelton
    Curtis R. Shelton
La. Bar Roll No. 17137
333 Texas Street, Suite 1400 (71101)
P. O. Box 1764
Shreveport, LA 71166
Telephone: (318) 227-3306
Facsimile: (318) 227-3806
Email: curtisshelton@arklatexlaw.com

ATTORNEYS FOR W.A. LUCKY, III

## VERIFICATION

I, W.A. LUCKY, III, hereby declare under penalty of perjury that I have read the above and foregoing answers to interrogatories, and that they are true and correct to the best of my knowledge, information, and belief.

Executed on September _16th_, 2019.


<u>/s/ W.A. LUCKY, III</u>
W.A. LUCKY, III

34

## CERTIFICATE

I HEREBY CERTIFY that a copy of the above and foregoing has been served upon each of the following by e-mail:

Mr. J. Davis Powell at dpowell@davidsonsummers.com

Mr. Randy Davidson at rsdav@davidsonsummers.com

Mr. Drew Martin at dmartin@davidsonsummers.com

Mr. David M. Touchstone at dmtouchstone@firstcommercetitle.com

Mr. Dylan Touchstone at dtouchstone@firstcommercetitle.com

Mr. Glenn L. Langley at glangley@lphmlaw.com

and that a copy thereof has been placed in the United States mail addressed as follows with adequate first-class postage affixed thereon:

Mr. James Davis Powell
Davidson Summers
330 Marshall St., Suite 1114
Shreveport LA 71101.

Shreveport, Louisiana, this 16th day of September, 2019.


Curtis R. Shelton
OF COUNSEL