UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| MAGNOLIA ISLAND PLANTATION, L.L.C.; and BARBARA MARIE CAREY LOLLAR | CIVIL ACTION NO. 5:18-cv-1526 |
| | CHIEF JUDGE MAURICE HICKS, JR. |
| V. | |
| | MAGISTRATE JUDGE KAYLA D. McCLUSKY |
| LUCKY FAMILY, L.L.C.; W.A. LUCKY, III; BOSSIER PARISH SHERIFF JULIAN C. WHITTINGTON, in his official capacity. | JURY TRIAL DEMANDED |

**SECONDED AMENDED AND RESTATED COMPLAINT
TO ANNUL SHERIFF'S SALE AND FOR OTHER RELIEF**

NOW INTO COURT, through undersigned counsel, come Petitioners, MAGNOLIA ISLAND PLANTATION, L.L.C., represented by its Manager, Ronald William Lollar, and BARBARA MARIE CAREY LOLLAR, who file this Complaint and in support thereof respectfully represents as follows:

**I.**

**ACTION**

1.

This is an action to annual a Sheriff's Sale conducted by the Bossier Parish Sheriff on October 24, 2018, on the grounds that Barbara Marie Lollar has been deprived of her Constitutional due process rights in her property under the Fourteenth Amendment of the Federal Constitution due to the improper seizure, appraisal and sale of her promissory note by the Sheriff in his official capacity, his office, Ms. Kimberly Flournoy, and those acting on behalf of the Sheriff.  Mrs. Lollar

has suffered damages due to the improper seizure, appraisal, and sale of her promissory note by the Sheriff, members of his office, Ms. Kimberly Flournoy and those acting on behalf of the Sheriff.  42 U.S.C. §1983.  Mrs. Lollar is also entitled under Louisiana state law to restitution of her promissory note, or alternatively, the true value thereof, due to violations of Louisiana law regarding the seizure and sale of property, violations of her due process rights under the State Constitution, as well as the reversal of the underlying judgment used to seize and sell her property. Mrs. Lollar and Magnolia Island Plantation, L.L.C., have also suffered damages under Louisiana state law based on actions taken by W.A. Lucky, III and Lucky Family, L.L.C. which constitute abuses of process under La. Civil Code article 2315.

## II.

## PARTIES

2.

Named as Plaintiffs herein are:

    a.    MAGNOLIA ISLAND PLANTATION, L.L.C., ("Magnolia") a Louisiana limited liability company, domiciled in the State of Louisiana, which is herein represented by its Manager, Ronald William Lollar; and

    b.    BARBARA MARIE CAREY LOLLAR ("Mrs. Lollar") is an individual resident of Fayette County, Tennessee.

3.

Named as Defendants herein are:

    a.    LUCKY FAMILY, L.L.C., a Louisiana limited liability company;

2

b.      W.A. LUCKY, III, ("Lucky"), a resident of Bossier Parish, Louisiana;

c.      JULIAN C. WHITTINGTON, in his official capacity as the Bossier Parish Sheriff a political subdivision of Bossier Parish under La. Rev. Stat.§ 13:5102(B), (hereinafter the "Sheriff"); and

d.      Kimberly Flournoy, ("Ms. Flournoy") in her personal capacity, as an employee of the Bossier Parish Sheriff's office, a political subdivision of Bossier Parish under La. Rev. Stat.§ 13:5102(B).

(hereinafter sometimes collectively "Defendants").

## III.

## JURISDICTION AND VENUE

4.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 as this action presents a federal question, as well as supplemental jurisdiction under 28 U.S.C. § 1336 as the claims presented which do not present a federal question are directly related to federal question claims in the action and form the same case or controversy.

5.

Venue is proper in this district and division pursuant to 28 U.S.C. § 1391 (b).

## IV.

## PRELIMINARY STATEMENT

6.

This suit arises from the improper seizure, appraisal and Sheriff's Sale of a promissory note (the "Note" as defined further below in Section V) owned by Mrs. Lollar.  The sale of Mrs. Lollar's

Note was conducted by the Sheriff's office on October 24, 2018, at the Bossier Parish Courthouse. The seizure and sale of Mrs. Lollar's Note was purported to be based upon a state court monetary judgment obtained by Lucky in a lawsuit filed against Mrs. Lollar which had no legal basis and also complained of Lollar's failure to undertake an unlawful action.  Lucky's monetary judgment was completely reversed by the Second Circuit Court of Appeal soon after the Note sale.  A writ application to the Louisiana Supreme Court by Lucky was subsequently denied.

Additionally, the sale of the Note was tainted with impropriety by the Sheriff, his office, Ms. Flournoy, as well as the other Defendants named herein.  Prior to requesting seizure of just Mrs. Lollar's Note, Mr. Lucky filed multiple lis pendens against the immovable property owned by Magnolia and which secured the Note. Mr. Lucky then also filed suit against Mrs. Lollar and Magnolia asserting that the Note itself, and sale of the property creating the Note, were all nullities. Mr. Lucky maintained these improper filings through the time the Note was sold.

Upon seizure of Note, Lucky was also able to manipulate the appraisal process. The Sheriff, his office and Ms. Flournoy allowed Mr. Lucky, through his counsel, to select and improperly influence the purported third appraiser whose appraisal of the property would be final under state law.  Mr. Lucky, through his counsel, controlled every aspect of the directions and information the appraiser received to perform a valuation.  Mr. Lucky, through counsel, also corresponded with the purported third appraiser to provide a biased background regarding Mrs. Lollar and her Note and to ensure that the clouds on title he placed on the note's collateral, and his lawsuit calling the note and the sale of property nullities, were utilized to de-value the final appraisal.  The result was the sale of Mrs. Lollar's promissory note for just *6% of its face value* to the only bidder at the sale: Lucky's own family company, Lucky Family, L.L.C.

4

Plaintiffs present this complaint to have the Sheriff's Sale annulled based on violations of Mrs. Lollar's due process rights under the Fourteenth Amendment of the Federal Constitution, to have the promissory note restored to Mrs. Lollar and for other applicable damages for such violations under 42 U.S.C. §1983.

Finally, Mrs. Lollar seeks rescission of the Sheriff's Sale of her Note and to have the Note restored to her based on the Sheriff's violations of state law regarding the seizure and sale of property, due process violations under state law and the fact that the purported buyer, Lucky Family, L.L.C., is not a good faith third party purchaser of the note and thus is bound by the reversal of the judgment on which the seizure and sale of the Note were based.

Alternatively, in the event it is found that the Note would not be returned to Mrs. Lollar for any reason, then Mrs. Lollar asserts the same Fourteenth Amendment violations for deprivation of property as she is entitled to restitution of proceeds equal to the full and proper value of the promissory note and damages now that the underlying trial court judgment against her has been reversed.  Mrs. Lollar and Magnolia also seek damages under state tort law for the abuse of process actions by W. A. Lucky, III and Lucky Family, L.L.C and state law due process violations. Plaintiffs respectfully represent the following:

**V.**

**FACTUAL BACKGROUND**

**The Promissory Note:**

7.

On November 2, 2017, a promissory note was made by Ronald William Lollar in favor of Mrs. Lollar for the amount of $1,730,000.00, at the rate of 4% per annum, to be paid in 4

consecutive annual installments of $100,046.00 and a fifth and final balloon payment equal to the remaining principal and interest due thereunder (herein the "Note").  A copy of the Note is attached hereto as **Exhibit "A".**

8.

The Note was secured by a mortgage on certain immovable property described and conveyed from Mrs. Lollar to Ronald William Lollar in the *Credit Sale Deed with Vendor's Lien and Special Mortgage*, dated November 2, 2017, and filed for record at Instrument No. 1179265 of the conveyance records and mortgage records, all within Bossier Parish, Louisiana.  A copy of the *Credit Sale Deed with Vendor's Lien and Special Mortgage* is attached hereto as **Exhibit "B"** (the immovable property described therein is referenced as the "Mortgaged Property").

9.

The value of the Mortgaged Property exceeded the amount it secured in the Note at the time of the Sheriff's Sale discussed below.

10.

By way of an *Exchange Deed with Assumption of Mortgage*, dated November 2, 2017, and filed for record at Instrument No. 1179266 of the conveyance records and mortgage records of Bossier Parish, Ronald William Lollar conveyed the Mortgaged Property to Magnolia, wherein Magnolia assumed the obligations under the Note and the Mortgage. A copy of the *Exchange Deed with Assumption of Mortgage* is attached hereto as **Exhibit "C".**

**Lucky I:**

11.

W.A. Lucky (hereinafter "Lucky"), a real estate broker, filed suit against Mrs. Lollar in the 26th Judicial District Court on September 10, 2008, for monetary damages based on an alleged oral agreement to transfer immovable property and a breach of fiduciary duty ("Lucky I"). A three-day bench trial was held 9 years later beginning on August 28, 2017. On January 5, 2018, a monetary judgment was entered against Mrs. Lollar in the amount of $1,799,450.52. (the "Lucky I Judgment" a copy of which is attached as **Exhibit "D"**). Due to the lack of legal basis for Lucky's claims, the Lucky I Judgment was completely reversed and judgment was entered for Mrs. Lollar by the Louisiana Second Circuit Court of Appeal on January 16, 2019, (the "2nd Circuit Reversal" a copy of which is attached as **Exhibit "D-2"**) with the Louisiana Supreme Court denying Lucky's writ application on April 8, 2019, (a copy of the writ denial is attached as **Exhibit "D-3"**).

12.

Although Lucky only sought monetary damages, he made clear in Lucky I and thereafter that his ultimate objective was to obtain the Mortgaged Property for his own.

13.

On December 11, 2017, prior to any issuance of the Lucky I Judgment or a ruling in that matter, Lucky filed a *Notice of Lis Pendens* citing the Mortgaged Property in the conveyance records of Bossier Parish at Book C1764, Page 118, and in the Bossier Parish mortgage records at Book M 2701, Page 654 (the "2017 Lis Pendens" a copy is attached hereto as **Exhibit "E"**).  The 2017 Lis Pendens purports that it was filed based upon Lucky I, although no Ruling or Judgment

had been rendered in that matter yet and Magnolia, the owner of the property, was not even a party to Lucky I.

14.

Lucky knew, at the time the 2017 Lis Pendens was filed, that any judgment in Lucky I could not include the transfer to him of the immovable property, as his claims in that matter were intentionally limited by him to only monetary damages.  Therefore, Lucky knowingly filed the 2017 Lis Pendens solely to create a cloud on Magnolia's title in a malicious effort to prevent payment to Magnolia of mineral royalty and oil and gas lease bonuses from the property, which would frustrate Magnolia's ability to make payments on the Note.

**Lucky II:**

15.

After the Lucky I Judgment was issued, Lucky filed a new lawsuit styled *W.A. Lucky, III v. Barbara Carr Lollar*, No. 155,382-A on February 20, 2018 (referenced herein as "Lucky II"). Lucky II was filed against Mrs. Lollar and Magnolia and alleged that the Note and the sale and other transactions involving the Mortgaged Property were all nullities.  Lucky purported to have standing to make these claims as a judgment creditor based upon the now-reversed Lucky I Judgment.

16.

Citing Lucky II, Lucky also filed, through counsel, a second *Notice of Lis Pendens* in the Bossier Parish records, at Instrument No. 1185201 On February 20, 2018. (the "2018 Lis Pendens"

a copy of which is attached hereto as **Exhibit "F"**).  The 2018 Lis Pendens purported to be applicable to the Mortgaged Property securing repayment of the Note.

17.

As discussed below, Lucky later abandoned Lucky II after the Sheriff's Sale of the Note was complete and after Lucky I was completely reversed.

18.

The 2017 Lis Pendens, Lucky II and the 2018 Lis Pendens were all intentionally and improperly filed by Lucky in order to adversely affect title to the Mortgaged Property and manufacture doubt as to marketability and value of the Note leading to the harm sustained by Plaintiffs as asserted herein, as well as to prevent payment of oil and gas royalties and lease bonuses which would have been sufficient to pay the Note.

**The Note Seizure:**

19.

On May 31, 2018, as Mrs. Lollar's devolutive appeal in Lucky I was pending, Lucky filed an *Ex Parte Motion for Production of Property and Alternative Motion for Contempt* in Lucky I (the "May 31st Motion") in which Lucky asked for a writ of fieri facias to issue for the purposes of enforcing the Lucky I Judgment. Lucky also prayed for an order directing Mrs. Lollar to deliver the promissory note to the Sheriff of Bossier Parish.

20.

Mrs. Lollar opposed Lucky's right to seek ex parte relief.  In response the Judge entered a modified order setting the May 31st Motion for a show cause hearing on July 5, 2018.  The Rule

directed Mrs. Lollar to show cause why she should not be ordered to immediately deliver the promissory note to the Sheriff (see Show Cause Order, attached as **Exhibit "G"**).

21.

Separate from the May 31st Motion, Lucky also filed a Motion to Examine Judgment Debtor and for Discovery Concerning Judgment Debtor on the same day (the "Second May 31st Motion"). The Second May 31st Motion simultaneously sought the issuance of a writ of fieri facias in conjunction with seeking the production of certain documents listed therein for discovery purposes such as "examination and copying".

22.

The court in Lucky I signed an order on May 31, 2018 that the Second May 31st Motion be granted without contradictory hearing, and also authorized the issuance of the writ of fieri facias.

23.

Thereafter, Lucky requested that a subpoena duces tecum be issued by the Bossier Clerk of Court on June 12, 2018 commanding Mrs. Lollar, pursuant to La. Civil Code of Procedure article 1354, to produce the original Note in open court on July 5, 2018. This subpoena was issued despite the fact that the issue of whether she must deliver the Note to the Sheriff was still pending until the hearing on July 5, 2018. The subpoena duces tecum was served on Mrs. Lollar's counsel on June 14, 2018.

24.

No notice that any writ had been issued was ever communicated to Mrs. Lollar or her counsel until the day of the July 5, 2018 hearing, in which the court in Lucky I simply represented

in its minutes that a Writ of Fieri Facias was issued to the Sheriff of Bossier Parish on June 8, 2018.

25.

Counsel for Mrs. Lollar brought the original of the Note to the July 5, 2018 hearing in compliance with the subpoena duces tecum.  Over the objection of Mrs. Lollar's counsel that seizure and sale of the Note was premature, the court ordered the Note to be seized at the conclusion of the hearing, directing counsel for Mrs. Lollar to deliver the Note to the Bossier Parish Sheriff's office.

26.

Under Louisiana law, a subpoena duces tecum is an evidentiary tool for ordinary proceedings to serve as an adjunct to witness testimony.  However, Lucky utilized this subpoena procedure in order to facilitate seizure of the Note on the day upon which a hearing was to be held to first determine whether Mrs. Lollar would even be subject to seizure of the Note by the Sheriff.

27.

From the time of the issuance of the June 8, 2018, writ of fieri facias until September 6, 2018, the Sheriff and his office took no action to execute on the writ beyond passively accepting the original Note which Mrs. Lollar's counsel brought to their office after the July 5, 2018 hearing.

28.

On or about September 6, 2018 Ms. Flournoy issued a Notice of Seizure to Mrs. Lollar after receiving directives from Lucky's counsel on selling the Note as movable property.  Ms. Flournoy's Notice of Seizure was addressed only to Lollar's counsel, stating that the Note may be sold at Sheriff's Sale on the first Wednesday, 14 days after the date of the Notice of Seizure, but

11

advised that "you must contact the Sheriff for the "actual date" (see **Exhibit "H"** for copy of the Notice of Seizure to Mrs. Lollar's counsel).

29.

Upon review of the notice records for the Sheriff's Sale held on file with the Bossier Parish Sheriff's office, it was found that the Bossier Parish Sheriff provided direct notice to only two individuals and only through their respective counsel of record:  Lucky and Mrs. Lollar.

**The Appraisal and Sale of the Note**:

30.

The Notice of Seizure to Mrs. Lollar's counsel also included a Notice to Appoint Appraiser, signed by Kim Flournoy with the Sheriff's Office, stating that Mrs. Lollar may appoint an appraiser to value the Note being sold. The Sheriff's office informed counsel for Mrs. Lollar by phone that appraisals had to be submitted to the Sheriff no later than October 19, 2018, and that the Note was then scheduled to be sold at Sheriff sale on October 24, 2018.

31.

Lucky appointed Chad Garland as his appraiser in regards to the sale of the Note. Mr. Garland submitted an appraisal of one hundred seventy-three thousand and no/100ths ($173,000.00), being *ten percent (10%)* of the Note's face value.  No written appraisal was kept on file by the Sheriff for Mr. Garland's appraisal amount, and only the amount of Mr. Garland's appraisal was made available to Mrs. Lollar.  (See Garland Appraisement Sheet at **Exhibit "I"**).

32.

Mrs. Lollar appointed John Dean as her appraiser for the Note.  Mr. Dean submitted an appraisal of one million four hundred seventy-eight thousand forty-eight and 68/100ths ($1,478,048.68).  See Dean Appraisement Sheet at **Exhibit "J"**.

33.

The great discrepancy between the Dean and Garland appraisals required ***the Sheriff*** to appoint a third appraiser in accordance with La. R.S. 13:4365(B) which reads in pertinent part as follows:

> (B)      If the appraisers cannot agree, and (1) the difference in value between the two appraisals does not exceed two hundred and fifty thousand dollars, and (2) the value assigned by the lower of the two appraisers is at least ninety percent of the value assigned by the higher of the two appraisers, then the sheriff shall average the two figures and use the average as the appraised value for purposes of determining the opening bid.  In those cases where the two appraisers do not agree and the values are not within the averaging limits, then the sheriff shall appoint a third appraiser, who shall also be sworn, and whose decision shall be final.

34.

The Sheriff purported that he appointed Patrick Lacour as the third independent appraiser for the Sheriff's Sale of the Note.  However, counsel for Mrs. Lollar was informed by employees of the Sheriff's office just days before the sale was to take place that Mr. Lacour was actually chosen by Lucky's counsel. Subsequent documents produced in discovery have confirmed this.

35.

Lucky's counsel, Curtis Shelton, had in fact already communicated with and written a lengthy letter to Mr. Lacour on October 10, 2018 (the "Shelton Letter"), nine days before anyone would have even been known whether a third appraiser would be necessary. (October 10, 2018, Shelton Letter to Lacour attached as **Exhibit "K"**).

36.

The Shelton Letter is said to provide Lacour with "background" to help with an appraisal of the Note.  However, the Shelton Letter instead outlines Lucky's claims against the Note and Mortgaged Property in Lucky II in detail and referred to the Note transactions as "Mrs. Lollar's scam" and "misdeeds."  Lucky's counsel went on to call Mrs. Lollar "not truthful" and even went as far to suggest Mrs. Lollar's attorneys (undersigned counsel) "aided and abetted" Mrs. Lollar's "scams."

37.

The Shelton Letter advised that Mr. Lacour, as a CPA, could "…evaluate the merits of the [Lucky II] lawsuit…", adding that "Mr. Lucky is resolute and unwavering, and he will pursue [Lucky II] to a conclusion."  Lucky's counsel then overtly informed Mr. Lacour that a person who buys the Note at Sheriff's Sale "will do so subject to the claims made against the property in [Lucky II], which are protected by a lis pendens."

38.

Mr. Lucky's counsel did not inform Mr. Lacour that the Lucky I Judgment granted no rights to Lucky in the Mortgaged Property or that the 2017 and 2018 Lis Pendens filed were both nullities.

39.

The Shelton Letter was drafted on behalf of Lucky and/or Lucky Family, L.L.C.

40.

Neither the Sheriff, the Sheriff's office, nor Ms. Flournoy provided Mr. Lacour any information regarding the Note, the Mortgaged Property, or undertook any statutory duties relating to the required third appraisal of the Note prior to the date Mr. Lacour performed his valuation of the Note.

41.

In appraising the Note, Mr. Lacour did not receive or even look at the Note itself. Further, Mr. Lacour did not perform any independent evaluation of the circumstances surrounding the Note, did not perform an independent investigation of the Mortgaged Property, did not independently review the merits of Lucky I or Lucky II, and, instead, relied entirely on the Shelton Letter in valuing the Note.

42.

Thus, Mr. Lacour's sole support for his appraisal of the Note was the Shelton Letter, a document drafted on behalf of Mr. Lucky and/or Lucky Family, L.L.C.

43.

Neither the Sheriff, the Sheriff's office, nor Ms. Flournoy notified Mr. Lacour that he was the designated third appraiser and these parties never took action which constitutes an appointment of a third appraiser in this matter.

44.

Mr. Lacour did in fact submit an appraisal amount of One Hundred Fifty-Seven Thousand Nine and 22/100ths ($157,009.22), being *nine percent (9%)* of the Note's face value.  Only a one-page appraisal report with a one-page exhibit was provided by the Sheriff's office supporting Mr.

Lacour's appraisal amount. (Mr. Lacour's appraisal report and appraisement sheet attached as **Exhibit "L"**).

45.

Ms. Flournoy, acting as "Deputy Sheriff", falsely represented that Lacour was the Sheriff's appointed appraiser on Lacour's Appraisement Sheet despite the reality that the Sheriff, his office, and Ms. Flournoy, enabled and allowed Lucky and his counsel to select Mr. Lacour.

46.

The timing, amount and circumstances of the Garland and Lacour appraisals is strongly indicative of a scheme by Lucky and Lucky Family, L.L.C. to subvert the statutory appraisal process in order to artificially diminish the sale price of the Note to the detriment of the Plaintiffs. Such scheme was aided and abetted by the Sheriff, Ms. Flournoy and other members of the Sheriff's staff.

47.

Additionally, the Garland and Lacour appraisals relied upon the improperly filed 2017 and 2018 Lis Pendens and the Lucky II suit, as ostensible support for their erroneous appraised values. Both Lis Pendens were invalid at their outset, but both appraisers were instructed by Lucky to give them effect. Furthermore, each Lis Pendens was predicated on the now-reversed Lucky I Judgment, and the Lucky II suit.  Lucky has since dismissed Lucky II and cancelled both Lis Pendens.

48.

The selection of and communications with the third appraiser on behalf of Lucky occurred long before it was even known a third appraiser would be required.  Such communications clearly

indicate that Lucky sought to artificially deflate the value of the Note and improperly influence the third appraisal with knowingly false and inaccurate statements about Mrs. Lollar and the value of the collateral securing repayment of the Note.

49.

Mrs. Lollar fax filed a Petition for Preliminary Injunctive Relief on October 22, 2018, requesting a stay of the Sheriff's Sale due to the improper appraisal process and artificially deflated Note value. Counsel for Mrs. Lollar served Mr. Lucky's counsel with this filing on the same day. However, the day after the Sheriff's Sale the trial judge scratched through the proposed order with the October 22, 2018, Petition by writing "Moot".  The sale of the Note took place without regard to Mrs. Lollar's right to be heard on this issue.

50.

On October 24, 2018, the Sheriff's office proceeded to sell the Note for two-thirds (2/3rds) of the third appraisal value for a total of One Hundred Five Thousand and no/00ths ($105,000.00) to Lucky, L.L.C., being only six percent (6%) of the face value of the Note.  (See copy of Sheriff's Return Proces Verbal of Sale, attached hereto as **Exhibit "M"**).

51.

At the time of the Sheriff's Sale, Lucky was shown by the records of the Louisiana Secretary of State's office to be a member and beneficiary of Lucky Family, L.L.C. On information and belief Plaintiffs aver that Lucky Family, L.L.C. was controlled by Lucky at all times material and used by him as a subterfuge to manufacture an ostensible third-party purchaser for the Note.

52.

The Sheriff, his office and Ms. Flournoy, ignored their duties to properly seize, appraise and sell the Note which was a Constitutionally protected property interest of Mrs. Lollar.  Instead, the Sheriff and his office abdicated their duty in favor of allowing Lucky and Lucky Family, L.L.C. to manipulate the seizure, appraisal and sale of Mrs. Lollar's Note.  Lucky, a party in the matter, was allowed to serve as his own judge in the valuation of Mrs. Lollar's property.  The foreseeable result of these hidden actions was that Lucky and Lucky Family, L.L.C., would realize a gain from the detriment of the Plaintiffs.

53.

Despite the reversal of Lucky I, Lucky's abandonment of claims that the Note is a nullity, and the content of his own appraisals, Lucky and the Lucky Family, L.L.C., currently maintain that they are entitled to enforce the Note at its face value of $1,730,000.00.  Despite the fact that Lucky directed Mrs. Flournoy and the Sheriff's office to sell the Note as a movable, Lucky and Lucky Family, L.L.C. appear to maintain that they may also enforce the mortgage and seize the Mortgaged Property along with penalties and attorney's fees.  All of which is denied.

54.

Lucky Family, L.L.C., is not entitled to the status of a good faith third party purchaser and is thus bound by the reversal of the underlying judgment (Lucky I) which was used to seize and sell Mrs. Lollar's Note, Mrs. Lollar has a right to restitution of the Note itself, and alternatively, to the proceeds equal to the full and proper value of the Note had the Sheriff's Sale not been fouled and subverted by the improprieties alleged above.  Under either scenario, Mrs. Lollar has a right to a property interest protected under the Fourteenth Amendment of the Federal Constitution.

## VI.

## CLAIMS

**<u>Mrs. Lollar's Claims:</u>**

55.

The allegations in the above paragraphs are incorporated herein by this reference.

**State Law**:

*Violation of Louisiana Law Governing the Seizure and Sale of Property*

56.

Under La. R.S. 13:4365 it is the duty of the Sheriff to appoint a third independent appraiser under the circumstances presented in that statute.

57.

The Sheriff did not appoint an appraiser in this case, despite the statutory requirement being triggered by the discrepancy between the parties' first two appraisals.

58.

Instead, the Sheriff, his office, and Ms. Flournoy allowed their role to be fulfilled by Mr. Lucky, who was allowed to choose the third appraiser and to coach the appraiser in advance regarding what factors Lucky would like considered for his appraisal of the Note.

59.

The actions of the Sheriff, his office, and Ms. Flournoy in allowing a preferred party (Lucky) the benefit of selecting the third appraiser and influencing the third appraisal undermines the purpose of the statute's requirement of a third appraiser to address discrepancies between each

party's appraisals. The Lacour appraisal is biased and tainted and therefore cannot be a just and true basis for a sale of the Note in accordance with La. R.S. 13:4365.

60.

Further, the appraisals submitted by Lucky's appraiser (Garland) and the third appraiser (Lacour) are otherwise not true and just appraisals, as required by La. R.S. 13:4365, and are otherwise in gross error.  Such severely low appraisals, and extreme departures from the face value of a secured note, cannot be supported by accepted valuation standards. Both appraisals are clearly based upon false and misleading information provided by Lucky which neither appraiser independently checked or verified.

61.

The unjust and erroneous appraisals used by the Sheriff and his office in selling the Note for just $105,000.00 have fouled the legal process and imposed an undue burden and harm upon Lollar by depriving her of her property for a minimal and fraudulently obtained value just prior to the judgment in Lucky I being reversed.

62.

The actions of the Sheriff, his Office, and Ms. Flournoy which violated La. R.S. 13:4365 and other Louisiana law governing the seizure and sale of property were the result of decisions made on the operational level.

63.

A Sheriff and/or his office are not vested with discretion as to whether to comply with La. R.S. 13:4365. Further, and to the extent that there is any room for discretion in the application of La. R.S. 13:4365 and other Louisiana law governing the seizure and sale of property, the conduct

of the Sheriff, his Office, and/or Mrs. Flournoy was not grounded in any permissible social, economic, or political policy.

64.

The conduct of the Sheriff, his Office, and Mrs. Flournoy in failing to comply with La. R.S. 13:4365 and other Louisiana law governing the seizure and sale of property was either intentional or grossly negligent.

65.

Mrs. Lollar has been damaged by the violations of Louisiana law governing the seizure and sale of property, including La. R.S. 13:4365 and related law, and is therefore entitled to monetary relief from the Sheriff, his Office, and/or Mrs. Flournoy.

66.

Further, Mrs. Lollar is entitled to a judgment declaring the Sheriff's Sale of the Note to be an absolute nullity and an order returning the Note to her possession.

67.

In the alternative, should Lucky Family, L.L.C., be permitted to retain the Note, which is denied, the Court should order restitution in an amount equal to the proceeds received from the Sheriff's Sale of the Note, as well as the difference between the Sheriff's Sale amount and the full and proper value of the Note.

*Abuse of Process*:

68.

Mrs. Lollar also asserts a state law claim against W.A. Lucky, III and Lucky Family, L.L.C., for abuse of process under La. C.C. art. 2315. Lucky and his counsel repeatedly and

improperly undermined and manipulated legal process to his advantage and to the detriment of Ms. Lollar and Magnolia.

69.

The Note was purchased at the Sheriff's Sale by Lucky Family, L.L.C., Lucky's family limited liability company. By doing so, Lucky and Lucky Family, L.L.C., have attempted to fraudulently place themselves in a better position than would be possible due to the Judgment's reversal.

70.

Lucky Family, L.L.C., and Lucky have been unjustly enriched by their actions and the abuse of process to sell the Note for an absurdly reduced value.  Lucky orchestrated this outcome by filing two false Lis Pendens and the Lucky II proceedings, both of which harmed Magnolia's commerce concerning the Mortgaged Property and falsely created doubt over the validity of the collateral securing repayment of Mrs. Lollar's Note.  Such actions continued simultaneously with Lucky's campaign to seize and sell the same Note he alleged was a nullity in Lucky II in order to satisfy the (now invalid) Lucky I Judgment in his favor.  Such contrary actions reflect Lucky's motive to manipulate the Sheriff's Sale process in order to obtain the Note through a family L.L.C. at a greatly discounted value.

71.

Mrs. Lollar has been damaged by Lucky and Lucky Family, L.L.C.'s abuses of legal process and is therefore entitled to monetary damages.

72.

Further, the Court should divest the Lucky Family, L.L.C. of the Note and restore it to Mrs. Lollar.

*State Law Due Process Violations*:

73.

The Defendants unlawfully deprived Mrs. Lollar in the Note and/or the value thereof without due process of law, in violation of the Louisiana Constitution.

74.

In depriving Mrs. Lollar of her property without due process, Lucky and Lucky Family L.L.C., acted intentionally and in bad faith. In doing so, Lucky and Lucky Family, LLC acted under color of state law.

75.

Because the Defendants unlawfully deprived her of her property without due process, Mrs. Lollar asks this Court to declare the Sheriff's Sale of the Note an absolute nullity and for the Note to be restored to her possession.

76.

Further, Mrs. Lollar has suffered damages due to the unlawful taking of her Note by the Defendants in an amount to be proven at trial.

**Federal Law**:

*Due process – personal capacity*:

77.

By allowing Lucky and/or Lucky Family L.L.C., to de facto select a third appraiser whose valuation would be decisive for the purposes of the Sheriff's Sale, Ms. Flournoy delegated to Lucky and/or Lucky Family L.L.C., a function traditionally exclusively reserved to the State: the administration of a sheriff's sale.

78.

In exercising a function traditionally exclusively reserved to the State, Lucky and/or Lucky Family L.L.C., acted under color of state law.

79.

The Sheriff's office, Ms. Flournoy, Lucky, and/or Lucky Family, L.L.C., have deprived Mrs. Lollar of her property without due process of law in violation of the Fourteenth Amendment of the Federal Constitution.

80.

In depriving Mrs. Lollar of her property without due process, Lucky and Lucky Family L.L.C., acted intentionally and in bad faith.

81.

The Sheriff's office and Mrs. Flournoy actively facilitated Lucky and Lucky Family, LLC's intentional and bad faith deprivation of Mrs. Lollar's property by knowingly and intentionally delegating the administration of the sale disposing of Mrs. Lollar's seized property

24

to Lucky and Lucky Family, LLC. Relatedly, the Sheriff's office, and Mrs. Flournoy failed to provide Mrs. Lollar any governmental process upon handing the administration of the Sheriff's Sale to Lucky and Lucky Family, LLC.

82.

The intentional and bad-faith conduct of Lucky and Lucky Family, LLC is imputable to the Sheriff, his Office, and Mrs. Flournoy.

83.

Further, the conduct of the Sheriff's Office and Mrs. Flournoy was, at best, plainly incompetent.

84.

Mrs. Lollar has suffered damages as result of the unlawful deprivation of her property.

85.

Pursuant to 42 U.S.C. §1983, Ms. Flournoy, Lucky, and Lucky Family, L.L.C., are individually liable for the damages suffered by Mrs. Lollar

86.

The Court should declare the Sheriff's Sale of the Note to be an absolute nullity and for the Note to be restored to her possession.

*Due process – official capacity*:

87.

The deprivation of Mrs. Lollar's property without due process of law is at least partially the result of the Sheriff's personal failure to act while showing a deliberate indifference to the need to act and/or to create a policy or practice of the Sheriff's Office to avoid a constitutional violation.

88.

The Sheriff's Office is liable for the damages suffered by Mrs. Lollar. Further, the Sheriff Office's violation of Mrs. Lollar's due process rights should result in the annulment of the sale and the restoration of the Note to Mrs. Lollar.

**Magnolia's Claims:**

89.

The allegations in the above paragraphs are incorporated herein by this reference.

90.

Lucky used the now reversed Lucky I Judgment as a means to adversely affect Magnolia's ability to earn income from the Mortgaged Property to pay the Note in a further effort to devalue the Note at its eventual seizure and sale as well as trigger a default in payment of the first installment due under the Note.

91.

Currently, Magnolia has sustained losses due to Lucky's actions in abuse of process for the improper filing of Lucky II, and the 2017 and 2018 Lis Pendens.  Magnolia's damages include the past suspension of royalty payments attributable to the Mortgaged Property, loss of a lease bonus for an oil and gas lease on an unleased portion of the Mortgaged Property, the loss of surface damage payments for proposed oil and gas development and the loss of marketability of the Mortgaged Property for various uses.  The foregoing are the current damages based upon Lucky's use of the monetary judgment to cloud Magnolia's title and are estimated to be in excess of

$500,000.00. The Judgment in Lucky I never included any rights the Mortgaged Property owned by Magnolia, and is now otherwise reversed.

92.

The Note was seized and sold for the purpose of satisfying the Judgment in Lucky I.  Even assuming Lucky's Lis Pendens were lawful, which is denied, or assuming the Judgment was not reversed, which it was, the attempted satisfaction of Lucky's Judgment by Sheriff's Sale of the Note was directly and adversely affected by the clouds on title Lucky deliberately placed on Magnolia's title.  At all times, Magnolia had a direct and cognizable interest in ensuring that the Note would be negotiated for its proper and just value.

93.

At all times prior to the Sheriff's Sale, Magnolia was the owner of the Mortgaged Property and payor under the Note, and had a reasonably ascertainable interest in any sale of the Note.

94.

Magnolia was never provided direct notice of the Sheriff's Sale from the Bossier Parish Sheriff.

95.

Magnolia presents a state law claim against W.A. Lucky, III and Lucky Family, L.L.C., for abuse of process under La. C.C. art. 2315, due to the harms suffered by Magnolia on account of the improper 2017 and 2018 Lis Pendens and filings in Lucky II which have adversely affected title to the Mortgaged Property owned by Magnolia.

## VII.

## REQUEST FOR SUSPENSION OF PAYMENTS DUE UNDER THE NOTE

96.

Due to the potential for harm to Magnolia and Lollar should the sale of the Note be rescinded and declared a nullity, Petitioner moves this Honorable Court to enter an Order to (i) suspend payments to Lucky Family, L.L.C., due under the Note and (ii) suspend any effort by the purchaser of the Note at the tainted Sheriff's Sale to exercise the rights of a holder in due course of the Note, until the resolution of this matter. Upon information and belief, the first annual installment due under the Note on November 1, 2018, had been pre-paid to the original holder of the Note as provided for under the terms of the Note, but a second installment will be due in November 2019.

## VIII.

## JURY DEMAND

97.

Plaintiffs demand a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

WHEREFORE, PETITIONERS PRAY for judgment in their favor and against all Defendants named herein, decreeing that:

(A)    The payments and any collection action under the Note be suspended during the pendency of this action;

(B)    The October 24, 2018, Sheriff's Sale of the Promissory Note be annulled and rescinded and that Lollar be restored her Note from Lucky Family, L.L.C.;

(C)     The Plaintiffs, Barbara Marie Lollar and Magnolia Island Plantation, L.L.C, recover damages for losses suffered by Defendants' actions in amounts to be proven at trial;

(D)     The actions of Defendants violated Plaintiffs' rights under Louisiana and federal law;

(E)     Lucky Family, L.L.C. was not a good faith third-party purchaser;

(F)     Lucky Family, L.L.C. is bound by the reversal of the Lucky I Judgment on which the Sheriff's Sale was based; and

(G)     For all other legal or equitable relief to which Plaintiffs may be entitled.

PETITIONERS PRAY IN THE ALTERNATIVE, that should Lucky Family, L.L.C., be permitted to retain the Note from the Sheriff's Sale:

(H)     The payments and any collection action under the Note be suspended during the pendency of this action;

(I)     There be Judgment in favor of Lollar finding that Lollar is now due restitution for the full and proper value of the Note on account of its sale based upon a now reversed Judgment; and

(J)     The Plaintiffs, Barbara Marie Lollar and Magnolia Island Plantation, L.L.C., recover damages for losses suffered by Defendants' actions in amounts to be proven at trial.

PLAINTIFFS FURTHER PRAY for recovery from Defendants of all costs of this proceeding, including expert witness fees and the cost of depositions, and attorneys' fees; and for all other legal and equitable relief to which the Plaintiffs' may be entitled to.

Respectfully submitted by,


_____/s/ J. Davis Powell_____
Randall S. Davidson, LSBA No. 4715, TA
J. Davis Powell, LSBA No. 33631
Andrew D. Martin, LSBA No. 34947

DAVIDSON SUMMERS, APLC
330 Marshall Street, Suite 1114
Shreveport, Louisiana 71101
Ph: (318) 424-4342 | (318) 226-0168
E:      rsdav@davidsonsummers.com
        dpowell@davidsonsummers.com
        dmartin@davidsonsummers.com

**_Counsel for Petitioners_**