AYRES, SHELTON, WILLIAMS, BENSON & PAINE, LLC
333 TEXAS STREET, 1400 REGIONS TOWER
SHREVEPORT, LOUISIANA 71101
TELEPHONE: 318-227-3500
FACSIMILE: 318-227-3980

Curtis R. Shelton

Direct: 318-227-3306
curtisshelton@arklatexlaw.com

Mailing address:

Post Office Box 1764
Shreveport, LA 71166

October 10, 2018

*VIA E-MAIL*

Mr. Patrick Lacour
Whitehall Advisors, LLC
3820A Bayou Rapides Rd.
Alexandria, LA  71303

Re:    Appraisal of Promissory Note

W. A. Lucky, III versus Barbara Marie Carey Carr, number 127,573 in the 26th Judicial
District Court, Bossier Parish, Louisiana, Section F

Dear Patrick:

I intend to provide the Bossier Parish Sheriff your name and contact number as a person who can appraise a promissory note for the sheriff for the sheriff's sale in the above referenced lawsuit. The sheriff's sale is scheduled for Wednesday, October 24, 2018, at 10:00 a.m. Each of the plaintiff and defendant will submit an appraisal. If the appraisers do not agree and their appraisals cannot be averaged under Louisiana Revised Statutes 13:4365 as set forth hereinafter, the Sheriff will need to appoint a third appraiser to appraise the note. In those cases where the two appraisers do not agree and the values are not within the averaging limits, the Sheriff appoints a third appraiser, and the decision of the third appraiser shall be final.

If the sheriff elects to appoint you as a third appraiser, you will not be acting for either the plaintiff or the defendant to appraise the promissory note. If you are appointed, you will be the Sheriff's appraiser. In fact, it will not matter whether the payment of your fees or expenses are paid by the plaintiff or the defendant. In fact, when a judgment is enforced by a seizure of property and its sale, the Sheriff will require the plaintiff to advance funds to cover the costs incurred by the Sheriff in conducting the process. The law then provides the manner in which the plaintiff may recover those costs from the sale of the property by the Sheriff. Regardless of any requirement that the plaintiff, in this case W. A. Lucky, III, advance funds to cover the costs incurred by the Sheriff, you will still be the Sheriff's appraiser.

The process is set forth in Louisiana Revised Statutes 13:4363 and 13:4365.

EXHIBIT K

AYRES, SHELTON, WILLIAMS, BENSON & PAINE, LLC

Mr. Patrick Lacour
October 10, 2018
Page 2

Louisiana Revised Statutes 13:4363 reads:

A.  Not less than seven days, exclusive of holidays, before the sale of seized property, the sheriff shall serve written notice on the debtor and on the seizing creditor, in the manner provided for the service of a citation, directing each to name an appraiser to value the property and to notify the sheriff of his appointment prior to the time stated in the notice, which shall be at least four days, exclusive of holidays, prior to the time of the sale.  The appraisal of the debtor and seizing creditor shall be made and delivered to the sheriff at least two days, exclusive of holidays, prior to the time of the sale.

B.  If there are two or more debtors or seizing creditors and these parties cannot agree as to which should act as or appoint an appraiser, and in any case where an appraisal is required prior to the judicial sale and which is not otherwise provided for in this Section, on the ex parte application of the sheriff or of any interested party, the court shall designate the party to act as or appoint the appraiser, and the notice required by Sub-section A of this Section shall be served on the party so designated.

The Sheriff has already served the written notice on the debtor and on the seizing creditor, directing each to name an appraiser. I have already notified the Bossier Parish Sheriff of the plaintiff's appointment of Mr. Chad M. Garland to do the appraisal of the promissory note for the plaintiff. Mr. Garland's credentials include, among others, an ABV accreditation and CVA designation.

I am informed that the defendant has notified the Sheriff of the appointment of Mr. John Dean of Business Valuation Consultants of Shreveport to appraise for the defendant. I am also aware that Mr. Dean has an ABV accreditation and CVA designation.

While I am hopeful that the two appraisers will agree on the value of the promissory note, I recognize the possibility that they will not. Because the defendant's appraisal is could be required to be submitted as late as October 19, 2018, that could result in a third appraisal being needed by the following Monday or Tuesday, October 22, 2018, or October 23, 2018. Because of this possible time crunch, I thought I would provide you with relevant information in advance so that, if you are appointed, you will be able to meet the short time delay that you would have to appraise for the Sheriff.

Louisiana Revised Statutes 13:4365 reads:

A.  The appraisers shall take an oath to make a true and just appraisal of the property.

EXHIBIT K

AYRES, SHELTON, WILLIAMS, BENSON & PAINE, LLC

Mr. Patrick Lacour
October 10, 2018
Page 3

B.  If the appraisers cannot agree, and (1) the difference in value between the two appraisals does not exceed two hundred and fifty thousand dollars, and (2) the value assigned by the lower of the two appraisers is at least ninety percent of the value assigned by the higher of the two appraisers, then the sheriff shall average the two figures and use the average as the appraised value for purposes of determining the opening bid.  In those cases where the two appraisers do not agree and the values are not within the averaging limits, then the sheriff shall appoint a third appraiser, who shall also be sworn, and whose decision shall be final.

C.  The property seized must be appraised with such minuteness that it can be sold together or separately.

D.  The appraisers shall reduce their appraisal to writing, sign it, and deliver it to the sheriff.

E.  The appraisal of any appraiser appointed by the sheriff shall be made and delivered to the sheriff at a time prior to the sale.

The parts of the statute which will apply to you are paragraphs A and D. I will need you to do two things. The first is to take an oath to make a true and just appraisal of the property, in this case, the promissory note. The second is to appraisers shall reduce their appraisal to writing, sign it, and deliver it to the sheriff. The requirement that the appraisal be reduced to writing is not a requirement for any extensive appraisal report. It is a requirement that the appraisal amount be reduced to writing.

I am sending two documents with this letter to illustrate the process. The first is titled "Oath of Appraiser." If you are appointed, you will need you to execute that before a Notary and get the original to the sheriff by the appraisal deadline.

The second document is the appraisement sheet that you will sign and provide to the sheriff's office. As you can see, what are required are a signature and a figure for the appraised value. That is all of the detail the sheriff will require.

**Background**

Here is some background that I think you will find to be helpful to this potential task.

As we discussed, our client, Mr. W.A. Lucky, III ("Mr. Lucky") has a judgment in the above referenced lawsuit against Barbara Marie Carey Lollar a/k/a f/k/a Barbara Marie Carey Carr ("Ms. Lollar"). The judgment is in the amount of One Million, Seven Hundred Ninety-Nine Thousand, Four Hundred Fifty And 52/100 Dollars ($1,799,450.52), plus judicial interest on the aforesaid amount from the date of judicial demand until paid in full and all costs associated with the proceeding. In this letter, I will call the above referenced lawsuit "Lucky-Carr I."

EXHIBIT K

AYRES, SHELTON, WILLIAMS, BENSON & PAINE, LLC

Mr. Patrick Lacour
October 10, 2018
Page 4

The property that is to be offered at a sheriff's sale in Lucky-Carr I on October 24, 2018, is a **promissory note**, which is described as follows:

> That certain original promissory note dated November 2, 2017 made by Ronald William Lollar payable to Barbara Marie Carey Carr Lollar or her order in the principal amount of One Million Seven Hundred Thirty Thousand and No/100ths Dollars ($1,730,000.00) plus interest thereon at the rate of four percent (4.0%) per annum until paid, payable in four (4) consecutive annual installments of $100,046.00, the first such installment being due and payable on November 1, 2018, and a final balloon payment equal to all remaining principal and interest then due hereunder, due and payable on November 1, 2022.

The aforementioned promissory note is ostensibly secured under a "Credit Sale Deed with Vendor's Lien and Special Mortgage." A copy of this Credit Sale Deed with Vendor's Lien and Special Mortgage is being sent with this letter.

The circumstances under which the promissory note and the Credit Sale Deed with Vendor's Lien and Special Mortgage were executed by Mr. Ronald William Lollar are described in the petition filed in a second lawsuit which is pending as "W. A. Lucky, III versus Barbara Marie Carey Lollar, Ronald William Lollar, Tributary Properties, L.L.C., and Magnolia Island Plantation, L.L.C.," case number 155,382-A in the 26th Judicial District Court for Bossier Parish, Louisiana. This lawsuit is the second lawsuit by our client, Mr. Lucky, against Ms. Lollar. I will refer to it as "Lucky-Carr II." I am including a copy of the petition filed in Lucky-Carr II.

Lucky-Carr II was filed because of the attempt by Ms. Lollar to place the immovable property (real estate) described in the Credit Sale Deed with Vendor's Lien and Special Mortgage out of her name. Ms. Lollar transferred the property into Mr. Ronald William Lollar's name so that the judgment obtained by Mr. Lucky could not be collected by having the Sheriff seize and sell the real property. (Mr. Lollar is Ms. Lollar's husband, but we understand that they are separate in property.)

We caught onto Ms. Lollar's scam, and we filed Lucky-Carr II. We also filed a notice of *lis pendens* against the immovable property (real estate) so that third parties would clearly be on notice of Ms. Lollar and her husband's misdeeds. We believe that the notice of *lis pendens* makes the claims in the second lawsuit effective against the immovable property (real estate). A copy of the notice of *lis pendens* is being sent with this letter.

An overview of the claims made in Lucky-Carr II is that, while Judge A. Parker Self, was receiving briefs and considering his ruling in Lucky-Carr I, Ms. Lollar executed the note and the Credit Sale Deed with Vendor's Lien and Special Mortgage. (Ms. Lollar took action to put other property out of her name, but here we are concerned with this promissory note scheme.)

EXHIBIT K

Mr. Patrick Lacour
October 10, 2018
Page 5

Ms. Lollar had held the property that she transferred to her husband in her name since 2003. Ms. Lollar held the property in her name all the way through the trial in Lucky-Carr I. It is obvious that she knew that Judge Self was going to rule against her in Lucky-Carr I. She was not truthful in her testimony. Ms. Lollar knew that a judgment was coming. I am including a copy of Judge Self's Opinion in Lucky-Carr I under which the judgment was rendered.

As you can see from the petition in Lucky-Carr II, Ms. Lollar, aided and abetted by her lawyers who had unsuccessfully defended Lucky-Carr I, prepared and executed the Credit Sale Deed with Vendor's Lien and Special Mortgage. It was executed/notarized in her lawyers' office.

The claims made in Lucky-Carr II include that:

(a)     Ms. Lollar's acts (and the acts of the other defendants) were in furtherance of Ms. Lollar's breach of her duties as mandatary and fiduciary and by which Ms. Lollar, acting in concert with the other defendants, sought to thwart or frustrate Mr. Lucky's rights to obtain and enforce collection of the judgment in Lucky-Carr I.

(b)     Ms. Lollar's, her husband Ronald's, and the other defendants' actions were obviously intentional or willful, were the result of a conspiracy among them, and were designed to damage Mr. Lucky.

(c)     The Credit Sale Deed with Vendor's Lien and Special Mortgage is null, void, and of no effect whatsoever as a simulation.

(d)     The supposed transfer was illicit and made by a debtor (Ms. Lollar) to conceal property from her creditor (Mr. Lucky).

(e)     Ms. Lollar had never before transferred the property to her husband Ronald in all the years that the property had been in her name or during all the years in which Lucky-Carr I was pending. Ms. Lollar only did so on the eve of the Court's taking Lucky-Carr I under advisement to render a decision therein. It is obvious that Lollar knew and anticipated that her wrongful conduct would soon result in a judgment against her in Lucky-Carr I.

(f)     Further, from Ms. Lollar's complete lack of credibility at the trial on the merits in Lucky-Carr I, it must be concluded that no actual transfer of the property from Lollar was actually intended by the Credit Sale Deed with Vendor's Lien and Special Mortgage. Instead, the entire transaction is a sham obviously designed with the assistance of Ms. Lollar's attorneys.

(g)     In the alternative, if and to the extent that the Credit Sale Deed with Vendor's Lien and Special Mortgage is not null, void, and of no effect whatsoever as a simulation, then it is subject to revocation for the reason that the ostensible

EXHIBIT K

AYRES, SHELTON, WILLIAMS, BENSON & PAINE, LLC

Mr. Patrick Lacour
October 10, 2018
Page 6

          transfer represented thereby caused or increased Ms. Lollar's insolvency rendering same subject to revocation under Louisiana Civil Code articles Louisiana Civil Code article 2037, *et seq*.

(h)     In the further alternative, the Credit Sale Deed with Vendor's Lien and Special Mortgage is an act of fraud and must be rescinded.

        I believe that you can evaluate the merits of the lawsuit filed as Lucky-Carr II when you look over the petition. The defendants have already tried to have the petition in Lucky-Carr II dismissed, and the Court has already ruled against them. I am sending a copy of that ruling, which was made by Judge Michael Craig. We are going to press forward with Lucky-Carr II to a trial and judgment. Mr. Lucky is resolute and unwavering, and he will pursue Lucky-Carr II to a conclusion.

        Although the property to be appraised and to be offered at the Sheriff's sale in Lucky-Carr I on October 24, 2018, is the promissory note, I am also sending an appraisal of the real property that Ms. Lollar transferred by the Credit Sale Deed with Vendor's Lien and Special Mortgage. The appraisal indicates that the property has a value of $4,000 per acre. The property that Ms. Lollar transferred was 280 acres, which would, therefore, have a value of $1,120,000.00. Nevertheless, what is relevant here is that the value of the promissory note must be determined based on the fact that a person who buys it will do so subject to the claims made against the property in Lucky-Carr II, which are protected by a *lis pendens*.

        Finally, I am sending a copy of the opinion of Coutret and Associates about the value of the mineral interest in the land. You will notice from Judge Self's ruling that he thought that it would be speculative to include an amount in his award for the value of the minerals to which Mr. McGowen testified. Like the land, it is not really the minerals that are to be appraised in this case, it is the promissory note. But, I wanted to include Coutret and Associates' opinion with this letter so that your information would be complete.

        If you have any questions, please do not hesitate to call.

                         Yours very truly,

                         Curtis R. Shelton

CRS:hs

Encls.

EXHIBIT K