**Exhibit B**

**Arthur L. Schwertz Deposition Excerpts**

1

1          UNITED STATES DISTRICT COURT

2          WESTERN DISTRICT OF LOUISIANA

3              SHREVEPORT DIVISION

4
   MAGNOLIA ISLAND          CIVIL ACTION NO.:
5  PLANTATION, LLC.,            5:18-CV-1526

6  ET AL,
                           DISTRICT JUDGE
7                            S. MAURICE HICKS
   VERSUS
8                          MAGISTRATE JUDGE
                             KAYLA D. MCCLUSKY
9  LUCKY FAMILY, LLC,
   ET AL.
10 ************************************************

11             ORAL DEPOSITION OF

12          ARTHUR L. SCHWERTZ, MAI

13 ************************************************

14 TAKEN FOR AND ON BEHALF OF W.A. LUCKY, III

15 AT THE OFFICES LOCATED AT:

16
              VALBRIDGE PROPERTY ADVISORS
17            2030 DICKORY AVENUE, SUITE 200
              NEW ORLEANS, LOUISIANA  70123
18

19

20
   TAKEN ON WEDNESDAY, OCTOBER 5, 2022
21
   BEGINNING AT 10:00 A.M.
22
   REPORTED BY PAMELA M. MacDOWELL, CCR
23

24

25

```
 1                    A P P E A R A N C E S

 2   ON BEHALF OF W.A. LUCKY, III:

 3
                       CURTIS R. SHELTON, ESQ.
 4       AYRES, SHELTON, WILLIAMS, BENSON & PAINE, LLC
                       1400 REGIONS TOWER
 5                      333 TEXAS STREET
                  SHREVEPORT, LOUISIANA   71101
 6                      (318) 227-3500
                  curtisshelton@arklatexlaw.com
 7

 8   ON BEHALF OF LUCKY FAMILY, LLC:

 9
                       ALLISON A. JONES, ESQ.
10            DOWNER, JONES, MARINO & WILHITE
                 401 MARKET STREET, SUITE 1250
11                SHREVEPORT, LOUISIANA   71101
                        (318) 213-4444
12                    ajones@dhw-law.com

13
     ON BEHALF OF BOSSIER CITY SHERIFF'S OFFICE:
14

15                    JACOB P. WILLIAMS, ESQ.
                      LANGLEY PARKS, LLC
16              401 MARKET STREET, SUITE 1100
                SHREVEPORT, LOUISIANA   71101
17                    (318) 383-6412
               jwilliams@langleyparks.com
18

19   ON BEHALF OF MAGNOLIA ISLAND PLANTATION, LLC, ET
     AL:
20

21                    JAMES DAVIS POWELL, ESQ.
                      DAVIDSON SUMMERS, APLC
22            330 MARSHALL STREET, SUITE 1114
                SHREVEPORT, LOUISIANA   71101
23                    (318) 424-4342
               dpowell@davidsonsummers.com
24

25
```

```
 1        WHEREUPON,
 2                    ARTHUR L. SCHWERTZ, MAI,
 3    the witness named in the foregoing stipulation,
 4    after having first been duly sworn, was examined
 5    and testified as follows:
 6                    E X A M I N A T I O N
 7    BY MR. SHELTON:
 8    Q    Mr. Schwertz, hi, I'm Curtis Shelton.  I
 9         represent Mr. W.A. Lucky, III, in this
10         lawsuit.
11    A    Okay.
12    Q    And I've got here, first, which I'll mark as
13         1, a copy of what is your opinion that you
14         provided in this case.  Would you confirm
15         with me that that is what it is?
16              (THE DOCUMENT WAS MARKED FOR
17         IDENTIFICATION AND ENTERED INTO THE RECORD
18         AS EXHIBIT NUMBER 1.)
19    A    (Perusing.)  It appears to be the entirety
20         of it.
21    Q    Okay.  Go ahead and hang on to it because we
22         will probably refer to it some.
23              And does it contain a complete statement
24         of all the opinions that you intend to
25         express in this lawsuit?
```

19

```
 1        that promissory note?
 2   A    I was not asked to provide an opinion as to
 3        Mr. Dean, Mr. Lacour -- what was the third
 4        one?
 5   Q    Mr. Garland.
 6   A    Yeah.  I didn't even really look at their
 7        qualifications because I was not asked to
 8        provide an opinion of value or a comment on
 9        whether their opinion was correct.
10   Q    Okay.
11   A    I was simply asked to do -- to opine on
12        whether correct procedures were followed in
13        obtaining the appraiser -- a third
14        appraiser.
15   Q    So I guess another way of saying that is you
16        don't have any opinion on their
17        qualifications and ability to appraise a
18        promissory note?
19   A    As of this date, no, I do not because I have
20        not been asked to review their
21        qualifications.
22   Q    Okay.  Well, do you know whether a certified
23        valuation analyst is qualified to value a
24        promissory note?
25   A    In theory they are.
```

```
1          Code of Professional Conduct.
2     A    Uh-huh.
3     Q    Paragraph 14 there, second line, you quote
4          that standard saying (as read:) "Objectivity
5          is a state of mind."  Okay?
6     A    Okay.
7     Q    Do you agree with that or disagree with
8          that?
9     A    In regards to this, yes.
10    Q    Okay.  So would you agree with me -- would
11         you tell me of some instance in which
12         objectivity is not a state of mind then?
13    A    It's essentially when the facts are being
14         narrowed.  You don't have a choice as to
15         whether you're objective or not because
16         you've been given too little information or
17         only one side of the information.
18    Q    Okay.  That might tell me whether or not you
19         are being objective, but it doesn't change,
20         in my thinking, and you can correct me if
21         I'm wrong, okay, that objectivity is a state
22         of mind.  Now whether you can be in the
23         state of mind of objectivity or not is a
24         different matter that may depend upon the
25         information that you're either given or
```

33

```
 1          restriction I would say it would behoove the
 2          reader of this report to go out and verify
 3          if there's no additional facts that this
 4          person could have provided.
 5    Q     Okay.  But you would still nevertheless
 6          stand behind your opinion, right?
 7    A     With the caveats that I've outlined, yes.
 8    Q     Okay.  Okay, I got you.  Have you had any
 9          specific training or gone to any seminars
10          concerning sheriff sales or collections of
11          judgements?
12    A     I have only done work for various sheriff
13          departments.
14    Q     Okay.  But you've never been to any kind of
15          training or seminar on that?
16    A     Rephrase the question.  Seminar as to what?
17    Q     As to the process of sheriff sales or the
18          process of collections of judgments?
19    A     No, I have not.
20    Q     Okay.  Looking at your opinion, Exhibit 1,
21          on the second page --
22    A     Okay.
23    Q     -- okay.  I think you said basically kind of
24          four things in here, or expressed four
25          different opinions.  You sort of number the
```

| | | |
|---|---|---|
| 1 | | their appraiser for them. |
| 2 | Q | I see.  Now, do you know whether or not Ms. |
| 3 | | Lollar's counsel, her attorneys in this |
| 4 | | lawsuit, were aware that Mr. Lacour was |
| 5 | | doing and submitting an appraisal? |
| 6 | A | At the time they were done, no.  I had no |
| 7 | | idea. |
| 8 | Q | Okay.  If I told you that they did, though, |
| 9 | | because they filed a pleading trying to get |
| 10 | | an injunction to stop the sheriff's sale -- |
| 11 | | okay, just assume that fact for a moment, |
| 12 | | okay? |
| 13 | A | Okay. |
| 14 | Q | All right.  If her attorneys knew about |
| 15 | | that, could her attorneys have reached out |
| 16 | | to Mr. Lacour? |
| 17 | A | I would think so. |
| 18 | Q | Do you know whether they did? |
| 19 | A | I have no clue. |
| 20 | Q | Okay.  Do you think they should have? |
| 21 | A | That is an opinion for attorneys to decide |
| 22 | | among themselves. |
| 23 | Q | Okay.  All right.  Well, it seems to me that |
| 24 | | you think that somebody should have reached |
| 25 | | out to Mr. Lacour on behalf of Ms. Lollar, |

54

```
 1   A     Yes, that's the term.
 2   Q     That's what you're saying by "length,"
 3         right?
 4   A     Length is the term.  The terms of the loan
 5         are how long they have to repay it, what's
 6         the interest rate, are the payments monthly
 7         or annual.
 8   Q     Okay.  Anything else about the promissory
 9         note that you would think would be relevant
10         to the appraisal?
11   A     And what would happen if they defaulted on
12         it.
13   Q     Okay.  Okay.  Do you see anything about this
14         promissory note that you think is atypical?
15   A     No.
16   Q     Okay.
17   A     But I did not do an appraisal of the
18         promissory note, nor have I ever appraised a
19         promissory note.
20   Q     Okay.  And you don't intend to?
21   A     No.
22   Q     I'm saving yours.  Would you -- if you knew
23         the amount of the promissory note and the
24         terms that you described -- the interest
25         rate, the date due, you now, how long it was
```

```
 1   A     Yes.

 2   Q     -- looked at the note, right?

 3   A     Yes.

 4   Q     Okay.  Do you know of any law or standard

 5         that says that a sheriff is obligated to

 6         seek out the names of appraisers from both

 7         sides before they appoint a third-party

 8         appraiser -- a third appraiser?

 9   A     I don't know law.  I just know the way the

10         local sheriffs in South Louisiana that I

11         have worked with have done it.

12   Q     Okay.

13   A     That's why it's in my experience.

14   Q     How many different sheriffs have you worked

15         with?

16   A     Probably six.

17   Q     Okay.  Any in North Louisiana?

18   A     No.

19   Q     Okay.  Have you ever been to any meeting of

20         the Louisiana Sheriff's Association?

21   A     No.

22   Q     No conferences or seminars --

23   A     No.

24   Q     -- conducted with the Louisiana Sheriff's

25         Seminar?
```

| 1 | A | No. |
|---|---|---|
| 2 | Q | Okay.  Now, you said in this -- your opinion |
| 3 | | here, you said, (as read:) "Third, while it |
| 4 | | is not uncommon for parties in limit -- |
| 5 | | litigation to try and present their side of |
| 6 | | a case to an appraiser in a favorable light, |
| 7 | | the appraiser should insist that both sides |
| 8 | | are given an opportunity to present their |
| 9 | | case." |
| 10 | A | Yes. |
| 11 | Q | Okay.  So do you believe that when there's a |
| 12 | | third appraiser that the third appraiser is |
| 13 | | conducting a trial of a case? |
| 14 | A | No. |
| 15 | Q | Okay. |
| 16 | A | He's trying to cut -- the third appraiser is |
| 17 | | trying to conduct a fair and impartial |
| 18 | | valuation. |
| 19 | Q | Okay. |
| 20 | A | If you only get one side of the story you |
| 21 | | tend to run the risk of being slanted. |
| 22 | Q | Okay.  So you're saying that you tend to run |
| 23 | | the risk of not being objective? |
| 24 | A | You tend to run that risk, yes. |
| 25 | Q | Okay. |

```
 1   Q     Okay.  All right.  Let's look at the next
 2         paragraph.  (As read:)  "I'm sending you two
 3         documents with this letter to illustrate the
 4         process.  The first is titled 'Oath of
 5         Appraiser.'  If you are appointed you will
 6         need to execute that before a notary and get
 7         the original to the sheriff by the appraisal
 8         deadline."
 9   A     Yes.
10   Q     Again, if he's appointed, he's going to have
11         to take an oath?
12   A     Yes.
13   Q     Right?  You've done that before?
14   A     Yes.
15   Q     Okay.  You would take that oath seriously?
16   A     I would, yes.
17   Q     Okay.  And you have no reason to suggest
18         that Mr. Lacour would not?
19   A     I don't know Mr. Lacour one way or --
20   Q     Right.
21   A     -- the other to make a comment on that.
22   Q     Okay.  You're not qualified to make a
23         statement as to his state of mind?
24   A     His state of mind, whether he's an honest
25         individual or a crook that sells river boat
```

76

1          licenses, I have no idea one way or the

2          other.

3    Q     Yeah.   You have no ability to opine as to

4          that?

5    A     No.

6    Q     Okay.   Then it says, (as read:)   "The second

7          document is the appraisal sheet that you

8          will sign and provide to the sheriff's

9          office.   As you can see, what are required

10         are a signature and a figure for the

11         appraised value.   That is all the detail the

12         sheriff will require."   Okay.   Is that

13         consistent with what your knowledge of the

14         sheriff's sale process is?

15   A     Some of the parishes only use an

16         appraisement sheet.   Most parishes that I've

17         -- sheriff's office that I've done work for,

18         they'll attach that to the outside of the

19         actual -- an actual report.

20   Q     But they don't have to have a report?

21   A     I don't know because I don't know the

22         statute, but --

23   Q     Okay.

24   A     -- I'm assuming that is correct.

25   Q     Okay.   Now we go into the background, okay?

**110**

```
 1        to consider, right?
 2  A     No, because I was asked -- I'm not
 3        testifying to the valuation.  I'm testifying
 4        to whether correct procedures were followed
 5        in selecting the third-party appraisal and
 6        third-party appraiser.
 7  Q     I got you.
 8  A     Not on either of the other two appraisers.
 9  Q     And Exhibit 8 is the White Hall Advisers
10        letter -- I guess appraisal letter.
11                  (THE DOCUMENT WAS MARKED FOR
12            IDENTIFICATION AND ENTERED INTO THE
13            RECORD AS EXHIBIT NUMBER 8.)
14  BY MR. SHELTON:
15  Q     Do you see that?  Have you seen that before?
16            MR. POWELL:
17                  I think -- not to answer for him,
18            but I think that was --
19            THE WITNESS:
20                  Dean?
21  BY MR. SHELTON:
22  Q     Yeah, I'm sorry.  I said Mr. Dean.  That's
23        Mr. Lacour.
24  A     White Hall Advisers?
25  Q     Right.
```

```
 1        the promissory note was involved in the
 2        litigation, maybe.
 3   Q    Okay.  And then it says, (as read:)  "The
 4        value for such an asset may be lower than
 5        the value of the same asset unencumbered
 6        with these complications depending on the
 7        specific facts and circumstances of the
 8        situations."  Do you agree with that
 9        statement by Mr. Dean?
10   A    I'm not going to testify to the valuation
11        method used for a promissory note because
12        I've never done one.  I'm not an expert --
13   Q    I didn't ask you about that.  I just asked
14        you if you agreed with the statement or not.
15   A    You're asking me if I agree with what will
16        affect the value.  I have not done a
17        valuation of a promissory note, so I can't
18        tell you whether it's going to affect a
19        promissory note or not.
20   Q    I got you.  What you're really saying is my
21        answer is, I don't know?  No opinion?
22   A    No opinion, yeah.
23   Q    Thank you.
24   A    I know lots of stuff.
25   Q    And then he says, (as read:)  "Accordingly,
```

**120**

```
 1   Q    Yeah.  And they ask for tax returns because
 2        if somebody states their income on a tax
 3        return, you can be pretty sure they've got
 4        at least that much income because most
 5        people don't voluntarily overstate their
 6        income --
 7   A    Correct.
 8   Q    -- and pay more taxes than they should,
 9        right?
10   A    That's the general assumption, yes.
11   Q    Yeah, I mean --
12   A    I mean, you might be Bill Gates and want to
13        help pay off the debt.  I don't know.
14   Q    Yeah, I got you.  All right.  Do you know,
15        and you may not know, or do you have any
16        opinion of whether the valuation method
17        applied by Mr. Dean and Mr. Lacour were
18        different?
19   A    I have not looked into the valuation methods
20        of either.
21   Q    Okay.
22   A    Because, once again, I'm not concerned with
23        the valuation.
24   Q    And you can't opine that either one of
25        them's valuation method was an improper
```

121

1         method?

2   A     I can neither opine if they were proper or

3         not proper.

4   Q     Okay.  And your opinion as set forth in

5         Exhibit 1, and I've kind of broken it down

6         as, I guess, four different opinions in a

7         way because you say, "first," "second,"

8         "third" and then "finally."

9   A     Yes.

10  Q     Okay.  So I kind of think that as four

11        different opinions than one opinion.

12  A     It's four tenets of the same opinion.

13  Q     Okay.  So your four tenets of your opinion,

14        or your opinion as a whole, okay, you would

15        say would not be of an opinion that if Mr.

16        Dean, or if Mr. Garland, or Mr. Lacour had

17        done anything different that the numbers

18        that came out in their appraisal would have

19        been any different?

20  A     I'm sorry.

21  Q     Okay.

22  A     Can you say that one more time?

23  Q     Well, let's just --

24  A     Break it into appraiser speak for me.

25  Q     In appraiser speak.  Is there anything in

122

```
 1        your opinion concerning Mr. Lacour's actions
 2        that you can say, yes, if he would have done
 3        X different then his number would have been
 4        a different number than he wrote down on the
 5        appraisement sheet?
 6   A    No.
 7   Q    Okay.  You can't say that there's any
 8        difference whatsoever in what would have,
 9        could have, or should have been?
10   A    No.  All I am testifying in my opinion is
11        whether I believe the sheriff's office
12        followed the correct procedure in -- or the
13        standard of conduct in securing a third-
14        party impartial appraiser.
15   Q    I got you.
16            MR. SHELTON:
17                So the good new is, at 11:52 I'm
18            finished.  Thanks so much.
19            THE WITNESS:
20                Next.
21            MS. JONES:
22                I have just a few questions.
23   EXAMINATION BY MS. JONES:
24   Q    As I understand your testimony, it's your
25        testimony that --
```

R E P O R T E R ' S   P A G E

I, Pamela M. MacDowell, Certified Court Reporter, in and for the State of Louisiana, the officer, as defined in Rule 28 of the Federal Rules of Civil Procedure and/or Article 1434(b) of the Louisiana Code of Civil Procedure, before whom this sworn testimony was taken, do hereby state on the record:

That due to the interaction in the spontaneous discourse of this proceeding, dashes (--) have been used to indicate pauses, changes in thought, and/or talkovers; that same is the proper method for a court reporter's transcription of proceeding; that the dashes (--) do not indicate that words or phrases have been left out of this transcript; and that any words and/or names which could not be verified through reference material have been denoted with the phrase "(phonetic)."

Pamela M. MacDowell, CCR

```
 1              C E R T I F I C A T E
 2        This certification is valid only for a
 3   transcript accompanied by my original signature and
 4   original required seal on this page.
 5
 6        I, Pamela M. MacDowell, Certified Court
 7   Reporter, in and for the State of Louisiana, as the
 8   officer before whom this testimony was taken, do
 9   hereby certify that ARTHUR L. SCHWERTZ, MAI, after
10   having been duly sworn by me upon authority of R.S.
11   37:2554, did testify as hereinbefore set forth in
12   the foregoing 154 pages; that this testimony was
13   reported by me in the Stenomask reporting method,
14   was prepared and transcribed by me or under my
15   personal supervision, and is true and correct to the
16   best of my ability and understanding; that the
17   transcript has been prepared in compliance with
18   transcript format guidelines required by statute or
19   by rules of the board, that I have acted in
20   compliance with the prohibition on contractual
21   relationships, as defined by Louisiana Code of Civil
22   Procedure Article 1434 and in rules and advisory
23   opinions of the board; that I am not related to
24   counsel or to the parties herein, nor am I otherwise
25   interested in the outcome of this matter.
```

156

1          IN WITNESS WHEREOF, I have affixed my

2    official signature this 24th day of October 2022, at

3    New Orleans, Orleans Parish, Louisiana.

4

5

6

7                    Pamela M. MacDowell
                     Certified Court Reporter
                     Louisiana Certification No. 20077

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



**Valbridge**
PROPERTY ADVISORS

2030 Dickory Avenue, Suite 200
New Orleans, LA 70123
504.541.5100 phone
504.541.5107 fax
valbridge.com

August 10, 2022

Mr. J. Davis Powell
DAVIDSON SUMMERS, APLC
330 Marshall Street, Suite 1114
Shreveport, LA 71101

Via Email

**RE:    Consulting Report on behalf of Mrs. Barbara Lollar in the matter of**
**Magnolia Island Plantation, LLC, et al. v. Lucky Family, LLC, et al.**

Dear Mr. Powell:

In accordance with your request and on behalf of your client, Mrs. Barbara Lollar,, I have reviewed the following documents regarding the procedures followed in obtaining a third or "referee" appraisal in conjunction with a Sheriff's Sale:

1.  2019.051        First Amended & Restated Complaint to Annul Sheriff's Sale and For Other Relief
2.                  Second Amended & Restated Complaint to Annul Sheriff's Sale and For Other Relief
3.  2019.051-1      Exhibit A (Promissory Note)
4.  2019.051-2      Exhibit B (Credit Sale Deed)
5.  2019.051-3      Exhibit C (Exchange Deed)
6.  2019.051-4      Exhibit D (Judgement)
7.  2019.051-5      Exhibit D-2 (Notice of Judgement)
8.  2019.051-6      Exhibit D-3 (Writ Denial)
9.  2019.051-7      Exhibit E (2017 Lis Pendens)
10. 2019.051-8      Exhibit F (2018 Lis Pendens)
11. 2019.051-9      Exhibit G (Order on Ex Parte Motion)
12. 2019.051-10     Exhibit H (Notice of Seizure)
13. 2019.051-11     Exhibit I (Garland Appraisement Sheet)
14. 2019.051-12 -   Exhibit J (Dean Appraisement Sheet)
15. 2019.051-13     Exhibit K (Shelton Letter)
16. 2019.051-14     Exhibit L (Lacour Appraisal)
17. 2019.051-15     Exhibit M (Sheriff's Process Verbal Sale)
18. Transcript of Deposition of Patrick Lacour
19. Transcript of Deposition of Jean Horne (Sheriff's Office)



After reviewing the aforementioned documents, there are several items that, as an appraiser who has been appointed to perform appraisals for various Sheriff's Departments in the State of Louisiana, would be considered disconcerting.

First, in my experience, the third appraiser has always been engaged directly by the Sheriff's office to maintain being an independent and impartial party to the litigation. In the captioned litigation, based upon my review of the documentation provided, the third appraiser was initially contacted by Mr. Shelton through what appears to be a very one-sided document ("Shelton Letter"). Further, Mr. Shelton remained his contact throughout.

Second, the Sheriff's Office appears to have made no attempt to seek out names of appraisers from the opposing counsel. This lack of equality would raise "red flags" with the propriety of the assignment.

Third, while it is not uncommon for parties in litigation to try and present their side of a case to an appraiser in a favorable light, the appraiser should insist that both sides are given equal opportunity to present their "case". It is incumbent upon an appraiser to seek out all pertinent information regarding the subject of the appraisal through the Sheriff's office or other public sources. Further, to maintain independence it is considered the standard of conduct to request all parties to send their documents through the Sheriff's office.

Finally, Lacour testified that he complied with the Statement on Standards for Valuation Services ("SSVS") in completing a *Calculation Engagement*. The SSVS states that

> *"14. The AICPA Code of Professional Conduct requires objectivity in the performance of all professional services, including valuation engagements. Objectivity is a state of mind. The principle of objectivity imposes the obligation to be impartial, intellectually honest, disinterested, and free from conflicts of interest. If necessary, where 10 Statement on Standards for Valuation Services No. 1 a potential conflict of interest may exist, a valuation analyst should make the disclosures and obtain consent as required under Interpretation No. 102-2, "Conflicts of Interest," under Rule 102, Integrity and Objectivity (AICPA, Professional Standards, vol. 2, ET sec. 102.03)."*

AND

> *b. Calculation engagement—A valuation analyst performs a calculation engagement when (1) the <u>valuation analyst and the client agree on the valuation approaches and methods the valuation analyst will use</u> and the extent of procedures the valuation analyst will perform in the process of calculating the value of a subject interest (these procedures will be more limited than those of a valuation engagement) and (2) the valuation analyst calculates the value in compliance with the agreement. The valuation analyst expresses the results of these procedures as a calculated value. The calculated value is expressed as a range or as a single amount. A calculation engagement does not include all of the procedures required for a valuation engagement (paragraph 46).*

Based upon the foregoing, it appears that Mr. Lacour violated both of these tenets of the SSVS. For objectivity, Mr. Lacour does not appear to have considered any information other than that which was

provided by Mr. Shelton.  In addition, the Calculation Engagement requires that the valuation analyst (Lacour) and the client (Sheriff's Office) agree on the valuation approaches and the methods the valuation analyst will use.  It does not seem likely that any agreement was reached on the valuation approaches was reached as the Sheriff's office apparently had no contact with Mr. Lacour until after the valuation had been delivered.

Please note that my compensation in this matter is an hourly rate of $450/hour plus actual travel expenses if any.

Respectfully submitted,
Valbridge Property Advisors

Sincerely,

Arthur L. Schwertz, MAI
Senior Managing Director
Louisiana Certified General
Real Estate Appraiser #G0932

## Qualifications of Arthur L. Schwertz, MAI
### Senior Managing Director
**Valbridge Property Advisors | South Louisiana**

*Independent Valuations for a Variable World*

### Membership/Affiliations

Member:   Appraisal Institute – MAI Designation
          Louisiana Chapter President, 2017

Member:   Celebration Church Administrative Team (Corporate Secretary)

### Appraisal Institute & Related Courses

Continuing education courses taken through the Appraisal Institute and other real estate organizations

### Publications, Seminars Presented, etc.

"Valuation of Municipal Systems and the Property Rights Involved", AI Connect 2021 (Appraisal Institute's National Meeting), Orlando, Florida 2021

"Contract or Effective Rent: Finding the Real Rent", Appraisal Institute, Austin, Texas, 2019.

"Contract or Effective Rent: Finding the Real Rent", Appraisal Institute, Baton Rouge, Louisiana, 2016.

"Appraising Commercial and Complex Properties in an Historic Area", Webinar for the Appraisal Institute, 2015.

"The Unique Appraisal: Case Studies in Appraising Special Purpose Properties", AI Connect 2014 (Appraisal Institute's National Meeting), Austin, Texas, 2014.

Schwertz, Arthur L. 2014. "History Lesson", *Valuation Magazine 2nd Quarter, 2014*, 12 – 13.

Huso, Deborah R. 2013. "On the Waterfront", *Valuation Magazine 2nd Quarter, 2013*, 22 – 27 (Contributor)

### Experience

**Senior Managing Director**
Valbridge Property Advisors | South Louisiana (2013-Present)

**Vice-President**
Argote, Derbes, Graham, Shuffield & Tatje, Inc. (1992-2013)

Appraisal/valuation and consulting assignments include (but not limited to):  Single-family, condominium, apartments, vacant land, funeral homes, amphitheaters, live performance theaters, office buildings, hospitals, nursing homes, specialized healthcare, hotels/motels, service stations, retail, industrial plants, warehouses, fractional interest valuations, contaminated properties, special purpose properties (port facilities, nuclear reactor simulator facility, shipyards, etc.), senior residential and healthcare facilities, feasibility studies, market studies, condemnation, construction defects, litigation support, mediations, and review appraisals.

Mr. Schwertz has provided valuation services in a wide variety of complex civil litigation including real estate, land use cases, condemnation, estate matters, property taxation, construction defect, and bankruptcy/creditors matters.

Qualified as an expert witness in Jefferson, Orleans, St. Tammany, and Terrebonne Parishes, Dallas County, Texas, United States Court of Federal Claims, United States Court for the Eastern District of Louisiana and the United States Bankruptcy Court for the Middle District of Louisiana.  Also qualified as an expert witness at the Louisiana Tax Commission and the Indiana Board of Tax Review.

---

### State Certifications

Certified General in:
Louisiana
Mississippi
Alabama
Texas
Virginia
California
Arizona
Kentucky
Tennessee
North Carolina
Maryland
Florida

### Education

**Bachelor of Arts**
History
Louisiana State University

### Contact Details

504-541-5101 (p)
504-541-5107 (f)
aschwertz@valbridge.com (e)

Valbridge Property Advisors | South Louisiana
2030 Dickory Avenue
Suite 200
New Orleans, LA 70123

www.valbridge.com/south-louisiana

**QUALIFICATIONS OF THE APPRAISER (Continued)**

**ARTHUR L. SCHWERTZ, MAI**

## Designations, Associations and Professional Awards

- Louisiana Certified General Real Estate Appraiser; License No. G-0932
- Mississippi Certified General Real Estate Appraiser; License No. GA-633
- Alabama Certified General Real Estate Appraiser; License No. G00937
- Texas Certified General Real Estate Appraiser, License No. TX-1337393-G
- California Certified General Real Estate Appraiser, License No. 3005682
- Virginia Certified General Real Estate Appraiser, License No. 400101572
- Arizona Certified General Real Estate Appraiser, License No. 1003038
- North Carolina Certified General Real Estate Appraiser, License No. A8506
- Tennessee Certified General Real Estate Appraiser, License No. 5810
- Kentucky Certified General Real Estate Appraiser, License No. 5470
- Maryland Certified General Real Estate Appraiser, License No. 34070
- Florida Certified General Real Estate Appraiser, License No. RZ4249
- Member of the Appraisal Institute, MAI Certificate No. 12678
- Instructor of the Appraisal Institute
- Secretary, Louisiana Chapter of the Appraisal Institute, 2014
- Treasurer, Louisiana Chapter of the Appraisal Institute, 2015
- Vice-President, Louisiana Chapter of the Appraisal Institute, 2016
- President, Louisiana Chapter of the Appraisal Institute, 2017

## Civic Organizations

| | |
|---|---|
| 1982 | Eagle Scout, Boy Scouts of America |
| 1983 | Vigil Honor Member, Order of the Arrow, Boy Scouts of America |
| 1999 – 2001 | Board of Directors, Berean Bible Church, New Orleans, Louisiana |
| 2000 – 2001 | Treasurer, Berean Bible Church, New Orleans, Louisiana |
| 2008 – 2010 | School Board Chairman, Crescent City Christian School, Metairie, Louisiana. |
| 2008 – Present | Board of Directors, Celebration Church, Metairie, Louisiana |
| 2010 – Present | Corporate Secretary, Celebration Church, Metairie, Louisiana |

## Expert Witness Experience

- Expert Witness, United States Court of Federal Claims
- Expert Witness, United States Bankruptcy Court, Middle and Eastern Districts of Louisiana
- Expert Witness, United States Federal Court, Eastern District of Louisiana
- Expert Witness, Civil District Court for the Parish of Orleans, State of Louisiana.
- Expert Witness, State Civil District Court, Dallas County, State of Texas.
- Expert Witness, Louisiana Tax Commission
- Expert Witness, Circuit Court for the City of Norfolk, Virginia
- Expert Witness, 9th JDC, 23rd JDC and 32nd JDC, State of Louisiana
- Expert Witness, Indiana Board of Tax Review, State of Indiana
- Expert Witness, Circuit Court of the Twentieth Judicial Circuit in and for Collier County, Florida

**QUALIFICATIONS OF THE APPRAISER (Continued)**

**ARTHUR L. SCHWERTZ, MAI**

## Court Testimony

| | |
|---|---|
| 2022 | Reinie A. Benoit v. Fredrick J. Benoit, II, Case No. 19-DR-1569, Circuit Court of the Twentieth Judicial Circuit in and for Collier County, Florida (Testimony) |
| 2020 | Low Land Investors, LLC, Low Land Construction Co., Inc. v. New Generation Shipbuilding, LLC, Case No. 180743, 32nd Judicial District for Terrebonne Parish, State of Louisiana (Deposition/Testimony) |
| 2020 | GIV Green Tree Mall Investor, LLC v. Clark County Assessor, Petition Nos. 10-011-17-1-4-02088-17, 10-011-18-1-4-00149-20 and 10-011-19-1-4-00150-20, Indiana Board of Tax Review, State of Indiana (Testimony) |
| 2020 | Celia III, LLC v. Jefferson Parish Hospital District No. 2, Civil Action No. EDLA 19-11528, Bankruptcy No. 19-01145, United States District Court for the Eastern District of Louisiana (Deposition/Testimony) |
| 2020 | Elizabeth Sewell, et al v. Sewerage & Water Board of New Orleans, Docket No. 15-4501, Division D-12, Civil District Court, Parish of Orleans, State of Louisiana (Deposition) |
| 2019 | Virginia Natural Gas, Inc. v. Colonna's Ship Yard, Incorporated, Case No. CL18-2169, Circuit Court for the City of Norfolk, State of Virginia (Deposition) |
| 2018 | Jeannette C. Liebman, Wife of/and Paul E. Ramoni, Jr. v. The United States, Docket No. 14-1165, United States Court of Federal Claims (Testimony) |
| 2016 | Appeal of Filmore Parc Apartments v. Orleans Parish Board of Review, Docket Nos. 16-22173-001 and 16-22173-002, Louisiana Tax Commission, State of Louisiana. (Testimony) |
| 2016 | Appeal of Fulton Development (Harrah's Hotel) v. Orleans Parish Board of Review, Docket No. 16-22171-002, Louisiana Tax Commission, State of Louisiana (Testimony) |
| 2016 | Jeannette C. Liebman and Paul E. Ramoni, Jr. v. United States of America, Case No. 14-1165 L, United States Court of Federal Claims (Deposition) |
| 2016 | State of Louisiana, Department of Transportation & Development v. Northport Properties Partnership, Et Al, Docket No. 233,894, 9th Judicial District, Parish of Rapides, State of Louisiana (Testimony) |
| 2015 | Appeal of Filmore Parc Apartments v. Orleans Parish Board of Review, Docket Nos. 15-22173-018 and 15-22173-019, Louisiana Tax Commission, State of Louisiana. (Testimony) |
| 2015 | Doretha Z. Walker et al vs. AMID/Metro Partnership, LLC and City of New Orleans, Docket No. 07-14794, Division II-14, Civil District Court for the Parish of Orleans, State of Louisiana. (Testimony) |
| 2015 | Sandra Oubre Sotile, Et Al vs Dooley Oubre, Et Al, Docket No. 110,622, 23rd Judicial District Court, Ascension Parish, Louisiana (Deposition) |
| 2015 | Feng Jin Teng and his wife Aijin Chen vs. Peggy Hatch, Secretary of LDEQ, in Her Capacity as Administrator of the Louisiana Motor Fuels Underground Storage Tank Trust Fund, Docket No. 251,016, 9th Judicial District Court, Rapides Parish, Louisiana (Mediation) |

**QUALIFICATIONS OF THE APPRAISER (Continued)**

**ARTHUR L. SCHWERTZ, MAI**

## Court Testimony (Continued)

| | |
|---|---|
| 2014 | North Shore Lodging, LLC vs Commonwealth Land Title Insurance Company, Case No. 2:2013cv06070, United States Court for the Eastern District of Louisiana (Deposition) |
| 2014 | Appeal of Filmore Parc Apartments v. Orleans Parish Board of Review, Docket Nos. 14-22173-003 and 14-22173-004, Louisiana Tax Commission, State of Louisiana. (Testimony) |
| 2014 | State Bank of Texas vs. Granbury Hospitality Inc., et al, Cause No. DC-12-06398, 44th State Civil District Court, Dallas County, State of Texas. (Testimony) |
| 2013 | Bruce L. Feingerts v Succession of Doris Feingerts, et al, Adversary Proceeding No. 2011-9918, Civil District Court for the Parish of Orleans, State of Louisiana. (Testimony) |
| 2012 | Consolidated Cases of Percy J. Marchand versus Entergy New Orleans, Inc., Docket No. 2009-12695 AND Omar Duncan, Et Al, vs. Entergy New Orleans, Inc., Docket No. 2010-0714 AND Leroy Anthony Vignaud versus Entergy New Orleans, Inc. Docket No. 2010-5566, Division "C" of the Civil District Court for the Parish of Orleans, State of Louisiana. (Deposition) |
| 2011 | Pleasant View Development, LLC v Charles Anthony Bonaventure, Gina Bonaventure Porciau, Charles R. St. Romain, and Patin Engineers and Surveyors, Inc., Adversary Proceeding No. 10-1024, United States Bankruptcy Court, Middle District of Louisiana (Testimony) |
| 2011 | 1522 R.E. Lee Blvd., LLC v. Bank of New Orleans, Civil District Court for the Parish of Orleans, State of Louisiana (Deposition) |

## Partial List of Appraisal Assignments Completed

**Healthcare**

Bellefonte Hospital, Ashland, KY

O'Connor Hospital, San Jose, CA

St. Louise Regional Medical Center, Gilroy, CA

St. Vincent Medical Center, Los Angeles, CA

Riverside Hospital, Yorktown, VA

Proposed Prosser Memorial Hospital, Prosser, WA

Savoy Medical Center, Mamou, LA

Methodist Hospital, New Orleans, LA

New Orleans East Hospital, New Orleans, LA

Lakeland Hospital, New Orleans, LA

Shriner's Hospital, Shreveport, LA

Fairway Surgical Hospital, Covington, LA

Southpark Hospital, Lafayette, LA

St. James Parish Hospital, St. James, LA

Green Clinic and Surgery Center, Ruston, LA

Numerous Residential Treatment Facilities Throughout the Nation

Numerous Nursing Homes throughout Louisiana

Lambeth House Assisted Living, New Orleans, LA

Rosewood Assisted Living Facility, Charlottesville, VA

Good Samaritan Society Facilities in DeLand, Daytona Beach, and Kissimmee, Florida

**Water and Wastewater Systems**

Forest Oaks Water System, Streetman, TX

UIC 13, LLC, Houston Metroplex, TX

Resolve Water, Slidell, LA

Coast Water, Slidell, LA

H2O Water and Wastewater, St. Tammany Parish, LA

Mo-Dad Utilities, Tangipahoa, Livingston, West Baton Rouge, East Baton Rouge and West Feliciana Parishes, LA

Scientific System, Jacksonville, NC

Center Ridge System, Murray, KY

Blue Creek Utilities, Jacksonville, NC

Delaplain Utilities, Georgetown, KY

River Bluff Wastewater System, River Bluff, KY

## QUALIFICATIONS OF THE APPRAISER (Continued)

### ARTHUR L. SCHWERTZ, MAI

## Partial List of Appraisal Assignments Completed (Continued)

<u>Office Buildings</u>

Xerox Centre, Kenner, LA

Park Tower, Lafayette, LA

Former Stewart Enterprises Building, Metairie, LA

First NBC Building, New Orleans, LA

Executive Plaza, New Orleans, LA

Chase Tower, Houma, LA

Maison Blanche Building, New Orleans, LA

Yenni Office Building, Harahan, LA

Dominion Tower, New Orleans, LA

Elmwood Tower, Harahan, LA

Freeport-McMoran Building, New Orleans, LA

Entergy Building, New Orleans, LA

1250 Poydras Building, New Orleans, LA

<u>Major Retail</u>

Clearview Regional Mall (±700,000 square feet), Metairie, LA

Northshore Square Mall (±621,192 square feet), Slidell, LA

The Shoppes at Premaux (±600,000 square feet), Slidell, LA

Slidell Factory Outlet Mall, Slidell, LA

Southland Mall (±600,000 square feet), Houma, LA

The Plaza (±1,200,000 square feet), New Orleans, LA

Belle Promenade (±750,000 square feet), Marrero, LA

Jax Brewery, New Orleans, LA

River Marketplace Shopping Center, Lafayette, LA

Natchez Mall (±268,857 square feet), Natchez, MS

Bradley Square Mall (568,508 square feet), Cleveland, TN

<u>Industrial</u>

Colonna's Shipyard, Norfolk, VA

Signal International Shipyard, Orange, TX

Signal International Shipyard, Mobile, AL

Signal International Shipyard, Port Arthur, TX

Signal International Shipyard, Pascagoula, MS

Bender Shipyard, Mobile, AL

Plastic Infusion Plant, Hammond, LA

UBT Coal Transfer Facility, Davant, LA

Trinity Yachts, Gulfport, MS

Trinity Yachts, New Orleans, LA

Coca-Cola Facility, Thibodaux, LA

LaShip Shipyard, Houma, LA

Dow Chemical Plant, Norco, LA

Port of St. Bernard, St. Bernard, LA

Owensboro Riverport, Owensboro, KY

Toulouse Street Wharf, Port of New Orleans, LA

Mississippi River Dock, Venice, LA

Port of Iberia, New Iberia, LA

Kaiser Site, Port of Greater Baton Rouge, LA

Proposed Port of Cameron, Cameron, LA

Union Tank Car Plant, Alexandria, LA

Alabama Shipyard, Mobile, Alabama

<u>Contaminated Properties</u>

Quality Shipyard, Houma, LA

Trinity Yachts, Gulfport, MS

Signal International Shipyard, Pascagoula, MS

Port of Slidell (adjacent to Bayou Bonfouca Superfund Site), Slidell, LA

20 MacArthur Drive, Alexandria, LA

Signal International Shipyard, Orange, TX

Gentilly Landfill, New Orleans, LA

Agriculture Street Landfill Site, New Orleans, LA

<u>Schools</u>

Clifton L. Ganus Academy, New Orleans, LA

Mt. Carmel Academy, New Orleans, LA

Israel Augustine School, New Orleans, LA

Millerville Academy, Baton Rouge, LA

Louise S. McGhee School, New Orleans, LA

Stuart Hall Academy, New Orleans, LA

Believer's Life Academy, Marrero, LA

D'Arbonne Woods Charter School, Farmerville, LA

**QUALIFICATIONS OF THE APPRAISER (Continued)**

**ARTHUR L. SCHWERTZ, MAI**

## Partial List of Appraisal Assignments Completed (Continued)

### Hotels

Super 7 Motel, Lafayette, LA

Harrah's Hotel, New Orleans, LA

Candlewoods Suites Hotel, Houma, LA

Candlewoods Suites Hotel, Lafayette, LA

Hyatt House Hotel, Columbus, MS

Hampton Inn, Harahan, LA

Hampton Inn, Metairie, LA

Hampton Inn Convention Center, New Orleans, LA

Hampton Inn Uptown, New Orleans, LA

Hampton Inn, Mobile, AL

Courtyard by Marriott, Metairie, LA, Baton Rouge.

Residence Inn, Metairie, LA

Quality Inn, Opelousas, LA

LaQuinta, Slidell, LA

Historic French Market Inn, New Orleans, LA

Wyndham Hotel, Metairie, LA

Holiday Inn Superdome, New Orleans, LA

Hilton Garden Inn, Kenner, LA

Hilton Garden Inn, Baton Rouge, LA

Homewood Suites, Gretna, LA

Homewood Suites, Lake Charles, LA

Holiday Inn Express, Cut Off, LA

### Multi-Family

Shadowlake Apartments, Harvey, LA

Citrus Creek Apartments, Harahan, LA

Palmetto Creek Apartments, Harahan, LA

The Reserve at Acadiana, Lafayette, LA

Gravier Place Apartments, New Orleans, LA

The Saulet Apartments, New Orleans, LA

Town Oaks Apartments, Shreveport, LA

University Edge Apartments, Hattiesburg, MS

Legacy Condominiums Phase I, Gulfport, MS

Legacy Condominiums Phase II, Gulfport, MS

South Beach Condominiums, Biloxi, MS

609 Jackson Avenue, New Orleans, LA

Cypress Run Apartments, New Orleans, LA

### Special Purpose Properties

Nuclear Reactor Simulator Facility, St Francisville, LA

Statewide Economic Obsolescence Study for Hibernia Bank, State of Louisiana

Mitigation Bank, St. James Parish, LA

Mitigation Bank, Livingston Parish, LA

Mitigation Bank, East Baton Rouge Parish, LA

Elmer's Island, Jefferson Parish, LA

Former Wabash Bridge Piers, Pittsburgh, PA

### Entertainment/Leisure

Dixie Landing Amusement Park, Baton Rouge, LA

Blue Bayou Water Park, Baton Rouge, LA

Proposed Aqualand Water Park, Dayton, TX

Saenger Theatre, New Orleans, LA

Orpheum Theatre, New Orleans, LA

Vina Robles Amphitheatre, Paso Robles, CA

House of Blues, New Orleans, LA

The Oaks Golf Course, Pass Christian, MS

Money Hill Golf Course, Abita Springs, LA

Pelican Pointe Golf Course, Gonzales, LA

Colonial Country Club, Harahan, LA

O'Neal Theatres, Louisiana/Mississippi

Antoine's Restaurant, New Orleans, LA

AMC Theatres, Metairie/Hammond/Houma, LA

Southern Belle Casino, St. Francisville, LA

Bayou Marina, Casino and Hotel, Chalmette, LA

Lucky Deuces Casino, Greensburg, LA

Lafitte Harbor Marina, Lafitte, LA

Vinoi Marina, New Orleans, LA

River Highlands Marina, Ascension Parish, LA

Kemper Marina, Gulfport, MS

C and M Marina, Lafitte, LA

Cypress Cove Marina, Venice, LA

Pelican Pointe Marina, New Orleans, LA

Starlight Movie Studios, New Orleans, LA

ORMAQ Movie Studios, Jackson, LA

Proposed Legacy Arena, Phoenix, AZ

**QUALIFICATIONS OF THE APPRAISER (Continued)**

**ARTHUR L. SCHWERTZ, MAI**

<u>**Partial List of Appraisal Assignments Completed (Continued**</u>

<u>Subdivisions</u>

Ashton Plantation, Luling, LA

Acadiana Subdivision, Marrero, LA

Acadian Villas, Marrero, LA

The Arbors at English Turn, New Orleans, LA

Plantation Acres, Thibodaux, LA

Woodstone Subdivision, Mandeville, LA

Southlake Villages, Kenner, LA

Village Green Subdivision, Harvey, LA

Oak Island Subdivision, New Orleans, LA