UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| MAGNOLIA ISLAND PLANTATION, L.L.C., ET AL. | CIVIL ACTION NO. 5:18-CV-1526 |
| | DISTRICT JUDGE: S. MAURICE HICKS, JR. |
| V. | |
| | MAG. JUDGE KAYLA D. MCCLUSKY |
| LUCKY FAMILY, L.L.C., ET AL. | JURY TRIAL DEMANDED |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE
TO EXCLUDE TESTIMONY OF ARTHUR L. SCHWERTZ**

**I.   Introduction.**

One issue in this case is whether an appraisal of a note by Patrick Lacour, an appraiser appointed by the Sheriff, artificially diminished the sale price of the note at auction. Plaintiffs provided a Rule 26 expert report from Arthur L. Schwertz, who purports to be an expert on appraisals. However, Mr. Schwertz did not appraise the promissory note in this case, and he has never appraised a promissory note.[1] Moreover, Mr. Schwertz offers no opinion concerning causation, *i.e.*, that had the sheriff or Mr. Lacour done anything that Mr. Schwertz suggests, that Mr. Lacour's appraisal should have been any different.[2] Finally, in his deposition, Mr. Schwertz disclaimed the somewhat expansive opinions contained in his Rule 26 report, testifying: "All I am testifying in my opinion is whether I believe the sheriff's office followed the correct procedure in securing a third-party impartial appraiser."[3]

---

[1] Schwertz Depo. 54:13-21.
[2] Schwertz Depo. 121:25-122:14.
[3] Schwertz Depo. 122:10-14; *see also* Schwertz Depo. 19:11-14 ("I was simply asked to do – to opine on whether correct procedures were followed in obtaining the appraiser – a third appraiser.") and Schwertz Depo. 110:2-6 ("No, because I was asked . . . I'm testifying to whether correct procedures were followed in selecting the third party appraisal and third-party appraiser.").

Mr. Schwertz's opinions do not relate at all to the Lacour appraisal itself, but instead solely to Mr. Lacour and his state of mind. Additionally, Mr. Schwertz's opinions simply reiterate what plaintiff's attorneys can offer in argument. Based on well-established and clear jurisprudence, Mr. Schwertz's opinions should be excluded from evidence at the trial of this matter.

**II.     Applicable law.**

A district court has broad discretion in deciding whether to admit expert opinion testimony. *Fetty v. City of Baton Rouge*, 518 F.Supp.3d 923, 929 (M.D.La. 2021)(*citing General Electric Co.*, 522 U.S. at 138-39, 118 S.Ct. 512.) In addition to *Daubert*, a district court has discretion under Federal Rule of Evidence 702(a) to exclude expert testimony that is unhelpful to the jury. "The focus in deciding whether an expert's opinion should be admitted is Rule 702's standard: whether the testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'"

"[A]n expert may not offer opinions that simply reiterate what 'the lawyer can offer in argument.' *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir.1992); *In re Air Crash at New Orleans*, 795 F.2d 1230, 1233 (5th Cir.1986)" *Fisher v. Halliburton*, 2009 WL 5216949, at *2 (S.D. Tex. Dec. 21, 2009). "'Expert testimony is an improper mechanism for offering legal arguments to the [c]ourt ... [because it] would be unfair to [one party] for the [c]ourt to award [the opposing party]'s legal arguments the elevated stamp of expert.'" *Id.* (*quoting Sparton Corp. v. U.S.*, 77 Fed. Cl. 1 (2007)).

The Fifth Circuit's stance is that "an expert's conclusory assertions regarding a defendant's state of mind are not helpful or admissible." *Marlin v. Moody Nat. Bank, N.A.*, 248 Fed.Appx. 534, 541 (5th Cir.2007). Similarly, "'[a]n expert is in no better position than the jury to evaluate credibility and states of mind' of fact witnesses." *Van Winkle v. Rogers*, __ F.Supp.3d __, 2022

WL 4231013 (W.D.La. 9/13/22), *quoting McBroom v. Payne*, 2011 WL 1356925 (S.D.Miss. 4/11/11). Nor should an expert be permitted to draw conclusions about another's state of mind." *Charalambopoulos v. Grammer*, 2017 WL 930819, at *12 (N.D.Tex. 3/8/17)(*citing United States ex rel. Ruscher v. Omnicare, Inc.*, 2015 WL 5178074, at *6, *11 (S.D. Tex. Sept. 3, 2015) (an expert "will not be permitted to testify about ... intent, motive, or state of mind, as that is typically held to be within the province of the jury"); *Estate of Davis v. City of N. Richland Hills*, 2007 WL 628090, at *3 (N.D. Tex. Feb. 28, 2007) (Means, J.) ("[T]he Court concludes that Hueske's expert opinion regarding Hill's state of mind and Hill's action based on his state of mind crosses the line from assisting the jury in understanding the evidence and determining a fact in issue to evading the province of the jury."). Consequently, "a trial court may strike expert testimony that evaluates a party's state of mind, as that evaluation is within the province of the jury." *Id.*, quoting *Fisher v. Halliburton*, 2009 WL 5216949, at *2 (S.D. Tex. Dec. 21, 2009).

### III.    Opinions of Mr. Schwertz and application of the law to them

Mr. Schwertz has four opinions[4] in his Rule 26 report:

(1)    "[T]he third appraiser has always been engaged directly by the Sheriff's office to maintain being an independent and impartial party to the litigation. In the captioned litigation, based upon my review of the documentation provided, the third appraiser was initially contacted Mr. Shelton through what appears to be a very one-sided document ('Shelton Letter'). Further, Mr. Shelton remained his contact throughout." (hereinafter "Opinion #1);

(2)    "[T]he Sheriff's Office appears to have made no attempt to seek out the names of appraisers from the opposing counsel. This lack of equality would raise 'red flags' with the propriety of the assignment." (hereinafter "Opinion #2);

(3)    "[W]hile it is not uncommon for parties in litigation to try and present their side of a case to an appraiser in a favorable light, the appraiser should insist that both sides are given equal opportunity to present their 'case.'" (hereinafter "Opinion #3); and

---

[4] Arguably, Mr. Schwertz's fourth opinion contains two separate opinions. However, both of the opinions contained in his "fourth opinion" are addressed separately under that heading in this brief.

3

    (4)    The appraiser violated two tenets of the AICPA Code of Professional Conduct, namely (a) the standard that requires objectivity, and (b) the standard that deals with agreement regarding valuation approaches and methods. (hereinafter "Opinion #4).

Notably, Mr. Schwertz offers no opinion that references Mr. Lacour's appraisal. Instead, his opinions merely relate to the procedure used to procure the appraisal and speculate that Mr. Lacour was somehow biased, attributing a state of mind to Mr. Lacour. Mr. Schwertz's opinions are improper and will not aid the jury.

**Mr. Schwertz's Opinion #1.** Mr. Schwertz's Opinion #1 – that Mr. Lacour was first contacted by Mr. Shelton and that Mr. Shelton maintained contact with Mr. Lacour – is not an opinion, but simply a recitation of what Mr. Schwertz believes the facts to be. Having Mr. Schwertz testify to these "facts," without any firsthand knowledge would not be helpful to the jury. Moreover, Mr. Schwertz does not identify any standard, either in the law or in the appraisal industry, that would prevent Mr. Shelton from contacting and/or remaining in contact with Mr. Lacour, or that would prevent Mr. Lacour from conducting the appraisal having received such contact. Further, plaintiffs' counsel is fully capable of arguing to the jury that Mr. Shelton's contact with Mr. Lacour was somehow improper if there is evidence to support such a position.

Perhaps most importantly, Mr. Schwertz does not offer any opinion as to *how* this purportedly improper contact influenced or affected the appraisal, or how the appraisal or sale would have (or might have) been different. Mr. Schwertz's Opinion #1 would not aid the jury.

**Mr. Schwertz's Opinion # 2.** Mr. Schwertz's Opinion #2 – that the Sheriff's office made no attempt to get appraisers' names from opposing counsel and that "[t]his lack of equality would raise 'red flags' with the propriety of the assignment" – likewise offers nothing useful to the jury.

<u>First</u>, like his Opinion #1, Mr. Schwertz identifies no applicable standard, either in the law or in the industry, that would require the Sheriff to obtain appraisers' names from opposing

4

counsel. In addition, Mr. Schwertz is wholly unqualified to opine on what procedures the sheriff in this case (or any sheriff) should have followed. Mr. Schwertz testified:[5]

> Q. Do you know of any law or standard that says that a sheriff is obligated to seek out the names of appraisers from both sides before they appoint a third-party appraiser?
>
> A. I don't know law. I just know the way the local sheriffs in South Louisiana have done it.

Mr. Schwertz also testified:[6]

> Q. Okay. Okay, I got you. Have you had any specific training or gone to any seminars concerning sheriff sales or collections of judgments?
>
> A. I have only done work for various sheriff departments.
>
> Q. Okay. But you've never had any kind of training or seminar on that?
>
> A. Rephrase the question. Seminar as to what?
>
> Q. As to the process of sheriff sales or the process of collection of judgments?
>
> A. No, I have not.

Mr. Schwertz went on to admit that (1) he only has experience dealing with six Louisiana sheriffs,[7] (2) he has never dealt with any north Louisiana sheriffs,[8] (3) he had never been to any meeting of the Louisiana Sheriff's Association,[9] and (4) he had never been to any conferences or seminars conducted with the Louisiana Sheriff's Seminar.[10] Because Mr. Schwertz is unfamiliar with any appropriate standard, he cannot provide an opinion to the jury that the sheriff (or anyone else) violated any standard.

---

[5] *Schwertz Depo*. 56:4-11.
[6] Schwertz Depo. 33:8-19.
[7] Schwertz Depo. 56:14-16.
[8] Schwertz Depo. 56:17-18.
[9] Schwertz Depo. 56:19-21.
[10] Schwertz Depo. 56:22-57:1.

Second, while Mr. Schwertz asserts that not getting appraisers' names from opposing counsel would "raise 'red flags,'" Mr. Schwertz fails to define the term "red flags" or identify how the raising of any "red flag" caused Mr. Lacour's appraisal to be improper. Put another way, Mr. Schwertz is unable to provide any opinion regarding causation, *i.e.*, how these "red flags" affected the appraisal at issue in this case or the outcome of the sheriff's sale.

Third, plaintiffs' counsel can adequately make any proper argument without the testimony of Mr. Schwertz. Thus, this opinion offers nothing helpful to the jury and would be improper.

**Mr. Schwertz's Opinion #3.** Mr. Schwertz's Opinion #3 – that an appraiser "should insist that both sides are given equal opportunity to present their 'case,'" falters for similar reasons. First, Mr. Schwertz identifies no law or industry standard that requires (or even suggests) that an appraiser is required to seek or receive information or argument from any party. In fact, as discussed above, Mr. Schwertz disclaims any knowledge of any applicable law or standard.

Second, prior to the appraisal at issue, plaintiffs' counsel was provided notice that Mr. Lacour was appointed by the Sheriff as the third appraiser; at that point, plaintiffs' counsel was free to provide to Mr. Lacour whatever information that they desired Mr. Lacour to have. Mr. Schwertz concedes as much:[11]

> Q. All right. If her [Ms. Lollar's] attorneys knew about that, could her attorneys have reached out to Mr. Lacour?
>
> A. I would think so.
>
> Q. Do you know whether they did?
>
> A. I have no clue.
>
> Q. Okay. Do you think they should have?
>
> A. That is an opinion for attorneys to decide among themselves.

---

[11] Schwertz Depo. 46:14-22.

6

<u>Third</u>, an appraiser is not a tribunal, and while parties are free to provide information to an appraiser, the appraiser is entitled to exercise his discretion in deciding what information to seek or whether the information that has been provided to him is material to the appraisal.

<u>Fourth</u>, Mr. Schwertz's Opinion #3 does not contain any element of causation. In other words, Mr. Schwertz fails to opine how Mr. Lacour's purported failure to "insist that both sides are given equal opportunity to present 'their case'" affected the appraisal or caused plaintiffs any harm in this case. In fact, Mr. Schwertz has admitted that he has no opinion relating to causation.[12]

<u>Finally</u>, Mr. Schwertz's Opinion #3 is simply argument that plaintiffs' counsel can make if supported by the evidence, without Mr. Schwertz's trial testimony. Thus, Mr. Schwertz's opinion #3 should be excluded.

**Mr. Schwertz's Opinion #4.** Mr. Schwertz's Opinion #4 – that Mr. Lacour violated two tenets of the AICPA Code of Professional Conduct – would be unhelpful to the jury for several reasons.

<u>First</u>, as it relates to Mr. Schwertz's opinion that Mr. Lacour violated the AICPA Code of Professional Conduct Statement on Standards for Valuation Services ("SSVS"), relating to objectivity, it is clear that Mr. Schwertz is attempting to provide improper expert testimony regarding Mr. Lacour's state of mind. In fact, the very provision of the SSVS cited by Mr. Schwertz makes that abundantly clear: It reads: "The AICPA Code of Professional Conduct requires objectivity in the performance of all professional services, including valuation engagements. ***Objectivity is a state of mind.***" (emphasis added). Mr. Schwertz agrees with that statement in his Rule 26 report:[13]

---

[12] Schwertz Depo. 121:13-122:14.
[13] Schwertz Depo. 29:3-9; Exhibit 1.

7

> Q. Paragraph 14 there, second line, you quote that standard saying (as read): "Objectivity is a state of mind." Okay?
>
> A. Okay.
>
> Q. Do you agree with that or disagree with that?
>
> A. In regards to this, yes.

Mr. Schwertz also testified that he is not qualified to make a statement as to Mr. Lacour's state of mind:[14]

> Q. Okay. You're not qualified to make a statement as to his state of mind?
>
> A. His state of mind, whether he's an honest individual or a crook that sells river boat licenses, I have no idea one way or the other.
>
> Q. Yeah. You have no ability to opine as to that?
>
> A. No.

To the extent that Mr. Schwertz seeks to testify regarding Mr. Lacour's objectivity (or lack thereof), Mr. Schwertz is clearly attempting to provide testimony regarding Mr. Lacour's state of mind, which he admittedly has no ability to do.

Second, Mr. Schwertz's opinion that Mr. Lacour violated the AICPA Code of Professional Conduct because "it does not seem likely that any agreement was reached on the valuation approaches . . . as the Sheriff's office apparently had no contact with Mr. Lacour until after the valuation had been delivered," should likewise be excluded for a number of reasons:

(a) Mr. Schwertz's opinion is based on pure speculation. The phrase "it does not seem likely" does not refer to an unlikely outcome, but instead is an interpretation of the facts by Mr. Schwertz. Whether the Sheriff's office and Mr. Lacour agreed on a valuation approach (if relevant) is a pure fact question for the jury, and Mr. Schwertz provides no basis for his factual conclusion

---

[14] Schwertz Depo. 75:1-76:5.

other than his belief that the Sheriff's office and Mr. Lacour did not communicate with each other prior to the valuation. This is purely speculative.

(b) Mr. Schwertz testified that he is not an expert as to what valuation method should be used. Mr. Schwertz testified: "I'm not going to testify as to the valuation method used for a promissory note because I've never done one. I'm not an expert."[15] Mr. Schwertz also testified that he had no opinion whether the valuation method applied by Mr. Dean and Mr. Lacour were different or improper:[16]

> Q. . . . Do you know, and you may not know, or do you have any opinion of whether the valuation method applied by Mr. Dean and Mr. Lacour were different?
>
> A. I have not looked into the valuation methods of either.
>
> Q. Okay.
>
> A. Because, once again, I'm not concerned with the valuation.
>
> Q. And you can't opine that either one of them's valuation method was an improper method?
>
> A. I can neither opine if they were proper or not proper.

Third, Mr. Schwertz provides no opinion on causation, *i.e.*, how the appraisal might have been different *even if the Sheriff's office and Mr. Lacour did not agree on the valuation approach.* In fact, Mr. Schwertz specifically disclaims any opinion regarding causation:[17]

> Q. In appraiser speak. Is there anything in your opinion concerning Mr. Lacour's actions that you can say, yes, if he would have done X different then his number would have been a different number than he wrote down on the appraisement sheet?
>
> A. No.

---

[15] Schwertz Depo, 113:10-12.
[16] Schwertz Depo, 120:14-121:3.
[17] Schwertz Depo. 121:25-122:14.

> Q. Okay. You can't say that there's any difference whatsoever in what would have, could have, or should have been?
>
> A. No. All I am testifying in my opinion is whether I believe the sheriff's office followed the correct procedure in – or the standard of conduct in securing a third-party impartial appraiser.

In other words, either Mr. Lacour used an appropriate and proper valuation approach, or he did not. That is an issue that plaintiffs' lawyers can properly raise and attempt to prove. However, by his own admission, Mr. Schwertz is unable to provide any opinion regarding the appropriate valuation method for a promissory note.

If, based on the evidence presented at trial, the jury is convinced that Mr. Lacour used an improper valuation approach and this affected the outcome, then the jury can so find, or vice versa. However, whether there was an actual agreement between the Sheriff's office and Mr. Lacour regarding the valuation method prior to the appraisal has no bearing on the validity of the appraisal itself. Put another way, the appraisal and any effect thereof either stands or falls on its own merits and Mr. Schwertz's opinion regarding purported violations of the AICPA Code of Professional Conduct by Mr. Lacour has no bearing on that. For those reasons, Mr. Schwertz's Opinion #4 should be excluded from evidence.

**IV.     Conclusion.**

None of the opinions offered by Mr. Schwertz in his Rule 26 report are properly admissible. Accordingly, movers respectfully pray that all of the opinions contained in Mr. Schwertz's Rule 26 report be deemed inadmissible.

Respectfully submitted,

AYRES, SHELTON, WILLIAMS,
BENSON & PAINE, LLC


By: /s/ Curtis R. Shelton
      Curtis R. Shelton
La. Bar Roll No. 17137
333 Texas Street, Suite 1400 (71101)
P. O. Box 1764
Shreveport, LA 71166
Telephone: (318) 227-3500
Facsimile: (318) 227-3806
Email: curtisshelton@arklatexlaw.com

WIENER, WEISS & MADISON
A Professional Corporation
   R. Joseph Naus, #17074
   Marjorie Frazier, #32991
330 Marshall Street, Suite 1000 (71101)
P. O. Box 21990
Shreveport, LA 71120-1990
Telephone: (318) 226-9100
Facsimile: (318) 424-5128
E-mail: rjnaus@wwmlaw.com
E-mail mfrazier@wwmlaw.com

ATTORNEYS FOR W. A. LUCKY, III