UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| MAGNOLIA ISLAND PLANTATION L.L.C. and BARBARA MARIE CAREY LOLLAR <br> Plaintiffs <br><br> VS <br><br> LUCKY FAMILY, L.L.C., W.A. LUCKY, III, and BOSSIER PARISH SHERIFF JULIAN C. WHITTINGTON <br><br><br> Defendants | § § § § § § § § § § § § § § § | CIVIL ACTION NO: 5:18-cv-01526 <br><br><br><br> CHIEF JUDGE S. MAURICE HICKS, JR. <br><br><br><br><br> MAGISTRATE JUDGE KAYLA D. McCLUSKY <br><br> Jury Trial Demanded |

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED IN SUPPORT OF AMENDED AND
CORRECTED MOTION FOR PARTIAL SUMMARY JUDGMENT**

NOW INTO COURT, through undersigned counsel, comes BARBARA MARIE CAREY LOLLAR ("Mrs. Lollar") who, in compliance with Rule 56.1 of the Uniform Rules for the District Court, and for purposes of her Motion for Partial Summary Judgment, sets forth the following statement of material facts as to which there is no genuine issue to be tried, to-wit:

**Lucky I and Lucky II and Note Seizure:**

1.

Mrs. Lollar sold a tract of immovable property to her husband, Ronald Lollar on November 2, 2017, whereby part of the consideration for the sale was a promissory note, dated November 2, 2017, made by Mr. Lollar as the purchaser in favor of Mrs. Lollar as the seller (the "Note"). Mr.

1

Lollar subsequently conveyed the same property into Magnolia Island Plantation, L.L.C. ("Magnolia") which assumed the obligations as payor of the Note.[1]

2.

On January 5, 2018, a monetary judgment in the amount of $1,799,450.52 was rendered in favor of Defendant W. A. Lucky, III and against Mrs. Lollar in the matter of *W.A. Lucky, III v. Barbara Carr Lollar*, No. 127,573, 26th Judicial District Court, Bossier Parish, Louisiana ("Lucky I").[2]

3.

Mrs. Lollar filed a motion for devolutive appeal of the Lucky I Judgment. The Lucky I Judgment was reversed in its entirety by the Louisiana Second Circuit Court of Appeal on January 16, 2019.[3] W.A. Lucky, III's writ to the Louisiana Supreme Court was thereafter denied on April 8, 2019.[4]

4.

W.A. Lucky, III filed two separate lis pendens which described immovable property owned by Magnolia, being the same property, which served as collateral for the Note.[5] The first lis pendens was filed by Mr. Lucky in December of 2017, prior to any judgment being rendered in Lucky I. The second lis pendens was filed in February of 2018.

---

[1] See Rec. Doc. 186-1 for a copy of the November 2, 2017 promissory note and Rec. Doc. 51-2 for a copy of the November 2, 2017 Credit Sale Deed. See Rec. Doc. 51-3 for a copy of the Exchange Deed by and between Mr. Lollar and Magnolia.

[2] See Rec. Doc. 186-4 for a copy of the Lucky I Judgment.

[3] See Rec. Doc.186-5 for a copy of the Judgment reversing the trial court ruling in Lucky I.

[4] See Rec. Doc. 186-6 for a copy of the referenced La. Supreme Court's writ denial.

[5] See Rec. Doc. 186-7 for a copy of the 2017 lis pendens and Rec. Doc 51-8 for a copy of the 2018 lis pendens.

5.

Mr. Lucky also filed a new lawsuit against Mrs. Lollar and Magnolia in February of 2018, titled *W.A. Lucky, III v. Barbara Carr Lollar*, No. 155,382, 26th Judicial District Court, Bossier Parish, Louisiana ("Lucky II").[6]  The Lucky II lawsuit contained Mr. Lucky's allegations against Mrs. Lollar regarding the November 2, 2017 transactions, including that the November 2, 2017 Credit Sale Deed and Exchange Deed were "null, void, and of no effect whatsoever as simulations" and requesting that the November 2, 2017 transactions be rescinded and/or revoked.

6.

In May of 2018, Mr. Lucky sought seizure of Mrs. Lollar's Note based upon the monetary judgment from Lucky I which was then on appeal.[7]

**Appraisal of the Note:**

7.

The Note was to be sold by the Sheriff with the benefit of appraisal.[8]

8.

Both the judgment creditor (Mr. Lucky) and the debtor/appellant (Mrs. Lollar) provided respective appraisals to the Sheriff's office in regards to the potential sale of the Note.[9]

9.

Based on the disparity in value between the two appraisals submitted, the Sheriff was

---

[6] See rec. Doc. 71-2 for a copy of the Lucky II petition.

[7] See Rec. Doc. 70, at paragraph 19, in which Mr. Lucky's Answer to Mrs. Lollar's Amended and Restated Complaint admits to seeking seizure of the Note.

[8] See Rec. Doc. 186-10 for *Notice of Seizure* and *Notice to Appoint Appraiser*.

[9] See Rec. Doc 186-11 for appraisal made by Chad Garland on behalf of Mr. Lucky and Rec. Doc.1861-12 for appraisal made by John Dean on behalf of Mrs. Lollar.

required, under La. R.S. 13:4365 to appoint a third appraiser whose decision would be final.

10.

The Sheriff's office contacted the judgment creditor's counsel, Curtis Shelton, for assistance in regards to a third appraisal.[10]

11.

The Sheriff's office did not contact the debtor or the debtor's counsel for any input regarding a third appraiser.[11]

12.

The judgment creditor's counsel, Mr. Shelton, proceeded to select a third appraiser, Patrick Lacour, who was also contracted with Mr. Shelton at the time in relation to a separate client.[12]

13.

The Sheriff's office had no direct contact with Mr. Lacour until after he had completed his appraisal of the Note.[13]

14.

The Sheriff's office took no active steps to appoint Mr. Lacour as a third appraiser.[14]

15.

---

[10] See Rec. Doc. 71-3 for email from Sheriff's office to Curtis Shelton regarding the third appraiser.

[11] **Exhibit C**, deposition of Kim Flournoy, p. 86-88; **Exhibit M,** excerpts from deposition of Jean Horne.

[12] See Rec. Doc. 71-4 for excerpt from deposition wherein Mr. Lacour testifies that he was already working with Mr. Shelton in another matter when Mr. Shelton contacted him to perform an appraisal on the Note.

[13] **Exhibit K**, excerpts from deposition of Patrick Lacour.

[14] **Exhibit C**, deposition of Kim Flournoy, p. 102, 110, 114; **Exhibit E**, affidavit of Andrew D. Martin; **Exhibit I** and **Exhibit G**, Sheriff's discovery responses; **Exhibit B, in globo,** Sheriff document production; **Exhibit H,** deposition exhibits; **Exhibit M**, excerpts from deposition of Jean Horne; **Exhibit F,** excerpts from deposition of David Lee Miller.

The Sheriff's office employee who handled the file for the seizure and sale of the Note, Kimberly Flournoy, has admitted that she did not make Mr. Lacour the third appraiser.[15]

16.

Ms. Flournoy has admitted that she provided no information to Mr. Lacour.[16]

17.

Ms. Flournoy has admitted that she did not contact Mr. Lacour until after he was already made the third appraiser.[17]

18.

No other person at the Sheriff's office claims to have appointed Mr. Lacour.[18]

19.

The Sheriff's office did not appoint Mr. Lacour as the third appraiser, despite the mandate of La. R.S. 13:4365.[19]

20.

On October 18th, 2018, at 10:43 PM, Mr. Shelton told Mr. Lacour "Patrick, looks like you're on deck. When do you think you can get an appraisal done? Can you actually go by the Sheriff's office in Benton? You will be paid for all your time and expenses. I am working for them to understand that your appraisal for the Sheriff would be timely on Monday or Tuesday." Mr. Shelton did not copy the Sheriff's office with this communication. Mr. Shelton did not inform Ms.

---

[15] **Exhibit C**, deposition of Kim Flournoy, p. 110, 114
[16] *Id.*, p. 139-141
[17] *Id.*, p. 110, 114, 139, 143.
[18] **Exhibit M**, excerpts from deposition of Jean Horne; **Exhibit N,** excerpts from deposition of David Lee Miller.
[19] **Exhibit C**, Deposition of Kim Flournoy, p. 110-114; **Exhibit B**, in globo, Sheriff's document production and **Exhibit G**, Sheriff's discovery responses.

Lollar or her counsel that he was "working for" the Sheriff's office at this time.[20]

21.

Mr. Lacour performed all work on the appraisal prior to the speaking with anyone at the Sheriff's office.[21]

22.

Mr. Lacour's eventual appraisal was based entirely on information provided by Mr. Shelton with a detailed letter dated October 10, 2018. This letter was one-sided and presented a decidedly slanted perspective of the events at issue and included instructions on how to appraise the Note.[22]

23.

Mr. Lacour's appraisal was substantively completed on October 19th, 2018 and signed on October 22, 2018.[23]

24.

Mr. Shelton drafted an "Ex Parte Motion to Fix Appraisers' Fees" on behalf of Mr. Lucky and the Sheriff and submitted the same on October 12, 2018. This motion stated that the "seizing creditor shall be required to advance the costs of any appraiser who is required to be appointed by the Sheriff." However, the Order on that Motion was signed on October 22, 2018.[24]

**Sheriff's Sale of the Note:**

---

[20] **Exhibit J,** Discovery responses of W.A. Lucky, IIII.

[21] **Exhibit K**, excerpts from deposition of Patrick Lacour.

[22] **Exhibit K,** excerpts from deposition of Patrick Lacour; See also, Rec. Doc. 80-2, p. 53. See. Rec. Doc. 186-13 for a copy of Mr. Shelton's October 10, 2018 letter to Mr. Lacour.

[23] See **Exhibit K,** excerpts from deposition of Patrick Lacour and exhibits thereto; see also, Rec. Doc. 186-14.

[24] **Exhibit H** and **Exhibit B**, at BSO p.62-67; **Exhibit L** (signed Order is October 22, 2018).

24.

Prior to the sale of the Note, Mr. Lucky, individually and through his counsel, provided his family's, LLC, Lucky Family, LLC, with information on the Note sale.

25.

Mr. Lucky's wife, Vickie Talley Lucky, is a member and an acting Manager of the Lucky Family, L.L.C.[25]

26.

The Sheriff's office conducted a Sheriffs Sale on October 24, 2018 at which the Note was presented for sale at only 6% of its face value.[26]

27.

Vickie Lucky was in attendance at the October 24, 2018 Sheriff's Sale with Mr. Lucky, where Lucky Family, L.L.C. was the only bidder for the Note. Lucky Family, L.L.C. obtained the Note for $105,000, only 6% of its face value.[27]

**Representations of Sheriff's Counsel regarding Flournoy**:

28.

Counsel for Sheriff informed counsel for Plaintiffs on November 13, 2019 that:

> I am at the Sheriff's office and I just spoke with Kim Flournoy about the topics listed. **She doesn't know anything or remember anything and her answer is going to be she did what supervisor Jean Horne told her.** Therefore, in the interest of efficiency I believe you will have better luck going straight to Jean Horne. Ms. Horne is available any time next week (but not tomorrow) to answer questions regarding the topics listed in your notice. Although she may not remember the details she is the person with most knowledge of the areas in your

---

[25]  See Rec. Doc. 11-2 for copy of La. Secretary State listing for Lucky Family, L.L.C., printed on February 1, 2019.

[26]  See Rec. Doc. 186-15 for a copy of the Sheriff's Proces Verbal of Sale.

[27]  *Id*.

letter.[28]

29.

On February 3, 2020, Ms. Flournoy signed an affidavit in support of a motion for summary judgment filed by the Sheriff, swearing personal knowledge as to:

1) The appraisal due dates for the Note;

2) The Sale date of the Note;

3) The notice provided to the parties in relation to the sale of the Note;

4) Her instructions regarding the procedure for appraisal of the Note;

5) Her conversations with Jean Horne, her supervisor;

6) Her conversations with James Southerland, counsel for the Sheriff;

7) Mr. Southerland's recommendation for a contact regarding a third appraiser;

8) The existence and substance of her communications with Curtis Shelton;

9) The customs of the Sheriff's office in relation to sales proceedings;

10) Her conversations with Mr. Lacour;

11) Her signing of the appraisment sheet featuring Mr. Lacour's signature.

At no point did Ms. Flournoy testify in her affidavit that she does not "know anything or remember anything."[29] To the contrary, she swore she remembered many key details of the events at issue.

30.

At her 2022 deposition, Ms. Flournoy claimed to no longer remember many of the things about which she testified in her 2020 affidavit.[30]

---

[28] **Exhibit A**, email exchange; **Exhibit D**, affidavit of J. Davis Powell at ₱3 and 4; **Exhibit G,** excerpts from Sheriff's discovery requests.
[29] Rec. Doc. 123-2, Affidavit of Kimberly Flournoy.
[30] **Exhibit C**, Deposition of Kimberly Flournoy, p. 48, 79, 60.

        Respectfully submitted by,

        _____/s/ Andrew D, Martin_____
        Randall S. Davidson, LSBA No. 4715, TA
        J. Davis Powell, LSBA 33631
        Andrew D. Martin, LSBA 34947
        DAVIDSON SUMMERS, APLC
        330 Marshall Street, Suite 1114
        Shreveport, Louisiana 71101
        Ph: (318) 424-4342 | (318) 226-0168
        E:    rsdav@davidsonsummers.com
                dpowell@davidsonsummers.com
                dmartin@davidsonsummers.com
        ***Counsel for Barbara Marie Carey Lollar***

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a copy of the above and foregoing was filed electronically with the Clerk of Court using the CM/ECF filing system, and notice of the same will be sent to all counsel of record by operation of the court's electronic noticing system.

    Shreveport, Louisiana, on this 12th day of November, 2022.

                _____*s/ Andrew D. Martin*_____
                        OF COUNSEL