UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| MAGNOLIA ISLAND PLANTATION | § | CIVIL ACTION NO: 5:18-cv-01526 |
| L.L.C. and BARBARA MARIE CAREY | § | |
| LOLLAR | § | |
|     Plaintiffs | § | |
| | § | |
| VS | § | CHIEF JUDGE S. MAURICE HICKS, JR. |
| | § | |
| LUCKY FAMILY, L.L.C., W.A. LUCKY, | § | |
| III, and BOSSIER PARISH SHERIFF | § | |
| JULIAN C. WHITTINGTON | § | |
| | § | MAGISTRATE JUDGE KAYLA D. McCLUSKY |
| | | |
|     Defendants | § | Jury Trial Demanded |

**MEMORANDUM IN SUPPORT OF BARBARA LOLLAR'S
AMENDED AND CORRECTED MOTION FOR PARTIAL SUMMARY JUUDGMENT**

RESPECTFULLY SUBMITTED:

**DAVIDSON SUMMERS, APLC**
Randall S. Davidson, LSBA No. 4715, T.A.
J. Davis Powell, LSBA 33631
Andrew D. Martin, LSBA No. 34947
330 Marshall Street, Suite 1114
Shreveport, Louisiana 71101
Ph: (318) 424-4342; Fax: (318) 226-0168
Email: rsdav@davidsonsummers.com
      dpowell@davisonsommers.com
      dmartin@davidsonsummers.com
*Counsel for Barbara Marie Carey Lollar*

## TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS ........................................................................................................ ii

TABLE OF AUTHORITIES ................................................................................................. iii

I.      INTRODUCTION ...................................................................................................1

II.     ARGUMENT ..........................................................................................................2

        A.      The Sheriff's Office did not appoint a third appraiser ...........................2

                1.      The Sheriff's Office employee handling the seizure and sale of the Note did not appoint a third appraiser ..............................................2
                2.      No other Sheriff's office employee appointed a third appraiser ...................8
                3.      Mr. Lacour's testimony confirms Ms. Flournoy's admission that she did not appoint him .............................................................................9
                4.       Fact questions and legal questions ..........................................................12
                5.      Timeline of relevant facts ..........................................................................15

        B.      The Court should order an annulment of the Sheriff's sale ...............................20

        C.       The Sheriff's Office has prevented timely and full presentation of these facts.20

III.    CONCLUSION......................................................................................................25

CERTIFICATE OF SERVICE .............................................................................................26

# TABLE OF AUTHORITIES

**PAGES**

**STATUTES:**

Federal Rule of Civil Procedure 30 ........................................................................23, 24

La. R.S. 13:4365 ...........................................................................1,  3, 12, 13, 14, 20, 25

**CASES:**

*Mealy v. Gautreaux*, No. CV 16-716-JWD-RLB, 2019 WL 3216516
(M.D. La. July 16, 2019)...............................................................................................25

*Todd v. Precision Boilers, Inc*., No. CIV.A. 07-0112, 2008 WL 4722338 (W.D. La. Oct. 24, 2008)
........................................................................................................................................25

*Storer v. Crown Cork & Seal Co*., No. CV 14-2488, 2017 WL 424890 (W.D. La. Jan. 31, 2017)
.................................................................................................................................23, 24

---

**MEMORANDUM IN SUPPORT OF BARBARA LOLLAR'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

## I. INTRODUCTION

Q: So, who made Mr. Lacour the third appraiser?
A (Kimberly Flournoy): I do not know that.
**Q:  Was it you?**
A: **No**. I do not --
Q:  Somebody else?
A: I couldn't answer that.[1]

      In December of 2020, this Court held that questions of material fact precluded summary judgment on whether the Sheriff's office properly appointed a third appraiser under La. R.S. 13:4365.[2]  However, evidence obtained since then answers any relevant fact questions: the Sheriff's office employee who handled the seizure and sale of the Note has admitted at deposition that *she* did not appoint Mr. Patrick Lacour as a third appraiser. Instead, that employee, Ms. Kimberly Flournoy, believed that Mr. Lacour was already the designated third appraiser even before she communicated with him. No other Sheriff's office employee claims to have communicated with or appointed Mr. Lacour. As the Court has previously recognized, Mr. Lacour admits to "using only the information provided by [Curtis Shelton, Mr. Lucky's attorney] in reaching his appraisal amount."[3] Mr. Lacour further acknowledges to having completed his appraisal prior to speaking with any Sheriff's office employee. There is no practical or theoretical sense in which the Sheriff's office appointed Mr. Lacour, despite La. R.S. 13:4365's mandate that the "sheriff shall appoint a third appraiser" when the appraisals of the first two appraisers exceed

---

[1] **Exhibit C**, attached hereto, Deposition of Kim Flournoy, at p. 114, l.2-7.
[2] Rec. Doc. 158, p. 12
[3] Rec. Doc. 158, p. 11.

the statutory averaging limits. Thus, the new fact evidence confirms that the Sheriff and his office failed to comply with the statutory sale requirements. Annulment of the sale is the appropriate remedy.[4]

Plaintiffs wish they could have presented Ms. Flournoy's testimony three years ago, as part of their original motion for summary judgment on this topic. However, the Sheriff prevented a full and timely presentation of Ms. Flournoy's testimony. In November of 2019, counsel for the Sheriff informed counsel for Plaintiffs that they should not conduct a deposition of Ms. Flournoy because she did "not know anything or remember anything" at that time.[5] Regrettably, Plaintiffs' counsel trusted this representation. Less than three months later, Ms. Flournoy remembered enough about the events in question to execute a four-page affidavit in support of the Sheriff's own motion for summary judgment.[6] Under the then-effective scheduling order, Plaintiffs were unable to subsequently examine Ms. Flournoy about these unexpected recollections. Thankfully, this Court recently re-opened the discovery deadlines in this matter, and Ms. Flournoy straightaway admitted that she did not make Mr. Lacour the third appraiser at her October 26, 2022 deposition. This testimony would have been valuable to the Court three years ago. The Sheriff's office has wasted years of this Court's time by preventing a full, fair presentation of facts.

## II. ARGUMENT

**A. The Sheriff's Office did not appoint a third appraiser**

<u>1. The Sheriff's office employee handling the seizure and sale of the Note did not appoint a third appraiser</u>

---

[4] See, Rec. Doc. 158, p.9-10.

[5] **Exhibit A, attached hereto**, email exchange between Julianna Parks and Davis Powell; **Exhibit D** for Affidavit of J. Davis Powell.

[6] Rec. Doc. 123-2.

Kimberly Flournoy was the Sheriff's employee tasked with administering the seizure and sale process for the Note. This was her file because the underlying suit caption (C-127573) ended with an odd number, and Ms. Flournoy was in charge of administering all odd-numbered case files. [7] The sale occurred on October 24, 2018.[8] Under La. R.S. 13:4365, a third appraiser is required only when the valuations of the first two appraisers exceed the statutory averaging limits. Mr. Lucky's appraiser, Chad Garland, submitted his appraisment sheet on October 12, 2018.[9] Then, on October 18, 2022, Mrs. Lollar's designated appraiser, John Dean, turned in his own.[10] It was only at this point that the Sheriff's office was required– or permitted– to appoint a third appraiser. La. R.S. 13:4365(C); Rec. Doc. 158, p. 5.

Undersigned deposed Ms. Flournoy on October 26, 2022. In that deposition, she reviewed an email from herself to Mr. Lucky's counsel, Curtis Shelton, dated October 18, 2018.[11] There, she asked Mr. Shelton if "Mr. Lacour going to be able to come by tomorrow and sign the Appraiser form? We need to have it ASAP." Ms. Flournoy stated at the deposition that she believed that Mr. Lacour was already the third appraiser on the day she sent that email:

---

[7] **Exhibit C**, attached hereto, Deposition of Kim Flournoy, p. 28, l. 21-p.29, l. 3. Ms. Flournoy has recently answered discovery requests and states she "has in her possession no documents of her own. The only documents of which she is aware are those in the record of the foreclosure." Rec. Doc. 197, Flournoy Responses to Discovery Requests, page 9.

[8] Rec. Doc. 158, p. 6.

[9] **Exhibit B, in globo,** attached hereto, Bossier Sheriff's Office files, at BSO 078; These documents were produced by the Bossier Sheriff's Office in response to discovery requests from Plaintiffs See**, Exhibit G** hereto and **Exhibit E,** Affidavit of Andrew D. Martin for authentication. According to the Sheriff's Office, "all written communication" pertaining to the Note, the Sale, and/or the appraisals of the Note "has been produced." See, **Exhibit G**.

[10] Rec. Doc. 158, p. 5, referencing Rec. Doc. 96-1, at 7.

[11] **Exhibit B**, at BSO 85-86, **Exhibit H**, at deposition exhibit #23; **Exhibit C**, deposition of Kim Flournoy at p. 109-110. See, **Exhibit G** and **Exhibit I** for discovery responses. See **Exhibit H**. The email in question is included therewith as deposition exhibit 23.

**Q**: Why did you ask is Mr. Lacour going to be able to come by tomorrow and sign the appraiser form?
**A**: I guess I'm sorry, are you asking like --
**Q**: On October 18th, did you know who he was?
**A**:  He --
       MR. LANGLEY: Yes or no.
**A**: Yes.
**Q**: Okay. Who was it?
**A**: He was a third party appraiser. I think that was his title maybe.
**Q**: And that's on October 18, 2018?
**A**: That's correct.[12]

But she knew that *she* had not appointed Mr. Lacour:

**Q**: If Mr. Lacour was the third appraiser at this point, October 18, 2018, that means you've already got the two; right?
**A**: Theoretically.
**Q**: Yeah.
**A**: To have three, yes, you would.
**Q**: So, who made Mr. Lacour the third appraiser?
**A**: I do not know that.
**Q**: Was it you?
**A**:  No.[13]

After confirming she did not appoint Mr. Lacour, she further explained that she could not remember who actually made the appointment:

**Q**: Now, you told me earlier that you did not appoint Mr. Lacour.
**A**: I don't remember –
**Q**: Okay.
**A**: --who appointed the third one. I'm sorry.
**Q**: Okay.
**A**: I don't. [14]

Ms. Flournoy could not recall when she first talked to Mr. Lacour, but that she eventually spoke to him when he was already the third appraiser.[15]

---

[12] **Exhibit C**, Deposition of Kim Flournoy, p.110, l.9-21.
[13] **Exhibit C**, Deposition of Kim Flournoy, p. 113, l.21 – p. 114, l.5.

[14] **Exhibit C**, Deposition of Kim Flournoy, p. 148, l.11-p.149, l.4 (attorney cross-talk regarding speaking objection omitted for ease of reading)

[15] **Exhibit C**, p. 143, l. 9-16.

4

Generally, when a third appraiser in a sale was necessary because of a discrepancy between the first two appraisals, Ms. Flournoy would identify an appraiser from a list kept at the Sheriff's office.[16] In those usual instances, the sheriff's office would pick "whomever was next up" on the list.[17] However, she did not do so in this case and, instead, went to Mr. Southerland, the Sheriff's office in-house lawyer.[18] According to her, this sale process was not normal because it involved a promissory note.[19]

On October 10, 2018, Mr. Shelton sent Mr. Lacour a lengthy letter informing the latter that he might serve as a third appraiser of the Note, making legal arguments about the underlying case(s), and providing him instructions for how to perform such an appraisal (the "Shelton Letter").[20] This was not normal procedure for the appraisal process.[21] Ms. Flournoy was not contemporaneously aware of the existence or contents of the Shelton Letter, as Mr. Shelton did not provide a her a copy.[22] Ms. Flournoy could not recall providing any information at all to Mr. Lacour.[23] This was out of the ordinary for the Sheriff's office, which would generally supply a description of the property to be examined to a third appraiser.[24] Ms. Flournoy cannot now recall

---

[16] *Id.,* p. 17, l.19-p.18, l.9. Unfortunately, Ms. Flournoy knew very little about the legal requirements involved in selecting appraisers, or the reasons for those requirements. Id., p. 16, l. 15-20; p. 17, l. 6-11; p.21, l. 24 – p. 22, l. 22.

[17] *Id.*, p. 20, l.6-9.

[18] *Id.*, p. 78, l. 19-25.

[19] *Id.*, p.129, l. 15-24; p. 130, l. 19-24; p. 78, l. 21-p.79, l.6.

[20] Rec. Doc. 186-13.

[21] **Exhibit M**, deposition of Jean Horne, p. 26, l. 2-10.

[22] **Exhibit C**, Deposition of Kim Flournoy, p. 96, l.1-23.

[23] *Id.,* p. 139, l. 7-9.

[24] **Exhibit C**, Deposition of Kim Flournoy, p.97, l. 11-25.

5

when she first spoke directly with Mr. Lacour.[25] However, she confirmed at deposition that she believed him to have already been appointed as appraiser on the afternoon of October 18, 2022, when she asked Mr. Shelton via email if Mr. Lacour would "be able to come by tomorrow and sign the Appraiser form?"[26] The next morning, Mr. Shelton responded to this email on behalf of Mr. Lacour, stating that

> Mr. Lacour has reported he can have an appraisal by noon Tuesday. I am copying him with this message. Can he perhaps sign the appraiser's oath before a notary in Alexandria and email you a copy and then give you the original with the appraisal? Or is there something else you need him to come sign or do today? If you reply all to this message, Mr. Lacour will also receive it.[27]

The first evidence of a direct contact between Mr. Lacour and Ms. Flournoy (or anyone at the Sheriff's office) came in the late morning of October 19th, when Ms. Flournoy told Mr. Shelton that she had spoken with Mr. Lacour about the latter's plans to sign "the form" the following Monday.[28] For all practical purposes, Mr. Shelton ran the show: he identified Mr. Lacour, served as the sole source of information for the appraisal, communicated on Mr. Lacour's behalf with the Sheriff's office, and declined to so much as copy the Sheriff's office on the Shelton Letter. At deposition, Ms. Flournoy struggled to think of anything she actually did relating to Mr. Lacour. She knows she did not provide Mr. Lacour with any information.[29] The most she could come up with was that she eventually spoke to Mr. Lacour when he was already the third appraiser, and that he had to have eventually come to the Sheriff's office to sign his appraisment sheet:

---

[25] Ms. Flournoy does not recall speaking to Mr. Lacour prior to October 19, 2018. **Exhibit C**, Deposition of Kim Flournoy, p. 118, l. 13-15.

[26] **Exhibit B**, in globo, at BSO 085-86; Deposition of Kim Flournoy, p. 110, l.17-21; p. 112, l. 9-11; p. 114, l.2-7; **Exhibit H**, in globo, at deposition exhibit 23.

[27] **Exhibit B**, in globo, at BSO 085; **Exhibit H**, in globo, at deposition exhibit 23.

[28] **Exhibit B, in globo,** at BSO 84; **Exhibit H**, in globo, at deposition exhibit 23.

[29] **Exhibit C**, Deposition of Kim Flournoy, at p. 139, l. 7-9.

**Q**: You're telling me you don't remember the first time you spoke with Mr. Patrick Lacour?
**A**: No.
**Q**: But you did eventually speak with Mr. Patrick Lacour when he was the third appraiser?
**A**: Yes.[30]

…

**Q:** You do not know what information Mr. Shelton provided there, do you?
**A**:  No, sir.
**Q**: Okay. Still don't?
**A**: No, sir.
**Q**: And you don't recall providing Mr. Lacour with anything?
**A**: Correct.
**Q:** You didn't say to Mr. Shelton on the phone, for instance, hey wait a second, why are you talking to a potential third appraiser?
**A**: No, sir.
**Q**: Okay.· You just kind of let him handle that side of things?
**A**: I don't --
**Q**: You don't what?· You did not let Mr. Shelton handle everything?
**A**: I don't have an answer, I guess. I'm not sure.
**Q**: Okay.
**Q**: What did you handle with relation to the third appraiser?
**A**: The third appraiser just has to sign our sheriff's office form so that would be something that he would have to sign.
**Q**·: That form though you said you didn't send to him because you didn't send him anything?
**A**: They would have to come in and sign it in person.
**Q**: But just to recount, Mr. Shelton identified Mr. Lacour and he communicated directly with him. He provided him information and you did none of those things until your first recollecting [sic] being October 18, 2018?
**A**: I don't know what all -- **I can't answer for other --**
**Q**: You can't answer for anybody else and -- that's right.[31]

Ms. Flournoy was aware that someone else would have to answer questions regarding the putative appointment of Mr. Lacour, because she had not taken any steps in this process. The problem for the Sheriff's office is that no one else there took any steps– the process had been outsourced entirely to Mr. Shelton, allowing Mr. Lucky to select two appraisers.

---

[30] **Exhibit C**, Deposition of Kim Flournoy, at p. 143, l. 9-14.

[31] **Exhibit C**, Deposition of Kim Flournoy, p. 139, l. 2- 15. P.141, l. 5.(attorney crosstalk regarding speaking objections omitted for ease of reading).

2. No other Sheriff's office employee appointed a third appraiser

In support of a prior motion for summary judgment, the Sheriff's Office contended that "Lacour was appointed *by Sheriff Whittington*."[32] But the Sheriff has since denied any personal involvement in this matter at all – his bold position at the Fifth Circuit was essentially that the buck stops with Ms. Flournoy.[33] There is no evidence indicating that the Sheriff himself took any action constitutive of an appointment of Mr. Lacour. Ms. Flournoy did not discuss this file with the Sheriff himself.[34]

Though Ms. Flournoy discussed the seizure and sale of the Note with other Sheriff's Office employees, no one else at that office ever claims to have communicated with Mr. Lacour on the matter. Neither Ms. Horne nor David Miller, the two other Sheriff's office employees deposed in this suit, testified that they discussed the appraisal with Mr. Lacour. When asked if anybody at the sheriff's office contacted Mr. Lacour before he made his appraisal, Ms. Horne stated that she did not know but that Ms. Flournoy would know.[35] Mr. Miller testified similarly.[36]

Ms. Flournoy and Ms. Horne discussed the pending seizure and sale of the Note with counsel for the Sheriff's office, Mr. Southerland.[37] Sadly, Mr. Southerland passed away in November of 2020 and is therefore unable to provide testimony beyond the affidavit he completed earlier that year.[38] He appears to have told Ms. Flournoy to ask Mr. Shelton for a recommendation

---

[32] Rec. Doc. 123-4, ¶8.

[33] See, generally, *Magnolia Island Plantation, L.L.C. v. Whittington*, 29 F.4th 246 (5th Cir. 2022), where Ms. Flournoy is described as "the Sheriff's deputy in charge of the sale."

[34] **Exhibit C**, Deposition of Kim Flournoy, p. 107, l.9-17

[35] **Exhibit M**, excerpts from deposition of Jean Horne, p. 23-26, p. 49.

[36] **Exhibit F,** excerpts from deposition of David Miller, p. 34, l.8-12; p.37, l. 8-13; p. 41, l.12-16.

[37] **Exhibit C**, Deposition of Kim Flournoy, p. 78, l. 17-20.

[38] Rec. Doc. 123-1, Affidavit of James Southerland.

for a third appraiser.[39] At deposition, Ms. Flournoy stated that she never told Mr. Southerland that Mr. Shelton was already involved in the case.[40] She testified that she believes Mr. Southerland was aware of that fact, but cannot explain what led her to that belief – she stated that Mr. Shelton's name was on the writ of fieri facias, for instance, but did not know if Mr. Southerland ever saw that writ.[41] Mr. Southerland's affidavit in this matter does not state that he was aware, at the time, that Mr. Shelton was already involved in the case.[42]

### 3. Mr. Lacour's testimony confirms Ms. Flournoy's admission that she did not appoint him

Mr. Lacour has sworn that he substantively completed his appraisal prior to ever speaking with the Sheriff's office. [43] He has also sworn that he never even looked at the Note in conducting that appraisal; instead, his sole source of information was the "one-sided" and "decidedly slanted" communication from Mr. Shelton.[44] The only Sheriff's office employee with whom he ever communicated was Kim Flournoy, who has confirmed that she believed Mr. Lacour was *already* the appraiser when they first spoke.[45]

As noted above, Ms. Flournoy asked Mr. Shelton via email if Mr. Lacour was "going to be able to come by tomorrow and sign the Appraiser form" on October 18th, 2018. This email was sent at 3:04 PM. Later that night, at 10:43 PM, Mr. Shelton contacted Mr. Lacour via email, claimed to be working for the Sheriff, and told Mr. Lacour he was "on deck."[46]

---

[39] *Id*. See also **Exhibit C**, Deposition of Kim Flournoy, p. 78, l.6-20.

[40] **Exhibit C**, Deposition of Kim Flournoy, p.87, l.22-p.88, l. 3.

[41] **Exhibit C**, Deposition of Kimberly Flournoy, p. 88, l. 1-p.91, l. 22.

[42] Rec. Doc. 123-2, Affidavit of Kimberly Flournoy.

[43] **Exhibit K**, excerpts from deposition of Patrick Lacour, at p.78, l. 2-18.

[44] Rec. Doc. 80-2, at , p. 53, l.9-19.

[45] **Exhibit K**,, excerpts from deposition of Patrick Lacour. at  p.100, l.21 – p.101, l.4.

[46] **Exhibit J**, excerpts from discovery responses of W.A. Lucky, III, at W.A. Lucky III 485.

On Thu, Oct 18, 2018 at 10:43 PM Curtis R. Shelton <CurtisShelton@arklatexlaw.com> wrote:

Patrick,

Looks like you're on deck. When do you think you can get an appraisal done? Can you actually go by the Sheriff's office in Benton? You will be paid for all your time and expenses. I am working for them to understand that your appraisal for the Sheriff would be timely on Monday or Tuesday.

Curtis R. Shelton

Mr. Shelton's claim that "I am working for them" is noteworthy. The Sheriff's office has not produced any information revealing a formal relationship whereby Mr. Shelton was acting on the office's behalf, either to make appointments or to provide legal advice about the appraisal process. Importantly, neither Ms. Flournoy nor anyone else at the Sheriff's office appears to have been copied on the 10:43 PM email from Mr. Shelton.

In any case, Mr. Lacour had already performed several hours' worth of work on the appraisal by the time he received the 10:43 PM email from Mr. Shelton. According to the invoice he submitted to the Sheriff, Mr. Lacour worked for 3.25 hours on the file on October 18, 2018 – he billed for five separate entries on this date, totaling 3.25 hours:[47] Thus, the latest Mr. Lacour could have begun work on his valuation was at roughly 8:30 PM on October 18, 2018, more than two hours prior to receiving the "on deck" email from Mr. Shelton.

Mr. Lacour responded to Mr. Shelton with an email at 6:53 AM the next morning, attesting that he had already begun work as the third appraiser by reviewing the files:[48]

---

[47] Rec. Doc. 96-14, Invoice from Lacour to Sheriff's Office
[48] **Exhibit J**, excerpts from discovery responses of W.A. Lucky, III, at W.A. Lucky III 485.

| From: | Patrick Lacour, CIA, CVA <patrick@whitehalladvisors.net> |
| Sent: | Friday, October 19, 2018 6:53 AM |
| To: | Curtis R. Shelton |
| Subject: | Re: Ex Parte Motion to Fix Appraisers' Fees |
| | |
| EventId: | 3cd136fb-d648-458c-838f-6aae049a31c3 |
| MatterId: | A5A8F226-E2C3-4604-9646-A7E9E2A48BD2 |

Curtis,

I could have an estimate of fair market value completed by noon Tuesday, if not sooner.  I have read through the file and will need to confirm a few facts with you before then, so a call on Monday would be beneficial.  I can make it to the Sheriff's office in Benton - does that need to be today or Monday or Tuesday?

Patrick Lacour, CIA, CVA

It remains unclear what "facts" Mr. Lacour confirmed with Mr. Shelton in this "call on Monday." However, it is telling that Mr. Lacour went to Mr. Shelton yet again, his sole source of information during this entire ordeal, to "confirm a few facts." Also revealing is that Mr. Lacour continued to treat Mr. Shelton as if he were indeed working for the Sheriff's office, both by seeking confirmation of these alleged facts and by asking for due dates of the appraisal. Once again, no Sheriff's office employees were copied on the email.

Mr. Lacour then completed his appraisal later that day. Though he eventually provided the Sheriff with a cover letter dated October 22, 2018,[49] Mr. Lacour confirmed at his deposition that he completed an appraisal on October 19, 2018, which he produced in this litigation pursuant to a subpoena request.[50] The October 19th and October 22nd letters are identical in substance.[51] As noted above, this appraisal was done before he spoke to Ms. Flournoy. Indeed, Mr. Lacour began work before even receiving Mr. Shelton's statement that he was "on deck" at 10:43 PM on October 18th, 2018, by reviewing the documentation he received from Mr. Shelton on October 10th, 2018 at some

---

[49] **Exhibit B**, at BSO 87-88.
[50] **Exhibit K**, excerpts from deposition of Patrick Lacour, at p. 8-9, and Exhibit 2 thereto.
[51] Compare **Exhibit B** at BSO 87-88 to **Exhibit K**, at Exhibit 2 thereto.

time earlier that night.[52] In fact, according to Mr. Lacour, he believed a third appraiser was required on October 10th, 2018, when he was first contacted by Shelton.[53] All of this is congruent with:

(a) Mr. Lacour's testimony that he did not speak with Ms. Flournoy prior to his completion of the appraisal;

(b) Mr. Lacour's testimony that Ms. Flournoy was the only employee of the Sheriff's office with whom he spoke;

(c) Ms. Flournoy's testimony that Mr. Lacour was already the appraiser on October 18th, 2018, prior to her every communicating with him; and,

(d) Ms. Flournoy's testimony that she did not make Mr. Lacour the third appraiser.

There are therefore no serious disputes regarding the essential facts at issue. Any remaining dispute concerns the legal effect of those facts.

4. Fact questions and legal questions

In its Memorandum Ruling on the earlier motion for summary judgment, this Court held that questions of material fact precluded summary judgment as to the Sheriff's compliance with La. R.S. 13:4365. One of the fact issues was that "[d]efendants counter with the depositions of Sheriff's office employees stating they consulted with legal counsel prior to any action and knew they were free to reject Shelton's recommendation of Lacour." But only one deponent claimed they were "free to reject" a recommendation and appoint a separate appraiser: David Lee Miller.[54] Mr. Miller was apparently testifying secondhand as to Ms. Flournoy's beliefs about the situation, as he stated he had no direct role in the appointment process.[55] However, Ms. Flournoy has cleared

---

[52] Rec. Doc. 96-14, Invoice from Lacour to Sheriff's Office
[53] **Exhibit K**, excerpts from deposition of Mr. Lacour, p. 85, l.10-25.
[54] See, for instance, Rec. Doc. 123-4, ¶8, subparagraph 2, citing to deposition of David Miller.
[55] See Rec. Doc. 79-5, Excerpts of Deposition of David Miller. P. 34, 61.

up her own understanding: she did not make Mr. Lacour the third appraiser at all.[56] Unsurprisingly, then, she did not claim at deposition that she was "free to reject" any recommendation before an appointment. In fact, she did not even know who appointed Mr. Lacour in the first place.[57]

The Court also pointed to "emails from Deputy Flournoy to Lacour…and testimony from Lacour of a telephone conversation during the week prior to his submission" in denying summary judgment.[58] Ms. Flournoy has confirmed that her email exchange with Mr. Lacour only occurred after she understood him to already have been made the third appraiser.[59] Similarly, Ms. Flournoy understood that Mr. Lacour was already the appraiser prior to the October 19, 2018 email apparently referencing a phone call between the two.[60]

The Court also noted that Mr. Lacour acknowledged that "he was serving the Sheriff, not either of the parties, in his signed appraisment sheet and his attached letter addressed to the Sheriff." But Mr. Lacour's stated beliefs about the process are not legally relevant. What matters is what the Sheriff or his employees did (or failed to do) with respect to appointing Mr. Lacour. La. R.S. 13:4365. Similarly, the Court pointed to the Lacour invoices paid by the Sheriff after the appraisal was submitted. But Plaintiffs do not dispute the fact claim that the Sheriff eventually paid Mr. Lacour. Instead, the Plaintiffs dispute the legal claim that the Sheriff's payments to Mr. Lacour after he made an appraisal cured the Sheriff's prior failure to appoint him.

The legal questions about what constitutes an effective appointment of a third appraiser under La. R.S. 13:4365(C) are distinct from fact questions regarding what occurred. On the latter,

---

[56] **Exhibit C,** Deposition of Kim Flournoy, p. 114, l. 2-7.

[57] **Exhibit C**, Deposition of Kim Flournoy, p. 148, l.11-p.149, l.4 (attorney cross-talk regarding speaking objection omitted for ease of reading)
[58] See Rec. Doc. 158, Memorandum Ruling, at p.12.

[59] **Exhibit C,** Deposition of Kim Flournoy, p. 110, l. 18-21; p.114, l. 1-5.

[60] *Id*.

there are no longer any substantial disagreements about the actions, events, and/or occurrences pertaining to Mr. Lacour's putative appointment: Mr. Shelton contacted Mr. Lacour on October 10, 2018 and provided him the entirety of the information Mr. Lacour used in his valuation through the "one-sided" Shelton Letter; Mr. Shelton informed Mr. Lacour that he (Mr. Shelton) was "working for" the Sheriff's office; Mr. Lacour performed his valuation according to the instructions in the Shelton Letter and did so prior to speaking to the Sheriff's office; Mr. Lacour never looked at the Note; Ms. Flournoy was the Sheriff's office employee in charge of the Note's seizure and sale; Ms. Flournoy understood that Mr. Lacour had been appointed as the third appraiser prior to ever speaking to him, and was aware that she never appointed him;  no other party at the Sheriff's office appointed Mr. Lacour to be the third appraiser; Ms. Flournoy's communications with Mr. Lacour occurred after he performed his appraisal and after she considered him to have already been selected as the third appraiser; payment to Mr. Lacour occurred after he performed and submitted his appraisal. These are the facts – the sole remaining question is their legal consequence.

This Court noted in 2020 that no caselaw specifically explains what constitutes a proper appointment of a third appraiser under La. R.S. 13:4365. But *an* appointment is required, and no one at the Sheriff's Office even claims to have appointed Mr. Lacour. Even more importantly, no Sheriff's office employee took any active steps that could be considered constitutive of an appointment. As the Court recognized in in its prior ruling, the appointment provision "necessarily implies that a sheriff must perform some active duties with respect to appointment and cannot passively fulfill his obligations."[61] Additionally, Plaintiffs note that the statute distinguishes

---

[61] Rec. Doc. 158., Memorandum Ruling, at p. 11.

between (a) the appointment of a third appraiser and (b) the swearing of that appraiser.[62]  Though the Sheriff's office may argue that Mr. Lacour became the third appraiser by signing the appraisment sheet, the statutory language makes clear that these are separate steps that require separate actions by the Sheriff.  There is no evidence that any Sheriff's office employee took any active steps appointing a third appraiser. Instead, the evidence shows that Mr. Lucky's counsel selected Mr. Lacour, claimed to be working for the Sheriff, communicated on Mr. Lacour's behalf, and provided Mr. Lacour detailed instructions on how to appraise the Note. The Sheriff's office employees did not have any role until after the fact, and at that point the office's actions were merely administrative. As Ms. Flournoy suggested, the Sheriff's office was simply the location Mr. Lacour signed the appraisment sheet. If this constitutes an "appointment" by the Sheriff, rather than by Lucky's counsel, then what would *not* count as an appointment by the Sheriff? *At what point* was Mr. Lacour appointed by the Sheriff or his employees? Which actions constituted an appointment by the Sheriff?

### 5. Timeline of relevant facts

A timeline may be helpful to understand the appointment process and the lack of involvement therewith by the Sheriff's Office:

- **June 7, 2018**: issuance of writ of fieri facias to Sheriff Whittington.[63]

- **June 12, 2018**: date of note within Bossier Sheriff's file on C-127573, stating "Called Curtis Shelton…at 11:05 regarding the writ of fifa. He said to hold off on the writ because he has issued a subpoena for Barbara Carr to produce the [Note] on July 5th, 2018. He said

---

[62] La. R.S. 13:4365(C), emphasis added: In those cases where the two appraisers do not agree and the values are not within the averaging limits, then the sheriff <u>shall appoint</u> a third appraiser, <u>who shall also be sworn</u>, and whose decision shall be final.
[63] **Exhibit B, in globo**, at BSO 01; **Exhibit H**, in globo, at deposition exhibit 5.

he may want us to seize the note on that court date and would be in contact with us before July 5th.”[64]

- **July 5, 2018**: fax from Ms. Flournoy to Mr. Shelton stating “we have received the Writ of Fieri Facias in the above referenced suit and have also received the original promissory note.”[65] This is the earliest confirmed direct communication between Ms. Flournoy and Mr. Shelton, as she does not recall if she wrote the June 12th, 2018 note or called Mr. Shelton on that date.[66]

- **September 5, 2018**: letter from Mr. Shelton to Ms. Flournoy, describing the Note and providing instructions of how to advertise the Note for sale.[67]

- **September 6, 2018**:

  - Time unknown: Letter from Ms. Flournoy to Caddo Sheriff Civil Department, requesting mailing of service returns "as soon as possible” in this matter. This request was made “In order to expedite the date of sale (per the attorney).”[68] Ms. Flournoy cannot now recall why she wished to expedite the sale or referenced “per the attorney” in this letter.[69]

  - 1:27 PM: email from Ms. Flournoy to Mr. Shelton, asking for approval of the language in the description of the Note and stating “Once approved, we will set for

---

[64] **Exhibit B, in globo**. at BSO 02. **Exhibit H**, in globo, at deposition exhibit 6

[65] **Exhibit B, in globo**. at BSO 08-09; at deposition exhibit 7.

[66] **Exhibit C,** deposition of Kim Flournoy, at p. 29, l. 13-17; p. 46, l.11-13.

[67] **Exhibit B, in globo**, at BSO 010-011; **Exhibit H**, in globo, at deposition exhibit 8.

[68] **Exhibit B, in globo**. at BSO 004; **Exhibit H**, in globo, at deposition exhibit 9.

[69] **Exhibit C**, deposition of Kim Flournoy, at p. 57, l. 7-11.

16

sale as I understand this is a time sensitive matter."[70] Ms. Flournoy cannot now recall why she described this as a "time sensitive matter," as she stated at deposition that all sales were time sensitive.[71]

- **Monday, September 17, 2018**: Email from Ms. Flournoy to Mr. Shelton, stating:

  > Mr. Shelton it is my understanding the above referenced suit is with appraisal. In the even we have 2 appraisals that vary greatly and we have to get a third appraisal, do you have any recommendations as to whom appraises these types of notes. If possible could you give the names of at least two so we are not down to the wire trying to find one last minute. Thanks, Kim.[72]

This email was sent more than a month before a third appraiser was actually required. Ms. Flournoy cannot now remember why she thought the first two appraisals might exceed the statutory averaging limits, because there was nothing before getting the actual first two appraisals that could indicate that a third appraiser might be necessary.[73]

- **Friday, September 21, 2018**: email from Mr. Shelton to Ms. Flournoy, stating that Mr. Shelton would "look to see if I can find some other persons who would appraise the note."[74]

- **Wednesday, October 10**: date of the "Shelton Letter" from Mr. Shelton to Mr. Lacour, instructing Mr. Lacour on how to appraise Note.[75] At deposition, Ms. Flournoy confirmed

---

[70] **Exhibit B, in globo**, at BSO 013-14; **Exhibit H**, in globo, at deposition exhibit 10.

[71] **Exhibit C**, Deposition of Kim Flournoy, p.64, l.6-22.

[72] **Exhibit B, in globo**, at BSO 025; **Exhibit H**, in globo, at deposition exhibit 16.

[73] **Exhibit C**, Deposition of Kim Flournoy, p. 76, l. 24-p.77, l.20.

[74] **Exhibit B, in globo**, at BSO 058; **Exhibit H**, in globo, at deposition exhibit 18.

[75] See. Rec. Doc. 186-13; see also, Rec. Doc. 84-12.

that she was never copied with the Shelton Letter.[76] At his deposition, Mr. Lacour stated that he believed a third appraisal was required at this time.[77]

- **Friday, October 12**: email from Mr. Shelton to Ms. Flournoy, including appraisal by Mr. Lucky's appointed appraiser, Chad Garland. This email also identifies Mr. Lacour as a potential third appraiser.[78]

- **Thursday, October 18, 2018**:

  - **Ms. Flournoy believes Mr. Lacour has already been appointed third appraiser on this date, though not by her.[79]**

  - 3:04 PM: Email from Ms. Flournoy to Mr. Shelton, asking "is Mr. Lacour going to be able to come by tomorrow and sign the Appraiser form?"[80]

  - 8:30 PM or before: Mr. Lacour begins work on appraisal.[81]

  - 10:43 PM: Mr. Shelton emails Mr. Lacour, claims to be "working for [the Sheriff's office]," and tells Mr. Lacour "Looks like you're on deck."[82]

  - Mr. Dean submits his appraisal as the appointed appraiser for Mrs. Lollar, triggering need for third appraisal for the first time.[83]

- **Friday, October 19, 2018**:

  - Mr. Lacour completes substance of his appraisal.[84]

---

[76] **Exhibit C**, Deposition of Kim Flournoy, p. 149, l.24-25.

[77] **Exhibit K**, excerpts from deposition of Mr. Lacour, p. 85, l.10-25.
[78] **Exhibit B, in globo**, at BSO 026-27; **Exhibit H**, in globo, at deposition exhibit 20.

[79] **Exhibit C**, Deposition of Kim Flournoy, p. 110, l. 9-21, p. 113, l. 21 – p. 114, l.7.

[80] **Exhibit B, in globo**, at BSO 085 – 86; **Exhibit H**, in globo, at deposition exhibit 23.

[81] Rec. Doc. 96-14; Lacour invoice.
[82] **Exhibit J**, excerpts from discovery responses of W.A. Lucky, III, at W.A. Lucky III 485.
[83] Rec. Doc. 158, p. 5.

[84] **Exhibit K** excerpts from Patrick Lacour deposition, at p. 8-9, and Exhibit 2 thereto.

- o 6:53 AM: email from Mr. Lacour to Mr. Shelton, asking when he needs to turn appraisal to Sheriff's office and stating that Mr. Lacour "will need to confirm a few facts with you before [Tuesday], so a call on Monday would be beneficial."[85]

- o 7:46 AM: email from Mr. Shelton to Ms. Flournoy, with Mr. Shelton continuing to communicate on behalf of Mr. Lacour, stating "Mr. Lacour has reported he can have appraisal by noon Tuesday. I am copying him with this message…If you reply all to this message, Mr. Lacour will also receive it."[86]

- o 10:54 AM: first evidence of direct contact between Ms. Flournoy and Mr. Lacour in an email between Ms. Flournoy and Mr. Shelton which states: "I spoke with Mr. Lacour and he will be by our office on Monday to sign the form. Thank you both for your help and have a great weekend!"[87]

- **Monday, October 22, 2018**:

  - o Time unknown: Mr. Lacour's signed appraisment sheet turned in to Sheriff's office.[88] Judge in Lucky I case signs Order authorizing payment of third appraiser's fee.[89]

  - o 4:28 PM: email from Ms. Flournoy to Mr. Shelton, asking Mr. Shelton to continue his communications with Mr. Lacour: "Mr. Shelton, would you please ask Mr.

---

[85] **Exhibit J**, excerpts from discovery responses of W.A. Lucky, III, at W.A. Lucky III 485.

[86] **Exhibit B, in globo**. at BSO 085; **Exhibit H**, in globo, at deposition exhibit 23.

[87] **Exhibit B, in globo** at BSO 08; **Exhibit H**, in globo, at deposition exhibit 23.

[88] Rec. Doc. 186-14.

[89] **Exhibit E** Affidavit of Andrew D. Martin, at ¶5; **Exhibit L**, Ex Parte Motion and applicable Order, with Order dated October 22nd, 2018.

Lacour to get me an invoice ASAP so I can build it into my suit cost? Thank and have a great day"[90]

  o  5:49 PM: email from Mr. Shelton to Ms. Flournoy, continuing to communicate on behalf of Mr. Lacour [91]

- **Tuesday, October 23, 2018**: email from Ms. Flournoy to Mr. Shelton stating "Thank you so much for your help in everything. I apologize for being so needy, this suit has been a learning experience for me. Have a great day![92]

- **Wednesday, October 24, 2018**: Note sold at Sheriff's sale to Lucky Family, LLC. [93]

### B. The Court should order an annulment of the Sheriff's sale

This Court has previously held that "Plaintiffs can pursue an annulment of the Sheriff's sale due to an alleged violation of § 4365."[94] That is the appropriate remedy in this case, and the Court should order it based on the Sheriff's failure to appoint a third appraiser.

### C. The Sheriff's Office has prevented timely and full presentation of these facts

Plaintiffs attempted to depose Ms. Flournoy in November of 2019, long before she was named a party to the suit, seeking information regarding the writ, the appraisal process, the communications related to the third appraiser involving the sheriff's staff, and the seizure of the

---

[90] **Exhibit B, in globo**. at BSO 091; **Exhibit H**, in globo, at deposition exhibit 26.

[91] **Exhibit B, in globo**. at BSO 91; **Exhibit H**, in globo, at deposition exhibit 26.

[92] **Exhibit B, in globo**. at BSO 91; **Exhibit H**, in globo, at deposition exhibit 26.

[93] Rec. Doc. 158 Memorandum Ruling at p. 6.

[94] Rec. Doc. 158, Memorandum Ruling at p. 10.

Note. After initially agreeing to make Ms. Flournoy available for a deposition, counsel for the Sheriff informed counsel for Plaintiffs on November 13, 2019 that:

> I am at the Sheriff's office and I just spoke with Kim Flournoy about the topics listed. She doesn't know anything or remember anything and her answer is going to be she did what supervisor Jean Horne told her. Therefore, in the interest of efficiency I believe you will have better luck going straight to Jean Horne.[95]

Counsel for Plaintiffs, relying in good faith on this representation that Ms. Flournoy "doesn't know anything or remember anything," therefore deposed Ms. Horne instead.

But less than three months later, in early February of 2020, Ms. Flournoy submitted a lengthy affidavit in support of the Sheriff's motion for summary judgment.[96] In this affidavit, Ms. Flournoy swore that she remembered quite a bit of relevant information: the due dates for the appraisals, the sale date, the substance of her communications with co-workers and with counsel for the Sheriff, her communications with Mr. Shelton, Mr. Shelton's communications with her, and her contacts with Mr. Lacour. All of this was "based on [Flournoy's] personal knowledge."[97] Plaintiffs were obviously surprised by the extent of Ms. Flournoy's memory, given the prior claim that she "doesn't…remember anything." This change was particularly disappointing because Plaintiffs were no longer able to depose Ms. Flournoy about the extent of her knowledge at this point: under the then-effective scheduling order, discovery had already closed.

Fast-forward to October 26, 2022, when undersigned deposed Ms. Flournoy following a re-opening of the pleading and discovery deadlines. At that point, more than four years had passed since the events in question. And it was three years since Plaintiffs unsuccessfully first attempted to depose Ms. Flournoy. The intervening years appeared to have taken a toll on many of Ms.

---

[95] **Exhibit A**, email exchange between Parks and Powell; **Exhibit D**, affidavit of J. Davis Powell.
[96] Rec. Doc. 123-2 Affidavit of Kim Flournoy
[97] Rec. Doc. 123-2, Affidavit of Kim Flournoy, ¶1.

Flournoy's recollections, as she was unable to answer several of the basic questions about the seizure and sale of the Note - including a number that she had addressed specifically in the 2020 affidavit. She could no longer remember any communications with Mr. Lacour. She could no longer recall her contacts with Mr. Shelton; in fact, she did not know who Mr. Shelton was:

> **Q**: To your knowledge from what you remember, is this your first communication to Mr. Shelton?
> **A**: I don't know. I don't know who Mr. Shelton is so I don't know if I've ever talked to him in my life before.[98]

Contrast this with her 2020 affidavit, where she remembered Mr. Shelton and the substance of their numerous communications without issue.[99]  Her loss of memory regarding any conversations with Mr. Shelton was especially problematic because she could not recall discussions referenced in emails but not appearing in the email chains – implying phone calls:

> **Q**: [quoting email from Shelton to Flournoy] "As we have discussed it will likely not be possible to find someone to do the appraisal, the promissory note for the amount the sheriff usually pays." Do you recall those discussions?
> **A**:  No.[100]

She had trouble recollecting her conversations with Mr. Southerland.[101] She did not know why she pursued an expedited sale date "per the attorney."[102] Thankfully for all involved, she did remember the key facts underpinning this motion: that she did not make Mr. Lacour the third appraiser and took no independent steps after soliciting a "recommendation" from Mr. Lucky's attorney. But it is possible that Ms. Flournoy could have provided valuable fact testimony regarding other aspects of this litigation had she been made available for a deposition in November of 2019, rather than October of 2022. We will never know how much information Ms. Flournoy had in 2019.

---

[98] **Exhibit C**, deposition of Kim Flournoy, at p. 48, l. 18-20.
[99] Rec. Doc. 123-2, paragraphs 11-14.
[100] **Exhibit C**, Deposition of Kim Flournoy, p. 105, l.3-8.
[101] See, generally, **Exhibit C**, Deposition Kim Flournoy, p. 79, l. 7 et seq.
[102]*Id*. at , p. 60, l. 11-13.

Ms. Flournoy's ability to respond to deposition questions was also hampered by her counsel, who repeatedly instructed her not to answer. These instructions were never accompanied by invocations of a privilege, attempts to enforce a limitation ordered by the court, or efforts to present a motion under Rule 30(d)(3) - the only licit grounds for instructing a deponent not to answer. Fed. R. Civ. P. 30(c)(2); *Storer v. Crown Cork & Seal Co*., No. CV 14-2488, 2017 WL 424890, at *7 (W.D. La. Jan. 31, 2017).  Instead, counsel for Ms. Flournoy often refused outright to explain why he made the instruction, despite repeated requests for clarification. For example, see the lengthy exchange at **Exhibit C,** p. 60, l. 19-p.62, l. 14, wherein undersigned asked multiple times for an explanation for the instruction, to no avail.

Counsel for Sheriff made similarly groundless instructions later in the deposition for instance, telling his client not to answer a question regarding her interpretation of her own email because "[t]his is didactic and improper question **and you're not to answer anymore of this crap**. So, next question."[103] The most protracted of these improper instructions not to answer came when undersigned tried to probe the policies that might have acted as bumpers to prevent the Sheriff's office from handing the appointment process off to a third party. The question was directly related to Plaintiffs' *Monell* claims. Upon the instruction not to answer, undersigned asked for clarification: "I would like to know your basis so we can go to the court and talk about it. What is your basis for telling her not to answer?"[104] Counsel for Sheriff argued in response, among other things, that his client need not answer because the question "violates" the rules on relevancy and exceptions to the rules on hearsay, because it was "suggestive and argumentative" and "lacks a

---

[103] *Id*. at p. 134, l.3-15.
[104] *Id*. at p. 155, l. 12-14.

23

foundation."[105] None of these constitute grounds for instructing a deponent not to answer. FRCP 30(C)(2). As the advisory committee noted in amending Rule 30, directions "to a deponent not to answer a question can be even more disrupting than objections." *Id.*, notes to 1993 Amendment.

At the deposition, Ms. Flournoy's counsel also improperly cut her off in the middle of answers and instructed her on how to respond:

> **Q**: Did you understand him to be doing you a favor?
> **A**: Doing –
> **Q**: Right. Providing a recommendation?
> **A**: I don't really know how to answer. I guess –
>     Mr. Langley: Don't guess.[106]
>         …
> **Q**: Didn't help you learn anything?
> **A**: I like criminal law better.
> **Q**: Okay.
> **A**: I just –
>     Mr. Langley: You answered his question.[107]
>         …
> **Q**: Where does it get locked up at?
> **A**: I'm not sure. That's something you'd have to ask ---
>     Mr. Langley: If you're not sure, that's your answer.[108]

At other times, he issued these instructions before she could begin a response, without even raising an objection.[109] Occasionally, counsel for Ms. Flournoy would answer on her behalf:

> **Q**: Okay. So, sometimes you would reach out to the attorney without speaking to Mr. Sutherland?
>     Mr. Langley: Or Ms. Horne, don't forget that part.
>     Mr. Martin: Can we let her answer?[110]

---

[105] *Id.* at p. 154, l. 9 – p. 159, l. 1, referencing, among other things, Federal Rule of Evidence 401 (test for relevant evidence) and 803 (exceptions to the rule against hearsay). Relevancy is not a valid basis to refuse a deposition question. *Storer v. Crown Cork & Seal Co., supra*, at *7.
[106] *Id.* at p. 137, l. 22-p.138, l. 2.
[107] Id., at p. 138, l. 10-15; see also, *id.*, 66, l. 10-14.
[108] Id., at p. 47, l. 9-13.
[109] *Id.* at p. 30, l. 2-6.
[110] *Id.* at p. 40, l. 24 – p. 41, l. 4.

This was all inappropriate. There is never a "proper need for the witness's own lawyer to act as an intermediary, interpreting questions, deciding which questions the witness should answer, and helping the witness to formulate answers." *Mealy v. Gautreaux*, No. CV 16-716-JWD-RLB, 2019 WL 3216516, at *6 (M.D. La. July 16, 2019). Interrupting a witness mid-answer is improper, as is suggesting an answer to a witness, as it tends to obstruct the "orderly and efficient taking of meaningful depositions." *Todd v. Precision Boilers, Inc*., No. CIV.A. 07-0112, 2008 WL 4722338, at *1–2 (W.D. La. Oct. 24, 2008)

These actions at the deposition are part of a now-longstanding pattern of preventing Ms. Flournoy from giving frank, unmediated, relevant testimony about the central facts of this case. This has needlessly wasted the Court's time and resources. If Ms. Flournoy had been allowed to state in November of 2019 what she states now – that she was the person in charge of the Note file and that she did not appoint Mr. Lacour – a major portion of this case might have been resolved years ago. Counsel for Plaintiffs now recognize that they should have been more hesitant about taking Sheriff's counsel's representations at face value in 2019. To echo Ms. Flournoy, this has been a "learning experience."

## III.    CONCLUSION

For these reasons, the Court should declare that the Sheriff's office failed to properly appoint a third appraiser, in violation of La. R.S. 13:4365. Further, the Court should order the October 24, 2018 Sheriff's sale of the Note annulled.


Respectfully submitted by,


/s/ Andrew D. Martin_____ _____
        Randall S. Davidson, LSBA No. 4715, TA

J. Davis Powell, LSBA 33631
Andrew D. Martin, LSBA 34947
DAVIDSON SUMMERS, APLC
330 Marshall Street, Suite 1114
Shreveport, Louisiana 71101
Ph: (318) 424-4342 | (318) 226-0168
E:     rsdav@davidsonsummers.com
        dpowell@davidsonsummers.com
        dmartin@davidsonsummers.com

***Counsel for Barbara Marie Carey Lollar***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing was filed electronically with the Clerk of Court using the CM/ECF filing system, and notice of the same will be sent to all counsel of record by operation of the court's electronic noticing system.

Shreveport, Louisiana, on this 12th  day of November, 2022.

_____*s*/Andrew D. Martin_____
                    OF COUNSEL

26