UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| MAGNOLIA ISLAND PLANTATION, L.L.C., BARBARA MARIE CAREY LOLLAR | CIVIL ACTION NO. 5:18-cv-01526 |
| VERSUS | DISTRICT JUDGE ELIZABETH FOOTE |
| LUCKY FAMILY, L.L.C., W.A. LUCKY, III, AND BOSSIER SHERIFF JULIAN C. WHITTINGTON, IN HIS OFFICIAL CAPACITY | MAGISTRATE JUDGE KAREN HAYES |

DEPOSITION OF DAVID LEE MILLER

October 21, 2019

Reported By:
Jayne M. Reeves, CCR

318.424.1707        KAREN TYLER REPORTING, LLC        318.424.1744 - Fax
3000 Fairfield Avenue, Suite A - Shreveport, LA 71104

EXHIBIT F

DAVID LEE MILLER                              10/21/2019

34

1    Q.   (BY MR. POWELL)  This is Exhibit 8.
2  This is an October 12th e-mail from Mr. Curtis
3  Shelton to Ms. Flournoy.  It is providing
4  information for Mr. Patrick Lacour, that
5  Mr. Shelton says that he is located.
6         Do you see that?
7    A.   Yes.
8    Q.   Did the sheriff's office contact
9  Mr. Lacour after receiving this e-mail?
10   A.   I do not know.
11   Q.   And who would know that?
12   A.   Ms. Flournoy.
13   Q.   Did anything in the file you reviewed
14 indicate that your office contacted Mr. Lacour at
15 this time?
16   A.   I don't know.
17   Q.   I'm saying in your review of the file,
18 do you recall anything indicating that you
19 contacted Mr. Lacour after receiving this
20 information here?
21   A.   I don't recall any documentation in the
22 file.
23         (Miller Deposition Ex. 9 was
24 marked for identification.)
25   Q.   (BY MR. POWELL)  This is Exhibit 9.

DAVID LEE MILLER					10/21/2019

37

1  Q.  Mr. Curtis Shelton.
2  A.  And that's also who I call the
3  plaintiffs' attorney?
4  Q.  That's correct, I believe.
5  A.  There's going to be a great deal of
6  communications in there with the plaintiffs'
7  attorney.
8  Q.  Okay.  And so did the sheriff's office
9  provide any background information to Mr. Lacour
10 for him to make his appraisal?
11 A.  I don't know.
12 Q.  Who would know that?
13 A.  Ms. Flournoy.
14 Q.  Did you see any indication in the file
15 that you reviewed that the sheriff's office
16 provided any information to Mr. Lacour for the
17 purpose of his appraisal?
18 A.  Not that I recall.
19 Q.  Did the sheriff's office hire
20 Mr. Lacour?
21 A.  Can you rephrase the question?  I don't
22 understand the question.  Did we hire him?
23 Q.  Did you retain Mr. Lacour?
24 A.  Define retain.  I mean, was there a
25 contract between us?  Not that I know of.

DAVID LEE MILLER 10/21/2019

38

```
 1     Q.   Was there any correspondence between
 2  the sheriff's office and Mr. Lacour requesting
 3  that he serve as the sheriff's appraiser?
 4     A.   I'm not sure.  I don't know.
 5     Q.   Did you see any correspondence in the
 6  files that you reviewed between the sheriff's
 7  office and Mr. Lacour requesting that he serve as
 8  the sheriff's third appraiser?
 9     A.   Not that I recall.
10          (Miller Deposition Ex. 10 was
11  marked for identification.)
12     Q.   (BY MR. POWELL)  This is Exhibit 10.
13  This is entitled Appraisement Sheet signed by
14  Mr. Chad Garland.  Are you familiar with this
15  document?
16     A.   This form.  Yes.
17     Q.   You're familiar with the form.  Are you
18  familiar with who Mr. Garland is in this matter?
19     A.   He is the appraiser for the plaintiff.
20     Q.   That's correct.  That's what it says
21  there.  Have you reviewed this document before?
22     A.   I believe I reviewed it in the file.
23     Q.   Does this appear to be a correct copy
24  of that document?
25     A.   It appears.
```

DAVID LEE MILLER                             10/21/2019

41

```
1    correct copy of that sheet?
2         A.    It appears.
3         Q.    And what's his appraisal value?
4         A.    $157,009.22.
5         Q.    Flip back to the front.  Have you
6    ever -- you've never reviewed this letter, you
7    said?
8         A.    No, I have not.
9         Q.    Do you know if this is in the sheriff's
10   office file?
11        A.    I do not know.
12        Q.    Were you aware when Mr. Lacour's
13   appraisal came into the sheriff's office?
14        A.    No.
15        Q.    Who would have been aware of that?
16        A.    Ms. Flournoy.
17        Q.    Did the sheriff's office have any
18   questions regarding Mr. Lacour's appraisal when
19   it arrived?
20        A.    Not that I know of.
21        Q.    Who reviewed the appraisal for the
22   sheriff's office?
23        A.    It would have been Ms. Flournoy.
24        Q.    Remind me again what her role was
25   before she was moved to the records department.
```