

# Transcript of the Testimony of
# PATRICK HENRY LACOUR

**Date:** October 22, 2019

**Case:** Magnolia Island Plantation, et al. v. Lucky Family, LLC, et al.

Pilant Court Reporting
Phone: (800) 841-6863
Fax: (877) 474-5268
Email: deponotice@pilant.com

**EXHIBIT K**

Case 5:18-cv-01526-SMH-KDM   Document 198-13   Filed 11/12/22   Page 2 of 18 PageID #: 4994

Magnolia Island Plantation, et al. v. Lucky Family, LLC, et al.
PATRICK HENRY LACOUR

Page 1

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

MAGNOLIA ISLAND PLANTATION,                DISTRICT JUDGE ELIZABETH FOOTE
L.L.C., BARBARA MARIE CAREY
LOLLAR

       Plaintiffs

VERSUS                                     CIVIL ACTION NO. 5:18-cv-01526

LUCKY FAMILY, L.L.C., W.A.
LUCKY, III, AND BOSSIER
SHERIFF JULIAN C. WHITTINGTON,
IN HIS OFFICIAL CAPACITY           MAGISTRATE JUDGE KAREN HAYES
                                   JURY TRIAL DEMAND
       Defendants

DEPOSITION OF PATRICK HENRY LACOUR

TAKEN FOR AND ON BEHALF OF THE PLAINTIFFS

AT THE JONES LAW FIRM

ALEXANDRIA, LOUISIANA

ON TUESDAY, OCTOBER 22, 2019

BEGINNING AT 10:31 A.M.

REPORTED BY:
DIANNE STEWART, CERTIFIED COURT REPORTER & NOTARY PUBLIC



(800) 841-6863     www.pilant.com

**EXHIBIT K**

Case 5:18-cv-01526-SMH-KDM   Document 198-13   Filed 11/12/22   Page 3 of 18 PageID #: 4995

Magnolia Island Plantation, et al. v. Lucky Family, LLC, et al.
PATRICK HENRY LACOUR

Page 2

```
 1                        APPEARANCES
 2
 3   ATTORNEY FOR PLAINTIFFS:
 4
     DAVIDSON SUMMERS, APLC
 5   By: Mr. James David Powell, Attorney at Law
     330 Marshall Street, Suite 1114
 6   Shreveport, Louisiana 71101
     Phone: 318-424-4342
 7   E-Mail: dpowell@davidsonsummers.com
 8
 9   ATTORNEY FOR DEFENDANTS:
10
     AYRES, SHELTON, WILLIAMS, BENSON & PAINE, LLC
11   By: Mr. Curtis R. Shelton, Attorney at Law
     333 Texas Street, 1400 Regions Tower
12   Shreveport, Louisiana 71101
     Phone: 318-227-3500
13   E-Mail: curtisshelton@arklatexlaw.com
14
     LANGLEY, PARKS & MAXWELL
15   By: Ms. Julianna Petchak Parks, Attorney at Law
     401 Market Street, Suite 1100
16   Shreveport, Louisiana 71101
     Phone: 318-383-6422
17   E-Mail: jparks@lphmlaw.com
18
     THE TOUCHSTONE LAW FIRM
19   By: Mr. David M. Touchstone, Attorney at Law
     2708 Village Lane
20   Bossier City, Louisiana 71112
     Phone: 318-752-8080
21   E-Mail: dmtouchstone@firstcommercetitle.com
22
23   ALSO PRESENT: Mr. Ronald Lollar
                  Ms. Barbara Lollar
24
25
```


**EXHIBIT K**

Magnolia Island Plantation, et al. v. Lucky Family, LLC, et al.
PATRICK HENRY LACOUR

Page 3

# INDEX

APPEARANCES                                                           2

STIPULATION                                                           5


EXAMINATION:                                                     6-128


   BY MR. POWELL                              6-86, 106-124, 127, 128

   BY MR. SHELTON                                    86-105, 124-127

   BY MR. TOUCHSTONE                                         105-106

   BY MS. PARKS                                              127-128



EXHIBITS:


   Exhibit #1        Subpoena for Mr. Lacour's appearance at
                     deposition

   Exhibit #2        Mr. Lacour's report to the Bossier Parish
                     Sheriff's Office, dated October 19, 2018

   Exhibit #3        Email #1, from Curtis Shelton to Patrick
                     Lacour, with attachments, dated October 10,
                     2018



Case 5:18-cv-01526-SMH-KDM   Document 198-13   Filed 11/12/22   Page 5 of 18 PageID #: 4997

Magnolia Island Plantation, et al. v. Lucky Family, LLC, et al.
PATRICK HENRY LACOUR

Page 4

| | | |
|---|---|---|
| 1 | Exhibit #4 | Email #2, from Curtis Shelton to Patrick Lacour, with attachments, dated October 10, 2018 |
| | Exhibit #5 | Email #3, from Curtis Shelton to Patrick Lacour, with attachments, dated October 10, 2018 |
| | Exhibit #6 | Email #4, from Curtis Shelton to Patrick Lacour, with attachments, dated October 10, 2018 |
| | Exhibit #7 | Email #5, from Curtis Shelton to Patrick Lacour, with attachments, dated October 10, 2018 |
| | Exhibit #8 | Email #6, from Curtis Shelton to Patrick Lacour, with attachments, dated October 10, 2018 |

ADDITIONAL INFORMATION REQUESTED:                              NONE

ADDITIONAL INFORMATION OFFERED:                                NONE



(800) 841-6863    Pilant Court Reporting    www.pilant.com

**EXHIBIT K**

Case 5:18-cv-01526-SMH-KDM   Document 198-13   Filed 11/12/22   Page 6 of 18 PageID #: 4998

Magnolia Island Plantation, et al. v. Lucky Family, LLC, et al.
PATRICK HENRY LACOUR

Page 5

```
 1                      STIPULATIONS
 2         The deposition of Patrick Henry Lacour, it is stipulated
 3    by and between counsel for plaintiffs and counsel for
 4    defendants, is taken at the Jones Law Firm, in Alexandria,
 5    Louisiana, on Tuesday, October 22, 2019, before Dianne Stewart,
 6    Certified Court Reporter.
 7         This deposition is taken by counsel for plaintiffs for the
 8    uses as provided for in the Federal Code of Civil Procedure,
 9    according to notice as provided by law.
10         The parties hereto waive all formalities in connection
11    with the taking of this deposition, except the swearing of the
12    witness, the reduction of the questions and answers to print,
13    and the reading and signing of the deposition transcript by the
14    witness.  All objections are reserved except as to the form of
15    the question and the responsiveness of the answer.
16
17
18
19
20
21
22
23
24
25
```



Case 5:18-cv-01526-SMH-KDM   Document 198-13   Filed 11/12/22   Page 7 of 18 PageID #: 4999

Magnolia Island Plantation, et al. v. Lucky Family, LLC, et al.
PATRICK HENRY LACOUR

Page 6

```
 1                  Patrick Henry Lacour
 2                  4806 Wendover Boulevard
 3                  Alexandria, Louisiana 71303
 4          PATRICK HENRY LACOUR, after being duly sworn
 5   to tell the truth, the whole truth, and nothing
 6   but the truth, was examined and testified as
 7   follows:
 8                        EXAMINATION
 9   BY MR. POWELL:
10   Q     Mr. Lacour, my name is Davis Powell with the
11         firm of Davidson and Summers in Shreveport.
12         We represent Barbara Lollar and Magnolia
13         Island Plantation, LLC in this matter.  You
14         did receive a subpoena to appear here today,
15         and I have marked that as Exhibit 1.  I just
16         want you to review it and confirm that you did
17         receive this.
18   A     I did receive this.
19   Q     Okay.  Give me your full name.
20   A     Patrick Henry Lacour.
21   Q     And is this address on the subpoena correct?
22   A     Where is the address on the subpoena?
23   Q     At the top.
24   A     Okay.  Yes.
25   Q     And could you read that off for me?
```



Case 5:18-cv-01526-SMH-KDM   Document 198-13   Filed 11/12/22   Page 8 of 18 PageID #: 5000
Magnolia Island Plantation, et al. v. Lucky Family, LLC, et al.
PATRICK HENRY LACOUR

Page 7

```
1   A    Patrick Lacour, 4806 Wendover Boulevard,
2        Alexandria, Louisiana 71303.
3   Q    And Mr. Lacour, are you self-employed?
4   A    No.  I'm part of a LLC, Whitehall Advisors,
5        LLC.
6   Q    Okay.  You're employed by Whitehall Advisors,
7        LLC?
8   A    I am.  I'm one of the managers.
9   Q    Do you have any other employment?
10  A    No.
11  Q    And what does Whitehall Advisors, LLC do?
12  A    We do valuation work, like what you see in
13       this case here, consulting work.  Sometimes
14       I'm hired as a consulting CFO.  And that's --
15       and forensic accounting.  So again, consulting
16       work, or valuation, or forensic accounting.
17  Q    But you're always working for Whitehall
18       Advisors, and not for the organization that's
19       hired you?
20  A    Well, it's contract work, so if people
21       contract with me, you know, I may -- I was a
22       contract CFO for someone who has 76 Popeye's.
23       Okay?  I sat in his offices.  I managed my own
24       schedule, so I'm not his employee.  I would
25       come and go as I please, but when I'm working
```



Case 5:18-cv-01526-SMH-KDM   Document 198-13   Filed 11/12/22   Page 9 of 18 PageID #: 5001

Magnolia Island Plantation, et al. v. Lucky Family, LLC, et al.
PATRICK HENRY LACOUR

Page 8

```
 1            for him, I'm working for him.
 2     Q      How long have you been with Whitehall
 3            Advisors?
 4     A      It's been about twelve years now.  I think we
 5            started up in '07.
 6     Q      And your employment before Whitehall Advisors?
 7     A      I was with Cleco Corporation.
 8     Q      Who are the other managers of Whitehall
 9            Advisors?
10     A      Michael Carbo.
11     Q      And that's the only one?
12     A      That's the only one.
13     Q      Is there any other ownership of Whitehall
14            Advisors?
15     A      No, that's all.
16     Q      What is your educational background?
17     A      I have a Bachelors of Science in accounting
18            from LSU.  That was in December of '93, with a
19            concentration in internal audit.
20     Q      And you've mentioned this some, as far as what
21            Whitehall Advisors does, but what is your
22            expertise currently?
23     A      Forensic accounting and business valuation.
24     Q      Okay.
25                   MR. POWELL:
```




Case 5:18-cv-01526-SMH-KDM   Document 198-13   Filed 11/12/22   Page 10 of 18 PageID #: 5002

Magnolia Island Plantation, et al. v. Lucky Family, LLC, et al.
PATRICK HENRY LACOUR

Page 9

1           We'll mark this as Exhibit 2.
2    BY MR. POWELL:
3    Q    I believe this is the -- and it is also
4         marked, or Bates labeled Lacour 210.  It's my
5         understanding this is the report provided --
6         it's addressed to the Bossier Sheriff's
7         Office, dated October 19, 2018, and it appears
8         to be from you.  Is that correct?
9    A    This is correct.
10                  (OFF THE RECORD DISCUSSION)
11   Q    Okay.  I'm going to ask you again about
12        Exhibit 2.  Did you author this document?
13   A    I did.
14   Q    Does this appear to be a true and correct copy
15        of your report on this date?
16   A    It does.  I think, one, it may -- there is a
17        -- is there a Oath of Appraisement that I also
18        did?  That may be a separate exhibit.
19   Q    Separate, yeah.  But this is the actual
20        report.  Correct?
21   A    Correct.
22   Q    And what was the purpose of this report?
23   A    To value a promissory note between Ms. Lollar
24        and, I believe it was Magnolia Island
25        Plantation, which was represented by Mr.



(800) 841-6863                                www.pilant.com

**EXHIBIT K**

Case 5:18-cv-01526-SMH-KDM   Document 198-13   Filed 11/12/22   Page 11 of 18 PageID #: 5003
Magnolia Island Plantation, et al. v. Lucky Family, LLC, et al.
PATRICK HENRY LACOUR

Page 77

```
 1   A    I don't see it.
 2   Q    Now that you've had a chance to refresh
 3        yourself with the documents, do you believe
 4        that the promissory note was provided to you?
 5   A    Perhaps it was not.
 6   Q    Did you review the promissory note before you
 7        made your report?
 8   A    Given that I don't see it in front of me, I --
 9        no, I don't believe I saw the promissory note.
10        I did see the Cash Sale Deed With Vendor's
11        Lien And Special Mortgage.
12   Q    After Mr. Shelton contacted you to ask if you
13        would be available for this, he sent you these
14        emails at some point in time after that.  Is
15        that correct?
16   A    Correct.
17   Q    At that point in time did you contact the
18        Sheriff's office?
19   A    At some point I had to contact them to get --
20        they had to provide -- and again, you know,
21        exact titles of things.  But the Oath of
22        Appraisement, or whatever that document was,
23        you know, I had to tell them this is what the
24        basis of my work is.  They had to prepare that
25        for me, and then I had to drive up and sign
```



Case 5:18-cv-01526-SMH-KDM   Document 198-13   Filed 11/12/22   Page 12 of 18 PageID #: 5004
Magnolia Island Plantation, et al. v. Lucky Family, LLC, et al.
PATRICK HENRY LACOUR

Page 78

```
 1        it.
 2   Q    So you believe you talked to the Sheriff's
 3        office close to the time that you drove up to
 4        sign your report?
 5   A    Yes.  I mean, again, I really can't remember
 6        if October 19th was a Thursday or a Friday.  I
 7        feel like it was a Friday, and I talked with
 8        them that week.  Okay?  So whether it was
 9        Monday, Tuesday, Wednesday, I did talk with
10        someone and -- talk and exchange emails with
11        someone such that they would have my report
12        which you have previously provided as Exhibit
13        2, and that I would then -- they showed me
14        what I'd be signing, but then I would drive up
15        and sign that.
16   Q    But this was after you had preformed the work.
17        Correct?
18   A    Correct.
19   Q    Did the Sheriff's office provide you any
20        further documentation regarding this task?
21   A    No.
22   Q    You talked to Mr. Shelton before you finalized
23        your report.  Correct?
24   A    That's correct.
25   Q    What did y'all discuss?
```



Case 5:18-cv-01526-SMH-KDM   Document 198-13   Filed 11/12/22   Page 13 of 18 PageID #: 5005

Magnolia Island Plantation, et al. v. Lucky Family, LLC, et al.
PATRICK HENRY LACOUR

Page 79

| | | |
|---|---|---|
| 1 | A | With the -- what the value was. I mean, |
| 2 | | that's pretty much it. |
| 3 | Q | You told him what the value was in your |
| 4 | | report, and he hung up, or what? I mean, did |
| 5 | | y'all -- |
| 6 | A | I mean, that's the gist of it. You get |
| 7 | | information from a client, and then you do the |
| 8 | | work, and then you present them with the |
| 9 | | results, and that's -- that's what it was. |
| 10 | Q | Okay. Did you talk to Mr. Shelton while you |
| 11 | | were performing the work, as well? |
| 12 | A | That's difficult to answer. I mean, I don't |
| 13 | | know if, you know, there was an order of |
| 14 | | emails, or what, or if he called to check in |
| 15 | | and see if I was done. I know that apparently |
| 16 | | there were -- I was the neutral in this case, |
| 17 | | and that there were two appraisals before me |
| 18 | | which I have no knowledge of, other than there |
| 19 | | were two appraisals and that's why I had to be |
| 20 | | contacted. And so again, to answer your |
| 21 | | question, I don't have any specifics about if |
| 22 | | we did or didn't talk in the -- while I was |
| 23 | | doing the work. But he may have called to |
| 24 | | check and see where I was, because I -- I |
| 25 | | think we had maybe a week or two to get the |



Case 5:18-cv-01526-SMH-KDM   Document 198-13   Filed 11/12/22   Page 14 of 18 PageID #: 5006

Magnolia Island Plantation, et al. v. Lucky Family, LLC, et al.
PATRICK HENRY LACOUR

Page 85

```
1   Q    Did you have to testify as an expert?
2   A    You know, it was -- it was in May.  I think it
3        was at the -- yeah, it was at the end of May.
4   Q    Did you have to testify as an expert in that
5        matter?
6   A    No.  We avoided court with a very successful
7        mediation effort.
8   Q    And which parish is that?
9   A    That was in Caddo.
10  Q    Caddo.  Okay.  When you received the letter
11       from Mr. Shelton on October 10th -- this is
12       the six-page letter that was attached to the
13       first email -- was it your understanding that
14       a third appraisal was required at that date?
15  A    You're referring to Exhibit 7?
16  Q    I believe it's Exhibit 3, and it's the first
17       attachment to Exhibit 3, so it's the first
18       email Mr. Shelton sent in the series.
19  A    Okay.  I'm looking at that now.
20  Q    Was it your understanding that your services
21       would be required in this matter?
22  A    Yes.
23  Q    So you believed that a third appraisal was
24       necessary at that time?
25  A    Yes.
```



Case 5:18-cv-01526-SMH-KDM   Document 198-13   Filed 11/12/22   Page 15 of 18 PageID #: 5007
Magnolia Island Plantation, et al. v. Lucky Family, LLC, et al.
PATRICK HENRY LACOUR

Page 100

```
 1          Right?
 2    A     Correct.
 3    Q     That doesn't affect your opinion?
 4    A     No.  I have to take the facts as they were at
 5          the time.
 6    Q     And it doesn't affect your opinion that now
 7          Ms. Lollar and Magnolia Island Plantation, LLC
 8          and Mr. Lollar find themselves in a
 9          circumstance where a note that they created
10          exists and is secured, and has been bought by
11          another party.  Right?  That doesn't affect
12          your opinion as to that.  Right?
13    A     I'm unaware of those facts.  But again, that
14          would not affect the value that I arrived at
15          on October 19th of 2018.
16    Q     Okay.  What they did is on them?
17    A     I don't know what really has come afterwards,
18          and it would, I guess, be of some interest to
19          know, but it would not affect the value that I
20          would have put on it at the time.
21    Q     Now, you mentioned the lady that you spoke to
22          in the Sheriff's office.  Was that Ms. Kim
23          Flournoy?
24    A     Flournoy, yes.
25    Q     Does that refresh your recollection as to --
```



Case 5:18-cv-01526-SMH-KDM   Document 198-13   Filed 11/12/22   Page 16 of 18 PageID #: 5008
Magnolia Island Plantation, et al. v. Lucky Family, LLC, et al.
PATRICK HENRY LACOUR

Page 101

```
 1   A    Because of the --
 2   Q    -- the person with whom you were dealing?
 3   A    Not -- her name is very unique.  That's why I
 4        know it.
 5   Q    Okay.
 6             MR. SHELTON:
 7        Let me see some of the other exhibits
 8        here.  Don't we have one with the Oath of
 9        the appraiser attached to it?
10             MR. POWELL:
11        I think it's Exhibit 3, Email 2.  Try that
12        one.
13             MR. SHELTON:
14        Oh, here we go.  Okay.  Thank you, Mr.
15        Powell.
16   BY MR. SHELTON:
17   Q    Exhibit 3 to your deposition has attached to
18        it an Oath of an appraiser.  Right?
19   A    Yes.
20   Q    And it has a description of the note that you
21        were undertaking an oath to appraise.  Is that
22        right?
23   A    Yes.
24   Q    And it states that it was an original
25        promissory note dated November 2, 2017.  Do
```



# WHITEHALL ADVISORS, LLC
3820A BAYOU RAPIDES RD · ALEXANDRIA, LA 71303

October 19, 2018

Hon. Julian C. Whittington
Bossier Sheriff's Office
204 Burt Boulevard
Benton, LA 71006

                                                 RE:    **FMV of Promissory Note
                                                                 100% Interest**

Dear Sheriff Whittington,

I have performed a calculation engagement in accordance with the Statement on Standards for Valuation Services ("SSVS") of the American Institute of Certified Public Accountants and the professional standards of the National Association of Certified Valuation Analysts.

I have performed certain calculation procedures to estimate the fair market value, as of October 19, 2018, of that certain original promissory note dated November 2, 2017 made by Ronald William Lollar payable to Barbara Marie Carey Carr Lollar or her order in the principal amount of One Million Seven Hundred Thirty Thousand and No/100ths Dollars ($1,730,000.00) plus interest thereon at the rate of four percent (4%) per annum until paid, payable in four (4) consecutive annual installments of $100,046.00, the first such installment being due and payable on November 1, 2018, and a final balloon payment equal to all remaining principal and interest then due hereunder, due and payable on November 1, 2022 ("said property").

My procedures and calculation were based on information drawn from public records recorded with the Bossier Parish clerk of court. The calculated value in this report is intended to be used for the public auction on or about Wednesday, October 24, 2018. A calculation engagement does not include all of the procedures required in a valuation engagement; had a valuation engagement been performed, the results may have been different. Although a calculation engagement was necessary because of time constraints, I have acted fairly and impartially and do hereby offer my sincere opinion of true value of the said property in cash to the best of my knowledge, information, and belief.

> *Appraisement of said property:*                                $ 157,009.22

> *2/3rds of Appraisement of said property:*          $ 104,672.81

I appreciate this opportunity to serve you. My worksheet of these calculations and my curriculum vitae are attached for your records. Should you have any questions with respect to the issues we have discussed, we encourage you to call me.

Patrick Lacour, CIA, CVA



Lacour 210

**EXHIBIT K**

*Attachment*

Worksheet - FMV for Public Auction
Promissory Note of Magnolia Island Plantation, LLC
26th JDC, Dockets 127,573, Div "F" and 155,382, Div "A"
As of October 24, 2018

The fair market value of a promissory note was lower than the sum of unpaid principal and accrued interest. To the lender, the fair market value of a promissory note equals the present value of future principal and and interest payments discounted at a risk-adjusted rate of return to the valuation date.

To value a debt instrument, the following are taken into consideration:
1.) the history of the debt instrument; and
2.) the terms of the legal documents governing the obligation; and
3.) the financial position and credit risk of the debtor; and
4.) any assets that serve as collateral or otherwise affect the creditor's position; and
5.) the probability that the creditor will be repaid in full on time.

### Schedule of Required Yield for FMV Instrument

| | | |
|---|---|---|
| Base yield | 7.5% | Current U.S. Prime 5.25% plus 2.25% |
| **Adjustments:** | | |
| 1.) Lack of liquidity | 10.0% | Vendor's lien attached; borrowing company formed two days before transaction |
| 2.) Lack of marketability | 5.0% | Related party transaction between husband and wife; no personal guarantee given |
| 3.) Quality of borrower | 10.0% | Magnolia Island Plantation, LLC formed 10/31/17; no credit history, no payment history |
| 4.) Quality of collateral | 7.0% | Cloudy title; Notice of Lis Pendens filed 2/20/18, instrument #1185201 |
| 5.) Coverage of collateral to note | 5.0% | Per Glenn A. "Russ" Wilson, Jr. MAI 280.135 acres @ $4k/acre is only ~$1.12M (~65%) |
| 6.) Loan duration/term | 4.0% | Based on 30 year term rather than commercial terms of 10 to 15 years |
| 7.) Payment frequency | 0.0% | Annual; commercial loan standards are monthly; conversion to monthly performed to adjust |
| 8.) Default provisions | 0.0% | Evident |
| 9.) Protective covenants | 10.0% | Working capital requirements, interest coverage and debt/equity ratios etc. absent from credit sale deed |
| 10.) Restrictive covenants | 10.0% | Seller's mortgage (not assignable); transferability of note depends on approval of borrower |
| Monthly payout rate | 68.5% | |
| Convert to annual convention | 94.7% | |
| Required yield used | 95.0% | |

### Note Valuation Table

**Terms of the Note:**

| | |
|---|---|
| Principal balance (face value) | $ 1,730,000 |
| Annual interest rate | 4.0% |
| Annual installment payment | $100,046.07 |
| Required yield (market interest rate) | 95.0% |
| Issue date | 11/2/2017 |
| Maturity date | 11/1/2022 |
| Valuation date | 10/19/2018 |

| Year/Period | Date | Beginning Principal | Principal Payments | Interest Payment | Ending Balance | PV Factor | PV of Cash Flow |
|---|---|---|---|---|---|---|---|
| 1 | 11/1/2018 | $ 1,730,000.00 | $ 30,846.07 | $ 69,200.00 | $ 1,699,153.93 | 0.513 | $51,305.68 |
| 2 | 11/1/2019 | 1,699,153.93 | 32,079.91 | 67,966.16 | 1,667,074.01 | 0.263 | $26,310.60 |
| 3 | 11/1/2020 | 1,667,074.01 | 33,363.11 | 66,682.96 | 1,633,710.90 | 0.135 | $13,492.62 |
| 4 | 11/1/2021 | 1,633,710.90 | 34,697.64 | 65,348.44 | 1,599,013.27 | 0.069 | $6,919.29 |
| 5 | 11/1/2022 | 1,599,013.27 | 1,599,013.27 | 63,960.53 | - | 0.035 | $58,981.03 |
| Totals | | | $ 1,730,000.00 | $ 333,158.08 | | | $157,009.22 |

**EXHIBIT K**