UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

MAGNOLIA ISLAND PLANTATION,     CIVIL ACTION NO.
LLC, AND BARBARA MARIE           5:18-CV-1526
CAREY LOLLAR

VERSUS                                DISTRICT JUDGE:
                                       S. MAURICE HICKS, JR.

LUCKY FAMILY, LLC, ET AL.    MAGISTRATE JUDGE:
                                       KAREN L. HAYES

DEPOSITION OF JEAN HORNE
November 20, 2019

Reported By:
Donna B. Crenshaw, CCR, CSR

EXHIBIT M

318.424.1707        KAREN TYLER REPORTING, LLC        318.424.1744 - Fax
3000 Fairfield Avenue, Suite A - Shreveport, LA 71104

```
 1   earlier no?
 2        A.   I did not.
 3        Q.   Okay.  The sheriff's office did not?
 4        A.   Not to my knowledge.
 5        Q.   Okay.  Mr. Shelton provided y'all with an
 6   appraiser for this.  Is that correct?
 7        A.   The name was given.
 8        Q.   Okay.  Did anybody at the sheriff's office
 9   contact Mr. Lacour before he made his appraisal?
10        A.   I do not know.
11        Q.   Who would know that?
12        A.   Kim Flournoy.
13        Q.   Have you asked Kim?
14        A.   No, I have not.
15        Q.   Okay.  Have you reviewed the file?
16        A.   Yes.
17        Q.   Did anything in the file indicate that
18   anybody from the sheriff's office contacted Mr. Lacour
19   prior to him making his appraisal?
20        A.   I don't remember that.  I know afterwards but
21   not before.
22        Q.   Okay.  And when you say you know afterwards
23   rather than before, you mean after the appraisal, you
24   know of contact versus before the appraisal?
25        A.   Yes.
```

JEAN HORNE                                                                                                                                                      11/20/2019

24

1  Q.  Okay.  This is Exhibit 9 from Chief Miller's
2  deposition.  It was a letter on October 10, 2018 from
3  Mr. Shelton to Mr. Lacour.  This is providing
4  Mr. Lacour documents and information for the purpose
5  of making his appraisal.
6          Did the sheriff's office request that
7  Mr. Shelton send this letter?
8  A.  I do not know.
9  Q.  Is it normal procedure for the judgment
10 creditor's counsel to provide all the information to
11 the third appraiser?
12 A.  I do not know.
13 Q.  Well, in normal procedure in your office,
14 sheriff's office?
15 A.  Ask that again.
16 Q.  Let me go back to -- I'm going to ask that
17 again, but let me ask when you talk about obtaining a
18 third appraisal for land sale or a house that's been
19 foreclosed on, does the sheriff's office provide the
20 information to the third appraiser so that he can --
21 so that the third appraiser may make the appraisal?
22 A.  They would get a copy of the writ.
23 Q.  Okay.
24 A.  Which gives the description of the property.
25 Q.  Okay.  And if the appraiser had any questions

318.424.1707                                  KAREN TYLER REPORTING, LLC                                  318.424.1744 - Fax
                                  3000 Fairfield Avenue, Suite A - Shreveport, LA 71104

```
 1   for the sheriff's office, would the sheriff's office
 2   provide them what they could?
 3        A.   Yes.
 4        Q.   Okay.  So my question here is, is it the
 5   normal process of the sheriff's office to have the
 6   judgment creditor's counsel provide all the
 7   information to the third appraiser?
 8             MS. PARKS:  Objection to form.  I don't
 9   believe she testified that she had the judgment
10   creditor's counsel provide all the information.
11             MR. POWELL:  She did not.  I'm just asking
12   if it's -- if the act that occurred here would be
13   normal procedure for the sheriff's office.  She said
14   earlier -- I know that she may say that she did not
15   direct it.  I'm saying is it normal procedure for this
16   to occur.
17        A.   I don't understand.
18   BY MR. POWELL:
19        Q.   Okay.  So this is a letter --
20        A.   Uh-huh.
21        Q.   -- from Curtis Shelton, who is Mr. Lucky's
22   counsel.  Let me ask this.  Is Mr. Shelton, the
23   sheriff's office counsel in any way?
24        A.   Is Mr. Shelton?
25        Q.   That's correct.
```

1  A. No.
2  Q. Okay. Mr. Shelton provided Mr. Lacour, who
3  is the third appraiser, the documents for which he was
4  to rely upon in making his appraisal.
5     Is it normal procedure for the judgment
6  creditor's counsel to provide that information to the
7  third appraiser?
8  A. This is not normal --
9  Q. Okay.
10 A. -- in our procedure.
11 Q. Okay. Who in the office reviewed
12 Mr. Lacour's appraisal when it was presented to the
13 sheriff's office?
14 A. Kim Flournoy would have received it.
15 Q. Okay. Who would make the decision at the
16 sheriff's office that Mr. Lacour's appraisal could be
17 used to set the note's value for the October 24th,
18 2018 sheriff's sale?
19     MS. PARKS: Objection to form. You can
20 answer it, but.
21     MR. POWELL: I feel pretty good on the
22 form, so you can go ahead.
23     MS. PARKS: The question assumes that
24 someone in the sheriff's office makes that
25 determination. I think you should first ask her if

JEAN HORNE                                                                11/20/2019

49

1      appraisal?
2          A.   I am not.
3          Q.   Okay.  Was there any communication to
4      debtor's counsel regarding Mr. Lacour?
5          A.   I do not know.
6          Q.   Who would know that?  Would it be Kim
7      Flournoy?
8          A.   Yes.
9          Q.   If there was communication with debtor or
10     debtor's counsel, the sheriff's office could provide
11     that in this matter; correct?
12         A.   It's part of what's on record.
13         Q.   If it's -- if there was communication with
14     the debtor or debtor's counsel regarding Mr. Lacour's
15     identity prior to his appraisal, the sheriff's office
16     could provide evidence of that?
17         A.   If there was.
18              MR. SHELTON:  I'm -- she was asked and
19     answered that.  Okay.  Go ahead.  If there was.  Okay.
20     If there was evidence.
21              THE WITNESS:  If.
22     BY MR. POWELL:
23         Q.   Yeah.  They could provide that.  Okay.  We've
24     discussed how this was a -- I believe y'all used the
25     term "unusual."  I may have said that wrong, but this