UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| MAGNOLIA ISLAND PLANTATION L.L.C. and BARBARA MARIE CAREY LOLLAR | § § § § | CIVIL ACTION NO: 5:18-cv-01526 |
| Plaintiffs | § | |
| VS | § § | CHIEF JUDGE S. MAURICE HICKS, JR. |
| LUCKY FAMILY, L.L.C., ET AL | § § § | MAG. JUDGE KAYLA D. MCCLUSKY |
| Defendants | § | JURY TRIAL DEMANDED |

**OPPOSITION TO DEFENDANT'S *MOTION IN LIMINE*
TO EXCLUDE TESTIMONY OF ARTHUR L. SCHWERTZ**

Now into Court, through undersigned counsel, comes plaintiffs Barbara Marie Carey Lollar and Magnolia Island Plantation, L.L.C. who file this Opposition to the Defendants' *Motion in Limine to Exclude Testimony of Arthur L. Schwertz*. In support thereof, the Plaintiffs respectfully represent as follows:

**I. INTRODUCTION**

W.A. Lucky, III ("Mr. Lucky") filed a *Motion in Limine to Exclude Testimony of Arthur L. Schwertz*, with a supporting memorandum, on November 2, 2022. [Rec. Doc. 190]. Later that day, Julian C. Whittington, Kimberly Flournoy, and Lucky Family, L.L.C. filed similarly titled motions to adopt by reference the contents of Mr. Lucky's motion and memorandum. [Rec. Docs. 194 and 195 respectively] Collectively, these motions are referred to as the "Daubert Motion."

It is not surprising that all Defendants have again formed a collective attack as to this expert, even if just by way of adopting of Mr. Lucky's argument. Mr. Schwertz's opinion identifies the blatant irregularities that occurred in the process by which the operative appraisal was obtained for the sale of Barbara Lollar's promissory note (the "Note"). His opinions are based on extensive

1

experience having been repeatedly appointed as an appraiser for multiple Sheriff's departments in Louisiana, and this background makes him eminently qualified to testify on the subject.

The Daubert Motion attempts to re-frame the scope and purpose of Mr. Schwertz's opinions towards discussions of the purported third appraiser's (Patrick Lacour's) valuation in order to fit an argument for exclusion. The Court should not bite on this red herring: Mr. Schwertz has been clear that valuation of the Note was not the purpose of his opinion. Instead, Mr. Schwertz focuses on the appraisal procedure that led to the sale of Mrs. Lollar's Note to Mr. Lucky's family company for pennies on the dollar. Mr. Schwertz found the facts of this matter "disconcerting" based on the manner in which Mr. Lucky's counsel served as the sole point of contact and sole source of information for Mr. Lacour. This was contrary to Mr. Schwertz's experience and would serve to undermine the independence of the referee appraiser role.

Mr. Schwertz's testimony would provide this Court with a necessary perspective which is not available from Lacour or Mr. Lucky's own expert, Chad Garland. Both of those parties have testified that they have no prior experience being appointed by a Sheriff for this purpose.

> Q: Let's talk about that. You value promissory notes. On a regular basis?
>
> A: Well, they're pretty atypical.
>
> Q: How many do you think you've done?
>
> A: I'm trying to think if did one in '09. This is probably the first report that I've issued. I've done work internally for clients on loans and promissory notes, but this is probably the first report that I've issued.

**Deposition of Patrick Lacour at p. 60: 16-24.**[1]

---

[1] See **Exhibit A**, attached hereto, for excerpt from Deposition of Patrick Lacour.

> Q: Do you normally do Sheriff's sale appraisals in any manner?
>
> A: No. This is my first.

**Deposition of Patrick Lacour at p. 82: 12-14**

> Q: Can you name another report you've performed where you valued a promissory note?
>
> A: This is the first time I've valued a promissory note by itself.
>
> Q: Do you often do appraisals for sheriff's sales?
>
> A: This was the first one for a sheriff's sale. Almost all of my valuations are around ongoing businesses.

**Deposition of Chad M. Garland at p. 60: 2-10.[2]**

Despite the experience Mr. Schwertz would bring to this matter, the Defendants seek for his testimony and perspective to be excluded and placed beyond the Court's view.

Mr. Schwertz's testimony is certainly relevant to the Plaintiffs' claims of deprivation of due process rights by the Defendants and deprivation of property caused by the wrongdoing by W.A. Lucky, III and Lucky Family, L.L.C. These claims are based in part on the process by which Mrs. Lollar's property was able to be seized by authorities and sold for only 6% of its value. Mr. Schwertz's testimony regarding how the facts of our matter diverge from his experience is relevant to the fouling of the process leading to the losses suffered by Mrs. Lollar. For the reasons that follow, Mr. Schwertz' opinions should not be excluded and the Daubert Motion should be denied.

---

[2] See **Exhibit B**, attached hereto, for excerpts of deposition of Chad M. Garland.

## II. LAW

Federal Rule of Evidence 702 allows for an expert qualified by knowledge, skill, experience, training, or education to provide testimony if it has a reliable methodological and factual basis and if it will help the trier of fact to understand the evidence or to determine a fact in issue. The Supreme Court in *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 588, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) provided a two-prong test for determining the admissibility of expert testimony under Rule 702. The first prong focuses on whether the expert testimony is based on a reliable methodology. *Id*., at 589.[3] The second prong, i.e., whether the proposed testimony will assist the trier of fact to understand or determine a fact in issue, goes primarily to the issue of relevancy. *Daubert*, at 591.

Rule 702's states that an "expert" may be qualified based on knowledge, skill, experience, training, or education. Therefore, an expert's experience can serve as the basis for their testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999); See also *Ricks v. City of Alexandria*, No. CIV.A. 12-0349, 2014 WL 4274144, at *9 (W.D. La. Aug. 28, 2014).[4] Relevancy is generally governed by Federal Rule of Evidence 401. As applied to a court's gatekeeping function under Rule 702, "relevance" means that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue. *Bocanegra v. Vicmar Servs., Inc*., 320 F.3d 581, 584 (5th Cir. 2003). The basic standard of relevance remains a liberal one in a *Daubert* inquiry. *Daubert*, at 587.

---

[3] See also *Matthews v. Allstate Ins. Co*., 731 F. Supp. 2d 552, 556 (E.D. La. 2010).

[4] citing *Kirkland v. Marriott International Inc.,* 416 F.Supp.2d 480, 484 (E.D.La.2006), and *Pipitone v. Biomatrix,* 288 F.3d 239, 245–50 (5th Cir.2002).

### III. ARGUMENT

**A. Mr. Schwertz's Experience and Opinion.**

Mr. Schwertz is a Senior Managing Director for Vailbridge Property Advisors, the largest independent commercial property valuation and advisory service firm in the United States.[5] Mr. Schwertz holds appraisal certifications in twelve states, and served as President of the Louisiana Chapter of the Appraisal Institute in 2017.[6] He has been qualified as an expert witness in numerous state courts, as well as the U.S. Court of Federal Claims, the U.S. District Court for the Eastern District of Louisiana and the U.S. Bankruptcy Court for the Middle District of Louisiana.[7] In addition, Mr. Schwertz's has acted as an appraiser in numerous Sheriff's sales in Louisiana: he has served in that role for six different Sheriff offices[8] for an estimated 50 to 60 Sheriff sales.[9] Mr. Schwertz has been appointed to serve as the Sheriff's appraiser for twelve of those instances.[10]

Mr. Schwertz's report was limited in scope in order to provide an opinion on the purported appointment of Mr. Patrick Lacour as the referee appraiser for the Sheriff's sale of Mrs. Lollar's Note. The opinion was based upon his experience not only as an appraiser, but one who has been appointed multiple times by various Sheriffs in Louisiana. Through this lens, Mr. Schwertz identified concerning events with how Lacour was contacted and how Laocur received information. In Mr. Schwertz's experience, third appraisers are engaged directly by the Sheriff's office to maintain the independence of the referee appraisal's role. However, in our matter, Mr.

---

[5] *www.vailbridge.com*, last accessed on November 14, 2022.

[6] **Rec. Doc. 190-1**, Qualifications of Arthur L. Schwertz, MAI.

[7] *Id*.

[8] See **Exhibit C,** Deposition of Arthur L. Schwertz, at p.56:14-16.

[9] *Id*. at p. 147:19-25 and p.148: 1-10

[10] *Id*. at p. 150: 13-23. Mr. Schwertz also testified that he has trained under appraisers that also performed work for Sheriff's offices.

Schwertz points out that the judgment creditor's counsel, Mr. Curtis Shelton, was Mr. Lacour's sole contact. Further, he noted the one-sided nature of the information provided by Shelton to Lacour in the "Shelton Letter," which included the only information utilized by Lacour.[11] Finally, Mr. Schwertz was able to draw on his familiarity with appraisal standards to recognize that Lacour did not follow the requirements for a "calculation engagement" due to the lack of any agreement by the Sheriff with Lacour on the methods and approach that would be used prior to performing the work. Mr. Schwertz found the presence of "red flags" which were ignored, and a process which was "disconcerting" in his experience.[12]

### B. Mr. Schwertz's Testimony Is Relevant To Plaintiffs' Claims.

Mr. Schwertz's testimony is relevant to several of Plaintiffs' claims in this suit. First, Mr. Schwertz's analysis will help the trier of fact understand the evidence related to the claim that Mr. Lacour's own process was improper. (Rec. Doc. 186, ₱59-61, 65). Although the valuation by the Lacour suffers from many deficiencies that will be addressed by Plaintiffs' expert John Dean, this Court has previously recognized that a third appraisal can also be invalid due to the improprieties of the process, irrespective of the valuation.[13] The Schwertz report explains how Mr. Lacour's work violated the Statement on Standards for Valuation Services because it was not grounded in objectivity and did not include an agreement with the client as to the valuation approach which would be employed. Plaintiffs note that their allegation about the impropriety of Mr. Lacour's appraisal process is distinct from the separate claim that no lawful appointment of a third appraiser

---

[11] This Court has also recognized the fact that Lacour has testified in deposition that he only utilized the information provided by Shelton in creating his appraisal. See **Rec. Doc. 158** at p. 11 of 39, referencing **Rec. Doc. 71-5**.

[12] **Rec. Doc. 190-1**, Rule 26 Report from Arthur L. Schwertz at p. 3 of 11.

[13] See **Rec. Doc. 160**, at p. 4of 6.

was ever made in accordance with La. R.S. 13:4365 (Rec. Doc. 186, ¶56, 57). Mrs. Lollar has recently submitted a motion for summary judgment on the latter contention [Rec. Doc. 198].

Next, Mr. Schwertz's expertise will likewise aid the trier of fact in relation to Plaintiffs' claims that Mrs. Lollar has been deprived of her property rights without due process of law and that Mr. Lucky and Lucky Family, LLC have abused legal processes, resulting in the sale of the Note for a drastically reduced value (Rec. Doc. 186, ¶73-88)  Mr. Schwertz' testimony provides insight into the purpose of the third appraiser as an independent role in the process and how Defendants ultimately obstructed that purpose.  Plaintiffs should be permitted to present such testimony regarding how the process itself was flawed in a manner that deprived Mrs. Lollar of due process under the law and led to the unjust enrichment of Lucky Family, L.L.C.  Mr. Schwertz' experience with this process is a needed perspective, as both Patrick Lacour and Mr. Lucky's own expert, Chad Garland, were admittedly first-timers to appraising for the purpose of a Sheriff's sale. Only Mr. Schwertz has served in this role repeatedly and for separate Sheriff's offices in Louisiana.

### B. Defendants' Mischaracterize The Nature And Relevance Of Schwertz's Testimony.

The Daubert Motion attacks Schwertz based on issues outside of the scope of his testimony. For example, Defendants discuss that Mr. Schwertz did not appraise the Note and is not providing an opinion on what an appropriate valuation would be.[14]  This is accurate but irrelevant – Mr. Schwertz's Rule 26 Report was not presenting an opinion on an actual valuation of the Note.  Mr. Schwertz was upfront and honest about the scope of his testimony in this regard when he was deposed, as he made clear that he was not valuing the Note itself.[15]  Of course, issues with Lacour's

---

[14] Mr. Lucky's Memorandum in Support of his Motion in Limine at **Rec. Doc. 190-3,** at p. 1.

[15] **Exhibit C**, deposition of Arthur L. Schwertz, at p. 18:4-16.

valuation is something that this Court will hear about at trial and Plaintiffs' other expert, John Dean, will provide his testimony regarding the same. Mr. Dean found that Lacour's appraisal suffered from numerous issues on the valuation front, such as ignoring collateral (as the Shelton Letter instructed) and utilizing unsupported discount factors just to name a couple of issues. This led Mr. Dean to determine the Lacour appraisal was "significantly flawed" and "outside the bounds of reasonableness."[16] Although Mr. Dean has extensive experience regarding valuation, he has not served in the role as a Sheriff's third appraiser like Schwertz. By trying to attack Schwertz on areas outside of this scope, the Defendants are creating a strawman. This is because they know Mr. Schwertz has significant experience giving weight to his testimony on *the process,* which testimony is relevant and otherwise admissible under *Daubert* standards.

Defendants also argue that Schwertz's testimony would just be a reiteration of what Plaintiff's counsel can argue. Defendants have confused legal argument with the expert's experienced opinion. Undersigned has never been appointed as a referee appraiser. Although counsel can argue that the facts of this matter reflect impropriety, Mr. Schwertz can explain why the situation presented "red flags" based on his experience in the same role and process in multiple jurisdictions in this State. This will undoubtedly assist the trier of fact.

Mr. Lucky's argument also attempts to characterize Mr. Schwertz's testimony as simply being about Mr. Lacour's "state of mind."[17] This is another red herring, as even the Defendants' own briefing recognized his avoidance of that topic.[18] Mr. Schwertz has simply pointed out where the process does not follow standard protocol in his experience, and where Mr. Lacour proceeded

---

[16] See **Rec. Doc. 143-2**, Rule 26 Report of John W. Dean.

[17] Mr. Lucky's Memorandum in Support of his Motion in Limine at **Rec. Doc. 190-3,** at p. 7-8.

[18] *Id*. at p. 8, Schwertz is quoted as not opining on whether Lacour is honest or a crook.

despite warning signs apparent to Schwertz.[19] There is no dispute that Mr. Lacour proceeded at Mr. Shelton's direction, and we now know that Shelton was his only contact. Therefore, a referee appraiser was a captive audience to the judgment creditor's counsel. Mr. Lacour was already working with Mr. Lucky's counsel on another project at this same time.[20] Only certain curated information was provided to Mr. Lacour from Mr. Lucky's counsel, along with the Shelton Letter that provided slanderous commentary on the Plaintiffs and instructions for Mr. Lacour on this new project. Is any of this normal? Not even the Sheriff's own employees think so, as Jean Horne testified in her deposition that it was "not normal."[21] In Mr. Schwertz's experience, such facts are "disconcerting" considering the purpose of the referee appraiser role. He testified at his deposition that although he is not testifying as to someone's state of mind, he can testify as to whether objectivity has been hindered based on the lack of, or type of, information provided.[22] This is not testimony regarding a state of mind – Mr. Schwertz avoids entering the realm of speculating on Lacour's motivation to proceed under those circumstances.

Defendants also argue that Schwertz offers no testimony toward causation.[23] This argument is simply a subjective interpretation. Schwertz provided an opinion that the anomalous method by which Lacour received information and the lack of contact with the Sheriff's office harms the independence and the propriety of the assignment.[24] This is valid and relevant testimony under Rule 702 that would aid the trier of fact in our matter.

---

[19] **Exhibit C**, deposition of Arthur L. Schwertz, at p. 44:4-25; p. 45:1-10.

[20] See **Rec. Doc. 71-4** for excerpt from the Deposition of Patrick Lacour at p. 59 discussing that he was actively working with Mr. Shelton in other matters at this same time.

[21] See **Rec. Doc. 198-15**, for excerpt of the Deposition of Jean Horne at p. 26:2-10.

[22] See **Exhibit C**, deposition of Arthur L. Schwertz, at p. 29:10-17.

[23] See p. 1 of Mr. Lucky's Memorandum in Support of his Motion in Limine at **Rec. Doc. 190-3**.

[24] **Rec. Doc. 190-1**, Rule 26 Report from Arthur L. Schwertz at p. 3 of 11.

Finally, Defendants argue incorrectly, and without support, that Plaintiffs' counsel was provided notice that Mr. Lacour was appointed by the Sheriff and therefore they were free to contact Mr. Lacour.[25] The only support offered in their argument was that Defendants' counsel presented such a scenario to Mr. Schwertz as a hypothetical to get his comment. However, the evidence in this matter does not support any actual opportunity or notice being provided to Plaintiffs prior to Lacour performing the appraisal Mr. Shelton instructed of him. Instead, the evidence abounds with emails between the Sheriff's office and Mr. Lucky's counsel, which only came to light in discovery after this suit was filed. The first indication Plaintiffs counsel received that a third appraiser would even be needed was after Mrs. Lollar's appraisal by John Dean was turned in, which was weeks after when Mr. Lucky's counsel provided the Shelton Letter and information to Lacour. At no point was Plaintiffs' counsel even asked for input on a third appraiser and at no point were the Plaintiffs provided any opportunity to be involved in that part of the process. Such involvement was reserved to Mr. Lucky and his counsel.

## IV. Conclusion

Defendants W. A. Lucky, III and Lucky Family, L.L.C. saw a new opportunity in the vacuum created by the Sheriff's inaction and took control of a process in order to favor their aim. The result was an operative appraisal fouled by biased information and one-sided contact. Now, the Defendants seek to exclude the one appraiser thus far who has extensive prior experience with the precise process which was central to the harm alleged by Plaintiffs. Mr. Schwertz's qualifications and experience are beyond question and his testimony is relevant to Plaintiff's claims and will assist this Court in its determinations.

---

[25] See p. 6 of Mr. Lucky's Memorandum in Support of his Motion in Limine.

Respectfully submitted by,

*/s/ J. Davis Powell*
Randall S. Davidson, LSBA No. 4715, TA
J. Davis Powell, LSBA 33631
Andrew D. Martin, LSBA 34947
DAVIDSON SUMMERS, APLC
330 Marshall Street, Suite 1114
Shreveport, Louisiana 71101
Ph: (318) 424-4342 | (318) 226-0168
E:   rsdav@davidsonsummers.com
     dpowell@davidsonsummers.com
     dmartin@davidsonsummers.com

***Counsel for Barbara Marie Carey Lollar***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing was filed electronically with the Clerk of Court using the CM/ECF filing system, and notice of the same will be sent to all counsel of record by operation of the court's electronic noticing system.

Shreveport, Louisiana, on this 16th day of November, 2022.

*s/ J. Davis Powell*
OF COUNSEL