UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| MAGNOLIA ISLAND PLANTATION, L.L.C., ET AL. | CIVIL ACTION NO. 5:18-CV-1526 |
| | DISTRICT JUDGE: S. MAURICE HICKS, JR. |
| V. | MAG. JUDGE KAYLA D. MCCLUSKY |
| LUCKY FAMILY, L.L.C., ET AL. | JURY TRIAL DEMANDED |

### MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE TO EXCLUDE TESTIMONY OF ARTHUR L. SCHWERTZ

**Reply Argument**

In their *Opposition to Defendants' Motion in Limine to Exclude Testimony of Arthur L. Schwertz* ("*Defendants' Opposition*"),[1] plaintiffs, Barbara Marie Carey Lollar ("Mrs. Lollar") and Magnolia Island Plantation, L.L.C. ("Magnolia") do not address Mr. Schwertz's complete lack of any qualification to testify whether the Sheriff or his deputies followed the law, Louisiana Revised Statutes 13:4365(B) in appointing Patrick Lacour as an appraiser. This is the only thing that, according to Mr. Schwertz, he was testifying to in his opinion. Mr. Schwertz testified: "All I am testifying in my opinion is whether I believe the sheriff's office followed the correct procedure in securing a third-party impartial appraiser." **Rec. Doc. No. 190-2**, p. 18 of 31 (*Schwertz Depo*. 122:10-14); *see also* **Rec. Doc. No. 190-2**, p. 5 of 31 (*Schwertz Depo*. 19:11-14)("I was simply asked to do – to opine on whether correct procedures were followed in obtaining the appraiser – a third appraiser.") and **Rec. Doc. No. 190-2**, p. 14 of 31 (*Schwertz Depo*. 110:2-6)("No, because I was asked . . . I'm testifying to whether correct procedures were followed in selecting the third party appraisal and third-party appraiser.").

---

[1] **Rec. Doc. No. 200**.

Mrs. Lollar and Magnolia point to Mr. Schwertz's qualifications **as a real estate appraiser**. They also point out that, as recognized in *Defendants' Motion in Limine to Exclude Testimony of Arthur L. Schwertz* (the "*Motion in Limine - Schwertz*"),[2] Mr. Schwertz has acted as an appraiser for sheriff's sales. There is no doubt that Mr. Schwertz is qualified to appraise real estate. However, Mr. Schwertz does not express any opinion in this case concerning an appraisal of real estate. The opinions being offered from Mr. Schwertz are "whether correct procedures were followed in selecting the third party appraisal and third-party appraiser."[3]

The procedure for appointment of a third appraiser is stated in Louisiana Revised Statutes 13:4365(B):

> B. If the appraisers cannot agree, and (1) the difference in value between the two appraisals does not exceed two hundred and fifty thousand dollars, and (2) the value assigned by the lower of the two appraisers is at least ninety percent of the value assigned by the higher of the two appraisers, then the sheriff shall average the two figures and use the average as the appraised value for purposes of determining the opening bid. ***In those cases where the two appraisers do not agree and the values are not within the averaging limits, then the sheriff shall appoint a third appraiser, who shall also be sworn, and whose decision shall be final***.

(Emphasis added). Mr. Schwertz is neither qualified nor entitled to act as a judge, lawyer, or other legal expert and provide the jury with his opinion of what the law requires. And, even if such testimony was proper, which it is not,[4] Mr. Schwertz identifies no applicable standards (such as a rule requiring the Sheriff to obtain appraisers' names from opposing counsel) to support his legal opinions.

---

[2] **Rec. Doc. No. 190**.

[3] **Rec. Doc. No. 190-2**, p. 14 of 31 (*Schwertz Depo*. 110:2-6).

[4] "'Expert testimony is an improper mechanism for offering legal arguments to the [c]ourt ... [because it] would be unfair to [one party] for the [c]ourt to award [the opposing party]'s legal arguments the elevated stamp of expert.'" *Id.* (quoting *Sparton Corp. v. U.S.*, 77 Fed. Cl. 1 (2007)).

2

Mr. Schwertz is wholly unqualified to opine on what procedures the Sheriff in this case (or any sheriff) should have followed. Mr. Schwertz testified:[5]

> Q. Do you know of any law or standard that says that a sheriff is obligated to seek out the names of appraisers from both sides before they appoint a third-party appraiser?
>
> A. I don't know law. I just know the way the local sheriffs in South Louisiana have done it.

Mr. Schwertz also testified:[6]

> Q. Okay. Okay, I got you. Have you had any specific training or gone to any seminars concerning sheriff sales or collections of judgments?
>
> A. I have only done work for various sheriff departments.
>
> Q. Okay. But you've never had any kind of training or seminar on that?
>
> A. Rephrase the question. Seminar as to what?
>
> Q. As to the process of sheriff sales or the process of collection of judgments?
>
> A. No, I have not.

Mr. Schwertz went on to admit that (1) he only has experience dealing with six Louisiana sheriffs,[7] (2) he has never dealt with any north Louisiana sheriffs,[8] (3) he had never been to any meeting of the Louisiana Sheriff's Association,[9] and (4) he had never been to any conferences or seminars conducted with the Louisiana Sheriff's Seminar.[10] Mr. Schwertz is not shown to have any

---

[5] **Rec. Doc. No. 190-2**, p. 10 of 31 (*Schwertz Depo*. 56:4-11).

[6] **Rec. Doc. No. 190-2**, p. 7 of 31 (*Schwertz Depo.* 33:8-19.)

[7] **Rec. Doc. No. 190-2**, p. 10 of 31 (*Schwertz Depo*. 56:4-11).

[8] **Rec. Doc. No. 190-2**, p. 10 of 31 (*Schwertz Depo*. 56:17-18).

[9] **Rec. Doc. No. 190-2**, p. 10 of 31 (*Schwertz Depo*. 56:19-21).

[10] **Rec. Doc. No. 190-2**, p. 10 of 31 (*Schwertz Depo*. 56:22-57:1).

knowledge of any standard applicable to the Sheriff, and he cannot provide an opinion to the jury that the sheriff (or anyone else) violated any standard.

This case is much like *Grafton v. Bailey*, CV-13-2940, 106 Fed. R. Evid. Serv. 571; 2018 WL 2325410, (W.D. La. May 22, 2018). In *Grafton*, this Court was ruling on the motion for summary judgment filed by the Sheriff Ken Bailey ("Sheriff Bailey") and Deputy Lashenda Tate's ("Deputy Tate") seeking to dismiss the plaintiffs' Eighth Amendment and Louisiana state law claims. 2018 WL 2325410, at *1. In opposition to the motion for summary judgment, the plaintiffs submitted the affidavit of Nurse Kathryn Wild ("Nurse Wild") who opined that the emergency response of Deputy Tate was well below the standard of care and the correctional officers at the Claiborne Parish Women's Jail were subjectively aware that Grafton was in need of medical treatment for a serious condition and consciously disregarded her serious health care needs. *Id*. at 5. The defendants argued that Nurse Wild was not qualified to render opinions about the conduct of law enforcement officers, and thus, her opinion should be stricken.

Considering Federal Rules of Evidence 702, and this Court wrote

> "To qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.' " *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004), *quoting United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992). Additionally, Rule 702 states that an expert may be qualified based on "knowledge, skill, experience, training, or education." *Hicks*, 389 F.3d at 524; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 119 S.Ct. 1167 (1999) (discussing witnesses whose expertise is based purely on experience). ***"A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject."*** *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009), *quoting Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999).

*Id*. (emphasis added). Applying the law, the Court found that Nurse Wild was not qualified to testify to the conduct and action of law enforcement officers and, therefore, her opinions were inadmissible. *Id*. The Court explained:

4

> . . . **The fact that Nurse Wild has 31 years of experience in the correctional health setting does not qualify her to testify as to whether the law enforcement officers were "deliberately indifferent."** Nurse Wild begins her "Discussion and Opinion" section by concluding that based on "my 31 years in the correctional health setting, it is my opinion that the care provided by ... health providers ... was so dysfunctional, uncaring and haphazard, that it amounted to deliberate indifference." Record Document 38-2 at 6. Nurse Wild then reviews national accreditation standards and Louisiana statutes as they relate to health care providers. *See* Record Document 38-2 at 6-9. After comparing these standards with the actions of Dr. Hearn and Nurse Edwards, Nurse Wild then concludes that "the emergency response [of Deputy Tate] was well below the standard of care" and "the correctional officers at the Claiborne Parish Women's Jail were subjectively aware that [ ] Grafton was in need of medical treatment for a serious condition and consciously disregarded her serious health care needs." Record Document 38-2 at 9-10.
>
> Although Nurse Wild has a specialized knowledge in the field of correctional health care, *she fails to show how she has any specialized knowledge of the standards or guidelines of correctional officers*—Nurse Wild has no experience or training as a law enforcement officer or as an officer at a correctional facility. ***Thus, she is unqualified on this issue and her testimony on this matter is excluded***. *See Lee Green v. LA. Dep't of Pub. Safety & Corr.*, 2010 WL 1628769, *4 (W.D. La. 2010). The Court acknowledges that Nurse Wild may be qualified to render her opinions on the actions of Nurse Edwards, but her actions are not at issue in this matter. Nurse Wild is not a medical doctor and cannot opine on the conduct or standard of care pertaining to Dr. Hearn. Therefore, the Court finds Nurse Wild's opinions inadmissible under Fed. R. Evid. 702(a).

*Id*. (emphasis added).

This case presents the same scenario. Mr. Schwertz is qualified to appraise real estate and to testify about the value of real estate. However, there is no showing that Mr. Schwertz has any specialized knowledge of any standards or guidelines applicable to the Sheriff or his deputies in appointing an appraiser. In fact, Mr. Schwertz testified that he does not know of any law or standard that applies, has not had any specific training, and has not even gone to any seminars concerning sheriff sales. Nevertheless, Mr. Schwertz testified that he was testifying to whether correct procedures were followed in selecting the third party appraisal and third-party appraiser, **the very topics on which he lacks any specialized knowledge**. Mr. Schwertz may be qualified to testify as an appraiser of real estate, but he has no such opinion in this case. Nor does he offer

5

any opinion concerning the value of the promissory note that was sold at the sheriff's sale. Just like the Court did in *Grafton*, it should exclude Mr. Schwertz from testifying in this case.

This Court also granted a motion excluding a purported expert's testimony in *Fletcher v. Whittington*, CV 18-1153, 2022 WL 3572483 (W.D. La. Aug. 18, 2022). In that case, the Court first asked, "Should Dr. Heard be recognized in the field of 'correctional medicine as a contract physician'?" 2022 WL 3572483, at *2. The defendants argued that "'correctional medicine as a contract physician" is a sham specialty and there is no such field of expertise.'" *Id*. The Court reasoned: "Dr. Heard himself has not represented that he is an expert in correctional medicine. He is not certified by any organization as being a correctional health physician. In his deposition, Dr. Heard admitted he had attend[ed] no seminars on correctional health care and had not published any articles or papers on correctional health care." *Id*. (footnotes/citations omitted). Based on those facts, this Court concluded: "The Court finds that Dr. Frederick Heard is not qualified to testify as an expert in the field of correctional medicine." *Id*.

The Court then turned to a second question in *Fletcher*: "Should Dr. Heard be permitted to opine on the issue of whether Mr. Fletcher was a patient of Dr. Roberts?" *Id*. The defendants objected to Dr. Heard offering expert testimony that Mr. Fletcher was never a patient of Dr. Roberts. The Court reasoned:

> . . . Rule 702 requires that an expert's testimony "help the trier of fact to understand the evidence or to determine a fact in issue." FRE 702(a). "An expert's testimony will only aid the trier of fact if the evidence about which he or she testifies concerns matters that are beyond the understanding of the average lay person." *U.S. v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004); *United States v. Moore*, 997 F.2d 55, 57 (5th Cir. 1993) ("An expert's testimony may take the form of an opinion if it serves to inform the jury about affairs not within the understanding of the average man."). "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262-63.

>   Under the Louisiana Medical Malpractice for State Services Act, La. R.S. 40:1237.1, *et seq.*, a patient is defined as "a natural person who receives, or should have received, health care from a person covered by this Part, ... and any other natural person or persons who would or may have a claim or claims for damages under applicable law arising out of, or directly related to, the claim or claims of the natural person who receives, or should have received, health care from a person covered by this Part." La. R.S. 40:1237.1(A)(5). The Court finds that no scientific, technical or other specialized knowledge is required for the jury to determine whether Mr. Fletcher was a patient of Dr. Roberts. The jury will determine if Mr. Fletcher received, or should have received, health care from Dr. Roberts. Such a determination is within the understanding of an average lay person. Thus, Defendants' Daubert motion is GRANTED and Dr. Heard will not be permitted to opine on the issue of whether Mr. Fletcher was a patient of Dr. Roberts.

*Id*. It is equally true that a jury can weigh the evidence in this case and reach a decision on any factual issue whether the third appraiser, Mr. Patrick Lacour, was appointed by the Sheriff in this case. Any such factual determination cannot be taken from the jury by having Mr. Schwertz offer his opinion. Mr. Schwertz has not been shown to be an expert in the field of procedures for sheriff's sales. If such a field even exists, which has not been shown, Mr. Schwertz certainly has no qualifications whatsoever in it.

## Conclusion.

None of the opinions offered by Mr. Schwertz in his Rule 26 report are properly admissible. Accordingly, movers respectfully pray that all of the opinions contained in Mr. Schwertz's Rule 26 report be deemed inadmissible.

Respectfully submitted,

AYRES, SHELTON, WILLIAMS,
BENSON & PAINE, LLC


By: /s/ Curtis R. Shelton
      Curtis R. Shelton
La. Bar Roll No. 17137
333 Texas Street, Suite 1400 (71101)
P. O. Box 1764
Shreveport, LA 71166
Telephone: (318) 227-3500
Facsimile: (318) 227-3806
Email: curtisshelton@arklatexlaw.com

WIENER, WEISS & MADISON
A Professional Corporation
   R. Joseph Naus, #17074
   Marjorie Frazier, #32991
330 Marshall Street, Suite 1000 (71101)
P. O. Box 21990
Shreveport, LA 71120-1990
Telephone: (318) 226-9100
Facsimile: (318) 424-5128
E-mail: rjnaus@wwmlaw.com
E-mail mfrazier@wwmlaw.com

ATTORNEYS FOR W. A. LUCKY, III