UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

MAGNOLIA ISLAND PLANTATION, L.L.C., ET AL.

V.

LUCKY FAMILY, L.L.C., ET AL.

CIVIL ACTION NO. 5:18-CV-1526

DISTRICT JUDGE: S. MAURICE HICKS, JR.

MAG. JUDGE: KAYLA D. MCCLUSKY

JURY TRIAL DEMANDED

## ANSWER TO SEOND AMENDED AND RESTATED COMPLAINT, DEFENSES, AND COUNTERCLAIMS

NOW INTO COURT, through undersigned counsel, comes W.A. LUCKY, III ("Mr. Lucky"), who answer the *Seconded [sic] Amended and Restated Complaint to Annul Sheriff's Sale and for Other Relief*, Document 186, referred to hereinafter as the "Second Amended Complaint," as follows:

## AFFIRMATIVE DEFENSES

### First Defense

The Second Amended Complaint fails to state a federal law or state law claim against the defendants upon which relief can be granted.

### Second Defense

The Second Amended Complaint is replete with conclusory allegations that are made by plaintiffs in an effort to state various causes of action. However, such conclusory allegations, whether couched in terms of statements of facts or statements of law, are not sufficient to state a claim upon which relief may be granted.

**Third Defense**

Plaintiffs' Second Amended Complaint is vague and fails to state plaintiffs' claims against the defendants with necessary specificity.

**Fourth Defense**

Mr. Lucky asserts that the incidents, injuries and/or damages alleged in the Second Amended Complaint (which are disputed) were solely caused and/or contributed by the liability, fault, and/or intentional acts of plaintiffs or parties, persons and/or entities other than defendants, and that as a result, any award or relief to plaintiffs is barred or should be reduced in proportion to the extent of that fault.

**Fifth Defense**

Mr. Lucky denies that he breached any duty to plaintiffs, if any such duty was owed, or in any way was at fault or that any actions or non-actions on defendants' part caused or contributed to any event or injury complained of by plaintiffs.

**Sixth Defense**

To the extent plaintiffs have suffered any damages relating to the claims alleged in the Second Amended Complaint (which are disputed), plaintiffs should be denied any relief because plaintiffs do not have clean hands and any relief is precluded by the clean hands doctrine. As set forth more fully hereinafter, plaintiffs are attempting to evade the consequences of their efforts to frustrate the enforcement of a lawful judgment rendered, signed, and filed by the 26th Judicial District Court, Bossier Parish, Louisiana ("State Court") in the lawsuit (referred to herein as "Lucky I") captioned as "W. A. Lucky, III versus Barbara Marie Carey Carr," number 127,573

2

in the State Court. Plaintiffs engaged in a scheme to try to place the property of Barbara Marie Carey Lollar ("Ms. Lollar") against whom the aforementioned judgment had been rendered in the principal amount of $1,799,450.52, plus judicial interest on the aforesaid amount from the date of judicial demand until paid in full and all costs associated with the proceedings. Ms. Lollar did not take a suspensive appeal from the judgment. Instead, on the eve of Lucky I being submitted for a decision by the State Court, Ms. Lollar executed a conveyance of her property first to her husband, Ronald William Lollar ("Mr. Lollar"), who formed, and then transferred the property to, Magnolia Island Plantation, L.L.C. ("Magnolia"). But, the scheme hatched by Ms. Lollar, her husband, and Magnolia did not work because Ms. Lollar had received the promissory note (hereinafter the "Note"), Exhibit A to the Second Amended Complaint, which Mr. Lucky lawfully caused to be seized and sold in execution of the aforementioned judgment. Ms. Lollar, her husband, Magnolia, and their counsel had the theory that the Note could not be executed upon. However, that theory was legally incorrect, and the State Court so ruled. Now, plaintiffs have filed this civil rights action seeking to avoid the consequences of their devious, but ill-advised, misdeeds.

**Seventh Defense**

To the extent plaintiffs have suffered any damages relating to the claims alleged in the Second Amended Complaint (which are disputed), plaintiffs should be denied any relief for failure to mitigate their damages.

### Eighth Defense

At all relevant times relating to plaintiffs' claims alleged in the Second Amended Complaint (which are disputed), defendants' conduct was innocent, in good faith and justified by legitimate purposes. Defendants acted lawfully, reasonably, and in good faith at all times relevant to this litigation.

### Ninth Defense

Plaintiffs do not have a constitutionally protected property right that has been taken or damaged by the defendants.

### Tenth Defense

Defendants have not violated any constitutional or statutory right of plaintiffs.

### Eleventh Defense

Ms. Lollar demanded, received, and has retained the proceeds from the Sheriff's sale. Ms. Lollar has thereby ratified the sale. Ms. Lollar has thereby made a judicial admission of the legality of the sale.

### Twelfth Defense

Mr. Lucky's investigation of the claims asserted in the Second Amended Complaint is continuing, and Mr. Lucky reserves the right to assert additional affirmative defenses, third-party claims, and counterclaims that may now exist or in the future may be available based on discovery and further factual investigation of this case.

**Thirteenth Defense**

Mr. Lucky is entitled to recover all costs of this action, including reasonable attorneys' fees, pursuant to 42 U.S.C.A § 1988.

**ANSWER**

AND NOW further answering, Mr. Lucky denies each and every allegation contained in plaintiffs' Second Amended Complaint, except as admitted below:

1. The allegations of paragraph 1 of the Second Amended Complaint are denied.

2. It is admitted that Magnolia is a Louisiana limited liability company, domiciled in the State of Louisiana, which is represented by its Manager, Ronald William Lollar. For lack of sufficient information upon which to form a belief as to the truthfulness thereof, the allegation that Ms. Lollar is a resident of Fayette County, Tennessee is denied. Mr. Lucky shows that Ms. Lollar has previously alleged that she is an individual resident of Bossier Parish, Louisiana.

3. It is admitted that the Sheriff is defined as a political subdivision under Louisiana Revised Statutes 13:5102. However, it is denied that the Sheriff is defined as a political subdivision of Bossier Parish. The remaining allegations of paragraph 3 of the Second Amended Complaint are admitted.

4. The allegations of paragraph 4 of the Second Amended Complaint are denied.

5. The allegations of paragraph 5 of the Second Amended Complaint are admitted.

6. Numerous of the "allegations" made as a "preliminary statement" in paragraph 6 of the Second Amended Complaint are conclusory and/or argumentative allegations without specific facts. Such conclusory allegations without specific facts are insufficient and do not

require an answer. Out of an abundance of caution, all such conclusory allegations are denied.

Further answering, it is admitted that the Sheriff conducted a sheriff's sale on October 24, 2018,

at the Bossier Parish Courthouse. It is admitted that the sale was in fact of the Note under an

executory judgment of the State Court, from which no suspensive appeal had been taken. It is

admitted that the aforementioned judgment was later reversed on appeal. It is admitted that Mr.

Lucky filed two notices of lis pendens. It is admitted that Mr. Lucky filed "W. A. Lucky, III vs.

Barbara Marie Carey Lollar, et al.," number 155,382; Section A ("Lucky II") in the State Court

seeking a judgment that the *Credit Sale Deed with Vendor's Lien and Special Mortgage*, and the

*Exchange Deed, with Assumption of Mortgage*, and the ostensible transfers of the property

described therein were null, void, and of no effect. Otherwise, the allegations of paragraph 6 of

the Second Amended Complaint are either not allegations of fact that require an answer or are

denied.

      7.    Mr. Lucky admits that Mr. Lollar made the Note, Exhibit A, which is the best

evidence of its contents and, on its face, is payable to Ms. Lollar or her order in the principal

amount of $1,730,000.00 in installments and a balloon payment. It is admitted that a copy of the

Note is attached as Exhibit A to the Second Amended Complaint. Mr. Lucky denies the

allegations of paragraph 7 of the Second Amended Complaint to the extent that they are

inconsistent with the foregoing.

      8.    It is admitted that on November 2, 2017, Ms. Lollar and Mr. Lollar executed the

*Credit Sale Deed with Vendor's Lien and Special Mortgage*, a copy of which is attached as

Exhibit B to the Second Amended Complaint, which is the best evidence of its contents and

which was recorded in the conveyance and mortgage records of Bossier Parish, Louisiana, and which secures the payment of the Note. Otherwise, the allegations of paragraph 8 of the Second Amended Complaint are denied.

9.      The allegations of paragraph 9 of the Second Amended Complaint are denied for lack of sufficient information to form a belief as to the truthfulness thereof.

10.      It is admitted that on November 2, 2017, Mr. Lollar and Magnolia executed the *Exchange Deed, with Assumption of Mortgage*, a copy of which is attached as Exhibit C to the Second Amended Complaint, which is the best evidence of its contents and which was recorded in the conveyance and mortgage records of Bossier Parish, Louisiana. It is admitted that the *Exchange Deed, with Assumption of Mortgage* on its face conveyed the property described therein to Magnolia. Otherwise, the allegations of paragraph 10 of the Second Amended Complaint are denied.

11.      It is admitted that Mr. Lucky is licensed as a real estate broker. It is admitted that Mr. Lucky filed the original petition in the lawsuit referred to as Lucky I on September 10, 2008, seeking monetary damages for Ms. Lollar's breach of her fiduciary duties to Mr. Lucky. It is admitted that a trial was held on beginning on August 28, 2017. That trial was concluded on August 30, 2017, and a briefing schedule was established such that the case would be deemed submitted for a decision on November 3, 2017. Further answering, on December 19, 2017, the State Court rendered its Opinion in Lucky I. On January 5, 2018, the State Court signed a *Judgment* on its Opinion in favor of Mr. Lucky and against Ms. Lollar in the principal amount of $1,799,450.52, plus judicial interest on the aforesaid amount from the date of judicial demand

until paid in full and all costs associated with the proceedings. It is admitted that a copy of the judgment is attached as Exhibit D to the Second Amended Complaint. It is admitted that the judgment was reversed on January 16, 2019, as set forth in Exhibit D-2, and that the Louisiana Supreme Court denied Mr. Lucky's writ application as set forth in Exhibit D-3. Mr. Lucky otherwise denies the allegations of paragraph 11 of the Second Amended Complaint and denies the allegations of paragraph 11 of the Second Amended Complaint to the extent that they are inconsistent with the foregoing.

12.    The allegations of paragraph 12 are denied. Further answering, in Lucky I, Mr. Lucky had sought a judgment for monetary damages, and the State Court ruled in his favor. It is admitted that Mr. Lucky had previously desired to purchase the "Mortgaged Property," but that Ms. Lollar purchased it for herself in breach of her fiduciary duties to Mr. Lucky and the relationship of trust and confidence that she had with him.

13.    It is admitted that the *Notice of Lis Pendens*, a copy of which is attached as Exhibit E to the Second Amended Complaint and which is referred to as the 2017 Lis Pendens, was filed on December 11, 2017, in the mortgage records of Bossier Parish, Louisiana. It is admitted that the 2017 Lis Pendens is the best evidence of its contents. Otherwise, the allegations of paragraph 13 of the Second Amended Complaint are denied.

14.    It is admitted that the *Judgment* in Lucky I was rendered on December 19, 2017, and signed and filed on January 5, 2018, and that the 2017 Lis Pendens was recorded on December 11, 2017. Otherwise, the allegations of paragraph 14 of the Second Amended Complaint are denied. Further answering, Mr. Lucky alleges that:

A.   On January 5, 2018, the State Court signed a Judgment in Lucky I on its Opinion. The *Judgment* in Lucky I was signed in favor of Mr. Lucky and against Ms. Lollar in the principal amount of $1,799,450.52, plus judicial interest on the aforesaid amount from the date of judicial demand until paid in full and all costs associated with the proceeding in Lucky I.

B.   However, immediately before the completion of the briefing schedule in Lucky I, and during the period of October 2, 2017, through November 2, 2017, Ms. Lollar acted with Mr. Lollar and Magnolia as set forth hereinafter.

C.   On October 30, 2017, Mr. Lollar formed Magnolia, a Louisiana limited liability company. Mr. Lollar acted with the full knowledge of, and in conspiracy with, Ms. Lollar. It is obvious that Mr. Lollar acted with the full knowledge of and in conspiracy with Ms. Lollar because:

   (1)   Magnolia was formed on October 30, 2017, the date of the final week of the briefing ordered in Lucky I;

   (2)   Magnolia was formed with Ms. Lollar's attorney in Lucky I and in this federal civil action, Mr. J. Davis Powell ("Mr. Powell"), acting as the registered agent for Magnolia;

   (3)   Magnolia was formed with its registered office address being designated as the office address of Ms. Lollar's attorney in Lucky I and in this federal civil action, Mr. Powell; and

   (4)   Ivy E. M. Johnson, who is the notary public who notarized Mr. Powell's signature on the documents filed with the Louisiana Secretary of State to form Magnolia, also works in and has her official address with the Louisiana Secretary of State as the office address of Ms. Lollar's attorney in Lucky I and in this federal civil action, Mr. Powell.

D.   On November 2, 2017, Ms. Lollar and Mr. Lollar executed the *Credit Sale Deed with Vendor's Lien and Special Mortgage*, Exhibit B to the Second Amended Complaint. The property described in the *Credit Sale Deed with Vendor's Lien and Special Mortgage* is the property which was the subject of Ms. Lollar's breach of her duties to Mr. Lucky as his mandatary/agent and fiduciary on account of which Lucky I was filed. The *Credit Sale Deed with Vendor's Lien and Special Mortgage* was executed **immediately before Lucky I was to be deemed under advisement for a decision by the State Court**. The *Credit Sale Deed with Vendor's Lien and Special Mortgage*" was executed before Ms. Lollar's attorney in Lucky I and in this federal civil action, Mr. Powell, who acted

9

as a notary public, and Ivy E. M. Johnson, another notary public in Mr. Powell's office. The *Credit Sale Deed with Vendor's Lien and Special Mortgage* was recorded in the conveyance and mortgage records of Bossier Parish, Louisiana, **immediately before Lucky I was deemed to be under advisement.**

E.   On November 2, 2017, Mr. Lollar and Magnolia executed a document titled *Exchange Deed, with Assumption of Mortgage*, Exhibit C to the *Second Amended Complaint*. The property described in the Exchange Deed, with Assumption of Mortgage is also the property which was the subject of Ms. Lollar's breach of her duties to Mr. Lucky as his mandatary/agent and fiduciary on account of which Lucky I was filed. The *Exchange Deed, with Assumption of Mortgage* was also executed **immediately before Lucky I was to be deemed under advisement in the State Court for a decision.** The *Exchange Deed, with Assumption of Mortgage* was also executed before Ms. Lollar's attorney in Lucky I, Mr. Powell, who acted as a notary public, and Ivy E. M. Johnson, another notary public in Mr. Powell's office. The *Exchange Deed, with Assumption of Mortgage* was recorded in the conveyance and mortgage records of Bossier Parish, Louisiana, **immediately before Lucky I was deemed to be under advisement for a decision by the State Court.**

F.   On November 2, 2017, Mr. Lollar and Ms. Lollar executed a *Declaration Regarding Reservation of Fruits and Revenues*. The company described in the *Declaration Regarding Reservation of Fruits and Revenues* is Magnolia, the limited liability company formed by Mr. Lollar acting in conspiracy with Ms. Lollar. The *Declaration Regarding Reservation of Fruits and Revenues* was also executed **immediately before Lucky I was to be deemed under advisement for a decision by the State Court.** The *Declaration Regarding Reservation of Fruits and Revenues* was also executed before Ms. Lollar's attorney in Lucky I, Mr. Powell, who acted as a notary public, and Ivy E. M. Johnson, another notary public in Mr. Powell's office. The *Declaration Regarding Reservation of Fruits and Revenues* was recorded in the conveyance and mortgage records of Bossier Parish, Louisiana, **immediately before Lucky I was deemed to be under advisement.**

G.   Ms. Lollar's, Mr. Lollar's, and Magnolia's formation of Magnolia, and their execution and recording of the *Credit Sale Deed with Vendor's Lien and Special Mortgage*, the *Exchange Deed, with Assumption of Mortgage*, and the *Declaration Regarding Reservation of Fruits and Revenues*, were all acts by which Ms. Lollar, acting in concert with Mr. Lollar and Magnolia, sought to thwart or frustrate Mr. Lucky's rights to obtain and enforce collection of a judgment in Lucky I by moving property and title to property out of Ms. Lollar's name. Mr. Lucky's rights and remedies in Lucky I, included not only the right to

obtain a judgment against Ms. Lollar, but also his legal remedies to enforce his substantive rights, including the right to collect the judgment ultimately rendered in his favor. Ms. Lollar's, Mr. Lollar's, and Magnolia's actions were obviously intentional or willful, were the result of a conspiracy among them, and were designed at the time to damage Mr. Lucky.

H.    Further, it appeared obvious that the supposed transfers and transactions were illicit and made by a debtor (Ms. Lollar) to conceal property from her creditor (Mr. Lucky). It was obvious that Ms. Lollar had never before transferred the property to Mr. Lollar in all the years that the property had been in her name or during all the years in which Lucky I was pending. Ms. Lollar only did so on the eve of the State Court's taking Lucky I under advisement to render a decision therein. **It is obvious that Ms. Lollar knew and anticipated that a judgment would soon be rendered against her in Lucky I.** It was after the conclusion of the trial of Lucky I in the State Court that Ms. Lollar suggested to Mr. Lollar that she transfer property out of her name to Mr. Lollar. The entire transaction was obviously designed with the assistance of Ms. Lollar's attorneys who participated therein. Mr. Lollar, Ms. Lollar, and their attorneys executed the documents to do so during the evening hours.

15.    It is admitted that, after the *Judgment* was signed in Lucky I, Mr. Lucky filed Lucky II seeking a judgment that the *Credit Sale Deed with Vendor's Lien and Special Mortgage*, and the *Exchange Deed, with Assumption of Mortgage*, and the ostensible transfers of the property described therein were null, void, and of no effect. It is admitted that Mr. Lucky had standing to make those claims as a judgment creditor of Ms. Lollar. Otherwise, the allegations of paragraph 15 are denied.

16.    It is admitted that the notice of lis pendens, a copy of which is attached as Exhibit F to the Second Amended Complaint and which is referred to as the 2018 Lis Pendens, was filed on February 20, 2018, in the mortgage records of Bossier Parish, Louisiana. It is admitted that the 2018 Lis Pendens is the best evidence of its contents. Otherwise, the allegations of paragraph 16 of the Second Amended Complaint are denied.

17.      It is admitted that Mr. Lucky dismissed his claims in Lucky II after the *Judgment* in Lucky I had been reversed. It is admitted that both the reversal of the State Court's *Judgment* in Lucky I and the dismissal of Mr. Lucky's claims in Lucky II were after the Note had been sold at the sheriff's sale.

18.      The allegations of paragraph 18 of the Second Amended Complaint are denied.

19.      It is admitted that on May 31, 2018, Mr. Lucky filed an *Ex Parte Motion for Production of Property and Alternative Motion for Contempt*, which is the best evidence of its contents, in Lucky I, and that a writ of fieri facias was issued to enforce the *Judgment* that had been rendered in Mr. Lucky's favor and which was lawfully subject to being enforced by execution. It is admitted that Mr. Lucky prayed for an order directing Ms. Lollar to deliver the Note to the Bossier Parish sheriff as provided by law. It is admitted that a devolutive appeal was then pending. Otherwise, the allegations of paragraph 19 of the Second Amended Complaint are denied.

20.      The allegations of paragraph 20 of the Second Amended Complaint are admitted.

21.      It is admitted that Mr. Lucky also filed a M*otion to Examine Judgment Debtor and for Discovery Concerning Judgment Debtor* on May 31, 2018, as he was lawfully entitled to do to enforce the *Judgment* in Lucky I from which no suspensive appeal had been taken. It is admitted that Mr. Lucky requested the issuance of a writ of fieri facias in the aforementioned motion and the production of certain documents listed therein for discovery and for the purposes set forth in that motion.

22.     It is admitted that the State Court signed the order on the *Motion to Examine Judgment Debtor and for Discovery Concerning Judgment Debtor* without a contradictory hearing. Further answering, the State Court's signing of the order was entirely lawful.

23.     It is admitted that Mr. Lucky requested a subpoena duces tecum for the original Note to be produced in court on July 5, 2019, which was served on Ms. Lollar through her attorney, and that the hearing set by the State Court on the issue whether the Note could be seized was still pending. Otherwise, the allegations of paragraph 23 are denied.

24.     The allegations of paragraph 24 are denied. Further answering, a judgment for the payment of money may be executed by a writ of fieri facias directing the seizure and sale of property of the judgment debtor. La. Code Civ. Proc. 2291. Further, "[a]t the request of a judgment creditor, the clerk shall issue a writ bearing his signature, the seal of the court, and the date, and directing the sheriff of the parish where the judgment is to be executed to enforce it in the manner set forth in the writ." La. Code Civ. Proc. 2253. There is no requirement that that there be any hearing before the Clerk of Court issues the writ of fieri facias, and there is no requirement that the judgment debtor be notified of the issuance of a writ of fieri facias. What the judgment debtor receives is a written notice of the seizure made by the sheriff of property. La. Code Civ. Proc. 2293 ¶ B. Further, Ms. Lollar, the judgment debtor, was served through her attorney of record, with a copy of the court's order that a writ of fieri facias be issued. It is, therefore, flat wrong for Ms. Lollar to claim that she did not know that a writ of fieri facias had been issued.

25.     It is admitted that there was a hearing on July 5, 2018, on the aforementioned *Ex Parte Motion for Production of Property and Alternative Motion for Contempt*, and that Ms. Lollar's attorneys brought the Note to court. It is admitted that the State Court ruled that the Note be seized as requested by Mr. Lucky, and that counsel for Ms. Lollar delivered the Note to the Sheriff. Further answering, the State Court's ruling was never appealed by Ms. Lollar. Any other allegations of paragraph 25 of the Second Amended Complaint are denied.

26.     Under Louisiana Code of Civil Procedure article 1354 "[a] subpoena may order a person to appear and produce at the trial, deposition, or hearing, books, papers, documents, any other tangible things, or electronically stored information, in his possession or under his control, if a reasonably accurate description thereof is given." A subpoena duces tecum may be issued for a person to produce documents for inspection and may be issued for the production of documents at a hearing including a judgment debtor's examination. There is no restriction that a subpoena may only be issued in "ordinary proceedings." The subpoena was issued for Ms. Lollar to bring the Note with her to court as there were proceedings pending concerning the Note. In any event, the Judge's ruling on the *Ex Parte Motion for Production of Property and Alternative Motion for Contempt* required that Ms. Lollar produce the Note to be seized by the Sheriff. Any other allegations of paragraph 26 of the Second Amended Complaint are denied.

27.     The allegations of paragraph 27 are denied for lack of sufficient information to form a belief as to the truthfulness thereof.

28.     It is admitted that the Notice of Seizure, which is attached to the Second Amended Complaint as Exhibit H, was issued and served upon Ms. Lollar by the Sheriff through

her attorney, which was entirely proper. That Notice of Seizure is the best evidence of its contents. In any event, It is admitted that the Sheriff was requested to proceed to a sale of the Note. Any other allegations of paragraph 28 of the Second Amended Complaint are denied.

29.     It is admitted that the Sheriff served notice on Mr. Lucky and Ms. Lollar as required by law. That is the way the law works. Any allegations of Paragraph 29 of the Second Amended Complaint to the contrary are denied. Further answering, Louisiana Revised Statutes 13:4363 reads:

> A.   Not less than seven days, exclusive of holidays, before the sale of seized property, ***the sheriff shall serve written notice on the debtor and on the seizing creditor***, in the manner provided for the service of a citation, directing each to name an appraiser to value the property and to notify the sheriff of his appointment prior to the time stated in the notice, which shall be at least four days, exclusive of holidays, prior to the time of the sale. The appraisal of the debtor and seizing creditor shall be made and delivered to the sheriff at least two days, exclusive of holidays, prior to the time of the sale.
>
> B.   If there are two or more debtors or seizing creditors and these parties cannot agree as to which should act as or appoint an appraiser, and in any case where an appraisal is required prior to the judicial sale and which is not otherwise provided for in this Section, on the ex parte application of the sheriff or of any interested party, the court shall designate the party to act as or appoint the appraiser, and the notice required by Sub-section A of this Section shall be served on the party so designated.

(Emphasis added). The debtor was Ms. Lollar, and the seizing creditor was Mr. Lucky. Therefore, the Sheriff acted in full compliance with the law. On October 22, 2018, just two days before the sheriff's sale, Mr. Powell, plaintiffs' counsel who is also the registered agent for service of process for Magnolia and who participated in the actions described in answer above to paragraph 14 of the Second Amended Complaint above, filed a *Petition for Preliminary Injunctive Relief* with the State Court in Lucky I in a last-minute effort to stop or stall the

sheriff's sale although no suspensive appeal had been taken from the *Judgment* in Lucky I. When that untimely last-minute effort failed, Mr. Powell attended the sheriff sale conducted on October 24, 2018. Both Ms. Lollar (through her attorney Mr. Powell) and Magnolia (through its registered agent Mr. Powell) received and had *actual* notice of the October 24, 2018, sheriff sale. Further answering, the *Petition for Preliminary Injunctive Relief* was legally deficient in any event. Even further, Magnolia was not entitled to notice of the sheriff sale because (a) Magnolia had no property interest in the Note, and (b) Louisiana Revised Statutes 13:4363 did not require Magnolia to be served.

30.     It is admitted that the Notice of Seizure was issued and served upon Ms. Lollar by the Sheriff and notified Ms. Lollar to appoint an appraiser by October 19, 2018. It is the best evidence of its contents. Further answering, for a sale date of October 24, 2018, a deadline for appraisals by the parties of October 19, 2018, was in full compliance with state law. Paragraph (A) of Louisiana Revised Statutes 13:4363 quoted in answer to paragraph 18 supra reads, in part: "***The appraisal of the debtor and seizing creditor shall be made and delivered to the sheriff at least two days, exclusive of holidays, prior to the time of the sale.***" (Emphasis added). Saturdays and Sundays are legal holidays. *See* La. R.R. 1:55(E)(3); La. Code Civ. Proc. art. 5059. With a sheriff's sale scheduled for a Wednesday (October 24, 2018), for an appraisal to be delivered at least two days, exclusive of holidays, prior to the time of the sale, the latest deadline that could be established was the preceding Friday (October 19, 2018). Therefore, Ms. Lollar was provided all of the time to which she could claim she was entitled to submit an appraisal, and on October 18, 2018, an appraisal was submitted for her. Further, the Louisiana Supreme

16

Court has written with respect to Louisiana Revised Statutes 13:4363: "A review of the foregoing statutes reveals that R.S. 13:4363 was designed to benefit the sheriff whose duty it is to conduct the judicial sale. The primary purpose of the two day requirement is to provide the sheriff with sufficient time to appoint a third appraiser in those cases where the parties' appraisers do not agree on valuation and the variance between their values is outside the statutory limit fixed by R.S. 13:4365(B)." *Williams v. Perkins-Siegen Partnership*, 93-2131, p.7 (La. 1/27/95), 649 So.2d 367, 371. Any allegations of paragraph 30 of the Second Amended Complaint to the contrary are denied.

31.     It is admitted that Mr. Chad Garland was appointed to appraise the Note for Mr. Lucky, and he appraised the Note as having a value of $173,000 as set forth on the Appraisement Sheet which is Exhibit I to the Second Amended Complaint. It is denied that no written appraisal was kept on file by the Sheriff for Mr. Garland's appraisal amount. The Appraisement Sheet signed by Mr. Garland is a written appraisal by Mr. Garland and was received by the Sheriff. Any other allegations of paragraph 31 of the Second Amended Complaint to the contrary are denied.

32.     It is admitted that Ms. Lollar appointed John Dean to appraise the Note for her, and he appraised the Note as having a value of $1,478,048.68 as set forth on the Appraisement Sheet which is Exhibit J to the Second Amended Complaint and which is a single two-page document.

33.     It is admitted that Louisiana Revised Statutes 13:4365(B) reads as quoted. It is admitted that because the difference in value between the appraisals by Mr. Garland and Mr.

Dean mathematically exceeded two hundred and fifty thousand dollars, and the value assigned by Mr. Garland was not at least ninety percent of the value assigned by Mr. Dean, Louisiana Revised Statutes 13:4365(B) required that the Sheriff appoint a third appraiser whose decision the law provides shall be final. Any allegations of paragraph 33 of the Second Amended Complaint to the contrary are denied

34.     It is admitted that the Sheriff in fact appointed Mr. Patrick Lacour as the third appraiser in accordance with Louisiana Revised Statutes 13:4365(B). Any other allegations of paragraph 34 of the Second Amended Complaint are denied.

35.     It is admitted that Mr. Lucky's counsel wrote the letter, Exhibit K, to Mr. Lacour on October 10, 2018, and that it was not then known whether a third appraiser would be appointed.

36.     It is admitted that the letter, Exhibit K reads:

Mr. Patrick Lacour
Whitehall Advisors, LLC
3820A Bayou Rapides Rd.
Alexandria, LA  71303

Re:     Appraisal of Promissory Note

        W. A. Lucky, III versus Barbara Marie Carey Carr, number 127,573 in the 26th Judicial District Court, Bossier Parish, Louisiana, Section F

Dear Patrick:

        I intend to provide the Bossier Parish Sheriff your name and contact number as a person who can appraise a promissory note for the sheriff for the sheriff's sale in the above referenced lawsuit. The sheriff's sale is scheduled for Wednesday, October 24, 2018, at 10:00 a.m. Each of the plaintiff and defendant will submit an appraisal. If the appraisers do not agree and their appraisals cannot

be averaged under Louisiana Revised Statutes 13:4365 as set forth hereinafter, the Sheriff will need to appoint a third appraiser to appraise the note. In those cases where the two appraisers do not agree and the values are not within the averaging limits, the Sheriff appoints a third appraiser, and the decision of the third appraiser shall be final.

If the sheriff elects to appoint you as a third appraiser, you will not be acting for either the plaintiff or the defendant to appraise the promissory note. If you are appointed, you will be the Sheriff's appraiser. In fact, it will not matter whether the payment of your fees or expenses are paid by the plaintiff or the defendant. In fact, when a judgment is enforced by a seizure of property and its sale, the Sheriff will require the plaintiff to advance funds to cover the costs incurred by the Sheriff in conducting the process. The law then provides the manner in which the plaintiff may recover those costs from the sale of the property by the Sheriff. Regardless of any requirement that the plaintiff, in this case W. A. Lucky, III, advance funds to cover the costs incurred by the Sheriff, you will still be the Sheriff's appraiser.

The process is set forth in Louisiana Revised Statutes 13:4363 and13:4365.

Louisiana Revised Statutes 13:4363 reads:

A.  Not less than seven days, exclusive of holidays, before the sale of seized property, the sheriff shall serve written notice on the debtor and on the seizing creditor, in the manner provided for the service of a citation, directing each to name an appraiser to value the property and to notify the sheriff of his appointment prior to the time stated in the notice, which shall be at least four days, exclusive of holidays, prior to the time of the sale.  The appraisal of the debtor and seizing creditor shall be made and delivered to the sheriff at least two days, exclusive of holidays, prior to the time of the sale.

B.  If there are two or more debtors or seizing creditors and these parties cannot agree as to which should act as or appoint an appraiser, and in any case where an appraisal is required prior to the judicial sale and which is not otherwise provided for in this Section, on the ex parte application of the sheriff or of any interested party, the court shall designate the party to act as or

appoint the appraiser, and the notice required by Sub-section A of this Section shall be served on the party so designated.

The Sheriff has already served the written notice on the debtor and on the seizing creditor, directing each to name an appraiser. I have already notified the Bossier Parish Sheriff of the plaintiff's appointment of Mr. Chad M. Garland to do the appraisal of the promissory note for the plaintiff. Mr. Garland's credentials include, among others, an ABV accreditation and CVA designation.

I am informed that the defendant has notified the Sheriff of the appointment of Mr. John Dean of Business Valuation Consultants of Shreveport to appraise for the defendant. I am also aware that Mr. Dean has an ABV accreditation and CVA designation.

While I am hopeful that the two appraisers will agree on the value of the promissory note, I recognize the possibility that they will not. Because the defendant's appraisal is could be required to be submitted as late as October 19, 2018, that could result in a third appraisal being needed by the following Monday or Tuesday, October 22, 2018, or October 23, 2018. Because of this possible time crunch, I thought I would provide you with relevant information in advance so that, if you are appointed, you will be able to meet the short time delay that you would have to appraise for the Sheriff.

Louisiana Revised Statutes 13:4365 reads:

A.  The appraisers shall take an oath to make a true and just appraisal of the property.

B.  If the appraisers cannot agree, and (1) the difference in value between the two appraisals does not exceed two hundred and fifty thousand dollars, and (2) the value assigned by the lower of the two appraisers is at least ninety percent of the value assigned by the higher of the two appraisers, then the sheriff shall average the two figures and use the average as the appraised value for purposes of determining the opening bid.  In those cases where the two appraisers do not agree and the values are not within the averaging limits, then the sheriff shall appoint a third appraiser, who shall also be sworn, and whose decision shall be final.

C.   The property seized must be appraised with such minuteness that it can be sold together or separately.

20

D.  The appraisers shall reduce their appraisal to writing, sign it, and deliver it to the sheriff.

E.  The appraisal of any appraiser appointed by the sheriff shall be made and delivered to the sheriff at a time prior to the sale.

The parts of the statute which will apply to you are paragraphs A and D. I will need you to do two things. The first is to take an oath to make a true and just appraisal of the property, in this case, the promissory note. The second is to appraisers shall reduce their appraisal to writing, sign it, and deliver it to the sheriff. The requirement that the appraisal be reduced to writing is not a requirement for any extensive appraisal report. It is a requirement that the appraisal amount be reduced to writing.

I am sending two documents with this letter to illustrate the process. The first is titled "Oath of Appraiser." If you are appointed, you will need you to execute that before a Notary and get the original to the sheriff by the appraisal deadline.

The second document is the appraisement sheet that you will sign and provide to the sheriff's office. As you can see, what are required are a signature and a figure for the appraised value. That is all of the detail the sheriff will require.

**Background**

Here is some background that I think you will find to be helpful to this potential task.

As we discussed, our client, Mr. W.A. Lucky, III ("Mr. Lucky") has a judgment in the above referenced lawsuit against Barbara Marie Carey Lollar a/k/a f/k/a Barbara Marie Carey Carr ("Ms. Lollar"). The judgment is in the amount of One Million, Seven Hundred Ninety-Nine Thousand, Four Hundred Fifty And 52/100 Dollars ($1,799,450.52), plus judicial interest on the aforesaid amount from the date of judicial demand until paid in full and all costs associated with the proceeding. In this letter, I will call the above referenced lawsuit "Lucky-Carr I."

The property that is to be offered at a sheriff's sale in Lucky-Carr I on October 24, 2018, is a **promissory note**, which is described as follows:

> That certain original promissory note dated November 2, 2017 made by Ronald William Lollar payable to Barbara Marie Carey Carr Lollar or her order in the principal amount of One Million Seven Hundred Thirty Thousand and No/100ths Dollars ($1,730,000.00) plus interest thereon at the rate of four percent (4.0%) per annum until paid, payable in four (4) consecutive annual installments of $100,046.00, the first such installment being due and payable on November 1, 2018, and a final balloon payment equal to all remaining principal and interest then due hereunder, due and payable on November 1, 2022.

The aforementioned promissory note is ostensibly secured under a "Credit Sale Deed with Vendor's Lien and Special Mortgage." A copy of this Credit Sale Deed with Vendor's Lien and Special Mortgage is being sent with this letter.

The circumstances under which the promissory note and the Credit Sale Deed with Vendor's Lien and Special Mortgage were executed by Mr. Ronald William Lollar are described in the petition filed in a second lawsuit which is pending as "W. A. Lucky, III versus Barbara Marie Carey Lollar, Ronald William Lollar, Tributary Properties, L.L.C., and Magnolia Island Plantation, L.L.C.," case number 155,382-A in the 26th Judicial District Court for Bossier Parish, Louisiana. This lawsuit is the second lawsuit by our client, Mr. Lucky, against Ms. Lollar. I will refer to it as "Lucky-Carr II." I am including a copy of the petition filed in Lucky-Carr II.

Lucky-Carr II was filed because of the attempt by Ms. Lollar to place the immovable property (real estate) described in the Credit Sale Deed with Vendor's Lien and Special Mortgage out of her name. Ms. Lollar transferred the property into Mr. Ronald William Lollar's name so that the judgment obtained by Mr. Lucky could not be collected by having the Sheriff seize and sell the real property. (Mr. Lollar is Ms. Lollar's husband, but we understand that they are separate in property.)

We caught onto Ms. Lollar's scam, and we filed Lucky-Carr II. We also filed a notice of *lis pendens* against the immovable property (real estate) so that third parties would clearly be on notice of Ms. Lollar and her husband's misdeeds. We believe that the notice of *lis pendens* makes the claims in the second lawsuit effective against the immovable property (real estate). A copy of the notice of *lis pendens* is being sent with this letter.

An overview of the claims made in Lucky-Carr II is that, while Judge A. Parker Self, was receiving briefs and considering his ruling in Lucky-Carr I, Ms. Lollar executed the note and the Credit Sale Deed with Vendor's Lien and Special Mortgage. (Ms. Lollar took action to put other property out of her name, but here we are concerned with this promissory note scheme.)

Ms. Lollar had held the property that she transferred to her husband in her name since 2003. Ms. Lollar held the property in her name all the way through the trial in Lucky-Carr I. It is obvious that she knew that Judge Self was going to rule against her in Lucky-Carr I. She was not truthful in her testimony. Ms. Lollar knew that a judgment was coming. I am including a copy of Judge Self's Opinion in Lucky-Carr I under which the judgment was rendered.

As you can see from the petition in Lucky-Carr II, Ms. Lollar, aided and abetted by her lawyers who had unsuccessfully defended Lucky-Carr I, prepared and executed the Credit Sale Deed with Vendor's Lien and Special Mortgage. It was executed/notarized in her lawyers' office.

The claims made in Lucky-Carr II include that:

(a)     Ms. Lollar's acts (and the acts of the other defendants) were in furtherance of Ms. Lollar's breach of her duties as mandatary and fiduciary and by which Ms. Lollar, acting in concert with the other defendants, sought to thwart or frustrate Mr. Lucky's rights to obtain and enforce collection of the judgment in Lucky-Carr I.

(b)     Ms. Lollar's, her husband Ronald's, and the other defendants' actions were obviously intentional or willful, were the result of a conspiracy among them, and were designed to damage Mr. Lucky.

(c)     The Credit Sale Deed with Vendor's Lien and Special Mortgage is null, void, and of no effect whatsoever as a simulation.

(d)     The supposed transfer was illicit and made by a debtor (Ms. Lollar) to conceal property from her creditor (Mr. Lucky).

(e)     Ms. Lollar had never before transferred the property to her husband Ronald in all the years that the property had been in her name or during all the years in which Lucky-Carr I was pending. Ms. Lollar only did so on the eve of the Court's taking Lucky-Carr I under advisement to render a decision therein. It is obvious that

Lollar knew and anticipated that her wrongful conduct would soon result in a judgment against her in Lucky-Carr I.

(f)     Further, from Ms. Lollar's complete lack of credibility at the trial on the merits in Lucky-Carr I, it must be concluded that no actual transfer of the property from Lollar was actually intended by the Credit Sale Deed with Vendor's Lien and Special Mortgage. Instead, the entire transaction is a sham obviously designed with the assistance of Ms. Lollar's attorneys.

(g)     In the alternative, if and to the extent that the Credit Sale Deed with Vendor's Lien and Special Mortgage is not null, void, and of no effect whatsoever as a simulation, then it is subject to revocation for the reason that the ostensible transfer represented thereby caused or increased Ms. Lollar's insolvency rendering same subject to revocation under Louisiana Civil Code articles Louisiana Civil Code article 2037, *et seq*.

(h)     In the further alternative, the Credit Sale Deed with Vendor's Lien and Special Mortgage is an act of fraud and must be rescinded.

I believe that you can evaluate the merits of the lawsuit filed as Lucky-Carr II when you look over the petition. The defendants have already tried to have the petition in Lucky-Carr II dismissed, and the Court has already ruled against them. I am sending a copy of that ruling, which was made by Judge Michael Craig. We are going to press forward with Lucky-Carr II to a trial and judgment. Mr. Lucky is resolute and unwavering, and he will pursue Lucky-Carr II to a conclusion.

Although the property to be appraised and to be offered at the Sheriff's sale in Lucky-Carr I on October 24, 2018, is the promissory note, I am also sending an appraisal of the real property that Ms. Lollar transferred by the Credit Sale Deed with Vendor's Lien and Special Mortgage. The appraisal indicates that the property has a value of $4,000 per acre. The property that Ms. Lollar transferred was 280 acres, which would, therefore, have a value of $1,120,000.00. Nevertheless, what is relevant here is that the value of the promissory note must be determined based on the fact that a person who buys it will do so subject to the claims made against the property in Lucky-Carr II, which are protected by a *lis pendens*.

Finally, I am sending a copy of the opinion of Coutret and Associates about the value of the mineral interest in the land. You will notice from Judge Self's ruling that he thought that it would be speculative to include an amount in his award for the value of the minerals to which Mr. McGowen testified. Like the land, it is not really the minerals that are to be appraised in this case, it is the promissory note. But, I wanted to include Coutret and Associates' opinion with this letter so that your information would be complete.

If you have any questions, please do not hesitate to call.

Otherwise, the allegations of paragraph 36 of the Second Amended Complaint are denied.

37.     It is admitted that the letter, Exhibit K, reads as set forth in answer to paragraph 36 of the Second Amended Complaint. Otherwise, the allegations of paragraph 37 of the Second Amended Complaint are denied.

38.     It is admitted that the letter, Exhibit K, reads as set forth in answer to paragraph 36 of the Second Amended Complaint. Further answering, nothing in the letter says that the *Judgment* in favor of Mr. Lucky granted rights in the Mortgaged Property. Otherwise, the allegations of paragraph 38 of the Second Amended Complaint are denied.

39.     It is admitted that the letter, Exhibit K, was drafted by Mr. Shelton while he was acting as attorney for Mr. Lucky. Otherwise, the allegations of paragraph 39 of the Second Amended Complaint are denied.

40.     It is admitted that the Sheriff himself had no communication with Mr. Lacour. Defendant believes that Ms. Flournoy furnished a description of the Note. The Sheriff and his deputies, including Ms. Flournoy, performed all of their lawful statutory duties. The allegations of paragraph 40 of the Second Amended Complaint to the contrary are conclusory and/or argumentative allegations without specific facts. Such conclusory allegations without specific

facts are insufficient and do not require an answer. Out of an abundance of caution, all such conclusory allegations are denied. The allegations of paragraph 40 of the Second Amended Complaint are otherwise denied.

41.     It is admitted that Mr. Lacour did not look at the physical Note. Further answering, Mr. Lacour knew all of the relevant terms of the Note, including its amount, interest rate, and payment terms. The allegations of paragraph 41 of the Second Amended Complaint are otherwise denied.

42.     The allegations of paragraph 42 of the Second Amended Complaint are denied.

43.     The allegations of paragraph 43 of the Second Amended Complaint to the contrary are conclusory and/or argumentative allegations without specific facts. Such conclusory allegations without specific facts are insufficient and do not require an answer. Out of an abundance of caution, the allegations of paragraph 43 of the Second Amended Complaint are denied.

44.     It is admitted that Mr. Lacour appraised the note at a value of $157,009.22. The documents that are Exhibit L, consisting of a letter, a worksheet, a curriculum vitae, and a two-page appraisement sheet, are the best evidence of their own contents. Any allegations of paragraph 44 to the contrary are denied.

45.     The allegations of paragraph 45 of the Second Amended Complaint to the contrary are conclusory and/or argumentative allegations without specific facts. Such conclusory allegations without specific facts are insufficient and do not require an answer. Out of an abundance of caution, the allegations of paragraph 45 of the Second Amended Complaint are denied

46.     The allegations of paragraph 46 of the Second Amended Complaint to the contrary are conclusory and/or argumentative allegations without specific facts. Such conclusory allegations without specific facts are insufficient and do not require an answer. Out of an abundance of caution, Mr. Lucky denies the allegations of paragraph 46 of the Second Amended Complaint. Further answering, the appraisal made by Mr. Garland was dated October 5, 2018, which was two weeks before the October 19, 2018, deadline by which the seizing creditor's appraisal was required to be submitted. Ms. Lollar's appraisal was submitted on October 18, 2018. Once he was appointed, Mr. Lacour submitted his appraisal on October 22, 2018. Paragraph E of Louisiana Revised Statutes 13:4365 reads: "The appraisal of any appraiser appointed by the sheriff shall be made and delivered to the sheriff at a time prior to the sale." Mr. Lacour's appraisal was made and delivered to the sheriff prior to the sale. The only things that the timing and amount of the appraisals by Mr. Garland and Mr. Lacour is strongly indicative of is that the seizing creditor, Mr. Lucky, the Sheriff, and Ms. Flournoy acted in full compliance with the law.

47.     It is admitted that Mr. Garland and Mr. Lacour considered such facts as they deemed relevant in rendering their respective appraisers. It is admitted that Mr. Lucky has dismissed his claims in Lucky II and has cancelled the notices of lis pendens, which was the right thing to do after the judgment was reversed. Otherwise, the allegations of paragraph 47 are denied.

48.      The allegations of paragraph 48 are denied.

49.     It is admitted that on October 22, 2018, just two days before the sheriff's sale, Mr. Powell, plaintiffs' counsel who is also the registered agent for service of process for Magnolia and who participated in the actions described in answer above to paragraph 14 of the Second

Amended Complaint, filed a *Petition for Preliminary Injunctive Relief* with the State Court in Lucky I in an untimely last-minute effort to stop or stall the sheriff's sale although no suspensive appeal had been taken from the *Judgment* in Lucky I. It is admitted that that untimely last-minute effort failed, and the State Court judge determined that the belated *Petition for Preliminary Injunctive Relief* was moot. Further answering, the *Petition for Preliminary Injunctive Relief* was legally deficient in any event.

50.     It is admitted that the Note was offered at the sheriff's sale with a minimum bid of two-thirds of the third and final appraisal, and that Lucky Family, L.L.C. made the highest bid of $105,000.00, thereby purchasing the Note. Further answering, anyone else, including either of Plaintiffs, who thought that the Note was worth more than $105,000.00 could have bid on it at the sale and purchased it    for a higher bid. Any other allegations of paragraph 50 of the Second Amended Complaint are denied.

51.     It is admitted that on October 24, 2018, the Louisiana Secretary of State's records indicated that Mr. Lucky was a member of Lucky Family, L.L.C. because those records had not been updated. It is denied that Mr. Lucky was actually a member of Lucky Family, L.L.C. on that date. It is denied that Lucky is a "beneficiary" of Lucky Family, L.L.C. It is denied that Lucky Family, L.L.C. was controlled by Mr. Lucky at any material time or used by Mr. Lucky as a "subterfuge" or in any manner. Further answering, Mr. Lucky owned no membership interest in Lucky Family, L.L.C. after November 22, 2000.

52.     The allegations of paragraph 52 of the Second Amended Complaint to the contrary are conclusory and/or argumentative allegations without specific facts. Such conclusory allegations without specific facts are insufficient and do not require an answer. Out of an abundance of caution, the allegations of paragraph 52 are denied.

53.     It is admitted that Lucky Family, L.L.C. is entitled to enforce the Note at its face value and to enforce the mortgage that secures the Note pursuant to the provisions of those documents and Lucky Family, L.L.C.'s rights. It is denied that Mr. Lucky claims that he is entitled to enforce the Note or the mortgage securing it because Mr. Lucky does not own the Note. Otherwise, the allegations of paragraph 48 of the Second Amended Complaint are denied.

54.     The allegations of paragraph 54 of the Second Amended Complaint to the contrary are conclusory and/or argumentative allegations without specific facts. Such conclusory allegations without specific facts are insufficient and do not require an answer. Out of an abundance of caution, the allegations of paragraph 54 are denied.

55.     The allegations of paragraph 55 of the Second Amended Complaint require no further response, but to the extent one may be required, the answers set forth above are incorporated by reference.

56.     It is admitted that Louisiana Revised Statutes 13:4365(B) provides for the appointment of a third appraiser. It is denied that the statute requires an "independent" appraiser to be appointed. It is denied that the Sheriff allowed his role to be fulfilled by Mr. Lucky. The remaining allegations of paragraph 56 of the Second Amended Complaint are denied.

57.     The allegations of paragraph 57 of the Second Amended Complaint to the contrary are conclusory and/or argumentative allegations without specific facts. Such conclusory allegations without specific facts are insufficient and do not require an answer. Out of an abundance of caution, the allegations of paragraph 57 are denied.

58.     The allegations of paragraph 58 of the Second Amended Complaint to the contrary are conclusory and/or argumentative allegations without specific facts. Such conclusory

allegations without specific facts are insufficient and do not require an answer. Out of an abundance of caution, the allegations of paragraph 58 are denied.

59.     The allegations of paragraph 59 of the Second Amended Complaint to the contrary are conclusory and/or argumentative allegations without specific facts. Such conclusory allegations without specific facts are insufficient and do not require an answer. Out of an abundance of caution, the allegations of paragraph 59 are further answered as follows. It is denied that the Sheriff or Ms. Flournoy allowed Mr. Lucky to select the third appraiser. It is denied that Mr. Lucky is a "preferred party." Mr. Lucky does not know what that means. It is denied that Louisiana Revised Statutes 13:4365(B) is to address "discrepancies" between the appraisals by the appraisers. It is denied that Mr. Lacour's appraisal is "biased and tainted." Further answering, the argumentative premises set forth in paragraph 59 of the Second Amended Complaint are simply not supported by the law or the facts.

60.     The allegations of paragraph 60 of the Second Amended Complaint to the contrary are conclusory and/or argumentative allegations without specific facts. Such conclusory allegations without specific facts are insufficient and do not require an answer. Out of an abundance of caution, the allegations of paragraph 60 of the Second Amended Complaint are denied. Further answering, the argumentative premises set forth in paragraph 60 of the Second Amended Complaint are simply not supported by the law or the facts.

61.     The allegations of paragraph 61 of the Second Amended Complaint to the contrary are conclusory and/or argumentative allegations without specific facts. Such conclusory allegations without specific facts are insufficient and do not require an answer. Out of an abundance of caution, the allegations of paragraph 61 of the Second Amended Complaint are denied.

62.     The allegations of paragraph 62 of the Second Amended Complaint to the contrary are conclusory and/or argumentative allegations without specific facts. Such conclusory allegations without specific facts are insufficient and do not require an answer. Out of an abundance of caution, the allegations of paragraph 62 of the Second Amended Complaint are denied.

63.     It is admitted that the Sheriff must comply with Louisiana Revised Statutes 13:4365. However, it is denied that the Sheriff does not have discretion in the manner in which his duties are fulfilled. The remaining allegations of paragraph 63 of the Second Amended Complaint are conclusory and/or argumentative allegations without specific facts. Such conclusory allegations without specific facts are insufficient and do not require an answer. Out of an abundance of caution, the allegations of paragraph 63 of the Second Amended Complaint are otherwise denied.

64.     The allegations of paragraph 64 of the Second Amended Complaint are conclusory and/or argumentative allegations without specific facts. Such conclusory allegations without specific facts are insufficient and do not require an answer. Out of an abundance of caution, the allegations of paragraph 64 of the Second Amended Complaint are denied.

65.     The allegations of paragraph 65 of the Second Amended Complaint are conclusory and/or argumentative allegations without specific facts. Such conclusory allegations without specific facts are insufficient and do not require an answer. Out of an abundance of caution, the allegations of paragraph 65 of the Second Amended Complaint are denied.

66.     The allegations of paragraph 66 of the Second Amended Complaint are conclusory and/or argumentative allegations without specific facts. Such conclusory allegations

31

without specific facts are insufficient and do not require an answer. Out of an abundance of caution, the allegations of paragraph 66 of the Second Amended Complaint are denied.

67.     The allegations of paragraph 67 of the Second Amended Complaint are conclusory and/or argumentative allegations without specific facts. Such conclusory allegations without specific facts are insufficient and do not require an answer. Out of an abundance of caution, the allegations of paragraph 67 of the Second Amended Complaint are denied.

68.     The allegations of paragraph 68 of the Second Amended Complaint are conclusory and/or argumentative allegations without specific facts. Such conclusory allegations without specific facts are insufficient and do not require an answer. Out of an abundance of caution, the allegations of paragraph 68 of the Second Amended Complaint are denied. It is denied that Mrs. Lawler has any claim for "abuse of process."

69.     It is admitted that the Note was purchased by Lucky Family, L.L.C. Otherwise, the allegations of paragraph 69 of the Second Amended Complaint are denied.

70.     The allegations of paragraph 70 of the Second Amended Complaint are conclusory and/or argumentative allegations without specific facts. Such conclusory allegations without specific facts are insufficient and do not require an answer. Out of an abundance of caution, the allegations of paragraph 70 of the Second Amended Complaint are denied.

71.     The allegations of paragraph 71 of the Second Amended Complaint are denied.

72.     The allegations of paragraph 72 of the Second Amended Complaint are denied.

73.     The allegations of paragraph 73 of the Second Amended Complaint are conclusory and/or argumentative allegations without specific facts. Such conclusory allegations without specific facts are insufficient and do not require an answer. Out of an abundance of caution, the allegations of paragraph 73 of the Second Amended Complaint are denied.

74      The allegations of paragraph 74 of the Second Amended Complaint are conclusory and/or argumentative allegations without specific facts. Such conclusory allegations without specific facts are insufficient and do not require an answer. Out of an abundance of caution, the allegations of paragraph 74 of the Second Amended Complaint are denied.

75.      The allegations of paragraph 75 of the Second Amended Complaint are denied.

76.      The allegations of paragraph 76 of the Second Amended Complaint are denied.

77.      The allegations of paragraph 77 of the Second Amended Complaint are conclusory and/or argumentative allegations without specific facts. Such conclusory allegations without specific facts are insufficient and do not require an answer. Out of an abundance of caution, the allegations of paragraph 77 of the Second Amended Complaint are denied.

78.      The allegations of paragraph 78 of the Second Amended Complaint are conclusory and/or argumentative allegations without specific facts. Such conclusory allegations without specific facts are insufficient and do not require an answer. Out of an abundance of caution, the allegations of paragraph 78 of the Second Amended Complaint are denied.

79.      The allegations of paragraph 79 of the Second Amended Complaint are conclusory and/or argumentative allegations without specific facts. Such conclusory allegations without specific facts are insufficient and do not require an answer. Out of an abundance of caution, the allegations of paragraph 79 of the Second Amended Complaint are denied.

80.      The allegations of paragraph 80 of the Second Amended Complaint are conclusory and/or argumentative allegations without specific facts. Such conclusory allegations without specific facts are insufficient and do not require an answer. Out of an abundance of caution, the allegations of paragraph 80 of the Second Amended Complaint are denied.

81.     The allegations of paragraph 81 of the Second Amended Complaint are conclusory and/or argumentative allegations without specific facts. Such conclusory allegations without specific facts are insufficient and do not require an answer. Out of an abundance of caution, the allegations of paragraph 81 of the Second Amended Complaint are denied.

82.     The allegations of paragraph 82 of the Second Amended Complaint are conclusory and/or argumentative allegations without specific facts. Such conclusory allegations without specific facts are insufficient and do not require an answer. Out of an abundance of caution, the allegations of paragraph 82 of the Second Amended Complaint are denied.

83.     The allegations of paragraph 83 of the Second Amended Complaint are conclusory and/or argumentative allegations without specific facts. Such conclusory allegations without specific facts are insufficient and do not require an answer. Out of an abundance of caution, the allegations of paragraph 83 of the Second Amended Complaint are denied.

84.     The allegations of paragraph 84 of the Second Amended Complaint are denied.

85.     The allegations of paragraph 85 of the Second Amended Complaint are denied.

86.     The allegations of paragraph 86 of the Second Amended Complaint are denied.

87.     The allegations of paragraph 87 of the Second Amended Complaint are conclusory and/or argumentative allegations without specific facts. Such conclusory allegations without specific facts are insufficient and do not require an answer. Out of an abundance of caution, the allegations of paragraph 87 of the Second Amended Complaint are denied.

88.     The allegations of paragraph 88 of the Second Amended Complaint are conclusory and/or argumentative allegations without specific facts. Such conclusory allegations without specific facts are insufficient and do not require an answer. Out of an abundance of caution, the allegations of paragraph 88 of the Second Amended Complaint are denied.

89.     The allegations of paragraph 89 of the Second Amended Complaint require no further response, but to the extent one may be required, the answers set forth above are incorporated by reference.

90.     The allegations of paragraph 90 of the Second Amended Complaint are denied.

91.     The allegations of paragraph 91 of the Second Amended Complaint are denied.

92.     Mr. Lucky admits that the Note was seized and sold for the purpose of collecting amounts owed to Mr. Lucky under the *Judgment* signed on January 5, 2018, in favor of Mr. Lucky against Ms. Lollar, which *Judgment* was executory. Otherwise, the allegations of paragraph 64 of the Second Amended Complaint are denied. Further answering, the argumentative premises set forth in paragraph 64 of the Second Amended Complaint are simply not supported by the law or the facts.

93.     The allegations of paragraph 93 of the Second Amended Complaint are denied. Further answering, as set forth above, the property to which plaintiffs refer was previously owned by Ms. Lollar and was so owned until Ms. Lollar, Mr. Lollar, and Magnolia, assisted by Ms. Lollar's attorney and Magnolia's registered agent, Mr. Powell, caused Magnolia to be formed and the property to be transferred by the *Credit Sale Deed with Vendor's Lien and Special Mortgage* immediately before Lucky I was to be deemed under advisement for a decision by the State Court. Further, the property was then owned in Mr. Lollar's name, but Mr. Lollar and Magnolia executed the *Exchange Deed, with Assumption of Mortgage* (also immediately before Lucky I was to be deemed under advisement in the State Court for a decision). The allegations above in answer to paragraph 14 are hereby incorporated in answer to paragraph 93 of the Second Amended Complaint.

94.     The allegations of paragraph 94 of the Second Amended Complaint are denied. Notice was served on Ms. Lollar through her attorney, Mr. Powell, who was also Magnolia's registered agent and who was present at the sheriff's sale.

95.     The allegations of paragraph 95 of the Second Amended Complaint are denied.

96.     The allegations in paragraph 96 of the Second Amended Complaint essentially seek an injunction without any allegations having been made that are sufficient to support the issuance of an injunction and without plaintiffs having followed any of the procedural rules for injunctive relief. Further, the plaintiffs allege: "Upon information and belief, the first annual installment due under the Note on November 1, 2018 had been pre-paid to the original holder of the Note as provided for under the terms of the Note." The Court will notice that this allegation is made on "information and belief." The Note was previously held by Ms. Lollar, who is a plaintiff in this action, and was made by Mr. Lollar (Ms. Lollar's husband) and assumed by Magnolia, who is also a plaintiff in this action. If a payment was made, then the plaintiffs could certainly make an affirmative allegation (as opposed to an allegation on "information and belief") that the payment was made and include such details as when, by whom, and to whom, and provide documentary evidence thereof. This "information and belief" allegation of a payment is denied, and all other allegations of paragraph 96 of the Second Amended Complaint are denied.

97.     The allegations of paragraph 97 of the Second Amended Complaint require no answer but to the extent the same may be required, the allegations are denied.

AND NOW, for his counterclaims, W. A. LUCKY, III ("Counterclaimant"), respectfully represents:

1.      Made defendants on this counterclaim are Barbara Marie Carey Lollar ("Ms. Lollar") and Magnolia Island Plantation, L.L.C. ("Magnolia").

2.      On November 13, 2019, and November 26, 2019, Ms. Lollar's counsel demanded that Mr. Lucky pay $8,365.00 as the amount she was awarded for the costs of the appeal in Lucky I, and $97,593.50 as the proceeds from the Sheriff's sale of the Note.

3.      On December 3, 2019, Mr. Lucky's counsel sent two official checks payable to Ms. Lollar's counsel in the amounts of $8,430.00 for the appeal costs and $97,593.50 as the proceeds from the Sheriff's sale of the Note.

4.      Ms. Lollar accepted and negotiated both of these checks by negotiating same with her endorsements "Pay to the order of Davidson Summers," and the checks cleared Citizens Bank on December 5, 2019.

5.      Ms. Lollar demanded, received, and has retained the proceeds from the Sheriff's sale. Ms. Lollar has thereby ratified the sale of the Note. Ms. Lollar has thereby made a judicial admission of the legality of the sale. However, in the event that, notwithstanding the legality of the Sheriff's sale of the Note and Ms. Lollar's ratifications and judicial admission, there is any judgment which results in the return of the Note to Ms. Lollar, then there should be judgment in favor of Mr. Lucky and against Ms. Lollar in the amount of $97,593.50 (the proceeds from the Sheriff's sale of the Note). Ms. Lollar could not both retain the proceeds from the Sheriff's sale of the Note and have the Note back. Stated another way, Ms. Lollar cannot eat her cake and have it too.

6.      Barbara Marie Carey Lollar and Magnolia Island Plantation, L.L.C. have filed this action against Counterclaimant under 42 U.S.C. §§ 1983.  42 U.S.C. § 1988 provides that, in any action or proceeding to enforce a provision of section 1983, the Court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

7.      Counterclaimant desires and is entitled to be awarded attorney's fees upon prevailing in this action.

WHEREFORE, W. A. LUCKY, III PRAYS:

I.      That the above and foregoing answer be deemed good and sufficient, and after due proceedings, there be judgment rendered in defendants' favor and against plaintiffs, dismissing plaintiffs' claims, with prejudice, and at plaintiffs' costs;

II.     That, in any event that there is any judgment which results in the return of the Note to Ms. Lollar, then there be judgment in favor of W. A. LUCKY, III and against Barbara Marie Carey Lollar in the amount of $97,593.50 (the proceeds from the Sheriff's sale of the Note);

III.    That defendant W. A. Lucky, III, as counterclaimant, recover all costs of this action, including reasonable attorney's fees pursuant to 42 U.S.C. §1988, from Barbara Marie Carey Lollar and Magnolia Island Plantation, L.L.C.;

IV.     That defendant W. A. Lucky, III, as counterclaimant, recover judicial interest; and

V.      For all other and further relief as this Court may deem appropriate.

AYRES, SHELTON, WILLIAMS,
BENSON & PAINE, LLC


By: /s/ Curtis R. Shelton
      Curtis R. Shelton
      La. Bar Roll No. 17137
333 Texas Street, Suite 1400 (71101)
P. O. Box 1764
Shreveport, LA 71166
Telephone: (318) 227-3500
Facsimile: (318) 227-3980
Email: curtisshelton@arklatexlaw.com

ATTORNEYS FOR W. A. LUCKY, III