# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| MAGNOLIA ISLAND PLANTATION, LLC, ET AL. | CIVIL ACTION NO. 18-1526 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| LUCKY FAMILY, LLC, ET AL. | MAGISTRATE JUDGE MCCLUSKY |

## MEMORANDUM RULING

Before the Court are three Motions for Partial Summary Judgment. Plaintiff Barbara Marie Carey Lollar ("Mrs. Lollar") filed an Amended and Corrected Motion for Partial Summary Judgment. See Record Document 198. Defendant Lucky Family, LLC ("Lucky Family") filed an opposition. See Record Document 220. Defendants W.A. Lucky, III ("Mr. Lucky"), Sheriff Julian Whittington ("Sheriff Whittington"), and Deputy Kimberly Flournoy ("Deputy Flournoy") (collectively "Defendants") also filed an opposition. See Record Document 221. Mrs. Lollar replied. See Record Document 226.

Defendants Lucky Family and Mr. Lucky have each filed a Motion for Partial Summary Judgment. See Record Documents 208 & 212. Mr. Lucky's motion concurs and joins in Lucky Family's motion. See Record Document 212 at 1. Plaintiffs Mrs. Lollar and Magnolia Island Plantation, LLC ("Magnolia") (collectively "Plaintiffs") filed an opposition. See Record Document 225. Lucky Family replied. See Record Document 227.

For the reasons set forth below, all three Motions for Partial Summary Judgment (Record Documents 198, 208, & 212) are **DENIED**.

**BACKGROUND**

On November 2, 2017, a promissory note (the "Note") was made by Ronald William Lollar ("Mr. Lollar") in favor of Mrs. Lollar for $1,730,000.00 at the rate of four percent annum, to be paid in four consecutive annual installments of $100,046.00 and a fifth and final balloon payment equal to the remaining principal and interest due thereunder. See Record Document 186 at 5–6. The Note was secured by a mortgage on certain immovable property described and conveyed from Mrs. Lollar to Mr. Lollar in the Credit Sale Deed with Vendor's Lien and Special Mortgage, dated November 2, 2017. See id. at 6. The Note was filed for record at Instrument No. 1179265 of the conveyance records and mortgage records within Bossier Parish, Louisiana. See id. By way of an Exchange Deed with Assumption of Mortgage, Mr. Lollar conveyed the mortgaged property to Magnolia, wherein Magnolia assumed the obligations under the Note and the mortgage. See id.

The Sheriff's Office conducted the sale of the Note on October 24, 2018 at the Bossier Parish Courthouse. See id. at 4. The seizure and sale of the Note was purported to be based upon a state court monetary judgment obtained by Mr. Lucky in an earlier lawsuit filed in 2008 against Mrs. Lollar ("Lucky I"). See id. In Lucky I, Mr. Lucky sued Mrs. Lollar in the 26th Judicial District Court for monetary damages based on an alleged oral agreement to transfer immovable property and a breach of fiduciary duty. See id. at 7. Mr. Lucky received a monetary judgment for $1,799,450.52; however, that judgment was later reversed in 2019 by the Louisiana Second Circuit Court of Appeal. See id. The Louisiana Supreme Court subsequently denied his writ application. See id.

Prior to requesting seizure of Mrs. Lollar's Note, Mr. Lucky filed multiple Notice of Lis Pendens against the immovable property owned by Magnolia, which secured the Note. See id. Additionally, Mr. Lucky filed suit against Mrs. Lollar and Magnolia in 2018 asserting that the Note itself and the sale of the property creating the Note were all nullities ("Lucky II"). See id. at 8. However, Mr. Lucky later abandoned Lucky II after the Sheriff's Sale of the Note was complete and the 2008 monetary judgment was reversed. See id. at 9.

This suit arises from the alleged improper seizure, appraisal, and Sheriff's sale of Mrs. Lollar's Note. See id. at 3. The Notice of Seizure to Mrs. Lollar's counsel included a Notice to Appoint Appraiser, signed by Deputy Flournoy, stating that Mrs. Lollar may appoint an appraiser to value the Note. See id. at 12. Mr. Lucky appointed Chad Garland ("Garland") as his appraiser. See id. Garland submitted an appraisal of $173,000.00, being ten percent of the Note's face value. See id. Mrs. Lollar appointed John Dean ("Dean") as her appraiser. See id. at 13. Dean submitted an appraisal of $1,478,048.68. See id. The great discrepancy between the Garland and Dean appraisals required the Sheriff to appoint a third appraiser in accordance with Louisiana Revised Statutes Annotated § 13:4365(B). See id.

Sheriff Whittington appointed Patrick Lacour ("Lacour") as the third independent appraiser. See id. Lacour submitted an appraisal amount of $157,009.22, being nine percent of the Note's face value. See id. at 15. Plaintiffs claim that days before the sale, counsel for Mrs. Lollar was informed by employees of the Sheriff's Office that Lacour was chosen by Mr. Lucky's counsel. See id. at 13. Plaintiffs allege that Mr. Lucky's counsel, Curtis Shelton ("Shelton"), communicated with and wrote a lengthy letter to Lacour on

3

October 10, 2018 (the "Shelton Letter"), nine days before anyone would have known whether a third appraiser would be necessary. See id. The Shelton Letter was drafted on behalf of Mr. Lucky and/or Lucky Family. See id. at 14. Plaintiffs maintain the Shelton Letter outlined in detail Mr. Lucky's claims against the Note and mortgaged property in his prior 2018 lawsuit against Mrs. Lollar and referred to the Note transactions as "Mrs. Lollar's scam" and "misdeeds." See id. Mr. Lucky's counsel called Mrs. Lollar "not truthful" and suggested that her attorneys "aided and abetted" her "scams." See id.

Plaintiffs allege that Lacour did not perform either an independent evaluation of the circumstances surrounding the Note, an independent investigation of the mortgaged property, nor a review of the merits of Mr. Lucky's previous lawsuits against Mrs. Lollar. See id. at 15. Instead, Lacour relied entirely on the Shelton Letter. See id.

In the current lawsuit, Plaintiffs claim the sale of the Note was tainted with impropriety by Sheriff Whittington, his office, Deputy Flournoy, as well as the other Defendants named herein. See id. at 4. Upon seizure of the Note, Plaintiffs allege Mr. Lucky manipulated the appraisal process. See id. They claim Sheriff Whittington, his office, and Deputy Flournoy allowed Mr. Lucky, through his counsel, to select and improperly influence the purported third appraiser whose appraisal of the property would be final under state law. See id. Plaintiffs contend that Mr. Lucky, through his counsel, controlled every aspect of the directions and information the appraiser received to perform the valuation. See id. Additionally, he corresponded with the purported third appraiser for two reasons: (1) to provide a biased background regarding Mrs. Lollar and her Note and (2) to ensure that the clouds on title he placed on the Note's collateral and his lawsuit calling the Note and sale nullities were utilized to de-value the final appraisal. See id. As

4

a result, the Sheriff's Office sold the Note for two-thirds of the third appraisal value for a total of $105,000.00 to Lucky Family, being only six percent of the face value of the Note. See id. at 17. At the time of the sale, records from the Louisiana Secretary of State's office showed that Mr. Lucky was a member and beneficiary of Lucky Family. See id. Thus, Plaintiffs claim Lucky Family was controlled by Mr. Lucky at all times material and used by him to manufacture a third-party purchaser for the Note. See id.

Plaintiffs seek: (1) annulment of the Sheriff's sale and restitution of the Note and (2) damages. See id. at ¶ 97. Plaintiffs claim annulment and return of the Note is warranted due to: (a) violation of Louisiana Revised Statutes § 13:4365 by Defendants Sheriff Whittington and Deputy Flournoy (collectively, BSO Defendants") (¶¶ 55–67); (b) Defendants Mr. Lucky and Lucky Family's abuse of process under Louisiana Civil Code article 2315 (¶¶ 68–72); (c) deprivation of Mrs. Lollar's property without due process of law (¶¶ 73–88); and (d) the reversal of the judgment in Lucky I (¶ 97). See Record Document 186. Plaintiffs claim they are entitled to damages as a result of the improper seizure, appraisal, and sale of the Note (¶ 65), as well as under state law unjust enrichment principles (¶ 70) and for abuse of process (¶¶ 71, 91) against both Lucky Family and Mr. Lucky himself. See id. Mr. Lucky's counterclaims against Mrs. Lollar and Magnolia seek recovery of the proceeds from the Sheriff's sale of the Note if there is a judgment that results in the return of the Note to Mrs. Lollar. See Record Document 206 at 38. Additionally, Mr. Lucky seeks to recover all costs, including reasonable attorney's fees. See id.

**LAW AND ANALYSIS**

**I. Summary Judgment Standard.**

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). When reviewing a motion for summary judgment, the court must view "all facts and inferences in the light most favorable to the non-moving party." Romero v. City of Grapevine, Tex., 888 F. 3d 170, 175 (5th Cir. 2018). But the non-moving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a 'scintilla of evidence.'" Hathaway v. Bazanay, 507 F. 3d 312, 319 (5th Cir. 2007).

The Fifth Circuit provides, "A partial summary judgment order is not a final judgment but is merely a pre-trial adjudication that certain issues are established for trial of the case." Streber v. Hunter, 221 F. 3d 701, 737 (5th Cir. 2000). Partial summary judgment serves the purpose of rooting out, narrowing, and focusing the issues for trial. See Calpetco 1981 v. Marshall Exploration, Inc., 989 F. 2d 1408, 1415 (5th Cir. 1993). Additionally, a district court is allowed to "revisit[] an issue in light of new evidence." Cannon v. Principal Health Care of La., 87 F. 3d 1311, *2 (5th Cir. 1996). Thus, this Court may consider Mrs. Lollar's motion introducing Deputy Flournoy's deposition testimony. See id.

Because the pending motions for summary judgment address distinct and overlapping issues, the Court will examine each issue separately and in turn. The Court will first address Lacour's appointment as the third appraiser under La. R.S. § 13:4365. Then, the Court will consider whether Louisiana law provides a cause of action for Plaintiffs to nullify the sale of the Note.

## II. First Issue: Lacour's Appointment as the Third Appraiser.

In Mrs. Lollar's motion, her first argument provides that she is entitled to judgment as a matter of law on her claim that Sheriff Whittington failed to appoint a third appraiser under La. R.S. § 13:4365. See Record Document 198 at 3. In December of 2020, this Court held that questions of material fact precluded summary judgment on whether the Sheriff's Office properly appointed a third appraiser under La. R.S. § 13:4365. See Record Document 198-2 at 4. Mrs. Lollar filed this new motion in light of new evidence obtained since then. See id. She asserts that Deputy Flournoy, the Sheriff's Office employee who handled the seizure and sale of the Note, admitted at her deposition that she did not appoint Lacour as a third appraiser. See id. Deputy Flournoy believes that Lacour was already the designated third appraiser even before she communicated with him. See id. Mrs. Lollar maintains that this new fact evidence confirms that Sheriff Whittington and his office failed to comply with the statutory sale requirements. See id. at 5.

She contends that no genuine dispute of material fact exists as to whether the Sheriff's office failed to appoint a third appraiser, as required by statute, and thus, she is entitled to annulment of the sale of the Note. See Record Document 226 at 9. Defendants' oppositions argue that Louisiana law provides no cause of action for the annulment of the

7

Sheriff's sale, and regardless, Mrs. Lollar offers no material facts to create a genuine dispute of this issue. See Record Documents 220 at 11, 13 & 221-28 at 7.

La. R.S. Ann. § 13:4365(B) provides the procedure for the appointment of a third appraiser:

> If the appraisers cannot agree, and (1) the difference in value between the two appraisals does not exceed two hundred and fifty thousand dollars, and (2) the value assigned by the lower of the two appraisers is at least ninety percent of the value assigned by the higher of the two appraisers, then the sheriff shall average the two figures and use the average as the appraised value for purposes of determining the opening bid. In those cases where the two appraisers do not agree and the values are not within the averaging limits, then the sheriff shall appoint a third appraiser, who shall also be sworn, and whose decision shall be final.

LA. REV. STAT. ANN. § 13:4365(B). While there is no case law describing the duties imposed on a sheriff under this statute, this Court previously held that, based on Louisiana case law, "a sheriff must perform some active duties with respect to appointment and cannot passively fulfill his obligations." Magnolia Island Plantation, LLC, et al. v. Lucky Family, LLC, et al., No. 18-1526, 2020 WL 6827793, at *5 (citing Citizens Bank of Ville Platte v. Am. Druggists Ins. Co., 471 So. 2d 1119, 1122–23 (La. App. 3d Cir. 1985)). The Court stands by its previous ruling.

The parties have produced conflicting material evidence as to whether Sheriff Whittington properly appointed Lacour to serve as the third appraiser. Plaintiffs support their assertions with emails and deposition testimony, which has already been discussed by this Court. See id. The new fact evidence obtained through Deputy Flournoy's October 26, 2022 deposition is currently before the Court. See Record Document 198-2 at 5. From

this testimony, Mrs. Lollar argues that the Sheriff's Office failed to appoint a third appraiser. See id.

In her deposition, Deputy Flournoy testifies that she does not recall knowing whether Shelton was communicating directly with a potential third appraiser. See Record Document 198-5 at 26. Additionally, she does not recall who made Lacour the third appraiser, but she states it was not her. See id. at 30. She is not aware of any communication between Shelton and Lacour, nor does she recall speaking to Lacour before October 19, 2018. See id. at 31. Deputy Flournoy does not believe Shelton was helping her, nor is she aware of other instances where she went through an attorney to ask an appraiser for an invoice. See id. at 34. Her testimony states that she does not recall providing Lacour with anything. See id. at 36. Furthermore, she has no knowledge that Mr. Lucky had an interest in the outcome of the sale at issue. See id. at 37. She clarifies that she signed the document which confirmed that Lacour appeared before her and signed the appraisement sheet. See id. at 42. Deputy Flournoy submits that she never failed to uphold the oath to faithfully discharge the laws of Louisiana. See id. at 43.

Mrs. Lollar argues that this testimony confirms Deputy Flournoy's admission that she did not appoint Lacour as the third appraiser, and thus, Sheriff Whittington failed to appoint him as the third appraiser. See Record Document 198-2 at 12. The Court disagrees and finds there still exists a genuine issue of material fact as to the issue of Lacour's appointment. While Deputy Flournoy's testimony provides that she did not appoint Lacour or know who appointed him, a rational trier of fact could find for either party on this issue. In Lacour's deposition testimony, he states that there was contact between him and the Sheriff's Office. See Record Document 98-8 at 19–20. Specifically,

9

the Sheriff's Office prepared the oath of appraisement, which Lacour signed. See id. Lacour testifies that he worked for the Sheriff's Office, not Mr. Lucky. See id. at 23–24. Lacour states he rendered his opinion solely for the Sheriff's Office. See id. at 24. Lacour's testimony, in combination with Defendants' other summary judgment evidence, supports a factual dispute on this issue, which results in the denial of summary judgment.

In considering the summary judgment record, the Court finds a genuine dispute of material fact exists as to the issue of Lacour's appointment. A rational trier of fact could find for either party on this issue, as the determination turns on the credibility and/or weighing of Deputy Flournoy and Lacour's testimony. At a minimum, the jury needs to hear from both Deputy Flournoy and Lacour to make this determination. Therefore, Mrs. Lollar's motion must be **DENIED**.

**III. Second Issue: Annulment of Sheriff's Sale of the Note.**

The second issue is addressed in all three Motions for Partial Summary Judgment (Record Documents 198, 208, & 212). In Mrs. Lollar's motion, she argues for annulment of the Sheriff's sale because it was not conducted in conformance with the required statutory procedure. See Record Document 198 at 3. Lucky Family's opposition argues that annulment is not the proper remedy even if the Sheriff's sale is found invalid. See Record Document 220 at 13. Similarly, the opposition filed by Mr. Lucky, Sheriff Whittington, and Deputy Flournoy maintains that Louisiana law provides no cause of action for Mrs. Lollar to annul the sale. See Record Document 221-28 at 23. In Mrs. Lollar's reply, she asserts that Lucky Family and Mr. Lucky conflate the standards applicable to sales made under executory process and those made after seizure under a

writ of fifa for an ordinary process action. See Record Document 226 at 9. She maintains the sale can and should be annulled. See id.

Lucky Family and Mr. Lucky's concurring motions seek reconsideration of this Court's November 20, 2020 Memorandum Ruling (Record Document 158) regarding the issue of whether annulment is an option following an improper appraisal. See Record Document 212 at 2. Lucky Family asserts that Mrs. Lollar has no right of action for invalidation of the sale under La. R.S. § 13:4365. See Record Document 208 at 1. Furthermore, no genuine issues of fact exist as to whether there has been any showing that the sale suffers from a fundamental defect. See id. Thus, Lucky Family maintains that the Court should grant its motion because Mrs. Lollar is without a remedy on her claim that Lacour was not formally appointed as a third appraiser. See id. Mr. Lucky concurs that there is no remedy available under the law to annul or rescind the sale of the Note. See Record Document 212-2 at 2. Plaintiffs oppose, arguing that this Court's previous ruling is correct. See Record Document 225 at 5. Plaintiffs maintain that Lucky Family and Mr. Lucky have not carried their summary judgment burden to show that an effective third appraisal was ever rendered in the sale process here, and thus, they cannot show that annulment is categorically inappropriate. See id. at 6. In Lucky Family's reply, it asserts that failure to make formal appointment under La. R.S. § 13:4365 is merely a technical flaw which cannot invalidate a Sheriff's sale. See Record Document 227 at 2. Thus, the Court should grant its motion. See id.

This Court maintains that "annulments of sheriff's sales are recognized as a legal remedy under Louisiana law in many contexts, including improper or outright lack of appraisal." See Magnolia Island, 2020 WL 6827793, at *4 (citing Tucker v. New Orleans

11

Laundries, Inc., 145 So. 2d 365, 373 (La. App. 4th Cir. 1962)); see also Bauman v. Fields, 332 So. 2d 885, 888 (La. App. 2d Cir. 1976). Louisiana courts have not "expressly disavowed" the possibility of annulment actions resulting from sales following writs of fieri facias. See Magnolia Island, 2020 WL 6827793, at *4. Even though no court has directly addressed this issue, they have considered the possibility "of challenging a sheriff's sale, conducted pursuant to a writ of fieri facias under § 4365." See id. (citing Oak Cliff Bank & Trust Co. v. Kittle, 309 So. 2d 742, 743 (La. App. 4th Cir. 1975) ("While the issue might be raised in other proceedings such as a suit to annul the sale or a suit to enjoin further execution of the original judgment, it is not properly before us.")).

In Bauman, the plaintiff "sued to annul the judicial sale of his property under a writ of fieri facias." 332 So. 2d at 886. Even though the court ultimately held that there was nothing in the sale to nullify it, the court contemplated the possibility that the sale could have resulted in annulment. See id. at 888. This Court continues to find that "Louisiana courts have held a violation of § 4365 is a proper vehicle to annul an execution sale." Magnolia Island, 2020 WL 6827793, at *4 (citing Ford Motor Credit Co. v. Blackwell, 295 So. 2d 522, 524 (La. App. 4th Cir. 1974)).

The Court agrees that the Deficiency Judgment Act is not applicable to sales pursuant to writs of fieri facias. See id. (citing La. Rev. Stat. Ann. § 13:4106; Guaranty Bank of Mamou v. Cmty. Rice Mill, Inc., 502 So. 2d 1067, 1071 (La. 1987); Assocs. Commercial Corp. v. Vick's Sand Put & Dredging Co., Inc., 522 So. 2d 663, 665 (La. App. 5th Cir. 1988)); see also Oak Cliff Bank, 309 So. 2d at 743 ("While the issue might be raised in other proceedings such as a suit to annul the sale or a suit to enjoin further execution of the original judgment, it is not properly before us, as a defense to a deficiency

judgment action which is unauthorized in any event."). Therefore, Lucky Family and Mr. Lucky's references to John Deere Co. v. Loewer, 505 So. 2d 973 (La. App. 3d Cir. 1987), and First Bank & Tr. V. Tedesco, 2012-0774 (La. App. 4th Cir. 12/05/12); 106 So. 3d 653, are not applicable to the instant case because they primarily deal with determining the proper remedy for a deficiency judgment. Lucky Family and Mr. Lucky's motions are mostly supported with inapplicable case law.

Because the Court has denied Mrs. Lollar's motion on the issue of Lacour's appointment and the relevant case law is unclear, the Court will not decide whether the sale should be annulled. While it is possible that this sale may be annulled under Louisiana law, it is not the duty of this Court at the summary judgment stage to ultimately decide whether it should be annulled. Rather, that determination shall be left up to the trier of fact. Thus, the three Motions for Partial Summary Judgment (Record Documents 198, 208, & 212) are **DENIED**.

## CONCLUSION

In sum, the three Motions for Partial Summary Judgment (Record Documents 198, 208, & 212) are **DENIED**.

Based on these rulings, Plaintiffs' claim for annulment of the sale due to a violation of the appointment provision within La. R.S. § 13:4365 remains. Plaintiffs' claim for damages based on the improper appraisal remains. Defendants Lucky Family and Mr. Lucky's counterclaims for enforcement of the Note are likewise triable issues.

An order corresponding with the instant memorandum ruling will issue herewith.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 13th day of November, 2024.

_____
S. MAURICE HICKS, JR., DISTRICT JUDGE
UNITED STATES DISTRICT COURT