# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| MAGNOLIA ISLAND PLANTATION, LLC, ET AL. | CIVIL ACTION NO. 18-1526 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| LUCKY FAMILY, LLC, ET AL. | MAGISTRATE JUDGE MCCLUSKY |

## MEMORANDUM RULING

Before the Court are two motions filed by Defendants W.A. Lucky, III ("Mr. Lucky") and Lucky Family, LLC ("Lucky Family") (collectively, "Defendants"). The first motion is a Motion to Dismiss Plaintiffs Barbara Marie Carey Lollar ("Mrs. Lollar") and Magnolia Island Plantation, LLC's ("Magnolia") (collectively "Plaintiffs") federal and state civil rights claims against Mr. Lucky. See Record Document 207. The second motion is an identical Motion to Dismiss filed by Lucky Family.[1] See Record Document 211. Plaintiffs oppose both motions. See Record Document 224. There is no reply by Defendants. For the following reasons, both Motions to Dismiss are **GRANTED**. Plaintiffs' state and federal civil rights claims are hereby **DISMISSED WITH PREJUDICE**.

## BACKGROUND

Since the facts of this matter are detailed and complex, the Court will only provide a summary of the pertinent facts for the purposes of the instant motions. A more detailed recitation of the facts can be found in the Court's previous Memorandum Ruling (Record

---

[1] Because both Motions to Dismiss are identical in the relief sought, they will be analyzed together.

Document 242). This suit arises from the alleged improper seizure, appraisal, and Sheriff's sale of Mrs. Lollar's promissory note (the "Note"). See Record Document 186 at 3. The Notice of Seizure to Mrs. Lollar's counsel included a Notice to Appoint Appraiser, signed by Deputy Kimberly Flournoy ("Deputy Flournoy"), stating that Mrs. Lollar may appoint an appraiser to value the Note. See id. at 12. Mr. Lucky's appraiser, Chad Garland ("Garland"), submitted an appraisal of $173,000.00, being ten percent of the Note's face value. See id. Mrs. Lollar's appraiser, John Dean ("Dean"), submitted an appraisal of $1,478,048.68. See id. at 13. The great discrepancy between the Garland and Dean appraisals required the Bossier Parish Sheriff Julian Whittington ("Sheriff Whittington") to appoint a third appraiser in accordance with Louisiana Revised Statutes Annotated § 13:4365(B). See id.

Sheriff Whittington appointed Patrick Lacour ("Lacour"), who submitted an appraisal amount of $157,009.22, being nine percent of the Note's face value. See id. at 13, 15. Plaintiffs claim that days before the sale, counsel for Mrs. Lollar was informed by employees of the Sheriff's Office that Lacour was chosen by Mr. Lucky's counsel. See id. at 13. Plaintiffs allege that Mr. Lucky's counsel, Curtis Shelton ("Shelton"), communicated with and wrote a lengthy letter to Lacour on October 10, 2018 (the "Shelton Letter"), nine days before anyone would have known whether a third appraiser would be necessary. See id. The Shelton Letter was drafted on behalf of Mr. Lucky and/or Lucky Family. See id. at 14. Plaintiffs maintain the Shelton Letter outlined in detail Mr. Lucky's claims against the Note and mortgaged property in his prior 2018 lawsuit against Mrs. Lollar and referred to the Note transactions as "Mrs. Lollar's scam" and "misdeeds." See id. Plaintiffs allege

that Lacour was not an independent appraiser and relied entirely on the Shelton Letter. See id. at 15.

Plaintiffs claim the sale of the Note was tainted with impropriety by Sheriff Whittington, his office, Deputy Flournoy, as well as the other Defendants named herein. See id. at 4. Upon seizure of the Note, Plaintiffs allege Mr. Lucky manipulated the appraisal process. See id. They claim Sheriff Whittington, his office, and Deputy Flournoy allowed Mr. Lucky, through his counsel, to select and improperly influence the purported third appraiser whose appraisal of the property would be final under state law. See id. Plaintiffs contend that Mr. Lucky, through his counsel, controlled every aspect of the directions and information the appraiser received to perform the valuation. See id. Additionally, Plaintiffs submit that Shelton corresponded with the purported third appraiser for two reasons: (1) to provide a biased background regarding Mrs. Lollar and her Note and (2) to ensure that the clouds on title he placed on the Note's collateral and his lawsuit calling the Note and sale nullities were utilized to de-value the final appraisal. See id. As a result, the Sheriff's Office sold the Note for two-thirds of the third appraisal value for a total of $105,000.00 to Lucky Family, being only six percent of the face value of the Note. See id. at 17. At the time of the sale, records from the Louisiana Secretary of State's office showed that Mr. Lucky was a member and beneficiary of Lucky Family. See id. Thus, Plaintiffs claim Mr. Lucky controlled Lucky Family and manufactured a third-party purchaser for the Note. See id.

The instant motions contemplate Plaintiffs' federal and state civil rights claims against Mr. Lucky and Lucky Family. See id. at ¶¶ 73–86, 89; see also Record Documents

3

207 & 211. Plaintiffs oppose, arguing they have stated a plausible claim for relief. See Record Document 224 at 10. Defendants did not file a reply.

## LAW AND ANALYSIS

**I. Pleading and Rule 12(b)(6) Standards.**

Federal Rule of Civil Procedure 8(a)(2) governs the requirements for pleadings that state a claim for relief and requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The standard for the adequacy of complaints under Rule 8(a)(2) is now a "plausibility" standard found in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007), and its progeny. Under this standard, "factual allegations must be enough to raise a right to relief above the speculative level…on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555, 1965. If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for failure to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss, a court generally "may not go outside the pleadings." Colle v. Brazos Cnty., Tex., 981 F. 2d 237, 243 (5th Cir. 1993). Additionally, courts must accept all allegations in a complaint as true. See Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. However, courts do not have to accept legal conclusions as facts. See id. Courts considering a motion to dismiss under Rule 12(b)(6) are only

4

obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standards to survive such a motion. See id. at 678–79, 1949–50. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id.

**II. Private Parties as State Actors.**

"The Supreme Court has utilized a number of tests for deciding whether a private actor's conduct can be fairly attributable to the State." Cornish v. Corr. Servs. Corp., 402 F. 3d 545, 549 (5th Cir. 2005). The Court has not established whether these four tests "'are actually different in operation or simply different ways of characterizing [this] necessarily fact-bound inquiry….'" Id. (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 939, 102 S. Ct. 2744 (1982)).

First, the public function test "examines whether the private entity performs a function which is 'exclusively reserved to the State.'" Id. (quoting Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 158, 98 S. Ct. 1729, 1734 (1978)). Second, the state compulsion test provides that "a private actor's conduct is attributable to the State when it exerts coercive power over the private entity or provides significant encouragement." Id. Third, the nexus or state action test "considers whether the State has inserted 'itself into a position of interdependence with the [private actor, such] that it was a joint participant in the enterprise.'" Id. at 550 (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 357–58, 95 S. Ct. 449, 457 (1974)). Fourth, the joint action test provides that "private actors will be considered state actors when they are 'willful participant[s] in joint action with the State or its agents.'" Id. (quoting Dennis v. Sparks, 449 U.S. 24, 27, 101 S. Ct. 183, 186 (1980)).

In addition to the four tests, the Supreme Court recognizes several factors when determining whether state action exists. Hoover v. SOS Staff Servs. Inc., No. 13-03256, 2014 WL 811630, at *2 (W.D. La. Feb. 28, 2014). Some of the factors include the following:

> (1) state action results from the State's exercise of "coercive power," (2) when a private actor operates as a willful participant in a joint activity with the State or its agents, (3) when the nominally private entity is controlled by an "agency of the State," (4) when the actor has been delegated a public function by the State, and/or (5) when the actor is entwined with governmental policies, or the government is entwined in the actor's management or control.

Id. A Court may find state action if "a private actor's conduct is 'fairly attributable' to the State." Meade v. Bonin, 20-1455, 2020 WL 5311351, at *2 (E.D. La. Sept. 4, 2020) (citing Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295, 121 S. Ct. 924, 930 (2001)). Fair attribution demands two things:

> (1) the deprivation of a constitutional right was "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and (2) "the party charged with the deprivation must be a person who may fairly be said to be a state actor…because he is a state official, because he has acted tougher with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State."

Id. (quoting Lugar, 457 U.S. at 937, 2753).

**III. Analysis.**

In their Motions to Dismiss, Defendants contend that because Mr. Lucky is a private party rather than a state actor and never acted under color of law, Plaintiffs' federal and state civil rights claims should be dismissed with prejudice. See Record Document 207 at 1. Defendants maintain Plaintiffs have not alleged specific facts that show Mr.

6

Lucky and Sheriff Whittington had a meeting of the minds in an unlawful arrangement or agreed to commit an illegal act. See Record Document 207-1 at 5. Moreover, Defendants assert that Plaintiffs' allegations are merely conclusory. See id. at 6. Defendants further contend that because Plaintiffs cannot establish a federal constitutional claim against them, they cannot establish a state constitutional claim either. See id.

Plaintiffs argue they have stated a claim under the joint action test, the public function test, and in the alternative, the fair attribution test. See Record Document 224 at 3–10. Under the joint action test, Plaintiffs contend they have sufficiently alleged a substantial degree or cooperative action between Sheriff Whittington and Deputy Flournoy ("BSO Defendants") and Mr. Lucky, such that the BSO Defendants' intentional collaboration allowed Mr. Lucky to knowingly commit wrongdoing while clothed with the authority of state law. See id. at 4. Furthermore, the BSO Defendants continued to actively facilitate Mr. Lucky's scheme by knowingly and intentionally delegating the administration of the sale of the Note to Mr. Lucky. See id. As a result, Lucky Family purchased the Note. See id.

Under the public function test, Plaintiffs assert that the administration of a Sheriff's sale is a function that is traditionally reserved to the State. See id. at 6. Thus, when the BSO Defendants knowingly or intentionally delegated the administration of the sale disposing of Mrs. Lollar's Note to Mr. Lucky and Lucky Family, Mr. Lucky performed functions reserved to the State. See id. at 7–8.

In the alternative, Plaintiffs state an argument under the fair attribution test. See id. at 8. They maintain that if the BSO Defendants are correct that their delegation of authority to Mr. Lucky, via his agent, was legal under Louisiana law or custom, then the Complaint

7

contains sufficient fact allegations to render Mr. Lucky a state actor under the fair attribution test. See id. If the Court finds that the BSO Defendants' actions were consistent with the requirements of statute and/or custom, Plaintiffs contend they only need to show Mr. Lucky was a state actor in exercising any lawful authority delegated to him. See id. at 9. Plaintiffs submit they can satisfy that burden. See id.

The administration of a judicial sale can be classified as a state function because "[t]he full power of the State, exercised through its clerks, judges, and sheriffs, is marshalled behind the creditor to achieve a judicial sale." Bonner v. B-W Utils., Inc., 452 F. Supp. 1295, 1300 (W.D. La. 1978). The Fifth Circuit has held that "[p]rivate misuse of a state statute alone does not describe conduct that can be attributed to the state. It is the procedural scheme created by the statute that is state action, and therefore subject to constitutional restraints." Earnest v. Lowentritt, 690 F. 2d 1198, 1201 (5th Cir. 1982). Even if a district court concludes the Sheriff's sale involved state action, it is possible the sale still satisfies the requirements of due process. See Davis Oil Co. v. Mills, 873 F. 2d 774, 776, 791 (5th Cir. 1989).

After reviewing the civil rights claims within Plaintiffs' Second Amended Complaint and applying the relevant case law, the Court finds dismissal with prejudice proper. The administration of a judicial sale in Louisiana is likely a state function because state actors, like the Sheriff, guide and may even participate in the sale process. See LA. REV. STAT. ANN. §§ 13:4341–69. Even so, Plaintiffs' claims fail because nothing within the Complaint supports the argument that the BSO Defendants intentionally acted with Mr. Lucky to deprive Plaintiffs of their property without due process. "If there are insufficient allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the

8

complaint that there is an insuperable bar to relief, the claim must be dismissed." Gordon v. Brown, No. 12-2440, 2013 WL 870528, at *1 (E.D. La. Mar. 7, 2013). Plaintiffs claim the BSO Defendants actively facilitated Mr. Lucky and Lucky Family's intentional and bad faith deprivation of the Note by knowingly and intentionally delegating the administration of the sale is unfounded is conclusory. See Record Document 186 at 24–25. Plaintiffs also claim that the Sheriff's Office and Deputy Flournoy failed to provide them any governmental process upon handing the administration of the sale to Mr. Lucky and Lucky Family does not overcome dismissal. See id. at 25. These allegations are merely conclusory and speculative; thus, dismissal is proper under Rule 12(b)(6).

Plaintiffs' statement that the intentional and bad faith conduct of Mr. Lucky and Lucky Family is imputable to Sheriff Whittington, his office, and Deputy Flournoy is speculative and unsupported. Even if the administration of a Sheriff's sale is considered a function reserved to the State, Plaintiffs' claims under the joint action, public function, and fair attribution tests are not successful. All of Plaintiffs' civil rights claims are merely conclusory and speculative. Since both Plaintiffs' state and federal civil rights claims use the same insufficient pleading language, all civil rights claims against Defendants should be dismissed with prejudice.

## CONCLUSION

In sum, the two Motions to Dismiss against Defendants Mr. Lucky and Lucky Family pursuant to Federal Rule of Civil Procedure 12(b)(6) (Record Documents 207 & 211) are **GRANTED**. Therefore, all state and federal civil rights claims asserted by Plaintiffs against Mr. Lucky and Lucky Family are **DISMISSED WITH PREJUDICE**.

An order consistent with the instant memorandum ruling will issue herewith.

**THUS DONE AND SIGNGED,** in Shreveport, Louisiana, this 18th day of November, 2024.

S. MAURICE HICKS, JR., DISTRICT JUDGE
UNITED STATES DISTRICT COURT