## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

MAGNOLIA ISLAND                          CIVIL ACTION NO. 18-1526
PLANTATION, LLC, ET AL.

VERSUS                                   JUDGE S. MAURICE HICKS, JR.

LUCKY FAMILY, LLC, ET AL.                MAGISTRATE JUDGE MCCLUSKY

### MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment (Record Document 215) filed by Defendants Sheriff Julian Whittington ("Sheriff Whittington"), in his official capacity, and Deputy Kimberly Flournoy ("Deputy Flournoy"), in her individual capacity, (collectively, "BSO Defendants"). BSO Defendants seek dismissal with prejudice of Plaintiffs Magnolia Island Plantation, LLC ("Magnolia") and Barbara Marie Carie Lollar's ("Mrs. Lollar") (collectively, "Plaintiffs") claims against them, which arise out of a Sheriff's sale of a promissory note (the "Note"). Plaintiffs oppose the motion, namely arguing there are procedural issues and unresolved questions of fact. See Record Document 231. BSO Defendants replied. See Record Document 232. For the reasons set forth below, BSO Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

### BACKGROUND

Since the facts of this matter are detailed and complex, the Court will only provide a summary of the pertinent facts for the purposes of the instant motion. A more detailed recitation of the facts can be found in the Court's previous Memorandum Ruling (Record Document 242). This suit arises from the alleged improper seizure, appraisal, and

Sheriff's sale of the Note. See Record Document 186 at 3. The Notice of Seizure to Mrs. Lollar's counsel included a Notice to Appoint Appraiser, which was signed by Deputy Flournoy and stated that Mrs. Lollar may appoint an appraiser to value the Note. See id. at 12. Mr. Lucky's appraiser, Chad Garland ("Garland"), submitted an appraisal of $173,000.00, being ten percent of the Note's face value. See id. Mrs. Lollar's appraiser, John Dean ("Dean"), submitted an appraisal of $1,478,048.68. See id. at 13. The great discrepancy between the Garland and Dean appraisals required Sheriff Whittington to appoint a third appraiser in accordance with Louisiana Revised Statutes Annotated § 13:4365(B). See id.

Sheriff Whittington appointed Patrick Lacour ("Lacour"), who submitted an appraisal amount of $157,009.22, being nine percent of the Note's face value. See id. at 13, 15. Plaintiffs claim that days before the sale, counsel for Mrs. Lollar was informed by employees of the Sheriff's Office that Lacour was chosen by Mr. Lucky's counsel. See id. at 13. Plaintiffs allege that Mr. Lucky's counsel, Curtis Shelton ("Shelton"), communicated with and wrote a lengthy letter to Lacour on October 10, 2018 (the "Shelton Letter"), nine days before anyone would have known whether a third appraiser would be necessary. See id. The Shelton Letter was drafted on behalf of Mr. Lucky and/or Lucky Family. See id. at 14. Plaintiffs maintain the Shelton Letter outlined in detail Mr. Lucky's claims against the Note and mortgaged property in his prior 2018 lawsuit against Mrs. Lollar and referred to the Note transactions as "Mrs. Lollar's scam" and "misdeeds." See id. Plaintiffs allege Lacour was not an independent appraiser and relied entirely on the Shelton Letter. See id. at 15.

Plaintiffs claim the sale of the Note was tainted with impropriety by Sheriff Whittington, his office, Deputy Flournoy, as well as the other Defendants named herein. See id. at 4. Upon seizure of the Note, Plaintiffs allege Mr. Lucky manipulated the appraisal process. See id. They claim Sheriff Whittington, his office, and Deputy Flournoy allowed Mr. Lucky, through his counsel, to select and improperly influence the purported third appraiser whose appraisal of the property would be final under state law. See id. Plaintiffs contend that Mr. Lucky, through his counsel, controlled every aspect of the directions and information the appraiser received to perform the valuation. See id. Additionally, Shelton corresponded with the purported third appraiser for two reasons: (1) to provide a biased background regarding Mrs. Lollar and her Note and (2) to ensure that the clouds on title he placed on the Note's collateral and his lawsuit calling the Note and sale nullities were utilized to de-value the final appraisal. See id. As a result, the Sheriff's Office sold the Note for two-thirds of the third appraisal value for a total of $105,000.00 to Lucky Family, being only six percent of the face value of the Note. See id. at 17. At the time of the sale, records from the Louisiana Secretary of State's office showed that Mr. Lucky was a member and beneficiary of Lucky Family. See id. Thus, Plaintiffs claim Mr. Lucky controlled Lucky Family and manufactured a third-party purchaser for the Note. See id.

The instant motion contemplates all of Plaintiffs' claims against BSO Defendants. See Record Document 215 at 1. BSO Defendants contend the following: (1) they are entitled to discretionary immunity as to the Louisiana state law claims, (2) Deputy Flournoy is entitled to qualified immunity with respect to Plaintiffs' federal due process claims against her, and (3) Plaintiffs have not successfully established a Monell claim

against Sheriff Whittington. See Record Document 215-1 at 2. Plaintiffs oppose, arguing the following: (1) Deputy Flournoy has admitted all the allegations of the Second Amended Complaint, so the motion must fail; (2) BSO Defendants are not entitled to discretionary immunity for the state law claims; (3) Deputy Flournoy is not entitled to qualified immunity for the federal due process claims; and (4) Monell liability attaches to Sheriff Whittington. See Record Document 231 at 2. BSO Defendants respond, maintaining the procedural issue raised by Plaintiffs is immaterial, Deputy Flournoy is entitled to qualified immunity, and Sheriff Whittington is not liable under Monell. See Record Document 232.

## LAW AND ANALYSIS

### I. Summary Judgment.

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56; see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 2552–53. (1986). In applying this standard, the Court should construe "all facts and inferences in favor of the nonmoving party." Deshotel v. Wal-Mart La., L.L.C., 850 F.3d 742, 745 (5th Cir. 2017); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). As such, the party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact as to issues critical to trail that would result in the movant's entitlement to judgment in its favor, including identifying the relevant portions

4

of pleadings and discovery. See Tubacex, Inc. v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1995). Courts must deny the moving party's motion for summary judgment if the movant fails to meet this burden. See id.

If the movant satisfies its burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." Id. (citing Celotex, 477 U.S. at 323, 106 S. Ct. 2553). In evaluating motions for summary judgment, courts must view all facts in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). There is no genuine issue for trial—and thus, a grant of summary judgment is warranted—when the record as a whole "could not lead a rational trier of fact to find for the moving party…." Id.

## II. State Law Claims: Discretionary Immunity.

The Fifth Circuit has held that "[u]nder Louisiana law, state public officials are presumptively entitled to immunity from liability stemming from 'discretionary acts' that are 'within the course and scope of their lawful powers and duties.'" Larpenter v. Vera, No. 22-30572, 2023 WL 5554679, at *7 (5th Cir. Aug. 29, 2023) (quoting LA. REV. STAT. § 9:2798.1(B)). To rebut this presumption, a plaintiff "must raise a genuine issue of material fact as to whether [the official's] actions constituted 'criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.'" Larpenter, 2023 WL 5554679, at *7 (quoting LA. REV. STAT. § 9:2798.1(C)(2)). However, this immunity "does not shield the state or its officials from liability for 'legal fault or negligent conduct at the operational level, but only confers immunity for policy decisions.'" Reeder

v. Ducote, No. 19-00807, 2021 WL 2292921, at *1 (W.D. La. June 4, 2021) (quoting Foster v. Jeter, No. 18-01178, 2019 WL 3063597, at *4 (W.D. La. July 10, 2019)).

To determine if this immunity applies, Louisiana courts apply the two-step test provided in Berkovitz v. U.S., 486 U.S. 531, 108 S. Ct. 1954 (1988):

> "First, if a statute, regulation, or policy prescribes a particular course of action, there is no choice or discretion involved, and the immunity does not apply. However, when discretion is involved, the court must then determine whether that discretion is the kind that is shielded by the statutory immunity, that is, discretion grounded in social, economic or political policy."

Addington v. Wells, No. 22-30220, 2023 WL 2808466, at *5 (5th Cir. Apr. 6, 2023). State and federal courts have interpreted this test to mean "that Louisiana's discretionary immunity statute immunizes officers from state-law negligent training, hiring, supervision, and retention claims." Pellerin v. Lafayette Consol. Gov't, No. 20-01380, 2023 WL 8814664, at *11 (W.D. La. Dec. 20, 2023).

## III. Section 1983 Suits: Qualified Immunity.

The usual summary judgment burden is altered when an official asserts a qualified immunity defense. Hanks v. Rogers, 853 F. 3d 738, 744 (5th Cir. 2017). Once the defense is plead, "'the burden then shifts to the plaintiffs, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law.'" Id. (quoting Brown v. Callahan, 623 F. 3d 249, 253 (5th Cir. 2010)).

Qualified immunity exists "to hold public officials accountable when they exercise power irresponsibly" and "to shield officials from harassment, distraction and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009). The Supreme Court provides, "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735, 131 S. Ct. 2074, 2080 (2011). These two prongs deal with matters of law. Cooper v. Brown, 844 F. 3d 517, 522 (5th Cir. 2016). A district court has discretion to decide which of the two prongs to approach first. Ashcroft, 563 U.S. at 735, 131 S. Ct. at 2080.

Under the second prong, a federal or state official "violates clearly established law, when at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" Id. at 741, 2083 (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987)). While a case directly on point is not required to satisfy this standard, "existing precedent must have placed the statutory or constitutional question beyond debate." Id. See Cooper, 844 F. 3d at 524.

## IV. Monell Claim.

As established in Monell v. Dept. of Soc. Servs., 436 U.S. 658, 98 S. Ct. 2018 (1978), a claim that deals with maintaining, enforcing, and applying policies, practices, or customs "regarding seizure and use of force, training, supervising, and disciplining police officers" is often referred to as a Monell claim. Lewis v. Huval, No. 16-01280, 2020 WL

2544811, at *10 (W.D. La. May 4, 2020). The Fifth Circuit holds that a § 1983 claim based on vicarious liability is not applicable to a municipality; instead, liability attaches when the alleged unconstitutional action "'implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" Id. (quoting Hicks-Fields v. Harris Cnty., Tex., 860 F. 3d 803, 808 (5th Cir. 2017) (citing Monell, 436 U.S. at 691, 98 S. Ct. at 2018).

Additionally, the Fifth Circuit has held that "a plaintiff must show that an official policy promulgated by a municipal policymaker was the moving force behind the violation of a constitution right" to establish Monell liability. Henderson v. Harris Cnty., Tex., 51 F. 4th 125, 130 (5th Cir. 2022). Furthermore, "to get past the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory; it must contain specific facts.'" Id. (quoting Pena v. City of Rio Grande City, 879 F. 3d 613, 622 (5th Cir. 2018) (quotation omitted)).

"'A court may not rely on the mere factual allegations in an unverified complaint to make summary-judgment rulings.'" Farmer v. Bailey, No. 19-01384, 2024 WL 2978785, at *4 (W.D. La. June 13, 2024) (quoting Joseph on behalf of Est. of Joseph v. Bartlett, 981 F. 3d 319, 334 (5th Cir. 2020)). Additionally, a plaintiff must be specific when describing a policy or custom and its connection to the alleged constitutional violation. Id. at *5. (citing Spiller v. City of Tex. City Police Dept., 130 F. 3d 162, 167 (5th Cir. 1997)). However, even if a plaintiff claims the existence of a widespread practice "not authorized by an officially adopted and promulgated policy," the practice must be "so common and well-settled as to constitute a custom that fairly represents a municipal policy." Id. (citing Webster v. City of Hous., 735 F. 2d 838, 842 (5th Cir. 1984) (citing Bennett v. City of

Slidell, 735 F. 2d 861, 862 (5th Cir. 1984)). To constitute custom, there must be "'sufficiently numerous prior incidents.'" Id.

"To establish municipal liability under Monell, a plaintiff must identify: '(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom.'" Arnold v. Alvarado, No. 22-3332, 2024 WL 3090680, at *2 (E.D. La. June 21, 2024). Additionally, a plaintiff may demonstrate "'either an unconstitutional official policy or a facially innocuous one "promulgated with deliberate indifference to the known or obvious consequence that constitutional violations would result."'" Id. Deliberate indifference requires a plaintiff to show "that the policymaker was 'on actual or constructive notice' that its omission would likely result in a constitutional violation." Id. "A municipality's failure to train or supervise its employees must amount to 'deliberate indifference to the rights of a person with home the [untrained employees] come into contact.'" Farmer, 2024 WL 2978785, at *6 (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 388, 109 S. Ct. 1197, 1204 (1989)).

Under Tuttle v. Sepolio, 68 F. 4th 969 (5th Cir. 2023), "[a] 'supervisory official may be held liable under section 1983 for the wrongful acts of a subordinate when [the supervisory official] breaches a duty imposed by state or local law, and this breach causes plaintiff's constitutional injury.'" Williams v. City of Baton Rouge, No. 20-00162, 2024 WL 4530112, at *6 (M.D. La. Oct. 18, 2024) (quoting Tuttle, 68 F. 4th at 975) (quotations omitted)). Furthermore, a supervising official can be liable "even without overt personal participation in the offensive act if the supervisory official[] implement[s] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving

force of the constitutional violation." <u>Miller v. Cain</u>, No. 12-730, 2013 WL 5550990, at *3 (M.D. La. Oct. 8, 2013). However, one wrongful act does not suggest "[t]he existence of a constitutionally deficient policy." <u>Id.</u>

**V. Analysis.**

The instant motion contemplates claims asserted against Sheriff Whittington, in his official capacity, and Deputy Flournoy, in her individual capacity. The arguments raised by BSO Defendants and Plaintiffs will be addressed in the following order: (1) whether the failure to file an answer or responsive pleading to Plaintiffs' Second Amended Complaint results in a denial of summary judgment; (2) whether BSO Defendants have discretionary immunity to the Louisiana state law claims; (3) whether Deputy Flournoy is entitled to qualified immunity to the federal due process claims; and (4) whether Sheriff Whittington is liable with respect to the <u>Monell</u> claim asserted against him.

<u>(A) Failure to Respond to Plaintiffs' Second Amended Complaint.</u>

In their opposition, Plaintiffs submit that Deputy Flournoy has admitted all the allegations of the Second Amended Complaint, and thus, the Motion for Summary Judgment must fail. <u>See</u> Record Document 231 at 6. Plaintiffs also contend that while Sheriff Whittington answered previous versions of the Complaint, Deputy Flournoy has never answered any claim in this lawsuit. <u>See id.</u> at 7. Thus, when treated as admissions, the factual claims in the Second Amended Complaint are sufficient to create genuine issues of material fact which preclude some or all requests for relief in the motion. <u>See id.</u>

BSO Defendants respond, arguing that pleading is not a game in which one mistake by counsel will ultimately decide the outcome of a motion. <u>See</u> Record Document

232 at 1 (citing Conley v. Gibson, 355 U.S. 41, 48, 78 S. Ct. 99, 103 (1957)). Moreover, BSO Defendants have put everyone on notice by answering Plaintiffs' Original and First Amended Complaint. See id. at 2. They maintain Plaintiffs were not prejudiced by this oversight; therefore, this procedural issue should not be grounds for denying summary judgment. See id.

Under Federal Rule 8(b)(6), if a party fails to deny "[a]n allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied. If a responsive pleading is not required, an allegation is considered denied or avoided." FED. R. CIV. P. 8(b)(6). Thus, the effect of failing to answer an allegation in a complaint or counterclaim is that the allegation is deemed admitted. Campbell Harrison & Dagley, L.L.P. v. PBL Multi-Strategy Fund, L.P., 744 Fed. Appx. 192, 203 (5th Cir. 2018). The reasoning behind this rule is "'to avoid unfair surprise by the party who failed to file a responsive pleading.'" Id. (quoting Trotter v. Jack Anderson Enters., Inc., 818 F. 2d 431, 436 (5th Cir. 1987)).

However, the Fifth Circuit has "declined to reverse a grant of summary judgment solely because the moving party failed to deny an allegation in an answer." Id. While a motion for summary judgment does not qualify as a responsive pleading to a complaint, the Fifth Circuit has recognized that such a motion may "'[give] [the plaintiff] plain notice that the [allegation] was a matter to be litigated.'" Id. Thus, a defendant's failure to file an answer or a responsive pleading to a complaint can have "no effect on the rights of [the plaintiff] and cannot serve as a ground for reversal.'" Id.

When applying Fifth Circuit precedent to the instant motion, Deputy Flournoy's failure to file a responsive pleading to the Second Amended Complaint does not severely

11

affect nor prejudice Plaintiffs' rights. This procedural issue does not provide a ground for denying summary judgment.

### (B) BSO Defendants' Discretionary Immunity: Alleged Violation of La. R.S. § 13:4365.

BSO Defendants assert they are entitled to discretionary immunity with respect to the Louisiana state law claims. See Record Document 215-1 at 8. They argue the decision of how to select an appraiser was a discretionary act taken by Deputy Flournoy grounded in social, economic, or political policy. See id. at 8–9. Furthermore, there is no evidence that any Sheriff's Office employees committed gross negligence in seeking a recommendation for the appraiser, and thus, the immunity should apply. See id. at 9. BSO Defendants contend there is no evidence of any collusion or scheme between the Sheriff's Office and Mr. Lucky. See id.

In their opposition, Plaintiffs argue BSO Defendants are not entitled to discretionary immunity. See Record Document 231 at 8. Plaintiffs submit that the question of whether a duty is policy-making or discretionary, rather than operational, is a question of fact which precludes summary judgment. See id. Furthermore, they assert BSO Defendants have not met their summary judgment burden to establish an entitlement to discretionary immunity for two reasons. See id. at 9.

First, BSO Defendants incorrectly state the breach of duty by saying the relevant act was the decision of how to select an appraiser. See id. This statement is incorrect because Plaintiffs have alleged that the Sheriff's Office and its employees failed to appoint an appraiser at all. See id. Moreover, the language of La. R.S. 13:4365 is mandatory because it states the Sheriff "shall" appoint a third appraiser when the first two appraisals

12

exceed the statutory averaging limits. <u>See id.</u> Thus, Plaintiffs maintain when a statute sets forth a mandatory duty, discretionary immunity is unavailable. <u>See id.</u> However, even if the Court finds the duty discretionary, Plaintiffs claim BSO Defendants' failure to introduce any evidence on the nature of the duty creates issues of material fact which preclude summary judgment. <u>See id.</u> at 10.

Second, Plaintiffs contend the instant motion does not offer any policy-based justification for the actions and inactions of the Sheriff's Office, beyond simply claiming that Deputy Flournoy's decisions were grounded in social, economic, or political policy. <u>See id.</u> Plaintiffs find no legitimate policy with which Deputy Flournoy's actions coincide. <u>See id.</u> Since this discretionary immunity must be strictly construed against the party claiming it, and for all the other reasons argued by Plaintiffs, they maintain the motion should be denied. <u>See id.</u> In their reply, BSO Defendants do not provide a rebuttal or specific argument addressing the assertions made by Plaintiffs in their opposition on this issue.

The Court must decide whether the appointment of a third appraiser under La. R.S. § 13:4365 is a discretionary act, as the case law does not make such determination. Plaintiffs incorrectly state that this Court lacks the authority to decide whether the duty is discretionary at this stage of the proceeding. <u>See</u> <u>Farmer</u>, 2024 WL 2978785; <u>Pellerin</u>, 2023 WL 8814664; <u>Gomez v. City of New Orleans</u>, No. 19-11803, 2023 WL 4351230 (E.D. La. July 5, 2023); and <u>Addington</u>, 2023 WL 2808466. "Courts have created a two-step process to determine whether a decision is a 'policymaking or discretionary act' such as to warrant immunity under this statute." <u>Pierre v. Wellpath, LLC</u>, No. 21-1043, 2022 WL 2263693, at *4 (E.D. La. June 23, 2022) (quoting <u>Glaster v. City of Mansfield</u>, No. 14-

627, 2015 WL 852412, at *10 (W.D. La. Feb. 26, 2015)). Under the first step, "'a court must determine whether a state law, regulation, or policy specifically prescribes the officer's course of action.'" Id. If the action is restrained, the officer's "conduct is not 'discretionary,' and the defense of discretionary immunity is not available." Id. However, "if the action is discretionary, the court moves on the second step." Id. The second step determines "'whether the challenged action is grounded in political, economic or social policy.'" Id. The official will be entitled to discretionary immunity if the "policy consideration motivates the challenged action." Id. The question contemplated in step two is a question of fact. Id. at *5.

Under step one, the act of Sheriff Whittington or one of his employees, like Deputy Flournoy, appointing an independent third appraiser under La. R.S. § 13:4365 is a discretionary act. While the statute's language requires the Sheriff to appoint a third appraiser under a certain set of circumstances, there is no relevant statute mandating a policy or procedure the Sheriff must follow when appointing the appraiser. The district court in Roman v. Governor's Office of Homeland Sec. reached a similar conclusion regarding a Sheriff's action of hiring, training, and supervising. No. 14-660, 2016 WL 3982329, at *14 (M.D. La. July 22, 2016). While the Sheriff's action in the instant case is distinguishable, the reasoning in Roman is relevant. Like the Louisiana statute in Roman, La. R.S. § 13:4365 "does not set forth any specific policy requirements." Id. The lack of certain procedural requirements supports the Court's conclusion that the method and manner in which a third appraiser is appointed is left to the discretion of the Sheriff. Since the action of appointing a third appraiser is a discretionary function, the Court must proceed under step two.

In their motion, BSO Defendants claim their decision of how to select a third appraiser is grounded in social, economic, or political policy; however, they do not provide additional support for this statement. <u>See</u> Record Document 215-1 at 8. Plaintiffs argue this lack of support is fatal to their argument. <u>See</u> Record Document 231 at 10. However, the Fifth Circuit has held that "Louisiana courts presume that 'when government employees exercise discretion given to them by a statute or regulation, they are doing so based on the same policy concerns that animate the controlling statute or regulation itself.'" <u>Addington v. Wells</u>, 2023 WL 2808466, at *7 (quoting <u>Dominique v. Parish</u>, 313 So. 3d 307, 316 (La. Ct. App. 2020) (citing <u>La. v. Pub. Invs., Inc.</u>, 35 F. 3d 216, 221 (5th Cir. 1994)). Therefore, Plaintiffs must present sufficient evidence to rebut this presumption.

As previously held in the Court's earlier Memorandum Ruling (Record Document 242), the Court will not decide whether Lacour's appointment was proper because there is sufficient summary judgment evidence that a genuine issue of material fact exists regarding his appointment. Unlike the facts in <u>Addington</u>, the summary judgment record before the Court contains evidence on both sides of the argument. Plaintiffs have alleged enough facts to rebut the presumption at this stage of the proceeding. Therefore, since BSO Defendants have failed to overcome step two, the question of whether they are entitled to discretionary immunity is a fact question that should be left to the jury. The Motion for Summary Judgment, as it relates to the Louisiana state law claims, is hereby **DENIED**.

<u>(C) Deputy Flournoy's Qualified Immunity: Federal Due Process Claims.</u>

In their motion, BSO Defendants argue that Deputy Flournoy did not violate any clearly established law, so she is entitled to qualified immunity and dismissal from this proceeding. <u>See</u> Record Document 215-1 at 11. BSO Defendants assert they complied with Louisiana law when appointing Lacour as the third appraiser. <u>See id.</u> at 11–13. Additionally, they contend Plaintiffs cannot show the law is clearly established. <u>See id.</u> at 13. BSO Defendants cite to this Court's previous Memorandum Ruling (Record Document 158) which found no case law described the duties imposed on a Sheriff under La. R.S. § 13:4365. <u>See id.</u> They maintain Plaintiffs can present no evidence that Sheriff Whittington or his office had any involvement in this matter whatsoever or that failing to prevent the communication violated clearly established law. <u>See id.</u> at 14.

Plaintiffs respond, arguing Deputy Flournoy deprived Mrs. Lollar of her property interest when she handed the administration of the sale to Mr. Lucky, intentionally enabling him to reduce the value of the Note. <u>See</u> Record Document 231 at 11. Plaintiffs contend the deprivation occurred without any meaningful process being given to Mrs. Lollar. <u>See id.</u> at 12. They maintain Mr. Lucky had sole control over the process, and Mrs. Lollar had no ability to challenge the secret course of the proceedings. <u>See id.</u> Additionally, Plaintiffs assert there is no clearly established requirement in this case. <u>See id.</u> at 13. However, even if the Court finds there is such a requirement, there is no question of material fact that Deputy Flournoy was engaged in joint action with a private party intended to deprive Mrs. Lollar of her property rights without due process of law. <u>See id.</u> at 14. If the Court rejects Deputy Flournoy's admissions, Plaintiffs argue the evidence shows there are at least questions of material fact regarding her intentional acts in

16

furtherance of Mr. Lucky's scheme. See id. Plaintiffs submit that a factfinder is entitled to examine Deputy Flournoy's testimony in open court, compare it to her deposition testimony and/or the letter to the Caddo Sheriff Civil Department, and determine whether Deputy Flournoy intended to help Shelton and Mr. Lucky. See id. at 15. They also argue Deputy Flournoy violated clearly established law because the unlawfulness of the challenged conduct is sufficiently clear even though existing precedent does not address similar circumstances. See id. at 18.

BSO Defendants respond, maintaining that Deputy Flournoy is entitled to qualified immunity. See Record Document 232 at 2. They argue there has been no expressed determination by this Court or the Fifth Circuit that the challenged conduct violated clearly established law. See id. Additionally, BSO Defendants contend there is no controlling authority specifically prohibiting Deputy Flournoy's conduct. See id. at 3. They argue Plaintiffs failed to overcome their burden; thus, Deputy Flournoy is entitled to qualified immunity. See id. at 5.

In exercising its discretion, the Court will first examine the second prong of the qualified immunity analysis to determine whether the right was clearly established at the time of the violation. The Fifth Circuit reiterates that the Supreme Court "has 'repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'" Carvell on behalf of H.A.A.W. v. Gibson, No. 23-30252, 2024 WL 4533312, at *4 (Oct. 21, 2024) (quoting D.C. v. Wesby, 583 U.S. 48, 63–64 (2018)). Under the second prong, a plaintiff must "'identify a case'—usually, a

'body of relevant case law'—in which 'an officer acting under similar circumstances…was held to have violated the [Constitution].'" <u>Bartlett</u>, 981 F. 3d at 330.

Plaintiffs fail to identify a body of significant, relevant case law providing that the improper appointment of a third appraiser is clearly established under the law. Louisiana and federal case law are unclear as to whether an official, like Deputy Flournoy, acted reasonably under similar circumstances. Plaintiffs state there is a class of obvious cases where analogous case law is not needed for qualified immunity purposes because the unlawfulness of the challenged conduct is sufficiently clear even though existing precedent does not address similar circumstances. <u>See</u> Record Document 231 at 18. This statement is incorrect, as case law requires a plaintiff to satisfy the clearly established prong for qualified immunity purposes. Additionally, the cases Plaintiffs cite to only provide general holdings that would not put an official like Deputy Flournoy on notice that she was violating a clearly established constitutional right.

The Court does not need to examine the first prong of the qualified immunity analysis and determine whether there was a constitutional violation because Plaintiffs have failed to satisfy prong two. Both prongs must be met. Since the Court cannot generally define what constitutes clearly established law under the second prong, summary judgment on the issue of whether Deputy Flournoy, in her individual capacity, is entitled to qualified immunity for the federal due process claims is **GRANTED**. Plaintiffs' federal due process claims against Deputy Flournoy are hereby **DISMISSED WITH PREJUDICE**.

### (D) Sheriff Whittington's Liability: Monell Claim.

BSO Defendants contend Plaintiffs have not established a Monell claim because they have not shown that any policy or procedure of Sheriff Whittington or the Sheriff's Office caused a violation of Plaintiffs' constitutional rights. See Record Document 215-1 at 15. Additionally, BSO Defendants assert Plaintiffs are unable to demonstrate they acted with deliberate indifference because there is no evidence of the existence of a pattern of similar alleged violations. See id. at 16. They maintain Plaintiffs are unable to show any Sheriff's Office policy led to the deprivation of their federal rights. See id.

In their opposition, Plaintiffs argue this Court has already noted there are at least questions of material fact as to whether a constitutional violation occurred in this case. See Record Document 231 at 20. Additionally, if the Court concludes Deputy Flournoy's actions were made as a policymaker, that is sufficient to defeat BSO Defendants' argument regarding liability under Monell. See id. at 20–21. Plaintiffs maintain there are at least questions of material fact as to whether Sheriff Whittington, as a policymaker, provided sufficient guardrails to prevent the alleged violations. See id. at 21. Finally, they submit that a factfinder should be allowed to determine at trial if Sheriff Whittington's employees were given sufficient explanations of their roles and the function of La. R.S. § 13:4365. See id.

BSO Defendants respond, asserting Plaintiffs cannot establish a constitutional violation or show a genuine issue of material fact regarding whether their constitutional rights were violated. See Record Document 232 at 5. However, even if Plaintiffs established a constitutional violation, BSO Defendants contend they have failed to show that a municipal policy was the moving force behind the violation. See id. Furthermore,

19

they state Plaintiffs cannot show the Sheriff's Office maintained policies and procedures that were adopted with deliberate indifference. See id. at 6. The appraisal of a promissory note was unique to the Sheriff's Office; therefore, no prior instance could have established the need for different policies so obvious that it would give rise to the level of deliberate indifference. See id.

Plaintiffs' Second Amended Complaint claims the deprivation of the Note without due process of law is at least partially the result of Sheriff Whittington's personal failure to act while showing a deliberate indifference to the need to act and/or to create a policy or practice of the Sheriff's Office to avoid a constitutional violation. See Record Document 186 at 25, ¶ 87. Plaintiffs do not point to a specific policy or custom within the Sheriff's Office; instead, they claim that even though there is no official policy, Sheriff Whittington did not provide sufficient guardrails to prevent these violations. See Record Document 231 at 21. The Court disagrees. Plaintiffs' failure to identify with some specificity a policy, custom, or widespread practice that led to these alleged constitutional violations is fatal to their Monell claim against Sheriff Whittington.

Plaintiffs have not established a pattern of similar constitutional violations by either Sheriff Whittington or his office. Even though the summary judgment evidence may establish a genuine issue of material fact as to whether Lacour was properly appointed, it does not establish that the Sheriff's Office "had a policy, custom or practice of improperly training or supervising its employees." See Farmer, 2024 WL 2978785, at *6. Nor does the evidence establish Sheriff Whittington was deliberately indifferent. Plaintiffs fail to demonstrate that Sheriff Whittington choose to go against a policy, custom, or practice in which the Sheriff's Office implemented to prevent the alleged constitutional violations.

20

Moreover, Plaintiffs do not provide sufficient evidence showing Sheriff Whittington had actual or constructive knowledge of the unspecified policy, custom, or practice. Therefore, the Motion for Summary Judgment, as to Plaintiffs' Monell claim against Sheriff Whittington, is hereby **GRANTED**. The Monell claim against Sheriff Whittington is **DISMISSED WITH PREJUDICE**.

## CONCLUSION

Based on the reasons explained above,

**IT IS ORDERED** that BSO Defendants' Motion for Summary Judgment (Record Document 215) is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** as to Plaintiffs' federal due process claims against Deputy Flournoy and Plaintiffs' Monell claim against Sheriff Whittington. These claims are **DISMISSED WITH PREJUDICE**. The Motion is **DENIED** as to Plaintiffs' Louisiana state law claims against BSO Defendants. These claims remain triable issues.

An order consistent with this ruling shall issue herewith.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 25th day of November, 2024.

S. MAURICE HICKS, JR., DISTRICT JUDGE
UNITED STATES DISTRICT COURT