**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| MAGNOLIA ISLAND PLANTATION, LLC, ET AL. | CIVIL ACTION NO. 18-1526 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| LUCKY FAMILY, LLC, ET AL. | MAGISTRATE JUDGE MCCLUSKY |

**MEMORANDUM RULING**

Before the Court are three Motions in Limine to Exclude Testimony of Arthur L. Schwertz ("Schwertz") filed by Defendants W.A. Lucky, III ("Mr. Lucky"), Sheriff Julian Whittington ("Sheriff Whittington"), Deputy Kimberly Flournoy ("Deputy Flournoy"), and Lucky Family, LLC ("Lucky Family") (collectively, "Defendants"). See Record Documents 190, 194, & 195. Sheriff Whittington and Deputy Flournoy's Motion, along with Lucky Family's Motion, joins in and concurs with Mr. Lucky's Motion. See Record Documents 194 & 195. Plaintiffs Barbara Marie Carey Lollar ("Mrs. Lollar") and Magnolia Island Plantation, LLC ("Magnolia") oppose. See Record Document 200. Mr. Lucky replied. See Record Document 201. For the reasons set forth below, all three Motions in Limine (Record Documents 190, 194, & 195) are **GRANTED IN PART AND DENIED IN PART**.

**BACKGROUND**

Since the facts of this matter are detailed and complex, the Court will only provide a summary of the pertinent facts for the purposes of the instant motions. A more detailed recitation of the facts can be found in the Court's previous Memorandum Ruling (Record Document 242). This suit arises from the alleged improper seizure, appraisal, and

Sheriff's sale of Mrs. Lollar's promissory note (the "Note"). See Record Document 186 at 3. The Notice of Seizure to Mrs. Lollar's counsel included a Notice to Appoint Appraiser, signed by Deputy Flournoy, stating that Mrs. Lollar may appoint an appraiser to value the Note. See id. at 12. Mr. Lucky's appraiser, Chad Garland ("Garland"), submitted an appraisal of $173,000.00, being ten percent of the Note's face value. See id. Mrs. Lollar's appraiser, John Dean ("Dean"), submitted an appraisal of $1,478,048.68. See id. at 13. The great discrepancy between the Garland and Dean appraisals required the Bossier Parish Sheriff Whittington to appoint a third appraiser in accordance with Louisiana Revised Statutes Annotated § 13:4365(B). See id.

Sheriff Whittington appointed Patrick Lacour ("Lacour"), who submitted an appraisal amount of $157,009.22, being nine percent of the Note's face value. See id. at 13, 15. Plaintiffs claim that days before the sale, counsel for Mrs. Lollar was informed by employees of the Sheriff's Office that Lacour was chosen by Mr. Lucky's counsel. See id. at 13. Plaintiffs allege that Mr. Lucky's counsel, Curtis Shelton ("Shelton"), communicated with and wrote a lengthy letter to Lacour on October 10, 2018 (the "Shelton Letter"), nine days before anyone would have known whether a third appraiser would be necessary. See id. The Shelton Letter was drafted on behalf of Mr. Lucky and/or Lucky Family. See id. at 14. Plaintiffs maintain the Shelton Letter outlined in detail Mr. Lucky's claims against the Note and mortgaged property in his prior 2018 lawsuit against Mrs. Lollar and referred to the Note transactions as "Mrs. Lollar's scam" and "misdeeds." See id. Plaintiffs allege that Lacour was not an independent appraiser and relied entirely on the Shelton Letter. See id. at 15.

Plaintiffs claim the sale of the Note was tainted with impropriety by Sheriff Whittington, his office, Deputy Flournoy, as well as the other Defendants named herein. See id. at 4. Upon seizure of the Note, Plaintiffs allege Mr. Lucky manipulated the appraisal process. See id. They claim Sheriff Whittington, his office, and Deputy Flournoy allowed Mr. Lucky, through his counsel, to select and improperly influence the purported third appraiser whose appraisal of the property would be final under state law. See id. Plaintiffs contend that Mr. Lucky, through his counsel, controlled every aspect of the directions and information the appraiser received to perform the valuation. See id. Additionally, Plaintiffs submit that Shelton corresponded with the purported third appraiser for two reasons: (1) to provide a biased background regarding Mrs. Lollar and her Note and (2) to ensure that the clouds on title he placed on the Note's collateral and his lawsuit calling the Note and sale nullities were utilized to de-value the final appraisal. See id. As a result, the Sheriff's Office sold the Note for two-thirds of the third appraisal value for a total of $105,000.00 to Lucky Family, being only six percent of the face value of the Note. See id. at 17. At the time of the sale, records from the Louisiana Secretary of State's office showed that Mr. Lucky was a member and beneficiary of Lucky Family. See id. Thus, Plaintiffs claim Mr. Lucky controlled Lucky Family and manufactured a third-party purchaser for the Note. See id.

The instant Motions contemplate the admissibility of Schwertz's Rule 26 expert opinions as contained in his written report. See Record Documents 190, 194, & 195. Plaintiffs oppose, arguing Schwertz is a qualified expert, and his expert report is admissible. See Record Document 200. Mr. Lucky filed a reply maintaining Schwertz is not a qualified expert, and thus, his expert report should be excluded. See Record

Document 201. Collectively, the Court will refer to these Motions as the "Daubert Motion" since the relief sought by each Motion is identical. The report itself is inadmissible as evidence.

## LAW AND ANALYSIS

### I. Daubert Standard.

Federal Rule of Evidence 702 discusses testimony by expert witnesses. An expert witness is qualified by their "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Expert testimony is admissible if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702. The Fifth Circuit has further clarified that the "'distinction between lay and expert witness testimony is that lay testimony "results from a process of reasoning familiar in everyday life," while expert testimony "results from a process of reasoning which can be mastered only be specialists in the field.""" U.S. v. Breland, 366 Fed. Appx. 548, 552 (5th Cir. 2010) (quoting Fed. R. Evid. 701, advisory committee's note to 2000 amendments). Rule 702's standard arises from the seminal case of Daubert v. Merrell Dow Pharmaceuticals, Inc., in which the Supreme Court established the role of trial courts as gatekeepers for expert testimony, permitting such testimony only if it is both reliable and relevant. See 509 U.S. 579, 589, 113 S. Ct. 2786, 2795 (1993).

The Daubert holding provided an illustrative list of factors that courts may use when evaluating the reliability of expert testimony. See id. at 592–594. These factors include whether the expert's theory or technique can be or has been tested, whether it has been subjected to peer review, whether it has a known or potential rate of error or standards controlling its operation, and whether it is generally accepted in the relevant scientific community. See id. at 593–594. "In short, expert testimony is admissible only if it is both relevant and reliable." Pipitone v. Biomatrix, Inc., 288 F.3d 239, 244 (5th Cir. 2002). Thus, the Daubert factors should be applied with flexibility and the question of whether an expert's testimony is reliable is ultimately a fact-specific inquiry. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 138, 119 S. Ct. 1167, 1170 (1999); Burleson v. Tex. Dep't of Criminal Justice, 393 F.3d 577, 584 (5th Cir. 2004).

Though the trial court must fulfill its role as gatekeeper in ensuring that all admitted expert testimony is both reliable and relevant, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." U.S. v. 14.38 Acres of Land, 80 F.3d 1074, 1078 (5th Cir. 1996). Thus, "[t]he rejection of expert testimony is the exception rather than the rule." FED. R. EVID. 702, advisory committee's note (2000). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596. The proponent of an expert's testimony bears the burden of proving that it meets the requirements of Rule 702. See Moore v. Ashland Chem., Inc., 151 F. 3d 269, 276 (5th Cir. 1998). Whether these elements are met is a preliminary question for the district court to decide under Federal Rule of Evidence 104(a).

"[T]he admissibility of an expert opinion is taken on a case-by-case basis, considering the facts of each individual case, the proferred expert report and opinions, and the issue of whether that report will assist the trier of fact in its resolution of issues particular to that individual case." Richardson v. SEACOR Lifeboats, LLC, No. 14-1712, 2015 WL 2193907, at *2 (E.D. La. May 11, 2015). "'[A]s a general rule, expert reports…are hearsay, and therefore generally not admissible as exhibits, although they may be the subject of testimony and might be used to impeach a witness or refresh a witness' recollection.'" Kerek v. Crawford Electric Supply Co., Inc., No. 18-76, 2019 WL 6311365, at *2 (M.D. La. Nov. 25, 2019) (emphasis omitted) (quoting Assoc. Terminals of St. Bernard, LLC v. Potential Shipping HK Co., No. 17-5109, 2018 WL 947660, at *4 (E.D. La. Feb. 16, 2018) (quoting Flowers v. Striplin, No. 01-1765, 2003 WL 25683914, at *1 (E.D. La. May 22, 2003))). See Marquette Transp. Co. v. Eagle Subaru, No. 06-9053, 2010 WL 1558921, at *3 (E.D. La. Apr. 15, 2010) ("Expert reports are hearsay because they are out of court statements offered to prove the truth of the matter asserted.").

**II. Summary of Arguments.**

The Daubert Motion asserts that Schwertz's four opinions contained within his Rule 26 report should be excluded from evidence. See Record Document 190 at 2. Defendants argue Schwertz's first opinion will not aid the jury because Plaintiffs' counsel is fully capable of arguing impropriety of the appraisal process. See Record Document 190-3 at 4. As to Schwertz's second opinion, Defendants contend there is no applicable standard, either in the law or in the industry, that supports his opinion. See id. They argue that

Plaintiffs' counsel can adequately make this argument without Schwertz's testimony. See id. at 6.

With respect to Schwertz's third opinion, Defendants submit that he disclaims any knowledge of any applicable law or standard. See id. Furthermore, they assert that his third opinion does not contain any element of causation. See id. at 7. Defendants contend this opinion is also an argument Plaintiffs' counsel can make without his testimony. See id. As to his fourth opinion, Defendants argue Schwertz attempts to provide improper expert testimony regarding state of mind. See id. Moreover, they submit this opinion is based on pure speculation. See id. at 8. Ultimately, Defendants assert that all of the opinions contained within his expert report should be deemed inadmissible. See id. at 10.

Plaintiffs oppose, arguing that Schwertz's opinions are based on his extensive experience having been repeatedly appointed as an appraiser for multiple Sheriff's departments in Louisiana, which makes him qualified to testify on the subject. See Record Document 200 at 1–2. Plaintiffs contend that his testimony would provide the Court with a necessary perspective that is not otherwise available. See id. at 2. Additionally, they assert that his testimony is relevant to Plaintiffs' claims of deprivation of due process rights and property. See id. at 3. Furthermore, Plaintiffs submit that while counsel can argue that the facts of this matter reflect impropriety, Schwertz can explain why the situation presented "red flags" based on his experience in the same role and process in multiple jurisdictions in Louisiana. See id. at 8.

Defendants reply, reiterating that Schwertz identifies no applicable standards to support his legal opinions. See Record Document 201 at 2. They re-urge that he is unqualified to opine on what procedures a sheriff should follow because he does not know

of the applicable laws or standards, has not had any specific training, and has not attended any seminars concerning sheriff sales. See id. at 3, 5. Defendants advance their previous argument that all of Schwertz's opinions contained in his expert report are inadmissible. See id. at 7.

**III. Analysis.**

On August 10, 2022, Schwertz provided his Rule 26 expert report. See Record Document 190-1. In forming his opinions, he reviewed several documents, including Plaintiffs' First and Second Amended Complaints; the Note; Garland's Appraisement Sheet; Dean's Appraisement Sheet; the Shelton Letter; Lacour's Appraisal; the Sheriff's Process Verbal Sale; Lacour's deposition; and Jean Horne's deposition. See id. at 2. He provided the four following opinions in his report:

> First, in my experience, the third appraiser has always been engaged directly by the Sheriff's [O]ffice to maintain being an independent and impartial party to the litigation. In the captioned litigation, based upon my review of the documentation provided, the third appraiser was initially contacted by Mr. Shelton through what appears to be a very one-sided document ("Shelton Letter"). Further, Mr. Shelton remained his contact throughout.
>
> Second, the Sheriff's Office appears to have made no attempt to seek out names of appraisers from the opposing counsel. This lack of equality would raise "red flags" with the propriety of the assignment.
>
> Third, while it is not uncommon for parties in litigation to try and present their side of a case to an appraiser in a favorable light, the appraiser should insist that both sides are given equal opportunity to present their "case." It is incumbent upon an appraiser to seek out all pertinent information regarding the subject of the appraisal through the Sheriff's [O]ffice or other public sources. Further, to maintain independent it is considered the standard of conduct to request all parties to send their documents through the Sheriff's [O]ffice.

> Finally, Lacour testified that he complied with the Statement on Standards for Valuation Services ("SSVS") in completing a Calculation Engagement…it appears that Mr. Lacour violated both of these tenets of the SSVS. For objectivity, Mr. Lacour does not appear to have considered any information other than that which was provided by Mr. Shelton. In addition, the Calculation Engagement requires that the valuation analyst (Lacour) and the client (Sheriff's Office) agree on the valuation approaches and the methods the valuation analyst will use. It does not seem likely that any agreement was reached on the valuation approaches was reached as the Sheriff's [O]ffice apparently had no contact with Mr. Lacour until after the valuation had been delivered.

See id. at 3–4.

In his deposition, Schwertz confirmed he was not asked to provide an opinion on either security or value of the Note. See Record Document 275 at 148. When asked whether he knew the law or the standard obligations a sheriff must follow before they appoint a third-party appraiser, Schwertz said he did not know the exact law. See id. at 57. He testified that he has come across the applicable Louisiana statutes at one point in his career, but he could not recall the exact text of the statues. See id. at 66–67. All he knew was the common practices for local sheriffs in south Louisiana because he has never worked with any sheriffs north of Rapides. See id. at 57, 139. Schwertz also stated that appointment practices and methods can vary across Louisiana. See id. at 139.

After reviewing Schwertz's report and deposition testimony, the Court finds that his expert report is inadmissible. His opinions merely speculate as to the intentions and state of mind of the Sheriff's Office and Lacour because he contemplates their internal knowledge, internal decision-making, propriety, and objectivity. "'Fifth Circuit precedent provides that "an expert's conclusory assertions regarding a defendant's state of mind are not helpful or admissible."'" Rapides Station Land Co. LLC v. Markel Am. Ins. Co.,

No. 21-03716, 2024 WL 5294938, at *6 (W.D. La. Dec. 3, 2024) (quoting Robinson v. Am. Multi-Cinema, Inc., No. 20-946, 2021 WL 2213376, at *5 (E.D. La. May 17, 2021) (quoting Marlin v. Moody Nat. Bank, N.A., 248 Fed. Appx. 534, 541 (5th Cir. 2007))).

In his first opinion, Schwertz states that a sheriff should appoint a third appraiser who is "independent and impartial to the litigation." See Record Document 275-1 at 2. He finds the Shelton Letter "to be a very one-sided document." See id. This opinion implies that the Sheriff's Office and/or Lacour acted with impropriety, which is problematic because it could lead the jury to make an improper inference. "'Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony.'" Rapides, 2024 WL 5294938, at *6 (quoting In re Rezulin Prod. Liab. Litig., 309 F. Supp. 2d 531, 547 (S.D. N.Y. 2004)).

In his second opinion, Schwertz provides that the Sheriff's Office's failure to seek out the names of appraisers from opposing counsel resulted in a "lack of equality [that] would raise 'red flags' with the propriety of the assignment." See Record Document 275-1 at 2. This opinion is also inadmissible because it implies that the Sheriff's Office acted with impropriety or bias in deciding to appoint Lacour, which points to state of mind and could lead the jury to making an improper inference. Schwertz is not qualified "by 'knowledge, skill, experience, training, or education'" to testify about any Defendants' knowledge or state of mind. See Johnson v. Packaging Corp. of Am., No. 18-613, 2023 WL 8649814, at *1 (M.D. La. Dec. 14, 2023).

Schwertz's third and fourth opinions discuss the importance of independence and objectivity for a third appraiser. See Record Document 275-1 at 2–3. He concludes that Lacour violated both tenets of the Statement on Standards for Valuation Services

("SSVS") because he did not act as an objective appraiser. See id. The first tenet of the SSVS deals with the professional code of conduct and the significance of "objectivity in the performance of all professional services…." See id. at 2. The SSVS states that "[o]bjectivity is a state of mind" because it "imposes the obligation to be impartial, intellectually honest, disinterested, and free from conflicts of interest." See id. In his deposition, Schwertz confirmed that while objectivity may not always be a state of mind, it is in the instant case. See Record Document 275 at 30. His opinions on Lacour's objectivity are inadmissible.

In Greger v. C.R. Bard, Inc., the district court held that the expert could not provide testimony as to the defendant's "internal knowledge or decision-making." No. 19-675, 2021 WL 3855474, at *4 (E.D. Tex. Aug. 30, 2021). The court reasoned that the plaintiff could not identify any "'basis upon which [the expert] [could] render expert opinions about what happened internally [with the defendant]—what it knew, what it did, or what it failed to do….'" Id. The Court makes a similar finding in the instant case. Schwertz is not qualified to provide an opinion as to the Sheriff's Office's internal knowledge or decision-making surrounding Lacour's appointment as the third appraiser. Deciding whether the Sheriff's Office and/or Lacour acted with impropriety or lacked objectivity is a question for the factfinder alone.

While it might be reasonably inferred, based on the evidence surrounding Lacour's appointment, that he was not an independent or objective third appraiser, the Court finds that Schwertz's expert opinions "'cross[] the line from assisting the jury in understanding the evidence and determining a fact in issue to invading the province of the jury.'" Charalambopoulos v. Grammer, No. 14-2424, 2017 WL 930819, at *12 (N.D. Tex. Mar.

8, 2017) (quoting Estate of Davis v. City of N. Richland Hills, No. 00-438, 01-1008, 2007 WL 628090, at *3 (N.D. Tex. Feb. 28, 2007)). His opinions merely speculate as to the intentions and state of mind of the Sheriff's Office and Lacour because he contemplates their internal knowledge, internal decision-making, propriety, and objectivity. Therefore, Schwertz's expert report is deemed inadmissible.

Even though his expert report is inadmissible, Schwertz's qualifications and experience permit him to provide limited expert testimony at trial but only as to the proper procedure a sheriff should abide by when appointing a third appraiser. Schwertz is a certified general real estate appraiser with an MAI designation from the Appraisal Institute. See Record Document 275 at 17. He has worked for six different sheriffs and has dealt with over two dozen sheriff's sales since 2005. See id. at 148–49. On half of those two dozen sales, Schwertz has served as the third-party appraiser appointed by the sheriff. See id. at 151. His experience also includes what he has observed from other appraisers he has worked with and trained under. See id. at 35. Additionally, he has worked with several appraisers who have been involved in court cases and various Sheriff's Offices. See id.

His testimony is potentially significant because none of the appraisers involved in the instant case can opine as to the procedure for appointing a third appraiser. In fact, this case is the first time Lacour and Garland have done an appraisal for a sheriff's sale. See Record Document 200-1 at 3; see also Record Document 200-2 at 2. Schwertz has a long history of appraising real estate, he has worked with several sheriffs, and he has served as a sheriff-appointed third appraiser. While his history working with sheriff's sales

12

may not be as extensive as his history working with other real estate, the Court finds him qualified to provide expert testimony at trial.

The Court disagrees with Defendants' contention that his testimony would not aid a jury in making a final determination. One of Plaintiffs' claims asserts that Lacour was not an independent third appraiser, and the Sheriff's office did not follow the proper procedures when appointing him. Explaining Schwertz's experience with how various Louisiana sheriffs have appointed a third appraiser can help the jury in making its final determination. No other appraiser or proffered expert can provide an opinion surrounding the proper appointment procedures for sheriff's sales; therefore, Schwertz's testimony could provide insight that is otherwise unavailable.

However, Schwertz may not testify on any other matter, such as a Defendant's state of mind, intentions, independence, propriety, or objectivity. Those opinions are inadmissible, as discussed above. Furthermore, he may not testify as to the security or value of the Note or the qualifications of Dean, Garland, or Lacour. Since the Court cannot rule on the issue of credibility at this stage of the litigation, counsel will have the opportunity to dismantle or disprove Schwertz's credibility and testimony at trial during cross examination. At this stage of the litigation, the Court finds Schwertz is qualified to provide expert testimony only as to the procedure a Louisiana Sheriff's Office should adhere to when appointing a third appraiser.

## CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that all three Motions in Limine (Record Documents 190, 194, & 195) are **GRANTED IN PART AND DENIED IN PART**. The Motions are **GRANTED** with respect to the admissibility of Schwertz's expert report. The Motions are **DENIED** with respect to whether Schwertz may provide expert testimony at trial.

An Order consistent with this Ruling shall issue herewith.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 13th day of March, 2025.

_____

UNITED STATES DISTRICT COURT JUDGE